**AMENDMENT NO. 6 TO CREDIT AGREEMENT AND LIMITED WAIVER**

THIS AMENDMENT NO. 6 TO CREDIT AGREEMENT AND LIMITED WAIVER dated as of July 26, 2023 (this "Amendment"), is among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company (together with the Company and Distillery, collectively, the "Borrowers" and each, a "Borrower"), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "Administrative Agent"), and each of the Lenders (as defined below) party hereto.

**RECITALS:**

A. The Borrowers, the lenders party thereto (collectively, the "Lenders") and the Administrative Agent have entered into that certain Credit Agreement dated as of July 22, 2022 (as amended, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement (as defined below).

B. The Borrowers have requested certain amendments to the Existing Credit Agreement (including an increase in the Commitments thereunder) as more particularly set forth below and waivers of certain defaults as set forth in more detail below.

C. Subject to the terms and conditions set forth below, the Lenders party hereto have agreed to make such amendments and grant such waivers.

In furtherance of the foregoing, the parties agree as follows:

**Section 1. LIMITED WAIVER.** Pursuant to Section 10.1 of the Credit Agreement and subject to the terms and conditions set forth herein and in reliance upon the representations and warranties set forth herein, each Lender party hereto hereby waives:

(a) the Event of Default that has occurred prior to the date hereof under Section 8.1(b) of the Existing Credit Agreement due to the Borrowers' failure to deliver the audited consolidated and consolidating balance sheet of the Company and its Subsidiaries as at the end of the fiscal year ended December 31, 2022 (the "2022 Audited Balance Sheet") as required by Section 6.1(a) thereof, so long as the 2022 Audited Balance Sheet is delivered pursuant to the terms of the Credit Agreement on or prior to August 31, 2023 (it being acknowledged and agreed that the failure of the Borrowers to do so shall be an immediate Event of Default);

(b) each Event of Default that has occurred prior to the date hereof under Section 8.1(a) of the Existing Credit Agreement due to the Borrowers' failure to timely make (i) principal payments required by Section 2.5(b) of the Existing Credit Agreement on October 1, 2022, January 1, 2023 and July 1, 2023, and (ii) interest payments required by Section 2.6(b) of the Existing Credit Agreement on October 1, 2022, January 1, 2023 and July 1, 2023; and

(c) the automatic application of the Default Rate pursuant to Section 2.6(b)(i) of the Existing Credit Agreement as a result of the principal payment defaults specifically referenced in the foregoing clause (b)(ii).

EXHIBIT 7

**Section 2.** **AMENDMENT(S).** Subject to the terms and conditions set forth herein and in reliance upon the representations and warranties set forth herein, the Existing Credit Agreement is hereby amended as follows (as so amended, the "Credit Agreement"):

(a) The following definition is hereby added to Section 1.1 in the appropriate alphabetical order:

"French Subsidiary" means Domaine D'Anatole, S.A.S., a *société par actions simplifiée* organized in France.

(b) Section 6.12(b) is hereby amended and restated in its entirety to read as follows:

(b) Additional Foreign Subsidiaries. Promptly following the date any Person becomes a Foreign Subsidiary (whether by creation, acquisition or otherwise) and in any event within 30 days after such date (as such time period may be extended by the Administrative Agent in its sole discretion), (i) to the extent no material adverse Tax consequences would result therefrom, cause such Person, except in the case of the French Subsidiary, to (A) become a Subsidiary Guarantor by delivering to the Administrative Agent a duly executed joinder to the Subsidiary Guaranty (or, in the case of the first such Subsidiary, a duly executed Subsidiary Guaranty) or such other document(s) as the Administrative Agent shall deem appropriate for such purpose, (B) grant a security interest in all of its tangible and intangible personal property now owned or hereafter acquired (other than Excluded Assets) by such Person by delivering to the Administrative Agent a duly executed joinder to each of the Security Agreement and the Pledge Agreement or such other document(s) as the Administrative Agent shall deem appropriate for such purpose, (C) deliver to the Administrative Agent such opinions, documents and certificates referred to in Section 4.1 as may be reasonably requested by the Administrative Agent and (D) deliver to the Administrative Agent such other documents as may be reasonably requested by the Administrative Agent in connection with the foregoing, all in form, content and scope reasonably satisfactory to the Administrative Agent and (ii) cause each Loan Party owning Equity Interests in such Subsidiary to deliver to the Administrative Agent (A) a duly executed joinder or supplement to the Pledge Agreement pledging (or evidencing a prior pledge of) 65% of the total outstanding voting Equity Interests (and 100% of the non-voting Equity Interests) or, to the extent no material adverse Tax consequences would result therefrom, 100% of the total Equity Interests, in such Subsidiary or such other document(s) as the Administrative Agent shall deem appropriate for such purpose, together with all original certificates (or equivalent document), if any, evidencing such Equity Interests and appropriate undated stock or other transfer powers for each such certificate duly executed in blank by the registered owner thereof (or such other documents consistent with the practices of any relevant foreign jurisdiction), (B) such opinions, documents and certificates referred to in Section 4.1 as may be reasonably requested by the Administrative Agent and (C) such other documents as may be reasonably requested by the Administrative Agent in connection with the foregoing, all in form, content and scope reasonably satisfactory to the Administrative Agent.

(c) Section 7.2(f) is hereby amended and restated in its entirety to read as follows:

(f) unsecured intercompany Indebtedness (i) owed by any Loan Party to another Loan Party, (ii) owed by any Loan Party to any Non-Guarantor Subsidiary so long as such Indebtedness is subordinated to the Obligations in a manner satisfactory to the Administrative Agent, (iii) owed by any Non-Guarantor Subsidiary to any other Non-Guarantor Subsidiary, and (iv) owed by the French Subsidiary to a Loan Party to the extent permitted pursuant to Section 7.2(h);

(d) Section 7.3 is hereby amended by (i) removing the word "and" from the end of clause (g) thereof, (ii) changing clause (h) thereof to clause (i) thereof and (iii) adding a new clause (h) to read as follows:

> (h) an Investment in the French Subsidiary, the proceeds of which shall be used solely for the consummation of the purchase of certain real property (and certain related expenses) as previously discussed with the Administrative Agent so long as the aggregate amount of such Investment does not exceed $5,500,000; provided that if such Investment is in the form of an intercompany loan, then such intercompany loan shall be evidenced by a demand note in form and substance reasonably satisfactory to the Administrative Agent and shall be pledged and delivered to the Administrative Agent pursuant to the Collateral Documents; and

(e) The table in Section 7.11(a) is hereby amended and restated in its entirety to read as follows:

| Period | Minimum Consolidated Tangible Net Worth |
|---|---|
| Closing Date through December 30, 2022 | $58,000,000 |
| December 31, 2022 through October 30, 2023 | $66,000,000 |
| October 31, 2023 through December 30, 2024 | $100,000,000 |
| December 31, 2024 through December 30, 2025 | $122,000,000 |
| December 31, 2025 and thereafter | $146,000,000 |

(f) Exhibit C (Compliance Certificate) to the Existing Credit Agreement is hereby amended and restated in its entirety to read in the form attached hereto as Schedule 1.

(g) Annex A to the Existing Credit Agreement is hereby amended and restated in its entirety to read in the form attached hereto as Schedule 2.

**Section 3. CONDITIONS PRECEDENT.** The parties hereto agree that this Amendment, the limited waiver(s) set forth in Section 1 above and the amendment(s) set forth in Section 2 above shall be effective as of the date first written above upon satisfaction of the following conditions precedent:

(a) Documentation. The Administrative Agent shall have received, in form and substance satisfactory to the Administrative Agent, each of the following:

> (i) this Amendment, duly executed by each Borrower, the Administrative Agent and the Lenders party hereto; and
>
> (ii) resolutions duly adopted by the board of directors (or other governing body) of each Loan Party authorizing and approving this Amendment and the transactions contemplated hereby (including the increase in the aggregate Commitments).

(b) Fees. The Borrowers shall have paid, or made arrangements to pay concurrently with the closing on the date hereof, to FCMA, for its own account, an upfront fee of $40,000.

(c) Expenses. The Company shall have paid, or made arrangements to pay concurrently with the closing on the date hereof, all fees, charges and disbursements of counsel to the Administrative Agent (directly to such counsel if requested by the Administrative Agent) to the extent invoiced prior to or on the date hereof, plus such additional amounts of such fees, charges and disbursements as shall constitute

its reasonable estimate of such fees, charges and disbursements incurred or to be incurred by it through the closing proceedings (provided that such estimate shall not thereafter preclude a final settling of accounts between the Company and the Administrative Agent).

**Section 4. REPRESENTATIONS AND WARRANTIES.** In order to induce the Administrative Agent and the Lenders party hereto to enter into this Amendment, each Borrower represents and warrants to the Administrative Agent and the Lenders party hereto as follows:

(a) The representations and warranties of each Borrower contained in Article V of the Credit Agreement and in each other Loan Document are true and correct in all material respects (or, in the case of any such representation and warranty that is subject to materiality or Material Adverse Effect qualifications, in all respects) on and as of the date hereof, after giving effect to this Agreement, except to the extent that such representations and warranties specifically refer to an earlier date, in which case they are true and correct in all material respects (or, in the case of any such representation and warranty that is subject to materiality or Material Adverse Effect qualifications, in all respects) as of such earlier date;

(b) Since December 31, 2021, there has been no event or circumstance, either individually or in the aggregate, that has had or could reasonably be expected to have a Material Adverse Effect;

(c) No Default exists on the date hereof immediately prior to or after giving effect to this Amendment and the amendment(s) contemplated hereby (including the increase in the Commitments), other than as expressly waived hereunder.

(d) This Amendment has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation.

(e) Attached hereto as Schedule 3 are true, correct and complete copies of the resolutions referenced in Section 3(a)(ii) above.

**Section 5. MISCELLANEOUS.**

(a) **Ratification and Confirmation of Loan Documents**. Each Borrower hereby consents, acknowledges and agrees to the amendment(s) and waiver(s) set forth herein and hereby confirms and ratifies in all respects the Loan Documents to which such Borrower is a party (including without limitation, the continuation of its payment and performance obligations thereunder and the continuation and extension of the liens granted under the Collateral Documents to secure the Obligations), in each case upon and after the effectiveness of the amendment(s) and waiver(s) contemplated hereby.

(b) **Fees and Expenses**. The Borrowers shall pay all reasonable out-of-pocket expenses incurred by the Administrative Agent and its Affiliates (including the reasonable fees, charges and disbursements of counsel for the Administrative Agent) in connection with the preparation, negotiation, execution and delivery of this Amendment and any other documents prepared in connection herewith.

(c) **Governing Law; Waiver of Jury Trial**. This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York, and shall be further subject to the provisions of Sections 10.11 and 10.12 of the Credit Agreement.

(d) **Counterparts**. This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page

of this Amendment by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Amendment.

(e) **Entire Agreement**. This Amendment, together with all the Loan Documents (collectively, the "Relevant Documents"), sets forth the entire understanding and agreement of the parties hereto in relation to the subject matter hereof and supersedes any prior negotiations and agreements among the parties relating to such subject matter. No promise, condition, representation or warranty, express or implied, not set forth in the Relevant Documents shall bind any party hereto, and no such party has relied on any such promise, condition, representation or warranty. Each of the parties hereto acknowledges that, except as otherwise expressly stated in the Relevant Documents, no representations, warranties or commitments, express or implied, have been made by any party to the other. None of the terms or conditions of this Amendment may be changed, modified, waived or canceled orally or otherwise except in a writing and in accordance with Section 10.1 of the Credit Agreement. This Amendment is a Loan Document.

(f) **Severability**. If any provision of this Amendment is held to be illegal, invalid or unenforceable, (i) the legality, validity and enforceability of the remaining provisions of this Amendment shall not be affected or impaired thereby and (ii) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(g) **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of each party hereto and their respective successors and assigns (subject to Section 10.6 of the Credit Agreement).

***[Remainder of Page Intentionally Left Blank; Signature Pages Follow]***

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 6 to Credit Agreement and Limited Waiver to be executed by their duly authorized officers, all as of the date and year first written above.

**BORROWERS:**

**UNCLE NEAREST, INC.**

By:________________________
Name: Fawn Weaver
Title: President and Secretary

**NEAREST GREEN DISTILLERY, INC.**

By:________________________
Name: Fawn Weaver
Title: President and Secretary

**UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**

By: Uncle Nearest, Inc., its Member

By:________________________
Name: Fawn Weaver
Title: President and Secretary

**ADMINISTRATIVE AGENT / LENDERS:**

**FARM CREDIT MID-AMERICA, PCA**,
as Administrative Agent and a Lender

By: ________________________
Name: Jonathan Boyce
Title: Financial Officer

**Schedule 1**

Amended Exhibit C to Credit Agreement

*See attached.*

***EXHIBIT C***

**FORM OF COMPLIANCE CERTIFICATE**

Financial Statement Date: __________, _____

To: Farm Credit Mid-America, PCA, as Administrative Agent
The Lenders party to the Credit Agreement referenced below

Ladies and Gentlemen:

Reference is made to that certain Credit Agreement, dated as of July 22, 2022 (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Credit Agreement;" the terms defined therein being used herein as therein defined), among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company ("RE Holdings"), each other Borrower party thereto (together with the Company, Distillery and RE Holdings, collectively, the "Borrowers" and each, a "Borrower"), each lender from time to time party thereto (the "Lenders") and FARM CREDIT MID-AMERICA, PCA, as administrative agent (in such capacity, the "Administrative Agent").

The undersigned hereby certifies as of the date hereof that he/she is the chief executive officer, president, chief financial officer, treasurer, controller or director of finance of the Company, and that, on behalf of the Company, in such capacity, he/she is authorized to execute and deliver this Compliance Certificate to the Administrative Agent and the Lenders on the behalf of the Borrowers, and that:

*[Use following paragraph 1 for fiscal **year-end** financial statements]*

1. The Company has delivered:

(a) the year-end audited financial statements required by Section 6.1(a) of the Credit Agreement for the fiscal year of the Company and its Subsidiaries ended as of the above date, audited by an independent certified public accountant and accompanied by a report and opinion of such accountant, as required by such Section.[1] Such consolidated financial statements fairly present in all material respects the financial condition, results of operations, and cash flows of the Company and its Subsidiaries in accordance with GAAP and such consolidating statements are certified to the effect that such statements are fairly stated in all material respects when considered in relation to the consolidated financial statements of the Company and its Subsidiaries.

(b) the annual business plan and budget of the Company and its Subsidiaries on a consolidated basis, including forecasts prepared by management of the Company, presented on an annual basis for the current fiscal year as required by Section 6.1(c) of the Credit Agreement.

[1] Notwithstanding anything to the contrary herein, with respect to the financial statements to be delivered pursuant to Section 6.1(a) of the Credit Agreement for the fiscal year ending December 31, 2022, the balance sheet for such fiscal year shall be audited and the related statements of income and operations, changes in shareholders' equity and cash flows for such fiscal year may be reviewed.

*[Use following paragraph 1 for calendar **month-end** financial statements]*

1. The Company has delivered the unaudited consolidated and consolidating financial statements required by Section 6.1(b) of the Credit Agreement for the calendar month ended as of the above date. Such consolidated financial statements fairly present in all material respects the financial condition, results of operations, and cash flows of the Company and its Subsidiaries in accordance with GAAP, subject only to normal year-end adjustments and the absence of footnotes and such consolidating statements are certified to the effect that such statements are fairly stated in all material respects when considered in relation to the consolidated financial statements of the Company and its Subsidiaries.

2. The undersigned has reviewed and is familiar with the terms of the Credit Agreement and has made, or has caused to be made under his/her supervision, a review of the transactions and condition (financial or otherwise) of the Company and its Subsidiaries during the accounting period covered by such financial statements.

3. The financial covenant analyses and information set forth on Schedules 1 and 2 attached hereto are true and accurate on and as of the date of this Compliance Certificate.

4. Attached hereto as Schedule 3 is a copy of management's customary discussion and analysis with respect to such financial statements.

5. Attached hereto as Schedule 4 are supplements to Schedules 9(j) and 9(k) of the Security Agreement with respect to Patents, Trademarks and Copyrights issued and/or registered with the United States Patent and Trademark Office or United States Copyright Office, as the case may be, since the Closing Date or the most recent date Schedules 9(j) and 9(k) of the Security Agreement, as applicable, has been updated, which are necessary to keep the representations and warranties in Sections 9(j) and 9(k) of the Security Agreement true and complete.

6. A review of the activities of the Company and its Subsidiaries during such fiscal period has been made under the supervision of the undersigned with a view to determining whether during such fiscal period the Company and its Subsidiaries performed and observed all of their respective Obligations under the Loan Documents, and

***[select one:]***

**[during such fiscal period, each of Company and its Subsidiaries performed and observed each covenant and agreement of the Loan Documents applicable to it, and no Default has occurred and is continuing.]**

***--or--***

**[during such fiscal period, the following covenants or agreements have not been performed or observed and the following is a list of each such Default and its nature and status:]**

[*signature page follows*]

*IN WITNESS WHEREOF*, the undersigned has executed, in his capacity as a Senior Officer and not in his individual capacity, this Compliance Certificate as of __________, _____.

**UNCLE NEAREST, INC.**

By:_______________________________________
Name:_____________________________________
Title: _____________________________________

For the Calendar Month/Fiscal Year ended ____________(“Statement Date”)

**SCHEDULE 1**
**to the Compliance Certificate**

**I. Section 7.11(a) – Consolidated Tangible Net Worth.**

A. Shareholders’ Equity of the Company and its Subsidiaries on the Statement Date: $______________

B. Intangible Assets of the Company and its Subsidiaries on the Statement Date: $______________

C. Consolidated Tangible Net Worth

(Line I.A – Line I.B): $______________

D. In compliance? [Yes][No]

E. At any time since the delivery of the most recent Compliance Certificate, has the Consolidated Tangible Net Worth been less than the applicable minimum Consolidated Tangible Net Worth set forth below? [Yes][No]

| Period | Minimum Consolidated Tangible Net Worth |
|---|---|
| Closing Date through December 30, 2022 | $58,000,000 |
| December 31, 2022 through October 30, 2023 | $66,000,000 |
| October 31, 2023 through December 30, 2024 | $100,000,000 |
| December 31, 2024 through December 30, 2025 | $122,000,000 |
| December 31, 2025 and thereafter | $146,000,000 |

**II. Section 7.11(b) – Consolidated Net Income.[2]**

Consolidated Net Income for the calendar month ending on the Statement Date: $______________

*Minimum permitted:* *$1.00*

[2] To be calculated on a monthly basis commencing with the calendar month ending August 31, 2022.

**SCHEDULE 3**
**to the Compliance Certificate**

**Management's Discussion and Analysis**

*To be attached*

**SCHEDULE 4**
**to the Compliance Certificate**

**Supplements to Schedules 9(j) and 9(k) to the Security Agreement**

*To be attached.*

## **Schedule 2**

Amended Annex A to Credit Agreement

*See attached.*

**COMMITMENTS
AND APPLICABLE PERCENTAGES**

Part 1

| Lender | Revolving Credit Commitment[3] | Applicable Percentage (Revolving Credit Facility) |
|---|---|---|
| Farm Credit Mid-America, PCA | $67,000,000.00 | 100.000000000% |
| **Total** | **$67,000,000.00** | **100.000000000%** |

[3] As of July 26, 2023

Part 2

| Lender | Term Loan Commitment[4] | Outstanding Amount of Term Loans[5] | Applicable Percentage (Term Loan Facility) |
|---|---|---|---|
| Farm Credit Mid-America, PCA | $1,700,000.00 | $21,803,125.00 | 100.000000000% |
| **Total** | **$1,700,000.00** | **$21,803,125.00** | **100.000000000%** |

[4] As of the Amendment No. 5 Effective Date, which such amount does not reflect the outstanding principal amount of the Existing Term Loans.
[5] As of the Amendment No. 5 Effective Date, prior to giving effect to the funding of the additional Term Loans on such date.

Part 3

| Lender | RELOC Commitment[6] | Applicable Percentage (RELOC Facility) |
|---|---|---|
| Farm Credit Mid-America, PCA | $15,000,000.00 | 100.000000000% |
| **Total** | **$15,000,000.00** | **100.000000000%** |

[6] As of the Amendment No. 3 Effective Date.

## **Schedule 3**

Authorizing Resolutions

*See attached.*

# WRITTEN CONSENT OF THE BOARD OF DIRECTORS

# OF

# UNCLE NEAREST, INC.

July 26, 2023

Pursuant to Section 141(f)
of the General Corporation Law of Delaware

The undersigned, constituting the entire board of directors (the "***Board***") of Uncle Nearest, Inc., a Delaware corporation (the "***Corporation***"), hereby consent, pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, to the adoption of the following resolutions:

WHEREAS, it has been proposed that the Corporation enter into an amendment to the secured credit facility with Farm Credit Mid-America, PCA, as administrative agent thereunder (the "***Agent***"), the other lenders party thereto from time to time (each, a "***Lender***"), and Nearest Green Distillery, Inc. and Uncle Nearest Real Estate Holdings, LLC, together with the Corporation, as the borrowers, substantially in the form as presented to the Board (collectively, the "***Sixth Amended Credit Facility***"); and

WHEREAS, in order to evidence and incur the obligations and liabilities in connection with the Sixth Amended Credit Facility and to secure or otherwise assure the payment and performance thereof, it has been proposed that the Corporation execute and deliver to the Agent an amendment to credit agreement along with any other financing statements and other documents, instruments, agreements, notices and certificates, in each case substantially in the form as presented to the Board (collectively, and together with the Sixth Amended Credit Facility, the "***Sixth Amended Credit Documents***").

NOW, THEREFORE, BE IT RESOLVED, that the execution, delivery and performance by the Corporation of the Sixth Amended Credit Documents, including, without limitation, the incurrence and assumption of the obligations and liabilities thereunder and the pledge and grant of the liens and security interest in the assets of the Corporation described therein are authorized and approved and the officers of the Corporation are each severally authorized, empowered and directed to execute and deliver the same for and on behalf and in the name of the Corporation, with such changes in the terms and provisions thereof as the officer executing the same shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Corporation, and such officer's signature, or such actions by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Corporation;

FURTHER RESOLVED, that the officers of the Corporation are each severally authorized to sign, execute, certify to, verify, acknowledge, deliver, accept, file and record any and all such additional agreements, instruments, certificates, documents, notices reports, and schedules (including, but not limited to, any renewals, extensions, amendments, modifications, restatements or waivers of any of the foregoing or of any Sixth Amended Credit Document), and to take, or cause to be taken, any

and all such action, in the name and on behalf of the Corporation which shall be required to consummate the transactions contemplated by the Sixth Amended Credit Documents (or any renewal, extension, amendment, modification, restatement or waiver thereof) or which any officer shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Corporation in order to effect the purposes of the foregoing resolutions, and such officer's signature, or such actions taken by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Corporation in order to effect such purposes; provided that attestation of any agreement or document by the Secretary of the Corporation shall not be required for the validity thereof, except to the extent expressly required by applicable law;

FURTHER RESOLVED, that all acts and deeds done or to be done by any one or more officers of the Corporation in connection with the Sixth Amended Credit Documents for and on behalf of the Corporation in negotiating, entering into, executing, acknowledging, delivering or attesting any agreement, document, instrument, certificate, report or schedule as contemplated in the foregoing resolutions or otherwise or in carrying out the terms and intentions of such resolutions are hereby ratified and approved;

FURTHER RESOLVED, that the foregoing resolutions may be relied upon by the Agent until receipt and written acknowledgment thereby of written notice of their amendment or rescission and that any such receipt and acknowledgment shall not affect any action taken by the Agent in reliance on the foregoing resolutions prior thereto; and

FURTHER RESOLVED, that any officer of the Corporation be, and such officer hereby is authorized, empowered and directed to certify to the Agent the foregoing resolutions and that the provisions thereof are in accordance with the certificate of incorporation and bylaws, as applicable, of the Corporation and with applicable law.

RESOLVED, that each of the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take all such further action and to execute, deliver and file all such further agreements, certificates, instruments and documents, in the name and on behalf of the Corporation, as in such officer's sole discretion shall be necessary or appropriate to carry out the intent and to accomplish the purpose of the foregoing resolutions; and

FURTHER RESOLVED, that any and all acts taken by any of the officers, representatives or agents of the Corporation prior to the date hereof taken to carry out the intent and accomplish the purpose of the foregoing resolutions be, and they hereby are, ratified, confirmed and approved as acts on behalf of the Corporation.

**[Remainder of page intentionally left blank; signature page follows.]**

This consent may be signed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. A facsimile, telecopy or any other reproduction of this consent may be executed by the undersigned, and an executed copy of this consent may be delivered by the undersigned by facsimile or similar instantaneous electronic transmission device pursuant to which the signature of or on behalf of the undersigned can be seen, and such execution and delivery shall be considered valid, binding and effective for all purposes. This consent is effective as of the date first set forth above, and shall be filed with the minutes of the proceedings of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned directors have hereunto set their hands.

_______________________________
Fawn Weaver, Director

_______________________________
Keith Weaver, Director

DocuSigned by:
John eugster
A45957E54FEF4C5...
_______________________________
John Eugster, Director

**WRITTEN CONSENT**
**OF THE SOLE DIRECTOR**
**OF**
**NEAREST GREEN DISTILLERY, INC.**

July 26, 2023

The undersigned, being the sole director of the board of directors of Nearest Green Distillery, Inc., a Delaware corporation (the "***Company***"), does hereby adopt the following resolutions by written consent:

**Amendment No. 6 to Credit Agreement and Limited Waiver**

**WHEREAS**, it has been proposed that the Company enter into an amendment to the secured credit facility with Farm Credit Mid-America, PCA, as administrative agent thereunder (the "***Agent***"), the other lenders party thereto from time to time (each, a "***Lender***"), and Uncle Nearest, Inc. and Uncle Nearest Real Estate Holdings, LLC, together with the Company, as the borrowers, substantially in the form as presented to the sole director (collectively, the "***Sixth Amended Credit Facility***"); and

**WHEREAS**, in order to evidence and incur the obligations and liabilities in connection with the Sixth Amended Credit Facility and to secure or otherwise assure the payment and performance thereof, it has been proposed that the Company execute and deliver to the Agent an amendment to credit agreement along with any other financing statements and other documents, instruments, agreements, notices and certificates, in each case substantially in the form as presented to the sole director (collectively, and together with the Sixth Amended Credit Facility, the "***Sixth Amended Credit Documents***").

**NOW, THEREFORE, BE IT RESOLVED**, that the execution, delivery and performance by the Company of the Sixth Amended Credit Documents, including, without limitation, the incurrence and assumption of the obligations and liabilities thereunder and the pledge and grant of the liens and security interest in the assets of the Company described therein are authorized and approved and the officers of the Company are each severally authorized, empowered and directed to execute and deliver the same for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as the officer executing the same shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Company, and such officer's signature, or such actions by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Company;

**FURTHER RESOLVED**, that the officers of the Company are each severally authorized to sign, execute, certify to, verify, acknowledge, deliver, accept, file and record any and all such additional agreements, instruments, certificates, documents, notices reports, and schedules (including, but not limited to, any renewals, extensions, amendments, modifications, restatements or waivers of any of the foregoing or of any Sixth Amended Credit Document), and to take, or cause to be taken, any and all such action, in the name and on behalf of the Company which shall be required to consummate the transactions contemplated by the Sixth Amended Credit Documents (or any renewal, extension, amendment, modification, restatement or waiver thereof) or which any officer shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Company in order to effect the purposes of the foregoing resolutions, and such officer's signature, or such actions taken by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Company in order to effect such purposes; provided that attestation of any agreement or document by the Secretary of the Company shall not be required for the validity thereof, except to the extent expressly required by applicable law;

**FURTHER RESOLVED**, that all acts and deeds done or to be done by any one or more officers of the Company in connection with the Sixth Amended Credit Documents for and on behalf of the Company in negotiating, entering into, executing, acknowledging, delivering or attesting any agreement, document, instrument, certificate, report or schedule as contemplated in the foregoing resolutions or otherwise or in carrying out the terms and intentions of such resolutions are hereby ratified and approved;

**FURTHER RESOLVED**, that the foregoing resolutions may be relied upon by the Agent until receipt and written acknowledgment thereby of written notice of their amendment or rescission and that any such receipt and acknowledgment shall not affect any action taken by the Agent in reliance on the foregoing resolutions prior thereto; and

**FURTHER RESOLVED**, that any officer of the Company be, and such officer hereby is authorized, empowered and directed to certify to the Agent the foregoing resolutions and that the provisions thereof are in accordance with the certificate of formation and bylaws, as applicable, of the Company and with applicable law.

**Miscellaneous**

**RESOLVED**, that each of the officers of the Company be, and each of them hereby is, authorized, empowered and directed to take all such further action and to execute, deliver and file all such further agreements, certificates, instruments and documents, in the name and on behalf of the Company, as in such officer's sole discretion shall be necessary or appropriate to carry out the intent and to accomplish the purpose of the foregoing resolutions; and

**FURTHER RESOLVED**, that any and all acts taken by any of the officers, representatives or agents of the Company prior to the date hereof taken to carry out the intent and accomplish the purpose of the foregoing resolutions be, and they hereby are, ratified, confirmed and approved as acts on behalf of the Company.

[*Signature page follows*]

**IN WITNESS WHEREOF**, the undersigned sole director of the Company has executed this Written Consent effective as of the date first set forth above.

**SOLE DIRECTOR:**

Name: Fawn Weaver

**WRITTEN CONSENT**
**OF THE SOLE MEMBER**
**OF**
**UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**

July 26, 2023

The undersigned, being the sole member of Uncle Nearest Real Estate Holdings, LLC, a Tennessee limited liability company (the "***Company***"), does hereby adopt the following resolutions by written consent:

**Amendment No. 6 to Credit Agreement and Limited Waiver**

**WHEREAS**, it has been proposed that the Company enter into an amendment to the secured credit facility with Farm Credit Mid-America, PCA, as administrative agent thereunder (the "***Agent***"), the other lenders party thereto from time to time (each, a "***Lender***"), and Uncle Nearest, Inc. and Nearest Green Distillery, Inc., together with the Company, as the borrowers, substantially in the form as presented to the sole member (collectively, the "***Sixth Amended Credit Facility***"); and

**WHEREAS**, in order to evidence and incur the obligations and liabilities in connection with the Sixth Amended Credit Facility and to secure or otherwise assure the payment and performance thereof, it has been proposed that the Company execute and deliver to the Agent an amendment to credit agreement along with any other financing statements and other documents, instruments, agreements, notices and certificates, in each case substantially in the form as presented to the sole member (collectively, and together with the Sixth Amended Credit Facility, the "***Sixth Amended Credit Documents***").

**NOW, THEREFORE, BE IT RESOLVED**, that the execution, delivery and performance by the Company of the Sixth Amended Credit Documents, including, without limitation, the incurrence and assumption of the obligations and liabilities thereunder and the pledge and grant of the liens and security interest in the assets of the Company described therein are authorized and approved and the officers of the Company are each severally authorized, empowered and directed to execute and deliver the same for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as the officer executing the same shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Company, and such officer's signature, or such actions by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Company;

**FURTHER RESOLVED**, that the officers of the Company are each severally authorized to sign, execute, certify to, verify, acknowledge, deliver, accept, file and record any and all such additional agreements, instruments, certificates, documents, notices reports, and schedules (including, but not limited to, any renewals, extensions, amendments, modifications, restatements or waivers of any of the foregoing or of any Sixth Amended Credit Document), and to take, or cause to be taken, any and all such action, in the name and on behalf of the Company which shall be required to consummate the transactions contemplated by the Sixth Amended Credit Documents (or any renewal, extension, amendment, modification, restatement or waiver thereof) or which any officer shall, in such officer's sole discretion, deem necessary or appropriate and in the best interests of the Company in order to effect the purposes of the foregoing resolutions, and such officer's signature, or such actions taken by such officer, shall be conclusive evidence that such officer did deem the same to be necessary or appropriate and in the best interests of the Company in order to effect such purposes; provided that attestation of any agreement or document by the Secretary of the Company shall not be required for the validity thereof, except to the extent expressly required by applicable law;

**FURTHER RESOLVED**, that all acts and deeds done or to be done by any one or more officers of the Company in connection with the Sixth Amended Credit Documents for and on behalf of the Company in negotiating, entering into, executing, acknowledging, delivering or attesting any agreement, document, instrument, certificate, report or schedule as contemplated in the foregoing resolutions or otherwise or in carrying out the terms and intentions of such resolutions are hereby ratified and approved;

**FURTHER RESOLVED**, that the foregoing resolutions may be relied upon by the Agent until receipt and written acknowledgment thereby of written notice of their amendment or rescission and that any such receipt and acknowledgment shall not affect any action taken by the Agent in reliance on the foregoing resolutions prior thereto; and

**FURTHER RESOLVED**, that any officer of the Company be, and such officer hereby is authorized, empowered and directed to certify to the Agent the foregoing resolutions and that the provisions thereof are in accordance with the certificate of formation, bylaws and the limited liability company agreement, as applicable, of the Company and with applicable law.

## Miscellaneous

**RESOLVED**, that each of the officers of the Company be, and each of them hereby is, authorized, empowered and directed to take all such further action and to execute, deliver and file all such further agreements, certificates, instruments and documents, in the name and on behalf of the Company, as in such officer's sole discretion shall be necessary or appropriate to carry out the intent and to accomplish the purpose of the foregoing resolutions; and

**FURTHER RESOLVED**, that any and all acts taken by any of the officers, representatives or agents of the Company prior to the date hereof taken to carry out the intent and accomplish the purpose of the foregoing resolutions be, and they hereby are, ratified, confirmed and approved as acts on behalf of the Company.

[*Signature page follows*]

**IN WITNESS WHEREOF**, the undersigned sole member of the Company has executed this Written Consent effective as of the date first set forth above.

**SOLE MEMBER:**

**Uncle Nearest, Inc.**

By: ______________________

Name: Fawn Weaver

Title: President and Secretary