# SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** dated as of July 22, 2022 (this "Agreement") is being entered into among **UNCLE NEAREST, INC.**, a Delaware corporation (the "Company"), **NEAREST GREEN DISTILLERY, INC.**, a Delaware corporation ("Distillery"), **UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**, a Tennessee limited liability company ("RE Holdings" and, together with the Company and Distillery, each a "Borrower" and a "Grantor" and, collectively, the "Borrowers"), **EACH PERSON WHO SHALL BECOME A PARTY HERETO BY EXECUTION OF A SECURITY JOINDER AGREEMENT** (each a "Subsidiary Guarantor" and a "Grantor" and, together with the Borrowers, collectively, the "Grantors"), and **FARM CREDIT MID-AMERICA, PCA**, as Administrative Agent (in such capacity, the "Administrative Agent") for each of the Secured Parties (as defined in the Credit Agreement referenced below).

## RECITALS:

A. Pursuant to a Credit Agreement dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among the Borrowers, the lenders now or hereafter party thereto (the "Lenders") and the Administrative Agent, the Lenders have agreed to provide to the Borrowers certain credit facilities.

B. It is a condition precedent to the Secured Parties' obligations to make and maintain the extensions of credit described in Recital A that the Grantors shall have executed and delivered this Agreement to the Administrative Agent.

In order to induce the Secured Parties to from time to time make and maintain extensions of credit under the Credit Agreement, the parties hereto agree as follows:

**1. Certain Definitions.** All capitalized terms used but not otherwise defined herein shall have the meanings assigned thereto in the Credit Agreement. Terms used in this Agreement that are not otherwise expressly defined herein or in the Credit Agreement, and for which meanings are provided in the Uniform Commercial Code of the State of New York (the "UCC"), shall have such meanings unless the context requires otherwise. In addition, for purposes of this Agreement, the following terms have the following definitions:

"Copyrights" means, collectively, all United States and foreign copyrights and copyright applications and including the right to recover for all past, present and future infringements thereof and all supplemental registrations, renewals, and extensions thereof, and all other rights of any kind whatsoever of each Grantor accruing thereunder or pertaining thereto.

"Patents" means, collectively, all United States and foreign patents and patent applications and including the right to recover for all past, present and future infringements thereof and all reissues, divisions, continuations, continuations in part, substitutes, renewals, and extensions thereof, all improvements thereon, and all other rights of any kind whatsoever of each Grantor accruing thereunder or pertaining thereto.

"Secured Obligations" means all of the Obligations, including the payment and performance of the obligations and liabilities (whether now existing or hereafter arising) of each Loan Party under the Credit Agreement and each of the other Loan Documents (including this Agreement).

"Trademarks" means, collectively, all United States and foreign trademarks, trade names, domain names, trade dress, service marks, trademark and service mark registrations, and applications for trademark or service mark registration and any renewals thereof, and including all income, royalties, damages and payments now and hereafter due and/or payable with respect thereto (including without limitation damages for past or future infringements thereof), the right to sue or otherwise recover for all past, present and future infringements thereof, all rights corresponding thereto throughout the world (but only such rights as now exist or may come to exist under applicable local law) and all other rights of any kind whatsoever of each Grantor accruing thereunder or pertaining thereto, together in each case with the goodwill of the business connected to the use of, and symbolized by, each such trademark and service mark.

**2. Grant of Security Interest.** Each Grantor hereby grants as collateral security for the payment, performance and satisfaction of the Secured Obligations to the Administrative Agent for the benefit of the Secured Parties a continuing security interest in and to, and collaterally assigns to, the Administrative Agent for the benefit of the Secured Parties, all of the assets of such Grantor or in which such Grantor has or may have or acquire an interest or the power to transfer rights therein, whether now owned or existing or hereafter created, acquired or arising and wheresoever located, including, without limitation, the following:

(a) All accounts, including accounts receivable, contracts, bills, acceptances, choses in action, and other forms of monetary obligations at any time owing to such Grantor arising out of property sold, leased, licensed, assigned or otherwise disposed of or for services rendered or to be rendered by such Grantor, and all of such Grantor's rights with respect to any property the sale, lease or license of which gave rise thereto, whether or not delivered, property returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation (collectively referred to hereinafter as "Accounts");

(b) All inventory, including all goods manufactured or acquired for sale or lease (including, without limitation, spirits, beer, malt beverages, wine, wine cooler products, champagne, juices, waters, coffees, tea, soft drinks and other alcoholic and non-alcoholic beverages), and any piece goods, raw materials, work in process and finished merchandise, component materials, and all supplies, bottles, barrels, cans, syrups, draft equipment, pallets, dunnage, cooperage, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of such Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which such Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of such Grantor or is held by such Grantor or by others for such Grantor's account (collectively referred to hereinafter as "Inventory");

(c) All goods, including all machinery, equipment, motor vehicles, crops, farm products, parts, supplies, apparatus, appliances, tools, patterns, molds, dies, blueprints, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description, and all computer programs embedded in any of the foregoing and all supporting information relating to such computer programs (collectively referred to hereinafter as "Equipment");

(d) All general intangibles, including all rights now or hereafter accruing to such Grantor under contracts, leases, agreements or other instruments, including all contracts or contract rights to perform or receive services, to purchase or sell goods, or to hold or use land or facilities, and to enforce all rights thereunder, all causes of action, corporate or business records, inventions, patents and patent rights, rights in mask works, designs, trade names and trademarks and all goodwill associated therewith, trade secrets, trade processes, licenses, permits, franchises, customer

lists, computer programs and software, all internet domain names and registration rights thereto, all internet websites and the content thereof, all payment intangibles, all claims under guaranties, tax refund claims, all rights and claims against carriers and shippers, leases, all claims under insurance policies, all interests in general and limited partnerships, limited liability companies, and other Persons not constituting Investment Property (as defined below), all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "General Intangibles");

(e) All Copyrights, Patents and Trademarks;

(f) All deposit accounts, including demand, time, savings, passbook, or other similar accounts maintained with any bank by or for the benefit of such Grantor (collectively referred to hereinafter as "Deposit Accounts");

(g) All chattel paper, including tangible chattel paper, electronic chattel paper, or any hybrid thereof (collectively referred to hereinafter as "Chattel Paper");

(h) All investment property, including all securities, security entitlements, securities accounts, commodity contracts and commodity accounts of or maintained for the benefit of such Grantor, but excluding Equity Interests in Subsidiaries (collectively referred to hereinafter as "Investment Property");

(i) All instruments, including all promissory notes (collectively referred to hereinafter as "Instruments");

(j) All documents, including warehouse receipts, bills of lading and other documents of title (collectively referred to hereinafter as "Documents");

(k) All rights to payment or performance under letters of credit including rights to proceeds of letters of credit ("Letter-of-Credit Rights"), and all guaranties, endorsements, Liens, other Guarantee obligations or supporting obligations of any Person securing or supporting the payment, performance, value or liquidation of any of the foregoing (collectively, with Letter-of-Credit Rights, referred to hereinafter as "Supporting Obligations");

(l) The commercial tort claims identified on Schedule 9(i) hereto, as such Schedule may be supplemented from time to time in accordance with the terms hereof (collectively referred to hereinafter as "Commercial Tort Claims");

(m) All books and records relating to any of the foregoing (including customer data, credit files, ledgers, computer programs, printouts, and other computer materials and records (and all media on which such data, files, programs, materials and records are or may be stored)); and

(n) All proceeds, products and replacements of, accessions to, and substitutions for, any of the foregoing, including without limitation proceeds of insurance policies insuring any of the foregoing.

All of the property and interests in property described in subsections (a) through (n) are herein collectively referred to as the "Collateral;" provided that, notwithstanding the foregoing, the Collateral shall not include any Excluded Asset.

**3.** **Perfection.** As of the date of execution of this Agreement or Security Joinder Agreement by each Grantor, as applicable (with respect to each Grantor, its "Applicable Date"), such Grantor shall have:

(a) furnished the Administrative Agent with duly authorized financing statements in form, number and substance suitable for filing in each Grantor's jurisdiction of organization or as otherwise required by the UCC in such jurisdiction of organization, sufficient under applicable law and reasonably satisfactory to the Administrative Agent in order that, upon the filing of the same, the Administrative Agent, for the benefit of the Secured Parties, shall have a duly perfected security interest in all Collateral in which a security interest can be perfected by the filing of such financing statements;

(b) to the extent expressly required by the terms hereof or of the Credit Agreement, or otherwise as the Administrative Agent may reasonably request, furnished the Administrative Agent with control agreements (in form and substance reasonably satisfactory to Administrative Agent), issuer acknowledgments of the Administrative Agent's interest in Letter-of-Credit Rights, and evidence of the placement of a restrictive legend on tangible chattel paper (and the tangible components of electronic Chattel Paper), and taken appropriate action acceptable to the Administrative Agent sufficient to establish the Administrative Agent's control of electronic Chattel Paper (and the electronic components of hybrid Chattel Paper), as appropriate, with respect to Collateral in which either (i) a security interest can be perfected only by control or such restrictive legending, or (ii) a security interest perfected by control or accompanied by such restrictive legending shall have priority as against a lien creditor, a purchaser of such Collateral from the applicable Grantor, or a security interest perfected by Persons not having control or not accompanied by such restrictive legending, in each case in form and substance reasonably acceptable to the Administrative Agent and sufficient under applicable law so that the Administrative Agent, for the benefit of the Secured Parties, shall have a security interest in all such Collateral perfected by control;

(c) to the extent expressly required by the terms hereof or of the Credit Agreement, or otherwise as the Administrative Agent may reasonably request, delivered to the Administrative Agent or, if the Administrative Agent shall specifically consent in each instance, an agent or bailee of the Administrative Agent that has acknowledged such status in a properly executed control agreement (in form and substance reasonably satisfactory to Administrative Agent) possession of all Collateral with respect to which either a security interest can be perfected only by possession or a security interest perfected by possession shall have priority as against Persons not having possession, and including in the case of Instruments, Documents, and Investment Property that are in the form of certificated securities, duly executed endorsements or stock powers in blank, as the case may be, affixed thereto in form and substance reasonably acceptable to the Administrative Agent and sufficient under applicable law so that the Administrative Agent, for the benefit of the Secured Parties, shall have a security interest in all such Collateral perfected by possession; and

(d) with regard to (i) Patents, execute and deliver a Notice of Grant of Security Interest in Patents for filing with the United States Patent and Trademark Office in substantially the form of Exhibit 3(d)(i) hereto, (ii) Trademarks, execute and deliver a Notice of Grant of Security Interest in Trademarks for filing with the United States Patent and Trademark Office in substantially the form of Exhibit 3(d)(ii) hereto, and (iii) Copyrights, execute and deliver a Notice of Grant of Security Interest in Copyrights for filing with the United States Copyright Office in substantially the form of Exhibit 3(d)(iii);

with the effect that the Liens conferred in favor of the Administrative Agent shall be and remain duly perfected and of first priority (except as expressly permitted by the Credit Agreement) subject only, to the extent applicable, to Permitted Liens. All financing statements (including all amendments thereto and continuations thereof), control agreements, certificates, acknowledgments, stock powers and other documents, electronic identification, restrictive legends, and instruments furnished in connection with the creation, enforcement, protection, perfection or priority of the Administrative Agent's security interest in Collateral, including such items as are described above in this Section 3, are sometimes referred to herein as "Perfection Documents". The delivery of possession of items of or evidencing Collateral, causing other Persons to execute and deliver Perfection Documents as appropriate, the filing or recordation of Perfection Documents, the establishment of control over items of Collateral, and the taking of such other actions as may be necessary or advisable in the reasonable determination of the Administrative Agent to create, enforce, protect, perfect, or establish or maintain the priority of, the security interest of the Administrative Agent for the benefit of the Secured Parties in the Collateral is sometimes referred to herein as "Perfection Action".

**4. Maintenance of Security Interest; Further Assurances.**

(a) Each Grantor will from time to time at its own expense, deliver specific assignments of Collateral or such other Perfection Documents, and take such other or additional Perfection Action, as may be required by the terms of the Loan Documents or as the Administrative Agent may reasonably request in connection with the administration or enforcement of this Agreement or related to the Collateral or any part thereof in order to carry out the terms of this Agreement, to perfect, protect, maintain the priority of or enforce the Administrative Agent's security interest in the Collateral, subject only to Permitted Liens, or otherwise to better assure and confirm unto the Administrative Agent its rights, powers and remedies for the benefit of the Secured Parties hereunder. Without limiting the foregoing, each Grantor hereby irrevocably authorizes the Administrative Agent to file (with, or to the extent permitted by applicable law, without the signature of the applicable Grantor appearing thereon) financing statements (including amendments thereto and initial financing statements in lieu of continuation statements) or other Perfection Documents (including copies thereof) showing such Grantor as "debtor" at such time or times and in all filing offices as the Administrative Agent may from time to time reasonably determine to be necessary or advisable to perfect or protect the rights of the Administrative Agent and the Secured Parties hereunder, or otherwise to give effect to the transactions herein contemplated, any of which Perfection Documents, at the Administrative Agent's election, may describe the Collateral as or including "all assets" of such Grantor. Each Grantor hereby irrevocably ratifies and acknowledges the Administrative Agent's authority to have effected filings of Perfection Documents made by the Administrative Agent prior to its Applicable Date.

(b) With respect to any and all Collateral, each Grantor agrees to do and cause to be done all things necessary to perfect, maintain the priority of and keep in full force the security interest granted in favor of the Administrative Agent for the benefit of the Secured Parties, including, but not limited to, the prompt payment upon demand therefor by the Administrative Agent of all fees and expenses (including documentary stamp, excise or intangibles taxes) incurred in connection with the preparation, delivery or filing of any Perfection Document or the taking of any Perfection Action to perfect, protect or enforce a security interest in Collateral in favor of the Administrative Agent for the benefit of the Secured Parties, subject only to Permitted Liens (including cooperating with the Administrative Agent in attempting to obtain such agreements from third parties as the Administrative Agent reasonably deems necessary or advisable in connection with the preservation, perfection or enforcement of any of its rights hereunder, including, without limitation, waivers or subordinations of any liens or security interests a landlord or other person may claim under applicable law or otherwise, and, upon the request of the Administrative Agent,

providing the Administrative Agent with a written list of the names, addresses, telephone numbers and contact persons of all of such Grantor's potential buyers, commission merchants and selling agents of that portion of the Collateral which constitutes Farm Products as defined under the UCC and under the Food Security Act of 1985, as amended from time to time). All amounts not so paid when due shall constitute additional Secured Obligations and (in addition to other rights and remedies resulting from such nonpayment) shall bear interest from the date of demand until paid in full at the Default Rate.

(c) Each Grantor agrees to maintain among its books and records appropriate notations or evidence of, and to make or cause to be made appropriate disclosure upon its financial statements of, the security interest granted hereunder to the Administrative Agent for the benefit of the Secured Parties.

**5. Receipt of Payment.** In the event an Event of Default shall occur and be continuing and a Grantor (or any of its Affiliates, subsidiaries, stockholders, directors, officers, employees or agents) shall receive any proceeds of Collateral, including without limitation monies, checks, notes, drafts or any other items of payment, each Grantor shall hold all such items of payment in trust for the Administrative Agent for the benefit of the Secured Parties, and as the property of the Administrative Agent for the benefit of the Secured Parties, separate from the funds and other property of such Grantor, and no later than the first Business Day following the receipt thereof, at the election of the Administrative Agent, such Grantor shall cause such Collateral to be forwarded to the Administrative Agent for its custody, possession and disposition on behalf of the Secured Parties in accordance with the terms hereof and of the other Loan Documents.

**6. Preservation and Protection of Collateral.**

(a) The Administrative Agent shall be under no duty or liability with respect to the collection, protection or preservation of the Collateral, or otherwise. Each Grantor shall be responsible for the safekeeping of its Collateral, and in no event shall the Administrative Agent have any responsibility for (i) any loss or damage thereto or destruction thereof occurring or arising in any manner or fashion from any cause, (ii) any diminution in the value thereof, or (iii) any act or default of any carrier, warehouseman, bailee or forwarding agency thereof or other Person in any way dealing with or handling such Collateral.

(b) Each Grantor agrees (i) to pay when due all taxes, charges and assessments against the Collateral in which it has any interest, unless being contested in good faith by appropriate proceedings diligently conducted and against which adequate reserves have been established in accordance with GAAP applied on a basis consistent with the application of GAAP in the Audited Financial Statements, and (ii) to cause to be terminated and released all Liens (other than Permitted Liens) on the Collateral. Upon the failure of any Grantor to so pay or contest such taxes, charges, or assessments, or cause such Liens to be terminated, the Administrative Agent at its option may pay or contest any of them or amounts relating thereto (the Administrative Agent having the sole right to determine the legality or validity and the amount necessary to discharge such taxes, charges, Liens or assessments) but shall not have any obligation to make any such payment or contest. All sums so disbursed by the Administrative Agent, including all documented out-of-pocket fees and expenses of counsel (collectively, "Attorneys' Costs"), court costs, expenses and other charges related thereto, shall be payable on demand by the applicable Grantor to the Administrative Agent and shall be additional Secured Obligations secured by the Collateral, and any amounts not so paid on demand (in addition to other rights and remedies resulting from such nonpayment) shall bear interest from the date of demand until paid in full at the Default Rate.

**7.** **<u>Status of Grantors and Collateral Generally</u>.** Each Grantor represents and warrants to, and covenants with, the Administrative Agent for the benefit of the Secured Parties, with respect to itself and the Collateral as to which it has or acquires any interest, that:

(a) It is at its Applicable Date (or as to Collateral acquired after its Applicable Date will be upon the acquisition of the same) and, except as permitted by the Credit Agreement and <u>subsection (b)</u> of this <u>Section 7</u>, will continue to be, the owner of the Collateral, free and clear of all Liens, other than the security interest hereunder in favor of the Administrative Agent for the benefit of the Secured Parties and Permitted Liens, and that it will at its own cost and expense defend such Collateral and any products and proceeds thereof against all claims and demands of all Persons (other than holders of Permitted Liens) to the extent of their claims permitted under the Credit Agreement at any time claiming the same or any interest therein adverse to the Secured Parties. Upon the failure of any Grantor to so defend, the Administrative Agent may do so at its option but shall not have any obligation to do so. All sums so disbursed by the Administrative Agent, including Attorneys' Costs, court costs, expenses and other charges related thereto, shall be payable on demand by the applicable Grantor to the Administrative Agent and shall be additional Secured Obligations secured by the Collateral, and any amounts not so paid on demand (in addition to other rights and remedies resulting from such nonpayment) shall bear interest from the date of demand until paid in full at the Default Rate.

(b) It shall not (i) sell, assign, transfer, lease, license or otherwise dispose of any of, or grant any option with respect to, the Collateral, except as permitted under the Credit Agreement, (ii) create or suffer to exist any Lien upon or with respect to any of the Collateral except for the security interests created by this Agreement and Permitted Liens or (iii) take any other action in connection with any of the Collateral that would materially impair the value of the interest or rights of such Grantor in the Collateral taken as a whole or that would materially impair the interest or rights of the Administrative Agent for the benefit of the Secured Parties.

(c) It has full power, legal right and lawful authority to enter into this Agreement (and any Security Joinder Agreement applicable to it) and to perform its terms, including the grant of the security interests in the Collateral herein provided for.

(d) No authorization, consent, approval or other action by, and no notice to or filing with, any Governmental Authority or any other Person which has not been given or obtained, as the case may be, is required either (i) for the grant by such Grantor of the security interests granted hereby or for the execution, delivery or performance of this Agreement (or any Security Joinder Agreement) by such Grantor, (ii) for the perfection of the security interests created under this Agreement (or any Security Joinder Agreement) or (iii) the exercise by the Administrative Agent, on behalf of the Secured Parties, of its rights and remedies hereunder, except for (A) consents or filings under the UCC, (B) filings with the United States Copyright Office and/or the United States Patent and Trademark Office, and (C) any ordinary course of business filings required in connection with the exercise of remedies and the acquisition or disposition of any Grantor's assets by the Administrative Agent or any Lender.

(e) No effective financing statement or other Perfection Document similar in effect, nor any other Perfection Action, covering all or any part of the Collateral purported to be granted or taken by or on behalf of such Grantor (or by or on behalf of any other Person and which remains effective as against all or any part of the Collateral) has been filed in any recording office, delivered to another Person for filing (whether upon the occurrence of a contingency or otherwise), or otherwise taken, as the case may be, except such as pertain to Permitted Liens and such as may

have been filed for the benefit of, delivered to, or taken in favor of, the Administrative Agent for the benefit of the Secured Parties in connection with the security interests conferred hereunder.

(f) Schedule 7(f) attached hereto contains true and complete information as to each of the following: (i) the exact legal name of each Grantor as it appears in its Organization Documents as of its Applicable Date and at any time during the five (5) year period ending as of its Applicable Date (the "Covered Period"), (ii) the jurisdiction of formation and form of organization of each Grantor, and the identification number of such Grantor in its jurisdiction of formation (if any) as of its Applicable Date and at any time during the Covered Period, (iii) each address of the chief executive office of each Grantor as of its Applicable Date and at any time during the Covered Period, (iv) all trade names or trade styles used by such Grantor as of its Applicable Date and at any time during the Covered Period, (v) the address of each location of such Grantor at which any tangible personal property Collateral is located at its Applicable Date and (vi) with respect to each location described in clause (v) whether such location is owned or leased by a Loan Party or is a bailee or other arrangement. No Grantor shall change its name, change its jurisdiction of formation (whether by reincorporation, merger or otherwise), change the location of its chief executive office, except in each case upon giving not less than thirty (30) days prior written notice to the Administrative Agent (or such shorter period as the Administrative Agent may agree) and taking or causing to be taken at such Grantor's expense all such Perfection Action, including the delivery of such Perfection Documents, as may be reasonably requested by the Administrative Agent to perfect or protect, or maintain the perfection and priority of, the Lien of the Administrative Agent for the benefit of the Secured Parties in Collateral contemplated hereunder.

(g) No Grantor shall cause, suffer or permit any of the tangible personal property Collateral with a book or replacement value in excess of $250,000 (i) to be evidenced by any document of title (except for shipping documents as necessary or customary to effect the receipt of raw materials or components or the delivery of inventory to customers, in each case in the ordinary course of business) or (ii) to be in the possession, custody or control of any warehouseman or other bailee without the prior written consent of the Administrative Agent in each instance, unless such location and Person are set forth on Schedule 7(f) or the Administrative Agent shall have received not less than thirty (30) days' prior written notice (or such shorter period as the Administrative Agent may agree) of each such transaction, the Administrative Agent shall have received a duly executed lien waiver or subordination and access agreement (in form and substance reasonably satisfactory to the Administrative Agent) from such warehouseman or bailee, and the Grantor shall have caused at its expense to be prepared and executed such additional Perfection Documents and to be taken such other Perfection Action as the Administrative Agent may deem necessary or advisable to carry out the transactions contemplated by this Agreement.

(h) With respect to any location that is now or hereafter leased by a Loan Party (excluding any individual location where the aggregate value of all tangible personal property Collateral located thereon does not exceed $250,000), to the extent requested by the Administrative Agent (unless otherwise waived by the Administrative Agent), such Grantor shall cause such lessor to, among other things, acknowledge the Lien in favor of the Administrative Agent for the benefit of the Secured Parties conferred hereunder, waive or subordinate its statutory and consensual liens and rights with respect to such Collateral and grant the Administrative Agent access to such Collateral in a written agreement in form and substance reasonably acceptable to the Administrative Agent.

**8.** **Inspection.** Without limiting the generality of Section 6.10 of the Credit Agreement, the Administrative Agent (by any of its officers, employees and agents), on behalf of the Secured Parties, shall have the right upon prior notice to any Grantor, and at any reasonable time during such Grantor's usual

business hours, to inspect the Collateral, all records related thereto (and to make extracts or copies from such records), and the premises upon which any of the Collateral is located, to discuss such Grantor's affairs and finances with any Person (other than Persons obligated on any Accounts ("Account Debtors") except as expressly otherwise permitted in the Loan Documents) and to verify with any Person other than (except as expressly otherwise permitted in the Loan Documents) Account Debtors the amount, quality, quantity, value and condition of, or any other matter relating to, the Collateral and, if an Event of Default has occurred and is continuing, to discuss such Grantor's affairs and finances with such Grantor's Account Debtors and to verify the amount, quality, value and condition of, or any other matter relating to, the Collateral with such Account Debtors.

**9. Specific Collateral.**

(a) **Accounts.** With respect to its Accounts whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Each Grantor shall keep accurate and complete records of its Accounts ("Account Records") and from time to time at intervals designated by the Administrative Agent such Grantor shall provide the Administrative Agent with a schedule of Accounts in form and substance reasonably acceptable to the Administrative Agent describing all Accounts created or acquired by such Grantor ("Schedule of Accounts"); provided that such Grantor's failure to execute and deliver any such Schedule of Accounts shall not affect or limit the Administrative Agent's security interest or other rights in and to any Accounts for the benefit of the Secured Parties. If requested by the Administrative Agent, each Grantor shall furnish the Administrative Agent with copies of proof of delivery and other documents relating to the Accounts so scheduled, including without limitation repayment histories and present status reports (collectively, "Account Documents") and such other matter and information relating to the status of then existing Accounts as the Administrative Agent shall reasonably request.

(ii) All Account Records and Account Documents are, and shall at all times be, located only at such Grantor's current chief executive office as set forth on Schedule 7(f) attached hereto or such other locations as are specifically identified on Schedule 7(f) attached hereto as an "Account Documents location," or as to which such Grantor has complied with Section 7(f) hereof.

(iii) The Accounts are genuine, are in all material respects what they purport to be, are not evidenced by an instrument or document or, if evidenced by an instrument or document, are only evidenced by one original instrument or document.

(iv) The Accounts cover bona fide sales, leases, licenses or other dispositions of property usually dealt in by such Grantor, or the rendition by such Grantor of services, to an Account Debtor in the ordinary course of business.

(v) Except for conditions generally applicable to such Grantor's industry and markets, there are no facts, events, or occurrences known to such Grantor pertaining particularly to any Accounts which are reasonably expected to material impair the validity, collectibility or enforcement of Accounts that would reasonably be likely, in the aggregate, to be of material economic value, or in the aggregate materially reduce the amount payable thereunder from the amount of the invoice face value shown on any Schedule of Accounts,

or on any certificate, contract, invoice or statement delivered to the Administrative Agent with respect thereto.

(vi) The property or services giving rise thereto are not, and were not at the time of the sale or performance thereof, subject to any Lien, claim, encumbrance or security interest, except those of the Administrative Agent for the benefit of Secured Parties and Permitted Liens (or, in the case of the Accounts existing as of the Applicable Date with respect to any Grantor, Liens in favor of the prior lender to such Grantor (which such Liens are being released concurrently with such Grantor becoming a party hereto unless such Liens are Permitted Liens).

(b) **Inventory.** With respect to its Inventory whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Each Grantor shall keep records that are complete and accurate in all material respects itemizing and describing the kind, type, location and quantity of Inventory, its cost therefor and the selling price of Inventory held for sale, and the daily withdrawals therefrom and additions thereto, and shall furnish to the Administrative Agent from time to time at reasonable intervals designated by the Administrative Agent, a current schedule of Inventory ("Schedule of Inventory") based upon its most recent physical inventory and its daily inventory records. Each Grantor shall conduct a physical inventory no less frequently than annually, and shall furnish to the Administrative Agent such other documents and reports thereof as the Administrative Agent shall reasonably request with respect to the Inventory.

(ii) All Inventory, other than Inventory having a value of less than $250,000 at a particular location, is and shall at all times be located only at such Grantor's locations as set forth on Schedule 7(f) attached hereto or at such other locations as to which such Grantor has complied with Section 7(f) hereof. No Grantor shall, other than in connection with its sale, lease, or license in the ordinary course of business or other permitted Disposition, remove any Inventory having an aggregate value in excess of that stated in the preceding sentence from such locations.

(c) **Equipment.** With respect to its Equipment whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) The Grantors, as soon as practicable following a request therefor by the Administrative Agent, shall deliver to the Administrative Agent any and all evidence of ownership of any of the Equipment (including without limitation certificates of title and applications for title).

(ii) The Grantors shall maintain itemized records that are accurate in all material respects describing the kind, type, quality, quantity and value of its Equipment and shall furnish the Administrative Agent upon request with a current schedule containing the foregoing information, but, other than during the continuance of an Event of Default, not more often than once per fiscal quarter.

(iii) All Equipment, other than Equipment having a value of less than $250,000 at a particular location, is and shall at all times be located only at such Grantor's locations

as set forth on Schedule 7(f) attached hereto or at such other locations as to which such Grantor has complied with Section 7(f) hereof. No Grantor shall, other than as expressly permitted under the Credit Agreement, sell, lease, transfer, dispose of or remove any Equipment having an aggregate value in excess of that stated in the preceding sentence from such locations.

(d) **Supporting Obligations.** With respect to its Supporting Obligations whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Each Grantor shall upon the request of the Administrative Agent from time to time, deliver to the Administrative Agent the originals of all documents evidencing or constituting Supporting Obligations, together with such other documentation (executed as appropriate by such Grantor) and information as may be necessary to enable the Administrative Agent to realize upon the Supporting Obligations in accordance with their respective terms or transfer the Supporting Obligations as may be permitted under the Loan Documents or by applicable Law.

(ii) With respect to each letter of credit giving rise to Letter-of-Credit Rights that has an aggregate stated amount available to be drawn in excess of $250,000, each Grantor shall, at the request of the Administrative Agent, use its best efforts to cause the issuer thereof to execute and deliver to the Administrative Agent a consent to assignment of such Letter-of-Credit Rights (in form and substance reasonably satisfactory to Administrative Agent).

(e) **Investment Property.** With respect to its Investment Property whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Schedule 9(e) attached hereto contains, as of its Applicable Date, a true and complete description of (x) the name and address of each securities intermediary with which such Grantor maintains a securities account in which Investment Property is or may at any time be credited or maintained, and (y) all other Investment Property of such Grantor other than interests in Subsidiaries in which such Grantor has granted a Lien to the Administrative Agent for the benefit of the Secured Parties pursuant to the Pledge Agreement.

(ii) Except with the express prior written consent of the Administrative Agent in each instance, all Investment Property (other than security entitlements credited to an individual securities account with an aggregate value of less than $250,000) shall be maintained at all times in the form of (a) certificated securities, which certificates shall have been delivered to the Administrative Agent together with duly executed undated stock powers endorsed in blank pertaining thereto, or (b) security entitlements credited to one or more securities accounts as to each of which the Administrative Agent has received (1) copies of the account agreement between the applicable securities intermediary and such Grantor and the most recent statement of account pertaining to such securities account (each certified to be true and correct by an officer of such Grantor) and (2) if requested by the Administrative Agent, a control agreement (in form and substance reasonably satisfactory to Administrative Agent) from the applicable securities intermediary which remains in full force and effect and as to which the Administrative Agent has not received any notice of termination. Without limiting the generality of the foregoing, no Grantor

shall cause, suffer or permit any Investment Property to be credited to or maintained in any securities account not listed on Schedule 9(e) attached hereto except in each case upon giving not less than thirty (30) days' prior written notice to the Administrative Agent (or such shorter period as the Administrative Agent may agree) and taking or causing to be taken at such Grantor's expense all such Perfection Action, including the delivery of such Perfection Documents, as may be reasonably requested by the Administrative Agent to perfect or protect, or maintain the perfection and priority of, the Lien of the Administrative Agent for the benefit of the Secured Parties in Collateral contemplated hereunder.

(iii) So long as no Event of Default shall have occurred and be continuing, the registration of Investment Property in the name of a Grantor as record and beneficial owner shall not be changed and such Grantor shall be entitled to exercise all voting and other rights and powers pertaining to Investment Property for all purposes not inconsistent with the terms hereof or of the control agreement relating thereto.

(iv) Upon the occurrence and during the continuance of any Event of Default, at the option of the Administrative Agent, all rights of the Grantors to exercise the voting or consensual rights and powers which it is authorized to exercise pursuant to clause (iii) immediately above shall cease and the Administrative Agent may thereupon (but shall not be obligated to), at its request, cause such Collateral to be registered in the name of the Administrative Agent or its nominee or agent for the benefit of the Secured Parties and/or exercise such voting or consensual rights and powers as appertain to ownership of such Collateral, and to that end each Grantor hereby appoints the Administrative Agent as its proxy, with full power of substitution, to vote and exercise all other rights as an owner with respect to such Investment Property upon the occurrence and during the continuance of any Event of Default, which proxy is coupled with an interest and is irrevocable until termination of this Agreement in accordance with Section 24, and each Grantor hereby agrees to provide such further proxies as the Administrative Agent may request; provided that the Administrative Agent in its discretion may from time to time refrain from exercising, and shall not be obligated to exercise, any such voting or consensual rights or such proxy.

(f) **Deposit Accounts.** With respect to its Deposit Accounts whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Schedule 9(f) attached hereto contains, as of its Applicable Date, a true and complete description of the name and address of each depositary institution with which such Grantor maintains a Deposit Account in which collected balances or deposits in excess of $100,000 are or may at any time be credited or maintained.

(ii) If requested by the Administrative Agent, all Deposit Accounts (except for any Deposit Account used for payroll or any employee benefit plan) in which collected balances or deposits in excess of $1,000,000 are or may at any time be credited or maintained shall be maintained at all times with depositary institutions as to which the Administrative Agent shall have received a control agreement (in form and substance reasonably satisfactory to Administrative Agent).

(g) **Chattel Paper.** With respect to its Chattel Paper whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Each Grantor shall at all times retain sole physical possession of the originals of all Chattel Paper (other than electronic Chattel Paper and the electronic components of hybrid Chattel Paper); provided, however, that (x) upon the request of the Administrative Agent from time to time, such Grantor shall immediately deliver physical possession of such Chattel Paper to the Administrative Agent or its designee, and (y) in the event that there shall be created more than one original counterpart of any physical document that alone or in conjunction with any other physical or electronic document constitutes Chattel Paper, then such counterparts shall be numbered consecutively starting with "1" and such Grantor shall retain the counterpart numbered "1".

(ii) All counterparts of all tangible Chattel Paper (and the tangible components of hybrid Chattel Paper) shall immediately upon the creation or acquisition thereof by any Grantor be conspicuously legended as follows: "A FIRST PRIORITY SECURITY INTEREST IN THIS CHATTEL PAPER HAS BEEN GRANTED TO FARM CREDIT MID-AMERICA, PCA, FOR ITSELF AND AS ADMINISTRATIVE AGENT FOR CERTAIN SECURED PARTIES PURSUANT TO A SECURITY AGREEMENT DATED AS OF JULY 22, 2022, AS AMENDED FROM TIME TO TIME. NO SECURITY INTEREST OR OTHER INTEREST IN FAVOR OF ANY OTHER PERSON MAY BE CREATED BY THE TRANSFER OF PHYSICAL POSSESSION OF THIS CHATTEL PAPER OR OF ANY COUNTERPART HEREOF EXCEPT BY OR WITH THE CONSENT OF THE AFORESAID ADMINISTRATIVE AGENT AS PROVIDED IN SUCH SECURITY AGREEMENT." In the case of electronic Chattel Paper (including the electronic components of hybrid Chattel Paper), no Grantor shall create or acquire any such Chattel Paper unless, prior to such acquisition or creation, it shall have taken such Perfection Action as the Administrative Agent may require to perfect by control the security interest of the Administrative Agent for the benefit of the Secured Parties in such Collateral.

(iii) Other than in the ordinary course of business and in keeping with reasonable and customary practice, no Grantor shall amend, modify, waive or terminate any provision of, or fail to exercise promptly and diligently each material right or remedy conferred under or in connection with, any Chattel Paper, in any case in such a manner as could reasonably be expected to materially adversely affect the value of affected Chattel Paper as collateral.

(h) **Instruments.** With respect to its Instruments whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Each Grantor shall upon the request of the Administrative Agent from time to time, deliver to the Administrative Agent the originals of all such Instruments in excess of $250,000, together with duly executed undated endorsements in blank affixed thereto and such other documentation and information as may be necessary to enable the Administrative Agent to realize upon the Instruments in accordance with their respective terms or transfer the Instruments as may be permitted under the Loan Documents or by applicable law.

(ii) Other than in the ordinary course of business and in keeping with reasonable and customary practice, no Grantor shall amend, modify, waive or terminate any provision of, or fail to exercise promptly and diligently each material right or remedy

conferred under or in connection with, any Instrument, in any case in such a manner as could reasonably be expected to materially adversely affect the value of affected Instrument as collateral.

(i) **Commercial Tort Claims.** With respect to its Commercial Tort Claims whether now existing or hereafter created or acquired and wheresoever located, each Grantor represents, warrants and covenants to the Administrative Agent for the benefit of the Secured Parties that:

(i) Schedule 9(i) attached hereto contains a true and complete list of all Commercial Tort Claims in which any Grantor has an interest and which have been identified by a Grantor as of its Applicable Date or the most recent date such Schedule has been updated, as applicable, and as to which such Grantor believes in good faith there exists the possibility of recovery (including by way of settlement) of monetary relief in excess of $250,000 ("Grantor Claims"). Each Grantor shall furnish to the Administrative Agent from time to time upon its reasonable request a certificate of an officer of such Grantor referring to this Section 9(i) and (x) identifying all Grantor Claims that are not then described on Schedule 9(i) attached hereto and stating that each of such additional Grantor Claims shall be deemed added to such Schedule 9(i) and shall constitute a Commercial Tort Claim, a Grantor Claim, and additional Collateral hereunder, and (y) summarizing the status or disposition of any Grantor Claims that have been settled, or have been made the subject of any binding mediation, judicial or arbitral proceeding, or any judicial or arbitral order on the merits, or that have been abandoned. With respect to each such additional Grantor Claim, such Grantor Claim shall be and become part of the Collateral hereunder from the date such claim is identified to the Administrative Agent as provided above without further action, and (ii) the Administrative Agent is hereby authorized at the expense of the applicable Grantor to execute and file such additional financing statements or amendments to previously filed financing statements, and take such other action as it may reasonably deem necessary or advisable, to perfect the Lien on such additional Grantor Claims conferred hereunder, and the applicable Grantor shall, if required by applicable law or otherwise at the request of the Administrative Agent, execute and deliver such Perfection Documents and take such other Perfection Action as the Administrative Agent may reasonably determine to be necessary or advisable to perfect or protect the Lien of the Administrative Agent for the benefit of the Secured Parties in such additional Grantor Claims conferred hereunder.

(j) **Patents and Trademarks.**

(i) Each Grantor represents and warrants that, as of its Applicable Date or the most recent date such Schedule has been updated, as applicable, it has no Patents issued or registered with the United States Patent and Trademark Office ("USPTO") other than the Patents listed on Schedule 9(j) attached hereto.

(ii) Each Grantor represents and warrants that, as of its Applicable Date or the most recent date such Schedule has been updated, as applicable, it has no Trademarks registered with the USPTO other than the Trademarks listed on Schedule 9(j) attached hereto.

(iii) Each Grantor shall furnish to the Administrative Agent semi-annually, and in any event not later than the respective dates established in Sections 6.1(a) and 6.1(b) of the Credit Agreement for the delivery of financial statements for the second quarter and fiscal year end of such semi-annual period, and otherwise from time to time at the

Administrative Agent's request, such supplements to Schedule 9(j) necessary to keep the representations and warranties in this Section 9(j) true and complete.

(k) **Copyrights.** Each Grantor represents and warrants that, as of its Applicable Date or the most recent date such Schedule has been updated, as applicable, it has no Copyrights registered with the United States Copyright Office other than those Copyrights listed on Schedule 9(k) attached hereto. Each Grantor shall furnish to the Administrative Agent semi-annually, and in any event not later than the respective dates established in Sections 6.1(a) and 6.1(b) of the Credit Agreement for the delivery of financial statements for the second quarter and fiscal year end of such semi-annual period, and otherwise from time to time at the Administrative Agent's request, such supplements to Schedule 9(k) necessary to keep the representations and warranties in this Section 9(k) true and complete.

## 10. Casualty and Liability Insurance Required.

(a) Each Grantor will maintain insurance with respect to the Collateral to the extent required under Section 6.7 of the Credit Agreement, which such insurance shall (i) prohibit cancellation or substantial modification, termination or lapse in coverage by the insurer without at least thirty (30) days' prior written notice to the Administrative Agent, except for non-payment of premium, as to which such policies shall provide for at least ten (10) days' prior written notice to the Administrative Agent, and (ii) where applicable, name the Administrative Agent, for the benefit of the Secured Parties, as lender's loss payee and the Administrative Agent and the other Secured Parties as parties insured thereunder in respect of any claim for payment.

(b) Prior to expiration of any such policy, such Grantor shall furnish the Administrative Agent with evidence reasonably satisfactory to the Administrative Agent that the policy or certificate has been renewed or replaced or is no longer required by this Agreement.

(c) Each Grantor hereby makes, constitutes and appoints the Administrative Agent (and all officers, employees or agents designated by the Administrative Agent), for the benefit of the Secured Parties, as such Grantor's true and lawful attorney (and agent-in-fact) for the purpose of making, settling and adjusting claims under such policies of insurance, endorsing the name of such Grantor on any check, draft, instrument or other item or payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance, which appointment is coupled with an interest and is irrevocable; provided, however, that the powers pursuant to such appointment shall be exercisable only upon the occurrence and during the continuation of an Event of Default.

(d) In the event such Grantor shall fail to maintain, or fail to cause to be maintained, the full insurance coverage required hereunder or shall fail to keep any of its Collateral in good repair and good operating condition, normal wear and tear excepted, the Administrative Agent may (but shall be under no obligation to), without waiving or releasing any Secured Obligation or Default or Event of Default by such Grantor hereunder, contract for the required policies of insurance and pay the premiums on the same or make any required repairs, renewals and replacements; and all sums so disbursed by Administrative Agent, including Attorneys' Costs, court costs, expenses and other charges related thereto, shall be payable on demand by such Grantor to the Administrative Agent, shall be additional Secured Obligations secured by the Collateral, and (in addition to other rights and remedies resulting from such nonpayment) shall bear interest from the date of demand until paid in full at the Default Rate.

(e) The provisions contained in this Agreement pertaining to insurance shall be cumulative with any additional provisions imposing additional insurance requirements with respect to the Collateral or any other property on which a Lien is conferred under any Collateral Document.

**11. Rights and Remedies Upon Event of Default.** Upon and during the continuance of an Event of Default, the Administrative Agent shall have the following rights and remedies on behalf of the Secured Parties in addition to any rights and remedies set forth elsewhere in this Agreement or the other Loan Documents, all of which may be exercised with or, if allowed by law, without notice to a Grantor:

(a) All of the rights and remedies of a secured party under the UCC or under other applicable law, all of which rights and remedies shall be cumulative, and none of which shall be exclusive, to the extent permitted by law, in addition to any other rights and remedies contained in this Agreement or any other Loan Document;

(b) The right to foreclose the Liens and security interests created under this Agreement by any available judicial procedure or without judicial process;

(c) The right to (i) enter upon the premises of a Grantor through self-help and without judicial process, without first obtaining a final judgment or giving such Grantor notice or opportunity for a hearing on the validity of the Administrative Agent's claim and without any obligation to pay rent to such Grantor, or any other place or places where any Collateral is located and kept, and remove the Collateral therefrom to the premises of the Administrative Agent or any agent of the Administrative Agent, for such time as the Administrative Agent may desire, in order effectively to collect or liquidate the Collateral, (ii) require such Grantor or any bailee or other agent of such Grantor to assemble the Collateral and make it available to the Administrative Agent at a place to be designated by the Administrative Agent and (iii) notify any or all Persons party to a control agreement or who otherwise have possession of or control over any Collateral of the occurrence of an Event of Default and other appropriate circumstances, and exercise control over and take possession or custody of any or all Collateral in the possession, custody or control of such other Persons;

(d) The right to (i) exercise all of a Grantor's rights and remedies with respect to the collection of Accounts, Chattel Paper, Instruments, Supporting Obligations and General Intangibles (collectively, "Payment Collateral"), including the right to demand payment thereof and enforce payment, by legal proceedings or otherwise; (ii) settle, adjust, compromise, extend or renew all or any Payment Collateral or any legal proceedings pertaining thereto; (iii) discharge and release all or any Payment Collateral; (iv) take control, in any manner, of any item of payment or proceeds referred to in Section 5 above; (v) prepare, file and sign a Grantor's name on any Proof of Claim in bankruptcy, notice of Lien, assignment or satisfaction of Lien or similar document in any action or proceeding adverse to any obligor under any Payment Collateral or otherwise in connection with any Payment Collateral; (vi) endorse the name of a Grantor upon any chattel paper, document, instrument, invoice, freight bill, bill of lading or similar document or agreement relating to any Collateral; (vii) use the information recorded on or contained on a Grantor's internet website or otherwise in any data processing equipment and computer hardware and software relating to any Collateral to which a Grantor has access; (viii) open such Grantor's mail and collect any and all amounts due to such Grantor from any Account Debtor or other obligor in respect of Payment Collateral; (ix) take over such Grantor's post office boxes or make other arrangements as the Administrative Agent, on behalf of the Secured Parties, deems necessary to receive such Grantor's mail, including notifying the post office authorities to change the address for delivery of such Grantor's mail to such address as the Administrative Agent, on behalf of the Secured Parties, may designate; (x) notify any or all Account Debtors or other obligors on any Payment Collateral that

Secured Parties, and shall pay to the Administrative Agent, for the benefit of the Secured Parties, on demand any deficiency which may remain after such sale, disposition, collection or liquidation of the Collateral.

**12. Attorney-in-Fact.** Each Grantor hereby appoints the Administrative Agent as such Grantor's attorney-in-fact for the purposes of carrying out the provisions of this Agreement and taking any action and executing any instrument which the Administrative Agent may deem necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest; provided that the Administrative Agent shall have and may exercise rights under this power of attorney only upon the occurrence and during the continuance of an Event of Default. Without limiting the generality of the foregoing, upon the occurrence and during the continuance of an Event of Default, the Administrative Agent shall have the right and power:

(a) to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b) to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (a) above;

(c) to endorse such Grantor's name on any checks, notes, drafts or any other payment relating to or constituting proceeds of the Collateral which comes into the Administrative Agent's possession or the Administrative Agent's control, and deposit the same to the account of the Administrative Agent, for the benefit of the Secured Parties, on account and for payment of the Secured Obligations.

(d) to file any claims or take any action or institute any proceedings that the Administrative Agent may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of the Administrative Agent, for the benefit of the Secured Parties, with respect to any of the Collateral; and

(e) to execute, in connection with any sale or other disposition of Collateral provided for herein, any endorsement, assignments, or other instruments of conveyance or transfer with respect thereto.

**13. Reinstatement.** The granting of a security interest in the Collateral and the other provisions hereof shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Secured Obligations is rescinded or must otherwise be returned by any Secured Party or is repaid by any Secured Party in whole or in part in good faith settlement of a pending or threatened avoidance claim, whether upon the insolvency, bankruptcy or reorganization of any Grantor or any other Loan Party or otherwise, all as though such payment had not been made. The provisions of this Section 13 shall survive repayment of all of the Secured Obligations and the termination or expiration of this Agreement in any manner, including but not limited to termination upon the occurrence of the Facility Termination Date.

**14. Certain Waivers by the Grantors.** Each Grantor waives to the extent permitted by applicable law (a) any right to require any Secured Party or any other obligee of the Secured Obligations to (i) proceed against any Person, including without limitation any Loan Party, (ii) proceed against or exhaust any Collateral or other collateral for the Secured Obligations, or (iii) pursue any other remedy in its power; (b) any defense arising by reason of any disability or other defense of any other Person, or by reason of the cessation from any cause whatsoever of the liability of any other Person, (c) any right of subrogation, and (d) any right to enforce any remedy which any Secured Party or any other obligee of the Secured Obligations now has or may hereafter have against any other Person and any benefit of and any right to participate in

any collateral or security whatsoever now or hereafter held by the Administrative Agent for the benefit of the Secured Parties. Each Grantor authorizes each Secured Party and each other obligee of the Secured Obligations without notice or demand and without affecting its liability hereunder or under the Loan Documents from time to time to: (i) take and hold security, other than the Collateral herein described, for the payment of such Secured Obligations or any part thereof, and exchange, enforce, waive and release the Collateral herein described or any part thereof or any such other security; and (ii) apply such Collateral or other security and direct the order or manner of sale thereof as such Secured Party or obligee in its discretion may determine.

The Administrative Agent may at any time deliver (without representation, recourse or warranty) the Collateral or any part thereof to a Grantor and the receipt thereof by such Grantor shall be a complete and full acquittance for the Collateral so delivered, and the Administrative Agent shall thereafter be discharged from any liability or responsibility therefor.

**15. Continued Powers.** Until termination of this Agreement in accordance with Section 24, the power of sale and other rights, powers and remedies granted to the Administrative Agent for the benefit of the Secured Parties hereunder shall continue to exist and may be exercised by the Administrative Agent at any time and from time to time irrespective of the fact that any of the Secured Obligations or any part thereof may have become barred by any statute of limitations or that any part of the liability of any Grantor may have ceased.

**16. Other Rights.** The rights, powers and remedies given to the Administrative Agent for the benefit of the Secured Parties by this Agreement shall be in addition to all rights, powers and remedies given to the Administrative Agent or any other Secured Party under any other Loan Document or by virtue of any statute or rule of law. Any forbearance or failure or delay by the Administrative Agent in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy hereunder shall not preclude the further exercise thereof; and every right, power and remedy of the Secured Parties shall continue in full force and effect until such right, power or remedy is specifically waived in accordance with the terms of the Credit Agreement.

**17. Anti-Marshaling Provisions.** The right is hereby given by each Grantor to the Administrative Agent, for the benefit of the Secured Parties, to make releases (whether in whole or in part) of all or any part of the Collateral agreeable to the Administrative Agent without notice to, or the consent, approval or agreement of other parties and interests, including junior lienors, which releases shall not impair in any manner the validity of or priority of the Liens and security interests in the remaining Collateral conferred hereunder, nor release any Grantor from personal liability for the Secured Obligations. Notwithstanding the existence of any other security interest in the Collateral held by the Administrative Agent, for the benefit of the Secured Parties, the Administrative Agent shall have the right to determine the order in which any or all of the Collateral shall be subjected to the remedies provided in this Agreement. Each Grantor hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein or in any other Loan Document.

**18. Entire Agreement.** This Agreement and each Security Joinder Agreement, together with the Credit Agreement and other Loan Documents, constitute and express the entire understanding between the parties hereto with respect to the subject matter hereof, and supersede all prior negotiations, agreements, understandings, inducements, commitments or conditions, express or implied, oral or written, except as contained in the Loan Documents. The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof. Except as provided in Sections 24 and 26, neither this Agreement nor any Security Joinder Agreement nor any portion or provision hereof

or thereof may be changed, altered, modified, supplemented, discharged, canceled, terminated, or amended orally or in any manner other than as provided in the Credit Agreement.

**19.** **Third Party Reliance.** Each Grantor hereby consents and agrees that all issuers of or obligors in respect of any Collateral, and all securities intermediaries, warehousemen, bailees, public officials and other Persons having any interest in, possession of, control over or right, privilege, duty or discretion in respect of, any Collateral shall be entitled to accept the provisions hereof and of the Security Joinder Agreements as conclusive evidence of the right of the Administrative Agent, on behalf of the Secured Parties, to exercise its rights hereunder or thereunder with respect to the Collateral, notwithstanding any other notice or direction to the contrary heretofore or hereafter given by any Grantor or any other Person to any of such Persons.

**20.** **Binding Agreement; Assignment.** This Agreement and each Security Joinder Agreement, and the terms, covenants and conditions hereof and thereof, shall be binding upon and inure to the benefit of the parties hereto and thereto, and to their respective successors and assigns; provided that no Grantor shall be permitted to assign any of its rights, powers, duties or obligations under this Agreement, any Security Joinder Agreement or any interest herein or therein or in the Collateral or any part thereof or interest therein, in each case except as expressly permitted herein or in the Credit Agreement. Without limiting the generality of the foregoing sentence of this Section 20, any Lender may assign to one or more Persons, or grant to one or more Persons participations in or to, all or any part of its rights and obligations under the Credit Agreement (in each case, to the extent permitted by the Credit Agreement); and to the extent of any such assignment or participation such other Person shall, to the fullest extent permitted by law, thereupon become vested with all the benefits in respect thereof granted to such Lender herein or otherwise, subject however, to the provisions of the Credit Agreement, including Article IX thereof (concerning the Administrative Agent) and Section 10.6 thereof (concerning assignments and participations). All references herein to the Administrative Agent shall include any successor thereof.

**21.** **[Reserved.]**

**22.** **Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable, (a) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby and (b) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**23.** **Counterparts.** This Agreement may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart executed by the Grantor against whom enforcement is sought. Without limiting the foregoing provisions of this Section 23, the provisions of Section 10.13 of the Credit Agreement shall be applicable to this Agreement.

**24.** **Termination; Partial Release.**

(a) Subject to reinstatement pursuant to Section 13, this Agreement and each Security Joinder Agreement, and all obligations of the Grantors hereunder (excluding those obligations and liabilities that expressly survive such termination) shall terminate upon the occurrence of the Facility Termination Date. Upon such termination of this Agreement, the Administrative Agent shall, at the request and sole expense of the Grantors, promptly deliver to the Grantors such termination statements and take such further actions as the Grantors may reasonably request to

terminate of record, or otherwise to give appropriate notice of the termination of, any Lien created hereby.

(b) If any of the Collateral shall be Disposed of by a Grantor in a transaction expressly permitted under the Credit Agreement (other than to another Grantor) or if a Grantor shall cease to be a Subsidiary in a transaction expressly permitted under the Credit Agreement (including by way of merger, consolidation or liquidation) (other than a merger or consolidation into another Grantor), then the Administrative Agent shall, at the request and sole expense of the Grantors, promptly deliver to such Grantor all releases or other documents reasonably necessary or desirable for the release of the Liens created hereby on such Collateral or the release of such Grantor as a party hereto, as applicable, in accordance with Section 9.11 of the Credit Agreement.

**25. Notices.** Any notice required or permitted hereunder shall be given, (a) with respect to any Grantor, at the address of the Company indicated in Section 10.2 of the Credit Agreement and (b) with respect to the Administrative Agent, at the Administrative Agent's address indicated in Section 10.2 of the Credit Agreement. All such addresses may be modified, and all such notices shall be given and shall be effective, as provided in Section 10.2 of the Credit Agreement for the giving and effectiveness of notices and modifications of addresses thereunder.

**26. Joinder.** Each Person that shall at any time execute and deliver to the Administrative Agent a Security Joinder Agreement substantially in the form attached hereto as Exhibit A shall thereupon irrevocably, absolutely and unconditionally become a party hereto and obligated hereunder as a Grantor and shall have thereupon pursuant to Section 2 granted a security interest in and collaterally assigned to the Administrative Agent for the benefit of the Secured Parties all Collateral in which it has at its Applicable Date or thereafter acquires any interest or the power to transfer, and all references herein and in the other Loan Documents to the Grantors or to the parties to this Agreement shall be deemed to include such Person as a Grantor hereunder. Each Security Joinder Agreement shall be accompanied by the Supplemental Schedules referred to therein, appropriately completed with information relating to the Grantor executing such Security Joinder Agreement and its property. Each of the applicable Schedules attached hereto shall be deemed amended and supplemented without further action by such information reflected on the Supplemental Schedules.

**27. Rules of Interpretation.** The rules of interpretation contained in Section 1.2 of the Credit Agreement shall be applicable to this Agreement and each Security Joinder Agreement and are hereby incorporated by reference. All representations and warranties contained herein shall survive the delivery of documents and any extensions of credit referred to herein or secured hereby.

**28. Governing Law; Jurisdiction; Etc.**

(a) Governing Law. This Agreement and the other Loan Documents (including each Security Joinder Agreement) and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any other Loan Document (except, as to any other Loan Document, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the law of the State of New York.

(b) Submission To Jurisdiction. Each Grantor irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against the Administrative Agent, any Lender, or any Related Party of the foregoing in any way relating to this Agreement or any other Loan Document (including, if applicable, any Security Joinder Agreement) or the transactions

relating hereto or thereto, in any forum other than the courts of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any court thereof, and each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York state court or, to the fullest extent permitted by applicable Law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Nothing in this Agreement or in any other Loan Document (including, if applicable, any Security Joinder Agreement) shall affect any right that the Administrative Agent or any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against any Grantor or its properties in the courts of any jurisdiction.

(c) Waiver of Venue. Each Grantor irrevocably and unconditionally waives, to the fullest extent permitted by applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Loan Document (including, if applicable, any Security Joinder Agreement) in any court referred to in subsection (b) of this Section. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d) Service of Process. Each party hereto irrevocably consents to service of process in the manner provided for notices in Section 25. Nothing in this Agreement will affect the right of any party hereto to serve process in any other manner permitted by applicable Law.

**29. Waiver of Jury Trial.** EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT (INCLUDING, IF APPLICABLE, ANY SECURITY JOINDER AGREEMENT) OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS (INCLUDING, IF APPLICABLE, ANY SECURITY JOINDER AGREEMENT) BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

[Signature pages follow.]

**IN WITNESS WHEREOF**, the parties hereto have duly executed and delivered this Security Agreement as of the day and year first written above.

**GRANTORS:**

**UNCLE NEAREST, INC.**

By: ______________________________
Name: Fawn Weaver
Title: President and Secretary

**NEAREST GREEN DISTILLERY, INC.**

By: ______________________________
Name: Fawn Weaver
Title: President and Secretary

**UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**

By: Uncle Nearest, Inc., its Member

By: ______________________________
Name: Fawn Weaver
Title: President and Secretary

**ADMINISTRATIVE AGENT:**

**FARM CREDIT MID-AMERICA, PCA**, as Administrative Agent

By: Jonathan Boyce
Name: Jonathan Boyce
Title: Financial Officer

**SCHEDULE 7(f)**

**Grantor Information**

| I. | II. | III. | IV. | V. | VI. | VII. |
|---|---|---|---|---|---|---|
| **Name** | **Jurisdiction of Formation/ Form of Equity/I.D. Number** | **Address of Chief Executive Office** | **Trade Names/ Trade Styles** | **Collateral Locations (and Type of Collateral)** | **Name and address of Owner of Collateral Location (If other than Grantor)** | **Relationship of Persons listed in VI to Grantor (e.g., lessor, warehousemen)** |
| Uncle Nearest, Inc. | Delaware, Stock, File Number 6174776 | 3125 US 231 N Shelbyville TN 37160 | Uncle Nearest | 1929 Ridgecrest Dr, Columbia, TN 38401 | **Tennessee Distilling Group** 1929 Ridgecrest Dr, Columbia, TN 38401 | Third Party Processor |
| | | | | | | |
| Nearest Green Distillery, Inc. | Delaware, Stock, File Number 7508408 | 3125 US 231 N Shelbyville TN 37160 | N/A | 3125 US 231 N Shelbyville, TN 37160 Inventory | Uncle Nearest Real Estate Holdings, LLC | N/A |
| | | | | | | |
| Uncle Nearest Real Estate Holdings, LLC | Tennessee, Membership Interest, Control # 1057650 | 3125 US 231 N Shelbyville TN 37160 | N/A | 3125 US 231 N Shelbyville, TN 37160 Real Estate | N/A | N/A |

## SCHEDULE 9(e)

**Investment Property**

| **Grantor** | **Securities Accounts** | | | **Other Investment Property** | |
|---|---|---|---|---|---|
| | Name and Address of Securities Intermediary | Account Number | Name and Type of Issuer | Quantity of Shares or Other Interest | Certificate Number(s) |
| | | | | | |

None.

**SCHEDULE 9(f)**

**Deposit Accounts**

| Grantor | Name of Depository Institution | Address of Depository Institution | Account Number |
|---|---|---|---|
| Uncle Nearest, Inc. | CalPrivate Bank | Beverly Hills Office, 9606 S Santa Monica BL 3rd Fl, Beverly Hills, CA 90210 | 231266 |
| Uncle Nearest, Inc. | CalPrivate Bank | Beverly Hills Office, 9606 S Santa Monica BL 3rd Fl, Beverly Hills, CA 90211 | 245267 |
| Uncle Nearest, Inc. | CalPrivate Bank | Beverly Hills Office, 9606 S Santa Monica BL 3rd Fl, Beverly Hills, CA 90212 | 227099 |
| Uncle Nearest, Inc. | JP Morgan, Chase | P.O. Box 182051, Columbus OH 43218 | 538321065 |
| Uncle Nearest, Inc. | JP Morgan, Chase | P.O. Box 182051, Columbus OH 43219 | 3802085507 |
| Uncle Nearest, Inc. | Capstar Bank | P.O. Box 305065, Nashville, TN 37230 | 7607568818 |
| Nearest Green Distillery, Inc. | Capstar Bank | P.O. Box 305065, Nashville, TN 37231 | 9666758629 |

**SCHEDULE 9(i)**

**Commercial Tort Claims**

| Grantor | Adverse Party(ies) | Nature of Claim | Status of Claim |
| --- | --- | --- | --- |

None.

**SCHEDULE 9(j)**

**Patents and Trademarks**

Patents
None

Trademarks

| Grantor | Status | Application Number | Mark Name | Registration Number |
|---|---|---|---|---|
| UNCLE NEAREST, INC | LIVE 05/08/2018 | 87/121,859 | UNCLE NEAREST | 5,461,698 |
| UNCLE NEAREST, INC | LIVE 11/06/2018 | 87/616,552 | UNCLE NEAREST 1856 | 5,598,640 |
| UNCLE NEAREST, INC | LIVE 11/20/2018 | 87/978,844 | NATHAN GREEN | 5,613,784 |
| UNCLE NEAREST, INC | LIVE 01/29/2019 | 87/718,472 | THE BEST WHISKEY MAKER THE WORLD NEVER KNEW | 5,664,695 |
| UNCLE NEAREST, INC | LIVE 04/02/2019 | 87/121,874 | NEAREST GREEN | 5,715,964 |
| UNCLE NEAREST, INC | LIVE 10/15/2019 | 87/981,880 | UNCLE NEAREST | 5,886,396 |
| UNCLE NEAREST, INC | LIVE 11/24/2020 | 87/144,422 | UNCLE NEAREST | 6,205,943 |
| UNCLE NEAREST, INC | PENDING ALLOWED | 88/209,605 | NEAREST GREEN TENNESSEE WHISKEY MUSEUM | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 88/295,121 | MORE THAN WHISKEY | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/106,924 | UNCLE NEAREST | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/133,886 | NEAREST GREEN | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/133,862 | UNCLE NEAREST | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/218,425 | UNCLE NEAREST CRYSTAL RYE | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/255,724 | NEAREST | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/255,705 | NATHAN GREEN | N/A |
| UNCLE NEAREST, INC | PENDING ALLOWED | 90/260,588 | UNCLE NEAREST | N/A |
| UNCLE NEAREST, INC | PENDING | 90/677,542 | GEORGE GREEN WHISKEY | N/A |

| Grantor | Status | Application Number | Mark Name | Registration Number |
|---|---|---|---|---|
| UNCLE NEAREST, INC | PENDING | 90/690,539 | GROWN FOLK | N/A |
| UNCLE NEAREST, INC | PENDING | 97/377,503 | NEAREST GREEN DISTILLERY | N/A |
| UNCLE NEAREST, INC | PENDING | 97/377,460 | NEAREST GREEN DISTILLERY | N/A |
| UNCLE NEAREST, INC | PENDING | 97/377,414 | NEAREST GREEN DISTILLERY | N/A |
| UNCLE NEAREST, INC | PENDING | 97/377,318 | NEAREST GREEN DISTILLERY | N/A |

**SCHEDULE 9(k)**

**Copyrights**

| Grantor | Copyright | Original Registration Date | Registration Number |
|---|---|---|---|
| | | | |

None.

## EXHIBIT A

### Form of Security Joinder Agreement

### SECURITY JOINDER AGREEMENT

**THIS SECURITY JOINDER AGREEMENT** dated as of _____________, 20__ (this "Security Joinder Agreement"), is made by ______________________________, a ________________ (the "Joining Grantor"), in favor of **FARM CREDIT MID-AMERICA, PCA**, in its capacity as Administrative Agent (in such capacity, the "Administrative Agent") for the Secured Parties (as defined in the Credit Agreement referenced below; except as otherwise provided herein, all capitalized terms used but not defined herein shall have the meanings provided therefor in the Credit Agreement).

**RECITALS:**

A. Uncle Nearest, Inc., a Delaware corporation (the "Company"), Nearest Green Distillery, Inc., a Delaware corporation ("Distillery"), Uncle Nearest Real Estate Holdings, LLC, a Tennessee limited liability company (together with the Company and Distillery, collectively, the "Borrowers"), the lenders party thereto and the Administrative Agent are party to a Credit Agreement dated as of July 22, 2022 (as in effect on the date hereof and as amended, restated, supplemented or otherwise modified from time to time after the date hereof, the "Credit Agreement").

B. The Borrowers, certain of their respective Subsidiaries and the Administrative Agent are party to a Security Agreement dated as of July 22, 2022 (as in effect on the date hereof and as amended, restated, supplemented or otherwise modified from time to time after the date hereof, the "Security Agreement").

C. The Joining Grantor is a Subsidiary of a Borrower and is required by the terms of the Credit Agreement to become a Subsidiary Guarantor and be joined as a party to the Security Agreement as a Grantor (as defined in the Security Agreement).

D. The Joining Grantor will materially benefit directly and indirectly from the making and maintenance of the extensions of credit made from time to time under the Credit Agreement.

In order to induce the Secured Parties to from time to time make and maintain extensions of credit under the Credit Agreement, the Joining Grantor hereby agrees as follows:

**1. Joinder.** The Joining Grantor hereby irrevocably, absolutely and unconditionally becomes a party to the Security Agreement as a Grantor and bound by all the terms, conditions, obligations, liabilities and undertakings of each Grantor or to which each Grantor is subject thereunder, all with the same force and effect as if the Joining Grantor were a signatory to the Security Agreement. Without limiting the generality of the foregoing, the Joining Grantor hereby grants as collateral security for the payment, performance and satisfaction of the Secured Obligations (as defined in the Security Agreement) to the Administrative Agent for the benefit of the Secured Parties a continuing security interest in and to, and collaterally assigns to, the Administrative Agent for the benefit of the Secured Parties, all of the assets of the Joining Grantor constituting Collateral (as defined in the Security Agreement) or in which the Joining Grantor has or may have or acquire an interest or the power to transfer rights therein, whether now owned or existing or hereafter created, acquired or arising and wheresoever located.

2. **Affirmations.** The Joining Grantor hereby acknowledges and affirms as of the date hereof with respect to itself, its properties and its affairs each of the waivers, representations, warranties, acknowledgements and certifications applicable to any Grantor contained in the Security Agreement.

3. **Supplemental Schedules.** Attached to this Security Joinder Agreement are duly completed schedules (the "Supplemental Schedules") supplementing as thereon indicated the respective Schedules to the Security Agreement. The Joining Grantor represents and warrants that the information contained on each of the Supplemental Schedules with respect to the Joining Grantor and its properties and affairs is true, complete and accurate as of the date hereof.

4. **Severability.** If any provision of this Security Joinder Agreement is held to be illegal, invalid or unenforceable, (a) the legality, validity and enforceability of the remaining provisions of this Security Joinder Agreement shall not be affected or impaired thereby and (b) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

5. **Counterparts.** This Security Joinder Agreement may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original, and it shall not be necessary in making proof of this Security Joinder Agreement to produce or account for more than one such counterpart executed by the Joining Grantor. Without limiting the foregoing provisions of this Section 5, the provisions of Section 10.13 of the Credit Agreement shall be applicable to this Security Joinder Agreement.

6. **Delivery**. The Joining Grantor hereby irrevocably waives notice of acceptance of this Security Joinder Agreement and acknowledges that the Secured Obligations are and shall be deemed to be incurred, and credit extensions under the Loan Documents made and maintained, in reliance on this Security Joinder Agreement and the Joining Grantor's joinder as a party to the Security Agreement as herein provided.

7. **Governing Law; Jurisdiction; Waiver of Jury Trial; Etc.** The provisions of Sections 28 and 29 of the Security Agreement are hereby incorporated by reference as if fully set forth herein.

[Signature page follows.]

**IN WITNESS WHEREOF**, the Joining Grantor has duly executed and delivered this Security Joinder Agreement as of the day and year first written above.

JOINING GRANTOR**:**

__________________________________________

By:________________________________________
Name: _____________________________________
Title: _____________________________________

**SUPPLEMENTAL**
**SCHEDULE 7(f)**

**Grantor Information**

| I. | II. | III. | IV. | V. | VI. | VII. |
|---|---|---|---|---|---|---|
| Name | Jurisdiction of Formation/ Form of Equity/I.D. Number | Address of Chief Executive Office | Trade Styles | Collateral Locations (and Type of Collateral) | Name and address of Owner of Collateral Location (If other than Grantor) | Relationship of Persons listed in VI to Grantor (e.g., lessor, warehousemen) |
| | | | | | | |

**SUPPLEMENTAL**
**SCHEDULE 9(e)**

**Investment Property**

| **Grantor** | **Securities Accounts** | | | **Other Investment Property** | |
|---|---|---|---|---|---|
| | Name and Address of Securities Intermediary | Account Number | Name and Type of Issuer | Quantity of Shares or Other Interest | Certificate Number(s) |
| | | | | | |

**SUPPLEMENTAL**
**SCHEDULE 9(f)**

**Deposit Accounts**

| Grantor | Name of Depository Institution | Address of Depository Institution | Account Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**SUPPLEMENTAL**
**SCHEDULE 9(i)**

**Commercial Tort Claims**

| Grantor | Adverse Party(ies) | Nature of Claim | Status of Claim |
| --- | --- | --- | --- |

**SUPPLEMENTAL**
**SCHEDULE 9(j)**

**Patents and Trademarks**

**SUPPLEMENTAL**
**SCHEDULE 9(k)**

**Copyrights**

**EXHIBIT 3(d)(i)**

**NOTICE**

**OF**

**GRANT OF SECURITY INTEREST**

**IN**

**PATENTS**

United States Patent and Trademark Office

Ladies and Gentlemen:

Please be advised that pursuant to the Security Agreement dated as of July 22, 2022 (as the same may be amended, modified, extended or restated from time to time, the "Agreement") by and among the Grantors party thereto (each a "Grantor" and collectively, the "Grantors") and Farm Credit Mid-America, PCA, as Administrative Agent (in such capacity, the "Administrative Agent") on behalf of the Secured Parties (as defined in the Credit Agreement referenced in the Agreement), the undersigned Grantor has granted a continuing security interest in and continuing lien upon the patents and patent applications shown below to the Administrative Agent:

PATENTS

| Patent No. | Description of Patent Item | Date of Patent |
| --- | --- | --- |

See Schedule 1 attached hereto

PATENT APPLICATIONS

| Patent Applications No. | Description of Patent Applied for | Date of Patent Applications |
| --- | --- | --- |

See Schedule 1 attached hereto

The Grantors and the Administrative Agent hereby acknowledge and agree that the security interest in the foregoing patents and patent applications (i) may only be terminated in accordance with the terms of the Agreement and (ii) is not to be construed as an assignment of any patent or patent application.

This Notice may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original.

This Notice shall be governed by and construed in accordance with the law of the State of New York.

Very truly yours,

[GRANTOR]

By:_____________________________
Name:___________________________
Title:____________________________

Acknowledged and Accepted:

FARM CREDIT MID-AMERICA, PCA,
as Administrative Agent

By:_____________________________
Name:___________________________
Title:____________________________


Case 4:25-cv-00038-CEA-CHS Document 1-10 Filed 07/28/25 Page 41 of 45
PageID #: 572

**EXHIBIT 3(d)(ii)**

**NOTICE**

**OF**

**GRANT OF SECURITY INTEREST**

**IN**

**TRADEMARKS**

United States Patent and Trademark Office

Ladies and Gentlemen:

Please be advised that pursuant to the Security Agreement dated as of July 22, 2022 (as the same may be amended, modified, extended or restated from time to time, the "Agreement") by and among the Grantors party thereto (each a "Grantor" and collectively, the "Grantors") and Farm Credit Mid-America, PCA, as Administrative Agent (in such capacity, the "Administrative Agent") on behalf of the Secured Parties (as defined in the Credit Agreement referenced in the Agreement), the undersigned Grantor has granted a continuing security interest in and continuing lien upon the trademarks and trademark applications shown below to the Administrative Agent:

TRADEMARKS

| Trademark No. | Description of Trademark Item | Date of Trademark |
|---|---|---|

See Schedule 1 attached hereto

TRADEMARK APPLICATIONS

| Trademark Applications No. | Description of Trademark Applied for | Date of Trademark Applications |
|---|---|---|

See Schedule 1 attached hereto

The Grantors and the Administrative Agent hereby acknowledge and agree that the security interest in the foregoing trademarks and trademark applications (i) may only be terminated in accordance with the terms of the Agreement and (ii) is not to be construed as an assignment of any trademark or trademark application.

This Notice may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original.

This Notice shall be governed by and construed in accordance with the law of the State of New York.

Very truly yours,

[GRANTOR]

By:______________________________
Name:____________________________
Title:_____________________________

Acknowledged and Accepted:

FARM CREDIT MID-AMERICA, PCA,
as Administrative Agent

By:______________________________
Name:____________________________
Title:_____________________________

**EXHIBIT 3(d)(iii)**

**NOTICE**

**OF**

**GRANT OF SECURITY INTEREST**

**IN**

**COPYRIGHTS**

United States Copyright Office

Ladies and Gentlemen:

Please be advised that pursuant to the Security Agreement dated as of July 22, 2022 (as the same may be amended, modified, extended or restated from time to time, the "Agreement") by and among the Grantors party thereto (each a "Grantor" and collectively, the "Grantors") and Farm Credit Mid-America, PCA, as Administrative Agent (in such capacity, the "Administrative Agent") on behalf of the Secured Parties (as defined in the Credit Agreement referenced in the Agreement), the undersigned Grantor has granted a continuing security interest in and continuing lien upon the copyrights and copyright applications shown below to the Administrative Agent:

COPYRIGHTS

| Copyright No. | Description of Copyright Item | Date of Copyright |
|---|---|---|

See Schedule 1 attached hereto

COPYRIGHT APPLICATIONS

| Copyright Applications No. | Description of Copyright Applied for | Date of Copyright Applications |
|---|---|---|

See Schedule 1 attached hereto

The Grantors and the Administrative Agent hereby acknowledge and agree that the security interest in the foregoing copyrights and copyright applications (i) may only be terminated in accordance with the terms of the Agreement and (ii) is not to be construed as an assignment of any copyright or copyright application.

This Notice may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original.

This Notice shall be governed by and construed in accordance with the law of the State of New York.

Very truly yours,

[GRANTOR]

By:______________________________
Name:____________________________
Title:_____________________________

Acknowledged and Accepted:

FARM CREDIT MID-AMERICA, PCA,
as Administrative Agent

By:______________________________
Name:____________________________
Title:_____________________________