**FARM CREDIT MID-AMERICA, PCA**
**12501 Lakefront Place**
**Louisville, KY 40299**

May 24, 2024

Uncle Nearest, Inc.
3125 US 231 N
Shelbyville, TN 37160
Attention of Chief Financial Officer

**Re: DEFAULT RATE NOTICE**

Ladies and Gentlemen:

We refer to that certain Credit Agreement dated as of July 22, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among UNCLE NEARTEST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company ("RE Holdings" and, together with the Company and Distillery, collectively, the "Borrowers" and each, a "Borrower"), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "Administrative Agent"), and each of the lenders party thereto (collectively, the "Lenders"). Capitalized terms used herein without definition shall have the meanings assigned to them in the Credit Agreement.

As you are aware, multiple Events of Default under the Credit Agreement have occurred and are continuing as a result of, without limitation, failure to (i) timely deliver the annual financial statements required by Section 6.1(a) of the Credit Agreement, (ii) timely pay interest owing under the Credit Agreement on January 2, 2024, (iii) timely deliver financial statements required by Section 6.1(b) of the Credit Agreement for December 2023, January 2024, February 2024, and March 2024, (iv) timely deliver the annual business plan required by Section 6.1(c) of the Credit Agreement, (v) deliver compliance certificates required by Section 6.2(a) of the Credit Agreement to be delivered with the financial statements for the fiscal year ending December 31, 2023, and with the financial statements for the calendar months of December 2023, January 2024, February 2024, and March 2024, (vi) timely deliver borrowing base reports required by Section 6.2(c) of the Credit Agreement for December 2023, January 2024, February 2024, and March 2024, (vii) timely deliver the report summarizing Borrowers' insurance coverage required by Section 6.2(d) of the Credit Agreement, (viii) adequately respond to requests for information set forth in the letter from the Administrative Agent to the Borrowers dated as of January 12, 2024, as required by Section 6.2(h) of the Credit Agreement, (viii) maintain a Consolidated Tangible Net Worth of no less than $100,000,000 at all times during the period of December 31, 2023, through December 30, 2024, as required by Section 7.11(a) of the Credit Agreement, (ix) maintain a Consolidated Net Income of no less than $1.00 for each of December 2023, January 2024, February 2024, and March 2024, as required by Section 7.11(b) of the Credit Agreement, and (x) make the mandatory prepayment(s) required by Section 2.3(b)(i) of the Credit Agreement (collectively, the "Existing Defaults").

As a result of the Existing Defaults, **the Administrative Agent and the Lenders have elected to implement the Default Rate** pursuant to Section 2.6(b) of the Credit Agreement. The Default Rate will be implemented on all outstanding Obligations under the Credit Agreement, will be retroactively applied commencing on May 9, 2024, and will remain in effect in accordance with the terms of the Credit Agreement.

EXHIBIT
18

Neither the failure of the Administrative Agent or any Lender to exercise any other right or remedy under the Loan Documents with respect to any Existing Default, nor any forbearance or delay in exercising any such right or remedy, shall constitute a waiver of such right or remedy or any other right or remedy available under the Loan Documents or applicable Law. Any continued funding of Loans shall be at the sole discretion of the Administrative Agent and the Lenders and, if funded, shall not constitute a waiver of any Existing Default or any other Default or Event of Default. Without limitation of the foregoing, each of the Administrative Agent and the Lenders expressly reserves and continues to reserve all of its rights, powers, privileges and remedies under the Credit Agreement, the other Loan Documents and/or applicable Law and/or in equity in respect of any and all Defaults or Events of Default under the Credit Agreement and the other Loan Documents (including, without limitation, the Existing Defaults). The Administrative Agent and the Lenders may exercise their respective rights, powers, privileges, and remedies at any time in their sole and absolute discretion without further notice, except as may be required by the applicable Loan Documents or applicable Law. The Administrative Agent may from time to time send loan statements and/or invoices to the Borrowers, which such statements and invoices are generated for the Borrowers' information and convenience only, and do not waive, amend or alter in any way the Borrowers' obligations, or the Administrative Agent or any Lender's rights, under the Loan Documents. The Administrative Agent may accept and negotiate any payment or check, including payments made by charging a deposit account(s), without prejudice to its rights to receive the balance of all remaining sums due under the Loan Documents, including any default interest and other charges that may be due thereunder. Any partial payment received by the Administrative Agent or any Lender will not constitute an agreement to amend or modify any Loan Document, decelerate any Obligations (if accelerated), an accord and satisfaction, or an agreement by the Administrative Agent or any Lender to accept a lesser amount as payment in full of sums owed. The Administrative Agent's or any Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment will not be deemed to be an accord and satisfaction.

No oral representations or course of dealing on the part of the Administrative Agent or any Lender or any of their respective officers, employees, or agents, and no failure or delay by the Administrative Agent or any Lender with respect to the exercise of any right, power, privilege, or remedy under any of the Loan Documents or applicable law, shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege, or remedy shall not preclude any later exercise of the same or other right, power, privilege, or remedy.

[Signature page follows.]

Very truly yours,

FARM CREDIT MID-AMERICA, PCA, as Administrative Agent

DocuSigned by:

By: Brian Klatt

80F94385A8674DA

Name: Brian Klatt

Title: Vice President Corporate Originations

DocuSign

## Certificate Of Completion

Envelope Id: CF7930C6EBA64BDC8F7564636869D3E6
Subject: Complete with DocuSign: Default Rate Notice - Uncle Nearest.pdf
Policy #:
Loan Number:
CIF Number:
User Name:
Carrier Name:
Source Envelope:

Status: Completed

| | | |
|---|---|---|
| Document Pages: 3 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Cooper Robertson |
| AutoNav: Enabled | | 12501 Lakefront Place |
| EnvelopeId Stamping: Enabled | | Louisville, KY 40299 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | Cooper.Robertson@e-farmcredit.com |
| | | IP Address: 64.5.119.28 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>5/24/2024 3:10:02 PM | Holder: Cooper Robertson<br>Cooper.Robertson@e-farmcredit.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Brian Klatt<br>Brian.Klatt@fcma.com<br>Vice President Corporate Originations<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Pre-selected Style<br>Using IP Address: 98.43.182.154 | Sent: 5/24/2024 3:11:56 PM<br>Viewed: 5/24/2024 3:12:36 PM<br>Signed: 5/24/2024 3:12:48 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 5/24/2024 3:12:36 PM
ID: a5a1b110-f8b0-4117-b893-81bca5ede2d3

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/24/2024 3:11:57 PM |
| Certified Delivered | Security Checked | 5/24/2024 3:12:36 PM |
| Signing Complete | Security Checked | 5/24/2024 3:12:48 PM |
| Completed | Security Checked | 5/24/2024 3:12:48 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

Electronic Record and Signature Disclosure

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Farm Credit Mid-America, Non-Vaulting Account (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Farm Credit Mid-America, Non-Vaulting Account:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by paper mail, please send correspondence to:
Farm Credit Mid-America, Non-Vaulting Account
12501 Lakefront Place
Louisville, KY 40229

**To advise Farm Credit Mid-America, Non-Vaulting Account of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at  and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Farm Credit Mid-America, Non-Vaulting Account**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to  and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Farm Credit Mid-America, Non-Vaulting Account**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to  and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Farm Credit Mid-America, Non-Vaulting Account as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Farm Credit Mid-America, Non-Vaulting Account during the course of your relationship with Farm Credit Mid-America, Non-Vaulting Account.