**FARM CREDIT MID-AMERICA, PCA**
**12501 Lakefront Place**
**Louisville, KY 40299**

**VIA UPS AND ELECTRONIC MAIL**

November 5, 2024

Uncle Nearest, Inc.
3125 US 231 N
Shelbyville, TN 37160
Attn: Mike Senzaki
Fawn Weaver, Chief Executive Officer (fawn.weaver@unclenearest.com)
Keith Weaver, Chief Operative Officer (keith.weaver@unclenearest.com)
Felicia Gallagher, SVP Finance and Planning (felicia.gallagher@unclenearest.com

**Re:** That certain Credit Agreement dated as of July 22, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company ("RE Holdings" and, together with the Company and Distillery, collectively, the "Borrowers" and each, a "Borrower"), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "Administrative Agent"), and each of the lenders party thereto (collectively, the "Lenders"). Capitalized terms used herein without definition shall have the meanings assigned to them in the Credit Agreement.

Ladies and Gentlemen:

As you are aware, multiple Events of Default (collectively, the "Specified Events of Default") have occurred and have been continuing since, at a minimum, January 2, 2024, under the Credit Agreement as a result of the enumerated items on the attached Exhibit A.

Over the course of the last eleven months, the Administrative Agent has repeatedly attempted to discuss the Specified Events of Default and the Credit Agreement with the Borrowers without success. The Borrowers have failed to meaningfully engage with the Administrative Agent and continue to fail to comply with their obligations and covenants under the Credit Agreement. Additionally, there are significant and material unreconciled discrepancies between the amount of Collateral identified in the Borrowers' August 2024 Borrowing Base Certificate and what the Administrative Agent's independent third-party collateral inspector has been able to verify onsite at Tennessee Distilling Group, LLC. Because of this, and because the Specified Events of Default continue, the Administrative Agent is requiring the following:

i. **Inventory Reconciliation:** On or before November 8, 2024, the Borrowers must provide the Administrative Agent with all information requested by Administrative Agent for the purpose of satisfactorily reconciling, in the sole and absolute discretion of the Administrative Agent, the above-described Collateral discrepancies, including, without limitation, accurate information regarding all 2024 inventory purchases and sales and the disposition of all barrel sale proceeds.

ii. **Meeting:** On or before November 12, 2024, Keith Weaver and Fawn Weaver must meet with the Administrative Agent (whether via videoconference or in person) to discuss the Specified Events of Default and the Credit Agreement.

EXHIBIT
19

iii. **Attorneys' Fees:** On or before November 12, 2024, the Borrowers must pay the outstanding attorneys' fees incurred by the Administrative Agent since January 2024, which total $118,075.00 as of October 31, 2024.

To the extent the Borrowers do not satisfy the conditions set forth in clauses (i) through (iii) of the foregoing sentence by November 12, 2024, the Administrative Agent will instruct its counsel to begin exercising the rights and remedies afforded to the Administrative Agent and Lenders under the Credit Agreement and/or applicable Law, which may include, without limitation, **(a) declaring the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon, and all other amounts owing or payable hereunder or under any other Loan Document to be immediately due and payable and (b) seeking appointment of a receiver to protect the Lender's interest in the Collateral**.

Neither the failure of the Administrative Agent or any Lender to exercise any other right or remedy under the Loan Documents with respect to any Event of Default, including, without limitation the Specified Events of Default, nor any forbearance or delay in exercising any such right or remedy, shall constitute a waiver of such right or remedy or any other right or remedy available under the Loan Documents or applicable Law. Any continued funding of Loans shall be at the sole discretion of the Administrative Agent and the Lenders and, if funded, shall not constitute a waiver of any Event of Default, including, without limitation, the Specified Events of Default. Without limitation of the foregoing, each of the Administrative Agent and the Lenders expressly reserves and continues to reserve all of its rights, powers, privileges and remedies under the Credit Agreement, the other Loan Documents and/or applicable Law and/or in equity in respect of any and all Defaults or Events of Default, including, without limitation, the Specified Events of Default, under the Credit Agreement and the other Loan Documents. The Administrative Agent and the Lenders may exercise their respective rights, powers, privileges, and remedies at any time in their sole and absolute discretion without further notice, except as may be required by the applicable Loan Documents or applicable Law. The Administrative Agent may from time to time send loan statements and/or invoices to the Borrowers, which such statements and invoices are generated for the Borrowers' information and convenience only, and do not waive, amend or alter in any way the Borrowers' obligations, or the Administrative Agent or any Lender's rights, under the Loan Documents. The Administrative Agent may accept and negotiate any payment or check, including payments made by charging a deposit account(s), without prejudice to its rights to receive the balance of all remaining sums due under the Loan Documents, including any default interest and other charges that may be due under thereunder. Any partial payment received by the Administrative Agent or any Lender will not constitute an agreement to amend or modify any Loan Document, decelerate any Obligations (if accelerated), an accord and satisfaction, or an agreement by the Administrative Agent or any Lender to accept a lesser amount as payment in full of sums owed. The Administrative Agent's or any Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment will not be deemed to be an accord and satisfaction.

No oral representations or course of dealing on the part of the Administrative Agent or any Lender or any of their respective officers, employees, or agents, and no failure or delay by the Administrative Agent or any Lender with respect to the exercise of any right, power, privilege, or remedy under any of the Loan Documents or applicable law, shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege, or remedy shall not preclude any later exercise of the same or other right, power, privilege, or remedy.

[Signature page follows.]

Very truly yours,

FARM CREDIT MID-AMERICA, PCA, as Administrative Agent

Signed by:
By: Brian Klatt
90F94385A8674DA
Name: Brian Klatt
Title: Managing Director Food and Agribusiness

cc: Fogel & Potamianos LLP
4100 W. Alameda Ave.
Suite 300
Burbank, CA 91505
Attention: Jerome Fogel
Email: jfogel@fpgeneralcounsel.com

McGuireWoods LLP
Steven Ritchie (sritchie@mcguirewoods.com)
Demetra Liggins (dliggins@mcguirewoods.com)
Alexandra Shipley (ashipley@mcguirewoods.com)

**Exhibit A**
**Specified Events of Default**

1. Failure to timely pay interest on the Loans as required by Section 2.6(c) of the Credit Agreement on the Interest Payment Dates occurring on January 2, 2024, July 2, 2024, and October 1, 2024;
2. Failure to pay the quarterly installment payment on the aggregate principal amount of all Term Loans outstanding as required by Section 2.5(b) of the Credit Agreement on October 1, 2024;
3. Failure to timely deliver the financial statements required by Section 6.1(a) of the Credit Agreement for the fiscal year ended December 31, 2023;
4. Failure to timely deliver monthly financial statements required by Section 6.1(b) of the Credit Agreement for each of December 2023, January 2024, February 2024, March 2024, April 2024, May 2024, June 2024, July 2024, August 2024, and September 2024;
5. Failure to timely deliver the annual business plan required by Section 6.1(c) of the Credit Agreement;
6. Failure to deliver compliance certificates required by Section 6.2(a) of the Credit Agreement for each of December 2023, January 2024, February 2024, March 2024, April 2024, May 2024, June 2024, July 2024, August 2024, and September 2024;
7. Failure to timely deliver Borrowing Base Certificates required by Section 6.2(c) of the Credit Agreement for each of December 2023, January 2024, February 2024, March 2024, April 2024, May 2024, June 2024, August 2024, and September 2024;
8. Failure to timely deliver the report summarizing Borrowers' insurance coverage required by Section 6.2(d) of the Credit Agreement;
9. Failure to adequately respond to requests for information set forth in that certain letter from the Administrative Agent to the Borrowers dated as of January 12, 2024, as required by Section 6.2(h) of the Credit Agreement;
10. Failure to timely prepay Revolving Credit Loans as a result of the Total Revolving Credit Outstandings exceeding the Maximum Revolving Borrowing Amount at various times prior to the date hereof, as required by Section 2.3(b)(i) of the Credit Agreement;
11. Failure to maintain a minimum Consolidated Tangible Net Worth of no less than $100,000,000 at all times during the period from December 31, 2023, through the date hereof, as required by Section 7.11(a) of the Credit Agreement; and
12. Failure to maintain a Consolidated Net Income of no less than $1.00 for each calendar month during the period commencing December 1, 2023, through September 30, 2024, as required by Section 7.11(b) of the Credit Agreement.