**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, FAWN WEAVER and KEITH WEAVER,**<br><br>**Defendants.** | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | **Case No. _____ ____** |

## ORDER APPOINTING RECEIVER AND ORDERING TURNOVER OF PROPERTY TO THE RECEIVER

Before the Court is Plaintiff Farm Credit Mid-America, PCA's (the "Lender") Emergency Motion for Appointment of Receiver (the "Receiver Motion") against Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc. (the "Distillery") and Uncle Nearest Real Estate Holdings, LLC ("RE Holdings") (collectively, "Uncle Nearest"), Fawn Weaver ("Ms. Weaver"), and Keith Weaver ("Mr. Weaver" and, together with Ms. Weaver, in their official and individual capacities, the "Weavers") pursuant to Fed. R. Civ. P. 66 and T.C.A. § 29-40-102 *et. seq*. (the "Uniform Commercial Real Estate Receivers Act" or "UCRERA") filed on July 28, 2025. All capitalized terms not defined in this Order have the meanings ascribed to them in the Receiver Motion. The Court has subject matter jurisdiction over this action, personal jurisdiction over the Defendants, and venue properly lies in this district.

Accordingly, the Court finds that Uncle Nearest has defaulted on various obligations to the Lender and that the appointment of a receiver in this action is necessary to enter upon and take exclusive power, authority, and control over the assets (including the Collateral securing the loan

obligations to the Lender), management, operations, and maintenance of Uncle Nearest and its assets (including the operations of the Distillery).

## FINDINGS IN SUPPORT OF ORDER

In support of its Receiver Motion, the Lender filed a Verified Complaint (the "Verified Complaint") from which this Court derives the facts referenced herein.

### A. Uncle Nearest Operations

1. Uncle Nearest is unable to effectively manage and operate its business affairs, lacks sufficient liquidity to continue operations and servicing of its debts, and has no verifiable source of capital to keep Uncle Nearest afloat.

2. Uncle Nearest's business operations have suffered (and continue to suffer). Without additional capital infusion, Uncle Nearest is projected to imminently run out of cash.

3. As a result of the foregoing, the preservation and value of Uncle Nearest's assets are at risk of decline, deterioration, and possible dissolution.

### B. The Loan Documents

4. Uncle Nearest and the Lender are parties to (i) that certain Credit Agreement dated July 22, 2022 (as amended by that certain Amendment No. 1 to Credit Agreement dated October 3, 2022, that certain Amendment No. 2 to Credit Agreement dated December 16, 2022, that certain Amendment No. 3 to Credit Agreement dated January 26, 2023, that certain Amendment No. 4 to Credit Agreement dated March 30, 2023, that certain Amendment No. 5 to Credit Agreement dated June 6, 2023, that certain Amendment No. 6 to Credit Agreement and Limited Waiver dated July 26, 2023, that certain Amendment No. 7 to Credit Agreement and Limited Waiver dated December 27, 2023, that certain Amendment No. 8 to Credit Agreement and Forbearance Agreement dated

April 15, 2025 (the "Forbearance Agreement"), the "Credit Agreement"),[1] and (ii) the other agreements, documents and instruments executed and delivered in connection with, related to or referenced in the Credit Agreement (collectively and together with the Credit Agreement, the "Loan Documents").[2]

5. Pursuant to the terms of the Credit Agreement, the Lender provided certain loans, extensions of credit, and financial accommodations to Uncle Nearest. There are three loans in this matter: the Revolving Loan, the Term Loan and the RELOC Loan (collectively, the "Loans"). Those loans are secured by, *inter alia*, real property located at 3125 Highway 231 North, Shelbyville, Tennessee 37160, on which Uncle Nearest conducts business (the "Nearest Green Distillery Property"); 39 Ed McGee Road, Lynchburg, Tennessee 37352 (the "Dan Call Property"); and 152 Eady Road, Shelbyville, Tennessee 37160 (the "Eady Road Property" and together with the Nearest Green Distillery Property and the Dan Call Property, the "Real Property Collateral") and personal property including accounts, accounts receivable, inventory (including, without limitation, spirits, bottles, and barrels), goods and general intangibles (the "Personal Property Collateral" and together with the Real Property Collateral, collectively the "Collateral").

***The Revolving Loan***

6. In July of 2022, the Lender initially provided a revolving loan in the original commitment amount of $35,000,000 to Uncle Nearest pursuant to the Credit Agreement. Over the course of the next year, upon requests from Uncle Nearest, the Lender agreed to amend the Credit Agreement seven times and increased its commitment to provide revolving loans multiple times to an ultimate commitment of $67,000,000 (advances made pursuant to the revolving credit

[1] Each capitalized term used but not defined herein or in the Receiver Motion shall have the same meaning ascribed thereto in the Credit Agreement.
[2] True and correct copies of the Loan Documents are attached as **Exhibit 1** through **Exhibit 8** hereto.

commitment, the "Revolving Loan"). The current principal balance of the outstanding Revolving Loan is $65,224,031.96.

7. Pursuant to one of those amendments, executed on July 26, 2023, the Lender (i) increased the Revolving Loan commitment from $58,000,000 to $67,000,000; (ii) waived certain Events of Default that had occurred, and were continuing, as a result of Uncle Nearest's failure to timely make principal and interest payments and provide the required audited balance sheet for the 2022 fiscal year; and (iii) amended the Credit Agreement to permit Uncle Nearest to acquire a chateau in France to develop Uncle Nearest's cognac business and form a French subsidiary. To date, the Lender has not received any information from Uncle Nearest that any portion of the cognac business is operational.

8. The Revolving Loan was based upon a borrowing base availability composed of Uncle Nearest's Eligible Inventory and Eligible Accounts availability. More specifically, pursuant to the Credit Agreement, the "Borrowing Base" is comprised of (i) (a) the value of certain of Uncle Nearest's Eligible Accounts arising out of the sale of barreled spirits or finished goods inventory, plus (b) Eligible Inventory consisting of barreled spirits and raw materials, less (ii) certain reserves.[3] If the amount of the Revolving Loan advanced to Uncle Nearest pursuant to the Credit Agreement at any time exceeds the amount of the Borrowing Base (also known as an "overadvance"), Uncle Nearest must "immediately prepay" the Revolving Loan in the amount of such overadvance.[4]

9. As described in more detail below, Uncle Nearest previously failed to timely

---

[3] The Credit Agreement provides that "Borrowing Base" means, as of any time it is to be determined, the sum of:

> (a) 75% of the Value of Eligible Accounts; plus
> (b) 70% of the Value of all Eligible Inventory consisting of barreled whiskey, finished goods consisting of bottled whiskey or grain inventory; minus
> (c) all Availability Reserves.

[4] *See* Credit Agreement, Section 2.3(b).

provide all required Borrowing Base reports and the Borrowing Base reports that were ultimately provided, apparently, inaccurately inflated the Borrowing Base availability to approximately $67,000,000.

10. Information Uncle Nearest provided to the Lender on January 10, 2025, reflected that the Borrowing Base as of August 30, 2024, and most likely November 30, 2024, as well, was in fact approximately $44,000,000. Given the principal balance of the Revolving Loans on August 30, 2024, was (and remains as of today) $65,224,031.96, Uncle Nearest was required to immediately prepay an overadvance in the amount of approximately $21,000,000. It failed to pay.

***The Term Loan***

11. In July of 2022, the Lender also provided a term loan in the original principal amount of $20,000,000 to Uncle Nearest (the "Initial Term Loan").

12. On March 30, 2023, upon request by Uncle Nearest, the Lender entered into that certain Amendment No. 4 to Credit Agreement ("Amendment No. 4"), pursuant to which the Lender provided an additional term loan in the amount of $2,300,000 (the "MV Property Loan").

13. Uncle Nearest requested the MV Property Loan to, among other things, purchase a $2.225 million home on the exclusive Martha's Vineyard Island located off the coast of Cape Cod, Massachusetts (the "MV Property"). Uncle Nearest presented the purchase of the MV Property to the Lender as a marketing opportunity, which would enable Uncle Nearest to host branding events and rent the property to other distributors for co-branding opportunities. Uncle Nearest represented, and agreed in Amendment No. 4, that the proceeds of the MV Property Loan made to *Uncle Nearest* would be used by *Uncle Nearest* to buy the MV Property.

14. In January 2025, however, the Lender learned that an entity that is not (and never has been) a Borrower or other Loan Party, UN HOUSE MV LLC ("UN House MV"), was used to

purchase the MV Property using proceeds from the MV Property Loan, which is a violation of Section 6.11 of the Credit Agreement.[5]

15. Further, the Lender learned that UN House MV mortgaged the MV Property to a different lender, Oaktree Funding Corp. ("Oaktree Funding"), on or about September 25, 2024, to secure UN House MV's obligations to Oaktree Funding under a promissory note in the principal amount of $1,500,000, as reflected in the Dukes County Registry of Deeds.

16. Upon request by Uncle Nearest, on June 14, 2023, the Lender provided an additional term loan in the amount of $1,700,000 (the "June 2023 Incremental Term Loan" and together with the Initial Term Loan and the MV Property Loan, the "Term Loans") for the purchase of a 108-acre property, adjacent to the property on which the Distillery sits, which is secured by that certain Deed of Trust, Assignment of Leases, Security Agreement and Financing Statement dated June 5, 2023 (the "Eady Road Deed of Trust"). The current principal balance of the Term Loans is $22,045,150.88.

***The RELOC Loan***

17. On January 26, 2023, upon request by Uncle Nearest, the Lender further provided a real estate line of credit facility in the original commitment amount of $15,000,000 to Uncle Nearest (the "RELOC Loan"). The RELOC Loan was to be used to finance the construction and build-out of the Nearest Green Distillery.

---

[5] Section 6.11 of the Credit Agreement requires Uncle Nearest to:

> (i) [u]se the proceeds of the Revolving Credit Facility and the Term Loan Facility for general corporate purposes, including working capital, capital purchases and refinancing of certain Indebtedness as contemplated by Section 4.1, not in contravention of any Law or of any Loan Document and (ii) ***use the proceeds of the portion of the Term Loan Facility advanced on the Amendment No. 4 Effective Date to purchase the fee-owned real property interest as discussed with the Administrative Agent***. (emphasis added).

### C. Uncle Nearest's Obligations under the Loan Documents

18. Uncle Nearest's obligations arising under the Loan Documents are secured by valid, binding, properly perfected first-priority liens on and security interests in the Personal Property Collateral, the Eady Road Property, and the Nearest Green Distillery Property, and valid, binding, properly perfected second-priority liens on and security interest in the Dan Call Farm Property.

19. Uncle Nearest is in default under the Loan Documents and the Defaults set forth in the Receiver Motion constitute a breach of Uncle Nearest's obligations under the Loan Documents.

20. The Lender's liens extend to substantially all of the assets of Uncle Nearest as described in the Loan Documents and to the Eady Road Property, which is owned by Mr. Weaver.

21. Each Deed of Trust securing the Loans, as applicable, provides that while an Event of Default exists, the Lender may (i) "enter into and upon and take possession of, and operate all facilities on, the Premises or any part thereof" either personally or through its agents and (ii) seek the appointment of a receiver over the Real Property Collateral.

22. In the Deeds of Trust signed to secure Uncle Nearest's obligations to the Lender, Uncle Nearest and Mr. Weaver agreed that, upon default, it or he (as applicable) consented to the appointment of a receiver and waived notice of any application therefor pursuant to T.C.A. § 29-40-106 because "[i]n connection with . . . the enforcement of a mortgage, **a mortgagee is entitled to the appointment of a receiver for the mortgaged property** if:

> (1) Appointment is necessary to protect the property from waste, loss, transfer dissipation, or impairment.
>
> (2) The mortgagor agreed in a signed record to appointment of a receiver on default[.]"

T.C.A. § 29-40-106(b) (emphasis added), and the Court can grant *ex parte* relief. T.C.A. § 29-40-103(b). Furthermore, given the circumstances, a receivership is warranted under T.C.A. § 29-1-

103 "for the safekeeping, collection, management, and disposition of property."

23. The Loan Documents provide that upon the occurrence of, and during the continuance of, any Event of Default, the Lender may, among other things, (i) declare the unpaid debt to be immediately due and payable, and (ii) institute proceedings for the complete foreclosure of each of the Eady Road Deed of Trust and the Bedford County Deed of Trust (collectively, the "First Lien Deeds of Trust"), as applicable.

***Appointment of Receiver is Necessary***

24. In this case, *ex parte* relief is warranted for at least two reasons. First, in each of the First Lien Deeds of Trust, Uncle Nearest or Mr. Weaver, as applicable, agreed that upon an Event of Default, the Lender, "upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice . . . to the appointment of a receiver."[6] Second, the Collateral subject to the Lender's liens is in danger of being lost and/or materially injured or impaired to the extent a receiver is not appointed.

25. The appointment of a receiver for Uncle Nearest is necessary to preserve and maintain the value of Uncle Nearest's assets and business and to market Uncle Nearest's business, personal property and real property for sale as the receiver deems appropriate.

26. By its Receiver Motion, the Lender requests the appointment of Kevin Larin, a Managing Director with Riveron RTS, LLC ("Riveron"), as receiver over Uncle Nearest and its assets in order to preserve Uncle Nearest's assets and maximize the value of the Collateral.

27. Neither Kevin Larin nor Riveron, nor any entity controlling, controlled by or under common control with Riveron (the "Riveron Entities") have any interest materially adverse to the receivership estate, its assets, or any party in interest. Neither Kevin Larin nor the Riveron Entities

[6] *See* Bedford County Deed of Trust, Section 5.05; Eady Road Deed of Trust, Section 5.05.

have any current or prior relationships, including its prior representation of the Lender, that compromise impartial administration.

28. The Court further finds that the appointment of Kevin Larin of Riveron as the Receiver is in the best interests of the receivership estate and its stakeholders.

## ORDER APPOINTING RECEIVER

In light of the Receiver Motion and the facts in support of the Receiver Motion, it is therefore ORDERED, ADJUDGED, and DECREED that:

1. **Appointment of Receiver**. Kevin Larin of Riveron is hereby appointed as receiver (the "Receiver") of Uncle Nearest (including the Subject Entities, as defined below) and the Receivership Assets (as defined below). Neither the Receiver nor the Riveron Entities have any interest materially adverse to the receivership estate and the appointment of the Receiver is in the best interests of the receivership estate and its stakeholders.

2. **The Receivership Assets**. The "Assets" include (i) all of Uncle Nearest's assets, including proceeds, wherever located, including but not limited to, all of Uncle Nearest's: (a) right, title and interest in any property, real and personal, tangible and intangible, of whatever kind and description, wherever situated, including, without limitation, the Nearest Green Distillery Real Property, property leased or occupied by Uncle Nearest, all rents, litigation claims, accounts receivable, computers, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses, permits, books, records, documents and intellectual property; (b) rights (including rights to payment and distributions), title, and interest, whether now owned or hereafter acquired in, under and to any entity (including, but not limited to, Domaine D'Anatole, Inc., Domaine D'Anatole, S.A.S, UNAH, Inc., S1 Organic Vodka, LLC, UN House MV, LLC, Uncle Nearest Ventures, LLC, and the Nearest Green Historical Preservation

& Culture Fund, including any rights of control, ownership, distribution, and participation (collectively, the "Subject Entities"); (c) cash and any bank and brokerage accounts; (d) any other property in which the Lender is granted a security interest pursuant to the Security Agreement and/or UCC-1 financing statements recorded against Uncle Nearest in favor of the Lender; and (e) claims and causes of action of any type, whether in equity or in kind, in contract or pursuant to a promissory note or any other enforceable agreement, in litigation, via settlement, or pursuant to any form of insurance policy or coverage (collectively, "Causes of Action"); and (ii) and the Eady Road Property, in each case, including proceeds therefrom.

3. All of the Assets are hereby deemed assets of the receivership (collectively, the "Receivership Assets"). For the avoidance of doubt, the Receivership Assets include all Collateral as described in the Loan Documents.

4. **Order Governs the Receivership Assets**. It is the intent of the Court that this Order applies to all Receivership Assets and that this Order encompasses the receiver powers specified in Tenn. Code Ann. § 29-40-112(b), including but not limited to the power to sell receivership property.

5. Further, it is the intent of this Court, that the Receiver is vested with all powers and authority of a receiver at equity; all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692; and Fed. R. Civ. P. 66, and all powers to sell the Receivership Assets pursuant to 28 U.S.C. §§ 2001, 2002, and 2004.

6. **Bond**. Receiver shall serve without bond and shall be entitled to rely in good faith on the protections afforded under this Order. The Receiver will perform the duties of his office in accordance with this Order and duly account for all monies and properties which may come into his hands in connection with the receivership. The Receiver shall take such other actions as the

Receiver deems reasonable and appropriate to the exercise of his authority under this Order and that the Receiver reasonably determines Uncle Nearest is obligated to do with respect to the Receivership Assets within the purview of this Order, but the Receiver shall not be required to take any action beyond those expressly mandated or reasonably implied by the terms of this Order.

7. **Cooperation by Defendants**. Uncle Nearest, the Subject Entities, and each of their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive notice of this Order by personal service or otherwise, shall immediately deliver to the Receiver: (a) any and all Receivership Assets in the possession or under the control of any one or more of them; (b) all of Uncle Nearest's past records, including, without limitation, accounting records, tax records, disbursements, banking records, and any other books and records for the period from July 22, 2022, through the date of this Order; (c) all of Uncle Nearest's past records, including, without limitation, accounting records, disbursements, banking records, and any other books and records requested by the Receiver for periods beyond the period prescribed in (c) above; (d) copies of all material contracts to which Uncle Nearest is a party and all operating agreements and/or organizational documents, including corporate bylaws or similar governing documents, for Uncle Nearest and any Subject Entity; and (e) copies of any complaint filed against, or written demand or claim issued to, Uncle Nearest or any Subject Entity.

8. **Receiver's Powers and Duties**. Subject to the limitations of § 29-40-112(b) and 28 U.S.C. §§ 2001, 2002, and 2004, the Receiver may cause to be foreclosed by judicial or non-judicial means any or all its interests in the Receivership Assets with such advance notice to Uncle Nearest or any other interested party as is required by applicable law without further order of this Court.

9. **<u>Receiver's Vested Power of Subject Entities</u>**. The Receiver shall be exclusively vested with: (a) all the powers of officers, directors, members, and/or managers (as applicable) of Uncle Nearest and the Subject Entities to take (or refrain from taking) any and all actions on behalf of Uncle Nearest and the Subject Entities and (b) each of Uncle Nearest's and the Subject Entities' rights and powers to act on behalf of any other entity (including as an officer, director, manager, or equity holder), including, without limitation, each Subject Entity, to direct such other entity to take (or refrain from taking) any action in furtherance of the terms under this Order, in each case, until further Order of the Court.

10. Until further order of this Court, the Receiver is hereby authorized forthwith to take any actions he deems reasonably necessary to the proper and lawful discharge of his responsibilities under this Order and the conduct of Uncle Nearest, including the following:

a. **<u>Authorization to take Exclusive Control</u>**. Take any actions necessary to take complete and exclusive control, possession and/or custody, to the extent applicable or to the extent the Receiver deems necessary, of the Receivership Assets, and of any proceeds thereof, to the extent necessary, provided however, in doing so: (i) the Receiver shall not, by the exercise of his authority under this Order, be deemed to possess or control, nor hold title to, the subsurface of any Receivership Assets that are real property, nor any hazardous waste or hazardous substance located at or in the real property, as those terms are defined under any federal, state or local environmental laws; (ii) the Receiver constitutes a fiduciary of the Court for any exceptions to liability under applicable environmental laws; and (iii) the Receiver shall not be deemed to have taken legal or equitable title to the Receivership Assets;

b. **<u>Management of Uncle Nearest Operations</u>**. The Receiver is authorized, empowered, and directed to direct and cause Uncle Nearest and the Subject Entities, and each of

their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive notice of this Order by personal service or otherwise, to continue to manage all of the ordinary course operations of Uncle Nearest and the Subject Entities;

c. **Possession of the Receivership Assets**. The Receiver shall take possession of, preserve, insure, protect, and manage the Receivership Assets, in whole or in part, whether in the ordinary course or otherwise, in each case as determined by the Receiver, or otherwise by contract with respect to all or a portion thereof, including, but not limited to: (a) employing advisors, professionals (including Riveron RTS, LLC), employees, brokers, auctioneers, appraisers, agents, clerks, outside accountants, attorneys, and other suppliers of goods and services, and anyone acting on behalf of any of them (together, the "Receiver Representatives"), on reasonable terms acceptable to the Receiver, and paying for them at the Receiver Representative's ordinary and usual rates from the Receivership Assets or, to the extent the Receivership Assets are insufficient to satisfy any such fees or expenses, as set forth in paragraph 18; and (b) maintaining, insuring, assembling, and protecting the Receivership Assets;

d. **Retention of Possession**. Subject to the limitations expressly provided in this Order, the Receiver shall retain sole and exclusive possession of each of the Receivership Assets, including the Nearest Green Distillery Property and the Eady Road Property, until the earlier of (i) further order of this Court, (ii) the disposition of the applicable Receivership Asset by the Receiver, or (iii) disposition of the applicable Receivership Asset by sale or by judicial or nonjudicial foreclosure by the Receiver, with the express understanding that any such judicial or nonjudicial foreclosure may proceed without further order of the Court;

e. **<u>Retention of Financial Professionals</u>**. The Receiver is authorized to engage Riveron RTS, LLC, as the Receiver's financial professionals in connection with the Receivership Assets and the receivership estate, on terms acceptable to the Receiver, and this Order shall be sufficient Court approval for such engagement;

f. **<u>Keys</u>**. The Receiver shall have exclusive (except as such access may be designated by the Receiver) access to all keys, lock combinations, passwords, access cards and other means to access locked areas or devices relating to the Receivership Assets, including all lockboxes and locked drawers and cabinets. The Receiver is authorized to make copies of such keys, passwords, access cards, and other means to access locked areas or devices relating to the Receivership Assets for his use in the administration of the Receivership Assets and the receivership estate;

g. **<u>Bank Accounts</u>**. The Receiver shall maintain access to and exclusive control of each of Uncle Nearest's and each Subject Entity's bank and brokerage accounts to: (i) take possession of and receive any money on deposit from any banks with which Uncle Nearest or any Subject Entity maintains accounts, and upon the receipt by the Receiver of said funds, to discharge any bank from further responsibility for accounting to Uncle Nearest or any Subject Entity for funds which the Receiver has taken; and (ii) issue demands for the freezing and turnover of funds to any financial institution or title company (or escrow agent), in each case, where determined by Receiver to be necessary or appropriate to comply with the terms of this Order;

h. **<u>Litigation</u>**. The Receiver is authorized to prosecute, settle, compromise, collect, and otherwise enforce any claims or Causes of Action by Uncle Nearest or any Subject Entity against any other party without need for further approval or consent of any person; defend, compromise, settle or adjust or otherwise dispose of any actions or proceedings in state or federal

courts or other tribunals, including agency or mediation proceedings, now pending or hereafter instituted that concerns Uncle Nearest, the Subject Entities or any other Receivership Asset, as the Receiver may in his sole discretion deem advisable or proper for the protection of the Receivership Assets and in furtherance of this Order; and to investigate, institute, prosecute, compromise and adjust actions in state or federal courts or other tribunals, including agency or mediation proceedings, as the Receiver may in his sole discretion deem advisable or proper to recover Receivership Assets or proceeds thereof improperly or unlawfully held by any person, including but not limited to Uncle Nearest and/or the Subject Entities;

i. **Place of Payment and Method of Collection**. The Receiver may alter the place of payment and the method of collection of any receivables or other amounts due directly or indirectly to Uncle Nearest or any Subject Entity or, with respect to any amounts due in connection with the Eady Road Property, to Mr. Weaver, where the Receiver deems such change is reasonably required to ensure proper application of such payments and collections;

j. **Communications**. The Receiver is authorized to communicate with any person or entity and obtain any information and documents the Receiver deems necessary or useful in furtherance of this Order;

k. **Documents**. The Receiver is authorized to exercise, subject to the limits of this Order, the full authority, with power of attorney on behalf of and in the name of Uncle Nearest (in each case, including with respect to the Subject Entities) and, with respect to the Eady Road Property, Mr. Weaver, to: (i) execute and deliver any and all of the documents, including, but not limited to, contracts, brokers' or advisors' retention agreements, purchase and sale agreements, deeds of conveyance, closing statements, settlement statements, affidavits requested by title companies, and any other documents necessary or helpful to the performance of the Receiver's

duties as more fully set forth herein; (ii) sign on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any such documents; (iii) sign on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any invoices, or notices to account debtors, or contracts necessary or helpful to the performance of his activities provided for herein; (iv) endorse on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any negotiable collateral that may come into the possession or control of the Receiver; (v) initiate, defend, make, settle, and/or adjust all claims under Uncle Nearest's or, with respect to the Eady Road Property, Mr. Weaver's, policies of property or other insurance and make all determinations and decisions with respect to such policies of property or other insurance, and notify any and all insurers under any such policies of property or other insurance that any proceeds paid thereunder shall be paid to the Receiver until such time as such insurance carriers are advised to the contrary by this Court or until such insurance carriers receive a certificate issued by the Clerk of this Court evidencing a final discharge of the Receiver; (vi) institute, defend, settle and/or adjust disputes and claims respecting the Receivership Assets, for amounts and upon terms that the Receiver determines to be reasonable; (vii) obtain, review and analyze any past records, including, without limitation, accounting records, disbursements, banking records, and any other books and documents in furtherance of the Receiver's duties hereunder; (viii) pay prior obligations incurred by Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, by their agents, officers, directors, partners, managers, and servants, or any other person or entity charged with the responsibility of maintaining and operating the Receivership Assets, if such obligations are deemed by the Receiver to be reasonably necessary or advisable, subject in all respects to this Order; and (ix) cause to be executed and delivered any documents and releases that Receiver determines to be reasonably necessary, and at all times consistent with the terms of this Order. The

appointment of the Receiver as Uncle Nearest's, and, with respect to the Eady Road Property, Mr. Weaver's, attorney-in-fact with respect to the Receivership Assets, and each and every one of his rights and powers, being coupled with an interest, is irrevocable until the receivership is discharged by this Court or until the resignation of the Receiver;

l. **Attorney-in-Fact**. The Receiver is authorized to exercise his full authority, as attorney-in-fact, on behalf of and in the name of Uncle Nearest (in each case, including with respect to the Subject Entities), to: (i) take any and all actions that may be required or desirable to preserve, renew and maintain the legal existence and good standing of Uncle Nearest, as applicable, in such jurisdictions where they conduct business; (ii) take any and all actions that may be required or incidental to preserve, renew and maintain the qualification and authority (including any applicable licenses and regulatory authority) to do business and good standing in each other jurisdiction where it is necessary or desirable for Uncle Nearest to conduct business paying applicable franchise taxes; (iii) execute and deliver any and all documents, reports, or other forms in furtherance of the Receiver's responsibilities herein; and (iv) engage in all actions the Receiver deems reasonable or necessary to accomplish the foregoing;

m. **Risks and Obligations**. The Receiver may incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar businesses and enterprises, and no such risk or obligation so incurred shall be the personal risk or obligation of the Receiver, but rather a risk or obligation to be paid solely from the Receivership Assets;

n. **Authority of Authorized Signatories**. The Receiver has the authority to delete the authorized signatories on any account of Uncle Nearest or any Subject Entity and replace the same with the name of the Receiver or his designee;

o. **Books and Records – Subject Entities**. The Receiver may take possession of, or obtain access to, the books, papers, records, invoices, and receipts of Uncle Nearest and the Subject Entities on a continuing basis, including without limitation to Uncle Nearest's and, if applicable, any Subject Entity's electronic mail and other electronic correspondence (including any servers containing the foregoing);

p. **Books and Records – Vendors**. The Receiver is authorized to take possession of, and obtain access to, all books, records, documentation of any kind or nature, financial documents, contracts, bills or invoices of vendors (or other documents that describe the work such vendors performed and the amounts due and owing to them), and other documents, including copies of all records or documents on electronic media or in computer memory, wherever located; provided, however, nothing contained in this Order shall result in a waiver of any attorney privilege held by Uncle Nearest;

q. **Mail**. The Receiver shall collect and process all inbound mail addressed to any Post Office Box owned or controlled by Uncle Nearest (or any officers, managers or registered or other agents acting on behalf of Uncle Nearest or any of the Receivership Assets) if the mail is addressed to Uncle Nearest, any Subject Entity, or any officer, manager, or registered or other agent of Uncle Nearest or any Subject Entity.

r. **Bankruptcy**. The Receiver is authorized to commence a proceeding under title 11 of the United States Code on behalf of Uncle Nearest and the Subject Entities;

s. The Receiver may exercise such other powers and authority granted to a court-appointed receiver under applicable law consistent with this Court's jurisdiction and authority; and

t. The Receiver has such additional powers that the Court may from time to time direct or confer and to that end, the Receiver may apply to this Court for further instructions or direction, including, without limitation, interpretation of this Order.

11. **Enjoined Actions**. Until further Order of the Court, other than with respect to the Receiver or persons and entities operating on behalf of the Receiver, Uncle Nearest, the Subject Entities, and each of their officers, directors, employees, agents, assigns, or any other persons or entities acting on behalf of or in concert with Uncle Nearest or the Subject Entities are enjoined from taking any of the following actions:

a. **Sale of Receivership Assets**. Selling, transferring, assigning, encumbering, disposing of, or otherwise impairing any Receivership Asset without express written authorization from the Receiver, who, for the avoidance of doubt, shall authorize transactions that the Receiver deems consistent with the terms of this Order or are directed by the Court;

b. **Contract Modification**. Modifying, amending, transferring, selling, assigning, revoking, returning, terminating or canceling any contract or agreement related to the Receivership Assets without the express written consent of the Receiver;

c. **Obstruction**. Interfering with, obstructing, or preventing in any way, the Receiver's actions pursuant to this Order, including, but not limited to, any and all actions that may damage the brand and reputation of the Receivership Assets in any form, whether written, verbal, and disseminated through any medium; and

d. **Interference**. Interfering in any other way with the Receiver, directly or indirectly.

12. **Non-Disturbance of Receivership Assets and Estate**. All persons or entities, including employees, agents, creditors, banks, investors, shareholders, officers, directors,

subsidiaries, affiliates, owners or others, with actual or constructive notice of this Order, are enjoined and restrained from in any way disturbing, interfering or affecting the Receivership Assets or the administration of the receivership estate. This includes, without limitation, prosecuting, initiating or continuing any actions or proceedings, enforcing judgments, perfecting liens; pursuing actions or proceedings against the Receiver and the Receiver Representatives, designed to collect their debts or which in any way involve the Receiver or the Receiver Representatives or which affect the Receivership Assets, to the extent that the same would interfere with or disturb these receivership proceedings, without the permission and approval of this Court; provided, however, that nothing herein shall preclude any party with standing from seeking relief from this Order on proper application and after notice and a hearing. Any actions in violation of this paragraph shall be null and void as acts in contravention of this Order. This injunction is intended to function in a manner consistent with the protections afforded by the automatic stay under 11 U.S.C. §362.

13. **Quarterly Reports**. The Receiver shall provide quarterly reports to Uncle Nearest, the Lender and the Court detailing the Receiver's disbursements for paying the costs incidental to the receivership activities encompassed by this Order, any payments to or for the expenses of Uncle Nearest, the Subject Entities and the Eady Road Property, and describing the Receiver's activities and the financial and operational status of Uncle Nearest.

14. **Inspection of Books and Records**. The Receiver shall make available to the Lender and Uncle Nearest, for inspection and copying, any and all books and records of Uncle Nearest, any Subject Entity, and, with respect to the Eady Road Property, Mr. Weaver, relating to the Receivership Assets, now or hereafter in existence.

15. **<u>Debt</u>**. Any money or other Receivership Assets coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be remitted, as necessary and appropriate, to satisfy Uncle Nearest's obligations under the Loan Documents.

16. **<u>No Personal Liability</u>**. The Receiver and the Receiver Representatives shall have no personal liability or otherwise in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of Uncle Nearest or the Subject Entities' creditors, taxing authorities, or other claimants because of the Receiver's duties as Receiver, whether arising before or after his appointment. The Receiver and the Receiver Representatives shall have no personal liability or otherwise with respect to any environmental liabilities arising out of or relating to the Receivership Assets.

17. The Receiver and the Receiver Representatives shall not be personally liable for the satisfaction of claims, and shall have no claims asserted against them in their personal capacities or otherwise outside of the Receivership Assets, in any way relating to the Receiver's duties under this Order, including, without limitation in connection with the Receiver's capacity as Receiver for the Receivership Assets and Uncle Nearest, including the Subject Entities, or as an agent, officer or director of Uncle Nearest or the Subject Entities, except for claims that are adjudicated by a court of competent jurisdiction for which no appeal or motion to reconsider or similar motion may be or has been brought (without giving effect to any statutory basis to seek relief from judgment other than by appeal) which adjudicates and concludes that the Receiver or any Receiver Representative(s), as applicable, committed an act or omission constituting (i) gross negligence, (ii) willful misconduct, or (iii) actual fraud. Any person or entity seeking to assert liability of any kind against the Receiver or any Receiver Representative, regardless of whether

such person or entity has notice of this Order, must first obtain leave from this Court upon motion with due and proper notice to the Receiver and any applicable Receiver Representative(s).

18. Any debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Assets, whether in the name of the Receiver, Uncle Nearest, any Subject Entity, Mr. Weaver (with respect to the Eady Road Property), or any other Receivership Asset, shall be the debt, liability, and obligation of the receivership estate only and not of the Receiver personally or of any Receiver Representative. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver, are protected and privileged with the same protections of this Court as the Receiver enjoys.

19. **No Fiduciary Relationship**. Nothing in this Order shall be construed such that the Receiver is considered to be in a fiduciary relationship with the Plaintiff, any of the Defendants, the Subject Entities, or all of them collectively.

20. **Indemnification**. The receivership estate shall indemnify and hold harmless the Receiver and the Receiver Representatives for any judgment, costs, or expenses suffered or incurred by him or any of the Receiver Representatives as a result of actions instituted against him or them in relation to the discharge of their duties aforesaid or in carrying out or furtherance of this Order; provided, however, that nothing herein shall be construed to indemnify the Receiver or the Receiver Representatives to the extent that any judgment, costs, or expenses that has been found by this Court or another court of competent jurisdiction (after the conclusion of any appeals and further rights of appeal) to have arisen from the gross negligence, willful misconduct, or actual fraud of the Receiver or any of the Receiver Representatives. In the event a suit is filed or a claim is made against Receiver or any Receiver Representative, except as conditioned or limited above in this provision, the receivership estate shall reimburse Receiver or the Receiver Representative,

as applicable, for the costs and fees of defending such action or claim, including, without limitation, any appeals thereof to final resolution and award of judgments. The indemnification obligations outlined in this Order shall survive the termination of the Receiver's appointment and the conclusion, dissolution, or discharge of the receivership estate.

21. **Compensation**. The Receiver and each of the Receiver Representatives shall be compensated, without further order of this Court, for services at their standard hourly rates, plus reimbursement of all out-of-pocket fees, costs, and expenses. All such fees and expenses shall be payable from the Receivership Assets, which as defined herein include insurance policies applicable to this and other litigation, or, if the Receivership Assets are insufficient, by the Lender. Payment of fees and expenses payable to the Receiver and the Receiver Representatives in accordance with this Order shall take priority over payment of any claims arising prior to the date on which the Receiver is appointed, except for the Lender's claims. The Receiver shall be authorized to obtain insurance coverage, including, but not limited to, coverage with respect to the liabilities, duties and obligations of the Receiver hereunder (in the form of an errors and omissions policy, directors and officers policy, fiduciary policy, general liability, or otherwise), as the Receiver deems reasonably necessary or appropriate, the costs of which shall be payable from the Receivership Assets or, if the Receivership Assets are insufficient, by the Lender.

22. **Payment of Indebtedness**. Within ninety (90) days after the termination of the receivership, the Receiver shall pay to the Lender all receipts remaining, if any, after payment of the items set forth herein, to be applied to Uncle Nearest's obligations under the Loan Documents to the Lender.

23. **Resignation**. The Receiver shall be entitled to resign upon 30 days' advance written notice to the Lender, Uncle Nearest, and the Court, in which case a successor Receiver reasonably

acceptable to the Lender shall be promptly appointed by the Court. In the event any fees or expenses of the Receiver or the Receiver Representatives remain unpaid upon resignation, or if any indemnity obligation payable to the Receiver under this Order remains unsatisfied, and no immediately available funds from the Receivership Assets are available to pay such amounts, the outstanding fees or expenses of the Receiver and his professionals, and any applicable indemnity obligation owing hereunder, shall be payable promptly by the Lender upon written request.

24. **Filing of Copies. Within ten (10) days after entry of this Order, the Receiver shall, pursuant to 28 U.S.C. § 754, cause copies of the Verified Complaint and a copy of this Order to be filed in the federal district court for each district in which any Receivership Asset is located.**

25. **Termination of Receivership**. The receivership authorized and created hereby may be terminated at any time by the Lender or the Receiver by filing with the Court, with service upon Uncle Nearest, a Motion to Terminate Appointment of Receiver. Upon proper notice thereof and upon hearing and determination of this Court that the purposes of this receivership have been served, this Court may terminate the receivership.

26. **Exclusive Jurisdiction**. This Court shall retain exclusive jurisdiction over all matters concerning the Receiver, the Receivership Assets, the receivership created hereby and any other matter or dispute arising from this Order or relating to the interpretation or implementation of this Order.

IT IS SO ORDERED.

DATE: ________________________ ____________________________________

United States District Judge

SUBMITTED FOR APPROVAL:

*/s/ Erika R. Barnes*
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

- and-

Demetra Liggins (not admitted in Tennessee)
Dairanetta S. Spain (TN Bar No. 039981)
MCGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
dspain@mcguirewoods.com

M. Alexandra Shipley (not admitted in Tennessee)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*