# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**UNCLE NEAREST, INC., NEAREST** )<br>**GREEN DISTILLERY, INC., UNCLE** )<br>**NEAREST REAL ESTATE HOLDINGS, LLC,** )<br>**FAWN WEAVER and KEITH WEAVER,** )<br>)<br>**Defendants.** ) | Civil Action No. 4:25-CV-38 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR THE IMMEDIATE APPOINTMENT OF RECEIVER

Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, Fawn Weaver, and Keith Weaver ("Defendants" or "Uncle Nearest"), by and through counsel, hereby submit this Response in Opposition to Plaintiff Farm Credit Mid-America, PCA's ("Plaintiff" or "Lender") Emergency Motion for the Immediate Appointment of Receiver [Dkt. No. 3] (the "Motion"), asking this Court to grant the extraordinary remedy of appointing a receiver for Uncle Nearest. Defendants are reviewing Plaintiff's submission and preparing for the August 7, 2025 hearing. [Dkt. No. 12] However, given the multiple salacious and inaccurate allegations in both Plaintiff's Complaint and Motion that casts Uncle Nearest in a negative light, Uncle Nearest submits this response addressing certain key claims to correct the record and provide the Court with critical missing context. It will address these issues more fully at the August 7, 2025 hearing.

1

First, Plaintiff's Motion claims that Defendants materially overstated their barrel inventory, resulting in an overstatement of collateral by approximately $21,000,000. Mot. at ¶ 22. Plaintiff ignores that it was not the Defendants that made this overstatement but rather it was the Defendants' former Chief Financial Officer ("CFO"), acting on his own, and who has now been terminated. Between 2022 and 2023, the former CFO represented to the Plaintiff that Uncle Nearest had 77,000 barrels of whiskey on hand and used this overstatement to secure a $24 million line of credit increase. Plaintiff approved the increase without verifying the inventory with the third-party warehouse provider. While Uncle Nearest's Chief Executive Officer ("CEO") signed the loan amendments reflecting the credit limit increases, those documents contained no information about barrel counts, and the former CFO was the sole signee on all loan notices used to request funding secured by the barrels. Inventory reporting was handled separately and exclusively by the former CFO.

Plaintiff was uniquely positioned to know that the former CFO had engaged in fraudulent activity—conduct that is now under third-party investigation, including this specific instance. The lead investigator met directly with Plaintiff's CEO to share that information, confirming that the Weavers were not aware of the fraud or the overreporting that triggered the technical default that Plaintiff now primarily relies upon to seek an appointment of a receiver. Further, Plaintiff's Managing Director of Food and Agribusiness and its Financial Officer were directly involved in overseeing the loan and facilitating disbursements tied to the barrel collateral, and worked closely with Uncle Nearest's former CFO. Plaintiff additionally ignores that in January 2024, Defendants notified Plaintiff of this overstatement by submitting verifiable inventory reports based on the actual barrel inventory. No one at Uncle Nearest was aware that the CFO had inflated the previous reports. Once the updated report was provided, the discrepancy became evident. Despite being

2

aware for several months of this overstatement by the former CFO, Plaintiff's Motion tellingly fails to acknowledge that Uncle Nearest was the victim of fraudulent activity and never intended to trigger the technical default.

Second, the Motion claims that Defendants misrepresented that "Term Loan proceeds would be used by Uncle Nearest to purchase a $2.225 million home on Martha's Vineyard Island [the 'MV Property'] . . . by an entity whose existence had never been disclosed to the Lender." Mot. at ¶ 38. Again, the Motion ignores critical context. The Motion omits that Defendants were fully transparent with the Plaintiff about the purchase and intended purpose of the MV Property. The Plaintiff made no objection to the purchase at the time the funds were advanced. Although the Plaintiff was aware that proceeds would be used for the MV Property, it did not request or, based on information and belief, take any action to perfect a security interest in the real estate, nor did it request closing documentation.

Throughout the process, Plaintiff was kept fully informed. Plaintiff's Managing Director of Food and Agribusiness and the Financial Officer traveled to Martha's Vineyard in 2023 with Uncle Nearest's former CFO and stayed in a Plaintiff–funded rental. Internal emails confirm the trip was social in nature and included plans for group outings and bike rentals. *See* Declaration of Fawn Weaver, attached as Exhibit 1. While there, they attended Uncle Nearest's inaugural Gospel Brunch at the MV Property and expressed unsolicited praise for the acquisition. The Plaintiff also received renovation updates and never raised objections. Plaintiff's direct participation and documented support contradict the narrative it now offers in its Motion.

Third, the Motion suggests that Defendants were derelict in their payment obligations. *See* Mot. at ¶¶ 31–34. In 2024 alone, Uncle Nearest paid nearly $9 million in loan payments to Plaintiff. And in 2025, the company made a payment of $7.5 million. These payments were made while

3

Uncle Nearest worked in good faith to resolve the technical default—caused solely and entirely by the former CFO's misreporting.

In the midst of that resolution effort, Uncle Nearest proactively engaged a third-party financial advisory firm—one that was selected with the knowledge and approval of the Plaintiff—to work alongside Plaintiff's team in negotiating a path forward. That firm advised Uncle Nearest to pause payments during the active negotiation period, explaining that such a pause was standard protocol in bank negotiations of this nature. Uncle Nearest did not take that recommendation lightly. It independently verified the guidance with other respected professionals in the banking community. Still, it frequently expressed to the advisory team—that Plaintiff was working alongside—that it would prefer to continue making payments—stating openly that it wanted to avoid any future suggestion that it was not servicing the debt.

Despite those instincts, Uncle Nearest honored the advice of the Plaintiff-approved financial team in an effort to collaborate toward a solution. Importantly, the Plaintiff was fully aware of this payment pause and did not object—because it was part of the mutually agreed-upon process. Once a mutual agreement was reached, Uncle Nearest paid the mutually agreed-upon amount of $7.5 million immediately.

But for the fraud perpetrated by Defendants' former CFO, Defendants fulfilled their monetary obligations to the Plaintiff. In other words, Defendants were, and are, victims of fraud—not perpetrators or conspirators.

"The appointment of a receiver is not a matter of right, but rather lies in the discretion of the district court and will be exercised only when necessary to protect the plaintiff's interest in property which is the subject of the action." *Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, No. 10-CV-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010). Further, the appointment

of a receiver is an extraordinary equitable remedy reserved for extraordinary circumstances. *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 432 (E.D. Mich. 1995) (citing *Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 307 (6th Cir. 1956)).

Here, Defendants acknowledge that the agreements at issue technically allow for a receiver to be appointed but given the circumstances one should not be appointed here. Plaintiff was fully informed and aware of the circumstances that led to the technical default and was working side-by-side with Defendants to find a resolution. Plaintiff was also fully informed about the purchase of the MV Property and its employees and agents even went to the inaugural event at the MV Property. And Plaintiff was also aware of Defendant's payment pause that was fully supported by a third-party financial advisory firm that Plaintiff approved and worked with. Plaintiff and its employees and agents were actively involved in—and frankly acquiesced to—the exact circumstances that it is now claiming somehow support a receivership. But Plaintiff's actions throughout these several months demonstrate that Plaintiff was not truly concerned that its collateral was in danger of being lost. And even now, its collateral is not in imminent danger of being lost, concealed, injured, diminished in value, or squandered absent a receiver. This is particularly true given Uncle Nearest's payments to Plaintiff totaling approximately $16.5 million over the last eighteen months.

Given the circumstances, the drastic and extraordinary remedy of receivership is both unwarranted and inappropriate. It should be denied.

Respectfully submitted,

**ADAMS AND REESE, LLP**

*/s/ Rocklan W. King III*
Rocklan W. King III (TN BPR #030643)

5

Stacia M. Daigle (BPR #038533)
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Telephone: (615) 259-1450
Fascimile: (615) 259-1470
rocky.king@arlaw.com
stacia.daigle@arlaw.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2025, a true and correct copy of the foregoing has been served via the Court's CM/ECF system to the following:

Erika R. Barnes
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

Demetra Liggins (not admitted in Tennessee)
Dairanetta S. Spain (TN Bar No. 039981)
MCGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
dspain@mcguirewoods.com

M. Alexandra Shipley (not admitted in Tennessee)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

                                                          */s/Rocklan W. King III*
                                                          Rocklan W. King III