UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) |
| | ) |
| *Plaintiff*, | ) Case No. 4:25-cv-38 |
| | ) |
| v. | ) Judge Atchley |
| | ) |
| UNCLE NEAREST, INC., *et al.*, | ) Magistrate Judge Steger |
| | ) |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Farm Credit Mid-America, PCA's Emergency Motion for the Immediate Appointment of Receiver [Doc. 3]. The Court held a hearing on the Motion on August 7, 2025. After considering the arguments and evidence presented at this hearing, the parties' written submissions, and the other materials in the record, the Court finds that a receivership is necessary. Accordingly, the Motion [Doc. 3] is **GRANTED** for the reasons detailed below.

### I. BACKGROUND

Defendants Fawn and Keith Weaver founded Uncle Nearest, a whiskey company honoring the legacy of Nathan "Nearest" Green, in 2016.[1] [*See* Doc. 4 at ¶ 4; Doc. 30 at 7–8]. Over the next several years, Uncle Nearest grew at an impressive rate. [Doc. 30 at 58]. This growth, however, came with a need for additional capital. [*See id.*] Consequently, Uncle Nearest entered into a Credit Agreement with Farm Credit on July 22, 2022. [Doc. 1-1].[2] Under the terms of this Agreement, Uncle Nearest was given a $35 million revolving loan and a $20 million term loan. [Doc. 1-1].

---

[1] For purposes of this Memorandum Opinion and Order, the Court uses the term "Uncle Nearest" to refer collectively to Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC.

[2] For documents that were part of the record prior to the August 7th hearing (like the Credit Agreement), the Court cites to the earlier docket entry rather than the hearing exhibit number.

Farm Credit secured its interests under these loans through a Security Agreement, several deeds of trust granting it liens in certain real property, and the filing of multiple UCC Financing Statements. [Docs. 1-10–1-14]. The cumulative result of these documents is that Farm Credit holds a security interest in almost all of Uncle Nearest's property.

In the months that followed, the Credit Agreement was repeatedly amended to, among other things, increase the revolving loan's limits, provide additional term loans, and establish a $15 million real estate line of credit ("RELOC") loan. [Docs. 1-2–1-6]. On July 26, 2023, the Credit Agreement was amended for the sixth time. [Doc. 1-7]. This amendment, unlike those that preceded it, stated that Uncle Nearest had committed multiple "Events of Default." [*See id.* at § 1]. Farm Credit nevertheless agreed to waive these Events of Default and further increase Uncle Nearest's revolving loan limit to $67 million "in reliance upon Uncle Nearest's representations as to its success and strategic growth." [Doc. 1 at ¶ 17; Doc. 1-7 at §1 and Annex A]. On December 23, 2023, Farm Credit waived additional Events of Default in the parties' seventh amendment to the Credit Agreement. [Doc. 1-8 at § 1]. But while Farm Credit was willing to waive these Events of Default, it was not willing to let Uncle Nearest avoid additional scrutiny.

On January 12, 2024, Farm Credit requested that Uncle Nearest provide it with a host of financial information. [Doc. 1-15]. One week later, Farm Credit sent Uncle Nearest another letter (i) reiterating its request for information, (ii) stating that a new Event of Default had been ongoing since January 2, 2024, because Uncle Nearest had failed to timely make an interest payment, and (iii) reserving its rights under the Credit Agreement. [Doc. 1-16]. Uncle Nearest attempted to cure the claimed Event of Default by remitting more than $1.5 million to Farm Credit. [*See* Doc. 1-17]. Farm Credit accepted this payment but informed Uncle Nearest that it was insufficient to cure the Event of Default. [*Id.*]. Farm Credit then reiterated that it was reserving its rights under the Credit

Agreement and requested that the parties meet to address several outstanding issues. [*Id.*].

On May 24, 2024, Farm Credit sent Uncle Nearest another letter claiming that there were multiple outstanding Events of Default. [Doc. 1-18]. This list of defaults grew through November 5, 2024, when Farm Credit sent Uncle Nearest yet another letter. [Doc. 1-19]. This November letter also claimed that there were "significant and material unreconciled discrepancies between the amount of Collateral" (i.e., whiskey barrels) reported by Uncle Nearest and what Farm Credit's third-party inspector was able to verify.[3] [*Id.*]. Because of these issues, Farm Credit required Uncle Nearest to (i) provide it with all necessary information to perform an inventory reconciliation, (ii) meet with it to discuss the Events of Default and the Credit Agreement, and (iii) pay Farm Credit's related attorney's fees. [*Id.*]. Uncle Nearest responded shortly thereafter. [Doc. 1-20].

The parties then engaged in a series of negotiations that ultimately resulted in an April 15, 2025, Forbearance Agreement. [*See* Doc. 1-9]. Under the Forbearance Agreement's terms, the parties agreed there were multiple outstanding Events of Default, but Farm Credit promised not to exercise its contractual rights relating to these defaults for the duration of the "Forbearance Period" provided that certain conditions were met. [*See generally id.*]. Importantly, the Forbearance Period automatically terminated on the occurrence of a new Event of Default. [*Id.* at § 1(e)].

Shortly after the parties executed the Forbearance Agreement, Uncle Nearest began triggering new Events of Default by, among other things, failing to make multiple loan payments, including a $10 million paydown.[4] [Doc. 4 at ¶ 16]. As a result, Farm Credit filed suit, seeking to recover the more than $108 million Uncle Nearest owes in outstanding loans. [Doc. 1]. It filed the

---

[3] Defendants do not dispute that there were material discrepancies between the amount of collateral Uncle Nearest reported and what it actually held. [*E.g.*, Doc. 16 at 2–3; Doc. 16-1 at ¶¶ 2–3]. They assert, however, that these discrepancies were the result of misrepresentations made by its former CFO, Mike Senzaki, of which other Uncle Nearest personnel were unaware. [Doc. 16 at 2–3; Doc. 16-1 at ¶¶ 2–3].

[4] Defendants do not dispute that they are in default under the Forbearance Agreement. [Doc. 30 at 31].

instant Emergency Motion for the Immediate Appointment of Receiver alongside the Verified Complaint, arguing that such an appointment is necessary to preserve its collateral during these proceedings. [Doc. 3].

## II. STANDARD OF REVIEW

Federal district courts "enjoy[] broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also* FED. R. CIV. P. 66. "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC*, 462 F.3d at 551. Because a receivership is an extraordinary remedy, it must be employed with the utmost caution and "only in cases of clear necessity to protect the plaintiff's interests in the property." *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (internal quotation marks omitted). Courts in the Sixth Circuit evaluate whether such necessity exists by looking to multiple factors, including:

1. Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
2. Whether the Defendants have engaged in fraudulent conduct;
3. Whether legal remedies are inadequate;
4. Whether less drastic equitable remedies are available;
5. The likelihood that the appointment of a receiver would do more good than harm;
6. Whether there is inadequate security for the debts; and
7. Whether the debtor is insolvent.

*Id.* In addition, "the parties' advance consent to the appointment of a receiver is a strong factor

weighing in favor of appointing one." *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014). As for what evidence the Court may consider when evaluating the foregoing factors, that is left to the Court's discretion. *Id.* (quoting *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997)).

### III. ANALYSIS

Farm Credit asserts that the receivership factors weigh in its favor. [Doc. 3 at ¶¶ 35–46]. Defendants, unsurprisingly, dispute this contention. They argue that appointing a receiver would be inappropriate given the brand damage it would entail, the availability of less drastic remedies, and the fact that many of the issues underlying the parties' dispute were caused by the unauthorized actions of Uncle Nearest's former CFO, Mike Senzaki. [*E.g.*, Doc. 16; Doc. 30 at 91–92]. The Court appreciates Defendants' position, but it finds that appointing a receiver is necessary under the circumstances.

The Court will begin its analysis by looking to Uncle Nearest's solvency and whether there is adequate security for Farm Credit's loans as these are "the most important factors in evaluating whether to appoint a receiver." *PNC Bank, Nat'l Ass'n*, 15 F. Supp. 3d at 758. Starting with solvency, the Court directly asked Defendants' counsel whether Uncle Nearest was solvent. [Doc. 30 at 93]. And although counsel was unable to definitively answer this question, he indicated that Uncle Nearest's solvency was in question and that the business is experiencing cash flow problems. [*Id.* at 93–94]. Accordingly, this factor weighs in favor of a receivership as it is unclear whether Uncle Nearest is or will remain solvent.

Turning to whether there is adequate security for Farm Credit's loans, the Court finds there is not. The lack of certainty surrounding Uncle Nearest's solvency itself supports the conclusion there is not adequate security. *See Webb Mtn, LLC v. Exec. Realty P'ship, L.P.* (*In re Webb Mtn,*

5
Case 4:25-cv-00038-CEA-CHS   Document 32   Filed 08/14/25   Page 5 of 11   PageID #: 2397

*LLC*), 414 B.R. 308, 355 (Bankr. E.D. Tenn. 2009) ("Insolvency is basically a balance sheet test: that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets[.]" (cleaned up)). Beyond this, the issues surrounding Uncle Nearest's barrel inventory further support the conclusion that adequate security is lacking. It is undisputed that Uncle Nearest's revolving loan was increased by $24 million because of Senzaki's misrepresentations concerning Uncle Nearest's barrel inventory. [*See* Doc. 16-1 at ¶ 2; Doc. 30 at 23, 43–44]. Given that this $24 million was supposed to be secured by the illusory whiskey barrels, [Doc. 30 at 39–40], that these barrels do not exist strongly suggests that the loans are not adequately secured, particularly where almost all of Uncle Nearest's other assets are already encumbered. Accordingly, this factor weighs in favor of a receivership.

Next, there is the issue of whether Farm Credit has an adequate legal remedy. Defendants assert that Farm Credit's breach of contract claim provides Farm Credit with an adequate legal remedy because should Farm Credit prevail, then it can collect damages as a judgment creditor. [Doc. 30 at 27]. The Court, however, is not convinced. The uncertainty surrounding Uncle Nearest's solvency and the lack of adequate security call into question whether Farm Credit would be able to fully recover if a money judgment was entered in its favor. Farm Credit's status as a secured creditor means that it would have priority over other claims, but that priority would mean little if the available assets were insufficient to compensate Farm Credit for its injuries. Accordingly, this factor weighs in favor of appointing a receiver. *See Bollinger v. Bollinger Motors, Inc.*, No. 2:25-CV-10790-TGB-APP, 2025 U.S. Dist. LEXIS 88209, at *16 (E.D. Mich. May 8, 2025) (holding that a debtor's precarious financial situation rendered legal remedies inadequate). That said, although Farm Credit's secured creditor status does not swing this factor in Defendants' favor, it does reduce the factor's weight because Farm Credit would be able to

6
Case 4:25-cv-00038-CEA-CHS    Document 32    Filed 08/14/25    Page 6 of 11    PageID #: 2398

recover at least a portion of its damages through its breach of contract claim should it ultimately prevail.

Looking next to whether the at-issue property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered, this factor weighs against appointing a receiver. Pursuant to the parties' joint motion, the Court entered an Agreed Order that states, among other things, the following:

> Defendants, and all persons or entities, including employees, agents, creditors, banks, investors, shareholders, officers, directors, subsidiaries, affiliates, owners or others, affiliated with the Defendants (the "Company"), **SHALL** be enjoined and restrained from in any way disturbing, interfering, influencing, or affecting any and all issues that are subject of the proceedings or the proposed Receivership, including, without limitation, the "brand" of Uncle Nearest. This prohibition includes, without limitation, sales or other transfers of any of the Lender's Collateral and the proposed Receivership Assets, including any such transfers that are prohibited by the Loan Documents, such as investments, advances, or transfers by Uncle Nearest in, or on behalf of, any non-Loan Party (as such term is defined in the Credit Agreement) or Dispositions (as such term is defined in the Credit Agreement), pursuing actions or proceedings which affect the Lender's Collateral or the proposed Receivership Assets, to the extent the same would interfere with or disturb these proceedings, without the permission and approval of this Court, until the Court has ruled on the Receiver Motion. For the avoidance of doubt, the Company is authorized to operate its business in the ordinary course; however, no barrel sales shall occur.

[Doc. 29 at ¶ 1]. As this Agreed Order prohibits Defendants from improperly dissipating Uncle Nearest's assets, those assets are not in imminent danger. Consequently, this factor weighs against appointing a receiver.

That said, an injunction is not a substitute for a receiver in this case long term. Defendants assert that an injunction like in the Agreed Order, combined with other elements such as the required production of certain information, is all that is necessary to protect Farm Credit's interests in this case. [*See* Doc. 30 at 29–30, 90–92]. They maintain that such an injunction would provide Farm Credit with effective relief while avoiding the drastic outcomes that a receivership would

7
Case 4:25-cv-00038-CEA-CHS    Document 32    Filed 08/14/25    Page 7 of 11    PageID #: 2399

entail. [*See id.*]. The Court agrees that the availability of such an injunction lessens the need for a receiver, but it disagrees with the idea that the availability of such an injunction eliminates the need for a receiver entirely. Businesses routinely face unexpected and/or rapidly evolving situations that require quick decision making. The Court is concerned that Uncle Nearest's ability to effectively respond to these kinds of situations would be impaired if the Court relied on an injunction alone. Unforeseen circumstances and disagreement about how best to handle them could lead the parties to seek an interpretation and/or modification of a hypothetical injunction whenever Uncle Nearest was presented with a new challenge or opportunity. The Court would work quickly to address any such dispute, but it might not be quick enough to allow Uncle Nearest to best address the situation at hand.[5] In contrast, a receiver could react to emergent situations in real time and promptly address them. Thus, while an injunction could provide much of the same relief as a receivership, it cannot effectively substitute for a receiver in this case. Consequently, this factor weighs in favor of a receiver, but only just.

Turning to whether the Defendants engaged in fraudulent conduct, this factor also weighs lightly in favor of a receiver. It is undisputed that Senzaki misrepresented Uncle Nearest's barrel inventory to obtain an additional $24 million under the revolving loan. [Doc. 16-1 at ¶ 2; Doc. 30 at 23, 43–44]. The Court appreciates that Defendants maintain they were unaware of these misrepresentations at the time, [Doc. 16-1 at ¶ 3], but the fact remains that they were made by an Uncle Nearest officer as part of his official duties. [*Id.* at ¶ 2; Doc. 30 at 66]. In such circumstances, traditional principles of agency generally hold the employer responsible for its employee's

---

[5] To illustrate this point, consider the circumstances surrounding the instant Motion. Farm Credit filed the Motion on July 28th. [Doc. 3]. A hearing was held on August 7th, [Doc. 26], and this Memorandum Opinion and Order was entered the following week. Thus, even with the Court's diligence and the parties' tremendous efforts, it has still taken more than two weeks to resolve whether a receiver will be appointed. Depending on what issues Uncle Nearest may face in the coming months, a two-week delay in reaching a decision could prove detrimental.

conduct. *See* RESTATEMENT (THIRD) OF AGENCY § 7.07 (A.L.I. 2006); *Youngblood v. Wall*, 815 S.W.2d 512, 518 (Tenn. Ct. App. 1991) ("The employer is generally liable for the frauds and misrepresentations of his employee made within the scope of that employment even when he has no knowledge thereof under the doctrine of respondeat superior.") (citing *Holloway v. Howerdd*, 536 F.2d 690 (6th Cir. 1976); *Ellis v. Bruce*, 5 Tenn. App. 344 (1927)). Consequently, the Court finds that Senzaki's actions must be attributed to Uncle Nearest when evaluating this factor. That Defendants were unaware of Senzaki's conduct lessens this factor's weight, but it still leans in favor of a receiver.[6]

Next in the Court's analysis is whether the appointment of a receiver would do more good than harm. Defendants argue it would not. They assert that appointing a receiver would harm the Uncle Nearest brand and risk depressing sales. [Doc. 30 at 28–29, 91–92]. They further assert that Fawn Feaver is the key driver behind the Uncle Nearest brand and that limiting her involvement would hurt the company. [*Id.* at 69–70]. These are understandable concerns, but the Court is not convinced they render a receivership more harmful than helpful. First, it is not clear to the Court that appointing a receiver would cause materially more brand damage than may already have been caused by the initiation of this litigation. Second, the Court can craft a receivership order that still allows the Weavers to market Uncle Nearest and further build the brand. By keeping the Weavers involved in this way, they could mitigate any potential brand damage that a receivership might entail.[7] Finally, there is more to a company than just its brand image. In evaluating whether a receiver would do more good than harm, the Court cannot limit itself to just the effects that a

---

[6] Farm Credit also asserts that Defendants misrepresented the nature of a real estate purchase in Martha's Vineyard. [Doc. 3 at ¶ 38]. The Court, however, finds that this alleged misrepresentation does not weigh either in favor or against the appointment of receiver given the outstanding factual disputes surrounding it.

[7] At the August 7th hearing, Farm Credit represented that it "would love to have Ms. Weaver marketing [Uncle Nearest]." [Doc. 30 at 48].

receiver would have on the Uncle Nearest brand. It must also consider the effects a receiver would have on the entirety of Uncle Nearest's operations. And when considering how a receiver could safely shepherd Uncle Nearest through its current financial difficulties, the Court finds that a receiver is likely to do more good than harm. Accordingly, this factor weighs in favor of a receiver.

Finally, there is the issue of consent. Uncle Nearest Real Estate Holdings, LLC and Keith Weaver expressly consented to appointment of a receiver over the "Nearest Green Distillery Property" and the "Eady Road Property" in the deeds of trust for those properties. [Doc. 1-12 at § 5.05(d); Doc. 1-14 at § 5.05(d)]. As a result, this factor weighs in favor of appointing a receiver as to those properties. *PNC Bank, Nat'l Ass'n*, 15 F. Supp. 3d at 758.

Balancing the foregoing factors, the Court finds they cumulatively weigh in favor of appointing a receiver. The Court does not reach this decision lightly. It fully appreciates Defendants' concerns and has given them great thought. But these concerns are insufficient to overcome the Court's conclusion that a receiver is necessary to protect Farm Credit's interests at this time. That said, the Court will tolerate the existence of a receiver only so long as it is necessary. If a material change in circumstances eliminates the need for a receiver, then any party may file a motion to dissolve the receivership.

### IV. CONCLUSION

For the foregoing reasons, Farm Credit's Motion [Doc. 3] is **GRANTED**. Having decided to appoint a receiver, the Court must next determine who that receiver will be. Before making this decision, however, the Court finds it appropriate to receive additional briefing from the parties regarding their proposed receiver candidates. Accordingly, the parties are **ORDERED** to submit briefs of no more than **ten pages**, not counting exhibits, addressing the qualifications of their

proposed receivers on or before **August 20, 2025, at 12:00 p.m. EASTERN TIME**.[8] Responses are neither necessary nor permitted. The previously entered Agreed Order [Doc. 29] **SHALL** remain in effect until the Court appoints a receiver.

    **SO ORDERED.**

                                            */s/ Charles E. Atchley, Jr.*
                                            **CHARLES E. ATCHLEY, JR.**
                                            **UNITED STATES DISTRICT JUDGE**

---

[8] The Court **RECOMMENDS** the parties to meet and confer regarding their proposed receivers prior to submitting their briefs. Jointly proposed receivers will receive additional weight in the Court's evaluation of candidates.