IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, FAWN WEAVER and KEITH WEAVER, | ) ) ) ) ) | Case No. 4:25-cv-38<br><br>Judge Atchley<br><br>Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF FARM CREDIT MID-AMERICA, PCA
IN SUPPORT OF RECEIVERSHIP CANDIDATES**
[Relates to Dkt. No. 32]

In accordance with this Court's Memorandum Opinion and Order, Farm Credit Mid-America, PCA (the "Lender") submits this statement in support of receivership candidates.

**INTRODUCTION**

1. In connection with its *Emergency Motion for the Immediate Appointment of Receiver* (the "Receiver Motion"),[1] the Lender proposed Kevin Larin ("Mr. Larin") of Riveron RTS, LLC ("Riveron") as the Receiver.[2] Having worked as the Lender's financial advisor, Mr. Larin and Riveron are uniquely situated to serve as receiver. Additionally, as the Court is aware, the Defendants have waived the right to contest the appointment of Mr. Larin as Receiver, and the Lender continues to propose Mr. Larin as the Receiver for this case. To the extent the Court does not select Mr. Larin, the Lender also proposes Jeremiah Foster ("Mr. Foster") of Resolute

---

[1] Dkt. No. 3.
[2] Each capitalized term used but not defined herein shall have the meaning ascribed in the Receiver Motion or the form of *Order Appointing Receiver and Ordering Turnover of Property to the Receiver* attached as **Exhibit C**.

Commercial Services, LLC ("Resolute") as an alternative candidate. Indeed, mindful of the Court's suggestion that the parties continue to confer about the selection of a receiver, the Lender first proposed Mr. Foster to the Defendants as a potential consensus candidate. Without providing any reasons for doing so, the Defendants flatly rejected Mr. Foster and also declined even to reveal to the Lender the identity of any other receiver(s) they intend to propose by today's deadline.

2. Mr. Larin's resume and a summary of relevant experience of Mr. Larin and Riveron is attached as **Exhibit A** and Mr. Foster's resume and a summary of relevant experience of Mr. Foster and Resolute is attached as **Exhibit B**. As set forth in detail below and in the exhibits, Mr. Larin and Mr. Foster (each a "Proposed Receiver" and collectively the "Proposed Receivers") possess extensive experience and qualifications that make them exceptionally well-suited to manage the receivership effectively and efficiently, which is crucial to ensuring the continued operation and potential restructuring of Uncle Nearest, as well as protecting the interests of all stakeholders, which could include the sale of Uncle Nearest as a going concern.

## RECEIVER QUALIFICATIONS

3. Any receiver appointed in this Case must possess the capability to (1) operate Uncle Nearest effectively without disruption and maintain its brand presence in the market, (2) evaluate whether a viable path towards restructuring Uncle Nearest exists and implement such path, and (3) in the unfortunate event that Uncle Nearest or other Receivership Assets must be sold, efficiently effectuate any such sale(s) in a way that maximizes value for all stakeholders.

**A. Either of the Proposed Receivers can effectively operate the Uncle Nearest business to safeguard the Receivership Assets.**

4. Because of their unique experience in the beverage industry and business acumen, the Proposed Receivers can operate Uncle Nearest effectively and ensure that Uncle Nearest continues to function as smoothly as possible during the receivership. Each of the Proposed

Receivers has a proven track record in managing similar businesses, which would increase the likelihood that the brand's reputation and market position are preserved throughout this process.

a. <u>Mr. Larin</u>

5. Mr. Larin and Riveron have relevant experience in the beverage industry ranging from vodka to wine and spirts as well as beer and malt beverages. This experience includes, but is not limited to:

- **Stoli Group (USA), LLC and Kentucky Owl, LLC (Chapter 11 – Chief Restructuring Officer):** Riveron is currently the Chief Restructuring Officer of Stoli and its affiliated brands in their Chapter 11 bankruptcy cases.

- **Vintage Wine Estates (Chapter 11 – Financial Advisor to the Debtors):** Riveron served as retained Financial Advisor to VWE in their Chapter 11 cases culminating in a sale of substantially all assets across several transactions

- **North American Breweries (Chief Restructuring Officer):** Riveron served as an interim officer to beer and malt beverage company through its recapitalization and restructuring process.

- **[Name Confidential] Importer of Wines & Spirits (Financial Advisor):** Riveron served as a financial and performance improvement advisor to the company through its out-of-court recapitalization.

b. <u>Mr. Foster</u>

6. Mr. Foster and Resolute have operated and sold businesses in highly specialized industries, including the adult beverage sector, which requires both technical knowledge and strategic positioning to enhance value. Mr. Foster and Resolute also have experience serving as federal and state court receivers. This experience includes, but is not limited to:

- **Kentucky Owl, LLC (Chapter 11 – Collateral Manager):** Serving as collateral manager of the whiskey and bourbon holding company in the Stoli chapter 11 cases, involving the disposition of approximately 36,000 barrels of premium whiskey across seven facilities.

- **Brian Arden Wines (Assignment for Benefit of Creditors):** Managing the winddown of a winery, including 450 cases of bottled wine and other residual assets after the property sale.

- **Haus Beverage (Assignment for Benefit of Creditors):** Directed the strategic winddown of an adult beverage company, including creditor negotiations, lease exits at four facilities, and oversight of 200,000+ finished goods and raw materials.

- **Center for Reproductive Health (Receivership):** Appointed by the Tennessee Attorney General as receiver for a financially distressed Nashville fertility clinic to secure cryogenically preserved embryos and more than 6,000 patient records, stabilize operations, perform complex forensic accounting, address regulatory and bankruptcy challenges, and manage significant media and public interest.

B. **Either of the Proposed Receivers can assess whether a restructuring path exists.**

7. The Proposed Receivers are experienced in restructuring and have the expertise to accurately assess the viability of potential restructuring plans for Uncle Nearest. This assessment necessarily involves a thorough investigation into Uncle Nearest's historical and current financials, creating and updating accurate cash flow projections for Uncle Nearest, identifying all entities related to Uncle Nearest, including the Weavers, and facilitating the preparation of financial statements. The Proposed Receivers' experience in restructuring is essential to determining the best course of action for Uncle Nearest's future and effectuating that course of action.

    a. Mr. Larin

8. Mr. Larin has undertaken significant hands-on roles including quantifying and administering claims, stabilizing operations, developing and executing transactions, sizing appropriate capital structures, and securing and negotiating lending agreements both in court and out-of-court. He has advised companies, stakeholders and courts on business valuation and litigation support matters including, but not limited to:

- **Hanley Wood, LLC (Financial Advisor):** Advised construction trade publication company through its out-of-court restructuring and recapitalization

- **Art Van Furniture:** Advised a major Midwest furniture retailer with over 140 retail locations across six states on its restructuring alternatives, culminating in its Chapter 11 structured liquidation / going-out-of-business sales.

- **[Name Confidential] Global Consumer Disposable Company (Financial Advisor):** Advised market leading, multinational, consumer disposable products company on

inventory and supply chain optimization as well as litigation settlements to preserve liquidity though their out-of-court restructuring.

    b. Mr. Foster

9. Mr. Foster's team has demonstrated a specialized approach in assessing the viability of businesses. This includes the following:

- **Shoot the Moon (Chapter 11 – Trustee)**: As Chapter 11 Trustee for a 16-location restaurant franchise, Resolute investigated fraudulent transfers, kiting, and preference claims. Concurrently, the team stabilized operations, closed unprofitable units, and preserved core value, enabling a successful § 363 going-concern sale that generated significant value.

- **Out-of-Court Workout**: Mr. Foster served as financial advisor for multi-state Restaurant Franchisor with 3 distinct concepts in 90 locations. In such role, he and his team were responsible for evaluating monthly and quarterly financial reporting, as well as advising and assisting in crucial fiscal matters including projected income statements, cash flows, and financial covenant levels.

- **Out-of-Court Workout**: Mr. Foster served as Interim President and chief restructuring officer for large independent Produce Distributor. In such role, he and his firm were responsible for stabilizing operations, finding creative ways to unlock assets on balance sheet and ultimately execute the restructuring of the company. Resolute worked with an industry specific Investment Banker to successfully create options for existing ownership to consider.

**C. Either of the Proposed Receivers is qualified to sell businesses as going concerns.**

10. If, as no party hopes is the case, Uncle Nearest needs to be sold as a going concern or other Receivership Assets must be sold, the receiver must have experience in selling businesses in the distressed space. This experience includes working with investment bankers and other stakeholders to ensure a smooth, efficient and successful sale process. The receiver's expertise in this area will be critical in maximizing the value of the assets sold for all parties involved.

    a. Mr. Larin

11. Mr. Larin has spearheaded the stabilization of distressed companies culminating in the sale of the company across multiple states and industries including, but not limited to:

- **Imperial Sugar Company (Financial advisor):** Advised a major US sugar cane company on its financial and supply chain stabilization, culminating in a sale to Louis Dreyfus Commodities, LLC at a >50% premium to its per share price.

- **Cox Operating, LLC (a/k/a MLCJR, LLC):** Advised a major offshore exploration and production company, guiding the company through operational stabilization and ultimate series of section 363 sales generating over $95,000,000 in transaction proceeds.

  b. <u>Mr. Foster</u>

12. When restructuring or continued operations are not sustainable, Mr. Foster and his firm recognize and leverage their expertise to prepare businesses for sale. Mr. Foster's firm has overseen the successful going concern sales in several cases. Resolute has deep experience in marketing and executing going-concern sales, including the following as receiver:

- **Spiral, Inc. (Receiver)**: Receiver for a $65,000,000 conglomerate with 100+ affiliates across five states. Resolute stabilized operations, enforced compliance, conducted forensic accounting that uncovered misappropriated funds, and streamlined asset management, enabling the successful sale of business segments, recovering approximately 64% of outstanding debt.

- **Daystar (Receiver)**: Oversaw a $60,000,000 multi-state automotive parts manufacturer and distributor. Implemented budget controls, restored order flow, and preserved brand value. These steps improved efficiency, identified buyers, and enabled an expedited sale of all four product lines.

**D. <u>Either of the Proposed Receivers can work collaboratively with all stakeholders</u>**.

13. Lastly, given Uncle Nearest currently does not willingly accept the appointment of a receiver, having a receiver with experience working with parties hesitant to accept their expertise is imperative. Either one of the Proposed Receivers will be able to navigate a potentially unreceptive situation and turn it into a collaborative environment. No matter which of the Proposed Receivers the Court appoints, they will also be able to maintain open communication with all stakeholders and this Court, using local resources if necessary, to facilitate the cooperation and transparency the Lender has been requesting and is necessary for the receivership to be successful.

This experience and ability are vital to manage the complexities of the case and receivership and ensure that the receivership is conducted efficiently and effectively.

    a. <u>Mr. Larin</u>

  14. Mr. Larin has navigated troubled companies through their respective in-court and out-of-court resolutions. As described above, his experience includes a range of roles, including quantifying and administering claims, stabilizing operations, developing and executing transactions, sizing appropriate capital structures, and securing and negotiating lending agreements. All of the experiences that Mr. Larin has acquired over the years with his current and former employers in restructuring and turnaround are the specific set of skills required to administer the current receivership engagement.

    b. <u>Mr. Foster</u>

  15. As demonstrated by the experience highlighted above and set forth in more detail in Mr. Foster's resume, Mr. Foster has exhibited he can maximize stakeholder value while preserving operations through difficult transitions. In particular, Mr. Foster's success as receiver for the Center for Reproductive Health, a highly-publicized and emotionally-charged case, reflects his ability to navigate challenging circumstances.

## **CONCLUSION**

  16. As this Court is aware, the Lender has already spent extensive time, effort, and economic resources in hiring a financial advisor to help understand Uncle Nearest's financials and its Collateral. Over the course of the past approximately six months, Mr. Larin and the Riveron team assigned have developed an intimate familiarity with the company, its leadership, and its personnel. The Riveron team has nearly 2,000 man-hours of on-site and remote interaction trying to facilitate an understanding of the operational practices at Uncle Nearest. Riveron is uniquely

qualified to most effectively and efficiently "react to emergent situations in real time and promptly address them." Memorandum Opinion and Order [Dkt. No. 32]. To the extent the Court does not appoint Mr. Larin, Mr. Foster and the Resolute team have extensive receivership and restructuring experience, including in the beverage space, making it hard to understand what objection Uncle Nearest could have to its appointment. Consequently, either Mr. Larin or Mr. Foster possess the necessary expertise and abilities "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* (citing *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)).

### PRAYER

WHEREFORE, for the reasons set forth above, Plaintiff Farm Credit Mid-America, PCA respectfully requests that this Court (i) enter the Order in the form attached as **Exhibit C** with the name of its chosen receiver and (ii) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Erika R. Barnes*
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

- and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661

Email: dliggins@mcguirewoods.com
dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

K. Elizabeth Sieg (*pro hac vice pending*)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Email: bsieg@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

Dated: August 20, 2025

# CERTIFICATE OF SERVICE

I certify that on August 20, 2025, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's ECF/CMF system, via U.S. Mail and electronic mail upon the following:

Rocklan W. King III
Stacia M. Daigle
Adams and Reese, LLP
1600 West End Avenue, Suite 1400
Nashville, TN 37203
Rocky.king@arlaw.com
Stacia.daigle@arlaw.com

Brian Patterson
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Brian.patterson@lw.com

/s/ *Erika R. Barnes*

Case 4:25-cv-00038-CEA-CHS     Document 36     Filed 08/20/25     Page 10 of 10
PageID #: 2448