# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, FAWN WEAVER and KEITH WEAVER, | ) ) ) ) ) | Case No. 4:25-cv-38<br><br>Judge Atchley<br><br>Magistrate Judge Steger |
| Defendants. | ) ) | |

## STATEMENT OF FARM CREDIT MID-AMERICA, PCA
## IN SUPPORT OF MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER
[Relates to Dkt. No. 41]

In response to the *Motion for Clarification of Receivership Order* (the "Entity Clarification Motion")[1] filed by Phillip G. Young, Jr. (the "Receiver"), Farm Credit Mid-America, PCA ("FCMA" or the "Lender") submits this statement in support of the Entity Clarification Motion and bringing the entities (the "Additional Entities") identified by the Receiver within the scope of the Receivership Assets.[2]

## INTRODUCTION

1. From information provided by Uncle Nearest to FCMA and from FCMA's own diligence, a significant overlap appears to exist between the operations, finances, and likely the personnel of Uncle Nearest and the Additional Entities. Upon information and belief, some (or

---

[1] Dkt. No. 41.
[2] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Order Appointing Receiver* [Dkt. No. 39] (the "Receivership Order") or the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3].

1

perhaps all as may be revealed by investigation) of these Additional Entities have received assets or proceeds of assets from Uncle Nearest or Uncle Nearest has paid such Additional Entities' obligations to other parties directly (or vice versa). These assets or proceeds of the assets (which also constitute FCMA's Collateral) transferred before the Receivership Order are Receivership Assets and the receipt and/or use of these assets should place these Additional Entities squarely within the scope of the receivership. Additionally, the failure of the Weavers and Uncle Nearest to recognize corporate formalities and division of finances with respect to the Additional Entities further warrant the inclusion of the Additional Entities under the Receivership Assets. To the extent the Receiver does not currently have sufficient information to determine whether any of the Additional Entities (or other entities that were not specifically identified in the Receivership Order) should be included as Receivership Assets, an order from this Court providing the Receiver access to the books and records of all potentially related entities is necessary.

## ARGUMENT

2. Section 29-40-112 of Tenn. Code Ann. Provides that "[t]he powers and duties of a receiver may be expanded, modified, or limited by court order."[3] Courts have "broad powers and wide discretion in crafting relief" in a receivership.[4] Courts may use their inherent broad powers to expand receiverships where expansion is necessary to safeguard assets and guard against potential dissipation.[5] Here, to ensure all available—and apparently commingled—assets are brought within the receivership, the Court should expand the Receivership Assets to include all

---

[3] Tenn. Code Ann. § 29-40-112.
[4] *United States v. Capital Across Am., L.P.*, 369 Fed. App'x. 674, 678 (6th Cir. 2010) (citing *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009)).
[5] *See Consumer Fin. Protection, Bureau v. StratFS, LLC*, No. 24-CV-40-EAW-MJR, 2025 WL 1466196, at *7 (W.D.N.Y. May 22, 2025); *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233-34 (D. Nev. 1985) (corporate entity disregarded "in the interests of public convenience, fairness, and equity" where the key goal of expanding the receivership is "ensur[ing] that all available assets are brought within the receivership and may properly be distributed to creditors").

2

the Additional Entities. In this receivership estate, at a minimum, Grant Sidney, Inc. ("Grant Sidney"), Humble Baron, Inc. ("Humble Baron") and Quill and Cask Owner, LLC ("Quill and Cask") should be included. Further, to the extent additional information is necessary for the Receiver to determine whether the remaining Additional Entities or other entities that may be related to Uncle Nearest constitute (or should constitute) Receivership Assets an order should be entered directing the Receiver to examine the books and records of any such entity.

### I. Grant Sidney, Humble Baron, and Quill and Cask are Receivership Assets.

3. As this Court noted in the Receivership Order, the Receivership Assets include "all of Uncle Nearest's assets, including proceeds, wherever located" [Dkt. No. 39 ¶ 2] and "all Collateral as described in the Loan Documents." [*Id.* ¶ 3]. To ensure that all of Uncle Nearest's assets, including proceeds, and all Collateral are clearly within the scope of the Receivership Order, this Court should find that Grant Sidney, Humble Baron, and Quill and Cask are Receivership Assets.

    a. Grant Sidney

4. Uncle Nearest's website states that "Uncle Nearest Premium Whiskey and Nearest Green Distillery are owned by Uncle Nearest, Inc. Uncle Nearest, Inc. is owned by Grant Sidney, Inc. Grant Sidney, Inc. is wholly owned by Fawn Weaver."[6]

5. Upon information and belief, in 2025, Grant Sidney made multiple wires totaling over $16 million to Uncle Nearest for the purposes of paying (a) payroll, (b) the $7.5 million paydown at the closing of the Forbearance Agreement, and (c) for other operating costs of Uncle Nearest. Further upon information and belief, Grant Sidney and Uncle Nearest maintained bank accounts at CalPrivate Bank. FCMA has not had access to the CalPrivate Bank account information

---

[6] *Who Owns Uncle Nearest*, https://unclenearest.com/fawnweaver/ (last visited Sept. 19, 2025).

from years prior to 2025, but Grant Sidney's significant infusions of capital during this short time period to Uncle Nearest warrant an investigation by the Receiver into the source of these funds. These transfers are also an example of the lack of separation of finances between the Weavers, Uncle Nearest, and the other entities related to the Weavers.

    b. <u>Humble Baron</u>

6. The funds and operations of Uncle Nearest and Humble Baron appear to be comingled such that Humble Baron falls within the scope of the Receivership Assets. One glaring example is the likely payment by Uncle Nearest, Inc. of at least one settlement agreement payment on Humble Baron's behalf. On August 1, 2024, Levy Premium Foodservice Limited Partnership ("<u>Levy</u>") filed a complaint against Humble Baron and Shelbyville Barrel House BBQ LLC for their failure to pay to Levy contracted amounts in the action styled *Levy Premium Food Service Ltd. Partnership v. Shelbyville Barrel House BBQ LLC, et al.*, Case No. 24-0890-II, in the Chancery Court for the State of Tennessee, 20th Judicial District, Davidson Couty, Tennessee (the "<u>Levy Litigation</u>"). On July 23, 2025, the presiding court in the Levy Litigation entered an agreed order filed by the parties to the Levy Litigation, which reflected that the parties reached a confidential settlement agreement (the "<u>Levy Settlement Agreement</u>") and noted that, by September 15, 2025, they expected the terms would be satisfied.[7] Upon information and belief, Uncle Nearest, Inc. made at least one payment directly to Levy after execution of the Levy Settlement Agreement. This settlement payment, alone, demonstrates that FCMA's Collateral has been used to fund Humble Baron's obligation.

7. Upon information and belief, Uncle Nearest made a payment to Guinness World Records on March 22, 2023, in the amount of $82,500. Uncle Nearest made a second payment on

---

[7] FCMA did not attach a copy of the Levy Settlement Agreement due to its confidential nature. At the Court's direction or request, FCMA will provide a copy for in camera review or file a copy under seal.

4

April 29, 2024, in the amount of $42,500. On March 23, 2023, Guinness World Records named Humble Baron as the holder of the record for longest bar in the world.[8] These payments further demonstrate that FCMA's Collateral has been used to fund Humble Baron's business endeavors.

8. Additionally, despite Humble Baron's location on the Nearest Green Distillery property, it does not appear that Humble Baron has any lease with, or has paid rent to, Uncle Nearest for Humble Baron's operations of the restaurant on the premises. Even if Humble Baron were truly to be considered a separate entity not part of the Receivership Assets, it would essentially be occupying a Receivership Asset for free.

9. Further, despite requests to Uncle Nearest before the entry of the Receivership Order, FCMA never received a list of the Humble Baron employees and their roles. Without access to books and records, the Receiver's ability to determine the source of funding of Humble Baron payroll or if Humble Baron is being operated by Uncle Nearest employees is impossible.

    c. Quill and Cask Owner, LLC

10. In January and February of 2025, Uncle Nearest indicated that it had a buyer for barrels of whiskey at a competitive price. A Purchase and Sale Agreement (the "PSA")[9] provided to FCMA by Uncle Nearest for barrel sales was between Uncle Nearest, Inc. and "Q and Cask, Inc." as the potential purchaser. A search of Delaware, Tennessee, and California (the most likely

---

[8] *Longest Bar*, https://www.guinnessworldrecords.com/world-records/69267-longest-bar (last visited Sept. 19, 2025); *see also* Steve Russell, *The World's Longest Bar Now Exists at a Distillery in Tennessee*, GARDEN & GUN, https://gardenandgun.com/articles/the-worlds-longest-bar-now-exists-at-a-distillery-in-tennessee/ (Mar. 21, 2023); *and* Seth Thompson, *WORLD's LONGEST BAR: 'Humble Baron' Grand Opening at Uncle Nearest Distillery Features Elite Cocktail and Culinary Program*, THE BOURBON REVIEW, https://www.gobourbon.com/worlds-longest-bar-humble-baron-grand-opening-at-uncle-nearest-distillery-features-elite-cocktail-and-culinary-program/ (Mar. 24, 2023).
[9] FCMA did not attach a copy of the PSA due to its confidential nature. At the Court's direction or request, FCMA will provide a copy for in camera review or file a copy under seal.

states of organization for the entity) secretary of state websites turned up no results for "Q and Cask, Inc." as an entity in existence.

11. However, an entity named Quill and Cask Owner, LLC did appear as an entity formed in Tennessee. The Articles of Organization retrieved from the State of Tennessee reflect that the principal executive office and mailing address of this entity is Keith Weaver, Suite 2000, 600 North Main St., Shelbyville, TN 37160. A true and correct copy of the certified record of the Articles of Organization is attached as **Exhibit A**. When FCMA inquired into any potential relationship between "Q and Cask, Inc." and Uncle Nearest, Uncle Nearest, through its financial advisor at the time, advised that Q and Cask, Inc. was a different entity than Quill and Cask Owner, LLC. Now that the Receiver has begun his diligence, the fact that Quill and Cask is an affiliate is undisputed.

12. Upon information and belief, Quill and Cask made a payment on or about January 30, 2025, in the amount of $275,000 to Uncle Nearest. This payment leads to more questions about the relationship between Quill and Cask and Uncle Nearest.

    d. <u>Remaining Additional Entities</u>.

13. As to the remaining Additional Entities, the Receiver cannot obtain sufficient information to make an informed determination whether those Additional Entities fall within the scope of the Receivership Assets. An order from this Court to examine those Additional Entities' books and records is necessary to enable the Receiver to make such a determination.

**II. <u>No financial discipline has been maintained between Uncle Nearest, the Subject Entities, and the Additional Entities identified by the Receiver.</u>**

14. The Weavers and Uncle Nearest have maintained no financial discipline or corporate formalities between the Weavers, Uncle Nearest, the Subject Entities, the Additional Entities, and potentially other entities related to the Weavers. Due to the lack of financial discipline

6

Case 4:25-cv-00038-CEA-CHS   Document 44   Filed 09/25/25   Page 6 of 10   PageID #: 2531

between Uncle Nearest and the Additional Entities, these Additional Entities (and any others the Receiver uncovers as possibly related or transferring money to or from the Weavers, Uncle Nearest, the Subject Entities, or the Additional Entities) should be included in the Receivership Assets.

15. As noted above, courts may expand receiverships and disregard corporate entities "in the interests of public convenience, fairness, and equity" where a key goal of expanding a receivership is "ensur[ing] that all available assets are brought within the receivership and may properly be distributed to creditors."[10]

16. Because of the wholesale absence of structure between the Weavers, Uncle Nearest, and the Additional Entities, in the interest of equity and to ensure all available and intertwined assets are brought within the receivership, the Additional Entities (and potentially more) should be included. Without their inclusion in the receivership, the Receiver will be left with an incomplete picture of the finances of the Uncle Nearest and Weaver enterprise and without access to assets that should be administered as Receivership Assets for the benefit of all impacted stakeholders.

## CONCLUSION

17. Based on information that FCMA has received or been made aware of, FCMA believes that all of the Additional Entities should be a part of the receivership estate. At a minimum, Grant Sidney, Humble Baron, and Quill and Cask are all entities whose own operations and finances are so comingled with Uncle Nearest's that their inclusion in the scope of the Receivership Assets is warranted. The Receiver's ability to obtain an accurate financial and operational understanding of all entities relating to Uncle Nearest is critical to allow him to operate in accordance with his duties. Further, to complete the financial and operational understanding, the

---

[10] *Consumer Fin. Protection, Bureau v. StratFS, LLC*, 2025 WL 1466196, at *7 (citing *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233-34 (D. Nev. 1985)).

Receiver must have the power to review books and records of all the other Additional Entities and any other entities that he discovers may be related to Uncle Nearest and any other Receivership Asset. Moreover, the Receiver is subject to quarterly reporting, and once he has full access to information, he can always move to remove any of the Additional Entities to the extent his diligence reveals they are unrelated to the Receivership Assets.

## PRAYER

WHEREFORE, for the reasons set forth above, FCMA respectfully requests that this Court enter an Order (a) clarifying that all the Additional Entities are subject to the Receivership Order, or (b) clarifying that Grant Sidney, Humble Baron, and Quill and Cask are entities within the scope of the Receivership Assets and (c) giving the Receiver the authority to examine books and records of the Additional Entities and any other entities that he determines may be related to the Receivership Assets. FCMA also requests that the Court order such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/*Erika R. Barnes*
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

- and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
 dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

K. Elizabeth Sieg (admitted *pro hac vice*)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Email: bsieg@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

Dated: September 25, 2025

**CERTIFICATE OF SERVICE**

       I certify that on September 25, 2025, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's ECF/CMF system, via U.S. Mail and electronic mail upon the following:

Rocklan W. King III
Stacia M. Daigle
Adams and Reese, LLP
1600 West End Avenue, Suite 1400
Nashville, TN 37203
Rocky.king@arlaw.com
Stacia.daigle@arlaw.com

Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
Justin@thompsonburton.com

Lucas A. Davidson, Esq.
Tennessee Distilling Group, LLC
1 Music Circle South, Suite 300
Nashville, TN 37203
ldavidson@buchalter.com

                                            /s/*Erika R. Barnes*
                                            Erika R. Barnes