| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 4:25-cv-38** |
| | ) | |
| v. | ) | **Judge Atchley** |
| | ) | |
| **UNCLE NEAREST, INC., et al.,** | ) | **Magistrate Judge Steger** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## RESPONSE OF HUMBLE BARON, INC. TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT

Humble Baron, Inc., by and through its undersigned counsel, hereby makes a special appearance for the sole purpose of responding to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Statement"),[2] which seek to divest Shelbyville Barrel House BBQ, LLC, Humble Baron, Inc., Grant Sidney, Inc., Uncle Nearest Spurs VI, LLC, Quill and Cask Owner, LLC, Nashwood, Inc., Classic Hops Brewing Co., Shelbyville Grand, LLC, Weaver Interwoven Family Foundation, and 4 Front Street LLC (collectively, the "Non-Defendants"), and their respective boards and shareholders, of their control of the companies and place the assets of these Non-Defendants, which are not liable for any of the debts of the Defendants in this proceeding, under the exclusive control of the Receiver for the above-captioned Defendants. In support of this Response, Humble Baron, Inc. asserts and alleges as follows:

---

[1] Dkt. 41.
[2] Dkt. 44.

## PRELIMINARY STATEMENT

1.      As an initial matter, the Court should be aware that actions and statements made in this Case, whether in pleadings or in open court, have business consequences for those entities that are involved or become involved. When unsubstantiated accusations are made against parties or Non-Defendants and those accusations are placed in the public record, the accusations are picked up by the press and cause immediate financial and reputational harm to the targets of the accusations. In this case, the completely unsupported allegations that these ten Non-Defendants have comingled their finances with the Defendants' finances and should be placed under receivership has caused vendors to stop doing business with the Non-Defendants and customers to stop placing orders with the Non-Defendants to the financial detriment of the Non-Defendants. This is apparently the intent of Farm Credit even though Farm Credit has not provided one shred of evidence to support its allegations. The Non-Defendants have suffered significant financial losses as a result of this effort by Farm Credit that has no legitimate legal or factual basis, is not necessary to protect Farm Credit's interests, and appears solely intended to harm the Non-Defendants and the interests of Fawn and Keith Weaver.

2.      The Non-Defendants are specially appearing before this Court to contest the Motion to Clarify filed by the Receiver. However, based on the tenor of the Motion to Clarify, and the Receiver's statement that he "makes no representation about whether these entities should be included within the scope of this receivership," it is clear that this is really Farm Credit's motion to expand the receivership to include (1) entities that are not directly or indirectly obligated on any of the Farm Credit Loans and (2) assets that are not collateral to Farm Credit. To support its effort, Farm Credit offers either completely unsupported factual allegations, patently false factual allegations, or factual allegations that are easily refutable or do not support the requested relief.

And this effort has been undertaken even where the Receiver has already made a preliminary conclusion and advised Farm Credit that the value of the equity interest in this receivership estate, even considering all of the loans from Farm Credit and all other debts of the Uncle Nearest entities, is significant even in his most conservative valuation. Farm Credit has prosecuted this factually and legally unsupportable effort to enlarge the receivership even though there isn't any colorable risk that the assets already in the Receivership will be insufficient to satisfy the Farm Credit claims and without any regard to the financial and operational damages that such action has directly caused and continues to cause to these Non-Defendants.

3.       The Receiver's reticence to take a position as to whether the Non-Defendants are properly included in this Receivership is the first sign that there really is no factual or legal basis to include these Non-Defendants in the Receivership. If there were a sound legal or factual basis for these entities to be included in the Receivership, the Receiver, whose job is to recover assets of the receivership, would not defer. The second sign that there is no basis to include these Non-Defendants in the Receivership is that, despite being specifically ordered by this Court to produce all evidence supporting its assertions, Farm Credit has literally filed nothing. Not a single document has been filed to support the assertions made by Farm Credit in its Statement and many of those allegations are directly contradicted by the Receiver. Accordingly, Farm Credit has either defied the Court's Order by not submitting evidence it has, or Farm Credit filed its Statement without a shred of evidence to support it.

**<u>BACKGROUND</u>**

4.       On July 28, 2025, Farm Credit Mid-America, PCA ("Farm Credit") filed its *Verified Complaint and Request for Appointment of Receiver* (the "Complaint")[3] naming Uncle

---

[3] Dkt. No. 1.

Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, Fawn Weaver and Keith Weaver, as Defendants. The Complaint specifically named Fawn Weaver and Keith Weaver "in their official and individual capacities." The Complaint further defined all of the Defendants, including Fawn and Keith Weaver, as "Uncle Nearest."[4]

5.     The Complaint contained only two counts. The first count was a breach of contract claim relating to the Loan Documents, as defined in the Complaint. The second count sought appointment of a receiver over the assets of Uncle Nearest Inc., the Distillery, RE Holdings, the Nearest Green Distillery Property, and the Eady Road Property.

6.     Neither Fawn Weaver nor Keith Weaver has any personal or individual obligation relating to the Farm Credit Loan Documents that formed the basis of breach of contract claim.

7.     On July 28, 2025, the Plaintiff filed *Plaintiff's Emergency Motion for the Immediate Appointment of Receiver.*[5]

8.     On August 3, 2025, the Defendants filed their *Defendants Response in Opposition to Plaintiff's Emergency Motion for the Immediate Appointment of Receiver.*[6]

9.     After a hearing, on August 14, 2025, the Court entered its *Memorandum Opinion and Order*[7] granting the Plaintiff's Motion and requiring each of the parties to submit their proposed receiver for the Court's consideration. After consideration of the submissions of the parties, the Court entered the *Order Appointing Receivership*[8] on September 25, 2025, which appointed Phillip Young as Receiver.

---

[4] *Id.* at 1.
[5] Dkt. No. 3.
[6] Dkt. No. 16.
[7] Dkt. No. 32.
[8] Dkt. No. 39.

10.     On October 1, 2025, the Receiver filed his *Receiver's First Quarterly Report* (the "Report"),[9] which included the results of approximately five weeks of his investigation into the assets and operations of the Defendants.  The Report stated that "the Receiver has found no evidence of misappropriation, theft, or financial impropriety by the Company's founder, its management team, or any current employee."[10]  While the Report confirms "that the Company has significant value and can be reorganized as a going concern on a relatively quick timeline,"[11] the Receiver has further disclosed in other communications that, in fact, the Company is solvent on a balance sheet basis by a significant margin.  Thus, Farm Credit's allegations of malfeasance by the Weavers, its allegations regarding the solvency of the Uncle Nearest entities, and its allegations regarding adequacy of collateral have all been debunked by the Receiver in less than five weeks.

11.     On September 12, 2025, apparently at the behest of Farm Credit, the Receiver filed his M*otion for Clarification of Receivership Order* (the "Motion to Clarify"),[12] which requests that the Court clarify the Receivership Order as to whether certain Non-Defendant entities should be placed under the control of the Receiver.  The Receiver, however, provided no specific evidence to support expanding the receivership to include the Non-Defendants and expressly took no position as to whether any of the Non-Defendants should be placed under control of the Receiver.

12.     On September 25, 2025, Farm Credit filed its *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Statement"),[13] which included certain allegations of comingling of assets and which contradicted specific findings in that regard by the Receiver.

---

[9] Dkt. No. 46.
[10] *Id.* at 5-6.
[11] *Id.* at 1.
[12] Dkt. No. 41.
[13] Dkt. No. 44.

13.     On September 30, 2025, the Court entered its *Order* (the "September 30 Order")[14] which initially noted that none of the Defendants had objected to the Motion to Clarify. Likely unbeknownst to the Court, the Receiver has asserted that he controls the corporate Defendants and their counsel such that he would have had to be the one to direct the corporate Defendants to object to his own motion. That was not likely to happen.

14.     The September 30 Order further required the Receiver to serve notice of the Motion to Clarify and the September 30 Order on the identified Non-Defendants and that the Non-Defendants would have until October 21, 2025, to contest the Motion and the inclusion of the Non-Defendants in the receivership.

15.     The September 30 Order further provided that "Plaintiff **SHALL** file all materials in its possession that it believes support expanding the receivership with the Court. Plaintiff **SHALL** comply with the Court's Memorandum and Order Regarding Sealing Confidential Information [Doc. 9] when filing any materials it believes to be confidential."[15]

16.     As of October 21, 2025, Farm Credit has failed to file any documents that support expanding the receivership—not a single document.

## ARGUMENT

### I.     The Receiver Has Already Determined that Uncle Nearest Is Not Insolvent

17.     It is important to note in this analysis that the Uncle Nearest Defendants are not insolvent by the Receiver's own analysis. In fact, the Receiver has determined that the equity value of the Defendant companies, after payment of all the debts of the Defendant companies, is very significant even in a most conservative view. Consequently, since Farm Credit has a lien on all assets, tangible and intangible, of the Uncle Nearest Defendants, there is clearly adequate

---

[14] Dkt. 45.
[15] *Id.* at 3.

6

collateral to secure the Farm Credit debt.  Not only are insolvency (or lack thereof) and adequacy of collateral with respect to the Defendants key considerations for the appointment of a receiver for the Defendants, but they are also highly relevant to this effort by Farm Credit to expand the receivership to include Non-Defendants.

18.     Thus, this receivership was instituted over a group of companies that are not and were not insolvent, yet Farm Credit is now seeking to bring into the receivership assets of the Non-Defendants, which are entities that are not obligated on the Farm Credit debt that the Receiver has already concluded can be satisfied in full from the assets currently in the receivership.  This prompts the question: what is this effort by Farm Credit really about?  The answer appears to be that this is about a pillage and burn strategy by a creditor that may itself have exposure under lender liability for the close relationship its loan officer had with the former CFO of Uncle Nearest who has been accused of the very alleged malfeasance and fraud that form the basis of many of the allegations asserted by Farm Credit in its Complaint and that led to the alleged loan defaults that have put the Uncle Nearest companies in this current predicament.  The Receiver has already acknowledged that the issues related to the alleged fraudulent conduct of the former CFO are significant.[16]  Since this is an equitable proceeding and the Court has been bombarded with unfounded accusations against Uncle Nearest and the Weavers, it is important the Court be aware that potential claims exist against Farm Credit for its actions and the actions of its officers leading up to this lawsuit.

---

[16] Dkt. 46 at 5.

## II. Farm Credit Has Failed to Prove any of the Elements for Granting a Receivership, Expanding a Receivership or Piercing the Corporate Veil with Respect to the Non-Defendants

19. In this diversity action, the law of Tennessee is applicable.[17] The movants seeking to include the Non-Defendants in the receivership have the burden of proving entitlement to that relief.[18]

20. As the Court noted in its September 30 Order, "[c]ourts have broad power and wide discretion to oversee the administration of a receivership."[19] Further, the Court has the power to expand a receivership where the expansion is necessary to effectively safeguard assets of the receivership.[20] It is noteworthy that the vast majority of federal cases dealing with federal equity receiverships arise in securities fraud cases instituted by the SEC or other consumer fraud contexts. In the context of diversity jurisdiction, the courts have found that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations."[21]

21. The cases addressing this issue indicate that expansion of a receivership estate should be done only "with utmost caution and justified only where there is a necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the

---

[17] "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426-27, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* at 427; *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum state.").
[18] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005)(holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)( "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.")(citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).
[19] *Consumer Fin. Prot. v. Strafs, LLC*, No. 24-CV-40-EAW-MJR, 2025 U.S. Dist. LEXIS 98061, at *28 (W.D.N.Y. May 22, 2025)
[20] *See id.*
[21] *See, e.g.*, *Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

benefits of receivership outweigh the burdens on the affected parties."[22]  Where the requested expansion of a receivership is to bring in another company based on the doctrine of alter ego, the Court "must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege – . . . [the court] may not apply the doctrine to prejudice an innocent third party."[23]

22.     In analyzing the viability, or lack thereof, of the alter ego claims, in addition to applying federal law factors, the Court should also look to applicable state law requirements in this case.  In *SEC v. Elmas Trading Corp.*,[24] the court evaluated the application of alter ego analysis in the context of a motion by a receiver to expand the receivership to include non-parties in the context of a securities fraud case and ultimately considered state law elements in its federal law analysis.  The court first analyzed the applicable state law factors for piercing the corporate veil and noted that the "federal analysis gives less respect to the corporate form than does the strict common law alter ego doctrine."  The court then noted that

> [t]his case arose under the Securities and Exchange Act and was brought by the Securities and Exchange Commission, the principal watchdog of those violating the securities' laws.  The government has a keen interest in preventing the unlawful manipulation and use of securities.
>
> Further, the Receiver's primary objective in this case is to ensure that all available assets are brought within the Receivership and may then be properly distributed to creditors.  We will, therefore, apply a more flexible approach in determining whether the corporate entity should be disregarded.[25]

23.     Applying the rationale in *Elmas*, since the instant case is based on diversity jurisdiction, not federal question jurisdiction, and the claim at issue here is a simple breach of

---

[22] *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-cv-60462-BLOOM/Valle, 2021 U.S. Dist. LEXIS 83769, *5 (S.D. Fla. May 3, 2021)(*quoting SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062, at *2 (D, Nev. 1985).).
[23] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[24] *Id*.
[25] *Id.* at 234.

contract claim, not a securities fraud claim, the Court should look to state law in determining the alter ego question. Furthermore, since the receivership is merely procedural mechanism, not a form of relief, and since the Non-Defendants have no existing obligations to Farm Credit, Farm Credit would ultimately have to prove alter ego status under Tennessee law in order to actually make these Non-Defendants liable for any debts owed by Uncle Nearest to Farm Credit. Consequently, even if federal law still controls the question of expansion of the receivership, a relevant factor for the Court to consider within the federal standards is whether Farm Credit has a reasonable likelihood of maintaining a claim for alter ego under state law based on the facts presently before the Court.

24.     In applying the federal factors first, as set forth in the Court's September 30 Order, Farm Credit has not identified any specific assets of the receivership that are to be protected with respect to any of the Non-Defendants. So, out of the gate, Farm Credit's effort to expand the receivership to include these other entities must fail because the expansion of the receivership is not necessary "to safeguard assets and prevent their dissipation." Further, Farm Credit has not established that the Non-Defendants were funded by proceeds of some fraudulent scheme perpetrated by Uncle Nearest or any other bad actor, as is sometimes used to justify expanding receiverships to non-parties in cases where the public at large has been defrauded, such as in securities fraud actions and consumer fraud cases.[26] This receivership is based on a breach of contract claim, not a fraud claim.

25.     Farm Credit's effort also fails because it can't meet the bare requirements that would be relevant to a determination that any of the Non-Defendants should have a receiver appointed. This Motion to Clarify and the Statement by Farm Credit go far beyond what is simply

---

[26] *See, e.g., SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

an effort to protect assets that are property of the receivership from dissipation—this is an effort to wrest control over separate Non-Defendant companies based on mere allegations of potential facts and on factors significantly less rigorous than the very factors that the Court required to be considered in appointing the Receiver over Uncle Nearest in the first place. While Uncle Nearest had consented to the appointment of a receiver in the Loan Documents, had defaulted in payments to Farm Credit, and had pledged all of its assets to secure the debt to Farm Credit, the Non-Defendants have done none of that. They are not parties to the Loan Documents, they have not defaulted on any obligations to Farm Credit, and they have not pledged any of their assets to secure the Farm Credit debt. Surely, the Non-Defendants have at least an equivalent right to the same analysis and burden of proof for divesting their directors of control over their businesses as Uncle Nearest's board had in its defense of the initial receivership motion.

26.    In the deciding the Receivership Motion, this Court noted multiple factors used by courts in the Sixth Circuit:

> (1) Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
>
> (2) Whether the Defendants have engaged in fraudulent conduct;
>
> (3) Whether legal remedies are inadequate;
>
> (4) Whether less drastic equitable remedies are available;
>
> (5) The likelihood that the appointment of a receiver would do more good than harm;
>
> (6) Whether there is inadequate security for the debts; and
>
> (7) Whether the debtor is insolvent.[27]

27.    Farm Credit's Statement, even if all of the allegation therein were assumed factually correct (they are not), establishes none of the factors necessary for the appointment of a receiver

---

[27] Dkt. 32, at 4 (citing *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015)).

with respect to the Non-Defendants. Farm Credit has not identified any specific "property at issue" in which it or the receivership estate has an interest, much less made any showing that such property is in imminent danger of being diminished. Farm Credit has made no showing that the Non-Defendants have engaged in fraudulent conduct. Farm Credit has no legal or equitable remedies to assert against these Non-Defendants because they are not obligated on any of the Farm Credit Loans, so there is no basis to say the legal remedies are inadequate or that less drastic equitable remedies are even justified.

28.     It is indisputable that a finding of alter ego and expansion of the receivership to control these Non-Defendants would do more harm than good because, as will be further explained *infra*, at least one of these Non-Defendants and the Uncle Nearest entities are prohibited from being under common control by applicable state and federal law. Causing them to be under joint control would cause one or both of the entities to have to cease operations. With respect to all of the Non-Defendants, the disruption to their operations from being placed under receivership would cause significant financial damages similar to the financial losses to the Uncle Nearest entities that have been caused by the receivership, as recognized by the Receiver in his Report.[28] Since the Non-Defendants are not obligated on the Farm Credit Loans and hold no collateral securing those Loans, the question of the adequacy of Farm Credit's security has no relevance. Finally, Farm Credit has not alleged, and has certainly not provided, any evidence that any of the Non-Defendants are insolvent. In sum, with respect to the Non-Defendants, Farm Credit has not proved a single one of the same factors that this Court weighed in determining that Uncle Nearest should be under receivership control.

---

[28] Dkt. 46 at p.8.

29. Since Farm Credit is disguising a general piercing of the corporate veil argument in the form of expansion of the receivership without identifying a single asset held by the Non-Defendants that is collateral to Farm Credit or that belongs to the receivership estate, the effort should be dismissed out of hand as inappropriate. If the Court decides it should be considered, then, at a minimum, Farm Credit should be required in this diversity action to meet the standard for piercing the corporate veil under Tennessee law with respect to each of the Non-Defendants. Indeed, as noted above, the court in *Elmas*, which was actually dealing with a federal question case rather than a diversity case, still referred to state law factors in resolving a request by the receiver to expand a receivership to include other legal entities.[29]

30. Earlier this year, in *Youree v. Recovery House of E. Tenn., LLC*,[30] the Tennessee Supreme Court comprehensively addressed the state of the law in Tennessee regarding "alter ego" claims and piercing the corporate veil. First, the court noted that the term "alter ego" was simply a "rhetorical device or picturesque term" that only confuses the fact that what is actually sought is piercing of the corporate veil.[31] The court also recognized that corporate separateness is presumed and that Tennessee courts give substantial weight to that presumption.[32]

31. The court then confirmed the three elements, first articulated in *Continental Bankers Life Insurance Co. of the South v. Bank of Alamo*,[33] that have to be proved in order to pierce a corporate veil as follows:

> (1) Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;

---

[29] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[30] 705 S.W.3d 193, 206-12 (Tenn. 2025).
[31] *Id.* at 208.
[32] *Id.* at 207.
[33] 578 S.W.2d 625 (Tenn. 1979).

> (2) The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and
>
> (3) The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.[34]

32.     The *Youree* court further found that certain factors outlined in *Federal Deposit Ins. Corp. v. Allen*,[35]

> have their place in the analysis . . . [but] do not constitute a separate test. They are merely a list of circumstances that often may be relevant to the existence of one or more of the three *Continental Bankers* elements. Thus, the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established.[36]

The *Allen* factors are as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's-length relationships among related entities.[37]

The *Youree* court then further cautioned

> that checking items off a list is not a substitute for a purposive analysis of whether the *Continental Bankers* elements have been established. Regardless of the specific circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.[38]

---

[34] *Id.* at 637.
[35] 584 F. Supp. 386 (E.D. Tenn. 1984).
[36] *Youree*, 705 S.W.3d at 211.
[37] *Id.* at 210 (*quoting Allen*, 584 F. Supp. at 397).
[38] *Id.* at 212.

33.    Since the Motion before the Court is not predicated on protecting any specific assets of the Receivership, it should be treated as simply a claim to pierce the corporate veil and should be granted or denied based on whether Farm Credit can carry its burden to prove, with respect to each Non-Defendants, that such entity is an alter ego of Uncle Nearest under Tennessee law.

34.    As the Tennessee Supreme Court recently pronounced, the factors relevant to determining whether to pierce the corporate veil are those factors originally set forth in the *Continental Bankers* case. Neither the Receiver's Motion to Clarify nor Farm Credit's Statement address in any meaningful way this applicable standard with respect to any of the Non-Defendants. Rather, the Receiver has expressly taken no position on the issue, and Farm Credit has made nothing more than mostly false generalized statements and pointed to a few transactions that come nowhere near to meeting the standard for piercing the corporate veil in Tennessee.

35.    As to the first *Continental Bankers* element—"[c]ontrol over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own"—Farm Credit has identified several discrete transactions but provides no facts to show that, with respect to those transactions, any of the Non-Defendants exercised control over the finances, policy, or business practices of any of the Uncle Nearest Defendants.

36.    As to the second *Continental Bankers* element—"The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights"—Farm Credit has not submitted any evidence that any of the Non-Defendants controlled Uncle Nearest in order to commit fraud or wrong, perpetuate the violation of a statutory or positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights.

37.     As to the third *Continental Bankers* element—"The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of"— since Farm Credit has failed to even establish facts sufficient to satisfy the first two elements, it is impossible for Farm Credit and the Receiver to prove that the first two elements were the proximate cause of injury or unjust loss to Farm Credit or any other creditor.

38.     In sum, application of the *Continental Bankers* factors to each Non-Defendant shows that Farm Credit cannot meet its burden of proof.

## III.     Humble Baron, Inc. Is Not the Alter Ego of the Any of the Uncle Nearest Entities

39.     Humble Baron, Inc. ("Humble Baron") is a Delaware C Corporation that operates a bar called the Humble Baron Bar, which is located at Nearest Green Distillery. Humble Baron is owned 100% by a blind trust for which Keith Weaver is the beneficiary. The Humble Baron Bar is a full-service bar that serves Uncle Nearest's products as well as branded spirits manufactured by other distilleries and operates under a written lease with Uncle Nearest Real Estate Holdings, LLC that runs to 2030, with additional extension options. In addition to its on-premise sale of alcohol, Humble Baron undertakes sales of retail merchandise online, exploration of locations for future growth, and various creative works under development (TV shows, film, books, etc.). Other than lessor/lessee relationship and the sharing of certain expenses due to the on-site proximity of the businesses, there is no connection of Humble Baron to the Uncle Nearest companies and neither of the companies exercises control over the other. Humble Baron has its own employees (separate payroll), bank accounts, vendors, clients, financial statements, etc. Because Humble Baron sells spirits on-premise by the glass, the ownership and control of Humble Baron is required to be completely separate, directly and indirectly, from the ownership and control

of the Uncle Nearest companies in accordance with applicable three-tier/tied house laws. That separateness has been maintained at all times.

40. With respect to Humble Baron, in his Motion to Clarify, the Receiver notes that the ownership and control of Humble Baron is required to be separate from Uncle Nearest for liquor licensing purposes and that, although Humble Baron operates on the Nearest Green Distillery property, Humble Baron "appears to be separate financially from Uncle Nearest."[39] The Receiver provides no evidence that addresses the factors for establishing a receivership, expanding a receivership, or proving alter ego status under the *Continental Bankers* factors with respect to this entity**.**

41. Farm Credit's Statement flatly ignores the Receiver's determinations of financial separateness and states that "[t]he funds and operations of Uncle Nearest and Humble Baron appear to be comingled such that Humble Baron falls within the scope of the Receivership Assets."[40] This conclusion is based on several false premises.

42. First, Farm Credit asserts that Uncle Nearest, Inc. made a payment to Levy Premium Foodservice Limited Partnership ("Levy") on behalf of Humble Baron. This statement is incorrect and exemplifies the fact that Farm Credit has made literally no effort to confirm the veracity of any of the allegations it has made in its Statement.

43. Levy is a management company that previously provided exclusive and comprehensive management and operational services, including event management, to Humble Baron and Shelbyville Barrel House BBQ, LLC under a Management Agreement. During the term of the Management Agreement, Levy provided certain services related to three shareholder events for Uncle Nearest that were held on the premises of the Nearest Green Distillery and the Humble

---

[39] Dkt. 41, at 2.
[40] Dkt. 44 at 4.

Baron Bar. These shareholder events were solely for the benefit of Uncle Nearest, Inc. and the costs associated with such events were the direct obligation of Uncle Nearest, Inc. Indeed, correspondence between Levy, acting as management of Humble Baron, and Uncle Nearest in April 2024 confirms that the charges were due from Uncle Nearest.

44.     In 2024, Levy filed a complaint against Shelbyville Barrel House BBQ, LLC and Humble Baron, Inc. seeking to recover unpaid management fees, including fees related to the three shareholder events that were for the sole benefit of Uncle Nearest, Inc. The claims of Levy were ultimately settled and, per the Settlement Agreement, a series of payments were to be made to Levy. In order to resolve the portion of the Levy settlement attributable to Uncle Nearest Inc. for the three shareholder events, Uncle Nearest paid the amount owed directly to Levy in furtherance of the Settlement. Thus, the payment by Uncle Nearest, Inc. was for its own obligation and resulted in an equivalent decrease in Uncle Nearest's liabilities. Thus, contrary to the assertions of Farm Credit, the payment by Uncle Nearest Inc. to Levy was entirely proper and does not support any finding of comingling.

45.     Farm Credit's next assertion, that Uncle Nearest's payment for the Guiness World Record designation was improper, is based on apparent willful ignorance of the symbiotic business marketing relationship between Uncle Nearest and Humble Baron, which relationship exists in practically every iteration of a distiller/retailer relationship. Uncle Nearest is not the first distiller to lease space to a separate full bar or restaurant concept within its distillery. While the companies are completely separate as required by the three-tier system and applicable tied house laws, the benefit to the distillery that the bar concept brings is significant retail traffic to the distillery and increased exposure and visibility for the distillery. Consequently, providing distillery space for an on-premise bar, even for little or no rent, provides a significant opportunity for the distillery to

increase retail sales of its products and to promote its brands. Similarly, positive national recognition for the bar that includes recognition for the distillery where the bar sits is in the best interests of the distillery.

46.     With respect to the Guiness World Record recognition, as is clear even from the articles cited by Farm Credit in footnote 8 of its Statement, practically every article about the world record designation, and the Guinness website itself, prominently recognizes, if not emphasizes, the bar's location at the Nearest Green Distillery.[41]  This promotion was not by chance but was a specific goal of the Uncle Nearest's management and justified Uncle Nearest seeking and paying for the world record designation in the exercise of its reasonable business judgment.  The management of Humble Baron, which was a start-up entity, would not have approved payment of the Guiness World Record expense because, due to its location in the small town of Shelbyville, Tennessee, the bar's retail sales were not projected to be increased enough to justify the cost of the world record designation.  For Nearest Green Distillery, on the other hand, with more of a world-wide market for its products, the additional notoriety from the World Record was anticipated to lead to significant additional press for the Distillery and the Uncle Nearest Brand that would make the world record designation pay off.  Thus, Uncle Nearest's decision to pay for the Guinness World Record fees does not evidence any commingling of the businesses, improper activity, any basis for an alter ego finding or otherwise support expanding the receivership.

47.     Farm Credit asserts in paragraph 9 of its Statement that the Receiver needs access to the books and records of Humble Baron to determine the source of its financing, even where the Receiver has made no such statement in his own Motion to Clarify.  Perhaps Farm Credit believes

---

[41] The actual Guiness World Record listing is: "The longest bar is 157.89 m (518 ft), achieved by Humble Baron (USA) in Shelbyville, Tennessee, USA, on 23 March 2023. The bar is located on the premises of Nearest Green Distillery." *https://www.guinnessworldrecords.com/world-records/69267-longest-bar*.

that it speaks for the Receiver in this matter. In any event, the Receiver has full access to the books and records of the Uncle Nearest Defendants and can surely determine whether any transfers occurred between Uncle Nearest and the Humble Baron from those records. If information is needed from Humble Baron, the Receiver can simply ask for it. Neither Farm Credit nor the Receiver has indicated that they have been denied any requests for information made to Humble Baron. To the contrary, the Receiver has acknowledged in his First Quarterly Report that "[t]he founder, management, and employees of the Company have been very cooperative with the Receiver . . . ."[42] Frankly, the extent to which Humble Baron was financed from sources other than Uncle Nearest is no more relevant to this case than is the record of capitalization of Farm Credit bank. In any event, Farm Credit's opinion that the Receiver needs more information does not constitute evidence that would satisfy any of the relevant factors for piercing the corporate veil or expanding the receivership.

48.     Farm Credit further falsely asserts that Humble Baron has no lease for its operation of the bar on the Uncle Nearest real property. Again, if Farm Credit had even a passing knowledge of the regulatory environment in the spirit industry (or simply asked anyone with knowledge), it would have known that Humble Baron having a written lease (or evidence of ownership of the property) for its operating premises is required as part of the process of obtaining a liquor license in Tennessee. So, either Farm Credit knew the statement was false or simply decided to make the allegation without any effort to determine the veracity of it as is required under Rule 11. In any event, as noted previously, Humble Baron and Uncle Nearest Real Estate Holdings, LLC are parties to a written lease, which is a requirement of Humble Baron even being able to operate as a full-service bar.

---

[42] Dkt. 46 at p.2.

49.     In sum, neither the fact that Uncle Nearest paid its own obligation for the three shareholder events directly to Levy nor Uncle Nearest's decision to fund the Guiness World Record Designation for the longest bar located on the premises of the Distillery evidences any undue control by Humble Baron, Inc. over Uncle Nearest, Inc. and doesn't come close to satisfying the applicable factors for instituting a receivership, expanding a receivership or piercing the corporate veil under the *Continental Bankers*.  Accordingly, the Court should not expand the receivership to include Humble Baron, Inc. or its assets.

50.     Indeed, applicable tied house/three tier laws expressly prohibit any overlapping ownership or control between those entities.  A finding that Humble Baron and any of the Uncle Nearest Entities are alter egos would cause a violation of the applicable tied house laws and likely require that one or both of the Distillery and Humble Baron Bar immediately cease operations. Placing Humble Baron and its assets under this Receivership, in addition to being unsupported by applicable facts and law, would create harm that would greatly exceed any conjectured benefit.

51.     Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his professionals would cause an immediate reduction in sales and profitability due to issues with the applicable tied house laws and the negative publicity, and would drastically increase the expenses for the company.  Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment.  Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

**IV.** **The Actions of Farm Credit in this Case Evidence a Complete Disregard of the Obligations of a Party Under Rule 11 and Have Caused Significant Monetary Damages to the Non-Defendants**

52.     As noted above, it is clear from the tenor of the Receiver's Motion to Clarify that this effort to expand the receivership has been orchestrated by Farm Credit.  While the Receiver, who is specifically charged with administering all assets of the receivership, could not find sufficient facts to warrant him taking a position as to whether any of the Non-Defendants should be brought into the receivership, Farm Credit jumped in with a series of unsupported factual allegations with no evidentiary support and frivolous claims to expand the receivership that are not supported by applicable law, all with an apparent intent to inflict financial harm on these separate business interests of Fawn and Keith Weaver.

53.     Farm Credit's lack of evidentiary support for its allegations is apparent because Farm Credit has filed **ZERO** documents in support of expanding the receivership to include these additional entities.  The Court's September 30 Order provided that "Plaintiff **SHALL** file all materials in its possession that it believes support expanding the receivership with the Court." (Emphasis in Original).  As of October 21, 2025, Farm Credit has provided no documents— because there are no documents to provide.  Farm Credit filed its statement with absolutely nothing to support it other than conjecture and with the intent of simply harming the named entities and the business interests of the Weavers.

54.     Fawn and Keith Weaver are not obligors on the Farm Credit debt and are not personally liable to Farm Credit.  Indeed, the naming of the Weavers personally as Defendants in this case was completely unnecessary, was done for the apparent purpose of injuring the reputations of the Weavers and harming their business interests.  The Weavers are not obligors on the Farm Credit debt, are not guarantors of the Farm Credit debt, and there is no count of the

Complaint that asserts a claim against the Weavers individually, even though the Complaint asserts that they are named both as officers of Uncle Nearest and individually.

55.     While the Weavers did pledge certain real property assets to secure the Notes to Farm Credit, those pledges do not create personal liability on behalf of the Weavers, nor do they subject the non-pledged assets of the Weavers generally to satisfy any of the Uncle Nearest debts to Farm Credit.  It was completely unnecessary for Farm Credit to name the Weavers personally as defendants—if Farm Credit intended to seek foreclosure or the appointment of a receiver over the same against the pledged properties as an in rem action, it is only necessary for the properties themselves to be named, not the owners.  However, Farm Credit didn't simply name the Weavers as Defendants, Farm Credit intentionally conflated the obligations of the Uncle Nearest corporate Defendants with the personal obligations of the Weavers in an effort to damage the Weavers personally.  Accordingly, the Weavers should ultimately be dismissed as party defendants in this case.

56.     The inclusion of the Weavers as Defendants in the Complaint and the effort to bring in the personal assets of the Weavers into this case, even where there is no factual or legal basis to impose liabilities on the Weavers or these Non-Defendants appears part of an apparent overall strategy to cause reputational and financial damage to the Weavers and the Non-Defendants.  Farm Credit's effort has been successful in that the Non-Defendants estimate that this effort by Farm Credit to put these Non-Defendants in receivership has caused a financial loss in excess of $1 million.  The Non-Defendants expressly reserve the right to seek appropriate relief in this regard in accordance with Rule 11 and other applicable law.

WHEREFORE, Humble Baron, Inc. respectfully requests that the Court decline to expand the receivership to include the Non-Defendants or their assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

/s/ Michael E. Collins
Michael E. Collins    (TN Bar No. 16036)
S. Marc Buchman    (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Humble Baron, Inc.*

4927-8489-9182.5

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*

Michael E. Collins