UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:25-cv-38 |
| ) | |
| v. ) | Judge Atchley |
| ) | |
| UNCLE NEAREST, INC., et al., ) | Magistrate Judge Steger |
| ) | |
| Defendants. ) | |
| ) | |

**RESPONSE OF GRANT SIDNEY, INC. TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT**

Grant Sidney, Inc., by and through its undersigned counsel, hereby makes a special appearance for the sole purpose of responding to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Statement"),[2] which seek to divest Shelbyville Barrel House BBQ, LLC, Humble Baron, Inc., Grant Sidney, Inc., Uncle Nearest Spurs VI, LLC, Quill and Cask Owner, LLC, Nashwood, Inc., Classic Hops Brewing Co., Shelbyville Grand, LLC, Weaver Interwoven Family Foundation, and 4 Front Street LLC (collectively, the "Non-Defendants"), and their respective boards and shareholders, of their control of the companies and place the assets of these Non-Defendants, which are not liable for any of the debts of the Defendants in this proceeding, under the exclusive control of the Receiver for the above-captioned Defendants. In support of this Response, Grant Sidney, Inc. asserts and alleges as follows:

---

[1] Dkt. 41.
[2] Dkt. 44.

1.      Grant Sidney, Inc. incorporates by reference the Response of Humble Baron, Inc. to Motion for Clarification of Receivership Order and Statement of Farm Credit and restates and adopts the factual and legal arguments therein. In addition to those facts and legal arguments, Grant Sidney, Inc. provides the following analysis specific to its situation.

2.      Grant Sidney, Inc. is a Delaware Corporation owned 100% by Fawn Weaver. This entity holds approximately 40% of the outstanding shares of Uncle Nearest stock, which makes it the largest shareholder of Uncle Nearest, although not a controlling shareholder. Grant Sidney also has an array of interests that are unrelated to Uncle Nearest. Grant Sidney holds no assets of Uncle Nearest. As the largest shareholder of Uncle Nearest, Grant Sidney exercises only that level of control that is allowed under the Charter and By-Laws of Uncle Nearest, Inc. and under Tennessee law. Grant Sidney maintains its own books and corporate records, maintains its own separate bank accounts, and is not insolvent.

3.      The Receiver's Motion to Clarify acknowledges that Grant Sidney is the largest shareholder of Uncle Nearest, Inc. and states that "[Grant Sidney] has contributed capital to Uncle Nearest from time to time."[3] The Receiver further states that "[t]he Receiver believes that this company also owns interests in other spirits unrelated to Uncle Nearest."[4] The Receiver provides no evidence that addresses the factors for establishing a receivership, expanding a receivership, or proving alter ego status under the *Continental Bankers* factors with respect to this entity.

4.      In its Statement, Farm Credit cites the fact that Grant Sidney provided substantial capital to the Uncle Nearest Defendants in 2025 and asserts that these transfers somehow create a basis for piercing the corporate veil or expanding the receivership.[5] However, the 2025 transfers

---

[3] Dkt. 41 at 2.
[4] *Id.*
[5] Dkt. No. 44 at 3-4.

by Grant Sidney, all made during the forbearance negotiations with Farm Credit and the threats of receivership made by Farm Credit, provide no evidence to support a finding of alter ego status or otherwise support expanding the receivership.

5. As an initial matter, it is important to note that the transfers in question were all transfers from Grant Sidney to the Uncle Nearest entities, not the other way around. If an equity holder of a company providing financing to that company is a basis for piercing the veil, then practically every small company in the U.S. should have its veil pierced because investing capital in a business is the nature of an equity investment and such equity investments are the life-blood of practically every small business. Several courts have recognized that an owner providing capital to a company, especially in a situation of distress, should not serve as a basis for an alter ego claim where there is no evidence that the owner repaid itself to the detriment of other creditors, even if documentation is not perfect.[6]

6. Even if the 2025 investments by Grant Sidney were initially incorrectly booked, that is not uncommon for complex transactions and certainly not uncommon for a company in financial distress and seeking funds to avoid receivership. Even where a company is not in financial distress, it is often the case that transactions are booked with the understanding that, if not corrected sooner, correcting entries will be made, if necessary, at year end when the annual books are closed for tax return purposes and with the input of the outside tax accountant in preparing the returns. In that process, the external accounting firm preparing the tax returns will review the relevant transactions and advise the company of any necessary corrective entries. Since the books for 2025 for the Uncle Nearest entities have not yet been closed and the investments in question made by

---

[6] *Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 284 (3d Cir. 1983); *see also Connors v. Peles*, 724 F. Supp. 1538, 1568 (W.D. Pa. 1989) (holding that alter ego finding not appropriate where undocumented shareholder loans were made "in an effort to maintain the survival of the corporation" at a critical time).

Grant Sidney were made in circumstances requiring quick action, it is not surprising that some minor classification mistakes were made. What is abundantly clear is that the source of the funds was clearly documented in the books of Uncle Nearest.

7. In this case, all of the capital infusions at issue by Grant Sidney all occurred in early to mid-2025, when Farm Credit was threatening to put the companies into receivership. Grant Sidney initially intended to provide the cash by purchasing barrels, but due to the speed at which the transactions needed to be completed based on pressure by Farm Credit, the barrel purchases never actually occurred. Many of the cash infusions, such as cash provided by Grant Sidney to fund Uncle Nearest's payroll in early 2025, were simply booked with the understanding that any correction needed to the entries would be made when matters settled down.

8. As noted above, some of the investments in the first quarter of 2025 by Grant Sidney were initially booked as barrel sales but were to be recharacterized as loans. On April 15, 2025, again in direct response to the pressure being put on the Uncle Nearest entities by Farm Credit, Grant Sidney entered into a Subordinated Loan Agreement with the Uncle Nearest entities, under which Grant Sidney agreed to treat the capital infusions up to $30 million as loans. A copy of the Subordinated Loan Agreement was provided to Farm Credit immediately after it was executed. This loan document evidences adherence to corporate formalities even in the face of extreme pressure from Farm Credit.

9. In considering the factors for instituting a receivership, expanding a receivership, or piercing the corporate veil, none of the identified transactions evidence any asset of the receivership that Grant Sidney holds or any obligations that Grant Sidney owes to Uncle Nearest or to Farm Credit. Further, none of the identified transactions evidence any level of control by Grant Sidney over the operations or finances of Uncle Nearest. To be clear, the allegation by Farm

4

Case 4:25-cv-00038-CEA-CHS   Document 52   Filed 10/21/25   Page 4 of 7   PageID #: 2603

Credit is that Grant Sidney gave money to Uncle Nearest, not that Uncle Nearest gave funding to Grant Sidney. A parent or primary investor providing documented loans to its subsidiary, standing alone, is not evidence that the parent/investor exercised undue control over the finances, policies and business practices of that company, especially where the company has a fully functioning independent board of directors, which is the case here. It simply means that the parent/investor is fully invested in helping the company succeed. Farm Credit presented no evidence that Grant Sidney directed any financial matters, policy matters or business practices of Uncle Nearest. Farm Credit simply has not met its burden of proof.

10. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

WHEREFORE, Grant Sidney, Inc. respectfully requests that the Court decline to expand the receivership to include the Non-Defendants or their assets and grant such other and further relief as is appropriate.

        Respectfully submitted,

        **MANIER & HEROD, P.C.**

        /s/ Michael E. Collins
        Michael E. Collins    (TN Bar No. 16036)
        S. Marc Buchman    (TN Bar No. 41598)
        1201 Demonbreun Street, Suite 900
        Nashville, TN 37203
        Telephone: 615-244-0030
        mcollins@manierherod.com
        mbuchman@manierherod.com

        *Counsel for Grant Sidney, Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 21, 2025, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

                */s/ Michael E. Collins*
                Michael E. Collins

7

Case 4:25-cv-00038-CEA-CHS    Document 52    Filed 10/21/25    Page 7 of 7    PageID #: 2606