UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) |
| Plaintiff, | ) Case No. 4:25-cv-38 |
| v. | ) Judge Atchley |
| UNCLE NEAREST, INC., *et al.*, | ) Magistrate Judge Steger |
| Defendants. | ) |

## EMERGENCY MOTION FOR LIMITED RELIEF FROM THE RECEIVERSHIP STAY TO FILE RESPONSIVE PLEADINGS AND PROCEED TO JUDGMENT

Grant Sidney, Inc. ("Grant Sidney"), Fawn Weaver and Keith Weaver (collectively, the "Weavers", and collectively with Grant Sidney, the "Movants"), by and through their undersigned counsel, hereby move for relief from the stay imposed by the Order Appointing Receiver entered August 22, 2025 [Dkt. 39] (the "Receivership Order") to allow the filing of pleadings responsive to and relating to the Complaint in this case and to allow that litigation to proceed to judgment. In support of this Motion, the Movants assert and allege as follows:

### SUMMARY

1. This case began with the filing of a Complaint by Farm Credit against Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings (collectively, the "Uncle Nearest Entities" or the "Company"), LLC, Fawn Weaver and Keith Weaver. Prior to the Defendants having sufficient time to answer the Complaint or assert defenses, counterclaims, etc., the Court entered its Memorandum Opinion [Dkt. 32] and the Receivership Order [Dkt. 39], which vested control over the Uncle Nearest Defendants in the Receiver and stayed all parties, including the Weavers, from taking any actions that could be deemed to disrupt the Receiver's administration

of the receivership estate. Consequently, the receivership has proceeded with respect to a mere claim of Farm Credit for which no answer or responsive pleadings have yet been filed, no trial has yet been held, and no judgment has yet been rendered. Since the underlying claims of Farm Credit need to be adjudicated, the Weavers seek relief from the receivership stay in order for them, and the rest of the Defendants, to answer the Complaint and assert applicable defenses and counterclaims.

## BACKGROUND

2. On July 28, 2025, Farm Credit initiated this above captioned case by filing the *Verified Complaint and Request for Appointment of Receiver* (the "Complaint"). [Dkt. 1]. The Complaint was based on alleged defaults in certain Loan Documents, as defined in the Complaint. In addition to naming certain Defendants that are obligated to Farm Bank under the Loan Documents, the Complaint also named Fawn Weaver and Keith Weaver, who are not obligated to Farm Credit under the Loan Documents.

3. In conjunction with the Complaint, also on July 28, 2025, Farm Credit filed its *Emergency Motion for the Immediate Appointment of Receiver* (the "Receivership Motion") [Dkt. 3]. On July 29, 2025, the Court issued its Order setting a hearing date of August 7, 2025 on the motion. On August 4, 2025, the Court issued an Order requiring witness and exhibit lists be filed by August 5, 2025, and allocated 90 minutes for the hearing on the Receivership Motion. While Farm Credit had significant time to prepare for the hearing prior to the filing of the Receivership Motion, the Defendants had significantly less time to investigate and prepare their defenses to the Receivership Motion because they had no advance notice of the filing. That shortened preparation time along with the Court's limitation on the amount of time allocated for hearing, made it very difficult for the Defendants to fully address the key issues relating to the Receivership.

4. Prior to the filing of the Complaint, Defendants were represented by outside counsel in connection with Farm Credit's allegations and were actively engaged in good-faith efforts to resolve the matter through both the forbearance process and ongoing negotiations the Defendants were blindsided by the receivership filing. When Farm Credit filed this action, Defendants' existing counsel could not continue representation because it was unable to clear conflicts arising from its work for Farm Credit or Farm Credit-related entities. Defendants then discovered that many of the firms with the specialized expertise required for a receivership defense were also conflicted out. By the time Defendants secured conflict-free counsel, only days remained before the August 7 hearing—and that counsel, although willing, had no background in insolvency litigation or receivership matters. This combination of conflict-induced loss of counsel, lack of specialized replacement counsel, and compressed timing deprived Defendants of a meaningful opportunity to investigate the allegations, prepare defenses, identify counterclaims, or develop an adequate record before the receivership hearing.

5. The hearing on the Receivership Motion was held on August 7, 20225, and on August 14, 2025, the Court entered its Memorandum Opinion and Order (the "Memorandum Opinion") [Dkt. 32], which ordered the appointment of the receiver and required the parties to provide additional briefing regarding who should be appointed as receiver. After receiving information from the parties with proposed receiver candidates, the Court selected Phillip Young to serve as Receiver in the case.

6. On August 22, 2025, the Court entered the Order Appointing Receiver (the "Receivership Order") [Dkt. 39], which, in addition to appointing Phillip Young as Receiver, vested the Receiver with exclusive control over the Uncle Nearest Defendants[1] and provided a

---

[1] Receivership Order ¶ 10.

broad stay of litigation applicable to all parties [the "Litigation Stay"].[2] The Receiver's exclusive control over the Uncle Nearest Defendants has prevented those entities from answering and defending against the Farm Credit Complaint, or asserting applicable counterclaims. Likewise, the Litigation Stay has prevented the Weavers and other impacted parties from defending against the Farm Credit Complaint or asserting related claims.

7. On October 1, 2025, after operating as the court-appointed receiver for more than five weeks with full and unfettered access to all of the books and records of the Uncle Nearest Defendants and a high quality financial advisory team engaged, the Receiver filed the Receiver's First Quarterly Report. In the Report, the Receiver made the following preliminary findings and reports:

   a. "very encouraged about the long-term viability of the Company";

   b. "the Company has significant value and can be reorganized, as a going concern, on a relatively quick timeline";

   c. "The founder, management, and employees of the Company have been very cooperative with the Receiver and has granted the Receiver full access to the Company and its records.";

   d. "the Receiver and his team of professionals quickly integrated into the financial and operational control of the Company, and have continued working cooperatively with the Company . . .";

   e. The Receiver was able create an operating budget that required no financing except to cover approximately $2.5 million in costs mostly created by the Receivership itself;

---

[2] Receivership Order ¶ 12.

  f. The Receiver was able to reconcile the barrel count;

  g. The Receiver determined that there is validity to issues relating to potential fraud by a former officer of the Company that were brought to the attention of the Receiver and of which Farm Bank was aware prior to the Receivership; and

  h. The Receiver found no evidence of misappropriation, theft, or financial impropriety by the Company's founder, its management team, or any current employee.

  8. Notwithstanding these findings, the Receiver is moving beyond simply maintaining the status quo but is moving toward a potential permanent disposition of the Defendant's assets. The Receiver has recently retained an investment banker to market the Debtor under two tracks — a potential refinance of the Farm Credit loans or a sale of substantially all assets of the Debtors. While a refinance might not cause material damage to the Movants or the shareholders of the Companies, a sale of the assets of the Defendants while in a receivership proceeding during a time when the spirit industry overall is in a lull will undoubtedly result in a price that does not accurately reflect the full market value of the Company. Any valid claims of Farm Credit will get paid in full in any event, but a sale in the Receivership will undoubtedly result in the shareholders of Uncle Nearest receiving significantly less value. In light of the preliminary findings of the Receiver, it is imperative that the Movants and other Defendants have the immediate opportunity to defend against the Complaint filed by Farm Credit.

  9. The Movants are further aware that several competitors in the spirits industry have already engaged with the investment banker retained by the Receiver and have sought, or are seeking, access to the data room containing confidential and competitively sensitive information about the Defendants' pricing, distributor relationships, production planning, supply chain, and other trade secrets. Because the investment bank cannot reliably distinguish bona fide refinancing

interest from competitors acting through intermediaries, the current process risks the irreversible disclosure of this information. Without immediate relief, Defendants have no ability to prevent this harm, and once disclosed, proprietary information cannot be 'un-disclosed.'

## ARGUMENT

10. The Court has inherent authority to grant relief from the receivership stay. The receivership itself is an equitable remedy and the extent of the stay is subject to equitable principles. In this case, equity requires that the Defendants have the opportunity to assert defenses and counterclaims in opposition to the Complaint. Furthermore, the Defendants have a due process right to defend against the claims asserted by Farm Credit.

11. The United States Court of Appeals for the Sixth Circuit has not articulated a test for determining whether a receivership stay should be lifted.[3] However, the factors set forth by the Ninth Circuit in *SEC v. Wencke ("Weinke II")*,[4] which have been subsequently adopted by many federal courts, including courts in the Sixth Circuit, sets forth the appropriate applicable standard.[5] The *Wencke* test involves a three-pronged analysis:

> (1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;
>
> (2) the time in the course of the receivership at which the motion for relief from the stay is made; and
>
> (3) the merit of the moving party's underlying claim.[6]

12. These factors are mostly geared to consideration of whether the stay should be lifted with regard to additional litigation by non-parties, not completion of the litigation that is presently before the Court. Where the question as to relief from the stay relates to simply progressing the

---

[3] *See Huntington Nat'l Bank v. St. Catharine College*, 2017 U.S. Dist. LEXIS 203775, *18 (W.D. Ky. 2017)
[4] 742 F.2d 1230 (9th Cir. 1984).
[5] *See Huntington Nat'l Bank*, 2017 U.S. Dist. LEXIS 203775 at *18; *BMO Harris Bank, N.A. v. Truland Sys. Corp.*, 2017 U.S. Dist. LEXIS 65091, *5-6 (E.D. Va. 2017).
[6] *Wencke*, 742 F.2d at 1231.

primary case that is before the Court, such as is the request here, the factors clearly weigh in favor of the lifting the stay on the limited basis.

13. First, the current direction of this case is not "status quo" as the Receiver moving ahead with an apparent sale process for the assets of the receivership when there has not even been an adjudication as to whether the Farm Credit debt, that is the basis of the proceeding before this Court, is validly owed and or is reduced in whole or in part, due to defenses and counterclaims held by the Defendants. The practical effect of the current path of this receivership case is treating the Farm Credit note as a cognovit note (i.e., a pre-suit judgment by confession), which is expressly prohibited under Tennessee law.[7] Farm Credit's claims and related counterclaims need to be adjudicated before additional harm is inflicted upon the Defendants resulting directly from Farm Credit's Complaint and related actions. This case is progressing to a potentially unreversible outcome without having any of the claims of Farm Credit or applicable defenses and counterclaims of the Defendants having been determined by the Court. The potential for substantial and unreversible injury to the Movants, the Defendants, and their equity holders is highly likely if the Defendants are unable to defend themselves and assert applicable counterclaims. Thus, the Movants request is exactly what is needed in order to even try to maintain the status quo and is necessary to prevent substantial injury.

14. Refusing to lift the stay does not preserve the status quo; it accelerates harm. The Receiver's ongoing process — including providing imminent access to proprietary commercial information by third parties — creates an immediate threat of irreversible competitive injury. Only by lifting the stay for the limited purposes requested can the Court prevent imminent and irreversible damage.

---

[7] T.C.A. § 25-2-201. *See also Capital v. TNG Contrs., LLC*, 622 S.W.2d 227, 235-36 (Tenn. Ct. App. 2020) ("cognovit notes or clauses are void under Tennessee statute.").

15. Second, the timing of this Motion is appropriate. The Movants have delayed filing this Motion to allow the Receiver adequate time to organize and understand the entities under his control. As noted by the Ninth Circuit in *SEC v. Wenke ("Weinke I")*,

> The time at which the motion for relief from the stay is made also bears on the exercise of the district court's discretion. Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance.[8]

At this point, the Receiver has had the time to assume control and make his initial investigation into the case and the timing of this Motion is thus appropriate.

16. As noted, the Receiver has now had the opportunity to make a preliminary investigation and provide to the Court and the parties his preliminary findings as set forth in his First Interim Report. Further, considering that neither Farm Credit, nor any other creditor, has been adjudicated at this point to have any valid claim against the Debtors, the Receiver's administration of this case requires that a determination of whether Farm Credit's claims are valid and whether any such claims are subject to valid defenses and counterclaims be made before this case or the Receivership progresses further.

17. Due process requires that the Defendants have the opportunity to defend themselves before decisions are made as the disposition of the Defendants' property. The Eleventh Circuit directly addressed similar due process concerns relating to summary receivership proceedings in *SEC v. Terry*[9] as follows:

> "Due process, in its most basic form, still requires notice and an opportunity to be heard." *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019). To determine whether the district court provided due process, "we look at the actual

---

[8] *SEC v. Weinke*, 622 F.2d 1363, 1374 (9th Cir. 1980)
[9] 833 Fed. Appx. 229, 233 (11th Cir. 2020).

substance, not the name or form, of the procedure to see if the [claimant's] interests were adequately safeguarded." *Id*. (quotation marks omitted). "[A]t minimum summary proceedings must provide [claimants] with necessary information, a meaningful opportunity to argue the facts and their claims and defenses, and an adjudication of their claims and defenses." *Id*. at 1319; *Elliott*, 953 F.2d at 1567 (claimants must be given a "full and fair opportunity to present their claims and defenses").

In *Elliott*, we concluded that certain claimants' due-process rights were violated in a receivership case where the claimants were permitted to file written forms with their objections only. 953 F.2d at 1568. We concluded that this process was inadequate because the issue of whether a pre-receivership transfer was fraudulent "required an evidentiary hearing" where the claimants could "present and argue their facts" and "rebut the characterization of the transfer and present affirmative defenses." *Id*.

Then, in *Torchia*, we again found that the district court's summary proceedings in a receivership failed to provide sufficient due process to certain claimants. 922 F.3d at 1319. The claimants were allowed to file objections to the receiver's proposed distribution plan and to present oral argument at a hearing, but the court "limited the scope of the objections and the issues at oral argument to the form of the proposed distribution plan" and declined to "substantively address" the claimants' arguments. *Id*. We concluded that the court denied the claimants "a meaningful opportunity to object to the receiver's determinations and calculations, present evidence and argue their claims and defenses, and challenge the substance of the receiver's proposed distribution plan." *Id*.[10]

18. Here, the substantive claims and defenses of the Defendants have not been heard, yet decisions are being made in the Receivership that will have significant impact on the value of the Defendants' interest in their assets. Due process requires that the Defendants be authorized to assert their defenses and counterclaims in this proceeding before their rights are summarily stripped.

19. Finally, the Movants' claims and defenses have substantial merit and directly affect the validity, enforceability, and potential amount of Farm Credit's asserted indebtedness. Based on information presently available, the counterclaims that Movants intend to assert may materially reduce—and potentially exceed—Farm Credit's claimed secured debt once adjudicated. Due

---

[10] *SEC v. Terry*, 833 Fed. Appx. 229, 233 (11th Cir. 2020).

process therefore requires that these claims be heard before the Receiver proceeds toward an irreversible disposition of assets.

20. In sum, the facts and law support limited relief from the stay so that Defendants and their related entities may answer the Complaint, assert their defenses and counterclaims, and begin the process of adjudicating those claims. The relief requested is narrowly tailored, necessary to preserve Defendants' rights, and urgent given the ongoing risk of irreversible harm arising from the Receiver's current course.

## **EMERGENCY CONSIDERATION**

21. For the reasons set forth above, the Movants respectfully request this Court's emergency consideration at its earliest available hearing or submission time and immediate granting of this Motion to avoid the deprivation due process and the imminent risks outlined in this Motion.

**WHEREFORE**, the Movants respectfully requests that the Court lift the Receivership Stay for the limited purpose of allowing the Defendants and their related entities to answer, assert defenses, assert counterclaims and file such other ancillary documents as necessary to progress this case towards and trial and judgment and that the Court grant such other relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins (TN BPR No. 16036)
S. Marc Buchman (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
T: 615-244-0030
F: 629-500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Movants*

### CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

*/s/ Michael E. Collins*
Michael E. Collins