| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:25-cv-38 |
| ) | |
| v. ) | Judge Atchley |
| ) | |
| UNCLE NEAREST, INC., *et al.,* ) | Magistrate Judge Steger |
| ) | |
| Defendants. ) | |

**RECEIVER'S RESPONSE TO EMERGENCY MOTION FOR
LIMITED RELIEF FROM THE RECEIVERSHIP STAY TO FILE
RESPONSIVE PLEADINGS AND PROCEED TO JUDGMENT**

**COMES NOW** the court-appointed receiver herein, Phillip G. Young, Jr. ("Receiver"), by and through undersigned counsel, and hereby responds to the Emergency Motion for Limited Relief from the Receivership Stay to File Responsive Pleadings and Proceed to Judgment (Doc. 80) (the "Motion") filed by Fawn Weaver, Keith Weaver, and Grant Sidney, Inc. (collectively, the "Movants"). In response to the Motion, the Receiver states as follows:[1]

The Receiver is opposed to the relief sought in the Motion. In fact, in a telephone conversation with the Movants' counsel on November 21, 2025, the Receiver asked Movants' counsel not to file this Motion and the Receiver explained the negative ramifications that he believed would come therefrom. In spite of the Receiver's wishes, the Movants filed the Motion on November 24, 2025.

---

[1] The Court's Order (Doc. 81) directed Uncle Nearest, Inc., Nearest Green Distillery, Inc, and Uncle Nearest Real Estate Holdings, LLC (the "Receivership Entities") to file a response to the Motion, and permitted the Receiver to file a response. As the court-appointed receiver over the Receivership Entities, only the Receiver has the authority to respond to the Motion on their behalf. Therefore, this response is on behalf of the Receiver and the Receivership Entities.

The Receiver opposes the relief sought in the Motion for four (4) primary reasons. First and foremost, the Receiver believes that the litigation anticipated by the Movants would be extremely disruptive and damaging to the ongoing business of the Receivership Entities. For most of the last month, there has been very little litigation and very little negative press coverage of the Receivership Entities' business. This has allowed the Receiver and the employees of the Receivership Entities to focus on maintaining brand value, and seems to have given the vendors and creditors of the Receivership Entities more confidence in the possibility of a successful reorganization of this business. The Receiver has noticed that, when litigation is brought to this Court and/or press coverage of this case increases, so do his communications from creditors, vendors, and shareholders expressing concern over the future of this business.[2] This is a critical juncture in this case and the future of this business; neither the Receiver nor the Receivership Entities' employees (including Fawn and Keith Weaver) can afford the distractions that accompany contentious litigation and negative press.

Further to the point of avoiding business disruptions, this receivership is currently dependent upon the financial support of the Receivership Entities' largest secured creditor, who appears to be the target of the Motion.[3] While the Receiver will not hesitate to bring any valid action that the Receivership Entities might have against any party, this is not the time for litigation. The Receiver and his staff of professionals are working tirelessly to balance this business' budget, assess its debts, assess its assets and the value thereof, and try to maximize that value for creditors and shareholders. It would be imprudent for the Receiver (who is trying to maximize the secured

---

[2] Indeed, this is one of the primary reasons the Receiver sought to stay litigation concerning whether certain related entities should be included as part of this litigation – to quell litigation and the market concerns that accompany it.
[3] While the Receiver has decreased expenses significantly, the business itself cannot support the cost of professional fees or even ongoing debt service.

creditor's recovery) and the secured creditor (who wants the Receiver to maximize its recovery) to litigate claims against one another in federal court at this time.

Second, and somewhat related to the business disruption concern, is the Receiver's concern that granting this Motion will force him, on behalf of the receivership estate, to *immediately* investigate Movants' counterclaims and take some position on them. After all, if the Movants have counterclaims, they are likely derivative of (or at least intertwined with) claims that the Receivership Entities likewise have. As noted above, the Receiver intends to investigate *all* causes of action against any parties – whether insiders, former employees, or creditors. However, now is not the appropriate time for that investigation. The Receiver and his professionals are trying to maintain and maximize value in a very challenging market for spirits; they should not be forced to investigate and pursue claims at this time. If the Court grants the Motion, however, it puts the Receiver in an untenable position; he must either immediately investigate the Movants' claims and participate in the litigation, or face being estopped by the outcome of the Movants' pursuit of those claims without the Receiver's input. Either course would be detrimental to this receivership.

Third, if the Movants are granted relief from this Court's stay of litigation, other parties will likely seek the same relief. The Receiver has received scores of litigation threats from creditors and shareholders (including several since the filing of this Motion). The Receiver has been able to hold these threats at bay in part because of the stay provided in this Court's Receivership Order. If that stay is lifted for the Movants, the Receiver expects creditors and shareholders to follow suit. He will then be spending time and resources not on maintaining the value of these businesses, but rather litigating with its creditors and shareholders. This would defeat the entire purpose of this receivership and the stay implemented by this Court.

Finally, the Receiver opposes this relief for a very simple reason: based on his preliminary investigation, he sees no valid counterclaim against the secured creditor that would significantly reduce or eliminate any debts, as the Movants claim in their Motion. The Receiver has had multiple conversations with the Movants about this subject and, while there were certainly abnormalities associated with this loan, he has yet to uncover any information that he believes would invalidate it. This preliminary conclusion could be wrong, of course; and the Receiver remains committed to a full investigation at the time that he conducts a comprehensive forensic investigation into all of the Receivership Entities' financial transactions. If the Receiver concludes that there is a valid claim against the secured lender or any other party, he will vigorously pursue it. But there is no reason for doing so on an emergency basis at this time. A monetary judgment could be obtained, and collected, from the secured creditor if this Court ultimately finds that the receivership entities and/or the Movants have valid claims against it. Alternatively, the Court could direct the Receiver to hold in escrow any funds from the refinancing of debt or sale of assets that might otherwise be paid to the secured lender, pending a further determination of this matter. In other words, there is no emergency here.

In summary, neither the Receiver nor the Movants should be focused on investigating and pursuing litigation claims against the secured creditor or any other party, especially where such claims are dubious. Both the Receiver and the Movants should be entirely focused on maximizing the value of the Receivership Entities' business. Any distraction from this central purpose is potentially a fatal one for these Receivership Entities.

While not the central focus of the Motion, the Receiver feels it necessary to also respond to the allegation in the Motion that the Receiver "is moving beyond the status quo but is moving toward a potential permanent disposition of the Defendant's *[sp]* assets." *See* Motion, p. 5. The

Movants make a number of faulty assumptions in support of this claim that should be corrected. First, the Receiver is not solely seeking to sell assets. As the Movants and their counsel know, he has asked his professionals to seek out *both* debt refinancing and asset sale options. This is a necessary course of action. This receivership should not, and indeed cannot, extend into perpetuity; every month that this litigation remains pending threatens the ongoing value of the Receivership Entities and their brand. This receivership needs to move toward an efficient resolution and one that maximizes value for creditors and shareholders. While that conclusion might be an asset sale, it might also be through a refinancing of the Receivership Entities' debts. The Receiver is very early in the process of seeking refinancing and/or asset sale partners so he cannot say which course will ultimately yield the best result. Regardless, the Receiver will bring a motion before this Court prior to taking any action to refinance debt or sell assets; so the Movants will certainly have an opportunity to be heard at that time.

Second, the Movants imply that the Receiver has conducted a valuation that shows it is capable of refinancing the debt. That implication is incorrect. As should be evident from the Receiver's October 1, 2025, Report, his statements about the viability of the Receivership Entities were preliminary and did not necessarily assume that the same ownership and management structure would continue. The Receiver remains confident in the ability of these entities to successfully reorganize and in the viability of the Uncle Nearest brand; however, as noted above, he has yet to form an opinion regarding whether the value of these entities is maximized by refinancing debts within the current business structure, or through a sale of the business as a going concern. He is seeking both options from the market with hopes to bring those options to this Court for approval.

Finally, the Receiver is greatly concerned by the following statement in the Motion: "The Movants are further aware that several competitors in the spirits industry have already engaged with the investment banker retained by the Receiver and have sought, or are seeking, access to the data room containing confidential and competitively sensitive information . . . ." *See* Motion, p. 5. The Receiver has gone to great lengths to ensure the confidentiality of the entire process of seeking debt refinancing and/or asset sales. Each party has been asked to sign a non-disclosure agreement prior to receiving even preliminary information about these Receivership Entities.[4] The Receiver has instructed his investment bankers to keep even the names of interested parties confidential – to the point that even the Receivers' other consultants and the secured lender do not know the names of parties who have expressed interest. If the Movants know the names of competitors who have had discussions with the Receiver's professionals (rather than merely speculating that such discussions might be occurring), they should be ordered to divulge the source of that information to the Receiver so that he can remedy any confidentiality breaches immediately.

In conclusion, the Receiver is troubled by these attempts by the Movants to distract from or, worse yet, completely derail the primary focus of this receivership: maximizing the value of the Receivership Entities for creditors and shareholders. For the Receiver, it draws into question whether the Movants are acting in the best interest of the company. If there are claims to pursue, the Receiver will absolutely pursue them at the appropriate time. But granting the Movants stay relief to pursue these alleged claims right now, when all parties' focus should be maintaining the value of this business, would be imprudent in the Receiver's opinion. Therefore, the Receiver respectfully requests that this Court deny the Motion.

---

[4] There has been only preliminary information shared with any party. The Receiver has yet to establish a data room with information so certainly no party "has sought" access to a data room.

Dated this 26th day of November, 2025.

> By: /s/ Justin T. Campbell
> Justin T. Campbell, Tn. Bar No. 31056
> Thompson Burton PLLC
> 1801 West End Avenue, Suite 1550
> Nashville, Tennessee 37203
> Voice: (615) 465-6015
> Fax:   (615) 807-3048
> Justin@thompsonburton.com
>
> *Counsel for Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, a true and correct copy of the foregoing listed below was filed and served via the Court's CM/ECF system upon all parties requesting service in the above-listed case.

Dated: November 26, 2025.

> /s/ Justin T. Campbell
> Justin T. Campbell