| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 4:25-cv-38** |
| | ) | |
| v. | ) | **Judge Atchley** |
| | ) | |
| **UNCLE NEAREST, INC., et al.,** | ) | **Magistrate Judge Steger** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DIRECTORS' RESPONSE IN SUPPORT OF EMERGENCY MOTION FOR LIMITED RELIEF FROM THE RECEIVERSHIP STAY TO FILE RESPONSIVE PLEADINGS AND PROCEED TO JUDGMENT

The majority directors[1] (the "Directors") of Defendant Uncle Nearest, Inc., which is sole owner of Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Defendants"), by and through their undersigned counsel, respectfully submits this Response in support of the *Emergency Motion for Limited Relief from the Receivership Stay to File Responsive Pleadings and Proceed to Judgment*[2] (the "Emergency Motion"). In support of this Response, the Directors state as follows:

---

[1] The majority directors consist of Fawn Weaver and Keith Weaver, who are two of the three board members of Uncle Nearest, Inc. As further explained below, the Directors file this Response only on their own behalf as a result of the Receiver's position that only he, and not the Board, can take a position on behalf of or represent the Uncle Nearest Entities. The Receivership Order provides that "[t]he Receiver is authorized, empowered, and directed to direct and cause Uncle Nearest and the Subject Entities, and each of their . . . directors . . . to continue to manage all of the ordinary course operations of Uncle Nearest and the Subject Entities." Dkt. 39 at p. 5. Thus, while the Directors' authority to act on behalf of the Uncle Nearest, Inc. is subject to the Receiver's discretion, the Receivership Order contemplates that the Board remains intact and, accordingly, the Directors file this Response on their own behalf only. If the Board were authorized to direct the actions of the Uncle Nearest Defendants, this Response would be the position of the Uncle Nearest Defendants.

[2] Dkt. 80.

# SUMMARY

1.      This case began with the filing of a Complaint by Farm Credit against Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, Fawn Weaver and Keith Weaver (collectively, the "Defendants").  Prior to the Defendants having sufficient time to answer the Complaint or assert defenses, counterclaims, etc., thereto, the Court entered its *Memorandum Opinion and Order*[3] (the "Memorandum Opinion") and the *Order Appointing Receiver*[4] (the "Receivership Order"), which vested control over the Company in the Receiver and stayed all parties, including the Uncle Nearest Defendants, from taking any actions that could be deemed to disrupt the Receiver's administration of the Receivership Estate. The limited purpose of this Receivership was indicated by the Court in its Memorandum Opinion. First, the Court stated as follows:

> "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC, 462 F.3d at 551.* Because a receivership is an extraordinary remedy, it must be employed with the utmost caution and "only in cases of clear necessity to protect the plaintiff's interests in the property." *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (internal quotation marks omitted).[5]

The Court, in granting the receivership request, further stated as follows:

> Balancing the foregoing factors, the Court finds they cumulatively weigh in favor of appointing a receiver. The Court does not reach this decision lightly. It fully appreciates Defendants' concerns and has given them great thought. But these concerns are insufficient to overcome the Court's conclusion that a receiver is necessary to protect Farm Credit's interests at this time. That said, the Court will tolerate the existence of a receiver only so long as it is necessary. If a material

---

[3] Dkt. 32.
[4] Dkt. 39.
[5] Dkt. 32 at p. 4.

> change in circumstances eliminates the need for a receiver, then any party may file
> a motion to dissolve the receivership.[6]

These statements by the Court reflect that the Court did not view the appointment of the Receiver as a prelude to a pre-judgment disposition of all assets of the Defendants or a forced financial restructuring. Rather, the Receivership was intended to address the protection of Farm Credit's collateral position only. Since the Receiver has already determined that the value of the Uncle Nearest Defendants is significantly in excess of the Farm Credit debt, no pre-judgment disposition of assets is necessary or appropriate.

2. The Uncle Nearest Defendants were not initial parties to the Emergency Motion due to the inability of the Uncle Nearest Defendants to obtain counsel for that purpose (or any purpose). Upon entry of the Receivership Order and the broad scope of the same, counsel for the Uncle Nearest Defendants determined that it would need to be employed by the Receiver in order to continue its representation. As a result of this determination, both firms previously representing the Uncle Nearest Defendants, Adams & Reese and Latham & Watkins, in deference to the Receiver and this Court, both stood down and provided no further services to the Uncle Nearest Defendants. Consequently, the Receivership has proceeded with respect to a mere claim of Farm Credit for which no answer or responsive pleadings have yet been filed, no trial yet been held, and no judgment yet been rendered, with the Uncle Nearest Defendants being deprived of independent legal counsel. The Receiver has taken the position that only he can represent the interests of the Uncle Nearest Defendants and that the undersigned counsel is not authorized to do so.

3. As a result of the Receiver's denial of separate counsel to the Uncle Nearest Defendants, the Emergency Motion was filed solely by Grant Sidney, Inc., which is the largest

---

[6] *Id*. at p. 10.

single shareholder of Uncle Nearest, Inc., and Fawn and Keith Weaver, who co-founded the Uncle Nearest Defendants. Had the Uncle Nearest Defendants been able to maintain independent counsel from the start, the Directors would have authorized counsel to seek the relief requested in the Emergency Motion on behalf of the Uncle Nearest Defendants independently.

4.     This Court's recent Order entered November 25, 2025, which requires the Uncle Nearest Defendants to respond separately from the Receiver, indicates that it was not this Court's intention that the Uncle Nearest Defendants be unable to retain their own independent counsel in this case. As a result of that Order, the Directors engaged the undersigned law firm to represent the Uncle Nearest Defendants in this matter and such counsel filed a notice of appearance in the case. However, upon the filing of the notice of appearance, the Receiver sent an e-mail on December 1, 2025 confirming his position that the Uncle Nearest Defendants were prohibited from having independent counsel. In an effort to defer to the Receiver's position pending further Court direction, this Response is being filed on behalf of the Directors, rather than the Uncle Nearest Defendants. Since the underlying claims of Farm Credit need to be adjudicated, the Directors seek modification of the Receivership Order in order for the Defendants to obtain counsel to answer the Complaint and assert applicable defenses and counterclaims. The Directors also request authority to employ independent counsel to represent the interests of the Uncle Nearest Defendants in this case generally.

5.     While the Court's Order required responses from the Plaintiff and the non-moving Defendants, the Court stated that "[t]he Receiver may also file a response by this date, but he is not required to do so" likely on the recognition that the Receiver is not a party to the underlying litigation. However, on November 26, 2025, the Receiver filed *Receiver's Response to Emergency Motion for Limited Relief from the Receivership Stay to File Responsive Pleadings and Proceed*

*to Judgment*[7] (the "Receiver's Response"), which affirms the Directors' concern that this Receivership has moved beyond an effort to maintain the status quo pending a determination on the underlying claims toward a pre-judgment disposition of assets or forced restructuring. Indeed, each of the four primary reasons the Receiver has asserted in opposition to the Emergency Motion point to his effort and intent to finally dispose of the assets of the Uncle Nearest Defendants or financially restructure the Uncle Nearest Defendants prior to an adjudication of the Defendants' liability, while providing no specific information as to why a sale of the company or a financial restructuring is necessary to preserve value or the status quo. The Directors assert that the contemplated transactions are beyond what this Court intended for the Receivership and would violate the substantive due process rights of the Defendants and their shareholders.

6.     To be clear, while the Directors have disagreed with occasional decisions made by the Receiver, the Directors believe that the Receiver's efforts in maintaining the operations of the Company and investigating aspects of the business and operations have been in the best interests of the Uncle Nearest Defendants and their creditors. His investigation to date of the operations of the Companies has shown that there is no insolvency and the current management team has not engaged in any fraudulent activity, which has helped stabilize the Companies in the wake of the salacious allegations made by Farm Credit in its Complaint. The Directors have not always agreed with the operating decisions made by the Receiver over the last few months, but have always appreciated his consideration of all viewpoints in his administration of the estate. The Directors further recognize that the Receiver has carried out the duties he understands to be imposed by the Court's order with diligence and fairness. Consequently, the Directors' primary dispute with the Receiver is his push toward a disposition of the assets or a forced financial restructuring of the

---

[7] Dkt. 83.

Uncle Nearest Defendants prior to any judgment having been rendered against the Uncle Nearest Defendants – a result that is inconsistent with the Court's Memorandum Opinion, violative of the Uncle Nearest Defendants' due process rights, and inequitable.

7.     Based on these considerations, the Directors fully support and join in the relief requested in the Emergency Motion.[8]

## **BACKGROUND**

8.     On July 28, 2025, Farm Credit initiated this above captioned case by filing the *Verified Complaint and Request for Appointment of Receiver* (the "Complaint"). [Dkt. 1].  The Complaint was based on alleged defaults in certain Loan Documents, as defined in the Complaint. In addition to naming certain Defendants that are obligated to Farm Bank under the Loan Documents, the Complaint also personally named Fawn Weaver and Keith Weaver, who are not obligated to Farm Credit under the Loan Documents.

9.     In conjunction with the Complaint, also on July 28, 2025, Farm Credit filed its *Emergency Motion for the Immediate Appointment of Receiver* (the "Receivership Motion") [Dkt. 3]. On July 29, 2025, the Court issued its Order setting a hearing date of August 7, 2025 on the motion. On August 4, 2025, the Court issued an Order requiring witness and exhibit lists be filed by August 5, 2025, and allocated 90 minutes for the hearing on the Receivership Motion.   While Farm Credit had significant time to prepare for the hearing prior to the filing of the Receivership Motion, the Defendants had significantly less time to investigate and prepare their defenses to the Receivership Motion because they had no advance notice of the filing. That shortened preparation time along with the Court's limitation on the amount of time allocated for hearing, made it very difficult for the Defendants to fully address the key issues relating to the Receivership.

---

[8] Farm Credit asserts that Defendants should not be permitted to proceed at this stage, but its response does not address this Court's November 25 Order, which expressly directed the Defendant entities—not the Receiver—to respond.

10.     Prior to the filing of the Complaint, Defendants were represented by outside counsel in connection with Farm Credit's allegations and were actively engaged in good-faith efforts to resolve the matter through both the forbearance process and ongoing refinancing negotiations. In the midst of those negotiations and after having provided to Farm Credit an indisputably viable LOI for a $100 million refinancing, the Defendants were blindsided by the filing of the Complaint and the Receivership Motion. Upon Farm Credit filing this action, Defendants' existing counsel could not continue representation because it was unable to clear conflicts arising from its work for Farm Credit or Farm Credit-related entities. Defendants then discovered that many of the firms with the specialized expertise required for a receivership defense were also conflicted out. By the time Defendants secured conflict-free counsel, only days remained before the August 7 hearing. This combination of conflict-induced loss of counsel and compressed timing deprived Defendants of a meaningful opportunity to investigate the allegations, prepare defenses, identify counterclaims, or develop an adequate record in the receivership hearing.

11.     The hearing on the Receivership Motion was held on August 7, 20225, and on August 14, 2025, the Court entered its *Memorandum Opinion and Order*[9] (the "Memorandum Opinion"), which ordered the appointment of the receiver and required the parties to provide additional briefing regarding who should be appointed as receiver. As noted and quoted in paragraph 1 above, the Memorandum Opinion makes clear that the intent of the Receivership was solely to protect Farm Credit's interest in its collateral, not to cause the pre-judgment liquidation of the Defendants' assets or cause the forced restructuring of the Defendants' capital structure. After receiving information from the parties with proposed receiver candidates, the Court selected Phillip Young to serve as Receiver in the case.

---

[9] Dkt. 32.

12.     On August 22, 2025, the Court entered the *Order Appointing Receiver*[10] (the "Receivership Order"), which, in addition to appointing Phillip Young as Receiver, vested the Receiver with exclusive control over the Uncle Nearest Defendants[11] and provided a broad stay of litigation applicable to all parties [the "Litigation Stay"].[12] The Receiver's exclusive control over the Uncle Nearest Defendants has prevented those entities from answering and defending against the Farm Credit Complaint, or asserting applicable counterclaims. Likewise, the Litigation Stay has prevented the Weavers and other impacted parties from defending against the Farm Credit Complaint or asserting related claims.[13]

13.     On October 1, 2024, after operating as the court-appointed receiver for more than five weeks with full and unfettered access to all of the books and records of the Uncle Nearest Defendants and a high quality financial advisory team engaged, the Receiver filed the Receiver's *First Quarterly Report*.[14] In the Report, the Receiver made the following preliminary findings and reports:

a.   "very encouraged about the long-term viability of the Company"[15];

b.   "the Company has significant value and can be reorganized, as a going concern, on a relatively quick timeline"[16];

c.   "The founder, management, and employees of the Company have been very cooperative with the Receiver and has granted the Receiver full access to the Company and its records."[17];

---

[10] Dkt. 39.
[11] *Id*. at p. 5-12.
[12] *Id*. at p. 13.
[13] Farm Credit asserts that no urgency exists now, despite having sought and obtained emergency, accelerated relief at the outset; it should not be permitted to slow the process when Defendants seek the same opportunity to be heard.
[14] Dkt. 46.
[15] *Id*. at p. 1.
[16] *Id*.
[17] *Id*. at p. 2.

d.  "the Receiver and his team of professionals quickly integrated into the financial and operational control of the Company, and have continued working cooperatively with the Company . . ."[18];

e.  The Receiver was able to create an operating budget that required no financing except to cover approximately $2.5 million in costs mostly created by the Receivership itself[19];

f.  The Receiver was able to reconcile the barrel count[20];

g.  The Receiver has determined that there is "validity" to issues relating to potential fraud by a former officer of the Uncle Nearest companies that were brought to the attention of the Receiver and of which Farm Bank was aware prior to the Receivership[21];

h.  The Receiver has found no evidence of misappropriation, theft, or financial impropriety by the Company's founder, its management team, or any current employee[22]; and

i.  While there have been multiple transfers among related entities, the Receiver has found no evidence of defalcation to date.[23]

14.  Notwithstanding these findings, the Receiver is moving beyond simply maintaining the status quo, and towards a permanent disposition of the Defendants' assets. The Receiver has recently retained an investment banker to market the Defendants' assets under two tracks – a potential pre-judgment forced refinance of the Farm Credit loans or sale of substantially all assets

---

[18] *Id.*
[19] *Id.* at pp. 3-4.
[20] *Id.* at p. 4.
[21] *Id.* at p. 5.
[22] *Id.* at pp. 5-6.
[23] *Id.* at p. 6.

of the Debtors. Each of these outcomes would create significant prejudice to the Uncle Nearest Defendants and their founders and shareholders that is greater than simply a monetary issue. These Defendants and the founders and investors formed and built these companies based on long-term goals, not short-term financial gains. A money judgment is not an adequate substitute for the loss of control over these companies, especially where the Board never had the intention of selling the Companies. Furthermore, a sale of the assets of the Defendants while in a receivership proceeding during a time when the spirit industry overall is in a down market will undoubtedly result in a price that does not accurately reflect the full market value of the Companies. While any valid claims of Farm Credit will get paid in full in any event, a sale in the Receivership will undoubtedly result in the shareholders of Uncle Nearest receiving significantly less value. In light of the preliminary findings of the Receiver, it is imperative that the Defendants have the immediate opportunity to defend against the Complaint filed by Farm Credit.

## ARGUMENT

15.     The Court has inherent authority to grant relief from or modify the receivership stay. The receivership itself is an equitable remedy and the extent of the stay is subject to equitable principles. In this case, equity requires that the Defendants have the opportunity to assert defenses and counterclaims in opposition to the Complaint.

16.     The United States Court of Appeals for the Sixth Circuit has not articulated a test for determining whether a receivership stay should be lifted.[24] However, the factors set forth by the Ninth Circuit in *SEC v. Wencke ("Wencke II")*,[25] which have been subsequently adopted by

---

[24] *See Huntington Nat'l Bank v. St. Catharine College*, 2017 U.S. Dist. LEXIS 203775, *18 (W.D. Ky. 2017)
[25] 742 F.2d 1230 (9th Cir. 1984).

many federal courts, including courts in the Sixth Circuit, sets forth the appropriate applicable standard.[26] The *Wencke* test involves a three-pronged analysis:

> (1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;
>
> (2) the time in the course of the receivership at which the motion for relief from the stay is made; and
>
> (3) the merit of the moving party's underlying claim.[27]

17.     These factors are mostly geared to consideration of whether the stay should be lifted with regard to additional litigation by non-parties against the subject of the Receivership, not completion of the underlying litigation that is presently before the Court. Where the question as to relief from the stay relates to simply progressing the primary case that is before the Court, such as is the request here, the factors clearly weigh in favor of the lifting the stay on the requested limited basis.[28]

18.     First, the current direction of this case is not merely maintaining the "status quo" or protecting Farm Credit's interest in its alleged collateral, as the Receiver is moving ahead with an apparent pre-judgment sale process for the assets of the receivership or forced refinancing when there has not even been an adjudication as to whether the Farm Credit debt, which is the basis of the proceeding before this Court, is validly owed and or is reduced in whole or in part, due to defenses and counterclaims held by the Defendants.  The practical effect of the current path of this

---

[26] *See Huntington Nat'l Bank*, 2017 U.S. Dist. LEXIS 203775 at *18; *BMO Harris Bank, N.A. v. Truland Sys. Corp.*, 2017 U.S. Dist. LEXIS 65091, *5-6 (E.D. Va. 2017).

[27] *Wencke*, 742 F.2d at 1231.

[28] Farm Credit asserts in its response that it has 'no issue' with Defendants filing responsive pleadings, yet simultaneously suggests in a footnote that counsel's appearance 'appears' to violate the Receivership Order—an inconsistent position that underscores the need for clarity.

receivership case is treating the Farm Credit note as a cognovit note (i.e., a pre-suit judgment by confession), which is expressly prohibited under Tennessee law.[29]

19. Farm Credit's claims and related counterclaims need to be adjudicated before additional harm is inflicted upon the Defendants resulting directly from Farm Credit's Complaint and related actions. This case is progressing to a potentially irreversible outcome without having any of the claims of Farm Credit or applicable defenses and counterclaims of the Defendants having been determined by the Court. The potential for substantial and irreversible injury to the Defendants and their equity holders is highly likely if the Defendants are unable to defend themselves and assert applicable counterclaims. The Court's Memorandum Opinion does not contemplate this prejudicial outcome to the Defendants resulting from the Receivership. Thus, the Movants' request, to which the Directors hereby join, is exactly what is needed as a first step to maintain the status quo and is necessary to prevent substantial injury.

20. Declining to modify the stay in the present circumstances would not preserve the status quo; it would accelerate the harm. The Receiver's ongoing process — including providing imminent access to proprietary commercial information to third parties, including direct competitors — creates an immediate threat of irreversible competitive injury. Modifying the stay for the limited purposes requested is a necessary first step to prevent imminent and irreversible damage.

21. Second, the timing of the Emergency Motion is appropriate. The Movants delayed filing the Emergency Motion to allow the Receiver adequate time to investigate and understand the entities under his control. As noted by the Ninth Circuit in *SEC v. Wenke ("Weinke I")*,

---

[29] T.C.A. § 25-2-201. *See also Capital v. TNG Contrs., LLC*, 622 S.W.2d 227, 235-36 (Tenn. Ct. App. 2020)("cognovit notes or clauses are void under Tennessee statute.").

The time at which the motion for relief from the stay is made also bears on the exercise of the district court's discretion. Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance.[30]

At this point, the Receiver has had the time to assume control and make his initial investigation into the case and the timing of the Emergency Motion is thus appropriate.

22.     As noted, the Receiver has now had the opportunity to make a preliminary investigation and provide to the Court and the parties his preliminary findings as set forth in his First Quarterly Report. Further, considering that neither Farm Credit, nor any other creditor, has been adjudicated at this point to have any valid claim against the Debtors, the Receiver's administration of this case requires that a determination of whether Farm Credit's claims are valid and whether any such claims are subject to valid defenses and counterclaims be made before this case or the Receivership progresses further.

23.     Due process requires that the Defendants have the opportunity to defend themselves before decisions are made as to the disposition of the Defendants' property.  The Eleventh Circuit directly addressed similar due process concerns relating to summary receivership proceedings in *SEC v. Terry*[31] as follows:

"Due process, in its most basic form, still requires notice and an opportunity to be heard." *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019). To determine whether the district court provided due process, "we look at the actual substance, not the name or form, of the procedure to see if the [claimant's] interests were adequately safeguarded." *Id.* (quotation marks omitted). "[A]t minimum summary proceedings must provide [claimants] with necessary information, a meaningful opportunity to argue the facts and their claims and defenses, and an adjudication of their claims and defenses." *Id.* at 1319; *Elliott*, 953 F.2d at 1567

---

[30] *SEC v. Weinke*, 622 F.2d 1363, 1374 (9th Cir. 1980).
[31] 833 Fed. Appx. 229, 233 (11th Cir. 2020).

(claimants must be given a "full and fair opportunity to present their claims and defenses")

In *Elliott*, we concluded that certain claimants' due-process rights were violated in a receivership case where the claimants were permitted to file written forms with their objections only. 953 F.2d at 1568. We concluded that this process was inadequate because the issue of whether a pre-receivership transfer was fraudulent "required an evidentiary hearing" where the claimants could "present and argue their facts" and "rebut the characterization of the transfer and present affirmative defenses." *Id*.

Then, in *Torchia*, we again found that the district court's summary proceedings in a receivership failed to provide sufficient due process to certain claimants. 922 F.3d at 1319. The claimants were allowed to file objections to the receiver's proposed distribution plan and to present oral argument at a hearing, but the court "limited the scope of the objections and the issues at oral argument to the form of the proposed distribution plan" and declined to "substantively address" the claimants' arguments. *Id*. We concluded that the court denied the claimants "a meaningful opportunity to object to the receiver's determinations and calculations, present evidence <u>and argue their claims and defenses,</u> and challenge the substance of the receiver's proposed distribution plan." *Id*.[32]

24.     Here, the substantive claims and defenses of the Defendants have not been heard, yet decisions are being made in the Receivership that will strip the Defendant's property rights and significantly impact on the value of the Defendants' assets.  Due process requires that the Defendants be authorized to assert their defenses and counterclaims in this proceeding before their ownership rights are summarily stripped or prejudiced.

25.     Finally, the Defendants' claims and defenses have substantial merit and directly affect the validity, enforceability, and potential amount of Farm Credit's asserted indebtedness. In particular, the counterclaims that the Defendants intend to assert may materially reduce—and potentially exceed—Farm Credit's claimed secured debt once adjudicated. Due process therefore requires that these claims be heard before the Receiver proceeds toward an irreversible disposition of assets.

---

[32] *SEC v. Terry*, 833 Fed. Appx. 229, 233 (11th Cir. 2020) (emphasis added).

26.    If authorized, the Directors intend that the Uncle Nearest Defendants and their related entities will answer and assert affirmative defenses and counterclaims, and file additional claims that will have significant impact on this case arising from facts that have not yet been presented to this Court and directly address and refute factual allegations by Farm Credit, including, but not limited to, the following:

(a) evidence relating to the fraudulent conduct of the Company's former CFO and his close personal relationship with the primary loan officer at Farm Credit, who intentionally or negligently contributed to or facilitated the fraud;

(b) documentary evidence demonstrating intentional or negligent misconduct by Farm Credit in that all 28 credit drawdowns on the Farm Credit loans over a 13-month period preceding the Receivership totaling nearly $67 million were initiated and executed solely by the Company's former CFO, who has admitted to significant fraud, with no confirmation required by Farm Credit of such draws from Ms. Weaver, who is the sole signatory for the credit agreements and has been acknowledged by Farm Credit as Farm Credit's "primary contact" at Uncle Nearest;

(c) asset valuation materials showing that Farm Credit's collateral exceeded its secured indebtedness by a substantial margin at all relevant times such that Farm Credit's actions unnecessarily interfered with the value of the collateral;

(d) evidence that a real-estate firm with more than $50 billion in assets had delivered a $100 million LOI for the refinancing of the Farm Credit loans and facility improvements that was shared with Farm Credit mere days prior to the filing of the Complaint evidencing bad faith on the part of Farm Credit causing damage to the Uncle Nearest Defendants;

(e) the sworn affidavit of the Company's former Senior Vice President of Finance and Planning regarding GAAP compliance and the proper inclusion of the $21 million in barrel inventory that Farm Credit incorrectly claimed was missing and was a basis for Farm Credit's subsequent actions that have damaged the Uncle Nearest Defendants;

(f) evidence that Farm Credit had approved the acquisition of the Martha's Vineyard property (on which it acquired no lien) and was fully aware that such property would need to be acquired in the name of an entity other than the Company Entities; and

(g) the Defendants' comprehensive, line-by-line answer and rebuttal to the Complaint.

27.     These rebuttals, affirmative defenses, claims and counterclaims are further supported by the Receiver's own findings that (a) there is no evidence of misappropriation, theft, or financial impropriety by current management of the Uncle Nearest Defendants and (b) the Companies are solvent by a significant margin and can be reorganized as a going concern.

28.     In sum, the *Wencke* test is satisfied and modification of the stay to allow the Defendants to defend themselves and assert claims and counterclaims and allow this case to proceed to judgment is appropriate.

29.     Finally, we are now several months into this Receivership.  The Movants and the Directors are not here mere days or weeks after the institution of this Receivership asking for this relief – they have patiently sat back and allowed the Receiver to make his initial investigations and assessments as the case law provides is appropriate.[33] Now is the absolute correct time to allow the case to proceed to a final judgment and have all related claims against Farm Credit adjudicated, especially where the Receiver is pursuing a path that will undoubtedly prejudice the Defendants.

---

[33] *See SEC v. Weinke*, 622 F.2d 1363, 1374 (9th Cir. 1980).

30.     The Receiver's Response[34] establishes that the concerns of the Directors and the Movants have merit. Specifically, the Directors assert that the direction of the Receivership has moved beyond the maintenance of the businesses toward a final disposition of the assets or forced restructuring of the Uncle Nearest Defendants prior to any judgment having been rendered in favor of Farm Credit. As the Receiver's Response makes clear, the Receiver is seeking an irreversible transaction relating to the Uncle Nearest Defendants – either a sale of all the assets or a forced refinancing – rather than simply stabilizing and maintaining the status quo pending a judgment in the underlying litigation. His Response does nothing other than demonstrate that the Uncle Nearest Defendants need the opportunity to defend and present counterclaims.

31.     The first reason cited by the Receiver in opposition to the Emergency Motion is that "the litigation anticipated by the Movants would be extremely disruptive and damaging to the ongoing business of the Receivership Entities."[35] Since everything about this case and the Receivership has been extremely disruptive and damaging to the ongoing business of the Uncle Nearest Defendants, any additional disruption resulting from actually seeking to resolve the underlying and related claims asserted and to be asserted in the case is inevitable but is absolutely necessary.  There is no cognovit note involved in this case and no judgment has been rendered. The Receiver's only suggested timeline for the adjudication of the Complaint is after a time in which all of the Defendants' assets have been sold or their respective financial positions have been forcibly restructured. While all of the circumstances of this case are important and should be considered, including potential negative press coverage, those concerns cannot outweigh the due process rights of the Defendants in this case.

---

[34] Dkt. 83.
[35] Dkt. 83 at p. 2.

32.     The Receiver's suggestion that allowing the Defendants to defend and assert counterclaims against Farm Credit shouldn't happen because Farm Credit is funding the Receivership is problematic. First, the funding provided by Farm Credit is currently almost wholly funding nothing other than the expenses of the Receivership itself.  In other words, Farm Credit isn't funding the operation of the business – it is funding the professional fees of the Receivership and its professionals. The Receivership Order itself requires that the fees of the Receiver and the Receivership Representatives be funded from Farm Credit's collateral or Farm Credit directly, as follows: "[a]ll such fees and expenses [of the Receiver and the Receiver Representatives] shall be payable from the Receivership Assets, which as defined herein include insurance policies applicable to this and other litigation, or, if the Receivership Assets are insufficient, by the Lender."[36]

33.     The idea that Farm Credit can request the imposition of the Receivership and that the need for funding administrative expenses of that very Receivership can then become the basis for insulating Farm Credit from having to prove its claims and defend counterclaims is inequitable, at best. Furthermore, the Receiver has not indicated any attempts to find funding sources other than Farm Credit for the Receivership and has not disclosed the "forbearance agreement" he has apparently entered into with Farm Credit, as referenced in the First Quarterly Report.[37] In sum, Farm Credit's funding of the receivership expenses, which is required under the Receivership Order, should not be a basis for denying the Defendants their due process rights to defend and assert counterclaims. Farm Credit, as the party seeking the Receivership, should simply be required

---

[36] Dkt. 39 p. 16.
[37] Dkt. 46 at p. 4. Specific Court approval is required of any financing agreement with Farm Credit outside the ordinary course of business under the Receivership Order  and T.C.A. § 29-40-112(b).

to fund those expenses in accordance with the Receivership Order until the Receivership is concluded, notwithstanding whether defenses or counterclaims are asserted.

34.     The Receiver next addresses the Defendants' counterclaims in two inconsistent ways – first, he asserts that if the Defendants are allowed to defend and assert counterclaims, then he will be forced to investigate those counterclaims which he has yet to do.[38]  The Receiver then, inconsistently, asserts that he has apparently found no indication of merit in the counterclaims based solely on discussions with the Movants (but also then states that he could be wrong) and further asserts that the claims are "dubious."[39] This begs the question: if he hasn't investigated the counterclaims, how can he legitimately assess their validity?

35.     This Receivership was brought about based on Farm Credit's efforts to collect its debts, not by the shareholders of the Company. An investigation of whether there are valid counterclaims against the very entity that sought the Receivership should be at the top of the Receiver's "to do" list. In any event, the Receiver's preliminary opinion (himself recognizing that he has done no investigation into the counterclaims and that he could be wrong on his initial opinion) should be given little or no weight in determining this matter. Indeed, his comments accomplish nothing other than potentially prejudicing the Receivership Estate and the Uncle Nearest Defendants.

36.     The fact that the Receiver has not already had his engaged professionals to begin an investigation of the counterclaims, of which he was made aware at the outset of the Receivership, clearly demonstrates that the Defendants need separate legal counsel protecting their legal rights. In light of the Receiver's apparent reticence to begin an investigation of the counterclaims and his now-published initial conclusions apparently based only on discussions with

---

[38] Dkt. 83 at p. 3.
[39] Dkt. 83 at p. 4.

the Movants and no independent investigation, those counterclaims should be removed from the Receivership and should be vested solely in the Uncle Nearest Defendants to pursue with independent counsel.

37. The Receiver's further remark that, even if the Defendants are divested of their assets and the shareholders of the Defendants are divested of their ownership of the Company in a forced pre-judgment receivership sale or financial restructuring, they can seek a monetary judgment from Farm Credit, does not support denying the requested relief in the Emergency Motion. Indeed, the Receiver's statement turns this equitable process on its head – it presumes a judgment in favor of Farm Credit leading to a forced sale or refinance by the Receiver of the Defendants' property with no consideration of the applicable defenses and counterclaims, then forces the Defendants to accept money damages in the event that the Defendants' defenses and counterclaims are ultimately proved valid. The Receiver distorts the standard question of whether interim equitable relief, such as a receivership, is necessary to avoid a prejudicial outcome for which monetary damages may be an inadequate remedy, into an assertion that the equitable relief previously granted in this case should not be lifted because of an asserted adequate legal remedy available to the Defendants for damages caused by the equitable relief itself. This instant question is about the continuing necessity of equitable relief already granted, not about any new equitable relief being sought by the Defendants. The question of whether previously granted equitable relief should be modified should hinge on the question of whether Farm Credit, the party receiving the prior equitable relief, now has an adequate legal remedy necessitating modification of the existing equitable relief, not whether the Defendants have an adequate legal remedy for damages resulting from the equitable relief itself.

38.     In any event, the possibility of a monetary judgment against Farm Credit is not an adequate legal remedy for a forced pre-judgment divestment of the business and its assets from its founders and shareholders. These companies were not for sale prior to the filing of the Complaint by Farm Credit and the Board has not even contemplated a sale of the companies at any point during their existence. There is no monetary award that can adequately compensate the founders and shareholders from a forced pre-judgment sale of the Company. The Plaintiff, Farm Credit, is not entitled to a presumptive judgment in its favor under Tennessee law and the Defendants should not be subject to having their property rights extinguished without there being any adjudication of the claims and defenses in the case, especially where the Receiver has already determined that the Company is worth well in excess of the debt owed to Farm Credit. This approach being administered by the Receiver treats the Farm Credit loans as cognovit notes, which is neither legal, logical nor equitable.

39.     The Receiver next asserts a concern regarding the potential of non-parties seeking stay relief to pursue their claims as a reason not to allow the actual Defendants in this case to bring counterclaims against the Plaintiff, Farm Credit.  However, the Receiver fails to recognize that the counterclaims to be asserted by the Defendants are not claims against the Uncle Nearest Entities or the Receivership Estate.  They are solely against Farm Credit. Consequently, the stay relief being requested here is very different from stay relief that might be requested by a non-party to allow a suit to be filed against the Receivership Estate or the Defendants.  It is entirely appropriate for the Court to modify the stay to allow the dispute between Farm Credit and the Defendants to proceed to judgment while still staying other litigation directed against the Receivership Estate and the Defendants. Indeed, allowing this case to proceed to judgment will hasten the resolution of the case and will ultimately benefit any creditors or shareholders that are currently stayed

because a resolution of the case will undoubtedly result in a quicker termination of the Receivership and the Receivership Stay and will provide the needed definition as to the assets and income available for satisfying other claims.

40. The Receiver expresses concern that the Movant's mere indication that unnamed industry competitors have engaged with the Receiver's investment banker indicates a breach of confidentiality while he does not address the concern that current competitors of the Uncle Nearest Defendants may likely be provided access to Uncle Nearest's proprietary information as part of the sale process. There is nothing in the statement made by Movants that violates any confidentiality issues as the fact that the investment banker has engaged or will engage with other spirit companies (i.e. competitors to Uncle Nearest) is an obvious outcome of the engagement of the investment banking firm specifically for that purpose. On October 27, 2025, the Receiver filed the *Notice of Additional Professional Retained by Receiver*,[40] which states that "he has retained Arlington Capital Advisors, LLC to advise the Receiver on possible transactions relating to this matter, including refinancing of indebtedness, consummating equity infusions or investments, and /or consummating a sale of some or all of the Receivership Assets."[41] The Receiver's own First Quarterly Report states that "[t]he Receiver anticipates accepting offers for refinancing debt, purchasing shares of the Company, and/or purchasing substantially all assets of the Company upon verification of the financial reports . . . [and] has begun interviewing investment bankers to potentially assist with the sale of certain assets of the Company."[42] It is obvious that the engaged investment banker would be looking at both potential strategic buyers (i.e., competitors) as well

---

[40] Dkt. 76.
[41] *Id*. at p. 1.
[42] Dkt. 46 at p. 11.

as financial buyers, and the only way to obtain a bona-fide offer is to provide those potential buyers with non-public information.

41.    The Receiver's belief that an NDA protects the Uncle Nearest Defendants from competitive damage that would likely result from competitors having access to Uncle Nearest's proprietary information ignores the realities of the ultra-competitive environment in which Uncle Nearest operates. Having knowledge of Uncle Nearest's proprietary information will allow competitors to have non-public information that will impact how they price and market their competing products to either stop Uncle Nearest from continuing to gain market share or cause Uncle Nearest to lose market share. The concerns expressed by the Movants and, here, by the Directors, are real and support allowing the Defendants to defend their claims as well as seek other related relief.

42.    The Receiver's direct comments in his Response responding to the Movant's allegation that he is moving beyond merely maintaining the status quo simply prove the point that he is actually moving that direction. First, he seems to assert that because he is seeking both sale and refinancing options, that effort is only maintaining the status quo because the "[r]eceivership should not, and indeed cannot, extend into perpetuity. . . . ."[43] With due respect, we are only approximately four months into this Receivership, so a concern at this point of the Receivership lasting in perpetuity is premature, at best.

43.    On the other hand, the Receiver's apparent concern that the continuation of the Receivership is affecting value is valid, especially where the value of the Defendants is significantly in excess of the debt to Farm Credit (i.e., the Uncle Nearest Defendants are not insolvent). However, the appropriate resolution of that concern, where there is no insolvency or

_____

[43] Dkt. 83 at p. 5.

existing or threatened fraudulent activity, is a structured tapering back of the Receivership to put control of the Company back in the hands of the Board with the Receiver's role limited to monitoring and reporting, not a pre-judgment sale of all assets of the Companies or complete forced financial restructuring.

44. The Receiver's reference to his efforts relating to pursuing a possible financial restructuring as an alternative to a sale is also belied by his later statement that, with respect to a potential refinancing, he "did not necessarily assume that the same ownership and management structure would continue."[44] To be clear, a change in ownership is a sale of the Company so to suggest that a refinancing of the debt accompanied by a change in ownership is anything other than a sale is not accurate.

45. Finally, the notion that the Receiver will simply bring the best pre-judgment refinancing option and pre-judgment sale option before the Court and file a motion asking the Court to decide the best option will likely lead to a procedural morass. This is not a bankruptcy case where there is a codified and established process for notice to all creditors, distribution of a court-approved disclosure statement, submission of a comprehensive reorganization plan, voting on the plan, and confirmation of the plan. The Court's obvious need to hear from all affected parties, including equity holders (perhaps hundreds), in deciding between two potential extreme outcomes will be very difficult, at best, and wholly unmanageable, at worst. Further, the likelihood of multiple appeals after such proposed hearing is significant. In sum, the Receiver's intended approach will simply lead to more litigation, not a resolution of the case.

46. Based on these considerations, the Directors assert that the Receiver's reservations about allowing the Defendants to defend themselves and assert counterclaims, to the extent valid,

---

[44] Dkt. 83 at p. 5.

are clearly outweighed by the due process rights of the Defendants and the considerations of fairness and equity, as discussed above.

47.     The Directors further request that they be authorized to engage separate counsel to represent the legal claims and interests of the Uncle Nearest Defendants with respect to the Farm Credit litigation and related matters.

WHEREFORE, the Directors of Uncle Nearest, Inc. hereby adopt and join in the Emergency Motion, and respectfully request that the Court (1) modify the Receivership Order for the limited purpose of allowing the Defendants and their related entities to answer, and assert defenses, claims, counterclaims and ancillary documents against Farm Credit and file such other ancillary documents as necessary to progress this case towards trial and judgment, (2) expressly authorize the Uncle Nearest Defendants to engage separate counsel to represent the Uncle Nearest Defendants in all aspects of this case and related matters, and (3) grant such other relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*

Michael E. Collins  (TN BPR No. 16036)
S. Marc Buchman (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (629) 500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Directors*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

*/s/ Michael E. Collins*

Michael E. Collins