UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| *Plaintiff*, | ) | Case No. 4:25-cv-38 |
| v. | ) | Judge Atchley |
| UNCLE NEAREST, INC., *et al.*, | ) | Magistrate Judge Steger |
| *Defendants*. | ) | |

## ORDER

Before the Court is Defendant Fawn Weaver, Defendant Keith Weaver, and Non-Party Grant Sidney, Inc.'s (collectively "Movants") Emergency Motion for Limited Relief from the Receivership Stay to File Responsive Pleadings and Proceed to Judgment [Doc. 80]. For the following reasons, the Motion [Doc. 80] is **DENIED AS MOOT**.

### I.  BACKGROUND

This is a breach of contract action involving a receivership. On July 28, 2025, Plaintiff Farm Credit Mid-America, PCA sued Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, Fawn Weaver, and Keith Weaver for the alleged breach of a credit agreement and attendant loan documents. [Doc. 1]. Alongside the complaint, Farm Credit filed a motion requesting the Court appoint a receiver to oversee Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC (collectively the "Defendant Companies") as this case progressed. [Doc. 3]. On July 29, 2025, the Court scheduled Farm Credit's motion to be heard on August 7, 2025, and directed Farm Credit to provide notice of the hearing to the Defendants. [Doc. 12]. Counsel for the Defendants entered an appearance on July 30, 2025. [Doc. 13].

No party moved to continue the August 7th hearing. Accordingly, the hearing was held as scheduled. [Doc. 26]. At the hearing, Farm Credit presented evidence and testimony tending to show, among other things, that the Defendant Companies had defaulted on their contractual obligations and that there was a material risk they lacked sufficient assets to pay any judgment that Farm Credit might receive should it ultimately prevail on its breach of contract claim.[1] Defendants largely did not dispute Farm Credit's presentation of the facts, instead focusing their arguments on their position that a receivership would do more harm than good and that the Court could protect Farm Credit's interests through less intrusive means. [*See generally* Doc. 30]. The Court took Farm Credit's motion under advisement.

After considering the evidence and testimony presented at the August 7th hearing alongside the other information in the record, the Court granted Farm Credit's motion. [Doc. 32]. The Court then directed the parties to submit additional briefing regarding who should be appointed as receiver. [*Id.* at 10–11]. Ultimately, the Court selected the Defendants' proposed candidate, Phillip G. Young, Jr., ("Receiver") to serve as receiver for the Defendant Companies.[2] [Doc. 39 at ¶ 1].

Several weeks into his tenure, the Receiver filed a Motion for Clarification of Receivership Order asking the Court to clarify whether ten entities related to the Defendant Companies, including Grant Sidney, Inc., fell within the scope of the receivership. [Doc. 41]. This motion remains pending, and the proceedings related to it have been temporarily stayed pursuant to an agreed order proposed by the Receiver, Farm Credit, and the ten entities. [Doc. 79].

---

[1] A more-detailed explanation of what the evidence and testimony showed and tended to show can be found in the Court's August 14, 2025, Memorandum Opinion and Order granting Farm Credit's motion for the appointment of a receiver. [*See generally* Doc. 32].

[2] As the Court noted in its Order granting the Receiver's Motion to Strike, the Receiver represents the Defendant Companies in this litigation. [Doc. 89]. For the avoidance of any doubt, whenever the Court refers to the parties generally or to the Defendant Companies, it is with the understanding that the Receiver represents the interests of the Defendant Companies in this litigation.

On November 24, 2025, the Movants filed the instant Motion asking the Court to lift the stay imposed by the Order Appointing Receiver so this matter can proceed towards judgment. [Doc. 80]. The Receiver and the Defendant Companies oppose the Motion. [Doc. 83]. Farm Credit agrees with the concerns raised by the Receiver but does not otherwise oppose this action proceeding towards judgment provided that every defendant is on the same litigation schedule.[3] [Doc. 85]. No replies were filed as they were not permitted by the Court. [Doc. 81]. Accordingly, the Motion is ripe for review.

## II.  LAW AND ANALYSIS

The Motion is premised on the idea that the anti-litigation injunction found at paragraph 12 of the Order Appointing Receiver [Doc. 39] applies to these proceedings. [*See generally* Doc. 80]. As this premise is incorrect and these proceedings are not currently stayed, the Motion [Doc. 80] will be denied as moot.

When the Court appointed the Receiver, it also enjoined other individuals and entities from interfering with the administration of the receivership estate. [Doc. 39 at ¶ 12]. Specifically, the Court ordered the following:

> All persons or entities, including employees, agents, creditors, banks, investors, shareholders, officers, directors, subsidiaries, affiliates, owners or others, with actual or constructive notice of this Order, are enjoined and restrained from in any way disturbing, interfering or affecting the Receivership Assets or the administration of the receivership estate. This includes, without limitation, prosecuting, initiating or continuing any actions or proceedings, enforcing judgments, perfecting liens; pursuing actions or proceedings against the Receiver and the Receiver Representatives, designed to collect their debts or which in any way involve the Receiver or the Receiver Representatives or which affect the Receivership Assets, to the extent that the same would interfere with or disturb these receivership proceedings, without the permission and approval of this Court;

---

[3] The Weavers, as the majority directors of Defendant Uncle Nearest, Inc., also responded to the Motion. [Doc. 86]. The Court struck this response from the record as improperly filed. [Doc. 89]. Accordingly, it is not discussed further nor was it considered in the Court's resolution of the instant Motion.

> provided, however, that nothing herein shall preclude any party with standing from seeking relief from this Order on proper application and after notice and a hearing. Any actions in violation of this paragraph shall be null and void as acts in contravention of this Order. This injunction is intended to function in a manner consistent with the protections afforded by the automatic stay under 11 U.S.C. § 362.

[*Id.*]. The Movants interpret this language broadly, believing it to have stayed these proceedings. [*E.g.*, Doc. 80 at ¶ 6]. In reaching this conclusion, however, the Movants fail to give effect to the injunction's final sentence which states that it "is intended to function in a manner consistent with the protections afforded by the automatic stay under 11 U.S.C. § 362." Looking to the scope of 11 U.S.C. § 362, it is apparent this litigation is not stayed.

The scope of the automatic stay under 11 U.S.C. § 362 "is broad and operates to enjoin essentially any act, whether the commencement or continuation thereof, by a creditor to collect on a prepetition claim." *In re Russell*, 441 B.R. 859, 861 (Bankr. N.D. Ohio 2010). Despite this broad scope, however, "the stay does not operate against the court with jurisdiction over the bankrupt." *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (quoting *Robert Christopher Assocs. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990)). As a practical matter, this has the effect of freezing the pieces on the board such that the bankruptcy court can administer a debtor's estate without outside interference. The Court's injunction functions in a similar way.

The Court's goal in enjoining other people and entities "from in any way disturbing, interfering or affecting the Receivership Assets or the administration of the receivership estate" was—like with the automatic stay under 11 U.S.C. § 362—to freeze the pieces on the board. [*See* Doc. 39 at ¶ 12]. The Court intended to pause other potential litigation so (i) the Receiver could

focus on maximizing the value of the Receivership Assets[4] without the distraction of defending against multiple lawsuits and (ii) the parties could focus their efforts on litigating this action without fear that other claimants would drag the Defendant Companies into far-flung courts hoping to raid the Receivership Assets before this case concluded. If the Court stayed this action, then it would be directly undercutting this latter subgoal. Rather than freeze the pieces on the board so that it could oversee the efficient litigation of this case, the Court would just be freezing this case indefinitely. This would be illogical, particularly when considering that a receivership is not an end in itself but rather merely a means by which to ensure a plaintiff can recover should it ultimately prevail on a separate claim (in this case, breach of contract). *N.Y. Cmty. Bank v. Sherman Ave. Assocs., LLC*, 786 F. Supp. 2d 171, 175 (D.D.C. 2011) ("The court may appoint a receiver as an ancillary, provisional action in connection with a pending matter, but a federal court of equity will not appoint a receiver where the appointment is not ancillary to some form of final relief." (internal quotation marks and alterations omitted)). Accordingly, just at the automatic stay under 11 U.S.C. § 362 does not apply to the bankruptcy proceedings that trigger the automatic stay, the Court's anti-litigation injunction does not apply to this action. The Motion [Doc. 80] is therefore moot.

The Court was under the impression the parties understood this action was not stayed and that the only reason this action had not progressed was because the parties agreed to delay litigating the underlying claims until a later date. [Doc. 67 at ¶ 3 (stipulating that "[t]he deadline for the Defendants to answer the Complaint will be a date determined by the Parties by mutual agreement in writing and without further order of this Court")]. To the extent this impression was incorrect,

---

[4] "Receivership Assets" is defined in paragraph 2 of the Order Appointing Receiver. [Doc. 39 at ¶ 2].

the Court now clarifies that this action is not and was never intended to be subject to the injunction found at paragraph 12 of the Order Appointing Receiver. That said, while the appointment of the Receiver did not stay this action, it does affect the schedule on which it must be litigated.

The Defendant Companies were in troubled waters when the Receiver was given the helm. He has made commendable strides in setting these companies on a better course, but challenges remain. [*See generally* Doc. 46]. The Court is unwilling to undermine the Receiver's efforts by forcing him into an aggressive litigation schedule that prevents him from guiding the Defendant Companies to safe harbor while this action progresses. Accordingly, and to promote the cooperation envisioned by the parties' prior stipulation [Doc. 67], the Court will direct the parties and the Receiver to confer regarding a litigation schedule that would allow this action to be expeditiously litigated while still affording the Receiver the time he needs to effectively administer the receivership estate.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. The Emergency Motion for Limited Relief from the Receivership Stay to File Responsive Pleadings and Proceed to Judgment [Doc. 80] is **DENIED AS MOOT**.

2. The parties are **ORDERED** to confer and file a joint status report on or before **January 30, 2026**. The status report **SHALL** set forth a proposed schedule for the orderly progression of this litigation, one which allows the underlying claims to be litigated without unduly interfering with the Receiver's administration of the receivership estate. The conferral requirement cannot be satisfied by written correspondence. The parties **SHALL** confer in person, telephonically, or virtually, in a format that permits real-time verbal communication. The status report **SHALL** include a certification that the parties

have complied with this Order.

3. For the avoidance of any doubt, nothing in this Order shall be construed as preventing the Receiver from taking any action authorized by the Order Appointing Receiver [Doc. 39] prior to the Court's entry of a Scheduling Order or setting any other deadlines in this case.

**SO ORDERED.**

>*/s/ Charles E. Atchley, Jr.*
>**CHARLES E. ATCHLEY, JR.**
>**UNITED STATES DISTRICT JUDGE**