| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 4:25-cv-38<br>) |
| v. | ) Judge Atchley<br>) |
| UNCLE NEAREST, INC., et al., | ) Magistrate Judge Steger<br>) |
| Defendants. | )<br>)<br>) |

### ADDITIONAL ENTITIES' RESPONSE TO RECEIVER'S NOTICE OF REQUEST FOR HEARING ON MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER

Shelbyville Barrel House BBQ LLC, Humble Baron, Inc., Grant Sidney, Inc., Uncle Nearest Spurs VI, LLC, Quill and Cask, LLC, Nashwood, Inc., Classic Hops Brewing Co., Shelbyville Grand, LLC, Weaver Interwoven Family Foundation, and 4 Front Street LLC (collectively, the "Additional Entities") hereby respond and object to the *Receiver's Notice of Request for Hearing on Motion for Clarification of Receivership Order*[1] (the "Receiver's Notice").

The Receiver's Notice disregards the threshold procedural requirements governing any further proceedings on the Receiver's Motion for Clarification. Specifically, the Receiver has failed to comply with the express terms of the *Agreed Order Staying Proceedings Related to Receiver's Motion for Clarification and Establishing Schedule Regarding Further Proceedings*[2] (the "Agreed Order"). The Agreed Order was negotiated by the parties, entered by the Court, and operates as a mandatory gatekeeping mechanism that must be satisfied before any hearing may be requested. It expressly provides:

---

[1] Dkt. 98.
[2] Dkt. 79.

6. The Receiver **shall** have fourteen (14) days from receipt of any additional statements and documents to review the provided records.

7. Following his review of the bank records, the Receiver **shall** provide any additional questions, evidence and /or argument regarding the Motion to Clarify to the Respondents, who shall have seven (7) days to provide responses or clarification to the Receiver's questions, evidence and/or argument.[3]

As confirmed by the Receiver, he received the additional documents he requested by December 1, 2025. Those documents were timely produced, having been provided within ten (10) days of the Receiver's request, in full compliance with the Agreed Order.

Under the plain and unambiguous terms of the Agreed Order, the Receiver then had fourteen (14) days to review the materials and was required to provide any additional questions, evidence, and/or argument regarding the Motion to Clarify directly to the Additional Entities before seeking further proceedings.

This process was not optional. It was expressly designed to afford the Additional Entities an opportunity to explain transactions or address any issues identified by the Receiver so that disputes could be narrowed or resolved before any public filing was made, and to ensure prompt resolution of the Motion to Clarify, recognizing that the continued pendency of the motion was itself causing severe, unnecessary, and ongoing financial and reputational harm to the Additional Entities. The Additional Entities raise these issues to ensure adherence to the Court's orders and pleading requirements, and not to ascribe motive or intent to the Receiver.

As previously advised in the *Additional Entities' Notice of No Further Requests or Reply By Receiver and Request for Entry of Order Relating to Motion to Clarify*,[4] the Receiver failed to provide any additional questions, evidence, and/or argument to the Additional Entities by the

---

[3] Dkt. 79 (emphasis added).
[4] Dkt. 95.

December 15, 2025 deadline imposed by the Agreed Order. He has still not done so, more than three weeks after that deadline expired.

Notably, even the Receiver's Notice identifies no specific transaction involving any of the Additional Entities, other than a generalized reference to approximately $20 million provided by Grant Sidney, Inc. to Uncle Nearest, an issue addressed separately below. The record therefore reflects no substantive basis for further proceedings as to the Additional Entities.

The undisputed facts are straightforward. The Receiver did not comply with the Agreed Order, did not seek an extension of time to do so, and does not acknowledge this noncompliance in the Receiver's Notice. Instead, the Receiver asks the Court to proceed without addressing the requirements imposed by the Agreed Order. A party or a court-appointed receiver should not be allowed to bypass mandatory procedural prerequisites and then seek relief as if compliance were optional. The Additional Entities respectfully request that the Court enforce the Agreed Order as written and enter an order confirming that the Additional Entities are not part of the Receivership.

With respect to the Receiver's reference to purported transactions in the Receiver's Notice, the Receiver does not allege, nor does he identify, any fraudulent conduct. Instead, he asserts only a generalized concern regarding "commingling," unsupported by specific facts. The first such reference is the statement that Humble Baron, Inc. and Shelbyville Barrel House BBQ, LLC are housed at the Nearest Green facility but pay no rent. The mere possibility that rent may be due or owing between a landlord and a tenant does not evidence commingling. To the contrary, the allegation is premised on the absence of funds changing hands, which by definition negates any claim that assets were commingled.

Further, the Receiver ignores a critical legal constraint. If Humble Baron, Inc. were placed under the control of the Receiver, it would likely be required to cease operations under applicable

federal law. The Receiver's Notice does not acknowledge this consequence, further underscoring the absence of any lawful or practical basis for expanding the Receivership on this record.

The Receiver then asserts, without factual support, that each of the Related Entities have multiple transfers to and from Receivership entities. Other than a generalized reference to approximately $20 million transferred between Grant Sidney, Inc. and Uncle Nearest, the Receiver provides no detail regarding any specific transaction, including timing, purpose, or alleged impropriety.

With respect to the $20 million capital infusion in early 2025, the record reflects that the transaction was undertaken with the full knowledge of Farm Credit and resulted from Fawn Weaver's sale of a portion of her personal equity in Uncle Nearest, Inc., with the proceeds contributed through Grant Sidney, Inc. for the benefit of Uncle Nearest. The transaction was undertaken to satisfy funding requirements imposed by Farm Credit and was consistent with the forbearance arrangement ultimately executed on April 15, 2025.

Neither Fawn Weaver, Grant Sidney, Inc., nor any of the Additional Entities received any benefit from the transaction identified by the Receiver. All such transactions occurred exclusively during February, March, and April 2025 and were executed through separate bank accounts that were not commingled.

These facts reflect nothing more than an equity holder providing capital support to the Company during a discrete period of financial stress. Such conduct made solely for the benefit of Uncle Nearest does not evidence commingling, does not support any alter-ego theory, and does not provide a basis for expanding the Receivership.[5] Accordingly, the Receiver's vague and

---

[5] *See Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 284 (3d Cir. 1983); *Connors v. Peles*, 724 F. Supp. 1538, 1567 (W.D. Pa. 1989).

unsupported references to unspecified transfers do not excuse his failure to comply with the Agreed Order and do not provide a lawful basis for further proceedings as to the Additional Entities.

The Receiver further references and attaches the Complaint filed by Grant Sidney, Inc., Fawn Weaver, and Keith Weaver against Michael Senzaki and his company, and asserts that the action was filed "without the Receiver's knowledge." That assertion is incorrect. Within days of the Receiver's appointment, Ms. Weaver informed the Receiver that the action was being prepared and provided him with an early draft of the complaint together with supporting exhibits, prior to filing. Ms. Weaver also informed the Receiver that James Williams of Chehardy, Sherman & Williams would serve as lead counsel in the action. The Receiver reviewed those materials and was fully aware that they were being prepared. Contemporaneous correspondence reflecting the Receiver's prior knowledge and review is attached as **Exhibit A**.[6]

In any event, as the Court may readily determine from the face of the pleading, the Complaint asserts no derivative claims and seeks relief solely for harms suffered by Grant Sidney, Inc., Fawn Weaver, and Keith Weaver in their personal capacities. The Receiver does not contend otherwise. The existence or substance of that action has no bearing on whether transactions between Grant Sidney, Inc. and the Company constitute commingling under applicable law.

The foregoing context is provided to ensure the Court has a complete and accurate understanding of the procedural posture in which the Receiver's Notice was filed. The Additional Entities raise these issues to ensure adherence to the Court's orders and pleading requirements, and not to ascribe motive or intent to the Receiver.

The gatekeeping function of the Agreed Order was meant to operate similar to Rule 11's gatekeeping function, which ensures that claims are supported by evidence. From the outset of this

---

[6] The attachments to the correspondence have not been included, as they contain information that may be deemed confidential. The attachments are available, if necessary.

case, individuals and entities have been named or referenced without a factual or legal basis sufficient to justify their inclusion, only to have allegations later narrowed, abandoned, or left unarticulated altogether. Rather than proceeding by investigation leading to pleaded claims supported by evidence, relief has been requested supported only by implication and association as opposed to legally cognizable theories and known evidence.

Rule 11 imposes an objective standard of reasonableness and a continuing obligation on litigants and counsel to ensure that parties and positions maintained before the Court are grounded in fact and law. Under Sixth Circuit precedent, it is improper to name or maintain a defendant in the absence of a factual or legal predicate supporting liability, and that obligation persists as the case develops.[7] Like Rule 11, the process established by the Agreed Order was meant to provide a mechanism to ensure that the issues and argument were fully developed in a timely manner before seeking further relief from the Court.

A problematic pattern in this case began by the naming of Fawn Weaver and Keith Weaver as defendants in this action. Although both individuals remain listed as defendants in the caption, no claims have ever been asserted against either of them. Nearly six months have elapsed since the filing of the underlying action, during which time the Bank has had ample opportunity to assert any claims it believed existed. It has not done so. Maintaining the Weavers as defendants in the absence of any pleaded claim or theory of liability is precisely the circumstance Rule 11 is designed to prevent.

Nonetheless, the continued inclusion of the Weavers as defendants has operated as a predicate for overreach without any prior effort to determine facts. Farm Credit has treated the mere presence of the Weavers' names in the caption as conferring authority to control, or threaten

---

[7] *See Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 960–61 (6th Cir. 1990); *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 336 (6th Cir. 1988).

control, over every entity they own or are affiliated with, notwithstanding corporate separateness, the absence of pleaded claims, and the limits of the Receivership Order. The record before the Court, including the operative Complaint (Dkt. 1) and the docket in this action, confirms that no claims are pending against either Fawn Weaver or Keith Weaver, yet their continued presence in the caption has functioned as a de facto expansion mechanism untethered to the pleadings or any adjudication.

The procedural failure is further underscored by the undisputed timeline relating to Grant Sidney, Inc. All Grant Sidney bank statements from its inception were produced to the Receiver by November 5, 2025—more than two months ago. At no point between that production and the filing of the Receiver's Notice did the Receiver request that Ms. Weaver clarify or explain any transaction, notwithstanding that the Agreed Order expressly required such inquiries to be raised privately and in advance of any public filing.

Had that process been followed, Grant Sidney, Inc. and/or Ms. Weaver could have readily addressed in private what should not require a public hearing and what the Agreed Order was specifically designed to prevent -- public insinuation unsupported by pleaded claims or evidentiary inquiry. Every transaction between Grant Sidney, Inc. and Uncle Nearest, Inc. was undertaken solely for the benefit of Uncle Nearest and not for the benefit of Fawn Weaver or Grant Sidney, Inc. The Receiver's decision to bypass that process and proceed by public notice instead, further illustrates the concerns presented here.

Taken together, the Receiver's noncompliance with the Agreed Order, reliance on vague and unsupported allegations, failure to seek clarification despite having complete bank records for more than two months, and continued invocation of caption-only defendants underscore the need for strict adherence to the gatekeeping function of the Agreed Order, as well as of the Federal

Rules. Absent such adherence, further proceedings risk expanding the receivership by implication rather than by adjudication, imposing public and reputational harm on the Weavers and, by extension, on every entity they have founded or own, including Uncle Nearest, without any corresponding evidentiary showing. The Court should therefore enforce the Agreed Order as written and decline to permit further proceedings as to the Additional Entities.

If the Court determines that a hearing on the Motion to Clarify is necessary, the Additional Entities respectfully request that any such hearing be limited to Grant Sidney, Inc., Humble Baron, Inc., and Shelbyville Barrel House BBQ, LLC, with respect to the factual issues, albeit vaguely stated, as raised in the Receiver's Notice. Grant Sidney, Inc. further requests that any hearing related to it be scheduled on an expedited basis. Grant Sidney, Inc. is the single largest shareholder of Uncle Nearest, Inc., a plaintiff in the pending action against Michael Senzaki, and the only Additional Entity to which the Receiver has directed even generalized references to specific transactions.

Because the Receiver has identified only a small number of discrete transactions relating to Grant Sidney, Inc., an expedited and narrowly tailored hearing would not prejudice the Receiver and would promote efficient resolution. Grant Sidney, Inc. is prepared to address the transactions referenced by the Receiver promptly, subject to the Court's availability. Again, Grant Sidney, Inc. asserts that it should not be required to do so in light of the Receiver's non-compliance with the Agreed Order.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins  (TN BPR No. 16036)
S. Marc Buchman (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (629) 500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for the Additional Entities*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, a true and correct copy of the foregoing was served on all parties receiving electronic notice via the CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins

# EXHIBIT A

  Outlook

## Fw: Former CFO Admissions

**From** Fawn Weaver <​​​​​>
**Date** Thu 1/8/2026 12:04 PM
**To** Fawn Weaver <​​​​​>



Forwarded message
From: **Phillip Young** <​​​​​>
Date: Wed, Aug 27, 2025 at 7:34 PM
Subject: Re: Former CFO Admissions
To: Fawn Weaver <​​​​​>
Cc: Keith Weaver <​​​​​>

Yes, I'm fine with this. I appreciate you running it past me.



**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-

www.thompsonburton.com



*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

> On Aug 27, 2025, at 5:10 PM, Fawn Weaver <​​​​​> wrote:
>
> Phillip-

Case 4:25-cv-00038-CEA-CHS   Document 102   Filed 01/08/26   Page 11 of 14
PageID #: 2967

In the lawsuit against our former CFO, there are several points in his interview with Kroll that I believe will greatly bolster the statement of facts. I've made them more ambiguous than in the Kroll readout, as to not impact the third-party investigation, but this could be a great way to get this information on the record for those looking to invest in Uncle Nearest right now. There is still a cloud over us for investors, because we've still not gone on record against most of the bank's claims.

By including the below, potential investors will know these aren't just things our former CFO is being accused of, but rather things he's already admitted to. I wrote this in a way that would make it clear that we are including this with permission from Uncle Nearest.

Anyhow, I'd greatly appreciate if you'd consider allowing us to solely refer to these points and no other part of the Kroll readout (or even reference the readout at all):

**Admissions During Third-Party Investigation**

24A. In addition to the internal investigation referenced above, Uncle Nearest retained a third-party firm to conduct an independent investigation into Mr. Senzaki's misconduct. Although Uncle Nearest is not a party to this action and expressly reserves all rights to pursue its own claims against Mr. Senzaki in a separate proceeding, that decision reflects legal and strategic considerations regarding the appropriate structuring of related litigation. Uncle Nearest has, however, authorized the Plaintiffs to incorporate into this Complaint certain findings already developed in that investigation. During an interview conducted by the third-party investigators, Mr. Senzaki made a number of admissions consistent with the Plaintiffs' findings. Plaintiffs anticipate additional counts of fraud will be added upon conclusion of the investigation.

24B. Specifically, during his interview with the third-party investigators, Mr. Senzaki:

1. admitted to affixing Mrs. Weaver's signature on multiple corporate documents without her knowledge or consent;
2. acknowledged that he had diverted equity interests belonging to Mrs. Weaver for his personal benefit, and at times suggested he would have 'corrected' company records at some unspecified future date, despite the fact that several years had already passed since the fraudulent transactions began and remained concealed;
3. admitted that he executed unauthorized loans without the Weavers' knowledge or approval, and that corporate minutes purporting to evidence the Weavers' approval of such loans were fabricated;
4. acknowledged that he used misappropriated funds to purchase his personal residence in Las Vegas, acquire vehicles, and gamble;
5. admitted that beginning in approximately 2022, he falsified monthly financial reports submitted to Farm Credit, and that no one else was aware of this conduct; and

Fawn

_____

CEO           nc. | 3125 US-231 North | Shelbyville, TN 37160 | M:          | E:

{UNCLE NEAREST IS THE MOST AWARDED BOURBON OF 2019, 2020, 2021, 2022, 2023 AND 2024!}

 **Outlook**

## Fw: FW: Complaint

**From** Fawn Weaver <████████████>
**Date** Wed 1/7/2026 3:30 AM
**To** Fawn Weaver <████████████>

📎 3 attachments (8 MB)
Exhibit 9 Farm Credit Loan Details and Distribution.xlsx; Amendments.zip; Lawsuit   version 8.docx;

---------- Forwarded message ----------
**From: Fawn Weaver** <████████████>
Date: Tue, Sep 2, 2025 at 4:25 PM
Subject: FW: Complaint
To: Phillip Young <████████████>
Cc: Keith Weaver <████████████>

Phillip,

Please share this with Tim. Normally I'd Slack my communications to him, but I thought it might be simpler to forward this by email—so that you'll have a copy as well.

Over the weekend, I compiled a drawdown list and confirmed that our former CFO took 28 drawdowns from the revolver LOC in just 13 months—about one every other week. This volume, requested solely by him, is what leads me to believe the bankers were aware, as they never flagged such an inordinate pattern. I'm also certain these drawdowns were not properly reflected on any P&L or balance sheet he prepared.

You may also want to revisit the Complaint, particularly paragraphs 18–28, where I added further detail regarding the FCMA loan and attached the Amendments as exhibits. Note how the loan changes entirely between the original agreement and Amendment #3—the bank began burying the loan amount in an Annex rather than in the body of the document, as had been the case previously. Perhaps this is standard in your experience, but as I reviewed all of the exhibits on Saturday, it struck me as highly unusual—and possibly intentional.

Fawn

**From:** Fawn Weaver <██████████████████>
**Sent:** Sunday, August 31, 2025 12:33 AM
**To:** James Williams <██████████████████>
**Cc:** Keith Weaver <██████████████████>  James J. Carter <██████████████████>
**Subject:** Complaint

James—

After consulting with each of the lawyers connected to the case brought by the bank, as well as the receiver, I've gone line by line through this complaint to accomplish three things:

1. Make abundantly clear that Grant Sidney, Inc. is a company separate and apart from Uncle Nearest, Inc., and that Uncle Nearest is not a party to this complaint because bifurcation makes sense for strategic legal reasons
2. Revise every paragraph so it ties directly back to either Grant Sidney, Inc. or the Weavers, rather than to Uncle Nearest, so opposing counsel cannot argue the claims properly belong to Uncle Nearest but not to GSI or the Weavers.
3. Shift the focus from the bank as an institution to the individual bankers. This allows Uncle Nearest to preserve the option of a future lender liability case against the bank itself without tipping our hand. By placing the blame squarely on the bankers here, we protect that path forward.

I've also added nine exhibits that I believe are helpful in showing why the bankers should have cut off the spigot early in the relationship. As you'll see in Exhibit 9, our former CFO was taking multimillion dollar drawdowns at the pace of nearly one every two weeks — 28 drawdowns in a single year — and not once did the bank reach out to confirm that I had approved them. The sheer pace of those requests should have been a glaring red flag.

Keith is double checking one final detail: the number of warrants Senzaki gave away in connection with the loan amendment on which he forged my signature (#15 in the complaint). Otherwise, this complaint has been checked, rechecked, and triple checked, and is ready to go.

Thank you, and wishing you a wonderful Labor Day weekend.

—Fawn

Fawn Weaver | CEO & Co-Founder | **Uncle Nearest, Inc.** | 3125 US-231 North | Shelbyville, TN 37160 | C: ██████████ | **E:** ██████████████████

PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL

Case 4:25-cv-00038-CEA-CHS    Document 102    Filed 01/08/26    Page 14 of 14
PageID #: 2970