# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

## EMERGENCY MOTION TO RECONSIDER SCHEDULING ORDER AND CONTINUE HEARING ON MOTION TO CLARIFY AS TO THE NON-PARTIES (EXCLUDING GRANT SIDNEY, INC.) AND FOR RELATED RELIEF

Shelbyville Barrel House BBQ LLC, Humble Baron, Inc., Quill and Cask, LLC, Nashwood, Inc., Shelbyville Grand, LLC, and 4 Front Street LLC (collectively, the "Movants"), by and through their undersigned counsel, hereby move on an emergency basis for limited reconsideration of the *Order* entered January 23, 2026 (the "Scheduling Order")[1], for continuance of the hearing on the Motion to Clarify[2] as to the Movants, and to establish appropriate dates and briefing timelines regarding the same as to the Movants. In support hereof, the Movants assert and allege as follows:

## **INTRODUCTION**

1.      This Motion is made with the utmost deference to the Court's authority and solely to ensure that the Non-Parties, which include the Movants and Grant Sidney, Inc., have an adequate opportunity to be appraised of whatever factual allegations and evidence that the Receiver intends

---

[1] Dkt. 116.
[2] Dkt. 41.

to submit relating to the Non-Parties so that those parties can investigate those allegations and provide a full and complete response. The relief requested against these entities is an **extreme** form of relief given that there has been no allegation that any of these entities are in possession of property of the Receivership Estate. Because the relief sought is extraordinary, the Non-Parties respectfully submit that they should have a reasonable opportunity to prepare and be heard before such relief is considered.

2.     The Scheduling Order requires that the Receiver, Farm Credit and Non-Parties submit their witnesses and exhibits, and any argument, by February 2, 2026.  In other words, the Non-Parties are required to submit their witness and exhibit lists prior to even knowing the specific transactions or factual theories that the Receiver believes **may** support putting these seven Non-Parties into receivership. As a practical matter, the Non-Parties cannot reasonably determine what evidence or witnesses will be necessary if the Non-Parties are not provided any identification of the factual basis for the Motion to Clarify with respect to each of the Non-Parties.

3.     The Movants, who are not parties to the Motion to Reconsider, have no objection to the Receiver presenting whatever evidence he deems pertinent to the Motion to Reconsider that is also scheduled for hearing on February 9 – even any evidence that he thinks may indicate pre-Receivership commingling. To be clear, the Receiver has made no specific allegation identifying any transaction to date through which any property of the Defendants was funneled to the Non-Parties prior to the Receivership and the Non-Parties are confident that there will be no evidence in that regard.  However, the Non-Parties should not be forced into an expedited and abbreviated hearing to address placing these entities into receivership with limited ability to gather and submit evidence in preparation simply because the Receiver believes there could have been unspecified commingling and believes that information may be relevant to the Motion to Reconsider.

2

4.     The single day starting at 10 am ET (approximately six hours assuming a lunch break and 5 pm ending time) allotted for both the Motion to Reconsider, which itself implicates significant financial and operational issues that need to be addressed, and the Motion to Clarify, which seeks to place seven separate and distinct companies into receivership, creates significant practical constraints in light of the gravity of the relief requested and the amount of evidence that will be relevant to each matter. With respect to each of the seven Non-Parties, the evidence relevant to the question of whether each should be placed in receivership will need to be supported by evidence related to, among other things, (1) the history and corporate status of each entity, (2) the status and history of each entity's bank statements and adherence to corporate formalities for each separate entity, (3) the identification and explanation of each transaction that may be identified by the Receiver, (4) the relationship or lack thereof between each Non-Party and each Defendant, and (5) the applicable regulatory requirements that may be implicated by placing the Non-Party under the Receiver's control. Even if the examination and presentation of evidence for each of the seven Non-Parties could be completed in 45 minutes each (which would be extremely difficult), the time that it would take to proceed through seven companies, with at least two witnesses (assuming at least one for the Receiver and at least one for each Non-Party) to testify for each, would be more than 5 hours.  That would leave only approximately one hour (or less) to determine the fate of the Defendants with regard to the Motion to Reconsider.  As noted in prior pleadings, the question of granting or continuing the extreme remedy of receivership is a very complex issue that implicates corporate valuation, adequacy of collateral, cash flow, questions regarding Company management, corporate performance both before and after the start of the Receivership, and projections of future performance. The movants on the Motion to Reconsider will require, and deserve, an adequate opportunity to present evidence and make arguments, just as each of the seven Non-Parties deserve

an adequate opportunity to present evidence and make arguments in light of the extreme relief being requested.

5.       The Court should also be aware of the context of the *Agreed Order Staying Proceedings Related to Receiver's Motion for Clarification and Establishing Schedule Regarding Further Proceedings*,[3] which the Court analyzed in its Scheduling Order but was not apprised of the full context. After the Receiver filed his Motion to Clarify, the Non-Defendants engaged in good faith negotiations with the Receiver and agreed to a procedure for resolution of the issues relating to the Motion to Clarify. As shown by the email correspondence between the parties, which is detailed below and attached as **Exhibit A**, the parties agreed to a process under which the Receiver would identify specific transactions about which he had questions so that the Non-Parties could provide explanations or context prior to any hearing being requested. The Receiver has not requested additional information or explanation from the Non-Parties about any specific transactions in the bank records and has not otherwise indicated the specific basis for his unsupported conclusion that there has been "substantial commingling." The Non-Parties do not seek to relitigate the Court's interpretation of the Agreed Order but respectfully submit that this context explains why the Agreed Order was submitted as an **agreed** order and the context for this Motion.

6.       This Motion is filed solely with respect to the six Movants, excluding Grant Sidney, Inc.  With respect to Grant Sidney, Inc., the transactions that could potentially be at issue for the Receiver are discrete and are finite.  Consequently, Grant Sidney, Inc. does not seek to continue the hearing on the Motion to Clarify as it pertains specifically to Grant Sidney, Inc.

---

[3] Dkt. 79.

## BACKGROUND

7.      On July 28, 2025, Farm Credit Mid-America, PCA ("Farm Credit") filed its *Verified Complaint and Request for Appointment of Receiver* (the "Complaint")[4] naming Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, Fawn Weaver and Keith Weaver, as Defendants. The Complaint specifically named Fawn Weaver and Keith Weaver "in their official and individual capacities." The Complaint further defined all of the Defendants, including Fawn and Keith Weaver, as "Uncle Nearest."[5]

8.      On July 28, 2025, the Plaintiff filed *Plaintiff's Emergency Motion for the Immediate Appointment of Receiver*.[6] On August 3, 2025, the Defendants filed their *Defendants Response in Opposition to Plaintiff's Emergency Motion for the Immediate Appointment of Receiver*.[7]

9.      After a hearing, on August 14, 2025, the Court entered its *Memorandum Opinion and Order*[8] granting the Plaintiff's Motion and requiring each of the parties to submit their proposed receiver for the Court's consideration. After consideration of the submissions of the parties, the Court entered the *Order Appointing Receivership*[9] on September 25, 2025, which appointed Phillip Young as Receiver.

10.     On September 12, 2025, the Receiver filed his *Motion for Clarification of Receivership Order* (the "Motion to Clarify"),[10] which requests that the Court clarify the Receivership Order as to whether certain Non-Defendant entities should be placed under the control of the Receiver. The Receiver, however, provided no specific evidence to support

---

[4] Dkt. No. 1.
[5] *Id.* at 1.
[6] Dkt. No. 3.
[7] Dkt. No. 16.
[8] Dkt. No. 32.
[9] Dkt. No. 39.
[10] Dkt. No. 41.

expanding the receivership to include the Non-Defendants and expressly took no position as to whether any of the Non-Defendants should be placed under control of the Receiver.

11.     On September 25, 2025, Farm Credit filed its *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Statement"),[11] which included non-specific allegations of comingling of assets and which contradicted specific findings in that regard by the Receiver.

12.     On September 30, 2025, the Court entered its *Order* (the "September 30 Order")[12] which initially noted that none of the Defendants had objected to the Motion to Clarify. The Receiver has asserted, and the Couret has now held, that he controls the corporate Defendants and their counsel such that he would have had to be the one to direct the corporate Defendants to object to his own motion.  Accordingly, no objection was filed on behalf of the corporate Defendants.

13.     The September 30 Order further required the Receiver to serve notice of the Motion to Clarify and the September 30 Order on the identified Non-Defendants and that the Non-Defendants would have until October 21, 2025, to contest the Motion and the inclusion of the Non-Defendants in the Receivership.

14.     The September 30 Order further provided that "Plaintiff **SHALL** file all materials in its possession that it believes support expanding the receivership with the Court.  Plaintiff **SHALL** comply with the Court's Memorandum and Order Regarding Sealing Confidential Information [Doc. 9] when filing any materials it believes to be confidential."[13]

15.     Farm Credit has never filed any materials that support placing the Movants into receivership.

---

[11] Dkt. No. 44.
[12] Dkt. 45.
[13] *Id.* at 3.

16. On October 21, 2025, the Non-Defendants filed individual responses to the Motion to Clarify denying in all respects any commingling of assets or that it would be in any way appropriate to put the Non-Defendants under the control of a Receiver.

17. On October 26, 2025, the Non-Parties filed the *Non-Defendants' Request for a Hearing Relating to Receiver's Motion to Clarify and Statement Filed by Farm Credit Mid-America, PCA*.[14]

18. On October 27, 2025, the Receiver filed the *Receiver's Reply to Humble Baron, Inc. and Other Related Entities' Response to Motion for Clarification*,[15] in which the Receiver made clear that he took no position as to whether any of the Non-Parties should be part of the Receivership or be deemed assets of the Receivership.

19. On October 27, 2025, the Receiver emailed counsel for Farm Credit and the Non-Defendants stating as follows:

> I fear this Motion to Clarify has become a way bigger deal than I ever intended. As I explained initially, this was my motion to simply seek guidance from the Court about these other entities that "might" fit within the broad definition of "Receivership Entities" in the receivership order. I fear that it has spiraled into a "Weavers vs. Farm Credit" fight; that was never my intent with this motion. I was truly just trying to do what I thought the Court expected me to do. And I've been completely transparent about what we see and don't see in the Debtor's records, but even that transparency seems to be backfiring. Then last night I see that you've asked the Court for a hearing in Chattanooga and I simply don't think this issue necessitates all of that; I suspect that FCMA would agree.
>
> So let me propose a solution. What if we agree to just stay all of this in exchange for you providing me five years of bank records for any of the ten entities that have accounts (subject to a protective order that says only me, my counsel, and my financial advisors will have access to the records)? We will then take a look at the records. If, after looking at the records, we see no significant connections we will say so to the Court and withdraw the motion. If we think there has been significant co-mingling, we will let both you and Farm Credit know that we intend to notice up the motion for a hearing. Maybe that will save us all some time and money.

[14] Dkt. 74.
[15] Dkt. 75.

What do both parties say about that? I just don't want to waste time and money on a contested hearing that may be for absolute naught. If I can see the other side of the equation, we will quickly know whether there is something to argue about here or not.

Mike & Demetra, I would like both of your thoughts about this suggestion, that I hope you both find somewhat practical.[16]

20.     On October 28, 2025, counsel for Farm Credit responded as follows:

Phillip,

As we discussed yesterday, FCMA are agreeable assuming that all the parties enter into an Agreed Order and Stipulation providing:

1.     The Additional Parties will provide the bank statements by a certain date;

2.     The Receiver has a certain number of days to review the statements and will file a notice requesting a hearing or notifying that no hearing is needed on the Entity Clarification Motion;

3.     If an Entity Clarification Hearing is needed, all parties have 5 days before the hearing to submit supplemental papers; and

4.     If an Entity Clarification Hearing is needed, all parties submit and witness and exhibit list 3 days for the hearing.

Today is the deadline to reply to the Additional Entities response. So, if we can get an agreed order on file, we will hold off on that filing.[17]

21.     Further emails were exchanged on October 28, 2025, between counsel for the Receiver, Farm Credit and the Non-Parties addressing the availability of the requested bank statements and the timing of providing those, as reflected in **Exhibit A**.

22.     Later on October 28, 2025, counsel for the Non-Parties emailed counsel for the Receiver and counsel for Farm Credit as follows:

I think that works. On the order generally, if the Receiver decides he needs a hearing, then he should provide any and all additional evidence and argument supporting his position to the Non-Defendants with an opportunity of the Non-Defendants to respond prior to any notice of hearing being submitted. If responses of the Non-Defendants do not resolve the Receiver's need for a hearing, then he can file his notice. Thus, I think another week should be included between the end

---

[16] Ex. A, p. 7.
[17] Ex. A, p. 5-6.

of the two-week review period and the date by which the Receiver will notify regarding the need (or not) for the hearing. Obviously, the Receiver can bring up any issues with the Non-Defendants as they arise – I just want to make sure there is sufficient time for the Non-Defendants to respond.

I am fine with supplemental papers being filed five days prior to the hearing so long as those materials don't include evidence or arguments not previously disclosed by the Receiver or Farm Credit.[18]

23.     Later on October 28, 2025, Farm Credit's counsel responded "Okay with FCMA. Justin, can you prepare the order so we can get it submitted today?"[19]  Counsel for the Receiver then responded "Working on the draft now. Should have it ready to circulate shortly."[20] At no point did either Farm Credit or the Receiver disagree, and the proposed agreed order provided for that process as outlined by counsel for the Non-Parties.

24.     The proposed agreed order was drafted by counsel for the Receiver with edits provided by both counsel for Farm Credit and counsel for the Non-Parties.  The proposed agreed order was filed with the Court and entered by the Court.[21]  In addition to entering the Agreed Order, the Court entered a companion Order (the "Companion Order")[22] that required the Receiver to report monthly to the Court as to the status of the document requests.

25.     The Agreed Order included the provisions that were intended to reflect the process agreed to by the parties under which the Receiver would be required to provide his evidence and arguments to the Non-Parties, giving those entities a week to respond prior to seeking any court hearing if the Receiver intended to proceed with a hearing.

26.     The Agreed Order also included time frames for compliance that were intended to reflect the agreed process, which, as applied to the circumstances, required the Receiver to

---

[18] Ex. A, p. 2.
[19] Ex. A, p. 1.
[20] Ex. A, p. 1.
[21] Dkt. 79.
[22] Dkt. 78.

complete his review of the bank statements and provide to the Non-Parties "any additional questions, evidence and/or argument regarding the Motion to Clarify . . . ." on or before December 15, 2026.

27.     Having provided all of the requested bank statements by December 1, 2026, as required by the Agreed Order, and having received nothing from the Receiver regarding the matter since that time, on January 2, 2026, counsel for the Non-Parties emailed the Receiver and his counsel as follows:

> Phillip – I hope you have a nice holiday.  With regard to the additional entities, the additional bank statements were provided to you on December 1, 2025.  Pursuant to the Agreed Order, you were to provide additional questions/evidence/argument within 14 days after the receipt of the additional statements.  My expectation is that you have decided not to pursue pulling these additional entities into the receivership.  Please confirm asap, as everyday that this lingers, these additional entities are being economically impacted.[23]

Neither the Receiver nor his counsel provided any response to the January 2, 2026 email.

28.     On January 6, 2026, after the Receiver had failed to file the monthly report required by the Companion Order, the Court issued an *Order to Show Cause* (the "Show Cause Order")[24] requiring that the Receiver show cause as to why he did not file the monthly report.

29.     On January 6, 2026, the Non-Defendants filed the *Additional Entities' Notice of No Further Requests or Reply by Receiver and Request for Entry of Order Relating to Motion to Clarify* (the "January 6 Notice").[25]

30.     On January 7, 2026, in response to the Show Cause Order, the Receiver filed the *Receiver's Notice of Request for Hearing on Motion for Clarification of Receivership Order*,[26]  in

---

[23] Ex. B.
[24] Dkt. 94.
[25] Dkt. 95.
[26] Dkt. 98.

which he provided no specific evidence of commingling that would support an alter ego determination or otherwise placing the Non-Defendants in receivership.

31.     On January 8, 2026, the Non-Parties filed the *Additional Entities' Response to Receiver's Notice of Request for Hearing on Motion for Clarification of Receivership Order*,[27] in which the Non-Parties referenced the applicable provisions of the Agreed Order. The Non-Parties did not attach the email correspondence between the parties relating to the Agreed Order because the Non-Parties believed the provisions of the Agreed Order to be clear in terms of the agreed process and the requirements imposed on the Receiver.

32.     On January 12, 2026, the Court entered the *Order*[28] accepting the Receiver's explanation for failing to timely file the report relating to the Motion to Clarify.

33.     On January 23, 2026 and without the benefit of the context of the parties' discussions that is set forth in the contemporaneous email correspondence, the Court entered the Scheduling Order in which it determined that the terms of the Agreed Order did not require the Receiver to provide his evidence and argument to the Non-Parties in advance of seeking a hearing on the Motion to Clarify.

<u>ARGUMENT</u>

34.     The Movants can't compel the Receiver to do what he agreed to do but asks the Court to at least allow these Movants basic due process in this proceeding by being appraised of the evidence that the Receiver intends to submit to support his request to place these Non-Defendants in receivership and have an opportunity to adequately investigate and address that evidence and those claims.

---

[27] Dkt. 102.
[28] Dkt. 103.

35.     The Scheduling Order, as it stands, requires the Movants to submit their list of witnesses, list of exhibits and supplemental briefing before the Movants even know the factual basis on which the Receiver believes these entities should be placed into receivership.

36.     The Sixth Circuit has unequivocally stated that where deprivation of a property interest is in question, even in a receivership, the parties with an interest in the property are entitled to due process.[29] "The amount of process required, however, depends, in part, on the importance of the interests at stake."[30]   In this case, the interests at stake are highly important because the Receiver seeks to divest these Non-Parties, and their respective shareholders, control over their assets, which will have significant consequences to the enterprise value of the entities.  As noted above,  "receivership is an extraordinary remedy to be employed only in cases of clear necessity to protect plaintiff's interests in the property involved . . . [and] [a]s a drastic remedy, a receivership must be implemented only when no less intrusive relief will be effective."[31]

37.     Due process in this context requires the Court to "balance the strength of the private interest, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, the probable value of additional or substitute safeguards, and the government interest, 'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requisites would entail.'"[32] In this case, the strength of the private interest involved is extremely high, as placing the assets of these companies under the Receiver's control, even though they hold no identified receivership assets, is a most extreme form of pre-judgment relief relating

---

[29] *Liberte Capital Group v. Capwell*, 421 F.3d 377, 383 (6th Cir. 2005).
[30] *Id.*
[31] *Coyne v. Atha*, 1983 U.S. App. LEXIS 12237, *2 (6th Cir. 1983); *see also Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020).
[32] *Liberte Capital Group*, 421 F.3d at 383.

to a property interest. The Receiver has yet to identify any asset of the Receivership that is in possession of any of the Non-Parties.

38. The risk of erroneous deprivation is also extremely high. As noted, there has been no allegation that any of these entities hold assets that are property of the Receivership. The only basis asserted for placing these entities in receivership consists of the Receiver's vague assertions of alleged commingling, without providing any specifics or evidence regarding the same. The Receiver has not even made a facial showing that he has any evidence that would support an alter ego judgment with respect to any of these entities.

39. As to whether the procedural safeguard of a continued hearing and briefing process will be of significant value, those additional safeguards will ensure that the Non-Parties have an opportunity to see what evidence the Receiver intends to submit and to prepare a meaningful response so that a full and complete record can be made prior to a decision being rendered with respect to each of the six separate and distinct companies that are the Movants here.

40. Finally, the Receiver's interest is not critical. The Receiver's initial foray into this matter was his Motion to Clarify, in which he expressly took no position as to whether any of the Non-Parties should be under his control. In fact, after filing the Motion to Clarify, he then filed a further Reply[33] that was intended to make absolutely clear that he was not taking any position as to whether any of the Non-Parties should be put into receivership. He further sent an email to counsel for the Non-Parties and counsel for Farm Credit on October 27, 2025, which is attached as **Exhibit A**, which stated that his Motion to Clarify was filed to "simply seek guidance from the Court about these other entities that 'might' fit within the broad definition of 'Receivership Entities.'" After receiving the complete set of bank statements for each and every Non-Party by

---

[33] Dkt. 75.

December 1, 2025, the Receiver did not request additional transaction-specific clarification and took no action to seek a hearing until January 8, 2026, in response to the Court's Show Cause Order. Even there, he did not seek an expedited hearing and has made no indication that there is any need for an emergency hearing. To the extent that the Receiver believes that evidence of alleged commingling is relevant to the Motion to Reconsider, the Receiver can present that evidence. However, the Movants assert that any pre-Receivership transactions between these entities do not bear directly on whether the Receivership should continue, especially where the Receiver has not alleged that any of the Non-Parties hold assets of the Receivership Estate.

41.     In sum, the due process rights of the Movants as they pertain to the extreme relief of receivership should not be limited simply because it would be convenient in order to hear the Motion to Clarify on an expedited basis in conjunction with the hearing scheduled on the Motion to Reconsider.

42.     Further, the Movants assert that the Court should reconsider the Scheduling Order and grant the requested continuance in light of the contemporaneous email correspondence, which reflects the process discussed between the Receiver, Farm Credit and the Non-Parties that led to the Agreed Order, including the expectation that the Receiver would identify transaction-specific questions prior to any hearing being requested. The Movants do not seek to relitigate the Court's interpretation of the Agreed Order but submit that this factual context supports a limited continuance to allow for orderly preparation.

WHEREFORE, the Movants respectfully request that the Court reconsider the Scheduling Order, grant a continuance of the hearing on the Motion to Clarify as it pertains to the Movants (excluding Grant Sidney, Inc.), establish appropriate dates and briefing timelines for resolution of the Motion to Clarify with respect to each of the six Movants, and grant such other relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins  (TN BPR No. 16036)
S. Marc Buchman (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (629) 500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Movants*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

*/s/ Michael E. Collins*

Michael E. Collins

# EXHIBIT A

**Michael Collins**

| | |
|---|---|
| **From:** | Justin Campbell <justin@thompsonburton.com> |
| **Sent:** | Tuesday, October 28, 2025 3:01 PM |
| **To:** | Liggins, Demetra |
| **Cc:** | Michael Collins; Phillip Young; Shipley, Alexandra |
| **Subject:** | Re: UN Motion to Clarify |

Working on the draft now. Should have it ready to circulate shortly.

**Thompson Burton PLLC**
*Redefining the Art of Law.*

_____

Justin Campbell
Phone: (615) 465-6015
1801 West End Avenue, Suite 1550
Nashville, TN 37203
E-mail: justin@thompsonburton.com
Website: www.thompsonburton.com

**Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

On Tue, Oct 28, 2025 at 3:00 PM Liggins, Demetra <DLiggins@mcguirewoods.com> wrote:

> Okay with FCMA.
>
> Justin, can you prepare the order so we can get it submitted today?
>
> Thanks,
>
> Demetra
>
> **Demetra Liggins**
> Partner
> McGuireWoods LLP
> T:  +1 713 353 6661 | M: +1 713 416 9699
> dliggins@mcguirewoods.com

**From:** Michael Collins <mcollins@manierherod.com>
**Sent:** Tuesday, October 28, 2025 2:57 PM
**To:** Justin Campbell <justin@thompsonburton.com>
**Cc:** Phillip Young <phillip@thompsonburton.com>; Liggins, Demetra <DLiggins@mcguirewoods.com>; Shipley, Alexandra <AShipley@mcguirewoods.com>
**Subject:** RE: UN Motion to Clarify

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

I think that works.  On the order generally, if the Receiver decides he needs a hearing, then he should provide any and all additional evidence and argument supporting his position to the Non-Defendants with an opportunity of the Non-Defendants to respond prior to any notice of hearing being submitted.  If responses of the Non-Defendants do not resolve the Receiver's need for a hearing, then he can file his notice.  Thus, I think another week should be included between the end of the two-week review period and the date by which the Receiver will notify regarding the need (or not) for the hearing.  Obviously, the Receiver can bring up any issues with the Non-Defendants as they arise – I just want to make sure there is sufficient time for the Non-Defendants to respond.

I am fine with supplemental papers being filed five days prior to the hearing so long as those materials don't include evidence or arguments not previously disclosed by the Receiver or Farm Credit.

Michael E. Collins

Manier & Herod, P.C.

1201 Demonbreun Street

Suite 900

Nashville, TN  37203

(615) 429-2145

THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY RETURN IT TO THE SENDER. UNINTENDED TRANSMISSION SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT OR ANY OTHER PRIVILEGE.

**From:** Justin Campbell <justin@thompsonburton.com>
**Sent:** Tuesday, October 28, 2025 2:34 PM
**To:** Michael Collins <mcollins@manierherod.com>
**Cc:** Phillip Young <phillip@thompsonburton.com>; Liggins, Demetra <DLiggins@mcguirewoods.com>; Shipley, Alexandra <AShipley@mcguirewoods.com>
**Subject:** Re: UN Motion to Clarify

Mike,

How about we do this? Provide the records from the past two years within the week (as contemplated above); then, the Receiver has the right to request additional records beyond that two-year period if necessary.

Does that work for you?

**Thompson Burton PLLC**

*Redefining the Art of Law.*

_____

Justin Campbell

Phone: (615) 465-6015

1801 West End Avenue, Suite 1550

Nashville, TN 37203

E-mail: justin@thompsonburton.com

Website: www.thompsonburton.com

\*\*Please refer to our [email disclaimer page](#) for important disclosures regarding this electronic communication.

On Tue, Oct 28, 2025 at 2:00 PM Michael Collins <[mcollins@manierherod.com](mailto:mcollins@manierherod.com)> wrote:

I am checking on whether the statements for all of these entities are readily available. I believe that most banks will provide historical statements for 24 months without much issue, but going further back than that may require bank archive request. Are you wanting five years of statements for each entity?

Michael E. Collins

Manier & Herod, P.C.

1201 Demonbreun Street

Suite 900

Nashville, TN 37203

(615) 429-2145

THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY RETURN IT TO THE SENDER. UNINTENDED TRANSMISSION SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT OR ANY OTHER PRIVILEGE.

**From:** Phillip Young <[phillip@thompsonburton.com](mailto:phillip@thompsonburton.com)>
**Sent:** Tuesday, October 28, 2025 1:43 PM
**To:** Liggins, Demetra <[DLiggins@mcguirewoods.com](mailto:DLiggins@mcguirewoods.com)>
**Cc:** Justin Campbell <[justin@thompsonburton.com](mailto:justin@thompsonburton.com)>; Michael Collins <[mcollins@manierherod.com](mailto:mcollins@manierherod.com)>; Shipley, Alexandra <[AShipley@mcguirewoods.com](mailto:AShipley@mcguirewoods.com)>
**Subject:** Re: UN Motion to Clarify

These are all fine with me.  I would suggest at least a week to provide bank statements and at least two to review and file a notice regarding whether any hearing is needed.

**Thompson Burton PLLC**

*Redefining the Art of Law.*

_____

**Phillip Young**

One Franklin Park

6100 Tower Circle, Suite 200

Franklin, TN 37067

Direct Dial: (615) 465-6008

phillip@thompsonburton.com

www.thompsonburton.com



*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

On Oct 28, 2025, at 1:40 PM, Liggins, Demetra <DLiggins@mcguirewoods.com> wrote:

Phllip,

As we discussed yesterday, FCMA are agreeable assuming that all the parties enter into an Agreed Order and Stipulation providing:

1. The Additional Parties will provide the bank statements by a certain date;
2. The Receiver has a certain number of days to review the statements and will file a notice requesting a hearing or notifying that no hearing is needed on the Entity Clarification Motion;
3. If an Entity Clarification Hearing is needed, all parties have 5 days before the hearing to submit supplemental papers; and
4. If an Entity Clarification Hearing is needed, all parties submit and witness and exhibit list 3 days for the hearing.

Today is the deadline to reply to the Additional Entities response.  So, if we can get an agreed order on file, we will hold off on that filing.

I'm in the office if you want to discuss.

Thanks,

Demetra

**Demetra Liggins**
Partner
McGuireWoods LLP
T:  +1 713 353 6661 | M: +1 713 416 9699
dliggins@mcguirewoods.com

**From:** Phillip Young <phillip@thompsonburton.com>
**Sent:** Monday, October 27, 2025 1:06 PM
**To:** Michael Collins <mcollins@manierherod.com>
**Cc:** Justin Campbell <justin@thompsonburton.com>; Liggins, Demetra <DLiggins@mcguirewoods.com>
**Subject:** UN Motion to Clarify

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Mike -

I fear this Motion to Clarify has become a way bigger deal than I ever intended. As I explained initially, this was my motion to simply seek guidance from the Court about these other entities that "might" fit within the broad definition of "Receivership Entities" in the receivership order. I fear that it has spiraled into a "Weavers vs. Farm Credit" fight; that was never my intent with this motion. I was truly just trying to do what I thought the Court expected me to do. And I've been completely transparent about what we see and don't see in the Debtor's records, but even that transparency seems to be backfiring. Then last night I see that you've asked the Court for a hearing in Chattanooga and I simply don't think this issue necessitates all of that; I suspect that FCMA would agree.

So let me propose a solution. What if we agree to just stay all of this in exchange for you providing me five years of bank records for any of the ten entities that have accounts (subject to a protective order that says only me, my counsel, and my financial advisors will have access to the records)? We will then take a look at the records. If, after looking at the records, we see no significant connections we will say so to the Court and withdraw the motion. If we think there has been significant co-mingling, we will let both you and Farm Credit know that we intend to notice up the motion for a hearing. Maybe that will save us all some time and money.

What do both parties say about that? I just don't want to waste time and money on a contested hearing that may be for absolute naught. If I can see the other side of the equation, we will quickly know whether there is something to argue about here or not.

Mike & Demetra, I would like both of your thoughts about this suggestion, that I hope you both find somewhat practical.

**Thompson Burton PLLC**

*Redefining the Art of Law.*

_____

**Phillip Young**

One Franklin Park

6100 Tower Circle, Suite 200

Franklin, TN 37067

Direct Dial: (615) 465-6008

phillip@thompsonburton.com

www.thompsonburton.com



*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

# EXHIBIT B

**Michael Collins**

| | |
|---|---|
| **From:** | Michael Collins |
| **Sent:** | Friday, January 2, 2026 3:07 PM |
| **To:** | Phillip Young (phillip@thompsonburton.com) |
| **Cc:** | Justin Campbell |
| **Subject:** | Uncle Nearest - Additional Entities |
| | |
| **Importance:** | High |

Phillip – I hope you have a nice holiday.  With regard to the additional entities, the additional bank statements were provided to you on December 1, 2025.  Pursuant to the Agreed Order, you were to provide additional questions/evidence/argument within 14 days after the receipt of the additional statements.  My expectation is that you have decided not to pursue pulling these additional entities into the receivership.  Please confirm asap, as everyday that this lingers, these additional entities are being economically impacted.

Thanks,

Mike

Michael E. Collins
Manier & Herod, P.C.
1201 Demonbreun Street
Suite 900
Nashville, TN  37203
(615) 429-2145

THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY RETURN IT TO THE SENDER. UNINTENDED TRANSMISSION SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT OR ANY OTHER PRIVILEGE.