IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNCLE NEAREST, INC., NEAREST | ) | Case No. 4:25-cv-38 |
| GREEN DISTILLERY, INC., UNCLE | ) | |
| NEAREST REAL ESTATE HOLDINGS, | ) | Judge Atchley |
| LLC, FAWN WEAVER and KEITH | ) | |
| WEAVER, | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BRIAN KLATT IN SUPPORT OF RESPONSE OF FARM CREDIT MID-AMERICA, PCA TO MOTION TO RECONSIDER THE MEMORANDUM OPINION AND ORDER AND ORDER APPOINTING RECEIVER AND TO STAY ACCESS TO PROPRIETARY INFORMATION**

I, Brian Klatt, pursuant to 28 U.S.C. § 1746, do hereby swear and affirm under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am over 18 years of age and competent to testify in this matter. Based on my personal knowledge I would, if called to testify about the matters set forth herein, be able to do so.

2. I am a Managing Director Food and Agribusiness for Farm Credit Mid-America, PCA (the "Lender" or "Farm Credit").[1]

3. In the regular performance of my job functions, I am familiar with the business records maintained by Farm Credit, which include the Loan Documents and documents and data

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Order Appointing Receiver* [Dkt. No. 39] (the "Receivership Order"), the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion"), or the *Response of Farm Credit Mid-America, PCA to Motion to Reconsider the Memorandum Opinion and Order and Order Appointing Receiver and to Stay Access to Proprietary Information in Support of Motion for Clarification of Receivership Order* [Dkt. No. 91] (the "FCMA Receivership Reconsideration Response").

delivered to Farm Credit or created by Farm Credit in connection therewith. These records are made at or near the time by, or from information provided by, persons with knowledge of the activities and transactions reflected in such records and are made and kept in the course of business activity regularly conducted by Farm Credit. In connection with making this declaration, I have personally examined the Loan Documents, information provided to Farm Credit in connection with the Loan Documents, and any internal records or data relating to the Loans referenced in this declaration.

4. Further in the regular performance of my job functions, I am familiar with the process Farm Credit undertakes to review and approve the budgets proposed by the Receiver as required under the Loan Documents for use of the Receivership Line of Credit Loan proceeds as more particularly described below.

5. Uncle Nearest, Inc. ("Uncle Nearest, Inc."), Nearest Green Distillery, Inc. (the "Distillery"), Uncle Nearest Real Estate Holdings, LLC ("RE Holdings") (collectively, the "Company") and Fawn Weaver and Keith Weaver (in their official and individual capacities) (the "Weavers" and together with the Company, the "Defendants", or "Uncle Nearest") remain obligated to Farm Credit.

### A. Uncle Nearest Cannot Satisfy its Debt to Farm Credit

6. During this Receivership, Uncle Nearest has made no payments on its outstanding obligations to Farm Credit. In fact, Uncle Nearest's last payment of $7,500,000.00 to Farm Credit was on April 15, 2025, in connection with the execution of the Forbearance Agreement. As of February 2, 2026, the outstanding obligations total at least $120,850,721.16, which are projected to increase to at least $121,048,266.54 by February 9, 2026 (excluding any increase due to additional professional fees and expenses):

**UNCLE NEAREST OUTSTANDING AMOUNTS AS OF FEBRUARY 2, 2026[2]**

| Debt Instrument | Principal | Interest as of 1/31/2025 | Forbearance Fee | Professional Fees and Expenses [1] | Total Legal Obligations |
|---|---|---|---|---|---|
| The Revolving Loan [2] | $ 65,224,031.96 | $ 7,450,966.96 | $ - | $ - | $ 72,674,998.92 |
| The RELOC Loan [3] | 15,000,000.00 | 1,405,553.46 | 700,000.00 | 2,801,008.43 | 19,906,561.89 |
| The Term Loan [3] | 22,045,150.88 | 2,319,833.17 | - | - | 24,364,984.05 |
| The Receivership Line of Credit Loan [3] | 3,800,000.00 | 104,176.30 | - | - | 3,904,176.30 |
| Total | $106,069,182.84 | $ 11,280,529.89 | $ 700,000.00 | $ 2,801,008.43 | $120,850,721.16 |

[1] Billed and unpaid FCMA professional fees and expenses
[2] Maturity Date 7/22/2025
[3] Maturity Date 7/22/2027

7. Per diem interest on each Loan also continues to accrue at the following rates: $17,869.60 on the Revolving Loan, $3,801.37 on the RELOC Loan, $5,586.79 on the Term Loan, and $963.014 on the Receivership Line of Credit Loan.

8. The Company's recent cash flow reports show that Uncle Nearest has no ability to pay the outstanding and increasing obligations to Farm Credit without a refinancing or sale transaction.

9. I understand the Receiver and his advisors are conducting a marketing process for refinancing and/or sale transactions. Though Farm Credit is neither directing this process nor involved in communications with potential interested parties, Farm Credit is generally familiar with the indications of interest (the "IOIs").

10. To date, the IOIs submitted do not demonstrate that a transaction can be

---

[2] A true and correct copy of a billing statement provided to Uncle Nearest as of January 31, 2026, is attached as **Exhibit 22**. A true and correct copy of a payoff letter as of February 2, 2026, for the Loans are attached as (i) **Exhibit 23** (Revolving Loan), (ii) **Exhibit 24** (RELOC Loan), (iii) **Exhibit 25** (Receivership Credit Line), and (iv) **Exhibit 26** (Term Loan).

consummated that would generate enough proceeds to satisfy Uncle Nearest's outstanding obligations to Farm Credit.

> B. **The Receivership Budget Approval Process is Efficient and Provides Transparency**

11. Because Uncle Nearest was not generating enough cash to satisfy material pre-existing liabilities, ongoing operating expenses, and expenses of the receivership, the Receiver requested additional financing. Last fall, the Receiver, on behalf of Uncle Nearest, and Farm Credit executed Amendment No. 9 to Credit Agreement dated September 10, 2025, and Amendment No. 10 to Credit Agreement dated November 19, 2025, to provide additional receivership funding.[3] Pursuant to these amendments, Farm Credit agreed to loan to Uncle Nearest up to an additional $3,800,000 (the "Receivership Credit Line").[4]

12. As a condition to Farm Credit's funding of the Receivership Credit Line, the Receiver must comply with budgeting and bi-weekly financial reporting requirements typical in a financially distressed situation. The cash flow budget approval process was structured to ensure timely approval of changing cash needs and were always timely approved by Farm Credit. Pursuant to the Credit Agreement, the Receiver submits a 13-week cash flow budget detailing the Company's projected cash flows and uses (the "Proposed Cash Flow Budget"). By no later than the tenth week of the then operative Cash Flow Budget, the Receiver submits a revised budget for the 13-week period immediately following the date on which the then-applicable Cash Flow Budget ends. Farm Credit has five Business Days from the date of receipt to approve any Proposed Cash Flow Budget.

---

[3] True and correct copies of the Amendments Nos. 9 and 10 are attached as **Exhibit 27** and **Exhibit 28** hereto. For ease of reference for the Court, a changed pages only redline of the Credit Agreement as amended by Amendments Nos. 9 and 10 against the Credit Agreement prior to the execution of Amendments Nos. 9 and 10 is attached as **Exhibit 29**.
[4] Dkt. No. 39 ¶¶ 9-10.

4

13. Farm Credit accommodated exigent funding requests outside the Cash Flow Budget. Amendment No. 10 was executed in part due to a request from the Receiver for additional funding to satisfy obligations of the warehouser in order to release inventory to continue selling product. In Amendment No. 10, Farm Credit agreed to make advances to satisfy "Warehouser Demanded Amounts" up to an aggregate cap of $1,100,000 even if not then reflected in the Cash Flow Budget.

14. Prior to the Receivership, there was little to no transparency for Farm Credit as to Uncle Nearest's true financial state, including collections, operating disbursements and non-operating disbursements. The Receiver's compliance with the budget and reporting requirements now provides transparency into Uncle Nearest's financial state and has introduced a necessary level of discipline guiding Uncle Nearest through its current period of financial distress.

### C. Barrel Count Reconciliation Confirmed Insufficient Eligible Inventory and Overstatement of Collateral, Which Occurred as Early as 2023

15. Uncle Nearest's inclusion in its certified calculations of the Borrowing Base to Farm Credit of barrels that Uncle Nearest did not own free and clear (whether they were barrels it agreed to purchase in the future or owned at one time but had sold) violated the Credit Agreement and permitted Uncle Nearest to borrow approximately $24 million more than it should have been able to borrow under the Credit Agreement.

16. Under the Credit Agreement, the maximum amount Uncle Nearest can borrow on the revolving line is determined by starting with the total Revolving Credit Commitments of $67,000,000 and then subtracting two items: the required reserves and the "Borrowing Base." The Borrowing Base is a collateral-based formula. It equals 75% of the value of eligible customer receivables ("Eligible Accounts"), plus 70% of the value of "Eligible Inventory" made up of barreled whiskey, finished goods in the form of bottled whiskey, or grain, and then reduced by

5

specified availability reserves. In short, the borrowing limit is the $67,000,000 commitment minus reserves and minus the Borrowing Base (as defined above).

17. The Credit Agreement explicitly excludes from the definition of Eligible Inventory "Inventory that is not owned by a Borrower free of any title defect or any Liens or interests of others" other than certain permitted liens not relevant to this issue.[5]

18. The borrowing base structure is the central feature of an asset-based loan like the Revolving Loan, which ensures credit exposure stays dynamically aligned with realizable collateral value. The representations and warranties that Uncle Nearest purported to make in each Borrowing Base Certificate were that the assets included in the calculation of the Borrowing Bases were bona fide, collectible, and undisputed. This structure was designed to protect Farm Credit from loaning money to Uncle Nearest without adequate collateral to secure the amount it loaned—the precise situation that happened here.

19. The discrepancy between Uncle Nearest's barrel inventory began at least as early as 2023. For example, in February 2024, Uncle Nearest provided a report to Farm Credit allegedly reflecting the barrel inventory stored at Tennessee Distilling Group, LLC ("TDG") as of December 31, 2023[6] This report stated that as of December 31, 2023, Uncle Nearest had stored at TDG (i) 22,324 new-fill barrels (i.e., barrels that TDG filled and transferred to UN),[7] and (ii) 86,798 total barrels.[8] The report showed that TDG had filled new barrels in each month from January through December 2023.

20. However, Farm Credit also obtained from TDG inventory reports (the "TDG

---

[5] Receivership Hr'g Pl.'s Ex. 2, Credit Agreement Date July 22, 2022, at 11 (Section 1.1 (Defined Terms)).
[6] A true and correct copy of Uncle Nearest's December 31, 2023, Inventory Report is attached as **Exhibit 30** (highlighting and annotations have been added for ease of reference).
[7] *See* Exhibit 30 (the sum of "TDG Barrels 2023 Janaury [*sic*] through "TDG Barrels 2023 Dec" is 22,324).
[8] *See id.* (the sum of all "Tennessee Distilling Group" barrels and "Customer Procured" barrels is 86,798).

Reports") for the period, which showed Uncle Nearest had thousands fewer barrels than it represented.[9] The TDG Reports showed that, as of December 31, 2023, Uncle Nearest had at TDG (i) 14,054 new-fill barrels,[10] and (ii) 63,254 total barrels.[11] The TDG Reports also showed TDG had not filled any new barrels since September 2023. In sum, the TDG Reports from the **end of 2023** reflected a *__shortfall__ __of (i) 8,270 new-fill barrels, and (ii) 23,544 total barrels__*.

21. In his Second Quarterly Report, the Receiver clarified that his reconciliation showed that the barrels were indeed overinflated by more than 20,000 barrels, indicating that Uncle Nearest did not maintain sufficient Eligible Inventory to borrow the $65,224,031.96, despite its representation that it did. Farm Credit's realizable Collateral value is presently at least 20,000 barrels less than Uncle Nearest represented it was.

      **D.**    **The Weavers have personal obligations to Farm Credit.**

22. Under the Loan Documents, the Weavers have obligations to Farm Credit and personally granted security interests to Farm Credit to secure those obligations. As additional Collateral to secure Uncle Nearest's obligations under the Loan Documents, (i) the Weavers executed a Deed of Trust dated July 22, 2022, granting a security interest to Farm Credit in the Dan Call Farm, and (ii) Keith Weaver executed a Deed of Trust on June 6, 2023, granting a security interest to Farm Credit in the Eady Road Property.[12]

23. Additionally, both the Weavers executed the Forbearance Agreement as "Credit Support Parties".[13] In the Forbearance Agreement, among other things, the Weavers

---

[9] A true and correct copy of TDG's December 31, 2023, End of Month Inventory Report, is attached as **Exhibit 31** (highlighting and annotations have been added for ease of reference). A true and correct copy of TDG's December 31, 2023, Distilled Barrel Inventory Report is attached as **Exhibit 32** (highlighting and annotations have been added for ease of reference).
[10] *See* Exhibit 31 at 1 (the sum of "TDG Distilled 2023 Barrels-(80/10/10)" and "TDG Distilled 2023 Barrels-(84/8/8)" is 14,054); Exhibit 31 at 1 (showing "Total Made 2023" was 14,054).
[11] *See* Exhibit 32 at 13 (the sum of all "TDG Tennessee Whiskey" barrels and all "UN Project-Silver" barrels).
[12] *See* Receivership Hr'g Pl.'s Exs. 17 and 18.
[13] *See* Receivership Hr'g Pl.'s Ex. 10.

7

acknowledged:

    (i) that certain Events of Default under the Credit Agreement (enumerated in detail in the Forbearance Agreement and prior pleadings in this case) had occurred;

    (ii) those Events of Default were continuing;

    (iii) that as a result of those Events of Default, Farm Credit was not required to make any Loans available to Uncle Nearest and, upon the termination of the Forbearance Period, Farm Credit had the right to exercise any and all other rights and remedies available to Farm Credit under the Loan Documents and applicable Law;

    (iv) that the aggregate principal balance at the time was at least $102,278,192.84 and that all obligations under the Loan Documents were unconditionally owing by the Loan Parties;

    (v) that Farm Credit had, and shall continue to have, valid, enforceable and perfected, first priority (or second priority with respect to the Dan Call Farm due to Farm Credit Mid-America, FLCA's first priority security interest), security interests in the Collateral, including the Dan Call Farm and the Eady Road Property;

    (vi) that each of the Loan Documents to which they were party were duly executed and in full force and effect;

    (vii) the Weavers' agreements in and obligations under the Loan Documents and the Forbearance Agreement were legal, valid and binding obligations, enforceable against them in accordance with their terms and they had no valid defense to the enforcement of such agreements or obligations; and

    (viii) Farm Credit was entitled to, and shall be entitled to, the rights, remedies and benefits provided for it in the Loan Documents and under applicable Law.[14]

24. Termination of the Receivership would not cure Uncle Nearest's underlying defaults. Farm Credit would be entitled to exercise its rights and remedies, including foreclosure. In short, ending the receivership would not restore business as usual—it would force Farm Credit to proceed with foreclosure and other remedies.

---

[14] *See id.*

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: February 2, 2026  */s/ Brian Klatt*

Name: Brian Klatt
Title: Managing Director Food and Agribusiness
Farm Credit Mid-America, PCA