# AMENDMENT NO. 10 TO CREDIT AGREEMENT

THIS AMENDMENT NO. 10 TO CREDIT AGREEMENT dated as of November 19, 2025 (this "Amendment"), is among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company (together with the Company and Distillery, collectively, the "Borrowers" and each, a "Borrower"), the Receiver (as defined herein), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "Administrative Agent"), and each of the Lenders (as defined below) party hereto.

## RECITALS:

A. The Borrowers, the lenders party thereto (collectively, the "Lenders") and the Administrative Agent have entered into that certain Credit Agreement dated as [of July 22, 2022 (as amended, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement (as defined below).

B. Pursuant to the *Order Appointing Receiver* [Dkt. No. 39] (the "Receivership Order") entered on August 22, 2025, in that certain litigation stylized as *Farm Credit Mid-America, PCA v. Uncle Nearest, Inc., et al.* (the "Receivership Case") pending in the United States District Court for the Eastern District of Tennessee (the "Court") as Case No. 4:25-cv-38, the Court appointed Phillip G. Young, Jr. as receiver (the "Receiver") of the Borrowers and other assets related to the Borrowers (collectively, the "Receivership Estate") as set forth in more detail in the Receivership Order.

C. The Receiver, on behalf of the Borrowers, has requested certain amendments to the Existing Credit Agreement (including an increase in the Commitments thereunder) as more particularly set forth below.

D. Subject to the terms and conditions set forth below and pursuant to the Receivership Order, the Lenders party hereto have agreed to make such amendments.

In furtherance of the foregoing, the parties agree as follows:

**Section 1.** **AMENDMENT(S).** Subject to the terms and conditions set forth herein and in reliance upon the representations and warranties set forth herein, the Existing Credit Agreement is hereby amended (as so amended, the "Credit Agreement") as follows:

(a) Section 1.1 is hereby amended to include the following new defined terms in appropriate alphabetical order:

> "Amendment No. 10" means that certain Amendment No. 10 to Credit Agreement dated as of the Amendment No. 10 Effective Date, among the Borrowers, the Receiver, the Administrative Agent, and the Lenders party thereto.

> "Amendment No. 10 Effective Date" means November 19, 2025.

(b) The definition of "Receivership Line of Credit Facility" in Section 1.1 is hereby amended by replacing the reference to "$2,500,000" with a reference to "$3,800,000".

Farm Credit v Uncle Nearest, et al
Plaintiff's Exhibit
28
4:25-CV-00038

(c)     Clause (C)(2) of the second sentence of Section 2.2(a) is hereby amended and restated as follows:

"(2) with respect to the Receivership Line of Credit Loans, a principal amount of no less than $50,000, and"

(d)     Section 4.2(f)(ii) is hereby amended and replaced in its entirety as follows:

"Either (A) the requested Receivership Line of Credit Borrowing shall be reflected in the Cash Flow Budget or (B) to the extent not reflected in the Cash Flow Budget, the Company shall have provided to the Administrative Agent written evidence (including by electronic mail) satisfactory to the Administrative Agent of a demand from Tennessee Distilling Group, LLC (the "Warehouser") to the Company for payment of amounts owed to the Warehouser by the Company arising from services provided prior to the Receivership Case ("Warehouser Demanded Amounts"), in the amount of, or a portion of, the requested Receivership Line of Credit Borrowing, which requested Receivership Line of Credit Borrowings, or portions thereof, requested to satisfy the Warehouser Demanded Amounts (whether included in the Cash Flow Budget or not) shall not exceed, in the aggregate, $1,100,000, and any other portion of a requested Receivership Line of Credit Borrowing in excess of the Warehouser Demanded Amounts shall be reflected in the Cash Flow Budget. Notwithstanding anything to the contrary herein or in any other Loan Document, the initial Receivership Line of Credit Borrowing shall occur on the Amendment No. 9 Effective Date in an amount of no more than $1,700,000, and the second Receivership Line of Credit Borrowing shall occur no earlier than October 6, 2025, and shall be in an amount of no more than $600,000."

(e)     Section 6.11(c) is hereby amended and restated in its entirety as follows:

"(c) Use the proceeds of the Receivership Line of Credit Facility to finance the expenses of the Receivership Estate either (i) in accordance with the Cash Flow Budget, subject to Permitted Variances, or, (ii) to the extent not reflected in the Cash Flow Budget, to satisfy the Warehouser Demanded Amounts. For the avoidance of doubt any proceeds of any Receivership Line of Credit Borrowing requested to satisfy the Warehouser Demanded Amounts shall only be used to satisfy the Warehouser Demanded Amounts."

(f)     Section 6.21 is hereby amended and restated as follows:

"6.21   Receivership Covenants. Until the date on which the Court terminates the receivership in accordance with the Receivership Order:

(a) Bi-Weekly Reporting. Commencing with November 26, 2025, and every second Wednesday thereafter, the Receiver shall deliver to the Administrative Agent, in form and detail satisfactory to the Administrative Agent, a reporting package (the "Reporting Package") detailing, at a minimum:

(i) A rolling 13-week forecast of cash flows for the 13-week period commencing with the week of the delivery of the Reporting Package, substantially in the form of and with detail consistent with the Cash Flow Budget (for the avoidance of doubt, such updated 13-week cash flow forecast shall solely be used for reporting purposes and shall not replace or amend the Cash Flow Budget);

2

(ii) Reconciliation of actual cash receipts and disbursements for (A) the immediately preceding two weeks (ending the immediately preceding Friday) (each such period, an "Incremental Budget Period"; provided, that, for the first Reporting Package delivered after the Amendment No. 10 Effective Date, the Incremental Budget Period shall begin on the Amendment No. 10 Effective Date) against the Cash Flow Budget (as such term is defined in Amendment No. 10) for such Incremental Budget Period, and (B) the cumulative period from the Amendment No. 10 Effective Date through the immediately preceding Friday (each such period, a "Cumulative Budget Period") against the Cash Flow Budget for such Cumulative Budget Period, including a narrative explanation of any variance of 10% or more in any line item category;

(iii) Information regarding the current status of, and updates regarding, sales of product and inventory, employee headcount and reduction efforts, expense reductions, the amount and location of inventory (both raw and finished goods), any processes to consummate a transaction to sell any assets of the Receivership Estate, including, without limitation, any Sale Transaction(s) (as defined below), and copies of any materials prepared to provide to potential purchasers in any Sale Transaction(s) and any indications of interest, letters of intent, term sheets, purchase agreements, or other materials received by the Receiver, Borrowers, or the Investment Banker from interested parties in connection with the Sale Transaction(s); and

(iv) Any such additional information or reconciliations as the Administrative Agent may reasonably request.

(b) Cash Flow Budget Covenants.

(i) The Receiver and Company shall use all cash and Cash Equivalents of the Company, including, without limitation, any cash in deposit accounts of the Company and proceeds of any Loans hereunder (collectively, the "Cash Collateral"), in accordance with the Cash Flow Budget, subject to the Permitted Variances.

(ii) The permitted variances listed below (collectively, the "Permitted Variances") shall be tested on a cumulative basis from the Amendment No. 10 Effective Date through the last day of the applicable Cumulative Budget Period (the "Testing Period"), which shall first be reported on November 26, 2025, and on the Wednesday of every second week thereafter (each such date, a "Testing Date"). The Receiver and Company shall only expend Cash Collateral and proceeds thereof in accordance with the purposes set forth in the Cash Flow Budget, subject to the following Permitted Variances: (x) aggregate actual disbursements may not be more than 110% of the projected aggregate disbursements set forth in the Cash Flow Budget for the applicable Testing Period and (y) aggregate actual cash receipts may not be less than 90% of the projected aggregate cash receipts set forth in the Cash Flow Budget for the applicable Testing Period; *provided, that*, (A) the Receiver and Company may pay Warehouser Demanded Amounts during a week other than the week originally set forth in the Cash Flow Budget, and (B) for purposes of testing the Permitted Variances on each Testing Date, the

3

projected disbursements in the Cash Flow Budget for such Warehouser Demanded Amounts shall be deemed reallocated from the week(s) originally budgeted to the week(s) in which such amounts were actually paid, with a corresponding reduction to the projected disbursements in the originally budgeted week(s), so that no variance arises solely due to such timing reallocation on a cumulative basis for the applicable Testing Period.

(iii) No later than the Wednesday of the tenth week following the delivery of the then-applicable Cash Flow Budget, the Receiver shall deliver to the Administrative Agent a revised weekly budget of consolidated cash flows of the Receivership Estate (as such term is defined in Amendment No. 9), including, without limitation, the receipt and use of the proceeds of the Receivership Line of Credit during such 13-week period, in form and detail satisfactory to the Administrative Agent, prepared by the Receiver or his professionals for the 13-week period immediately following the date on which the then-applicable Cash Flow Budget ends (each a "Proposed Cash Flow Budget").

(iv) The Administrative Agent shall have five (5) Business Days from receipt of any Proposed Cash Flow Budget to approve such Proposed Cash Flow Budget (such approval to not be unreasonably withheld, conditioned or delayed) (such approved Proposed Cash Flow Budget shall become the "Cash Flow Budget").

(c) Milestones.

(i) By no later than October 24, 2025, the Receiver, on behalf of the Receivership Estate, shall have engaged an investment banker acceptable to the Administrative Agent, and on terms and conditions acceptable to the Administrative Agent (the "Investment Banker"), for the purpose of marketing and selling all or substantially all of the Receivership Assets (the "Sale Transaction(s)"). The Receiver shall provide an executed copy of the engagement letter with the Investment Banker to the Administrative Agent promptly upon execution of the engagement agreement.

(ii) From and after the engagement of the Investment Banker, the Receiver shall, and shall cause the Investment Banker to, in good faith, use best efforts to (A) pursue Sale Transaction(s) which provides for a cash purchase price(s) sufficient to yield net cash proceeds in the aggregate which are sufficient to repay in full and in cash all Obligations, and (B) consummate all such Sale Transaction(s) by no later than April 8, 2026."

(g) Section 8.1(b) is hereby amended and restated in its entirety to read as follows:

"(b) Specific Covenants. (i) Any Borrower fails to perform or observe any term, covenant or agreement contained in any of Section 6.1, 6.2, 6.3, 6.5, 6.10, 6.11, 6.12, 6.15, 6.16, 6.21 or Article VII or (ii) any "Event of Default" (as defined in any Collateral Document) shall occur."

(h) Part 4 of Annex A to the Existing Credit Agreement is hereby amended and restated in its entirety to read as set forth on Annex A hereto.

4

Each of the parties hereto acknowledges and agrees that the amendment(s) to the Existing Credit Agreement are limited to the extent specifically set forth in this Section 1 and no other terms, covenants or provisions of the Loan Documents are intended to be affected hereby.

**Section 2.** **CONDITIONS PRECEDENT.** The parties hereto agree that this Amendment and the amendment(s) set forth in Section 1 above shall be effective as of the date first written above upon satisfaction of the following conditions precedent:

(a) Documentation. The Administrative Agent shall have received, in form and substance satisfactory to the Administrative Agent, this Amendment, duly executed by each Borrower, the Administrative Agent and the Lenders party hereto.

(b) Cash Flow Budget. The Administrative Agent shall have received a 13-week cash flow budget that includes on a line-item basis the weekly anticipated cash receipts of the Receivership Estate and the weekly anticipated disbursements from Cash Collateral (as defined in the Credit Agreement amended hereby) prepared by the Receiver or his professionals, in form and substance acceptable to the Administrative Agent, for the 13-week period immediately following the Effective Date (the "Cash Flow Budget"), including, without limitation, the receipt and use of the proceeds of the Receivership Line of Credit during such 13-week period.

(c) [Reserved].

**Section 3.** **[RESERVED].**

**Section 4.** **MISCELLANEOUS.**

(a) **Ratification and Confirmation of Loan Documents**. Each Borrower hereby consents, acknowledges and agrees to the amendment(s) set forth herein and hereby confirms and ratifies in all respects the Loan Documents to which such Borrower is a party (including without limitation, the continuation of its payment and performance obligations thereunder and the continuation and extension of the liens granted under the Collateral Documents to secure the Obligations), in each case upon and after the effectiveness of the amendment(s) contemplated hereby.

(b) **Fees and Expenses**. The Borrowers shall pay all reasonable out-of-pocket expenses incurred by the Administrative Agent and its Affiliates (including the reasonable fees, charges and disbursements of counsel for the Administrative Agent) in connection with the preparation, negotiation, execution and delivery of this Amendment and any other documents prepared in connection herewith.

(c) **Governing Law; Waiver of Jury Trial**. This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York, and shall be further subject to the provisions of Sections 10.11 and 10.12 of the Credit Agreement.

(d) **Counterparts**. This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Amendment.

(e) **Entire Agreement**. This Amendment, together with all the Loan Documents (collectively, the "Relevant Documents"), sets forth the entire understanding and agreement of the parties

hereto in relation to the subject matter hereof and supersedes any prior negotiations and agreements among the parties relating to such subject matter. No promise, condition, representation or warranty, express or implied, not set forth in the Relevant Documents shall bind any party hereto, and no such party has relied on any such promise, condition, representation or warranty. Each of the parties hereto acknowledges that, except as otherwise expressly stated in the Relevant Documents, no representations, warranties or commitments, express or implied, have been made by any party to the other. None of the terms or conditions of this Amendment may be changed, modified, waived or canceled orally or otherwise except in a writing and in accordance with Section 10.1 of the Credit Agreement. This Amendment is a Loan Document. To the extent there is any conflict between (i) the Receivership Order and (ii) this Agreement or the Credit Agreement, the terms of the Receivership Order (or any subsequent order entered by the Court) shall govern.

(f) **Severability**. If any provision of this Amendment is held to be illegal, invalid or unenforceable, (i) the legality, validity and enforceability of the remaining provisions of this Amendment shall not be affected or impaired thereby and (ii) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(g) **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of each party hereto and their respective successors and assigns (subject to Section 10.6 of the Credit Agreement).

(h) **[Reserved]**.

*[Remainder of Page Intentionally Left Blank; Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 10 to Credit Agreement to be executed by their duly authorized officers, all as of the date and year first written above.

**BORROWERS:**

**UNCLE NEAREST, INC.**

By: _____
Name: Phillip G. Young, Jr.
Title: Receiver of Uncle Nearest, Inc.

**NEAREST GREEN DISTILLERY, INC.**

By: _____
Name: Phillip G. Young, Jr.
Title: Receiver of Uncle Nearest, Inc.

**UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**

By: Uncle Nearest, Inc., its Member

By: _____
Name: Phillip G. Young, Jr.
Title: Receiver of Uncle Nearest, Inc.

**RECEIVER:**

**PHILLIP G. YOUNG, JR.**, in his capacity as receiver for Uncle Nearest

_____
Phillip G. Young, Jr.

**ADMINISTRATIVE AGENT / LENDERS:**

**FARM CREDIT MID-AMERICA, PCA,**
as Administrative Agent and a Lender

By: _/s/ Brian Klatt_  
Name: Brian Klatt  
Title: Managing Director Food and Agribusiness

<u>**Annex A**</u>

Part 4

| Lender | Receivership Line of Credit Commitment | Applicable Percentage (Receeivership Line of Credit Facility) |
|---|---:|---:|
| Farm Credit Mid-America, PCA | $3,800,000.00 | 100.000000000% |
| **Total** | **$3,800,000.00** | **100.000000000%** |