UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-38 |
| v. | ) ) | Judge Atchley |
| UNCLE NEAREST, INC., et al., | ) ) | Magistrate Judge Steger |
| Defendants. | ) ) ) | |

**SUPPLEMENTAL BRIEF OF SHELBYVILLE BARREL HOUSE BBQ TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT**

Shelbyville Barrel House BBQ, LLC ("SBH"), by and through its undersigned counsel, provides this supplemental brief with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] through which the Receiver and Farm Credit (collectively, the "Movants") seek to divest SBH, and its board and shareholder, of their control of the company and place the company and its assets into receivership. In support of this Brief, SBH incorporates the Declaration of Keith Weaver (the Keith Weaver Declaration"), attached as **Exhibit 1**, and asserts and alleges as follows:

## BACKGROUND

1. On October 21, 2025, SBH filed its initial response to the Motion to Clarify and the Farm Credit Statement. This Supplemental Brief provides the underlying documentation of the

---
[1] Dkt. 41.
[2] Dkt. 44.

transactions involving SBH and Uncle Nearest, a description of the business purposes behind those transactions, and proof of no commingling of the finances of Uncle Nearest and SBH. Further, this Supplemental Brief provides documentation as to the adherence to corporate formalities by SBH which demonstrates that SBH and Uncle Nearest are not alter egos.

2. SBH is a Tennessee limited liability company that was formed on August 25, 2022.[3] Keith Weaver is the sole member of SBH.[4]

3. SBH has its own tax id number that is distinct from the tax id numbers of Uncle Nearest, Inc., Nearest Green Distillery, Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Entities").[5]

4. SBH has separate bank accounts from the Uncle Nearest Entities and has not exercised, and does not exercise, any control over the bank accounts or operations, financial or otherwise, of the Uncle Nearest entities.[6] Likewise, the Uncle Nearest entities exercise no control over the bank accounts or operations, financial or otherwise, of SBH. SBH's operating licenses are all in its own name, not in the name of any of the Uncle Nearest entities.[7]

5. SBH owns and operates Chuck's Barrel House BBQ II under a Lease Agreement dated December 17, 2018 (the "Lease")[8] and a Franchise Agreement dated September 1, 2022 (the "Franchise Agreement") with Charles W. Baker, Jr. (the "Franchisor").[9] Chuck's Barrel House BBQ II is a walk-up restaurant concept that also serves beer and is located on the premises of the Nearest Green Distillery.[10]

---

[3] Exhibit 1, ¶ 21.
[4] Exhibit 1, ¶ 21.
[5] Exhibit 1, ¶ 22.
[6] Exhibit 1, ¶ 23.
[7] Exhibit 1, ¶ 23.
[8] Weaver Ex. 30.
[9] Weaver Ex. 31.
[10] Exhibit 1, ¶ 25.

6. Because SBH sells beer on-premise, the ownership and control of SBH is required under applicable law to be completely separate, directly and indirectly, from the ownership and control of Uncle Nearest, Inc. in accordance with applicable three-tier/tied house laws. Specifically, the Tennessee Code provides that "[n]o manufacturer, brewer or wholesaler shall have any interest in the business or building containing licensed premises of any other person having a license under this chapter, or in the fixtures of any such person."[11] That separateness has been maintained between the Uncle Nearest entities and SBH at all times.

7. Tennessee law prohibits a distillery from selling alcohol by the glass except in very limited circumstances.[12] Those circumstances are limited to samples (free or for a fee) of the product manufactured by the distillery (not products manufactured by other distillers).[13] Accordingly, if SBH were deemed part of Uncle Nearest, SBH would immediately be unable to sell any alcohol other than products produced by Uncle Nearest and would be restricted from selling any alcohol after 11 pm each evening. Accordingly, the separateness that has been maintained between SBH and Uncle Nearest has been critical to the very existence of SBH.

8. The history of Chuck's Barrel House BBQ II is that, in light of the distillery's remote location in Shelbyville Tennessee and the concern that visitors to the distillery would need food options, the management of Nearest Green Distillery approached the owner of Chuck's Barrel House BBQ restaurant in Lynchburg, Tennessee ("Chuck's") regarding the opening up of a similar venue at the Nearest Green Distillery, which was under construction.[14] The owner of Chuck's, Charles Baker, II, agreed and entered into the Lease with Uncle Nearest Real Estate Holdings, LLC. Mr. Baker financed the build-out of Chuck's Barrel House BBQ II and began operations in

---

[11] T.C.A. § 57-3-210(e).
[12] *See* T.C.A. § 57-3-202(i)(1).
[13] Id.
[14] Exhibit 1, ¶ 27.

2021.[15] After operating Chuck's Barrel House BBQ II for approximately one year, Mr. Baker approached Keith Weaver regarding transferring ownership of the restaurant due to the owner's desire to focus on his Lynchburg location and other endeavors.[16]

9. In order to facilitate that transaction, Mr. Weaver formed SBH in August 2022 and entered into the Franchise Agreement with Mr. Baker (the "Franchisor").[17] None of the Uncle Nearest entities are parties to the Franchise Agreement. Neither the Uncle Nearest entities, Keith Weaver, nor Fawn Weaver has any direct or indirect ownership interest in the Franchisor.[18] Just as it was under the ownership of Mr. Baker, Chuck's Barrel House BBQ II, as operated by SBH, continues to maintain its own employees, bank accounts, vendors, receivables, payables, accounting, etc., completely separate and distinct from the operations of Uncle Nearest entities.[19] Other than leasing its location from Uncle Nearest Real Estate Holdings, LLC in accordance with arms-length lease that was originally entered with Mr. Baker and providing certain catering and event related services, there is no business or financial connection to any of the Uncle Nearest Entities and each such business is controlled separately, as required under Tennessee law.[20]

10. SBH operates a point of sale system through Toast that is not connected in any way to the accounting systems of the Uncle Nearest entities.[21] The ERP system used by SBH is a F&B specific accounting system/ERP called R365. It is not used by or connected in any way to the Uncle Nearest Entities.[22]

---

[15] Exhibit 1, ¶ 27.
[16] Exhibit 1, ¶ 27.
[17] Exhibit 1, ¶ 28.
[18] Exhibit 1, ¶ 28.
[19] Exhibit 1, ¶ 28.
[20] Exhibit 1, ¶ 28.
[21] Exhibit 1, ¶ 29.
[22] Exhibit 1, ¶ 29.

11. The Receiver has not provided any detail or documentation for the alleged SBH invoices that were paid by Nearest Green Distillery, and SBH does not have access to the books and records of Nearest Green Distillery to pull that documentation. Consequently, it is impossible for SBH to address those allegations.

12. The transactions between the Uncle Nearest Entities and SBH relate primarily to promotional events that are catered by SBH or held on SBH's premises.[23] All such amounts are properly invoiced and the corporate formalities and separate accounting for both entities have been maintained.[24]

13. The Lease does not require SBH to pay for or reimburse any of the Uncle Nearest Entities for any services related to the Nearest Green Distillery property.[25] Furthermore, as for janitorial services, the trash pickup is an expense for the facility as a whole and is contracted by the Landlord.[26] SBH performs its own janitorial service by its own staff, similar to how most restaurants operate.[27] There is no agreement for SBH to cover costs for trash pick-up or janitorial services that are contracted by Uncle Nearest. Consequently, since SBH is in fact not paying for utilities and other expenses for which it is not liable under the Lease, that is evidence of no commingling of funds between these entities.[28]

14. In the Receiver's Declaration, the Receiver erroneously aggregates transactions between the Non-Parties, between the Non-Parties or Receivership Entities with "Unknown Accounts," and between the Non-Parties and the Receivership Entities, and concludes that the volume of such transactions is, itself, evidence of commingling. First, his argument that

---

[23] Exhibit 1, ¶ 30.
[24] Exhibit 1, ¶ 30.
[25] Exhibit 1, ¶ 31.
[26] Exhibit 1, ¶ 31.
[27] Exhibit 1, ¶ 31.
[28] Exhibit 1, ¶ 31.

transactions between Non-Parties, which do not involve the Receivership Entities, is somehow evidence of commingling with the Receivership Entities completely defies logic. Likewise, his argument that transactions between the Non-Parties or Receivership Entities with "Unknown Accounts" is evidence of commingling between the Non-Parties and the Receivership Entities is hard to even comprehend. His inability to identify the "Unknown Accounts" is simply evidence that he has not done even a basic amount of due diligence on this matter and nothing more. Finally, his assertion that the quantity of transactions between the Non-Parties and the Receivership Entities is evidence of commingling without reference to the specifics of the particular transactions and without any evidence of a lack of legitimate business purpose to each such transaction is invalid. The simple fact that a transaction or transactions occurred is not evidence of commingling in the absence of proof that the transactions lacked a legitimate business purpose for each entity involved in the transaction.

15. To the extent that the Receiver bases his argument on his need for further information about transactions, the Receiver has not demonstrated that placing SBH in receivership is the least intrusive way to get that information. The Receiver has not requested any information from SBH other than the bank records, all of which have been provided.[29] The Receiver has not asserted or alleged that he has requested any information from SBH that has not been provided. Consequently, the Receiver hasn't even taken the first most basic step to obtain information regarding transactions between SBH and the Receivership Entities, much less sought to subpoena documents or depose relevant individuals regarding such transactions. Clearly, less intrusive measures than receivership are available to obtain information relating to the transactions. Consequently, placing SBH in receivership is unwarranted and inappropriate.

---

[29] Exhibit 1, ¶ 32.

16. The Receiver has not identified any specific property held by SBH that is property of the Receivership Estate. In fact, neither SBH nor any of its assets is property of the Receivership Estate.[30]

**ARGUMENT**

17. In this diversity action, the law of Tennessee is applicable.[31] The Movants seeking to include SBH in the receivership have the burden of proving entitlement to that relief.[32]

18. As the Court noted in its September 30 Order, "[c]ourts have broad power and wide discretion to oversee the administration of a receivership."[33] Further, the Court has the power to expand a receivership where the expansion is necessary to effectively safeguard assets of the receivership.[34] It is noteworthy that the vast majority of federal cases dealing with federal equity receiverships arise in securities fraud cases instituted by the SEC or other consumer fraud contexts. In the context of diversity jurisdiction, the courts have found that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations."[35]

19. The cases addressing this issue indicate that expansion of a receivership estate should be done only "with utmost caution and justified only where there is a necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the

---

[30] Exhibit 1, ¶ 32.

[31] "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426-27, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id*. at 427; *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum state.").

[32] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005)(holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)( "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.")(citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

[33] *Consumer Fin. Prot. v. Strafs, LLC*, No. 24-CV-40-EAW-MJR, 2025 U.S. Dist. LEXIS 98061, at *28 (W.D.N.Y. May 22, 2025)

[34] *See id*.

[35] *See, e.g.*, *Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

benefits of receivership outweigh the burdens on the affected parties."[36] Where the requested expansion of a receivership is to bring in another company based on the doctrine of alter ego, the Court "must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege – . . . [the court] may not apply the doctrine to prejudice an innocent third party."[37]

20. In analyzing the viability, or lack thereof, of the alter ego claims, in addition to applying federal law factors, the Court should also look to applicable state law requirements relating to alter ego.[38] Since the instant case is based on diversity jurisdiction, not federal question jurisdiction, and the claim at issue here is a simple breach of contract claim, not a securities fraud claim, the Court should look to state law in determining the alter ego question. Furthermore, since the receivership is merely procedural mechanism, not a form of relief, and since SBH has no existing obligations to Farm Credit, Farm Credit would ultimately have to prove alter ego status under Tennessee law in order to actually make SBH liable for any debts owed by Uncle Nearest to Farm Credit. Consequently, even if federal law still controls the question of expansion of the receivership, a relevant factor for the Court to consider within the federal standards is whether Farm Credit has a reasonable likelihood of maintaining a claim for alter ego under state law based on the facts presently before the Court.

21. In applying the federal factors first, as set forth in the Court's September 30 Order, neither the Receiver nor Farm Credit has identified any specific assets of the receivership that are to be protected with respect to SBH. So, out of the gate, the Movants' effort to expand the

---

[36] *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-cv-60462-BLOOM/Valle, 2021 U.S. Dist. LEXIS 83769, *5 (S.D. Fla. May 3, 2021)(*quoting SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062, at *2 (D, Nev. 1985).).
[37] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[38] *See id.*

receivership to include SBH must fail because the expansion of the receivership is not necessary "to safeguard assets and prevent their dissipation." Further, Farm Credit has not established that SBH was funded by proceeds of some fraudulent scheme perpetrated by Uncle Nearest or any other bad actor, as is sometimes used to justify expanding receiverships to non-parties in cases where the public at large has been defrauded, such as in securities fraud actions and consumer fraud cases.[39] This receivership is based on a breach of contract claim, not a fraud claim.

22. The Movants' effort also fails because they can't meet the bare requirements that would be relevant to a determination that SBH should have a receiver appointed. The Motion to Clarify and the Statement by Farm Credit go far beyond what is simply an effort to protect assets that are property of the receivership from dissipation—this is an effort to wrest control over SBH based on mere allegations of potential facts and on factors significantly less rigorous than the very factors that the Court required to be considered in appointing the Receiver over Uncle Nearest in the first place. While Uncle Nearest had pledged all of its assets to secure the debt to Farm Credit, SBH is not liable on any debts to Farm Credit and has not pledged any of its assets to secure debts owed to Farm Credit. SBH is not a party to the Loan Documents and it has not defaulted on any obligations to Farm Credit. SBH should have at least an equivalent right to the same analysis and burden of proof for divesting its board of control over the business as Uncle Nearest's board had in its defense of the initial Receivership Motion.

23. In the deciding the Receivership Motion, this Court noted multiple factors used by courts in the Sixth Circuit:

> (1) Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
>
> (2) Whether the Defendants have engaged in fraudulent conduct;

---

[39] *See, e.g., SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

(3) Whether legal remedies are inadequate;

(4) Whether less drastic equitable remedies are available;

(5) The likelihood that the appointment of a receiver would do more good than harm;

(6) Whether there is inadequate security for the debts; and

(7) Whether the debtor is insolvent.[40]

24. Even if all of the allegations in the Motion to Clarify, Farm Credit's Statement, and the Receiver's other filings were assumed factually correct (they are not), those allegations still fail to establish the factors necessary for the appointment of a receiver with respect to SBH. The Movants have not identified any specific "property at issue" held by SBH in which the Receivership Estate has an interest, much less made any showing that such property is in imminent danger of being diminished. The Movants have made no showing that SBH has engaged in fraudulent conduct. Farm Credit has no legal or equitable remedies to assert against SBH because SBH is not obligated on any of the Farm Credit Loans, so there is no basis to say the legal remedies are inadequate or that less drastic equitable remedies are not available or even justified.

25. Expansion of the Receivership to include SBH would do more harm than good. The disruption to its operations, which includes operation of the bar facilities and events, as well as its pursuit of other potential locations for additional SBH bars, that would result from being placed under receivership would cause significant financial damages similar to the financial losses to the Uncle Nearest entities that have been caused by the Receivership, as even recognized by the Receiver. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and

---

[40] Dkt. 32, at 4 (citing *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015)).

investments. Further, such action would ultimately not benefit the Receivership Estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit of putting the company into receivership.

26. Farm Credit's citation to the status as administratively dissolved with the Tennessee Secretary of State due to lack of annual reports for the last two years has been remedied. In any event, the corporate status of SBH has no relevance because SBH is not in a parent-subsidiary relationship with the Uncle Nearest entities. Consequently, even if the administrative dissolution could lead to revoking SBH's corporate status (it can't under Tennessee law[41]), the result would simply be that the assets and obligations of SBH would be deemed assets and obligations of the Trust. It wouldn't mean that those assets and liabilities would somehow escheat to the Uncle Nearest entities.

27. Since SBH is not obligated on the Farm Credit Loans and holds no collateral securing those Loans, the question of the adequacy of Farm Credit's security has no relevance.

28. Finally, Farm Credit has not provided any material evidence that SBH is insolvent or has been funded by assets of the Corporate Defendants. In sum, with respect to SBH, the Movants cannot prove any of the same factors with respect to SBH that this Court weighed in determining that Uncle Nearest should be under receivership control.

29. Since the Movants are disguising a general piercing of the corporate veil argument in the form of expansion of the receivership without identifying a single asset held by SBH that is collateral to Farm Credit or that belongs to the Receivership Estate, the effort should be dismissed

---

[41] *See* T.C.A. § 48-24-202(c).

out of hand as inappropriate. At a minimum, the Movants should be required in this diversity action to meet the standard for piercing the corporate veil under state law.[42]

30. The Sixth Circuit has held that "[u]nder the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located."[43] "When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits.[44] Since this Court sits in Tennessee, Tennessee law is applicable with respect to the question of piercing the corporate veil and alter ego analysis.

31. Earlier this year, in *Youree v. Recovery House of E. Tenn., LLC*,[45] the Tennessee Supreme Court comprehensively addressed the state of the law in Tennessee regarding "alter ego" claims and piercing the corporate veil. First, the court noted that the term "alter ego" was simply a "rhetorical device or picturesque term" that only confuses the fact that what is actually sought is piercing of the corporate veil.[46] The court also recognized that corporate separateness is presumed and that Tennessee courts give substantial weight to that presumption.[47]

32. The court then confirmed the three elements, first articulated in *Continental Bankers Life Insurance Co. of the South v. Bank of Alamo*,[48] that have to be proved in order to pierce a corporate veil as follows:

---

[42] *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[43] *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).
[44] *Id*.
[45] 705 S.W.3d 193, 206-12 (Tenn. 2025).
[46] *Id.* at 208.
[47] *Id.* at 207.
[48] 578 S.W.2d 625 (Tenn. 1979).

(1) Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;

(2) The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and

(3) The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.[49]

33. The *Youree* court further found that certain factors outlined in *Federal Deposit Ins. Corp. v. Allen*,[50]

> have their place in the analysis . . . [but] do not constitute a separate test. They are merely a list of circumstances that often may be relevant to the existence of one or more of the three *Continental Bankers* elements. Thus, the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established.[51]

The *Allen* factors are as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's-length relationships among related entities.[52]

The *Youree* court then further cautioned

> that checking items off a list is not a substitute for a purposive analysis of whether the *Continental Bankers* elements have been established. Regardless of the specific

---

[49] *Id.* at 637.
[50] 584 F. Supp. 386 (E.D. Tenn. 1984).
[51] *Youree*, 705 S.W.3d at 211.
[52] *Id.* at 210 (*quoting Allen*, 584 F. Supp. at 397).

circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.[53]

34. Since the Motion before the Court is not predicated on protecting any specific assets of the Receivership, it should be treated as simply a claim to pierce the corporate veil and should be granted or denied based on whether Farm Credit can carry its burden to prove that such SBH is an alter ego of Uncle Nearest under Tennessee law.

35. As the Tennessee Supreme Court recently pronounced, the factors relevant to determining whether to pierce the corporate veil are those factors originally set forth in the *Continental Bankers* case. Neither the Receiver's Motion to Clarify nor Farm Credit's Statement address in any meaningful way this applicable standard with respect to SBH.

36. As to the first *Continental Bankers* element—"[c]ontrol over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own"— the only transactions at issue have been explained and do not show that SBH exercised control over the finances, policy, or business practices of any of the Uncle Nearest Defendants, or vice versa. As the April 12, 2024 correspondence demonstrates, the finances of SBH and the Uncle Nearest entities were completed through separate and distinct ban accounts and were arms-length transactions even where the companies shared symbiotic operations.

37. As to the second *Continental Bankers* element—"The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights"— the Movants have not submitted any evidence that SBH controlled Uncle Nearest, or vice versa, in order to commit fraud or wrong, perpetuate the violation of a statutory or positive legal duty, or to commit a

---

[53] *Id.* at 212.

14

4910-8504-4692.5 Case 4:25-cv-00038-CEA-CHS    Document 154    Filed 02/26/26    Page 14 of 17
PageID #: 6448

dishonest and unjust act in contravention of a third party's rights. At all relevant times, Farm Credit was fully aware of SBH operating as a separate legal entity and there was no mystery in that regard.

38. As to the third *Continental Bankers* element—"The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of"— since Farm Credit has failed to even establish facts sufficient to satisfy the first two elements, it is impossible for Farm Credit and the Receiver to prove that the first two elements were the proximate cause of any injury or unjust loss to Farm Credit or any other creditor. The transactions that have been identified by Farm Credit are all legitimate transactions supported by documentation and business purposes that benefitted Uncle Nearest. There is no proximate causation to any injury alleged by Farm Credit.

39. In sum, application of the *Continental Bankers* factors to SBH shows that the Movants have not met, and cannot meet, their burden of proof. The simple fact that that Uncle Nearest and SBH was maintain A/P and A/R accounts for each other actually shows that corporate formalities were being followed and that there was no commingling. That Uncle Nearest provides trash pick-up and other facility maintenance functions does not reflect even a basis for a contribution claim in the absence of evidence of some agreement in that regard. It doesn't come close to satisfying the applicable factors for instituting a receivership, expanding a receivership or piercing the corporate veil under the *Continental Bankers*.

40. Indeed, applicable tied house/three tier laws expressly prohibit any overlapping ownership or control between those entities. A finding that SBH and any of the Uncle Nearest Entities are alter egos would cause a violation of the applicable tied house laws and likely require that one or both of the Distillery and SBH Bar immediately cease operations. Placing SBH and its

assets under this Receivership, in addition to being unsupported by applicable facts and law, would create harm that would greatly exceed any conjectured benefit.

41. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his professionals would cause an immediate reduction in sales and profitability due to issues with the applicable tied house laws and the negative publicity, and would drastically increase the expenses for the company. Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

WHEREFORE, SBH respectfully requests that the Court decline to expand the receivership to include SBH or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

/s/ Michael E. Collins

Michael E. Collins    (TN Bar No. 16036)
S. Marc Buchman    (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for SBH*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins