UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-38 |
| v. | ) ) | Judge Atchley |
| UNCLE NEAREST, INC., et al., | ) ) | Magistrate Judge Steger |
| Defendants. | ) ) ) | |

**SUPPLEMENTAL BRIEF OF QUILL & CASK OWNER, LLC TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT**

Quill & Cask Owner, LLC ("Q&C"), by and through its undersigned counsel, provides this supplemental brief with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] through which the Receiver and Farm Credit (collectively, the "Movants") seek to divest Q&C, and its board and shareholder, of their control of the company and place the company and its assets into receivership. In support of this Brief, Q&C incorporates the Declaration of Keith Weaver (the "Keith Weaver Declaration"), which is attached as **Exhibit 1**, and asserts and alleges as follows:

## BACKGROUND

1. On October 21, 2025, Q&C filed its initial response to the Motion to Clarify and the Farm Credit Statement. This Supplemental Brief provides the underlying documentation of

---

[1] Dkt. 41.
[2] Dkt. 44.

the transactions involving Q&C and Uncle Nearest, a description of the business purposes behind those transactions, and proof of no commingling of the finances of Uncle Nearest and Q&C. Further, this Supplemental Brief provides documentation as to the adherence to corporate formalities by Q&C which demonstrates that Q&C and Uncle Nearest are not alter egos.

2. Q&C is a Tennessee limited liability company that was formed on July 25, 2024.[3] Keith Weaver is the sole member of Q&C.[4] Q&C has its own tax id number that is distinct from the tax id numbers of Uncle Nearest, Inc., Nearest Green Distillery, Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Entities").[5]

3. The company's business purpose is to purchase, hold and sell assets for profit, including real estate, bulk whiskey, and other assets.[6] It has no connection to Uncle Nearest other than having made an equity investment in Uncle Nearest, Inc., as detailed below.[7]

4. Q&C has its own bank accounts and maintains its own accounting functions and operations independent of any of the Uncle Nearest entities.[8] Q&C is not, and has never been, liable for the alleged debts of the Uncle Nearest entities to Farm Credit.[9] Q&C has not pledged any assets to secure the debts of the Uncle Nearest entities to any creditor, including Farm Credit.[10] Q&C holds no property that is an asset of any of the Uncle Nearest entities or of the Receivership Estate.[11]

---

[3] Exhibit 1, ¶ 40.
[4] Exhibit 1, ¶ 40.
[5] Exhibit 1, ¶ 41.
[6] Exhibit 1, ¶ 41.
[7] Exhibit 1, ¶ 42.
[8] Exhibit 1, ¶ 42.
[9] Exhibit 1, ¶ 42.
[10] Exhibit 1, ¶ 42.
[11] Exhibit 1, ¶ 42.

5. The Receiver's Motion to Clarify incorrectly indicates that Q&C is owned by Fawn and Keith Weaver. However, it is and always has been owned 100% by Keith Weaver.[12] The Receiver further states that "[Q&C] has contributed capital to Uncle Nearest from time to time, and has purchased barrels of spirits from Uncle Nearest."[13]

6. Farm Credit's Statement references a purchase of barreled whiskey by Q&C from Uncle Nearest reflected in an unsigned Purchase and Sale Agreement (the "PSA") that was provided to Farm Credit in April 2024 referencing a potential sale of barrels to "Q and Cask."[14] Farm Credit then proceeds to assert that it was not aware that the buyer under the PSA was affiliated with the Weavers and Uncle Nearest.[15] In fact, in April 2024, Q&C had not yet been formed and the proposed PSA merely referenced "Q and Cask" as an entity to be formed.[16] Furthermore, the PSA was never finalized and the sale transaction contemplated by it never occurred.[17]

7. In any event, Q&C is not an affiliate of Uncle Nearest, so the implication that Farm Credit was misled is false. Under section 101(2) of the Bankruptcy Code the term "affiliate" is defined as follows:

(2) The term "affiliate" means—

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

---

[12] Exhibit 1, ¶ 40.
[13] Dkt. No. 41 at 3.
[14] Dkt. No. 44 at 5-6.
[15] *Id.*
[16] Exhibit 1, ¶ 43.
[17] Exhibit 1, ¶ 43.

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

(D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.[18]

8. On December 27, 2024, Q&C transferred $584,000 to Uncle Nearest as an equity investment in Uncle Nearest, Inc.[19] On January 30, 2025, Q&C transferred an additional $275,000 as an equity investment in Uncle Nearest, Inc.[20] Those are the only two transactions involving Q&C and any of the Uncle Nearest Entities.[21] Each of the transactions had a valid business purpose.[22] While Q&C has an equity interest as a result of those transactions, Q&C does not own 20% or more of the voting stock of any of the Uncle Nearest companies and none of the Uncle Nearest companies own 20% or more of the voting stock of Q&C.[23] Furthermore, Keith Weaver, who is the sole-owner of Q&C, does not own or control more than 20% of the voting stock of any of the Uncle Nearest entities.[24] Thus, Q&C is clearly not an affiliate of Uncle Nearest.

---

[18] 11 U.S.C. § 101(2).
[19] Exhibit 1, ¶ 44.
[20] Exhibit 1, ¶ 44.
[21] Exhibit 1, ¶ 44.
[22] Exhibit 1, ¶ 44.
[23] Exhibit 1, ¶ 44.
[24] Exhibit 1, ¶ 44.

9. In the absence of any evidence that could be deemed to satisfy any of the standards for instituting a receivership, expanding a receivership or piercing the corporate veil, there is simply no legal or factual basis to conclude that the receivership should be expanded to include Q&C or any of its assets. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

10. In the Receiver's Declaration, the Receiver erroneously aggregates transactions between the Non-Parties, between the Non-Parties or Receivership Entities with "Unknown Accounts," and between the Non-Parties and the Receivership Entities, and concludes that the volume of such transactions is, itself, evidence of commingling. First, his argument that transactions between Non-Parties, which do not involve the Receivership Entities, is somehow evidence of commingling with the Receivership Entities completely defies logic. Likewise, his argument that transactions between the Non-Parties or Receivership Entities with "Unknown Accounts" are evidence of commingling between the Non-Parties and the Receivership Entities is hard to even comprehend. His inability to identify the "Unknown Accounts" is simply evidence that he has not done even a basic amount of due diligence on this matter and nothing more. Finally, his assertion that the quantity of transactions between the Non-Parties and the Receivership Entities is evidence of commingling without reference to the specifics of the particular transactions

and without any evidence of a lack of legitimate business purpose to each such transaction is invalid. The simple fact that a transaction or transactions occurred is not evidence of commingling in the absence of proof that the transactions lacked a legitimate business purpose for each entity involved in the transaction.

11. To the extent that the Receiver bases his argument on his need for further information about transactions, the Receiver has not demonstrated that placing Q&C in receivership is the least intrusive way to get that information. The Receiver has not requested any information from Q&C other than the bank records, all of which have been provided.[25] The Receiver has not asserted or alleged that he has requested any information from Q&C that has not been provided. Consequently, the Receiver hasn't even taken the first most basic step to obtain information regarding transactions between Q&C and the Receivership Entities, much less sought to subpoena documents or depose relevant individuals regarding such transactions. Clearly, less intrusive measures than receivership are available to obtain information relating to the transactions. Consequently, placing Q&C in receivership is unwarranted and inappropriate.

12. The Receiver has not identified any specific property held by Q&C that is property of the Receivership Estate. In fact, neither Q&C nor any of its assets is property of the Receivership Estate.[26]

---

[25] Exhibit 1, ¶ 39.
[26] Exhibit 1, ¶ 39.

# ARGUMENT

13. In this diversity action, the law of Tennessee is applicable.[27] The Movants seeking to include Q&C in the receivership have the burden of proving entitlement to that relief.[28]

14. As the Court noted in its September 30 Order, "[c]ourts have broad power and wide discretion to oversee the administration of a receivership."[29] Further, the Court has the power to expand a receivership where the expansion is necessary to effectively safeguard assets of the receivership.[30] It is noteworthy that the vast majority of federal cases dealing with federal equity receiverships arise in securities fraud cases instituted by the SEC or other consumer fraud contexts. In the context of diversity jurisdiction, the courts have found that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations."[31]

15. The cases addressing this issue indicate that expansion of a receivership estate should be done only "with utmost caution and justified only where there is a necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties."[32] Where the requested expansion of a receivership is to bring in another company based on the doctrine of alter ego, the

---

[27] "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426-27, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id*. at 427; *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum state.").

[28] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005)(holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)( "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.")(citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

[29] *Consumer Fin. Prot. v. Strafs, LLC*, No. 24-CV-40-EAW-MJR, 2025 U.S. Dist. LEXIS 98061, at *28 (W.D.N.Y. May 22, 2025)

[30] *See id*.

[31] *See, e.g.*, *Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

[32] *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-cv-60462-BLOOM/Valle, 2021 U.S. Dist. LEXIS 83769, *5 (S.D. Fla. May 3, 2021)(*quoting SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062, at *2 (D, Nev. 1985).).

Court "must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege – . . . [the court] may not apply the doctrine to prejudice an innocent third party."[33]

16. In analyzing the viability, or lack thereof, of the alter ego claims, in addition to applying federal law factors, the Court should also look to applicable state law requirements relating to alter ego.[34] Since the instant case is based on diversity jurisdiction, not federal question jurisdiction, and the claim at issue here is a simple breach of contract claim, not a securities fraud claim, the Court should look to state law in determining the alter ego question. Furthermore, since the receivership is merely procedural mechanism, not a form of relief, and since Q&C has no existing obligations to Farm Credit, Farm Credit would ultimately have to prove alter ego status under Tennessee law in order to actually make Q&C liable for any debts owed by Uncle Nearest to Farm Credit. Consequently, even if federal law still controls the question of expansion of the receivership, a relevant factor for the Court to consider within the federal standards is whether Farm Credit has a reasonable likelihood of maintaining a claim for alter ego under state law based on the facts presently before the Court.

17. In applying the federal factors first, as set forth in the Court's September 30 Order, neither the Receiver nor Farm Credit has identified any specific assets of the receivership that are to be protected with respect to Q&C. So, out of the gate, the Movants' effort to expand the receivership to include Q&C must fail because the expansion of the receivership is not necessary "to safeguard assets and prevent their dissipation." Further, Farm Credit has not established that Q&C was funded by proceeds of some fraudulent scheme perpetrated by Uncle Nearest or any other bad actor, as is sometimes used to justify expanding receiverships to non-parties in cases

---

[33] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[34] *See id.*

where the public at large has been defrauded, such as in securities fraud actions and consumer fraud cases.[35] This receivership is based on a breach of contract claim, not a fraud claim.

18. The Movants' effort also fails because they can't meet the bare requirements that would be relevant to a determination that Q&C should have a receiver appointed. The Motion to Clarify and the Statement by Farm Credit go far beyond what is simply an effort to protect assets that are property of the receivership from dissipation—this is an effort to wrest control over Q&C based on mere allegations of potential facts and on factors significantly less rigorous than the very factors that the Court required to be considered in appointing the Receiver over Uncle Nearest in the first place. While Uncle Nearest had pledged all of its assets to secure the debt to Farm Credit, Q&C is not liable on any debts to Farm Credit and has not pledged any of its assets to secure debts owed to Farm Credit. Q&C is not a party to the Loan Documents and it has not defaulted on any obligations to Farm Credit. Q&C should have at least an equivalent right to the same analysis and burden of proof for divesting its board of control over the business as Uncle Nearest's board had in its defense of the initial Receivership Motion.

19. In the deciding the Receivership Motion, this Court noted multiple factors used by courts in the Sixth Circuit:

> (1) Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
>
> (2) Whether the Defendants have engaged in fraudulent conduct;
>
> (3) Whether legal remedies are inadequate;
>
> (4) Whether less drastic equitable remedies are available;
>
> (5) The likelihood that the appointment of a receiver would do more good than harm;

---

[35] *See, e.g., SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

(6) Whether there is inadequate security for the debts; and

(7) Whether the debtor is insolvent.[36]

20. Even if all of the allegations in the Motion to Clarify, Farm Credit's Statement, and the Receiver's other filings were assumed factually correct (they are not), those allegations still fail to establish the factors necessary for the appointment of a receiver with respect to Q&C. The Movants have not identified any specific "property at issue" held by Q&C in which the Receivership Estate has an interest, much less made any showing that such property is in imminent danger of being diminished. The Movants have made no showing that Q&C has engaged in fraudulent conduct. Farm Credit has no legal or equitable remedies to assert against Q&C because Q&C is not obligated on any of the Farm Credit Loans, so there is no basis to say the legal remedies are inadequate or that less drastic equitable remedies are not available or even justified.

21. Expansion of the Receivership to include Q&C would do more harm than good. Placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the Receivership Estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit of putting the company into receivership.

22. Since Q&C is not obligated on the Farm Credit Loans and holds no collateral securing those Loans, the question of the adequacy of Farm Credit's security has no relevance.

---

[36] Dkt. 32, at 4 (citing *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015)).

23. Finally, Farm Credit has not provided any material evidence that Q&C is insolvent or has been funded by assets of the Corporate Defendants. In sum, with respect to Q&C, the Movants cannot prove any of the same factors with respect to Q&C that this Court weighed in determining that Uncle Nearest should be under receivership control.

24. Since the Movants are disguising a general piercing of the corporate veil argument in the form of expansion of the receivership without identifying a single asset held by Q&C that is collateral to Farm Credit or that belongs to the Receivership Estate, the effort should be dismissed out of hand as inappropriate. At a minimum, the Movants should be required in this diversity action to meet the standard for piercing the corporate veil under state law.[37]

25. The Sixth Circuit has held that "[u]nder the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located."[38] "When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits."[39] Since this Court sits in Tennessee, Tennessee law is applicable with respect to the question of piercing the corporate veil and alter ego analysis.

26. Earlier this year, in *Youree v. Recovery House of E. Tenn., LLC*,[40] the Tennessee Supreme Court comprehensively addressed the state of the law in Tennessee regarding "alter ego" claims and piercing the corporate veil. First, the court noted that the term "alter ego" was simply

---

[37] *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[38] *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).
[39] *Id.*
[40] 705 S.W.3d 193, 206-12 (Tenn. 2025).

a "rhetorical device or picturesque term" that only confuses the fact that what is actually sought is piercing of the corporate veil.[41] The court also recognized that corporate separateness is presumed and that Tennessee courts give substantial weight to that presumption.[42]

27. The court then confirmed the three elements, first articulated in *Continental Bankers Life Insurance Co. of the South v. Bank of Alamo*,[43] that have to be proved in order to pierce a corporate veil as follows:

> (1) Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;
>
> (2) The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and
>
> (3) The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.[44]

28. The *Youree* court further found that certain factors outlined in *Federal Deposit Ins. Corp. v. Allen*,[45]

> have their place in the analysis . . . [but] do not constitute a separate test. They are merely a list of circumstances that often may be relevant to the existence of one or more of the three *Continental Bankers* elements. Thus, the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established.[46]

The *Allen* factors are as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual;

---

[41] *Id.* at 208.
[42] *Id.* at 207.
[43] 578 S.W.2d 625 (Tenn. 1979).
[44] *Id.* at 637.
[45] 584 F. Supp. 386 (E.D. Tenn. 1984).
[46] *Youree*, 705 S.W.3d at 211.

(5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's-length relationships among related entities.[47]

The *Youree* court then further cautioned

> that checking items off a list is not a substitute for a purposive analysis of whether the *Continental Bankers* elements have been established. Regardless of the specific circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.[48]

29. Since the Motion before the Court is not predicated on protecting any specific assets of the Receivership, it should be treated as simply a claim to pierce the corporate veil and should be granted or denied based on whether Farm Credit can carry its burden to prove that such Q&C is an alter ego of Uncle Nearest under Tennessee law.

30. As the Tennessee Supreme Court recently pronounced, the factors relevant to determining whether to pierce the corporate veil are those factors originally set forth in the *Continental Bankers* case. Neither the Receiver's Motion to Clarify nor Farm Credit's Statement address in any meaningful way this applicable standard with respect to Q&C.

31. As to the first *Continental Bankers* element—"[c]ontrol over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own"— the only transactions at issue have been explained and do not show that Q&C exercised control over the finances, policy, or business practices of any of the Uncle Nearest Defendants, or vice versa. The

---

[47] *Id.* at 210 (*quoting Allen*, 584 F. Supp. at 397).
[48] *Id.* at 212.

finances of Q&C and the Uncle Nearest entities were completed through separate and distinct bank accounts and were arms-length transactions.

32. As to the second *Continental Bankers* element—"The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights"— the Movants have not submitted any evidence that Q&C controlled Uncle Nearest, or vice versa, in order to commit fraud or wrong, perpetuate the violation of a statutory or positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights.

33. As to the third *Continental Bankers* element—"The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of"— since Farm Credit has failed to even establish facts sufficient to satisfy the first two elements, it is impossible for Farm Credit and the Receiver to prove that the first two elements were the proximate cause of any injury or unjust loss to Farm Credit or any other creditor. The transactions that have been identified by Farm Credit are all legitimate transactions supported by documentation and business purposes that benefited Uncle Nearest. There is no proximate causation to any injury alleged by Farm Credit.

34. In sum, application of the *Continental Bankers* factors to Q&C shows that the Movants have not met, and cannot meet, their burden of proof.

35. Farm Credit's references to an un-executed and unconsummatted PSA, standing alone, does not create a basis for piercing the corporate veil or expanding the receivership. In the absence of any evidence that could be deemed to satisfy any of the standards for instituting a receivership, expanding a receivership or piercing the corporate veil, there is simply no legal or factual basis to conclude that the receivership should be expanded to include Q&C or any of its

assets. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

WHEREFORE, Q&C respectfully requests that the Court decline to expand the receivership to include Q&C or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

/s/ Michael E. Collins
Michael E. Collins    (TN Bar No. 16036)
S. Marc Buchman      (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Quill & Cask Owner, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins