| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 4:25-cv-38** |
| | ) | |
| v. | ) | **Judge Atchley** |
| | ) | |
| **UNCLE NEAREST, INC., et al.,** | ) | **Magistrate Judge Steger** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUPPLEMENTAL BRIEF OF NASHWOOD, INC. RELATING TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT**

Nashwood, Inc. ("Nashwood"), by and through its undersigned counsel, provides this supplemental brief with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] through which the Receiver and Farm Credit (collectively, the "Movants") seek to divest Nashwood, and its board and shareholder, of their control of the company and place the company and its assets into receivership. In support of this Brief, Nashwood incorporates the Declaration of Keith Weaver, which is attached as **Exhibit 1**, and asserts and alleges as follows:

## BACKGROUND

1. On October 21, 2025, Nashwood filed its initial response to the Motion to Clarify and the Farm Credit Statement. This Supplemental Brief provides the underlying documentation

---

[1] Dkt. 41.
[2] Dkt. 44.

of the transactions involving Nashwood and Uncle Nearest, a description of the business purposes behind those transactions, and proof of no commingling of the finances of Uncle Nearest and Nashwood. Further, this Supplemental Response provides documentation as to the adherence to corporate formalities by Nashwood which demonstrates that Nashwood and Uncle Nearest are not alter egos.

2.      Nashwood is a Delaware C Corporation that was incorporated on July 3, 2019.[3] Nashwood is owned 100% by Keith Weaver.[4]

3.      Nashwood has its own tax id number that is distinct from the tax id numbers of Uncle Nearest, Inc., Nearest Green Distillery, Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Entities").[5] Nashwood is not in a parent or subsidiary relationship with any of the Uncle Nearest Entities.[6]

4.      Nashwood provided certain consulting, project management, and event management services, along with preparation of applications that resulted in approximately $500,000 in grants and incentives, to Uncle Nearest during January through August 2024 at the flat rate of $10,000 per month.[7] The invoices were properly documented by Nashwood and invoiced to the applicable Uncle Nearest entity.[8] On April 17, 2024, Uncle Nearest paid Nashwood $10,000 and paid an additional $20,000 on August 6, 2024, both payments being applied toward the open balance.[9] Similarly, Nashwood was paid in July 2024 the sum of $2,699.85 for services related to the Love & Whiskey Tour that was put on by Uncle Nearest in 2024.[10] Other amounts

---

[3] Exhibit 1, ¶ 33.
[4] Exhibit 1, ¶ 33.
[5] Exhibit 1, ¶ 33.
[6] Exhibit 1, ¶ 36.
[7] Exhibit 1, ¶ 36.
[8] Exhibit 1, ¶ 36.
[9] Exhibit 1, ¶ 36.
[10] Exhibit 1, ¶ 36.

were paid by Uncle Nearest for services rendered by Nashwood as invoiced. An outstanding balance of $50,000 remains due from the Uncle Nearest Entities.[11]  The documentation clearly shows adherence to the corporate form and no commingling of funds.

5.     Nashwood is not, and has never been, liable for the alleged debts of the Uncle Nearest entities to Farm Credit.[12]  Nashwood has not pledged any assets to secure the debts of the Uncle Nearest entities to any creditor, including Farm Credit.[13]  Nashwood holds no property that is an asset of any of the Uncle Nearest entities or of the Receivership Estate.[14]

6.     Nashwood formerly owned the Tolley House Bed and Breakfast (the "Tolly House") but no longer owns that asset.[15]  The Tolly House, which is connected to Jack Daniels, was rented from time to time by Uncle Nearest for guest stays and special events.[16] Otherwise, the Tolly House has no connection to and is not an asset of (and has never been an asset of) any of the Uncle Nearest Entities.[17] Nashwood sold its interest in the Tolley House in September 2024 and no longer has any interest, direct or indirect, in that property.[18]

7.     Nashwood provides, or has provided, management services for Classic Hops, Humble Baron, Shelbyville Barrel House BBQ, and Shelbyville Grand, LLC.[19]   However, Nashwood is not an equity holder of any of those entities and some entries in the Uncle Nearest's accounting records referring to Nashwood likely simply reflected the management relationship that Nashwood has, or has had, with respect to those entities.[20]  It is noteworthy that none of those

---

[11] Exhibit 1, ¶ 36.
[12] Exhibit 1, ¶ 34.
[13] Exhibit 1, ¶ 34.
[14] Exhibit 1, ¶ 34.
[15] Exhibit 1, ¶ 35.
[16] Exhibit 1, ¶ 35.
[17] Exhibit 1, ¶ 35.
[18] Exhibit 1, ¶ 35.
[19] Exhibit 1, ¶ 39.
[20] Exhibit 1, ¶ 39.

entities are the Uncle Nearest Entities so it is unclear how that would support an argument that Nashwood is an alter ego of the Uncle Nearest Entities in any event.

8.     The Receiver has all of the requested bank statements for Nashwood accounts x9128 and x6052 at CalPrivate Bank.[21] The Receiver has not requested any records from Nashwood other than bank statements and all such requested records have been provided.[22]

9.     In the Receiver's Declaration, the Receiver erroneously aggregates transactions between the Non-Parties, between the Non-Parties or Receivership Entities with "Unknown Accounts," and between the Non-Parties and the Receivership Entities, and concludes that the volume of such transactions is, itself, evidence of commingling. First, his argument that transactions between Non-Parties, which do not involve the Receivership Entities, is somehow evidence of commingling with the Receivership Entities completely defies logic. Likewise, his argument that transactions between the Non-Parties or Receivership Entities with "Unknown Accounts" is evidence of commingling between the Non-Parties and the Receivership Entities is hard to even comprehend. His inability to identify the "Unknown Accounts" is simply evidence that he has not done even a basic amount of due diligence on this matter and nothing more. Finally, his assertion that the quantity of transactions between the Non-Parties and the Receivership Entities is evidence of commingling without reference to the specifics of the particular transactions and without any evidence of a lack of legitimate business purpose to each such transaction is invalid. The simple fact that a transaction or transactions occurred is not evidence of commingling in the absence of proof that the transactions lacked a legitimate business purpose for each entity involved in the transaction.

---

[21] Exhibit 1, ¶ 39.
[22] Exhibit 1, ¶ 39.

10.    To the extent that the Receiver bases his argument on his need for further information about transactions, the Receiver has not demonstrated that placing Nashwood in receivership is the least intrusive way to get that information. The Receiver has not requested any information from Humble Baron other than the bank records, all of which have been provided.[23] The Receiver has not asserted or alleged that he has requested any information from Humble Baron that has not been provided.  Consequently, the Receiver hasn't even taken the first most basic step to obtain information regarding transactions between Humble Baron and the Receivership Entities, much less sought to subpoena documents or depose relevant individuals regarding such transactions.  Clearly, less intrusive measures than receivership are available to obtain information relating to the transactions. Consequently, placing Humble Baron in receivership is unwarranted and inappropriate.

11.    The Receiver has not identified any specific property held by Nashwood that is property of the Receivership Estate. In fact, neither Nashwood nor any of its assets is property of the Receivership Estate.[24]

## ARGUMENT

12.    In this diversity action, the law of Tennessee is applicable.[25]  The Movants seeking to include Nashwood in the receivership have the burden of proving entitlement to that relief.[26]

---

[23] Exhibit 1, ¶ 39.

[24] Exhibit 1, ¶ 38.

[25] "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426-27, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id*. at 427; *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum state.").

[26] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005)(holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)( "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.")(citing  *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

13.     As the Court noted in its September 30 Order, "[c]ourts have broad power and wide discretion to oversee the administration of a receivership."[27]  Further, the Court has the power to expand a receivership where the expansion is necessary to effectively safeguard assets of the receivership.[28]  It is noteworthy that the vast majority of federal cases dealing with federal equity receiverships arise in securities fraud cases instituted by the SEC or other consumer fraud contexts. In the context of diversity jurisdiction, the courts have found that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations."[29]

14.     The cases addressing this issue indicate that expansion of a receivership estate should be done only "with utmost caution and justified only where there is a necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties."[30]  Where the requested expansion of a receivership is to bring in another company based on the doctrine of alter ego, the Court "must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege –  . . . [the court] may not apply the doctrine to prejudice an innocent third party."[31]

15.     In analyzing the viability, or lack thereof, of the alter ego claims, in addition to applying federal law factors, the Court should also look to applicable state law requirements relating to alter ego.[32] Since the instant case is based on diversity jurisdiction, not federal question

---

[27] *Consumer Fin. Prot. v. Strafs, LLC*, No. 24-CV-40-EAW-MJR, 2025 U.S. Dist. LEXIS 98061, at *28 (W.D.N.Y. May 22, 2025)
[28] *See id*.
[29] *See, e.g.*, *Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).
[30] *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-cv-60462-BLOOM/Valle, 2021 U.S. Dist. LEXIS 83769, *5 (S.D. Fla. May 3, 2021)(*quoting SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062, at *2 (D, Nev. 1985).).
[31] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[32] *See id*.

jurisdiction, and the claim at issue here is a simple breach of contract claim, not a securities fraud claim, the Court should look to state law in determining the alter ego question. Furthermore, since the receivership is merely procedural mechanism, not a form of relief, and since Nashwood has no existing obligations to Farm Credit, Farm Credit would ultimately have to prove alter ego status under Tennessee law in order to actually make Nashwood liable for any debts owed by Uncle Nearest to Farm Credit. Consequently, even if federal law still controls the question of expansion of the receivership, a relevant factor for the Court to consider within the federal standards is whether Farm Credit has a reasonable likelihood of maintaining a claim for alter ego under state law based on the facts presently before the Court.

16.     In applying the federal factors first, as set forth in the Court's September 30 Order, neither the Receiver nor Farm Credit has identified any specific assets of the receivership that are to be protected with respect to Nashwood. So, out of the gate, the Movants' effort to expand the receivership to include Nashwood must fail because the expansion of the receivership is not necessary "to safeguard assets and prevent their dissipation." Further, Farm Credit has not established that Nashwood was funded by proceeds of some fraudulent scheme perpetrated by Uncle Nearest or any other bad actor, as is sometimes used to justify expanding receiverships to non-parties in cases where the public at large has been defrauded, such as in securities fraud actions and consumer fraud cases.[33] This receivership is based on a breach of contract claim, not a fraud claim.

17.     The Movants' effort also fails because they can't meet the bare requirements that would be relevant to a determination that Nashwood should have a receiver appointed. The Motion to Clarify and the Statement by Farm Credit go far beyond what is simply an effort to protect assets

---

[33] *See, e.g., SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

that are property of the receivership from dissipation—this is an effort to wrest control over Nashwood based on mere allegations of potential facts and on factors significantly less rigorous than the very factors that the Court required to be considered in appointing the Receiver over Uncle Nearest in the first place. While Uncle Nearest had pledged all of its assets to secure the debt to Farm Credit, Nashwood is not liable on any debts to Farm Credit and has not pledged any of its assets to secure debts owed to Farm Credit. Nashwood is not a party to the Loan Documents and it has not defaulted on any obligations to Farm Credit. Nashwood should have at least an equivalent right to the same analysis and burden of proof for divesting its board of control over the business as Uncle Nearest's board had in its defense of the initial Receivership Motion.

18. In the deciding the Receivership Motion, this Court noted multiple factors used by courts in the Sixth Circuit:

> (1) Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
>
> (2) Whether the Defendants have engaged in fraudulent conduct;
>
> (3) Whether legal remedies are inadequate;
>
> (4) Whether less drastic equitable remedies are available;
>
> (5) The likelihood that the appointment of a receiver would do more good than harm;
>
> (6) Whether there is inadequate security for the debts; and
>
> (7) Whether the debtor is insolvent.[34]

19. Even if all of the allegations in the Motion to Clarify, Farm Credit's Statement, and the Receiver's other filings were assumed factually correct (they are not), those allegations still fail to establish the factors necessary for the appointment of a receiver with respect to Nashwood. The Movants have not identified any specific "property at issue" held by Nashwood in which the

---

[34] Dkt. 32, at 4 (citing *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015)).

Receivership Estate has an interest, much less made any showing that such property is in imminent danger of being diminished. The Movants have made no showing that Nashwood has engaged in fraudulent conduct. Farm Credit has no legal or equitable remedies to assert against Nashwood because Nashwood is not obligated on any of the Farm Credit Loans, so there is no basis to say the legal remedies are inadequate or that less drastic equitable remedies are not available or even justified. To the extent that the Receiver believes that the Receivership Estate has claims against Nashwood, the Receiver can seek a judgment against Nashwood, so there is an adequate legal remedy. Furthermore, the Receiver has not even asked Nashwood's management for additional information relating to the noted transaction and has not sought to obtain the information through discovery, so there are clearly less drastic means still available for the Receiver to obtain information relating to the transactions in question.

20. Expansion of the Receivership to include Nashwood would do more harm than good. The disruption to its operations, which includes providing management services to other entities and pursuing related business opportunities, that would result from being placed under receivership would cause significant financial damages similar to the financial losses to the Uncle Nearest entities that have been caused by the Receivership, as even recognized by the Receiver. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the Receivership Estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit of putting the company into receivership.

21.     Since Nashwood is not obligated on the Farm Credit Loans and holds no collateral securing those Loans, the question of the adequacy of Farm Credit's security has no relevance.

22.     Finally, Neither the Receiver nor Farm Credit has provided any material evidence that Nashwood is insolvent or has been funded by assets of the Uncle Nearest entities.  In sum, with respect to Nashwood, the Movants cannot prove any of the same factors with respect to Nashwood that this Court weighed in determining that Uncle Nearest should be under receivership control.

23.     Since the Movants are disguising a general piercing of the corporate veil argument in the form of expansion of the receivership without identifying a single asset held by Nashwood that is collateral to Farm Credit or that belongs to the Receivership Estate, the effort should be dismissed out of hand as inappropriate.  At a minimum, the Movants should be required in this diversity action to meet the standard for piercing the corporate veil under state law.[35]

24.     The Sixth Circuit has held that "[u]nder the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located."[36] "When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits.[37] Since this Court sits in Tennessee, Tennessee law is applicable with respect to the question of piercing the corporate veil and alter ego analysis.

---

[35] *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[36] *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).
[37] *Id*.

25.     Earlier this year, in *Youree v. Recovery House of E. Tenn., LLC*,[38] the Tennessee Supreme Court comprehensively addressed the state of the law in Tennessee regarding "alter ego" claims and piercing the corporate veil. First, the court noted that the term "alter ego" was simply a "rhetorical device or picturesque term" that only confuses the fact that what is actually sought is piercing of the corporate veil.[39] The court also recognized that corporate separateness is presumed and that Tennessee courts give substantial weight to that presumption.[40]

26.     The court then confirmed the three elements, first articulated in *Continental Bankers Life Insurance Co. of the South v. Bank of Alamo*,[41] that have to be proved in order to pierce a corporate veil as follows:

> (1) Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;
>
> (2) The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and
>
> (3) The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.[42]

27.     The *Youree* court further found that certain factors outlined in *Federal Deposit Ins. Corp. v. Allen*,[43]

> have their place in the analysis . . . [but] do not constitute a separate test. They are merely a list of circumstances that often may be relevant to the existence of one or more of the three *Continental Bankers* elements. Thus, the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established.[44]

---

[38] 705 S.W.3d 193, 206-12 (Tenn. 2025).
[39] *Id.* at 208.
[40] *Id.* at 207.
[41] 578 S.W.2d 625 (Tenn. 1979).
[42] *Id.* at 637.
[43] 584 F. Supp. 386 (E.D. Tenn. 1984).
[44] *Youree*, 705 S.W.3d at 211.

The *Allen* factors are as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's-length relationships among related entities.[45]

The *Youree* court then further cautioned

> that checking items off a list is not a substitute for a purposive analysis of whether the *Continental Bankers* elements have been established. Regardless of the specific circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.[46]

28. Since the Motion before the Court is not predicated on protecting any specific assets of the Receivership, it should be treated as simply a claim to pierce the corporate veil and should be granted or denied based on whether Farm Credit can carry its burden to prove that Nashwood is an alter ego of Uncle Nearest under Tennessee law.

29. As the Tennessee Supreme Court recently pronounced, the factors relevant to determining whether to pierce the corporate veil are those factors originally set forth in the *Continental Bankers* case. Neither the Receiver's Motion to Clarify nor Farm Credit's Statement address in any meaningful way this applicable standard with respect to Nashwood.

30. As to the first *Continental Bankers* element—"[c]ontrol over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the

---

[45] *Id.* at 210 (*quoting Allen*, 584 F. Supp. at 397).
[46] *Id.* at 212.

entity, as to that transaction, had no separate mind, will, or existence of its own"— the only transactions at issue have been explained and do not show that Nashwood exercised control over the finances, policy, or business practices of any of the Uncle Nearest Defendants, or vice versa. To the extent that any level of control was exercised, it was limited to the scope of the project management task that was separately invoiced, and not any control over the bank accounts or general operations of any of the Uncle Nearest entities.

31.     As to the second *Continental Bankers* element—"The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights"— the Movants have not submitted any evidence that Nashwood controlled Uncle Nearest, or vice versa, in order to commit fraud or wrong, perpetuate the violation of a statutory or positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights.

32.     As to the third *Continental Bankers* element—"The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of"— since Farm Credit has failed to even establish facts sufficient to satisfy the first two elements, it is impossible for Farm Credit and the Receiver to prove that the first two elements were the proximate cause of any injury or unjust loss to Farm Credit or any other creditor. The transactions that have been identified by the Receiver's accountant are all legitimate transactions supported by documentation and business purposes that benefitted the Uncle Nearest entities.  There is no proximate causation to any injury alleged by Farm Credit.

33.     In sum, application of the *Continental Bankers* factors to Nashwood shows that the Movants have not met, and cannot meet, their burden of proof.

WHEREFORE, Nashwood respectfully requests that the Court decline to expand the receivership to include Nashwood or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

/s/ Michael E. Collins

Michael E. Collins    (TN Bar No. 16036)
S. Marc Buchman    (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Nashwood, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*

Michael E. Collins