# SALE OF FUTURE RECEIPTS AGREEMENT

**DIVERSE CAPITAL**

**PHONE:** (833) 373-7220 | **EMAIL:** SUBMIT@DIVERSECAPITALLLC.COM

This Sale of Future Receipts Agreement ("Agreement") effective, 06/26/2024, is made by and between Diverse Capital, LLC ("Buyer"), the business identified below ("Seller"), and each Guarantor identified below (each a "Guarantor").

| Seller's Legal Name(s) | Form of Business Entity |
|---|---|
| UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H) | CORPORATION |

| D/B/A | Seller's Tax ID |
|---|---|
| UNCLE NEAREST | ███5348 |

| Primary Seller(s) Address | City, State | Zip | State of Incorporation |
|---|---|---|---|
| ████ | ████ | ███ | TN |

| Primary Seller(s) Mailing Address | City, State | Zip |
|---|---|---|
| ████ | ████ | ███ |

**Primary Contact Person**

| Name | Title | Phone Number | Email | Social Security |
|---|---|---|---|---|
| FAWN EVETTE WEAVER | OWNER/AGENT/MANAGER | ████ | ████ | ████ |

## Purchase Information

The transaction contemplated by this Agreement is a purchase of Future Receipts. "Future Receipts" means all payments received by Seller, or its right to receive such payments, in the ordinary course of Seller's business, including but not limited to (a) payments made by cash, check, Automated Clearing House ("ACH") or other electronic transfer; (b) payments, or rights to payments, made by credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card"); or (c) payments made by any other form. The term "Future Receipts" includes Seller's accounts and payment intangibles. You will deliver the entire Purchased Amount of Future Receipts to us over time by allowing us to debit the Periodic Amount (which is subject to adjustment) on each Remittance Day. We will debit the Periodic Amount from one or more deposit accounts authorized by you for this purpose (each, an "Authorized Account") – (Appendix A).

| Purchase Price Paid to Seller | Purchased Amount of Future Receipts | Specified Percentage | Periodic Frequency |
|---|---|---|---|
| $ 700,000.00 | $ 1,021,300.00 | 20% | Weekly |

| Periodic Amount $ 31,915.63 | **How we calculated the Periodic Amount** The Periodic Amount is an estimate of the Specified Percentage of the average sales revenue we expect you will receive in the future. We based the Periodic Amount on information you made available to us to calculate your average revenue over a period of time prior to the date of this Agreement. Beginning on the first Remittance Day, the Periodic Amount will be the amount identified here. You have the right to adjust the Periodic Amount to better reflect actual revenue as it changes over time. Please refer to Section 7 (Reconciliation Process) for how you can adjust the Periodic Amount. |
|---|---|

Remittance Days will occur (The option marked ☒ applies):

☐ Every Business Day (i.e., Monday through Friday, excluding bank holidays)
☒ Weekly*
☐ Monthly*

*We will notify you of the day or days on which each Remittance Day will occur.

**Amounts Deducted from Purchase Price:**

| | | |
|---|---|---|
| Purchase Price | $ 700,000.00 | |
| Prior Balance(s) | - $ 0.00 | (If applicable) paid to Buyer and/or third parties |
| Wire Fee | - $ 0.00 | (If applicable) |
| Origination Fee | - $ 35,000.00 | |
| Net Amount Funded to Seller | $ 665,000.00 | This is the Purchase Price minus the Total Amount Deducted from Purchase Price. This is the total dollar amount of funds to be deposited into your Authorized Account. |

1. **Sale of Future Receipts.** Seller hereby sells and assigns to Buyer, without recourse, the Purchased Amount of Future Receipts described above. As payment for the Purchased Amount, Buyer agrees to pay Seller the Purchase Pr⸺ d Seller will receive funds equal to the Net Funded Amount.

*FEW  FEW*

Farm Credit v Uncle Nearest, et al Plaintiff's Exhibit 4 4:25-CV-00038

2. **Multiple Sellers.** If more than one person or entity is listed as a Seller above, then the term "Seller" refers collectively to all Sellers who have signed the signature page of this Agreement. The term "Future Receipts" refers to the Future Receipts of each Seller and the calculation of the initial Periodic Amount and any adjustment to the Periodic Amount shall be based on an aggregate of the actual or projected sales revenue of all the Sellers. Each Seller agrees that Buyer's purchase of Future Receipts hereunder constitutes a purchase of the Future Receipts of all the Sellers. Each Seller agrees that it is jointly and severally liable to Buyer for the obligation to deliver the Purchased Amount from its own Future Receipts. Each Seller agrees that the release of any other Seller from any obligations under this Agreement, whether in whole or in part, will not limit, reduce, release, or impair such Seller's obligations to Buyer, including the obligation to deliver the undelivered balance of the Purchased Amount. Each Seller designates the Primary Contact Person identified above as its authorized representative for all purposes related to this Agreement and any related transactions. Buyer may treat any notice or instruction received from the Primary Contact Person as a notice or instruction from all Sellers.

3. **Buyer's Acceptance of Agreement.** The obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Net Amount Funded to Seller, shown above. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to Seller's Account, shown above (the "Account") and the ability to withdraw the Initial Periodic Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

4. **Delivery of Purchased Amount.** If Remittance Days are to occur weekly or bi-weekly, then Buyer will notify Seller on or before the date Buyer has accepted this Agreement, of the day of the week on which Remittance Days will occur. The Purchased Amount will be delivered to Buyer each Remittance Day in a series of remittances each equal to the Periodic Amount. Seller authorizes Buyer to debit an Authorized Account on each Remittance Day, by initiating an ACH debit entry or by creating a remotely created check or electronically created item, in the amount of the initial Periodic Amount or, following any adjustment pursuant to Section 7 (Reconciliation Process) the adjusted Periodic Amount. For this purpose, Seller shall provide Buyer with all required account information and will provide an appropriate ACH authorization to Buyer. Seller agrees not to change any account information without prior written consent from Buyer. If a Remittance Day occurs on a bank holiday, Seller authorizes Buyer to debit the Periodic Amount on the next day on which Seller's bank is open. If any ACH entry, check, or electronically created item is returned or rejected for insufficient funds, then Seller will pay Buyer a returned entry fee of $50. In addition, Seller will reimburse Buyer for any charges incurred by Buyer resulting from the returned ACH entry, check, or electronically created item. Buyer is not responsible for any overdrafts or rejected transactions that may result from Buyer's debiting any amount authorized under the terms of this Agreement.

5. **Early Delivery Option.** Seller may at its option elect to pay the remaining balance of the Purchased Amount to Buyer on an accelerated basis in a discounted amount described in the Early Delivery Schedule attached to this Agreement (the "Early Delivery Option"). The Early Delivery Option is subject to the following conditions: (a) the funds used to pay the discounted amount must not have been obtained from Buyer; and (b) Seller is not in breach of this Agreement at the time Seller exercises the Early Delivery Option.

6. **Changing the Remittance Day.** The parties may change the frequency of the Remittance Day pursuant to this Section. The effective date of any change to the Remittance Day is referred to herein as the "Change Effective Date". Any change to the Remittance Day will be accompanied by a change to the Periodic Amount immediately following the Change Effective Date. The process for requesting changes to the Remittance Day and calculation of the Periodic Amount is described below.

    a. <u>Changing Remittance Day to occur each Business Day.</u> Either Buyer or Seller may request that a weekly or monthly Remittance Day be changed to occur on each Business Day. The party requesting a change must notify the other party in accordance with Section 22 (Notices). The Change Effective Date shall take effect promptly, but no later than one week from the date such notice is either sent or received by Buyer. Immediately after the Change Effective Date, the new Periodic Amount shall be adjusted to an amount equal to: (a) the Periodic Amount immediately prior to the Change Effective Date, divided by five (in the case of a change from a weekly Remittance Day) or twenty (in the case of a change from a monthly Remittance Day).

    b. <u>Changing Remittance Day to occur weekly or monthly.</u> When the Remittance Day is scheduled to occur each Business Day, the Remittance Day may be changed to occur weekly or monthly, but only if both parties agree to such change in writing (which may be memorialized in an electronic record, including email). To be effective, both parties agree on the day each Remittance Day will occur. Immediately after the Change Effective Date, the new Periodic Amount shall be adjusted to an amount equal to: (a) the Periodic Amount immediately prior to the Change Effective Date, multiplied

Agreement Page 2 of 17 | Initial _FEW_ _bEW_

by five (in the case of a change to a weekly Remittance Day) or twenty (in the case of a change to a monthly Remittance Day).

   c.   <u>Effect on reconciliation</u>. Following any Change Effective Date, subsequent adjustments to the Periodic Amount pursuant to Section 7 (Reconciliation Process) shall account for the change in the frequency of the Remittance Day as described above.

   d.   In the event that Seller changes or permits changes to the Account or the ACH authorization approved by the Buyer or adds an additional bank account, Buyer shall have the right, without waiving any of its rights and remedies and without notice to Seller or any Guarantor, to notify the new or additional bank of this Agreement and to direct such new or additional bank to remit to the Buyer all or any portion of the amounts received by such bank. Any such new account shall be deemed an Account.

7. **Reconciliation and Adjusting the Periodic Amount (IMPORTANT PROTECTION FOR SELLER).** The initial Periodic Amount is intended to represent the Specified Percentage of Seller's Future Receipts. At any time, Seller or Buyer may request a reconciliation of Seller's actual revenue to adjust the Periodic Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage.

   a.   **How Seller may Request a Reconciliation**. Call Buyer at [631-520-0020] or email [submit@diversecapitallllc.com].

   b.   **How Buyer may Request a Reconciliation.** Buyer may request a reconciliation in writing via regular mail or e-mail.

   c.   **Reconciliation Review.** After receiving or making a request for reconciliation pursuant to this Agreement, Buyer shall calculate Seller's average revenue for the 30-day period preceding the reconciliation request (the "Review Period"). Seller shall cooperate with any reconciliation by providing bank statements or other records of Seller's actual revenue received during the Review Period ("Reconciliation Information"). Seller shall also provide Buyer with any assistance or other information needed to access or view any Reconciliation Information. Upon receipt of the Reconciliation Information, Buyer shall promptly (but no later than 3 calendar days following such receipt) calculate whether the total of all Periodic Amounts remitted to Buyer during the Review Period was greater than the Specified Percentage of Seller's actual revenue during the Review Period (an "excess") or less than the Specified Percentage of Seller's actual revenue during the Review Period (a "shortfall").

   d.   **Adjusting the Periodic Amount.** Within three (3) calendar days of Buyer's reasonable verification of the Reconciliation Information, Buyer shall adjust the Periodic Amount on a going-forward basis to more closely reflect Seller's actual Receipts times the Specified Percentage. Buyer will notify Seller prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount will be deemed the updated Periodic Amount until any subsequent adjustment.

   e.   **Failure to Provide Reconciliation Information.** If Seller requests a reconciliation and fails to provide the Reconciliation Information within three (3) calendar days after Seller's reconciliation request, Buyer may consider Seller's reconciliation request withdrawn. If Buyer requests a reconciliation and Seller fails to provide the Reconciliation Information within three (3) calendar days after Buyer's reconciliation request, Buyer may adjust the Periodic Amount based on the best information reasonably available to Buyer.

8. **Nonrecourse Sale of Future Receipts (THIS IS NOT A LOAN).** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer. Buyer assumes the risk that Future Receipts may be remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, and the risk that the full Purchased Amount may never be remitted because Seller's business went bankrupt or Seller otherwise ceased operations in the ordinary course of business. Buyer is buying the Purchased Amount knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

9. **Fees and Charges.** A list of all fees and charges applicable under this Agreement is contained in Appendix B. Some or all of the Origination Fee may be paid to a broker. Otherwise, Buyer is NOT CHARGING ANY BROKER FEES to Seller. If Seller is charged another such fee, Seller acknowledges that it is not being charged by Buyer.

Agreement Page 3 of 17 | Initial ___DS___ ___DS___

FEW    FEW

10. **Credit Report and Other Authorizations.** Seller and each of the Guarantors signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of the Guarantors for the purpose of this Agreement, (ii) obtain consumer and business credit reports on the Seller and any of its Owners, and (iii) to contact personal and business references provided by the Seller in the Application, at any time now or for so long as Seller and/or Guarantors continue to have any obligations to Buyer as a consequence of this Agreement or for Buyer's ability to determine Seller's eligibility to enter into any future agreement with Buyer.

11. **Authorization to Contact Current and Prior Banks.** Seller hereby authorizes Buyer to contact any current or prior bank of the Seller in order to obtain whatever information it may require regarding Seller's transactions with any such bank. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Seller and any fees that may have been charged by the bank. In addition, Seller authorizes Buyer to contact any current or prior bank of the Seller for collections and in order to confirm that Seller is exclusively using the Account identified above, or any other account approved by Buyer, for the deposit of all business receipts.

12. **Right to Cancel.** Seller understands that Buyer offers Seller a right to cancel this Agreement at any time within one (1) calendar days after Buyer has delivered the Net Amount Funded. Seller may exercise this right by notifying Buyer that it is cancelling this Agreement and returning the Net Amount Funded to Buyer. For the Seller's right to cancel to be effective, Buyer must receive both the notice and the return of the Net Amount Funded within two (2) calendar days after the Buyer has delivered the Net Amount Funded.

13. **Financial Information.** Seller authorizes Buyer and its agents to investigate its financial responsibility and history, and will provide to Buyer any authorizations, banking or financial statements, tax returns, etc., as Buyer deems necessary and reasonable prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate. Seller waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement.

14. **Transactional History.** Seller authorizes all of its banks and brokers and its Payment Card processor(s) to provide Buyer with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program, or for collections upon a breach of this Agreement.

15. **Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.

16. **Representations, Warranties and Covenants of Seller.** As of the date of this Agreement and, unless expressly stated otherwise, continuing until Buyer has received 1) the Purchased Amount and 2) all fees and charges due under this Agreement, Seller represents, warrants and covenants to Buyer as follows:

    a. **No Diversion of Future Receipts.** Seller must deposit all Future Receipts into the Account on a daily basis and must instruct Seller's credit card processor, which must be approved by Buyer (the "Processor") to deposit all Payment Card receipts of Seller into the Account on a daily basis. Seller agrees not to (i) change the Account, (ii) add an additional Account, (iii) revoke Buyer's authorization to debit the Account, (iv) close the Account without the express written consent of Buyer or, (v) take any other action with the intent to interfere with Buyer's right to collect the purchased Future Receipts.

    b. **Stacking Prohibited.** Seller shall not enter into any merchant cash advance or any loan agreement that relates to or encumbers its Future Receipts or requires daily payments with any party other than Buyer for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision.

    c. **Financial Condition and Financial Information.** Any bank statements and financial statements of Seller that have been furnished to Buyer, and future statements that will be furnished to Buyer, fairly represent the financial condition of Seller at such dates. Furthermore, Seller represents that all documents, forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Seller's financial condition and results of operations at the time they are provided. Seller further agrees to authorize the release of any past or future tax returns to Buyer.

d. **Governmental Approvals.** Seller is in compliance and shall comply with all applicable federal, state and local laws, rules and regulations and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the businesses in which it is presently engaged and/or will engage in hereafter.

e. **Authority to Enter Into This Agreement.** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

f. **Change of Name or Location or Sale or Closing of Business.** Seller will not conduct Seller's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Seller will not voluntarily sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Seller has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Seller will not voluntarily close its business on a temporary basis for renovations, repairs, or any other voluntary purposes. This provision, however, does not prohibit Seller from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Seller. Prior to any such closure, Seller will provide Buyer 5 calendar days' notice to the extent practicable.

g. **No Pending or Contemplated Bankruptcy as of the Date of this Agreement.** As of the date of this Agreement, Seller does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Seller further warrants that as of the date of this Agreement (i) it does not anticipate filing a bankruptcy petition and (ii) it does not anticipate that an involuntary petition will be filed against it.

h. **Seller to Pay Taxes Promptly.** Seller will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

i. **No Violation of Prior Agreements.** Seller's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Seller is subject, including any agreement that prohibits the sale or pledge of Seller's Future Receipts.

j. **Seller's Knowledge and Representation.** Seller represents, warrants, and agrees that it is a sophisticated business entity familiar with the kind of transaction covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel.

k. **Accurate and Complete Information.** Seller represents, warrants, and agrees that all information provided to Buyer and all statements made to Buyer relating to this transaction in any way have been truthful, accurate, and complete. Seller further agrees that Seller will be truthful in all future statements to Buyer, and will provide Buyer with accurate and complete information regarding Seller's business as required by this Agreement.

17. **Rights of Buyer.**

a. **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located ("UCC") then: (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without a breach of this Agreement, Buyer may notify account debtors, or other persons obligated on the Future Receipts, or holding the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Buyer.

b. **Financing Statements.** Seller authorizes Buyer to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Receipts is the sole property of Buyer. The UCC filing may state ⌐DS ⌐DS tended

to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Seller authorizes Buyer to debit the Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.

c. **Right of Access.** In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to (i) enter during regular business hours, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and or batch Seller's daily receipts to the Processor and to ensure that Seller has not violated any other provision of this Agreement, (ii) Seller shall provide access to its employees and records and all other items as requested by Buyer; and (iii) have Seller provide information about its business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties.

d. **Phone Recordings and Contact.** Seller agrees that any call between Buyer and Seller, and their agents and employees may be recorded or monitored. Further, Seller agrees that (i) it has an established business relationship with Buyer, its employees and agents and that Seller may be contacted from time-to-time regarding this or other business transactions, (ii) that such communications and contacts are not unsolicited or inconvenient, and (iii) that any such contact may be made at any phone number, email address, or facsimile number given to Buyer by the Seller, its agents or employees, including cellular telephones.

e. **ACH Authorization.** Seller represents and warrants that (i) the Account is solely owned by Seller; (ii) the person executing this Authorization on behalf of Seller is an authorized signer on the Account and has the power and authority to authorize Buyer to initiate ACH transactions to and from the Account, and (iii) the Account is a legitimate, open, and active bank account used solely for business purposes and not for personal, family or household purposes. If an ACH transaction is rejected by Seller's financial institution for any reason other than a stop payment order placed by Seller with its financial institution, including without limitation insufficient funds, Seller agrees that Buyer may resubmit up to two times any ACH transaction that is dishonored. Seller's bank may charge Seller fees for unsuccessful ACH entries. Seller agrees that Buyer will have no liability to Seller for such fees. In the event Buyer makes an error in processing any payment or credit, Seller authorizes Buyer to initiate ACH entries to or from the Account to correct the error. Seller acknowledges that the origination of ACH entries to and from the Account must comply with applicable law and applicable network rules. Seller agrees to be bound by the Rules and Operating Guidelines of NACHA (formerly known as the National Automated Clearing House Association). Seller will not dispute any ACH transaction initiated pursuant to this Authorization, provided the transaction corresponds to the terms of this Authorization. Seller requests the financial institution that holds the Account to honor all ACH entries initiated in accordance with this Authorization.

18. **Remedies for Seller's Breach of this Agreement.** If Seller violates any term or covenant in this Agreement, Buyer may proceed to protect and enforce its rights including, but not limited to, the following:

a. The Specified Percentage shall equal 100%. The full undelivered Purchased Amount plus all fees and charges (including legal fees) assessed under this Agreement will become due and payable in full immediately.

b. Buyer may enforce the provisions of the Personal Guaranty of Performance against each Guarantor.

c. Seller shall pay to Buyer all reasonable costs associated with Seller's breach. Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Seller, Seller shall be liable for all of Buyer's costs, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

d. Buyer may debit depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on any of Seller's banking accounts for all sums due to Buyer.

e. Subject to arbitration as provided in Section 30 of this Agreement, all rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of breach, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

19. **Modifications, Amendments.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same is in writing and signed by Buyer.

20. **Assignment.** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

21. **Personal Guaranty of Performance.** Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Buyer prompt and complete performance of the following obligations of Seller (the "Guaranteed Obligations"):

    a.  Seller's obligation to not (i) change the Account, (ii) add an additional Account, (iii) revoke Buyer's authorization to debit the Account, (iv) close the Account without the express written consent of Buyer or (v) take any other action with the intent to interfere with Buyer's right to collect the purchased Future Receipts;

    b.  Seller's obligation to not conduct Seller's businesses under any name other than as disclosed to Buyer;

    c.  Seller's obligation to not change any of its places of business without prior written consent by Buyer;

    d.  Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer;

    e.  Seller's obligation to not enter into any merchant cash advance or any loan agreement that relates to or encumbers its Future Receipts with any party other than Buyer for the duration of this Agreement without Buyer's prior written consent; and

    f.  Seller's obligation to provide truthful, accurate, and complete information as required by this Agreement.

22. **Guarantor Waivers.** Buyer does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Personal Guaranty of Performance if it is not notified of: (i) Seller's failure to timely perform any obligation under the Agreement, (ii) any adverse change in Seller's financial condition or business, (iii) Buyer's acceptance of the Agreement, and (iv) any renewal, extension or other modification of the Agreement or Seller's other obligations to Buyer. In addition, Buyer may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Performance Guaranty: (i) renew, extend or otherwise modify the Agreement or Seller's other obligations to Buyer, and (ii) release Seller from its obligations to Buyer. Guarantor shall not seek reimbursement from Seller or any other guarantor for any amounts paid by it under the Agreement or this Performance Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Seller, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Performance Guaranty: (i) subrogation, (ii) reimbursement, (iii) performance, (iv) indemnification, or (v) contribution.

23. **Guarantor Acknowledgement.** Guarantor acknowledges that Guarantor understands the seriousness of the provisions of the Agreement, including the Jury Waiver, Class Action Waiver and Arbitration sections, and has had a full opportunity to consult with counsel their choice, and have consulted with counsel or have decided not to avail themselves of that opportunity.

24. **Notices.**

    a.  **Notices from Buyer.** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller by regular mail or by e-mail, at Buyer's option and Seller consents to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective three days after mailing to Seller's address set forth in this Agreement.

    b.  **Notices from Seller and Guarantor.** Subject to Section 4 of this Agreement, Seller and Guarantor may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Seller and Guarantor to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

25. **Binding Effect, Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, Buyer, Guarantor and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may b[...]'s sole

Agreement Page 7 of 17 | Initial

discretion. Except as set forth in the Arbitration section, this Agreement shall be governed by and construed in accordance with the laws of the state of New York and Florida, without regard to any applicable principles of conflicts of law. Seller and Guarantor understand and agrees that (i) Buyer is located in New York and Florida, (ii) Buyer makes all decisions from Buyer's office in New York, (iii) the Agreement is made in New York and Florida (that is, no binding contract will be formed until Buyer receives and accepts Seller's signed Agreement in New York and Florida), and (iv) Seller's payments are not accepted until received by Buyer in New York. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Buyer so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller and Guarantor agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller and Guarantor waive any right to oppose any motion or application made by Buyer to transfer such proceeding to an Acceptable Forum. Seller and Guarantor further agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

26. **Survival of Representations, Warranties and Covenants.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

27. **Interpretation.** All parties hereto have had the opportunity to review this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice or have been provided sufficient opportunity to have an attorney of their choosing review the Agreement. No construction determinations shall be made against either Party hereto as drafter.

28. **Entire Agreement and Severability.** This Agreement embodies the entire agreement between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

29. **Execution.** Facsimile signatures, or any other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes. The parties agree that if a duly authorized representative of each of the parties signs this Agreement and transmits such Agreement to the other party via facsimile or electronically transmitted portable document format, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. At the request of a party hereto, each other party hereto shall re-execute original forms thereof and deliver them to all other parties. No party hereto shall raise the use of a facsimile machine or electronic transmission in portable document format to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine or electronic transmission in portable document format as a defense to this Agreement and each such party forever waives any such defense. This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement.

30. **Authorization to Contact. Monitoring, Recording, and Solicitations.**

    a. **Authorization to Contact by Phone.** Seller and Guarantor authorize Buyer, its affiliates, agents and independent contractors to contact Seller or Guarantor at any telephone number Seller or Guarantor provide to Buyer or from which Seller or Guarantor places a call to Buyer, or any telephone number where Buyer believes it may reach Seller or Guarantor, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller or Guarantor incurs charges for receiving such communications.

    b. **Authorization to Contact by Other Means.** Seller and Guarantor also agree that Buyer, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller and Guarantor. Seller and Guarantor expressly consent to conduct business by electronic means.

31. **Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur: (1) Any Merchant violates any term or covenant in this Agreement; (2) Any representation or warranty by any Merchant in any Agreement with DIVERSE CAPITAL, LLC that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made; (3) Any Merchant fails to provide DIVERSE CAPITAL, LLC with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period ............... ded for

Agreement Page 8 of 17 | Initial _FEW_ _FEW_

elsewhere in this Agreement; (4) the sending of notice of termination by any Merchant or Guarantor; (5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of DIVERSE CAPITAL LLC other than a bankruptcy filing; (6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of DIVERSE CAPITAL, LLC (7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of DIVERSE CAPITAL, LLC; (8) Any Merchant uses multiple depository accounts without the prior written consent of DIVERSE CAPITAL, LLC; (9) Any Merchant changes the Account without the prior written consent of DIVERSE CAPITAL, LLC (10) DIVERSE CAPITAL, LLC is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant; (11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by DIVERSE CAPITAL, LLC; (12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement; (13) Any Merchant fails to deposit its Receivables into the Account; (14) Any Merchant causes any ACH debit to the Account by DIVERSE CAPITAL, LLC to be blocked or stopped without providing any advance written notice to DIVERSE CAPITAL, LLC, which notice may be given by e-mail to submit@diversecapitalllc.com; or (15) Any Merchant prevents DIVERSE CAPITAL, LLC from collecting any part of the Receivables Purchased Amount; (16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide DIVERSE CAPITAL, LLC with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to submit@diversecapitalllc.com; or (17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with DIVERSE CAPITAL, LLC.

32. **JURY WAIVER. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH PARTY MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ACKNOWLEDGE THEIR RIGHT TO REVIEW THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

33. **CLASS ACTION WAIVER. BUYER, SELLER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTIES AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR A COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT), AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

34. **ARBITRATION. IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR THE FORUM. BUYER WILL PROMPTLY REIMBURSE SELLER OR GUARANTOR FOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER AND GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR GUARANTOR OR THE RELIEF SOUGHT BY SELLER OR GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR FORUM RULES. SELLER AND GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGU____TION**

Agreement Page 9 of 17 | Initial _____

OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

35. <u>RIGHT TO OPT OUT OF ARBITRATION</u>. SELLER AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: DIVERSE CAPITAL, LLC, 323 SUNNY ISLES BLVD STE 503. SUNNY ISLES BEACH, FL 33160, AND 244 5TH AVENUE, SUITE P297, NEW YORK, NY 10001, ATTENTION: ARBITRATION OPT-OUT.

## Signature Section to Sale of Future Receipts Agreement

**Agreement of Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes.

Seller: <u>UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX I)</u>

Agreed to by: <u>FAWN EVETTE WEAVER</u>     **Signature** *FAWN EVETTE WEAVER*
4F66E8E540E849E...

**Agreement of Each Guarantor:** By signing below each Guarantor agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes.

| <u>Notice</u>: | This agreement contains a personal guaranty of performance and by signing below you agree that you will be personally liable for the prompt and complete performance of certain obligations of Seller as described in this Agreement. |
|---|---|

**[Guarantor #1]**

Name: <u>FAWN EVETTE WEAVER</u>   Social Security Number: ███████   **Signature** *FAWN EVETTE WEAVER*
4F66E8E540E849E...

Date: <u>06/26/2024</u> Initials; *FEW*

**[Guarantor #2]**

Name: <u>KEITH EDWARD WEAVER</u>   Social Security Number: ███████   **Signature** *KEITH EDWARD WEAVER*
4EA04C160F5440B...

Date: <u>06/26/2024</u> Initials; *KEW*

| *If Applicable:* |
|---|
| **[Guarantor #3]** |
| Name:_____ Social Security Number:_____ Signature;_____ |
| Date:_____ Initials;_____ |
| **[Guarantor #4]** |
| Name:_____ Social Security Number:_____ Signature;_____ |
| Date:_____ Initials;_____ |

Agreement Page 10 of 17 | Initials; *FEW* *KEW*

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



**APPENDIX A to Authorization Agreement**

### Additional Authorized Accounts

[ UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)                    ] ("Seller") agrees that each of the following is an "Authorized Account" account as described in the Authorization Agreement between Seller and Diverse Capital, LLC ("Buyer"):

| | |
|---|---|
| **Account Name:** (Name of account exactly as it appears on Seller's bank statement) | Uncle Nearest, inc. |
| **Bank Name:** | JP Morgan Chase |
| **ABA Transit/Routing Number:** | ███0021 |
| **Account Number:** | ███1065 |

| | |
|---|---|
| **Account Name:** (Name of account exactly as it appears on Seller's bank statement) | |
| **Bank Name:** | |
| **ABA Transit/Routing Number:** | |
| **Account Number:** | |

| | |
|---|---|
| **Account Name:** (Name of account exactly as it appears on Seller's bank statement) | |
| **Bank Name:** | |
| **ABA Transit/Routing Number:** | |
| **Account Number:** | |

**Seller Information:**

Seller's Name: UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)

Signature of Authorized Representative *FAWN EVETTE WEAVER*
DocuSigned by:
4F66E8E540E849E...

Print Name: FAWN EVETTE WEAVER          Title: OWNER/AGENT/MANAGER

Seller's Tax ID: ███████          Date: 06/26/2024

Agreement Page 11 of 17 | Initials: FEW FEW

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



# LIST OF FEES AND CHARGES

The Agreement provides that Seller shall be liable for the following amounts, in addition to the Purchased Amount of Future Receipts:

1. **Origination Fee as set forth on Page 1 of the Agreement.**

2. **The Wire Fee as set forth on Page 1 of the Agreement.**

3. **All costs Buyer incurs because Seller fails to notify Buyer in a timely manner that the Initial Periodic Amount if any subsequent Periodic Amount will not be available in the Account.**

4. **All costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.**

5. **If Seller breaches the Agreement, all costs of collections, including attorney fees and all costs related to the enforcement of any other remedies available to Buyer.**

6. **In addition to the remedies that are afforded to Buyer as set forth in Section 15 of the Agreement, upon the occurrence of an event of default SET FORTH IN SECTION 31, Buyer shall be entitled to a Default Fee in the amount of $5,000 or 33% of the remaining balance of the Purchased Amount of Future Receipts, whichever is greater.**

7. **ACH Program fee: $299.00 per month for the duration of the Agreement. See Appendix D.**



## AUTHORIZATION AGREEMENT FOR AUTOMATED CLEARING HOUSE TRANSACTIONS

This Authorization Agreement is provided by [ UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H) ]  ("Seller") to Diverse Capital, LLC ("Buyer") pursuant to the Purchase and Sale of Future Receipts Agreement (the "Purchase Agreement") entered into between Seller and Buyer (the "Purchase Agreement"). Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Purchase Agreement.

| | |
|---|---|
| Name of Bank: | JPMorgan Chase Bank, N.A. |
| ABA Transit/Routing #: | ▮▮▮0326 |
| Checking Account #: | ▮▮▮1065 |

Seller hereby authorizes Buyer to present automated clearing house (ACH) debits to the account identified above or to any other account specified in Appendix A to this Authorization Agreement in the amount of any Periodic Amount due on a Remittance, or any other amount due to Buyer from Seller (or otherwise authorized to be debited) under the terms of Purchase Agreement, as it may be amended, supplemented or replaced from time to time. Seller acknowledges that each such identified account is an "Authorized Account" as defined in the Purchase Agreement. Seller also authorizes Buyer to initiate credit entries to deliver the Net Funded Amount to Seller and authorizes Buyer to initiate additional entries (debits and credits) to any Authorized Account to correct any erroneous transfers.

If Seller breaches the Purchase Agreement, Seller authorizes Buyer to debit any and all accounts controlled by Seller or controlled by any entity with the same Federal Tax Identification Number as Seller up to the total amount, including but not limited to, all fees and charges, due to Buyer from Seller under the terms of the Purchase Agreement.

Seller authorizes Buyer to contact Seller's financial institution to obtain available funds information and/or to verify any information Seller has provided about the Authorized Account and to correct any missing, erroneous or out-of-date information.

Seller represents and warrants that each Authorized Account is established and used primarily for commercial/business purposes, and not for consumer, family or household purposes. Seller agrees to be bound by the Rules and Operating Guidelines of Nacha. Seller understands and agrees that any revocation or attempted revocation of this Authorization Agreement will constitute a breach of the Purchase Agreement. In the event that Seller closes an Authorized Account, or the Authorized Account has insufficient funds for any ACH transaction under this Authorization Agreement, Seller authorizes Buyer to contact Seller's financial institution and obtain information (including account number, routing number and available balance) concerning any other deposit account(s) maintained by Seller with Seller's financial institution, and to initiate ACH transactions under this Authorization Agreement to such additional account(s). To the extent necessary, Seller grants Buyer a limited Power of Attorney to take action in Seller's name to facilitate this Authorization Agreement.

Seller understands that the Authorization Agreement is a fundamental condition to induce Buyer to enter into the Purchase Agreement. Consequently, this Authorization Agreement is intended to be irrevocable during the course of the Purchase Agreement and shall remain in full force and effect until Buyer has received all amounts due or that may become due to Buyer under the Purchase Agreement

**Seller Information:** Seller's Name: UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)

Signature of Authorized Representative  *FAWN EVETTE WEAVER*
DocuSigned by:
4F66E8E540E849E...

| | | | |
|---|---|---|---|
| Print Name: | FAWN EVETTE WEAVER | Title: | OWNER/AGENT/MANAGER |
| Seller's Tax ID: | ▮▮▮▮▮ | Date: | 06/26/2024 |

[Provide Voided Check]

*FEW*  *FEW*
—DS  —DS

Agreement Page  13 of 17 | Initials:



**APPENDIX D**

**DIVERSE CAPITAL**

# DC FUND ADDENDUM

This Appendix D is entered on <u>06/26/2024</u>,

by and among Diverse Capital, LLC, ("Buyer"), <u>UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)</u> ("Seller"), and DC Fund, LLC ("DC Fund").

Should any terms of this Appendix D conflict with the Agreement dated as of the date hereof (together with the Agreement Terms and Conditions attached thereto and the appendices attached thereto, and as may be amended, restated or otherwise modified from time to time, the "Agreement"), by and among Buyer, Seller and the Guarantor(s) party thereto, to which this Appendix D is attached, the terms of this Appendix D shall govern and be controlling. Capitalized terms used herein, but not otherwise defined, shall have the same definition as in the Agreement.

Seller represents and warrants that it understands that Buyer must engage a third-party, namely DC Fund, to manage the ACH withdrawals, reporting and deal tracking. For this service, Seller agrees to pay DC Fund a nominal fee of $299.00 per month. This amount is due on the first day of the Agreement and every subsequent thirty days until the Purchased Amount is paid in full to Buyer.

IN WITNESS WHEREOF, the parties hereto have caused this Appendix D to be duly executed as of the date first above written.

Seller: <u>UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)</u>

Agreed to by: <u>FAWN EVETTE WEAVER</u>      Signature; *FAWN EVETTE WEAVER*
‎                                                                                                                    4F66E8E540E849E...

**[Guarantor #1]**
Name: <u>FAWN EVETTE WEAVER</u>   Signature; *FAWN EVETTE WEAVER*          DS *FEW*
‎                                                                                      4F66E8E540E849E...

**[Guarantor #2]**
Name: <u>KEITH EDWARD WEAVER</u>   Signature; *KEITH EDWARD WEAVER*          DS *KEW*
‎                                                                                      4EA04C160F5440B...       Date: <u>06/26/2024</u> Initials;

| **If Applicable:** |
| --- |
| **[Guarantor #3]** <br> Name:_____  Signature;_____  Date:_____ Initials;_____ <br><br> **[Guarantor #4]** <br> Name:_____  Signature;_____  Date:_____ Initials;_____ |

DC Fund, LLC: _____  Signature;_____, its _____(Title)

DS *FEW*   DS *KEW*



**APPENDIX E**

### DIVERSE CAPITAL
# BANK PORTAL INFORMATION

Thank you for accepting an offer from Diverse Capital, LLC. We are looking forward to building a relationship with your business that allows you to reach and exceed your goals. Please note that prior to funding your account, our Underwriting Department needs to see the most recent balance and activity information in real-time as a fraud countermeasure and in order to ensure the health of your business aligns with the terms of your offer. For your convenience, we have three secure options for you to choose from to complete this step. After being completed and executed, please e-mail this Appendix E to your funding specialist.

**Please provide information required for read-only access\* to your business account.**
*\*Be sure to indicate capital or lower-case letters.*

00
**Bank Portal Website:**_____

0
**Username:**_____

0
**Password:**_____

0
**Security Question/Answer 1:**_____

0
**Security Question/Answer 2:**_____

0
**Security Question/Answer 3:**_____

**Any other information necessary to access your account:**

0
_____

0
_____

Agreement Page 15 of 17 | Initials

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



APPENDIX F

**DIVERSE CAPITAL**

# CREDIT REPORT AUTHORIZATION FORM

Seller hereby authorizes Diverse Capital, LLC and its designated agents and representatives to conduct a comprehensive review of Seller's (and that of any guarantor's or co-obligor's) background through a credit report and/or an investigative credit report to be generated for the underwriting/application process in connection with this Agreement, as well as a subsequent renewal of this Agreement and/or any collection action related to same. Seller understands that the scope of the credit report/investigative credit report may include, but is not limited to, the following areas: verification of Social Security number; current and previous residences; employment history, including all personnel files; education; references; credit history and reports; criminal history, including records from any criminal justice agency in any or all federal, state or county jurisdictions; birth records; motor vehicle records, including traffic citations and registration; and any other public records.

Seller hereby authorizes the complete release of these records or data pertaining to Seller that an individual, company, firm, corporation or public agency may have. Seller hereby authorizes and requests any present or former employer, school, police department, financial institution or other persons having personal knowledge of Seller to furnish Diverse Capital, LLC or its designated agents with any and all information in their possession regarding Seller. Seller hereby authorizes that a photocopy of this authorization be accepted with the same authority as the original.

Seller understands that, if any adverse action is to be taken based upon the credit report, a copy of the report and a summary of Seller's rights will be provided to Seller.

Thank you,

Seller: UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)

Agreed to by: FAWN EVETTE WEAVER     Signature: *FAWN EVETTE WEAVER*
DocuSigned by:
4F66E8E540E849E...

DS FEW    DS kEW

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



**DIVERSE CAPITAL**

## EMERGENCY CONTACT PAGE

Dear Seller,

We are glad to welcome you to our unique financing program. The program will go into effect immediately after you return a signed agreement and will continue to be in effect until, we receive the full Purchased Amount according to the agreement. After we receive the full agreement amount, we will close off your account and deliver you a $0 balance letter for your future reference.

In order to assure the maintenance and servicing of your account please keep these service lines in your contacts for any service or maintenance request. Please note: due to a large amount of accounts and the difficulties of keeping track we sometime have accounting problems with the daily ACH debits. If you do have any debit that you think was incorrect you agree to contact us immediately to notify us about the incorrect debits:

### [**833-373-7220**] or email [**submit@diversecapitalllc.com**]

*We also require an active point of contact during the Term of the agreement. By providing your contact info below you agree to be contacted in regards to your account during the Term of the agreement. In case of an Emergency please list a secondary point of contact (**\*required**): Keith Weaver

Please note all necessary information in regards to reaching you or your staff, in case of a problem:

0

0

0

If we experienced any issues with your account and we cannot reach you or your point of contact, we will enforce all legal remedies available to us, under the Agreement. We are always available to assist you with any service request that you may need.

### Please make sure to call us if any problems come up.

Contact Name;

Felicia Gallagher

Email;

Phone;

Cell Phone;

*FEW*

Agreement Page  17 of 17  | Initials

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



**DIVERSE CAPITAL**

APPENDIX H

# ADDITIONAL ENTITIES

This Appendix H is entered on <u>06/26/2024</u>, shall serve to modify the Sale of Future Receipts Agreement ("Agreement"), is made by and between Diverse Capital, LLC ("Buyer"), <u>UNCLE NEAREST, INC (AND ALL ENTITIES LISTED IN APPENDIX H)</u> ("Seller"), and all the entities listed on this Addendum (understood as additional Sellers/Guarantors to the contract).

## LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER

## A BLANKET SECURITY INTEREST:

BUSINESS LEGAL NAME: <u>NEAREST GREEN DISTILLERY, INC.</u>

D/B/A: <u>NEAREST GREEN DISTILLERY</u>                           EIN: 0

PHYSICAL ADDRESS: ▮▮▮▮▮           CITY, STATE: <u>NASHVILLE, TN</u>           ZIP: ▮▮▮

FORM OF BUSINESS ENTITY: CORPORATION

Agreed to by: FAWN EVETTE WEAVER           Signature: *FAWN EVETTE WEAVER*
DocuSigned by: 4F66E8E540E849E...

("Seller #2"); and

BUSINESS LEGAL NAME: <u>UNCLE NEAREST REAL ESTATE HOLDINGS, LLC</u>

D/B/A: <u>UNCLE NEAREST REAL ESTATE HOLDINGS</u>                EIN: 0

PHYSICAL ADDRESS: ▮▮▮▮           CITY, STATE: <u>SHELBYVILLE, TN</u>           ZIP: ▮▮▮

FORM OF BUSINESS ENTITY: LIMITED LIABILITY COMPANY

Agreed to by: FAWN EVETTE WEAVER           Signature: *FAWN EVETTE WEAVER*
DocuSigned by: 4F66E8E540E849E...

("Seller #3"); and

BUSINESS LEGAL NAME: _____

D/B/A: _____           EIN: _____

PHYSICAL ADDRESS: _____ CITY, STATE: _____ ZIP: _____

FORM OF BUSINESS ENTITY: CORPORATION

Agreed to by: _____ Signature; _____, its _____ (Title)

("Seller #4"); and

BUSINESS LEGAL NAME: _____

D/B/A: _____           EIN: _____

PHYSICAL ADDRESS: _____ CITY, STATE: _____ ZIP: _____

FORM OF BUSINESS ENTITY: CORPORATION

Agreed to by: _____ Signature; _____, its _____ (Title)

("Seller #5"); and

Initials: *FEW*  *FEW*

DocuSign Envelope ID: A181A056-0AD4-4491-B677-BC076594C86A



# Early Delivery Schedule

Subject to the conditions described in the Agreement, if during any Early Delivery Window described below, the sum of all Future Receipts that Seller has delivered to Buyer by Seller is equal to the applicable Discounted Purchase Amount described below, then Buyer will accept the Discounted Purchase Amount in full satisfaction of Seller's contractual obligations under the Agreement.

| EARLY DELIVERY WINDOW<br><br>Calendar days immediately following disbursement of funds | DISCOUNTED PURCHASE AMOUNT |
|---|---|
|  | $ |
|  | $ |
|  | $ |

Seller's right to exercise the Early Delivery Option offer is subject to the following additional conditions:

- Seller must remit (and Buyer must receive) funds in the amount of the applicable Discounted Purchase Amount not later than 11:59 pm of the last date of the applicable Early Delivery Window.

- Seller's right to exercise the Early Delivery Option terminates immediately after the last day of the last Early Delivery Window.

**ADDENDUM TO SALE OF FUTURE RECEIPTS AGREEMENT**