## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNCLE NEAREST, INC., NEAREST** | ) | **Case No. 4:25-cv-38** |
| **GREEN DISTILLERY, INC., UNCLE** | ) | |
| **NEAREST REAL ESTATE HOLDINGS,** | ) | **Judge Atchley** |
| **LLC, FAWN WEAVER and KEITH** | ) | |
| **WEAVER,** | ) | **Magistrate Judge Steger** |
| | ) | |
| **Defendants.** | ) | |

### SUPPLEMENTAL BRIEF OF FARM CREDIT MID-AMERICA, PCA
### IN SUPPORT OF STATEMENT OF FARM CREDIT MID-AMERICA, PCA IN
### SUPPORT OF MOTION FOR CLARIFICATION
[Relates to Dkt. No. 41]

Farm Credit Mid-America, PCA ("FCMA" or the "Lender") submits this supplemental

briefing on FCMA's post-hearing position pursuant to the Court's Order[1] following the February

9, 2026 hearing (the "Combined Hearing") on the *Motion to Reconsider the Memorandum Opinion

and Order*[2] (the "Reconsideration Motion") filed by Fawn Weaver, Keith Weaver (collectively

with Fawn Weaver, the "Weavers") and Grant Sidney, Inc. ("Grant Sidney" and collectively with

the Weavers, the "Weaver Parties") and the Receiver's *Motion for Clarification of Receivership

Order*[3] (the "Entity Clarification Motion") filed by Phillip G. Young, Jr. (the "Receiver").[4]

---

[1] Dkt. No. 143.
[2] Dkt. No. 91.
[3] Dkt. No. 41.
[4] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion").

1

## INTRODUCTION

1.     The Receiver initially filed the Entity Clarification Motion to determine whether certain entities should be included in the receivership estate. Now, the Receiver actively seeks to include seven of those entities in the receivership based on evidence of commingling among those seven entities and Uncle Nearest.[5]  Specifically, the Receiver asked the Court to include the following entities as part of this receivership (collectively, the "Additional Entities"): Shelbyville Barrel House BBQ, LLC ("Barrel House"), Humble Baron, Inc, ("Humble Baron"), Grant Sidney, Quill and Cask Owner, LLC ("Quill and Cask"), Nashwood, Inc. ("Nashwood"), Shelbyville Grand, LLC ("Shelbyville Grand"), and 4 Front Street, LLC ("Front Street").[6]

2.     Prior to the Combined Hearing, FCMA's own review of the information received from Uncle Nearest revealed significant overlap between Grant Sidney, Humble Baron, and Quill and Cask—three of the Additional Entities. Following the Combined Hearing, the evidence further underscores that Uncle Nearest and the Additional Entities operated coextensively, including sharing funds, services, and resources. Accordingly, the Receivership Order should be expanded to include the Additional Entities as receivership assets due to the extensive evidence of commingling both on the record and presented at the Combined Hearing.

## ARGUMENT

3.     A party may file a motion for clarification to clarify the scope of a district court's order.[7] The record supports a finding that the Additional Entities should be included as receivership assets based on significant intercompany cash transfers, shared resources and services, and the

---

[5] Dkt. No. 124 at 1.
[6] *Id.*
[7] *United States v. Riley*, 609 F. App'x 837, 841 (6th Cir. 2015).

218175892_6

deliberate diversion of loan proceeds from Uncle Nearest to an Additional Entity for the sole purpose to shield funds from FCMA.

4. At the Combined Hearing, the Receiver testified that the Additional Entities "have to be included in order to have a full view of the financial operations of Uncle Nearest, just because of the amount of transfers that were back and forth between entities that are a part of the receivership and those entities that are not a part of the receivership."[8] In order to carry out the Receiver's role to his fullest extent, the Additional Entities should be included to preserve FCMA's Collateral, which would otherwise remain in imminent danger of being, if it is not already, lost.[9]

5. Based on the volume of intercompany transfers,[10] including the Additional Entities in the receivership will aid the Receiver to fully realize the receivership's purpose. The Weaver Parties' own evidence shows that the prior management of Uncle Nearest treated amounts due between Humble Baron and, at a minimum, the Distillery as "intercompany payables/receivables."[11] Further, the Distillery made a settlement installment payment on behalf

---

[8] *See* Hr'g Tr. 102:9-13.

[9] In reviewing a district court's order denying a motion to intervene, the Sixth Circuit noted the district court's previous order amending a receivership order based on the grounds that "sufficient information and evidence exist[ed] to support the Receiver's belief that funds of LifeTime were removed from LifeTime's accounts, including the premium reserve account, through a series of transactions involving affiliates of LifeTime." *See Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 483 (6th Cir. 2014); *see also Stooksbury v. Ross*, No. 3:09-CV-498, 2013 WL 12043465, at *4 (E.D. Tenn. Mar. 4, 2013) (finding sales of assets identified as receivership assets "troubling").

[10] Receiver's Ex. A ¶¶ 7,13,15, 18; Receiver's Exs. A-2 & A-3.

[11] **Plaintiff's Supplemental Exhibit 11** at 1 ("There should be similar NGD charges on the HB books; so, we can discuss, but I think it is appropriate to treat these as intercompany payables/receivables between companies and reconcile monthly. With intercompany transactions, there is no actual cash that is exchanged.").

218175892_6

of Barrel House and Humble Baron.[12] Neither Uncle Nearest, nor any other Loan Party, were a party to the settlement agreement or the underlying suit.[13]

6. Apart from cash transactions, "the Receivership and Additional Entities share many other resources and services."[14] These include accounting services, maintenance, security, marketing, social media equipment and capital improvements, to name a few.[15] Moreover, a recent foreclosure sale notice for real estate owned by Shelbyville Grand heightens FCMA's concern that potential receivership assets are already in jeopardy of alienation.[16]

7. Fawn Weaver's diversion of proceeds to Grant Sidney is also a glaring example of commingling. Uncle Nearest, Inc., Fawn Weaver, Grant Sidney and MP-Tenn LLC ("MarcyPen") executed a Note Purchase Agreement (the "NPA"), dated February 4, 2025, pursuant to which MarcyPen agreed to purchase notes from Uncle Nearest, Inc. in an aggregate amount of up to $40,000,000. Pursuant to the NPA, Uncle Nearest, Inc. executed two convertible promissory notes (the "MarcyPen Notes"), for a total amount of $20 million, in favor of MarcyPen.[17] Fawn Weaver diverted substantially all proceeds of the MarcyPen Notes to a Grant Sidney account[18] and testified that she moved the proceeds from Uncle Nearest to Grant Sidney "to make sure that $20 million coming in could not be snatched by [FCMA]."[19]

8. Fawn Weaver's diversion of the MarcyPen Note proceeds into a Grant Sidney account further evidences commingling and the use of Grant Sidney as an instrumentality to avoid FCMA's lien on Uncle Nearest's assets. An account that exists solely to receive and disburse funds

---

[12] Pl.'s Ex. 14; Pl.'s Ex. 1 ¶¶ 42-43.
[13] Pl.'s Ex. 13; Pl.'s Ex. 1 ¶ 43.
[14] Receiver's Ex. A ¶ 15; Receiver's Ex. A-3.
[15] Receiver's Ex. A-3.
[16] *Successor Trustee's Notice of Sale of Real Estate*, Bedford Cnty. Post, Feb. 18, 2026, at A7. The Receiver's evidence reflects that this entity received $377,600 during the five-year time frame he analyzed. Receiver's Ex. A-2.
[17] Receiver's Exs. E-F.
[18] Receiver's Ex. A ¶ 21.
[19] Hr'g Tr. 251:14-24.

for another entity's benefit is not "unrelated" in any sense;[20] rather, it is the very definition of commingling.[21] Fawn Weaver used a purportedly unrelated account to hold funds solely for Uncle Nearest's benefit.[22] She justified these actions as necessary "to ensure Uncle Nearest could continue operating and paying critical obligations."[23] By her own admission, the Grant Sidney account had "18 transactions total," and "[t]he $20 million dollars came in, and all of it went to Uncle Nearest or Uncle Nearest related entities or vendors."[24] Thus, Fawn Weaver's testimony at the Combined Hearing showed that she commingled Uncle Nearest and Grant Sidney Assets and used Grant Sidney as a conduit to transfer proceeds from Uncle Nearest to Grant Sidney to shield proceeds from FCMA.

## CONCLUSION

The Additional Entities are so intertwined with Uncle Nearest that they should be brought within the scope of this receivership. Absent the inclusion of the Additional Entities, the Receiver cannot fully realize the receivership's purpose. Accordingly, the Court should grant the Entity Clarification Motion and include the Additional Entities within the receivership estate.

## PRAYER

WHEREFORE, for the reasons set forth above, Plaintiff Farm Credit Mid-America, PCA respectfully requests that this Court (i) enter an Order granting the Entity Clarification Motion in regard to the Additional Entities, and (ii) grant such other and further relief as this Court deems just and proper.

---

[20] *Nelson Elec.*, 638 F.2d at 968.
[21] *See Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 483 (6th Cir. 2014). In reviewing a district court's order denying a motion to intervene, the Sixth Circuit noted the district court's previous order amending a receivership order based on the grounds that "sufficient information and evidence exist[ed] to support the Receiver's belief that funds of LifeTime were removed from LifeTime's accounts, including the premium reserve account, through a series of transactions involving affiliates of LifeTime."
[22] Receiver's Ex. A ¶ 21.
[23] **Plaintiff's Supplemental Exhibit 8** at 2.
[24] *Id.*

5

Respectfully submitted,

 /s/Erika R. Barnes
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

    - and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
        dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

Dated: February 26, 2026

## CERTIFICATE OF SERVICE

     I certify that on February 26, 2026, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's ECF/CMF system, via U.S. Mail and electronic mail upon the following:

Michael E. Collins
S. Marc Buchman
Manier & Herod, P.C.
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
mcollins@manierherod.com
mbuchman@manierherod.com

Phillip G. Young, Jr.
Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
phillip@thompsonburton.com
justin@thompsonburton.com

Uncle Nearest, Inc.
600 N. Main St.
Shelbyville, TN 38106

Lucas A. Davidson, Esq
Oren Bitan
Tennessee Distilling Group, LLC
1 Music Circle South, Suite 300
Nashville, TN 37203
ldavidson@buchalter.com
obitan@buchalter.com

Uncle Nearest Real Estate Holdings, LLC
3125 Highway 231 N.
Shelbyville, TN 37160

/s/Erika R. Barnes