**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 4:25-cv-38** |
| | ) | |
| **v.** | ) | **Judge Atchley** |
| | ) | |
| **UNCLE NEAREST, INC., et al.,** | ) | **Magistrate Judge Steger** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## SUPPLEMENTAL BRIEF OF HUMBLE BARON, INC. RELATING TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT

Humble Baron, Inc. ("Humble Baron"), by and through its undersigned counsel, provides this supplemental and amended response with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] through which the Receiver and Farm Credit (collectively, the "Movants") seek to divest Humble Baron, and its board and shareholder, of their control of the company and place the company and its assets into receivership. In support of this Brief, Humble Baron incorporates the Declaration of Keith Weaver (the "Keith Weaver Declaration"), attached as **Exhibit 1**, and asserts and alleges as follows:

---

[1] Dkt. 41.
[2] Dkt. 44.

## BACKGROUND

1.      On October 21, 2025, Humble Baron filed its initial response to the Motion to Clarify and the Farm Credit Statement.  This Supplemental Response provides the underlying documentation of the transactions involving Humble Baron and Uncle Nearest, a description of the businesses purposes behind those transactions, and proof of no commingling of the finances of Uncle Nearest and Humble Baron. Further, this Supplemental Response provides documentation as to the adherence to corporate formalities by Humble Baron which demonstrates that Humble Baron and Uncle Nearest are not alter egos.

2.       Humble Baron is a Delaware C Corporation that was incorporated on January 26, 2021. Humble Baron is owned 100% by a blind trust for which Keith Weaver is the sole beneficiary. Humble Baron is not in a parent or subsidiary relationship with any of the Uncle Nearest Entities.[3]

3.      Humble Baron has its own tax id number that is distinct from the tax id numbers of Uncle Nearest, Inc., Nearest Green Distillery, Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Entities").[4]

4.      The ERP system used for Humble Baron is a food and beverage specific accounting system/ERP called "R365."  It is not used by or connected in any way to the Uncle Nearest entities.[5]

5.      Humble Baron has separate bank accounts from the Uncle Nearest Entities and has not exercised, and does not exercise, any control over the bank accounts or operations, financial or otherwise, of the Uncle Nearest entities. Likewise, the Uncle Nearest entities exercise no control

---

[3] Exhibit 1, ¶ 3.
[4] Exhibit 1, ¶ 5.
[5] Exhibit 1, ¶ 6.

over the bank accounts or operations, financial or otherwise, of Humble Baron.[6] Humble Baron's

operating licenses are all in its own name, not in the name of any of the Uncle Nearest entities.[7]

6.      Humble Baron operates a bar called the Humble Baron Bar, which is located at

Nearest Green Distillery ("NGD").  The Humble Baron Bar is a full-service bar that serves Uncle

Nearest's products as well as branded spirits manufactured by other distilleries.[8]  Contrary to the

false assertions made by Farm Credit in the Farm Credit Statement, Humble Baron leases the

premises from Uncle Nearest Real Estate Holdings, LLC ("UNRE") pursuant to that certain

Commercial Lease Agreement dated March 1, 2023 (the "Lease"), as amended by that certain First

Amendment to Commercial Lease Agreement dated February 1, 2025 (the "Lease Amendment")

(with the Lease, the "Amended Lease").[9]  The term of the Lease was extended by the Lease

Amendment and runs to February 28, 2030, with additional extension options. Pursuant to the

Amended Lease, the Landlord is responsible for payment of all utilities related to the Premises and

all repairs and maintenance for the building and common elements.

7.      The Lease Amendment provides as follows:

## 2. Landlord Responsibility for Utilities, Insurance, and Maintenance

Notwithstanding anything to the contrary in the original Lease:
- **Utilities**: Landlord shall be solely responsible for and shall pay all utility services for the Premises, including but not limited to electricity, water, sewer, gas, and trash collection.
- **Insurance**: Landlord shall maintain all required property and casualty insurance coverage for the Premises, including liability insurance covering common areas and structural components.
- **Maintenance**: Landlord shall be responsible for the repair and maintenance of the building structure, roof, HVAC, plumbing, electrical systems, and any other common elements, and shall ensure that the Premises are in good working condition

---

[6] Exhibit 1, ¶ 8.
[7] Exhibit 1, ¶ 8.
[8] Exhibit 1, ¶ 4.
[9] Weaver Exs. 26 and 27.

at all times. Tenant shall remain responsible for maintenance of its interior décor, furniture, fixtures, and equipment.[10]

8.      The Lease Amendment clearly provides that Nearest Green Distillery is responsible for payment of common area expenses, including trash collection, and that Humble Baron is only responsible for maintenance of its interior décor, furniture, fixtures and equipment. Consequently, the Receiver's allegation that the Uncle Nearest entities have paid expenses related to the leased premises simply proves that Nearest Green Distillery has complied with its obligations under the lease – not that there has been any commingling or that the entities have not maintained their separateness.

9.      In addition to its on-premise sale of alcohol, Humble Baron undertakes sales of retail merchandise online, exploration of locations for future growth, and various creative works under development (TV shows, film, books, etc.).[11]  Other than lessor/lessee relationship and the sharing of certain expenses due to the on-site proximity of the businesses, there is no connection of Humble Baron to the Uncle Nearest companies and neither of the companies exercises control over the other.[12]  Humble Baron has its own employees (separate payroll), bank accounts, vendors, clients, financial statements, etc.[13]

10.     Because Humble Baron sells spirits on-premise by the glass, the ownership and control of Humble Baron is required under applicable law to be completely separate, directly and indirectly, from the ownership and control of Uncle Nearest, Inc. in accordance with applicable three-tier/tied house laws. Specifically, the Tennessee Code provides that "[n]o manufacturer, brewer or wholesaler shall have any interest in the business or building containing licensed

---

[10] Weaver Ex. 27.
[11] Exhibit 1, ¶ 8.
[12] Exhibit 1, ¶ 8.
[13] Exhibit 1, ¶ 8.

premises of any other person having a license under this chapter, or in the fixtures of any such person."[14] That separateness between the Uncle Nearest entities and Humble Baron has been maintained at all times. All transactions between Humble Baron and the Uncle Nearest Entities have been supported by legitimate business purposes and consideration.[15]

11.     Furthermore, Tennessee law prohibits a distillery from selling alcohol by the glass except in very limited circumstances.[16] Those circumstances are limited to samples (free or for a fee) of the product manufactured by the distillery (not products manufactured by other distillers).[17] Accordingly, if Humble Baron were deemed part of Uncle Nearest, Humble Baron would immediately be unable to sell any alcohol other than products produced by Uncle Nearest and would be restricted from selling any alcohol after 11 pm each evening.  Accordingly, the separateness that has been maintained between Humble Baron and Uncle Nearest has been critical to the very existence of Humble Baron.

12.     The Receiver has previously expressly acknowledged that the ownership and control of Humble Baron is required to be separate from Uncle Nearest under Tennessee law and that, although Humble Baron operates on the Nearest Green Distillery property, Humble Baron "appears to be separate financially from Uncle Nearest."[18]

13.     Farm Credit's Statement states that "[t]he funds and operations of Uncle Nearest and Humble Baron appear to be comingled such that Humble Baron falls within the scope of the Receivership Assets."[19]  This conclusion is based on several false premises.

---

[14] T.C.A. § 57-3-210(e).
[15] Exhibit 1, ¶ 5.
[16] See T.C.A. § 57-3-202(i)(1).
[17] Id.
[18] Dkt. 41, at 2.
[19] Dkt. 44 at 4.

14.     First, Farm Credit asserts that Uncle Nearest, Inc. made a payment to Levy Premium Foodservice Limited Partnership ("Levy") on behalf of Humble Baron. This statement is incorrect and exemplifies the fact that Farm Credit has made literally no effort to confirm the veracity of any of the allegations it has made in its Statement.

15.     Levy is a management company that previously provided comprehensive management and operational services, including event management, to Humble Baron and Shelbyville Barrel House BBQ, LLC under a Management Agreement.[20] During the term of the Management Agreement, Levy provided certain services related to various events, including certain Uncle Nearest shareholder events, held by Nearest Green Distillery on the premises of the Nearest Green Distillery and the Humble Baron Bar.[21] These events were solely for the benefit of Uncle Nearest and/or Nearest Green Distillery and the costs associated with such events were the direct obligation of the Nearest Green Distillery.[22] The charges relating to Levy's services to NGD are evidenced by invoices issued on behalf of "Levy / Humble Baron."[23] As noted in correspondence from Peter LaFemina to Felicia Gallagher dated April 12, 2024,[24] the outstanding balance due to Levy on account of services provided for Nearest Green Distillery was approximately $100,000 as of April 12, 2024, and Mr. LaFemina was requesting on behalf of Humble Baron that Nearest Green Distillery pay its due balance to Levy. This correspondence is also direct evidence that the operations of Humble Baron and Uncle Nearest/Nearest Green Distillery were not commingled and that the corporate forms were maintained.

---

[20] Exhibit 1, ¶ 10.
[21] Exhibit 1, ¶ 10.
[22] Exhibit 1, ¶ 10.
[23] Exhibit 1 (Ex. A).
[24] Exhibit 1 (Ex. B).

16.     Uncle Nearest's own records show the balance it owed to Levy as an account payable.  Uncle Nearest's own account payable ledger as of June 12, 2025, a balance owed by Uncle Nearest to "Levy/Humble Baron" of $134,501.06 as of July 1, 2024. Thus, Uncle Nearest's own records, which have been available to both Farm Bank and the Receiver, clearly show that Uncle Nearest had a balance due directly to Levy.

17.     On August 1, 2024, Levy filed a complaint against Shelbyville Barrel House BBQ, LLC and Humble Baron, Inc. seeking to recover unpaid management fees, including fees related to the events that were for the sole benefit of Nearest Green Distillery (the "Levy Complaint").[25] Although Uncle Nearest was not named directly as a defendant, the claims asserted by Levy in the Levy Complaint included amounts that were for Uncle Nearest and the Nearest Green Distillery. Counsel for Humble Baron and Shelbyville Barrel House BBQ, LLC, in discussions with the management of Uncle Nearest, determined that it would not be necessary to join Uncle Nearest or NGD as a third-party defendant because those parties were agreeable to pay their portion of any agreed settlement.  The lawsuit was ultimately settled through the Settlement Agreement dated March 18, 2025 (the "Levy Settlement Agreement").[26] Per the Settlement Agreement, a series of payments were to be made to Levy to resolve its claims, which included the claims relating to the obligations of Nearest Green Distillery. In order to resolve the portion of the Levy Settlement Agreement attributable to Nearest Green Distillery, Uncle Nearest, Inc. paid an amount the NGD owed directly to Levy in furtherance of the Settlement.[27]  Thus, the payment by Uncle Nearest, Inc. was for its own obligations or obligations of Nearest Green Distillery, not obligations of Humble Baron.  The payment by Uncle Nearest Inc. to Levy was entirely proper and does not

---

[25] Exhibit 1, ¶ 12.
[26] Farm Credit Ex. 14.
[27] Exhibit 1, ¶ 13.

support any finding of comingling as between the Uncle Nearest Entities and Humble Baron. In fact, it demonstrates the corporate separateness of the entities because it shows that Humble Baron was not paying obligations of the Uncle Nearest Entities.

18.     Farm Credit's next assertion, that Uncle Nearest's payment for the Guiness World Record designation was improper, is based on apparent willful ignorance of the symbiotic business marketing relationship between Uncle Nearest and Humble Baron, which relationship exists in practically every iteration of a distiller/retailer relationship. Uncle Nearest is not the first distiller to lease space to a separate full bar or restaurant concept within its distillery. While the companies are completely separate as required by the three-tier system and applicable tied house laws, the benefit to the distillery that the bar concept brings is significant retail traffic to the distillery and increased exposure and visibility for the distillery.[28] Consequently, providing distillery space for an on-premise bar, even for little or no rent, provides a significant opportunity for the distillery to increase retail sales of its products and to promote its brands. Similarly, positive national recognition for the bar that includes recognition for the distillery where the bar sits is in the best interests of the distillery.

19.     With respect to the Guiness World Record recognition, as is clear even from the articles cited by Farm Credit in footnote 8 of its Statement,[31] practically every article about the world record designation, and the Guinness website itself, prominently recognizes, if not emphasizes, the bar's location at the Nearest Green Distillery.[32] This promotion was not by chance but was a specific goal of the Uncle Nearest's management and justified Uncle Nearest seeking

---

[28] Exhibit 1, ¶ 14.

[31] Dkt. 44.

[32] The actual Guiness World Record listing is: "The longest bar is 157.89 m (518 ft), achieved by Humble Baron (USA) in Shelbyville, Tennessee, USA, on 23 March 2023. The bar is located on the premises of Nearest Green Distillery." *https://www.guinnessworldrecords.com/world-records/69267-longest-bar*.

and paying for the world record designation in the exercise of its reasonable business judgment.[33] The management of Humble Baron, which was a start-up entity, would not have approved payment of the Guiness World Record expense because, due to its location in the small town of Shelbyville, Tennessee, with a very limited local population to drive a base level of traffic to the bar, the bar's retail sales were not projected to be increased enough to justify the cost of the world record designation.[34] For Nearest Green Distillery, on the other hand, which was seeking a national and perhaps world-wide market for its products, the additional notoriety from the World Record was anticipated to lead to significant additional press for the Distillery and the Uncle Nearest Brand that would make the world record designation pay off.[35]

20.     The Humble Baron bar and the Guiness World Record are featured prominently on the Nearest Green Distillery website as well as in the Nearest Green facility. On the Nearest Green Distillery website, a prominent link to the Humble Baron website is on the main page and that link opens to a page stating, "EVERYONE HAS A SEAT AT THE LONGEST BAR IN THE WORLD."[36] The Humble Baron Bar itself sits in the main tourist building of the Nearest Green Distillery and visitors to the facility walk directly through the distillery's gift shop and tasting room in order to enter the Humble Baron bar.[37] The value to Uncle Nearest of Humble Baron's location at the distillery and its longest bar in the World designation is significant.[38] Thus, Uncle Nearest's decision to pay for the Guinness World Record fees does not evidence any commingling of the businesses, improper activity, any basis for an alter ego finding or otherwise support expanding the receivership.

---

[33] Exhibit 1, ¶ 14.
[34] Exhibit 1, ¶ 14.
[35] Exhibit 1, ¶ 14.
[36] Exhibit 1, ¶ 15; See *https://unclenearest.com/distillery/*.
[37] Exhibit 1, ¶ 15.
[38] Exhibit 1, ¶ 14.

21.     Farm Credit falsely asserts that Humble Baron has no lease for its operation of the bar on the Uncle Nearest real property.[39]  Again, if Farm Credit had even a passing knowledge of the regulatory environment in the spirit industry (or simply asked anyone with knowledge), it would have known that Humble Baron having a written lease (or evidence of ownership of the property) for its operating premises is required as part of the process of obtaining a liquor license in Tennessee.  So, either Farm Credit knew the statement was false or simply decided to make the allegation without any effort to determine the veracity of it.  In any event, as noted previously, Humble Baron and Uncle Nearest Real Estate Holdings, LLC are parties to a written lease, which is a requirement of Humble Baron even being able to operate as a full-service bar.

22.     The Receiver asserts that Humble Baron has not made the lease payments due under the Lease and that this somehow constitutes commingling. In fact, no money changed hands so it would seem that this is the opposite of commingling.  In any event, the business decision of Uncle Nearest's management not to provide notice of default under the Lease is a proper exercise of business judgment.  As set forth in the Keith Weaver Declaration, the Humble Baron bar provides significant services to the Uncle Nearest Entities and consequently there are amounts owed to Humble Baron that offset the rent requirement.[40] Additionally, closing of the Humble Baron bar would be detrimental to the business of Uncle Nearest and NGD.[41]  The Receiver appears to agree with that sentiment as he has not sought to terminate the Lease for non-payment during the more than five months that he has been in charge of the NGD.

23.     In the Receiver's Declaration, the Receiver erroneously aggregates transactions between the Non-Parties, between the Non-Parties or Receivership Entities with "Unknown

---

[39] Dkt. 44, p. 8.
[40] Exhibit 1, ¶ 8.
[41] Exhibit 1, ¶ 8.

Accounts," and between the Non-Parties and the Receivership Entities, and concludes that the volume of such transactions is, itself, evidence of commingling. First, his argument that transactions between Non-Parties, which do not involve the Receivership Entities, is somehow evidence of commingling with the Receivership Entities completely defies logic. Likewise, his argument that transactions between the Non-Parties or Receivership Entities with "Unknown Accounts" is evidence of commingling between the Non-Parties and the Receivership Entities is hard to even comprehend. His inability to identify the "Unknown Accounts" is simply evidence that he has not done even a basic amount of due diligence on this matter and nothing more. Finally, his assertion that the quantity of transactions between the Non-Parties and the Receivership Entities is evidence of commingling without reference to the specifics of the particular transactions and without any evidence of a lack of legitimate business purpose to each such transaction is invalid. The simple fact that a transaction or transactions occurred is not evidence of commingling in the absence of proof that the transactions lacked a legitimate business purpose for each entity involved in the transaction.

24. To the extent that the Receiver bases his argument on his need for further information about transactions, the Receiver has not demonstrated that placing Humble Baron in receivership is the least intrusive way to get that information. The Receiver has not requested any information from Humble Baron other than the bank records, all of which have been provided.[42] The Receiver has not asserted or alleged that he has requested any information from Humble Baron that has not been provided. Consequently, the Receiver hasn't even taken the first most basic step to obtain information regarding transactions between Humble Baron and the Receivership Entities, much less sought to subpoena documents or depose relevant individuals regarding such

---

[42] Exhibit 1, ¶ 16.

transactions. Clearly, less intrusive measures than receivership are available to obtain information relating to the transactions. Consequently, placing Humble Baron in receivership is unwarranted and inappropriate.

25. The Receiver has not identified any specific property held by Humble Baron that is property of the Receivership Estate. In fact, neither Humble Baron nor any of its assets is property of the Receivership Estate.[43]

26. Since its inception, Humble Baron has operated at a financial loss while investing in the infrastructure, staffing, and brand development necessary to establish a viable hospitality enterprise.[44] In 2024 and 2025, Humble Baron implemented a structured turnaround strategy focused on hosting high-profile public events and securing private event buyouts designed to generate sufficient revenue to move the business toward profitability.[45] These initiatives required substantial advance financial commitments, marketing expenditures, and operational investments. Humble Baron, Inc. exclusively bore all such expenditures.[46] It maintains its own bank accounts, payroll, tax identification number, accounting systems, and financial statements separate and apart from the Uncle Nearest Entities.[47] No funds from any of the Uncle Nearest Entities were used to finance these efforts.[48]

27. Although Humble Baron is legally and operationally separate from the Uncle Nearest Entities, the pending litigation and appointment of a receiver over those entities have materially and adversely affected Humble Baron's business operations.[49] Because the Humble

---

[43] Exhibit 1, ¶ 17.
[44] Exhibit 1, ¶ 17.
[45] Exhibit 1, ¶ 17.
[46] Exhibit 1, ¶ 17.
[47] Exhibit 1, ¶ 17.
[48] Exhibit 1, ¶ 17.
[49] Exhibit 1, ¶ 18.

Baron Bar is physically located on the Nearest Green Distillery property and Mr. Weaver is publicly associated with the broader brand, the receivership proceedings have created marketplace uncertainty among customers, vendors, and employees.[50] Since the initiation of the receivership process, Humble Baron's revenue has declined approximately 30% year-over-year.[51] Event bookings have slowed, attendance from local patrons has decreased, and prospective clients have expressed hesitation in committing to future engagements.[52] During this same period, Humble Baron's performance-based catering sales manager resigned, further impairing execution of the company's revenue strategy.[53]

28.     The financial strain has been compounded by unpaid amounts owed to Humble Baron by Nearest Green Distillery and/or Uncle Nearest for legitimate, invoiced services.[54] Continued uncertainty regarding whether Humble Baron could be drawn into the receivership-despite its lack of ownership overlap, lack of shared control, separate accounting systems, and absence of liability for the alleged debts at issue-has inhibited normal business planning and operations.[55] If Humble Baron were subjected to receivership, applicable federal and state regulatory requirements governing alcohol sales would likely require immediate cessation of operations, resulting in significant and potentially irreparable harm.[56]

29.     At no time prior to advancing assertions affecting Humble Baron did the Receiver or his representatives request clarification of specific transactions or an explanation regarding the flow of funds.[57] Had such clarification been requested, Humble Baron and Mr. Weaver were

---

[50] Exhibit 1, ¶ 18.
[51] Exhibit 1, ¶ 18.
[52] Exhibit 1, ¶ 18.
[53] Exhibit 1, ¶ 18.
[54] Exhibit 1, ¶ 19.
[55] Exhibit 1, ¶ 19.
[56] Exhibit 1, ¶ 19.
[57] Exhibit 1, ¶ 20.

prepared to provide documentation and explanation. Direct clarification would have reduced uncertainty and business disruption.[58] Clear confirmation from this Court that Humble Baron, Inc. is not part of the Receivership Estate, that its assets are not subject to the Receiver's authority, and that it may continue operating independently absent further order of this Court is necessary to prevent further operational harm to an entity that holds no receivership assets and is not liable for the alleged debts at issue.[59]

## ARGUMENT

30.     In this diversity action, the law of Tennessee is applicable.[60] The Movants seeking to include Humble Baron in the receivership have the burden of proving entitlement to that relief.[61]

31.     As the Court noted in its September 30 Order, "[c]ourts have broad power and wide discretion to oversee the administration of a receivership."[62] Further, the Court has the power to expand a receivership where the expansion is necessary to effectively safeguard assets of the receivership.[63] It is noteworthy that the vast majority of federal cases dealing with federal equity receiverships arise in securities fraud cases instituted by the SEC or other consumer fraud contexts. In the context of diversity jurisdiction, the courts have found that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations."[64]

---

[58] Exhibit 1, ¶ 20.

[59] Exhibit 1, ¶ 20.

[60] "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426-27, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* at 427; *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("In diversity cases, a federal court must rely upon the substantive law of the forum state.").

[61] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005)(holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)( "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.")(citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

[62] *Consumer Fin. Prot. v. Strafs, LLC*, No. 24-CV-40-EAW-MJR, 2025 U.S. Dist. LEXIS 98061, at *28 (W.D.N.Y. May 22, 2025)

[63] *See id.*

[64] *See, e.g.*, *Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

32. The cases addressing this issue indicate that expansion of a receivership estate should be done only "with utmost caution and justified only where there is a necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties."[65] Where the requested expansion of a receivership is to bring in another company based on the doctrine of alter ego, the Court "must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege – . . . [the court] may not apply the doctrine to prejudice an innocent third party."[66]

33. In analyzing the viability, or lack thereof, of the alter ego claims, in addition to applying federal law factors, the Court should also look to applicable state law requirements relating to alter ego.[67] Since the instant case is based on diversity jurisdiction, not federal question jurisdiction, and the claim at issue here is a simple breach of contract claim, not a securities fraud claim, the Court should look to state law in determining the alter ego question. Furthermore, since the receivership is merely procedural mechanism, not a form of relief, and since Humble Baron has no existing obligations to Farm Credit, Farm Credit would ultimately have to prove alter ego status under Tennessee law in order to actually make Humble Baron liable for any debts owed by Uncle Nearest to Farm Credit. Consequently, even if federal law still controls the question of expansion of the receivership, a relevant factor for the Court to consider within the federal standards is whether Farm Credit has a reasonable likelihood of maintaining a claim for alter ego under state law based on the facts presently before the Court.

---

[65] *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-cv-60462-BLOOM/Valle, 2021 U.S. Dist. LEXIS 83769, *5 (S.D. Fla. May 3, 2021)(*quoting SEC v. Complete Bus. Sols. Grp.*, 2020 U.S. Dist. LEXIS 253062, at *2 (D, Nev. 1985).).
[66] *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[67] *See id.*

491085844925

34.     In applying the federal factors first, as set forth in the Court's September 30 Order, neither the Receiver nor Farm Credit has identified any specific assets of the receivership that are to be protected with respect to Humble Baron.  So, out of the gate, the Movants' effort to expand the receivership to include Humble Baron must fail because the expansion of the receivership is not necessary "to safeguard assets and prevent their dissipation."  Further, Farm Credit has not established that Humble Baron was funded by proceeds of some fraudulent scheme perpetrated by Uncle Nearest or any other bad actor, as is sometimes used to justify expanding receiverships to non-parties in cases where the public at large has been defrauded, such as in securities fraud actions and consumer fraud cases.[68]  This receivership is based on a breach of contract claim, not a fraud claim.

35.     The Movants' effort also fails because they can't meet the bare requirements that would be relevant to a determination that Humble Baron should have a receiver appointed.  The Motion to Clarify and the Statement by Farm Credit go far beyond what is simply an effort to protect assets that are property of the receivership from dissipation—this is an effort to wrest control over Humble Baron based on mere allegations of potential facts and on factors significantly less rigorous than the very factors that the Court required to be considered in appointing the Receiver over Uncle Nearest in the first place.  While Uncle Nearest had pledged all of its assets to secure the debt to Farm Credit, Humble Baron is not liable on any debts to Farm Credit and has not pledged any of its assets to secure debts owed to Farm Credit. Humble Baron is not a party to the Loan Documents and it has not defaulted on any obligations to Farm Credit. Humble Baron should have at least an equivalent right to the same analysis and burden of proof for divesting its

---

[68] *See, e.g., SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).

board of control over the business as Uncle Nearest's board had in its defense of the initial Receivership Motion.

36.     In the deciding the Receivership Motion, this Court noted multiple factors used by courts in the Sixth Circuit:

> (1) Whether the property at issue is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
>
> (2) Whether the Defendants have engaged in fraudulent conduct;
>
> (3) Whether legal remedies are inadequate;
>
> (4) Whether less drastic equitable remedies are available;
>
> (5) The likelihood that the appointment of a receiver would do more good than harm;
>
> (6) Whether there is inadequate security for the debts; and
>
> (7) Whether the debtor is insolvent.[69]

37.     Even if all of the allegations in the Motion to Clarify, Farm Credit's Statement, and the Receiver's other filings were assumed factually correct (they are not), those allegations still fail to establish the factors necessary for the appointment of a receiver with respect to Humble Baron.  The Movants have not identified any specific "property at issue" held by Humble Baron in which the Receivership Estate has an interest, much less made any showing that such property is in imminent danger of being diminished.  The Movants have made no showing that Humble Baron has engaged in fraudulent conduct.  Farm Credit has no legal or equitable remedies to assert against Humble Baron because Humble Baron is not obligated on any of the Farm Credit Loans, so there is no basis to say the legal remedies are inadequate or that less drastic equitable remedies are not available. To the extent that the Receiver believes that the Receivership Estate has claims against Humble Baron, the receiver can seek a judgment against Humble Baron, so there is an

---

[69] Dkt. 32, at 4 (citing *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015)).

adequate legal remedy. Furthermore, the Receiver has not even asked Humble Baron's management for additional information relating to the noted transaction and has not sought to obtain the information through discovery, so there are clearly less drastic means still available for the Receiver to obtain information relating to the transactions in question.

38.     Expansion of the Receivership to include Humble Baron would do more harm than good. The disruption to its operations, which includes operation of the bar facilities and events, as well as its pursuit of other potential locations for additional Humble Baron bars, that would result from being placed under receivership would cause significant financial damages similar to the financial losses to the Uncle Nearest entities that have been caused by the Receivership, as even recognized by the Receiver. Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his multitude of professionals would cause a significant increase in expenses for the company and the negative publicity that would impact its business and investments. Further, such action would ultimately not benefit the Receivership Estate at all because there is no proof that would support a finding of alter ego status in any final judgment. Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit of putting the company into receivership.

39.     Farm Credit's citation to the status as administratively dissolved with the Tennessee Secretary of State due to lack of annual reports for the last two years has been remedied. In any event, the corporate status of Humble Baron has no relevance because Humble Baron is not in a parent-subsidiary relationship with the Uncle Nearest entities. Consequently, even if the administrative dissolution could lead to revoking Humble Baron's corporate status (it can't under

Tennessee law[70]), the result would simply be that the assets and obligations of Humble Baron would be deemed assets and obligations of the Trust. It wouldn't mean that those assets and liabilities would somehow escheat to the Uncle Nearest Entities.

40.     Since Humble Baron is not obligated on the Farm Credit Loans and holds no collateral securing those Loans, the question of the adequacy of Farm Credit's security has no relevance.

41.     Finally, Farm Credit has not provided any material evidence that Humble Baron is insolvent or has been funded by assets of the Corporate Defendants.  In sum, with respect to Humble Baron, the Movants cannot prove any of the same factors with respect to Humble Baron that this Court weighed in determining that Uncle Nearest should be under receivership control.

42.     Since the Movants are disguising a general piercing of the corporate veil argument in the form of expansion of the receivership without identifying a single asset held by Humble Baron that is collateral to Farm Credit or that belongs to the Receivership Estate, the effort should be dismissed out of hand as inappropriate.  At a minimum, the Movants should be required in this diversity action to meet the standard for piercing the corporate veil under state law.[71]

43.     The Sixth Circuit has held that "[u]nder the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located."[72] "When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of

---

[70] *See* T.C.A. § 48-24-202(c).
[71] *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985).
[72] *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).

substantive law is governed by the law of the state in which the federal court sits.[73] Since this Court sits in Tennessee, Tennessee law is applicable with respect to the question of piercing the corporate veil and alter ego analysis.

44.    Earlier this year, in *Youree v. Recovery House of E. Tenn., LLC*,[74] the Tennessee Supreme Court comprehensively addressed the state of the law in Tennessee regarding "alter ego" claims and piercing the corporate veil.  First, the court noted that the term "alter ego" was simply a "rhetorical device or picturesque term" that only confuses the fact that what is actually sought is piercing of the corporate veil.[75]  The court also recognized that corporate separateness is presumed and that Tennessee courts give substantial weight to that presumption.[76]

45.    The court then confirmed the three elements, first articulated in *Continental Bankers Life Insurance Co. of the South v. Bank of Alamo*,[77] that have to be proved in order to pierce a corporate veil as follows:

(1) Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;

(2) The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and

(3) The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.[78]

46.    The *Youree* court further found that certain factors outlined in *Federal Deposit Ins. Corp. v. Allen*,[79]

---

[73] *Id.*
[74] 705 S.W.3d 193, 206-12 (Tenn. 2025).
[75] *Id.* at 208.
[76] *Id.* at 207.
[77] 578 S.W.2d 625 (Tenn. 1979).
[78] *Id.* at 637.
[79] 584 F. Supp. 386 (E.D. Tenn. 1984).

have their place in the analysis . . . [but] do not constitute a separate test. They are merely a list of circumstances that often may be relevant to the existence of one or more of the three *Continental Bankers* elements. Thus, the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established.[80]

The *Allen* factors are as follows:

Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's-length relationships among related entities.[81]

The *Youree* court then further cautioned

that checking items off a list is not a substitute for a purposive analysis of whether the *Continental Bankers* elements have been established. Regardless of the specific circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.[82]

47.    Since the Motion before the Court is not predicated on protecting any specific assets of the Receivership, it should be treated as simply a claim to pierce the corporate veil and should be granted or denied based on whether Farm Credit can carry its burden to prove that such Humble Baron is an alter ego of Uncle Nearest under Tennessee law.

48.    As the Tennessee Supreme Court recently pronounced, the factors relevant to determining whether to pierce the corporate veil are those factors originally set forth in the

---

[80] *Youree*, 705 S.W.3d at 211.
[81] *Id.* at 210 (*quoting Allen*, 584 F. Supp. at 397).
[82] *Id.* at 212.

*Continental Bankers* case. Neither the Receiver's Motion to Clarify nor Farm Credit's Statement address in any meaningful way this applicable standard with respect to Humble Baron.

49. As to the first *Continental Bankers* element—"[c]ontrol over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own"— the only transactions at issue have been explained and do not show that Humble Baron exercised control over the finances, policy, or business practices of any of the Uncle Nearest Defendants, or vice versa. As the April 12, 2024, correspondence demonstrates, the finances of Humble Baron and the Uncle Nearest entities were completed through separate and distinct ban accounts and were arms-length transactions even where the companies shared symbiotic operations.

50. As to the second *Continental Bankers* element—"The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights"— the Movants have not submitted any evidence that Humble Baron controlled Uncle Nearest, or vice versa, in order to commit fraud or wrong, perpetuate the violation of a statutory or positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights. At all relevant times, Farm Credit was fully aware of Humble Baron operating as a separate legal entity and there was no mystery in that regard.

51. As to the third *Continental Bankers* element—"The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of"— since Farm Credit has failed to even establish facts sufficient to satisfy the first two elements, it is impossible for Farm Credit and the Receiver to prove that the first two elements were the proximate cause of any injury or unjust loss to Farm Credit or any other creditor. The transactions that have

22

been identified by Farm Credit are all legitimate transactions supported by documentation and business purposes that benefited Uncle Nearest. There is no proximate causation to any injury alleged by Farm Credit.

52. In sum, application of the *Continental Bankers* factors to Humble Baron shows that the Movants have not met, and cannot meet, their burden of proof. Neither the fact that Uncle Nearest paid its own obligation for the three shareholder events directly to Levy nor Uncle Nearest's decision to fund the Guiness World Record Designation for the longest bar located on the premises of the Distillery evidences any undue control by Humble Baron, Inc. over Uncle Nearest, Inc. and doesn't come close to satisfying the applicable factors for instituting a receivership, expanding a receivership or piercing the corporate veil under the *Continental Bankers*.

53. Indeed, applicable tied house/three tier laws expressly prohibit any overlapping ownership or control between those entities. A finding that Humble Baron and any of the Uncle Nearest Entities are alter egos would cause a violation of the applicable tied house laws and likely require that one or both of the Distillery and Humble Baron Bar immediately cease operations. Placing Humble Baron and its assets under this Receivership, in addition to being unsupported by applicable facts and law, would create harm that would greatly exceed any conjectured benefit.

54. To the extent that the Receiver argues that the Uncle Nearest's payment expenses related to the leased Premises is evidence of commingling, he simply ignores the fact that the Lease Amendment specifically requires Nearest Green Distillery, as Landlord, to pay those expenses. Clearly, compliance with a written lease cannot be constitute evidence of lack of adherence to corporate formalities and is not evidence of commingling.

55.     Furthermore, placing this entity in receivership and saddling the company with the expenses of the Receiver and his professionals would cause an immediate reduction in sales and profitability due to issues with the applicable tied house laws and the negative publicity, and would drastically increase the expenses for the company.  Further, such action would ultimately not benefit the receivership estate at all because there is no proof that would support a finding of alter ego status in any final judgment.  Thus, the known actual harm to the company of placing it in receivership would significantly outweigh any prospective unknown, likely unrealizable, potential benefit to the receivership.

WHEREFORE, Humble Baron respectfully requests that the Court decline to expand the receivership to include Humble Baron or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

/s/ Michael E. Collins

Michael E. Collins     (TN Bar No. 16036)
S. Marc Buchman       (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Humble Baron, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins