**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF FAWN WEAVER REGARDING MOTION TO CLARIFY**
**OPPOSITION OF GRANT SIDNEY, INC.**

I, Fawn Weaver, declare under penalty of perjury as follows:

**I.      Identity, Role, and Basis of Knowledge**

1.      I am over the age of eighteen and competent to testify. I have personal knowledge of the matters set forth in this Declaration.

2.      I am the Founder and Chief Executive Officer of Uncle Nearest, Inc. ("Uncle Nearest" or the "Company") and have served in that role since its inception.

3.      I am the largest individual shareholder of Uncle Nearest through my personally owned shares and through my wholly owned holding company, Grant Sidney, Inc. ("Grant Sidney").

4.      I am and always have been the sole shareholder of Grant Sidney, Inc., the single largest shareholder of Uncle Nearest, Inc.

5.      I submit this Declaration to provide the factual background concerning the formation and operations of Grant Sidney, Inc., and to clarify the February–April 2025 capital

infusion into Uncle Nearest, Inc., as referenced in the pending Motion, the Receiver's Affidavit, and the Receiver's Second Quarterly Report.

## II.     Formation and Corporate History of Grant Sidney, Inc.

6.      On June 14, 2013, I formed VR Investments, Inc., a California corporation ("VR Investments"). See **Exhibit A**.

7.      At formation, the corporation adopted bylaws, elected officers, authorized issuance of stock, and established formal corporate governance in accordance with California law. See **Exhibits B and C.** VR Investments' initial investment was in ValleyRentals.com in 2013. At that time, Uncle Nearest, Inc. had not yet been formed.

8.      Between 2013 and the founding of Uncle Nearest in 2016, VR Investments made additional investments in companies unrelated to the spirits industry. These investments were independent of Uncle Nearest and reflect that VR Investments operated as a holding and investment vehicle prior to any involvement with Uncle Nearest.

9.      On January 27, 2016, the corporation formally amended its name from VR Investments, Inc. to Grant Sidney, Inc. by filing a Certificate of Amendment with the California Secretary of State.[1] See **Exhibit D**.

10.     As reflected in its January 30, 2025 Statement of Information filed with the California Secretary of State, Grant Sidney is identified as a "Holding Company."[2]

11.     From 2013 through 2025, Grant Sidney has filed its federal and applicable state tax returns separately and apart from Uncle Nearest, Inc., and has maintained separate tax reporting, financial records, and corporate books throughout its existence. Grant Sidney has its own tax id number, which is distinct from the tax id numbers of Uncle Nearest, Inc., Nearest Green Distillery,

---

[1] Weaver Ex. 23.
[2] Weaver Ex. 24.

Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, the "Uncle Nearest Entities"). Uncle Nearest, Inc., by contrast, is a Delaware corporation doing business in Tennessee. Grant Sidney has at all times operated in a manner consistent with its Articles of Incorporation and the California Business Code.

12.     Grant Sidney's corporate principal address is 6060 Center Dr., 10th Floor, Los Angeles, CA 90045 as reflected on the Statement of Information. From 2013 through 2025, Grant Sidney has filed its federal and applicable state tax returns separately and apart from Uncle Nearest, Inc., and has maintained separate tax reporting, financial records, and corporate books throughout its existence.

13.     In 2016, Uncle Nearest, Inc., was formed and Grant Sidney acquired 100% of the initial outstanding shares of Uncle Nearest, Inc. Since that time, Uncle Nearest has issued additional shares of stock and Grant Sidney's share of ownership has been diluted to approximately 30% of the outstanding shares of Uncle Nearest. Inc. In addition to its equity holdings in Uncle Nearest, Inc., Grant Sidney is also currently a minority shareholder of another spirit company and has had other business interests from time to time since its formation in 2013, approximately three years prior to the formation of Uncle Nearest, Inc.  Grant Sidney has never received any distribution of money or other property from the Uncle Nearest Entities. At all times, Grant Sidney has operated as a California corporation separate and distinct from Uncle Nearest, Inc., which is a Delaware corporation.

### III.     Origin and Structure of the February–April 2025 Capital Infusion

14.     In early 2025, Uncle Nearest, Inc. was in negotiations with Farm Credit regarding a forbearance agreement relating to its outstanding debts.  As I testified during the February 9,

2026 hearing, this 2025 transaction was originally structured as a sale of $20 million of my personal shares, which had been earned over time in lieu of salary.

15.     The sole intention of that proposed sale was to invest 100% of the proceeds back into Uncle Nearest. I was advised by the Company's Senior Vice President of Finance and Planning that a direct sale would trigger approximately $9.5 million in capital gains tax liability in the following tax year. Because the entire purpose of the transaction was to reinvest all proceeds into Uncle Nearest, that tax liability would have materially reduced the net benefit of the capital infusion.

16.     To prevent that unnecessary tax consequence—and solely for that purpose—the transaction was structured as convertible promissory notes with financing from a third-party private equity investor. The notes, totaling $20 million, required no interim payments, accrued interest would convert into equity, and upon conversion an equivalent number of my personal shares would be extinguished so that no other shareholder would be diluted.

17.     The financing was documented through written board approval, written shareholder consent, a note purchase agreement, two convertible promissory notes dated February 4, 2025 and February 28, 2025, and a related side letter.

18.     Under the Financing Documents, **Grant Sidney agreed to forfeit an equivalent number of its shares in Uncle Nearest to offset any issuance of shares upon conversion**, thereby preventing dilution to other Uncle Nearest shareholders.

19.     The shares referenced in this transaction were my personal shares, earned over years of building Uncle Nearest, which were to be transferred to Grant Sidney. Following the discovery of financial irregularities involving the Company's former Chief Financial Officer, my

focus was on stabilizing the Company, preserving its momentum, and ensuring that independent counsel and forensic professionals could complete their review without interference.

20.     Due to the additional costs associated with the internal investigations and the operating needs of Uncle Nearest, I determined that Uncle Nearest would require an infusion of capital to maintain operational continuity.  In light of the circumstances, I was willing to structure a transaction tied to my own equity in order to provide the necessary capital without disrupting the investigative process.

21.     The February 2025 financing was structured so that the economic benefit flowed entirely to Uncle Nearest, while preserving the integrity of the ongoing investigation and avoiding dilution to other shareholders.

### IV.     Mechanics and Reconciliation of the Capital Infusion

22.     A new Uncle Nearest Business Money Market account (Account No. ***873) was opened solely to receive the capital proceeds. The account had no prior activity and reflected a zero-opening balance.

23.     The February 2025 statement for Acct. ***873 reflects two $10,000,000 deposits and accrued interest, reflecting receipt of the proceeds of the Convertible Notes. See **Exhibit E**.

24.     During active forbearance negotiations with Farm Credit, a Grant Sidney account (Account No. ***881) was opened to facilitate temporary routing of funds to ensure operational continuity. See **Exhibit F**. Transfers from the Uncle Nearest MMA account (***873) to the Grant Sidney account (***881) occurred in February 2025. The Grant Sidney account statements for acct. ***881 for February 2025 reflect corresponding credits.

25.     Over the following few months, transfers (inclusive of wire fees) were made from the Grant Sidney Account (**881) for the benefit of the Uncle Nearest Entities. See **Exhibit G**.

26.     The Grant Sidney account reflects total credits of $20,034,722.03 and total debits of $20,033,954.43 during the February–April 2025 period, leaving only a nominal balance.  The account has remained dormant since the last transfer in April 2025.

27.     The structure of the funding through the Grant Sidney account was known to and approved by Farm Credit. As part of and in conjunction with Amendment 8 (Forbearance Agreement) to the Farm Credit Credit Agreement, Farm Credit required an executed Subordinated Credit Agreement  that included a Schedule 1.1 specifically listing each end every disbursement made by Grant Sidney through Account No. ***881.[3] A reconciliation of the actual disbursements from Grant Sidney Account No. ***881 and the disbursements listed on Schedule 1.1 of the Subordinated Credit Agreement is attached as **Exhibit H**.  This shows that Farm Credit was fully aware of and consented to the transaction being made through Grant Sidney. A reconciliation of the disbursements as compared to Schedule 1.1 is attached as **Exhibit I**.

28.     Disbursements from the Grant Sidney Account No. ***881 in furtherance of the funding include payments to Uncle Nearest operating accounts, payroll vendors, packaging vendors, and other vendor obligations. Certain transfers were deposited into the Uncle Nearest operating account—an account subject to Farm Credit's monitoring and full visibility—and from that account Uncle Nearest directly executed the barrel purchase transactions. See **Exhibits E, F, and G**.

29.     On April 15, 2025, Uncle Nearest and Farm Credit entered into a Forbearance Agreement. On that same date, Farm Credit, Uncle Nearest, and Grant Sidney executed a Subordinated Credit Agreement, drafted by Farm Credit, which identifies Grant Sidney as "Lender." Schedule 1.1 to that agreement acknowledges funding totaling $20,026,270.00 during

---

[3] Dkt. 1, Ex. 9, p. 56-57.

the February–April 2025 period and corresponds to the transfers reflected in the Grant Sidney account statements. All underlying bank statements, wire confirmations, and transaction records relating to those transfers were provided to Farm Credit in April 2025.

30. No funds—principal or accrued interest—were retained by Grant Sidney or by me personally. There were no transactions between Grant Sidney and Uncle Nearest prior to February 2025 or after April 2025.

**V. Banking History of Grant Sidney, Inc.**

31. Grant Sidney has never operated as an active operating company. It has functioned solely as a passive holding and investment entity. Consistent with that structure, Grant Sidney has not maintained a standing operating bank account. When a discrete investment transaction has been made, a bank account has been opened for that limited purpose and thereafter closed or left dormant once the transaction concluded.

32. Since the founding of Uncle Nearest in 2016, Grant Sidney has had only three bank account relationships.

33. The first was the CalPrivate account (No. ***881) opened in February 2025 and used solely for the temporary routing of the capital infusion described above. See **Exhibit F**. It was not used before February 2025 and was not materially used after the transaction period.

34. The second was a First National Bank account (No. **7512) opened under the name Grant Sidney, Inc. dba Grant Sidney Publishing. See **Exhibit J**. The account reflects no deposits, no withdrawals, and no activity. The balance remained at $0.00. The account was opened but never funded or used. Until referenced by the Receiver in his recent pleadings, I had forgotten the account ever existed.

35. The third was a First National Bank account (No. **6168) opened solely to facilitate an investment in LS Cream Liqueur. See **Exhibit K**. The January 2021 statement reflects a deposit followed by an immediate $150,000 outgoing wire for that investment. The full email chain reflects that funds owed personally to Ms. Weaver were deposited into her personal account and then transferred into Grant Sidney so that the investment could be executed. See **Exhibit L**. The account thereafter remained largely dormant with a nominal balance. Until referenced by the Receiver in his recent pleadings, I had forgotten the account ever existed.

36. The January 2021 statement for that account reflects a deposit of $168,392.00 followed by an immediate outgoing wire of $150,000.00 on January 22, 2021 for that investment.

37. The related email correspondence reflects that funds owed personally to me were deposited into my personal account and then transferred into Grant Sidney so that the investment could be executed.

38. After that discrete transaction, the First National Bank account remained dormant, maintaining only a nominal balance as reflected in subsequent statements.

39. Grant Sidney has not maintained payroll, recurring vendor payments, operating expenses, or ongoing transactional activity consistent with an operating business.

## VI.    Accounting Records of Grant Sidney, Inc.

40. Grant Sidney has functioned solely as a passive holding and investment entity. It has had no employees, no payroll, no vendor accounts, and no recurring operating expenses.

41. Because it has not operated as an active business, Grant Sidney has not maintained an operational accounting system such as QuickBooks for payroll, accounts payable, or accounts receivable.

42.    Grant Sidney's financial activity has consisted of capital contributions, discrete investment transactions, and tax reporting related to those investments.

43.    Its investments are primarily illiquid equity interests that have not generated dividend distributions.

44.    Grant Sidney has maintained separate federal and applicable state tax filings and has maintained corporate records consistent with its structure as a holding company.

45.    The absence of an operating QuickBooks file for Grant Sidney is consistent with the absence of operational activity and does not reflect the absence of corporate records.

46.    Grant Sidney has not possessed, controlled, or maintained QuickBooks files for Uncle Nearest.

47.    The 2023 QuickBooks records referenced in the Receiver's filings were not within Grant Sidney's custody.

48.    Prior to the Receiver's appointment, the Company retained outside counsel which engaged Kroll to conduct an independent forensic review of financial reporting matters.

49.    Based on summaries provided to me, the independent review did not attribute deletion or alteration of the 2023 QuickBooks entries to anyone associated with current Company management.

50.    QuickBooks is a cloud-based platform administered by Intuit that maintains server-level backups and audit trails of deleted entries.

51.    Prior to the Receiver's appointment, the Company had already initiated corrective measures in response to identified financial irregularities, including:

    (a) initiating an internal governance review;

    (b) retaining outside counsel to oversee a forensic investigation;

(c) engaging Kroll to conduct an independent review of financial reporting;

(d) terminating the Chief Financial Officer;

(e) transitioning lender communications and financial oversight to the Senior Vice President of Finance;

(f) completing implementation of NetSuite as the Company's accounting system;

(g) engaging KPMG to conduct a tax review and remediation;

(h) reviewing capitalization table transactions during the transition of counsel; and

(i) working toward appointment of a lender-recommended independent director and increasing directors' and officers' insurance coverage.

52.     These measures were initiated prior to the Receiver's appointment and were intended to strengthen governance, financial controls, and transparency.

### VII.     Provision of Documentation and Clarification

53.     The bank statements, wire confirmations, financing documents, and related transaction records reflecting the February–April 2025 capital infusion were provided to Farm Credit in April 2025.

54.     Those records reflected the receipt of funds into the Uncle Nearest money market account, the temporary routing of funds through the Grant Sidney account, and the corresponding disbursements to Uncle Nearest operating accounts and vendors.

55.     The Subordinated Credit Agreement executed on April 15, 2025 identifies Grant Sidney as "Lender" and includes Schedule 1.1 itemizing the funding dates and amounts (Exhibit 8).

56.     The funding amounts listed in Schedule 1.1 correspond to the transfers reflected in the Grant Sidney account statements (Exhibit 6; Exhibit 8).

57.     At no point prior to the filing of the Motion to Clarify was I asked to provide additional clarification or documentation regarding the structure of the February–April 2025 capital infusion, the purpose of the temporary Grant Sidney account, or Grant Sidney's banking and accounting practices.

58.     Had such clarification been requested, the records and explanations set forth in this Declaration would have been provided in the ordinary course.

59.     The transactions referenced in the Receiver's filings are fully traceable through the documentary record.

## VIII.     Personal Financial Context Relating to Grant Sidney

60.     Since the founding of Uncle Nearest, I have reinvested substantial personal earnings and equity into the Company, including through Grant Sidney. In addition to the February 2025 transaction described above, I have consistently directed personal earnings into Uncle Nearest rather than extracting liquidity for personal use.

61.     As a result, a significant portion of my personal net worth is tied to the equity value of Uncle Nearest and to investments made through Grant Sidney. Grant Sidney has functioned as a vehicle through which I have held and reinvested equity in Uncle Nearest. It has never been used as a vehicle to extract funds from the Company.

62.     The February–April 2025 financing described in this Declaration was undertaken through Grant Sidney for the purpose of providing liquidity to Uncle Nearest and was not structured to provide personal financial benefit to me.

63.     I provide this information to clarify the financial context surrounding Grant Sidney and its role in the transactions referenced in the Motion.

## IX.     Personal Understanding and Disclosure of the February 2025 Transaction

64.     As it relates to the February 2025 $20 million financing transaction, I disclosed the structure of that transaction to the Receiver during our initial meeting on August 27, 2025. During that meeting, I explained the structure of the transaction and the purpose for which it had been established.

65.     My understanding from consulting with Uncle Nearest's advisors was that the structure was adopted to ensure that the capital infusion was formally documented while protecting the Company and its shareholders.

66.     At the time, my focus was on preserving operational continuity at Uncle Nearest while independent professionals were reviewing financial irregularities involving a former executive.

67.     I understood that forfeiting or diluting equity through that structure would carry long-term personal cost. I accepted that cost because my priority was stabilizing the Company.

68.     The banking records reflect that the full amount of the $20 million capital infusion was deployed into Uncle Nearest operations.

69.     I did not receive, and have not received, any portion of the February 2025 financing proceeds for personal use.

70.     In addition to the $20 million transaction described above, I have personally directed substantial additional funds into Uncle Nearest over time, including funds invested through Grant Sidney.

71.     Those investments were made voluntarily and were not structured to provide personal liquidity or financial extraction from the Company.

72.     The February 2025 transaction was undertaken for the sole purpose of supporting Uncle Nearest, and the banking and financing records described above reflect that the proceeds were fully deployed for Company operations.


I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 26 day of February, 2026.

Fawn Weaver

# EXHIBIT A

**Dated: June 14, 2013**


<u>*Via Electronic Mail*</u>

VR Investments, Inc.
12130 Millennium Drive, Suite 300
Los Angeles, CA 90094

Ladies and Gentlemen:

The undersigned hereby subscribes for and offers to purchase 100 validly issued, fully paid and nonassessable shares of the Common Stock, par value $1.00 per share, of VR Investments, Inc., a California corporation, and to pay therefore in lawful money $1.00 per share, or $100 in the aggregate.

Please confirm the above and accept this offer by signing in the space provided below.

Very truly yours,

_____

Fawn Weaver

Accepted and agreed to as of June 14, 2013:
**VR Investments, Inc.**

By: _____
     Fawn Weaver
     Chief Executive Officer

# EXHIBIT B

**ACTION BY WRITTEN CONSENT**
**IN LIEU OF THE ORGANIZATIONAL MEETING**
**BY THE SOLE DIRECTOR OF**
**VR INVESTMENTS, INC.**


The undersigned, constituting the sole member of the Board of Directors (the "Board") of VR Investments, Inc., a California corporation (the "Company"), pursuant to Section 307(b) of the California General Corporation Law and the Bylaws of the Company, hereby adopt the following resolutions by written consent, effective as of the latest date set forth on the signature page hereto:

1.  <u>Articles of Incorporation</u>.

    **RESOLVED,** that the Articles of Incorporation of the Company filed with the California Secretary of State on June 14, 2013, be, and it hereby is, ratified and affirmed.

2.  <u>Adoption of Bylaws; Board Size</u>.

    **RESOLVED**, that the Bylaws attached hereto as <u>Exhibit A</u> be, and the same hereby are, adopted as the Bylaws of and for the Company;

    **RESOLVED FURTHER**, that the Secretary of the Company be, and he hereby is, authorized and directed to execute a Certificate of Adoption of the Bylaws, to insert the Bylaws as so certified in the Company's Minute Book and to see that a copy of the Bylaws, similarly certified, is kept at the Company's principal office, as required by law; and

    **RESOLVED FURTHER**, that pursuant to Section 3.2 of Article III of the Bylaws of the Company, the Board of Directors shall consist of one (1) member.

3.  <u>Election of Officers</u>.

    **RESOLVED**, that the following persons be, and they hereby are, appointed as officers of the Company, to serve until the annual meeting or until their successors are duly appointed and have qualified:

    Chief Executive Officer, President,          Fawn Weaver
    Treasurer and Secretary

4.  <u>Designation of Depository</u>.

    **RESOLVED**, that the Chief Executive Officer, President and the Treasurer of the Company be, and each of them hereby is, authorized:

(a)     To designate one or more banks or similar financial institutions as depositories of the funds of the Company;

(b)     To open, maintain and close general and special accounts with any such depositories;

(c)     To cause to be deposited, from time to time, in such accounts with any such depository, such funds of the Company as such officers deem necessary or advisable, and to designate or change the designation of the officer or officers or agent or agents of the Company authorized to make such deposits and to endorse checks, drafts and other instruments for deposit;

(d)     To designate, change or revoke, the designation, from time to time, of the officer or officers or agent or agents of the Company authorized to sign or countersign checks, drafts or other orders for the payment of money issued in the name of the Company against any funds deposited in any of such accounts;

(e)     To authorize the use of facsimile signatures for the signing or countersigning of checks, drafts or other orders for the payment of money, and to enter into such agreements as banks and similar financial institutions customarily require as a condition for permitting the use of facsimile signatures;

(f)     To make such general and special rules and regulations with respect to such accounts as they may deem necessary or advisable and to complete, execute and certify any customary printed blank signature card forms in order to exercise conveniently the authority granted by this resolution; any resolutions printed on such cards are deemed adopted as a part of this resolution;

**RESOLVED FURTHER**, that all form resolutions required by any such depository be, and they hereby are, adopted in such form used by such depository, and that the Secretary be, and hereby is, authorized to certify such resolutions as having been adopted and that the Secretary be, and hereby is, directed to insert a copy of any such form resolutions in the Minute Book; and

**RESOLVED FURTHER**, that any such depository to which a certified copy of these resolutions has been delivered by the Secretary of the Company be, and it hereby is, authorized and entitled to rely upon such resolutions for all purposes until it shall have received written notice of the revocation or amendment of these resolutions adopted by the Board of Directors of the Company.

5.     Fiscal Year.

**RESOLVED**, that the fiscal year of the Company shall end each year on the 31st day of the month of December.

2

GDSVF&H\8397959.1

6.      Principal Office.

        **RESOLVED**, that the principal executive office of the Company shall initially be at:

                12130 Millennium Drive, Suite 300
                Los Angeles, CA 90094

7.      Ratification of Actions.

        **RESOLVED**, that the prior acts made on behalf of the Company by the sole incorporator be, and the same hereby are, ratified and approved as acts of the Company.

8.      Management Powers.

        **RESOLVED**, that the officers of the Company be, and they hereby are, authorized to sign and execute in the name and on behalf of the Company all applications, contracts, leases and other deeds and documents or instruments in writing of whatsoever nature as may be required in the ordinary course of business of the Company and as may be necessary to secure for operation of the corporate affairs, governmental permits and licenses for, and incidental to, the lawful operation of the business of the Company, and to do such acts and things as such officers deem necessary or advisable to fulfill such legal requirements as are applicable to the Company and its business.

9.      Stock Certificates.

        **RESOLVED**, that the share certificates representing shares of the Company's Common Stock be in substantially the same form as the form of share certificate attached hereto as Exhibit B; that each such certificate shall bear the name of the Company, the number of shares represented thereby, the name of the owner of such shares and the date such shares were issued; and

        **RESOLVED FURTHER**, that such share certificates shall be consecutively numbered beginning with CS-1, shall be issued only when the signature of the President and Secretary, or other such officers as provided in Section 416 of the California Corporations Code, and the corporate seal (if one has been adopted) are affixed thereto, may also bear other wording related to the ownership, issuance and transferability of the shares represented thereby, and that the Secretary is instructed to annex the form of certificate to these minutes.

10.     Sale of Common Stock.

        **RESOLVED**, that the Board of Directors of the Company hereby determines, after consideration of all relevant factors, that the fair market value of the Company's Common Stock as of the date hereof is equal to $1.00 per share;

3

**RESOLVED FURTHER**, that the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to sell and issue an aggregate of 100 shares of its Common Stock at a purchase price of $100.00 per share, payable in cash or in consideration of execution and delivery of the Technology Assignment Agreement in the form set forth as <u>Exhibit C</u> hereto, as follows:

| Name of Purchaser | Number of Shares | Total Purchase Price | Type of Consideration |
|---|---|---|---|
| Fawn Weaver | 100 | $100.00 | Cash |

      **RESOLVED FURTHER**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of Company, to take such further action and execute such documents as each may deem necessary or appropriate to carry out the purposes of the above resolutions, including, but not limited to blue sky filings in accordance with state securities laws and regulations.

11.    <u>Incorporation Expenses</u>.

      **RESOLVED**, that the officers of the Company be, and they hereby are, authorized and directed to pay the expenses relating to the incorporation and organization of this Company.

12.    <u>Enabling Power</u>.

      **RESOLVED**, that the officers of the Company be, and each of them hereby is, authorized, directed and empowered to execute any applications, certificates, agreements or any other instruments or documents or amendments or supplements to such documents, including any blue sky filings and stock certificates, or to do, or cause to be done, any and all other acts and things as such officers, and each of them may, in their discretion, deem necessary or advisable and appropriate to carry out the purposes of the foregoing resolutions.

\* \* \* \*

4

GDSVF&H\8397959.1

GDCET\5325096\082622.17.52

**IN WITNESS WHEREOF**, the undersigned has executed this Action by Written Consent as of the date set forth below and it shall be effective as of such date.

Director:

6/14/2013
_____
Date

_____
Fawn Weaver

# EXHIBIT A

Bylaws

GDSVF&H\8397959.1

GDCET\5325096\082622.17.52

EXHIBIT B

Form of Common Stock Certificate

GDCET\5325096\082622.17.52

GDSVF&H\8397959.1

# EXHIBIT C

**BYLAWS OF**

**GRANT SIDNEY, INC.**

**(A CALIFORNIA CORPORATION)**

GDSVF&H\10835471.1

# TABLE OF CONTENTS

**Page**

ARTICLE I - OFFICES ...................................................................................................... 1

ARTICLE II - SHAREHOLDERS' MEETINGS ............................................................... 1

ARTICLE III - BOARD OF DIRECTORS ........................................................................ 4

ARTICLE IV - OFFICERS ................................................................................................ 7

ARTICLE V - MISCELLANEOUS .................................................................................. 9

# BYLAWS

## OF

## GRANT SIDNEY, INC.

### ARTICLE I - OFFICES

Section 1. The principal executive office of GRANT SIDNEY, Inc. (the "Corporation") shall be at such place inside or outside the State of California as the Board of Directors may determine from time to time.

Section 2. The Corporation may also have offices at such other places as the Board of Directors may from time to time designate, or as the business of the Corporation may require.

### ARTICLE II - SHAREHOLDERS' MEETINGS

Section 1. Annual Meetings. The annual meeting of the shareholders of the Corporation for the election of directors to succeed those whose terms expire and for the transaction of such other business as may properly come before the meeting shall be held at such place and at such time as may be fixed from time to time by the Board of Directors and stated in the notice of the meeting. If the annual meeting of the shareholders be not held as herein prescribed, the election of directors may be held at any meeting thereafter called pursuant to these Bylaws.

Section 2. Special Meetings. Special meetings of the shareholders, for any purpose whatsoever, unless otherwise prescribed by statute, may be called at any time by the Chairman of the Board, the President, or by the Board of Directors, or by one or more shareholders holding not less than ten percent of the voting power of the Corporation.

Section 3. Place. All meetings of the shareholders shall be at any place within or without the State of California designated by the Board of Directors. In the absence of any such designation, shareholders' meetings shall be held at the principal executive office of the Corporation.

Section 4. Notice. Notice of meetings of the shareholders of the Corporation shall be given in writing to each shareholder entitled to vote, either personally or by first class mail (unless the Corporation has 500 or more shareholders determined as provided by the California Corporations Code on the record date for the meeting, in which case notice may be sent by third class mail) or other means of written communication, charges prepaid, addressed to the shareholder at his address appearing on the books of the Corporation or given by the shareholder to the Corporation for the purpose of notice. Notice of any such meeting of shareholders shall be sent to each shareholder entitled thereto not less than ten (or, if sent by third class mail, 30) nor more than 60 days before the meeting. Said notice shall state the place, date and hour of the meeting and, (1) in the case of special meetings, the general nature of the

business to be transacted, and no other business may be transacted, or (2) in the case of annual meetings, those matters which the Board of Directors, at the time of the mailing of the notice, intends to present for action by the shareholders, but subject to Section 601(f) of the California Corporations Code any proper matter may be presented at the meeting for shareholder action, and (3) in the case of any meeting at which directors are to be elected, the names of the nominees intended at the time of the mailing of the notice to be presented by management for election.

Section 5. <u>Adjourned Meetings</u>. Any shareholders' meeting may be adjourned from time to time by the vote of the holders of a majority of the voting shares present at the meeting either in person or by proxy. Notice of any adjourned meeting need not be given unless a meeting is adjourned for forty-five days or more from the date set for the original meeting.

Section 6. <u>Quorum</u>. The presence in person or by proxy of the persons entitled to vote a majority of the shares entitled to vote at any meeting constitutes a quorum for the transaction of business. The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

In the absence of a quorum, any meeting of shareholders may be adjourned from time to time by the vote of a majority of the shares, the holders of which are either present in person or represented by proxy thereat, but no other business may be transacted, except as provided above.

Section 7. <u>Shareholder Action by Written Consent</u>. Any action which may be taken at any meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted; provided, however, that (1) unless the consents of all shareholders entitled to vote have been solicited in writing, notice of any shareholder approval without a meeting by less than unanimous written consent shall be given as required by the California Corporations Code, and (2) directors may not be elected by written consent except by unanimous written consent of all shares entitled to vote for the election of directors.

Any written consent may be revoked by a writing received by the Secretary of the Corporation prior to the time that written consents of the number of shares required to authorize the proposed action have been filed with the Secretary.

Section 8. <u>Waiver of Notice</u>. The transactions of any meeting of shareholders, however called and noticed, and whenever held, shall be as valid as though had at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy, and if, either before or after the meeting, each of the persons entitled to vote, not present in person or by proxy, signs a written waiver of notice, or a consent to the holding of the meeting, or an approval of the minutes thereof. All such waivers, consents, or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Section 9. <u>Voting</u>. The voting at all meetings of shareholders need not be by ballot, but any qualified shareholder before the voting begins may demand a stock vote whereupon such stock vote shall be taken by ballot, each of which shall state the name of the shareholder voting and the number of shares voted by such shareholder, and if such ballot be cast by a proxy, it shall also state the name of such proxy.

At any meeting of the shareholders, every shareholder having the right to vote shall be entitled to vote in person, or by proxy appointed in a writing subscribed by such shareholder and bearing a date not more than eleven months prior to said meeting, unless the writing states that it is irrevocable and satisfies Section 705(e) of the California Corporations Code, in which event it is irrevocable for the period specified in said writing and said Section 705(e).

Section 10. <u>Record Dates</u>. In the event the Board of Directors fixes a day for the determination of shareholders of record entitled to vote as provided in Section 1 of Article V of these Bylaws, then, subject to the provisions of the General Corporation Law of the State of California, only persons in whose name shares entitled to vote stand on the stock records of the Corporation at the close of business on such day shall be entitled to vote.

If no record date is fixed:

The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the business day next preceding the day notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held;

The record date for determining shareholders entitled to give consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is given; and

The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto, or the 60th day prior to the date of such other action, whichever is later.

A determination of shareholders of record entitled to notice of or to vote at a meeting of shareholders shall apply to any adjournment of the meeting unless the Board of Directors fixes a new record date for the adjourned meeting, but the Board of Directors shall fix a new record date if the meeting is adjourned for more than 45 days.

Section 11. <u>Cumulative Voting for Election of Directors</u>. Provided the candidate's name has been placed in nomination prior to the voting and one or more shareholders has given notice at the meeting prior to the voting of the shareholder's intent to cumulate the shareholder's votes, every shareholder entitled to vote at any election for directors shall have the right to cumulate such shareholder's votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which the shareholder's shares are normally entitled, or distribute the shareholder's votes on the same principle among as many candidates as the shareholder shall think fit. The candidates receiving the highest number

3

of votes of the shares entitled to be voted for them up to the number of directors to be elected by such shares are elected.

## ARTICLE III - <u>BOARD OF DIRECTORS</u>

Section 1. <u>Powers</u>. Subject to any limitations in the Articles of Incorporation or these Bylaws and to any provision of the California Corporations Code requiring shareholder authorization or approval for a particular action, the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised by, or under the direction of, the Board of Directors. The Board of Directors may delegate the management of the day-to-day operation of the business of the Corporation to a management company or other person provided that the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised, under the ultimate direction of the Board of Directors.

Section 2. <u>Number, Tenure and Qualifications</u>. The exact number of directors may be fixed from time to time within such limit by a duly adopted resolution of the Board of Directors or shareholders. The exact number of directors presently authorized shall be two until changed within the limits specified above by a duly adopted resolution of the Board of Directors or shareholders. Directors need not be shareholders. Directors shall hold office until the next annual meeting of shareholders and until their respective successors are elected. If any such annual meeting is not held, or the directors are not elected thereat, the directors may be elected at any special meeting of shareholders held for that purpose.

Section 3. <u>Regular Meetings</u>. A regular annual meeting of the Board of Directors shall be held without other notice than this Bylaw immediately after, and at the same place as, the annual meeting of shareholders. The Board of Directors may provide for other regular meetings from time to time by resolution.

Section 4. <u>Special Meetings</u>. Special meetings of the Board of Directors may be called at any time by the Chairman of the Board, or the President or any Vice President, or the Secretary or any two directors. Written notice of the time and place of all special meetings of the Board of Directors shall be delivered personally or by telephone, including a voice messaging system or other system or technology designed to record and communicate messages, telegraph, facsimile, electronic mail or other electronic means to each director at least 48 hours before the meeting, or sent to each director by first class mail, postage prepaid, at least four days before the meeting. Such notice need not specify the purpose of the meeting. Notice of any meeting of the Board of Directors need not be given to any director who signs a waiver of notice, whether before or after the meeting, or who attends the meeting without protesting prior thereto or at its commencement, the lack of notice to such director.

Section 5. <u>Place of Meetings</u>. Meetings of the Board of Directors may be held at any place within or without the State of California, which has been designated in the notice, or if not stated in the notice or there is no notice, the principal executive office of the Corporation or as designated by the resolution duly adopted by the Board of Directors.

Section 6. <u>Participation by Telephone</u>. Members of the Board of Directors may participate in a meeting through use of conference telephone, electronic video screen

4

communication, or other communications equipment. Participation in a meeting through use of conference telephone constitutes presence in person at the meeting as long as all members participating in such meeting can hear one another. Participation in a meeting through the use of electronic video screen communication or other communications equipment (other than conference telephone) constitutes presence in person at that meeting if all of the following apply: (a) each member participating in the meeting can communicate with all of the other members concurrently, (b) each member is provided the means of participating in all matters before the Board of Directors, including, without limitation, the capacity to propose, or to interpose an objection to, a specific action to be taken by the Corporation, and (c) the Corporation adopts and implements some means of verifying that (i) a person participating in the meeting is a director or other person entitled to participate in the Board of Directors' meeting, and (ii) all actions of, or votes by, the Board of Directors are taken or cast only by the directors and not by persons who are not directors.

Section 7. <u>Quorum</u>. A majority of the Board of Directors shall constitute a quorum at all meetings. In the absence of a quorum a majority of the directors present may adjourn any meeting to another time and place. If a meeting is adjourned for more than 24 hours, notice of any adjournment to another time or place shall be given prior to the time of the reconvened meeting to the directors who were not present at the time of adjournment.

Section 8. <u>Action at Meeting</u>. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

Section 9. <u>Waiver of Notice</u>. The transactions of any meeting of the Board of Directors, however called and noticed or wherever held, are as valid as though had at a meeting duly held after regular call and notice if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, a consent to holding the meeting, or an approval of the minutes thereof. All such waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Section 10. <u>Action Without Meeting</u>. Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all members of the Board individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board. Such action by written consent shall have the same force and effect as a unanimous vote of such directors.

Section 11. <u>Removal</u>. The Board of Directors may declare vacant the office of a director who has been declared of unsound mind by an order of court or who has been convicted of a felony.

The entire Board of Directors or any individual director may be removed from office without cause by a vote of shareholders holding a majority of the outstanding shares entitled to vote at an election of directors; provided, however, that unless the entire Board is removed, no individual director may be removed when the votes cast against removal, or not

consenting in writing to such removal, would be sufficient to elect such director if voted cumulatively at an election at which the same total number of votes cast were cast (or, if such action is taken by written consent, all shares entitled to vote were voted) and the entire number of directors authorized at the time of the director's most recent election were then being elected.

In the event an office of a director is so declared vacant or in case the Board or any one or more directors be so removed, new directors may be elected at the same meeting.

Section 12.  Resignations.  Any director may resign effective upon giving written notice to the Chairman of the Board, the President, the Secretary or the Board of Directors of the Corporation, unless the notice specifies a later time for the effectiveness of such resignation.  If the resignation is effective at a future time, a successor may be elected to take office when the resignation becomes effective.

Section 13.  Vacancies.  Except for a vacancy created by the removal of a director, all vacancies on the Board of Directors, whether caused by resignation, death or otherwise, may be filled by a majority of the remaining directors or, if the number of directors then in office is less than a quorum, by (a) the unanimous written consent of the directors then in office, (b) the affirmative vote of a majority of the directors then in office at a meeting held pursuant to notice or waivers of notice complying with Section 307 of the California Corporations Code Section, or (c) a sole remaining director, and each director so elected shall hold office until his successor is elected at an annual, regular or special meeting of the shareholders.  Vacancies created by the removal of a director may be filled only by approval of the shareholders.  The shareholders may elect a director at any time to fill any vacancy not filled by the directors.  Any such election by written consent requires the consent of a majority of the outstanding shares entitled to vote.

Section 14.  Compensation.  No stated salary shall be paid directors, as such, for their services, but, by resolution of the Board of Directors, a fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of such Board; provided that nothing herein contained shall be construed to preclude any director from serving the Corporation in any other capacity and receiving compensation therefor.  Members of special or standing committees may be allowed like compensation for attending committee meetings.

Section 15.  Committees.  The Board of Directors may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two or more directors, to serve at the pleasure of the Board of Directors.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent member at any meeting of the committee.  The appointment of members or alternate members of a committee requires the vote of a majority of the authorized number of directors.  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have all the authority of the Board of Directors in the management of the business and affairs of the Corporation, except with respect to (a) the approval of any action requiring shareholders' approval or approval of the outstanding shares, (b) the filling of vacancies on the Board or any committee, (c) the fixing of compensation of directors for serving on the Board or any committee, (d) the adoption, amendment or repeal of Bylaws, (e) the

6

amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable, (f) a distribution to shareholders, except at a rate or in a periodic amount or within a price range determined by the Board of Directors, and (g) the appointment of other committees of the Board of Directors or the members thereof.

## ARTICLE IV - OFFICERS

Section 1. <u>Number and Term</u>.  The officers of the Corporation shall be a Chairman of the Board or a President, a Secretary and a Chief Financial Officer, all of which shall be chosen by the Board of Directors.  In addition, the Board of Directors may appoint such other officers as may be deemed expedient for the proper conduct of the business of the Corporation, each of whom shall have such authority and perform such duties as the Board of Directors may from time to time determine.  The officers to be appointed by the Board of Directors shall be chosen annually at the regular meeting of the Board of Directors held after the annual meeting of shareholders and shall serve at the pleasure of the Board of Directors.  If officers are not chosen at such meeting of the Board of Directors, they shall be chosen as soon thereafter as shall be convenient.  Each officer shall hold office until his successor shall have been duly chosen or until his removal or resignation.

Section 2. <u>Inability to Act</u>.  In the case of absence or inability to act of any officer of the Corporation and of any person herein authorized to act in his place, the Board of Directors may from time to time delegate the powers or duties of such officer to any other officer, or any director or other person whom it may select.

Section 3. <u>Removal and Resignation</u>.  Any officer chosen by the Board of Directors may be removed at any time, with or without cause, by the affirmative vote of a majority of all the members of the Board of Directors.

Any officer chosen by the Board of Directors may resign at any time by giving written notice of said resignation to the Corporation.  Unless a different time is specified therein, such resignation shall be effective upon its receipt by the Chairman of the Board, the President, the Secretary or the Board of Directors.

Section 4. <u>Vacancies</u>.  A vacancy in any office because of any cause may be filled by the Board of Directors for the unexpired portion of the term.

Section 5. <u>Chairman of the Board</u>.  The Chairman of the Board shall preside at all meetings of the Board.

Section 6. <u>President</u>.  The President shall be the chief executive officer of the Corporation unless such title is assigned to another officer of the Corporation; in the absence of a Chairman and Vice Chairman of the Board, the President shall preside as the chairman of meetings of the shareholders and the Board of Directors; and the President shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect.  The President or any Vice President shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the Corporation (if the Corporation has adopted a seal), except where required or permitted by law to

7

be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board of Directors to some other officer or agent of the Corporation.

Section 7. <u>Vice President</u>. In the absence of the President, or in the event of such officer's death, disability or refusal to act, the Vice President, or in the event there be more than one Vice President, the Vice Presidents in the order designated at the time of their selection, or in the absence of such designation, then in the order of their selection, shall perform the duties of President, and when so acting, shall have all powers and be subject to all the restrictions upon the President. Each Vice President shall have such powers and discharge such duties as may be assigned from time to time by the President or by the Board of Directors.

Section 8. <u>Secretary</u>. The Secretary shall see that notices for all meetings are given in accordance with the provisions of these Bylaws and as required by law, shall keep minutes of all meetings, shall have charge of the seal and the corporate books, and shall make such reports and perform such other duties as are incident to such office, or as are properly required by the President or by the Board of Directors.

The Assistant Secretary or the Assistant Secretaries, in the order of their seniority, shall, in the absence or disability of the Secretary, or in the event of such officer's refusal to act, perform the duties and exercise the powers and discharge such duties as may be assigned from time to time by the President or by the Board of Directors.

Section 9. <u>Chief Financial Officer</u>. The Chief Financial Officer may also be designated by the alternate title of "Treasurer." The Chief Financial Officer shall have the custody of all moneys and securities of the Corporation and shall keep regular books of account. Such officer shall disburse funds of the Corporation in payment of the just demands against the Corporation, or as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the Board from time to time as may be required of such officer, an account of all transactions as Chief Financial Officer and of the financial condition of the Corporation. Such officer shall perform all duties incident to such office or that are properly required by the President or by the Board. If required by the Board of Directors, the Chief Financial Officer shall give the corporation a bond (which shall be renewed every six years) in such sum and with such surety or sureties as shall be satisfactory to the Board of Directors for the faithful performance of the duties of such officer's office and for the restoration to the Corporation, in case of such officer's death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in such officer's possession or control belonging to the Corporation.

The Assistant Treasurer or the Assistant Treasurers, in the order of their seniority, shall, in the absence or disability of the Chief Financial Officer, or in the event of such officer's refusal to act, perform the duties and exercise the powers of the Chief Financial Officer, and shall have such powers and discharge such duties as may be assigned from time to time by the President or by the Board of Directors.

Section 10. <u>Salaries</u>. The salaries of the officers shall be fixed from time to time by the Board of Directors and no officer shall be prevented from receiving such salary by reason of the fact that such officer is also a director of the Corporation.

Section 11.  <u>Officers Holding More Than One Office</u>.  Any two or more offices may be held by the same person, but no officer shall execute, acknowledge or verify any instrument in more than one capacity.

Section 12.  <u>Approval of Loan to Officers</u>.  The Corporation may, upon the approval of the Board of Directors alone, make loans of money or property to, or guarantee the obligations of, any officer of the Corporation or its parent or subsidiary, whether or not a director, or adopt an employee benefit plan or plans authorizing such loans or guaranties provided that (i) the Board of Directors determines that such a loan or guaranty or plan may reasonably be expected to benefit the Corporation, (ii) the Corporation has outstanding shares held of record by 100 or more persons (determined as provided in Section 605 of the California Corporations Code) on the date of approval by the Board of Directors, and (iii) the approval of the Board of Directors is by sufficient vote without counting the vote of any interested director or directors.

ARTICLE V - <u>MISCELLANEOUS</u>

Section 1.  <u>Record Date and Closing of Stock Books</u>.  The Board of Directors may fix a time in the future as a record date for the determination of the shareholders entitled to notice of and to vote at any meeting of shareholders or entitled to receive payment of any dividend or distribution, or any allotment of rights, or to exercise rights in respect to any other lawful action.  The record date so fixed shall not be more than 60 nor less than ten days prior to the date of the meeting or event for the purposes of which it is fixed.  When a record date is so fixed, only shareholders of record at the close of business on that date are entitled to notice of and to vote at the meeting or to receive the dividend, distribution, or allotment of rights, or to exercise the rights, as the case may be, notwithstanding any transfer of any shares on the books of the Corporation after the record date.

The Board of Directors may close the books of the Corporation against transfers of shares during the whole or any part of a period of not more than 60 days prior to the date of a shareholders' meeting, the date when the right to any dividend, distribution, or allotment of rights vests, or the effective date of any change, conversion or exchange of shares.

Section 2.  <u>Certificates</u>.  The shares of the Corporation shall be uncertificated, as provided under the laws of the State of California, and shall be entered in the books of the corporation and recorded as they are issued. Prior to the due presentment for registration of transfer in the stock transfer book of the Corporation, the registered owner shall be treated as the person exclusively entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner, except as expressly provided otherwise by the laws of the State of California.

Section 3.  <u>Representation of Shares in Other Corporations</u>.  Shares of other corporations standing in the name of this Corporation may be voted or represented and all incidents thereto may be exercised on behalf of the Corporation by the Chairman of the Board or the President or the Vice President and the Chief Financial Officer or the Secretary or an Assistant Secretary.

Section 4. <u>Fiscal Year</u>. The fiscal year of the Corporation shall end on December 31 of each year.

Section 5. <u>Annual Reports</u>. The Annual Report to shareholders, described in the California Corporations Code, is expressly waived and dispensed with until such time as the Corporation has more than 100 shareholders.

Section 6. <u>Amendments</u>. Bylaws may be adopted, amended, or repealed by the vote or the written consent of shareholders entitled to exercise a majority of the voting power of the Corporation. Subject to the right of shareholders to adopt, amend, or repeal Bylaws, Bylaws may be adopted, amended, or repealed by the Board of Directors, except that a Bylaw or amendment thereof changing the authorized number of directors may be adopted by the Board of Directors only if these Bylaws permit an indefinite number of directors and the Bylaw or amendment thereof adopted by the Board of Directors changes the authorized number of directors within the limits specified in these Bylaws.

Section 7. <u>Indemnification of Corporate Agents</u>. The Corporation shall indemnify each of its agents against expenses, judgments, fines, settlements and other amounts, actually and reasonably incurred by such person by reason of such person's having been made or having been threatened to be made a party to a proceeding to the fullest extent permissible under the California Corporations Code and the Corporation shall advance the expenses reasonably expected to be incurred by such agent in defending any such proceeding upon receipt of the undertaking required by subdivision (f) of Section 317 of the California Corporations Code. The terms "agent," "proceeding" and "expenses" made in this Section 7 shall have the same meaning as such terms in said Section 317.

GDSVF&H\10835471.1

**CERTIFICATE OF ADOPTION**

**OF THE SECRETARY OF**

**GRANT SIDNEY, INC.**

The undersigned, Fawn Weaver, hereby certifies that they are the duly elected, qualified and acting Secretary of GRANT SIDNEY, Inc., a California corporation (the "Corporation"), that the Bylaws attached hereto constitute a true and complete copy of the Bylaws of the Corporation as in effect on the date hereof.

**IN WITNESS WHEREOF,** the undersigned has executed this Certificate as of this 27th day of January, 2016.

_____

Fawn Weaver
Secretary

# EXHIBIT D

A0780184

3580378

**FILED**
Secretary of State
State of California

IPC   JAN 2 7 2016

# CERTIFICATE OF AMENDMENT

## TO

# ARTICLES OF INCORPORATION

## OF

# VR INVESTMENTS, INC.

Pursuant to the provisions of sections 900-910, California Corporations Code, this Corporation adopts the following Certificate of Amendment to its Articles of Incorporation, and the undersigned certify that:

**FIRST:**   They are the President and the Secretary, respectively, of **VR INVESTMENTS, INC.**, a California corporation.

**SECOND:**   Article 1 of the Articles of Incorporation of this Corporation is amended to read as follows:

The name of the Corporation is **GRANT SIDNEY INC**.

**THIRD:**   The foregoing amendment to the Articles of Incorporation has been duly approved by the Board of Directors

**FOURTH:**   The foregoing amendment to the Articles of Incorporation has been duly approved by the required vote of the Shareholders in accordance with section 902, California Corporations Code. The total number of outstanding shares of the Corporation are 100. The number of Shares voting in favor of the amendment equaled or exceeded the vote required. The percentage vote required was more than 50 percent.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

Signed this 25 June 2015

_Fawn Weaver_
Fawn Weaver, President

_Fawn Weaver_
Fawn Weaver, Secretary

**SPIEGEL & UTRERA, P.C.**
L A W Y E R S
www.amerilawyer®.com
4727 WILSHIRE BOULEVARD, SUITE 601, LOS ANGELES, CA 90010 - (323) 936-3400 - FACSIMILE (323) 939-5600

# EXHIBIT E







**Contact us:**
(424) 303-4880

**Branch:**
CALPRIVATE BANK
BEVERLY HILLS OFFICE
9606 S SANTA MONICA BL 3RD
FL
BEVERLY HILLS, CA 90210

**Visit our website at:**
www.calprivate.bank

UNCLE NEAREST INC
600 N MAIN STREET SUITE 2000
SHELBYVILLE TN 37160

**Statement Date:** May 30, 2025
**Account Number:** ███873

---

## A PARTNER YOU CAN COUNT ON

Your Security is Our Priority!  Please be sure to check your statements for any unauthorized transactions.

## BUSINESS MONEY MARKET

**Account Closed**

### ACCOUNT ACTIVITY SUMMARY

| | | | | |
|---|---|---|---|---|
| Statement period number of days | 30 | | Interest earned this statement | $0.00 |
| Average balance | $482.81 | | Annual percentage yield earned | 0.00 % |
| Chrgs and fees today | $0.00 | | | |
| Year to date interest | $3,111.12 | | | |

| | | |
|---|---|---|
| **Previous balance** | 04/30/2025 | $804.69 |
| Deposits | 0 | $0.00 |
| Withdrawals | 1 | $804.69 |
| **Ending balance** | 05/30/2025 | **$0.00** |

Debits
$804.69

### WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 05/19/2025 | TO  XXXXXXXX9881 Funds Transfer via Online | $804.69 |
| **Number of Withdrawals 1** | | **Total Withdrawals $804.69** |

### DAILY BALANCE SUMMARY

| Date | Amount |
|---|---|
| 05/19/2025 | $0.00 |

## Account Reconciliation Form

A. The ending balance shown on statement $ _____

B. List deposits not shown on statement $ _____
$ _____
$ _____
$ _____
$ _____

C. Total of lines B $ _____
D. Add line C to line A $ _____
E. List below all checks written and any withdrawals not posted on statement

| Check # | $ Amount | Check # | $ Amount |
|---------|----------|---------|----------|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

F. Total of Column E $ _____
G. Subtract line F from line D $ _____

H. The ending balance in your check register $ _____

I. List deposits, transfers or interest credited not already listed in your check register $ _____
$ _____
$ _____
$ _____
$ _____

J. Total of lines I $ _____
K. Add line J to line H $ _____
L. List below all checks and charges not already reflected in your check register

| Check # | $ Amount | Check # | $ Amount |
|---------|----------|---------|----------|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

M. Total of Column L $ _____
N. Subtract line M from line K $ _____

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do so we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION -** Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE -** The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge.** To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.



**Contact us:**
(424) 303-4880

MEMBER
**FDIC** 

**Branch:**
CALPRIVATE BANK
BEVERLY HILLS OFFICE
9606 S SANTA MONICA BL 3RD
FL
BEVERLY HILLS, CA 90210

**Visit our website at:**
www.calprivate.bank

UNCLE NEAREST INC
600 N MAIN STREET SUITE 2000
SHELBYVILLE TN 37160

**Statement Date:** April 30, 2025
**Account Number:** ███873

## A PARTNER YOU CAN COUNT ON

Your Security is Our Priority!  Please be sure to check your statements for any unauthorized transactions.

# BUSINESS MONEY MARKET

## ACCOUNT ACTIVITY SUMMARY

| | | |
|---|---|---|
| Statement period number of days | | 30 |
| Average balance | | $48,887.99 |
| Chrgs and fees today | | $0.00 |
| Year to date interest | | $3,111.12 |

| | |
|---|---|
| Interest earned this statement | $120.77 |
| Annual percentage yield earned | 3.05 % |

| | | |
|---|---|---|
| Previous balance | 03/31/2025 | $103,978.35 |
| Deposits | 1 | $120.77 |
| Withdrawals | 1 | $103,294.43 |
| Ending balance | 04/30/2025 | $804.69 |

Credits
$120.77

Debits
$103,294.43

## DEPOSITS

| Date | Description | Amount |
|---|---|---|
| 04/30/2025 | INTEREST COMPOUNDED | $120.77 |
| **Number of Deposits 1** | | **Total Deposits $120.77** |

## WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 04/15/2025 | TO  XXXXXXXX9881 Funds Transfer via Online | $103,294.43 |
| **Number of Withdrawals 1** | | **Total Withdrawals $103,294.43** |



**UNCLE NEAREST INC**

## DAILY BALANCE SUMMARY

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 04/15/2025 | $683.92 | 04/30/2025 | $804.69 |

## Account Reconciliation Form

| | | |
|---|---|---|
| A. The ending balance shown on statement | $ _____ | |
| B. List deposits not shown on statement | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| C. Total of lines B | $ _____ | |
| D. Add line C to line A | $ _____ | |
| E. List below all checks written and any withdrawals not posted on statement | | |

H. The ending balance in your check register — $ _____
I. List deposits, transfers or interest credited not already listed in your check register — $ _____ / $ _____ / $ _____ / $ _____
J. Total of lines I — $ _____
K. Add line J to line H — $ _____
L. List below all checks and charges not already reflected in your check register

| Check # | $ Amount | Check # | $ Amount |
|---|---|---|---|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

| Check # | $ Amount | Check # | $ Amount |
|---|---|---|---|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

F. Total of Column E — $ _____
G. Subtract line F from line D — $ _____

M. Total of Column L — $ _____
N. Subtract line M from line K — $ _____

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do so we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION -** Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE -** The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge.** To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.



**Relationships. Solutions. Trust.**

**Contact us:**
(424) 303-4880

MEMBER  
FDIC

**Branch:**
CALPRIVATE BANK
BEVERLY HILLS OFFICE
9606 S SANTA MONICA BL 3RD
FL
BEVERLY HILLS, CA 90210

**Visit our website at:**
www.calprivate.bank

UNCLE NEAREST INC
600 N MAIN STREET SUITE 2000
SHELBYVILLE TN 37160

**Statement Date:** March 31, 2025
**Account Number:** ■873

---

### A PARTNER YOU CAN COUNT ON

Your Security is Our Priority!  Please be sure to check your statements for any unauthorized transactions.

## BUSINESS MONEY MARKET

### ACCOUNT ACTIVITY SUMMARY

| | | | |
|---|---|---|---|
| Statement period number of days | 31 | Interest earned this statement | $264.58 |
| Average balance | $103,713.77 | Annual percentage yield earned | 3.05 % |
| Chrgs and fees today | $0.00 | | |
| Year to date interest | $2,990.35 | | |

| | | | |
|---|---|---|---|
| **Previous balance** | **02/28/2025** | **$103,713.77** | |
| Deposits | 1 | $264.58 | |
| Withdrawals | 0 | $0.00 | |
| **Ending balance** | **03/31/2025** | **$103,978.35** | |

Credits
$264.58

---

### DEPOSITS

| Date | Description | Amount |
|---|---|---|
| 03/31/2025 | INTEREST COMPOUNDED | $264.58 |
| **Number of Deposits 1** | | **Total Deposits $264.58** |

---

### DAILY BALANCE SUMMARY

| Date | Amount |
|---|---|
| 03/31/2025 | $103,978.35 |

## Account Reconciliation Form

| | | | | |
|---|---|---|---|---|
| A. The ending balance shown on statement | $ _____ | H. The ending balance in your check register | $ _____ | |
| B. List deposits not shown on statement | $ _____ | I. List deposits, transfers or interest credited not already listed in your check register | $ _____ | |
| | $ _____ | | $ _____ | |
| | $ _____ | | $ _____ | |
| | $ _____ | | $ _____ | |
| C. Total of lines B | $ _____ | J. Total of lines I | $ _____ | |
| D. Add line C to line A | $ _____ | K. Add line J to line H | $ _____ | |
| E. List below all checks written and any withdrawals not posted on statement | | L. List below all checks and charges not already reflected in your check register | | |

| Check # | $ Amount | Check # | $ Amount | Check # | $ Amount | Check # | $ Amount |
|---|---|---|---|---|---|---|---|
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |

| | | | |
|---|---|---|---|
| F. Total of Column E | $ _____ | M. Total of Column L | $ _____ |
| G. Subtract line F from line D | $ _____ | N. Subtract line M from line K | $ _____ |

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION -** Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE -** The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge.** To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.



**Contact us:**
(424) 303-4880

 

**Branch:**
CALPRIVATE BANK
BEVERLY HILLS OFFICE
9606 S SANTA MONICA BL 3RD
FL
BEVERLY HILLS, CA 90210

**Visit our website at:**
www.calprivate.bank

UNCLE NEAREST INC
600 N MAIN STREET SUITE 2000
SHELBYVILLE TN 37160

**Statement Date: February 28, 2025**
**Account Number:** ███873

## A PARTNER YOU CAN COUNT ON

Your Security is Our Priority! Please be sure to check your statements for any unauthorized transactions.

# BUSINESS MONEY MARKET

## ACCOUNT ACTIVITY SUMMARY

| | | | |
|---|---|---|---|
| Statement period number of days | 28 | Interest earned this statement | $2,725.77 |
| Average balance | $1,182,463.00 | Annual percentage yield earned | 3.05 % |
| Chrgs and fees today | $0.00 | | |
| Year to date interest | $2,725.77 | | |

| | | | |
|---|---|---|---|
| Previous balance | 01/31/2025 | $0.00 | |
| Deposits | 3 | $20,002,725.77 | |
| Withdrawals | 6 | $19,899,012.00 | |
| **Ending balance** | **02/28/2025** | **$103,713.77** | |



## DEPOSITS

| Date | Description | Amount |
|---|---|---|
| 02/04/2025 | WIREIN000161 MARCYPEN OPPORTUNITIES FUND | $10,000,000.00 |
| 02/28/2025 | WIREIN000344 MARCYPEN OPPORTUNITIES FUND | $10,000,000.00 |
| 02/28/2025 | INTEREST COMPOUNDED | $2,725.77 |

**Number of Deposits 3**      **Total Deposits $20,002,725.77**

## WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 02/04/2025 | INCOMING DOMESTIC WIRE FEE | $12.00 |
| 02/04/2025 | TRANSFER TO ACCT 9881 ... WEAVER | $500,000.00 |



**UNCLE NEAREST INC**

## WITHDRAWALS (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 02/06/2025 | TO  XXXXXXXX9881 Funds Transfer via Online | $8,499,988.00 |
| 02/20/2025 | TO  XXXXXXXX9881 Funds Transfer via Online | $999,000.00 |
| 02/28/2025 | INCOMING DOMESTIC WIRE FEE | $12.00 |
| 02/28/2025 | TO  XXXXXXXX9881 Funds Transfer via Online | $9,900,000.00 |

**Number of Withdrawals 6**　　　　　　　　　　　　　　　　**Total Withdrawals $19,899,012.00**

## DAILY BALANCE SUMMARY

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 02/04/2025 | $9,499,988.00 | 02/20/2025 | $1,000.00 | 02/28/2025 | $103,713.77 |
| 02/06/2025 | $1,000,000.00 | | | | |

## Account Reconciliation Form

A. The ending balance shown on statement  $ _____

B. List deposits not shown on statement  $ _____
  $ _____
  $ _____
  $ _____

C. Total of lines B  $ _____
D. Add line C to line A  $ _____
E. List below all checks written and any withdrawals not posted on statement

H. The ending balance in your check register  $ _____

I. List deposits, transfers or interest credited not already listed in your check register  $ _____
  $ _____
  $ _____
  $ _____

J. Total of lines I  $ _____
K. Add line J to line H  $ _____
L. List below all checks and charges not already reflected in your check register

| Check # | $ Amount | Check # | $ Amount | Check # | $ Amount | Check # | $ Amount |
|---------|----------|---------|----------|---------|----------|---------|----------|
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |

F. Total of Column E  $ _____
G. Subtract line F from line D  $ _____

M. Total of Column L  $ _____
N. Subtract line M from line K  $ _____

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION -** Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE -** The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge.** To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.



**Contact us:**
(424) 303-4880

 

**Branch:**
CALPRIVATE BANK
BEVERLY HILLS OFFICE
9606 S SANTA MONICA BL 3RD
FL
BEVERLY HILLS, CA 90210

**Visit our website at:**
www.calprivate.bank

UNCLE NEAREST INC
600 N MAIN STREET SUITE 2000
SHELBYVILLE TN 37160

**Statement Date: January 31, 2025**
**Account Number:** ███873

---

### A PARTNER YOU CAN COUNT ON

Your Security is Our Priority!  Please be sure to check your statements for any unauthorized transactions.

## BUSINESS MONEY MARKET

### ACCOUNT ACTIVITY SUMMARY

| | | | |
|---|---|---|---|
| Statement period number of days | 1 | Interest earned this statement | $0.00 |
| Average balance | $0.00 | Annual percentage yield earned | 0.00 % |
| Chrgs and fees today | $0.00 | | |
| Year to date interest | $0.00 | | |

| | | |
|---|---|---|
| **Previous balance** | | $0.00 |
| Deposits | 0 | $0.00 |
| Withdrawals | 0 | $0.00 |
| **Ending balance** | 01/31/2025 | $0.00 |

## Account Reconciliation Form

A. The ending balance shown on statement $ _____

B. List deposits not shown on statement $ _____
$ _____
$ _____
$ _____
$ _____

C. Total of lines B $ _____
D. Add line C to line A $ _____
E. List below all checks written and any withdrawals not posted on statement

| Check # | $ Amount | Check # | $ Amount |
|---------|----------|---------|----------|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

F. Total of Column E $ _____
G. Subtract line F from line D $ _____

H. The ending balance in your check register $ _____

I. List deposits, transfers or interest credited not already listed in your check register $ _____
$ _____
$ _____
$ _____

J. Total of lines I $ _____
K. Add line J to line H $ _____
L. List below all checks and charges not already reflected in your check register

| Check # | $ Amount | Check # | $ Amount |
|---------|----------|---------|----------|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

M. Total of Column L $ _____
N. Subtract line M from line K $ _____

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do so we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION -** Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE -** The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge.** To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.

# EXHIBIT F

 Good Evening, Fawn* Weaver

# GRANT SIDNEY INC

Last Updated: February 2, 2026 4:50 PM

| | |
|---|---|
| ███881 | **$767.60** |
| Account Number | Available Balance |

**Transactions**     Details & Settings

(optional)

 Search transactions

| Date | Description | Amount | |
|------|-------------|--------|---|
| JAN 30 2026 | MONTHLY MAINTENANCE FEE | **($10.00)** $767.60 | ⋮ |
| JAN 30 2026 | INTEREST COMPOUNDED | **$1.53** $777.60 | ⋮ |
| DEC 31 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $776.07 | ⋮ |
| DEC 31 2025 | INTEREST COMPOUNDED | **$1.76** $786.07 | ⋮ |
| NOV 28 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $784.31 | ⋮ |

| Date | Description | Amount / Balance |
|------|-------------|------------------|
| NOV 28 2025 | INTEREST COMPOUNDED | **$1.58** $794.31 |
| OCT 31 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $792.73 |
| OCT 31 2025 | INTEREST COMPOUNDED | **$1.89** $802.73 |
| SEP 30 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $800.84 |
| SEP 30 2025 | INTEREST COMPOUNDED | **$2.07** $810.84 |
| AUG 29 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $808.77 |
| AUG 29 2025 | INTEREST COMPOUNDED | **$1.95** $818.77 |
| JUL 31 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $816.82 |
| JUL 31 2025 | INTEREST COMPOUNDED | **$2.10** $826.82 |
| JUN 30 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $824.72 |
| JUN 30 2025 | INTEREST COMPOUNDED | **$2.12** $834.72 |
| MAY 30 2025 | MONTHLY MAINTENANCE FEE | **($10.00)** $832.60 |
| MAY 30 2025 | INTEREST COMPOUNDED | **$10.55** $842.60 |
| MAY 19 2025 | FROM XXXXXXXX9873 Funds Transfer via Online | **$804.69** $832.05 |
| MAY 15 2025 | TO XXXXXXXX5267 Deficit Funding | **($8,400.00)** $27.36 |

| Date | Description | Amount |
|---|---|---|
| APR 30 2025 | INTEREST COMPOUNDED | **$8,340.08** $8,427.36 |
| APR 15 2025 | TO XXXXXXXX1266 Barrel Purchases | **($103,294.43)** $87.28 |
| APR 15 2025 | FROM XXXXXXXX9873 Funds Transfer via Online | **$103,294.43** $103,381.71 |
| APR 14 2025 | TO XXXXXXXX1266 Barrel Purchases | **($7,395,900.00)** $87.28 |
| APR 8 2025 | OUT DOMESTIC WIRE TRFR FEE | **($35.00)** $7,395,987.28 |
| APR 8 2025 | WIREOUT000300 UNCLE NEAREST INC | **($732,637.00)** $7,396,022.28 |
| APR 1 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $8,128,659.28 |
| APR 1 2025 | WIREOUT000741 GENESIS GLOBAL RECRUITING | **($386,651.77)** $8,128,674.28 |
| MAR 31 2025 | INTEREST COMPOUNDED | **$21,396.23** $8,515,326.05 |
| MAR 28 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $8,493,929.82 |
| MAR 28 2025 | WIREOUT000231 DOMAINE D'ANATOLE INC | **($500,000.00)** $8,493,944.82 |
| MAR 27 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $8,993,944.82 |
| MAR 27 2025 | WIREOUT000472 UNCLE NEAREST INC. | **($500,000.00)** $8,993,959.82 |
| MAR 7 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $9,493,959.82 |
| MAR 7 2025 | WIREOUT000425 DOMAINE D'ANATOLE INC | **($250,000.00)** $9,493,974.82 |

| Date | Description | Amount |
|---|---|---|
| MAR 7 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | ($15.00) $9,743,974.82 |
| MAR 7 2025 | WIREOUT000424 S1 ORGANIC VODKA, LLC | ($200,000.00) $9,743,989.82 |
| FEB 28 2025 | INTEREST COMPOUNDED | $1,873.05 $9,943,989.82 |
| FEB 28 2025 | OUT DOMESTIC WIRE TRFR FEE | ($35.00) $9,942,116.77 |
| FEB 28 2025 | WIREOUT000480 UNCLE NEAREST INC | ($4,400,000.00) $9,942,151.77 |
| FEB 28 2025 | FROM XXXXXXXX9873 Funds Transfer via Online | $9,900,000.00 $14,342,151.77 |
| FEB 20 2025 | OUT DOMESTIC WIRE TRFR FEE | ($35.00) $4,442,151.77 |
| FEB 20 2025 | WIREOUT000468 BERLIN PACKAGING LLC | ($1,000,000.00) $4,442,186.77 |
| FEB 20 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | ($15.00) $5,442,186.77 |
| FEB 20 2025 | WIREOUT000404 GENESIS GLOBAL RECRUITING | ($497,678.27) $5,442,201.77 |
| FEB 20 2025 | FROM XXXXXXXX9873 Funds Transfer via Online | $999,000.00 $5,939,880.04 |
| FEB 11 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | ($15.00) $4,940,880.04 |
| FEB 11 2025 | WIREOUT000162 UNCLE NEAREST INC. | ($1,000,000.00) $4,940,895.04 |
| FEB 10 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | ($15.00) $5,940,895.04 |
| FEB 10 2025 | WIREOUT000476 UNCLE NEAREST INC. | ($1,000,000.00) $5,940,910.04 |

| | | | |
|---|---|---|---|
| FEB 7 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $6,940,910.04 | ⋮ |
| FEB 7 2025 | WIREOUT000302 UNCLE NEAREST INC. | **($600,000.00)** $6,940,925.04 | ⋮ |
| FEB 6 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $7,540,925.04 | ⋮ |
| FEB 6 2025 | WIREOUT000241 MARABOU, INC. C/O ALTMAN, | **($600,000.00)** $7,540,940.04 | ⋮ |
| FEB 6 2025 | OUT DOMESTIC WIRE TRFR FEE-OL | **($15.00)** $8,140,940.04 | ⋮ |
| FEB 6 2025 | WIREOUT000240 GENESIS GLOBAL RECRUITING | **($391,145.23)** $8,140,955.04 | ⋮ |
| FEB 6 2025 | FROM XXXXXXXX9873 Funds Transfer via Online | **$8,499,988.00** $8,532,100.27 | ⋮ |
| FEB 4 2025 | OUT DOMESTIC WIRE TRFR FEE | **($35.00)** $32,112.27 | ⋮ |
| FEB 4 2025 | WIREOUT000457 GENESIS GLOBAL RECRUITING | **($467,852.73)** $32,147.27 | ⋮ |
| FEB 4 2025 | TRANSFER FROM ACCT 9873 - F. WEAVER | **$500,000.00** $500,000.00 | ⋮ |

**Page totals:** Credits: [18] **$20,034,722.03** | Debits: [42] **($20,033,954.43)**

# EXHIBIT G

2/11/2025 8:56 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-600,000.00

**Statement Description:** WIREOUT000241 MARABOU, INC. C/O ALTMAN,

**Posted Date:** 2/6/2025

**Type:** Debit

**Status:** Posted

2/28/2025 1:33 PM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-1,000,000.00

**Statement Description:** WIREOUT000468 BERLIN PACKAGING LLC

**Posted Date:** 2/20/2025

**Type:** Debit

**Status:** Posted

2/11/2025 8:56 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-600,000.00

**Statement Description:** WIREOUT000302 UNCLE NEAREST INC.

**Posted Date:** 2/7/2025

**Type:** Debit

**Status:** Posted

2/11/2025 8:55 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-1,000,000.00

**Statement Description:** WIREOUT000476 UNCLE NEAREST INC.

**Posted Date:** 2/10/2025

**Type:** Debit

**Status:** Posted



Good Afternoon, Fawn* Weaver

# Online Activity ⃝?

---

## TRANSACTION DETAILS

### DOMESTIC WIRE

## Uncle Nearest Inc.                                    $500,000.00

Tracking ID: 623952                              Created Date: 3/27/2025

## PAYMENT DETAILS

**Created By**
Fawn* Weaver

**Authorized**
03/27/2025 12:20 PM

**Authorized By**
Fawn* Weaver

**Process Date**
03/27/2025

**Originator Wire Header**
Grant Sidney Inc

**From Account**
GRANT SIDNEY INC XXXXXX9881

**To Account**
XXXX1189

**To Account Type**
Checking

**Purpose Of Wire**
Operations

## RECIPIENT DETAILS

| Wire Name | Account | Type | Beneficiary FI ID | Amount |
|-----------|---------|------|-------------------|--------|
| Uncle Nearest Inc. | XXXX1189 | Checking | XXXXX7033 | $500,000.00 |

Case 4:25-cv-00038-CEA-CHS    Document 160-1    Filed 02/26/26    Page 64 of 141

| Wire Name | Account | Type | Beneficiary FI ID | Amount |
|---|---|---|---|---|

### Recipient Information

| **Wire Name** | **Address** | **City** |
|---|---|---|
| Uncle Nearest Inc. | 3125 Highway 231 N | Shelbyville |

| **Email Address** | | **State** |
|---|---|---|
| keith.weaver@unclenearest.com | | TN |

| | | **ZIP** |
|---|---|---|
| | | 37160 |

### Beneficiary FI

| **Name** | **Address** | **City** |
|---|---|---|
| FIRSTBANK | 211 Commerce St, Ste 300 | Nashville |

| **Beneficiary FI ID** | | **State** |
|---|---|---|
| XXXXX7033 | | TN |

| | | **ZIP** |
|---|---|---|
| | | 37201 |

# TRANSACTION PROCESS

## Company                    Financial Institution

   

| Drafted | Approval(s) | Authorized | Processed |
|---|---|---|---|
| Fawn* Weaver - | 1. Fawn* Weaver - | 3/27/2025 12:20 PM | On Hold |
| 3/27/2025 12:20 PM | 3/27/2025 12:20 PM | | |

2/11/2025 8:57 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-467,852.73

**Statement Description:** WIREOUT000457 GENESIS GLOBAL RECRUITING

**Posted Date:** 2/4/2025

**Type:** Debit

**Status:** Posted

2/11/2025 8:57 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-391,145.23

**Statement Description:** WIREOUT000240 GENESIS GLOBAL RECRUITING

**Posted Date:** 2/6/2025

**Type:** Debit

**Status:** Posted

Case 4:25-cv-00038-CEA-CHS  Document 160-1  Filed 02/26/26  Page 67 of 141
PageID #: 6895

about:blank                                  1/1

2/6/2025 11:31 AM

GRANT SIDNEY INC

XXXXXX9881

**Amount:** $-467,852.73

**Statement Description:** WIREOUT000457 GENESIS GLOBAL RECRUITING

**Posted Date:** 2/4/2025

**Type:** Debit

**Status:** Posted

# EXHIBIT H

Schedule 1.1

Commitment Schedule

Initial Term Loan Commitments:

| Lender | Initial Term Loan Commitment | Applicable Percentage | Funding Date of Fundings Prior to Closing Date | Funding Amount of Fundings Prior to Closing Date |
|---|---|---|---|---|
| Grant Sidney Inc. | $20,026,270.00 | 100% | 02/04/2025 | $467,887.73 |
| Grant Sidney Inc. | | | 02/06/2025 | $391,160.23 |
| Grant Sidney Inc. | | | 02/06/2025 | $600,015.00 |
| Grant Sidney Inc. | | | 02/07/2025 | $600,015.00 |
| Grant Sidney Inc. | | | 02/10/2025 | $1,000,015.00 |
| Grant Sidney Inc. | | | 02/11/2025 | $1,000,015.00 |
| Grant Sidney Inc. | | | 02/20/2025 | $497,693.27 |
| Grant Sidney Inc. | | | 02/20/2025 | $1,000,035.00 |
| Grant Sidney Inc. | | | 02/28/2025 | $4,400,035.00 |
| Grant Sidney Inc. | | | 03/07/2025 | $200,015.00 |
| Grant Sidney Inc. | | | 03/07/2025 | $250,015.00 |
| Grant Sidney Inc. | | | 03/27/2025 | $500,015.00 |
| Grant Sidney Inc. | | | 03/28/2025 | $500,015.00 |
| Grant Sidney Inc. | | | 04/01/2025 | $386,666.77 |
| Grant Sidney Inc. | | | 04/08/2025 | $732,672.00 |
| Grant Sidney Inc. | | | 04/14/2025 | $7,500,000.00 |
| | | | Total funded prior to Closing Date: | $20,026,270.00 |
| Total: | $20,026,270.00 | 100% | Remaining Initial Term Loan Commitment Amount as of Closing Date: | $0 |

Delayed Draw Term Loan Commitments:

| Lender | Delayed Draw Term Loan Commitment | Applicable Percentage |
|---|---|---|
| Grant Sidney Inc. | $30,000,000.00 | 100% |
| Total: | $30,000,000.00 | 100% |

# EXHIBIT I

Uncle Nearest, Inc.

Reconciliation of Loan Proceeds to Credit Agreement (Grant Sidney, Inc.)

| Date | Payee | Amount | Amounts Listed on Subordinated Credit Agreement (Forbearance Agreement) |
|---|---|---:|---:|
| 2/4/2026 | Genesis Global | 467,887.73 | 467,887.73 |
| 2/6/2025 | Genesis Global | 391,160.23 | 391,160.23 |
| 2/6/2025 | Marabou, Inc. | 600,015.00 | 600,015.00 |
| 2/7/2025 | Uncle Nearest, Inc. | 600,015.00 | 600,015.00 |
| 2/10/2025 | Uncle Nearest, Inc. | 1,000,015.00 | 1,000,015.00 |
| 2/11/2025 | Uncle Nearest, Inc. | 1,000,015.00 | 1,000,015.00 |
| 2/20/2025 | Genesis Global | 497,693.27 | 497,693.27 |
| 2/20/2025 | Berlin Packaging LLC | 1,000,035.00 | 1,000,035.00 |
| 2/28/2025 | Uncle Nearest, Inc. | 4,400,035.00 | 4,400,035.00 |
| 3/7/2025 | Organic Vodka, LLC | 200,015.00 | 200,015.00 |
| 3/7/2025 | Domaine D'Anatole, Inc. | 250,015.00 | 250,015.00 |
| 3/27/2025 | Uncle Nearest, Inc. | 500,015.00 | 500,015.00 |
| 3/28/2025 | Domaine D'Anatole, Inc. | 500,015.00 | 500,015.00 |
| 4/1/2025 | Genesis Global | 386,666.77 | 386,666.77 |
| 4/8/2025 | Uncle Nearest, Inc. | 732,672.00 | 732,672.00 |
| 4/14/2025 | Uncle Nearest, Inc. | 7,395,900.00 | 7,500,000.00 |
| 4/15/2025 | Uncle Nearest, Inc. | 103,295.00 | - |
| | | 20,025,465.00 | 20,026,270.00 |

# EXHIBIT J

```
GRANT SIDNEY INC                          45        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                          Statement Date:    3/15/23
600 N. MAIN ST. #2000                                  Page Number:          1
SHELBYVILLE TN 37160                                         Items:          0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                  Account #:************7512
Previous Balance on   12/15/22                       $              .00
                                                     ----------------
Current Balance on      3/15/23                      $              .00
    Low Balance for Period was                    .00
```

```
GRANT SIDNEY INC                          45      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                       Statement Date:   12/15/22
600 N. MAIN ST. #2000                             Page Number:             1
SHELBYVILLE TN 37160                              Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                  Account #:************7512
Previous Balance on    9/15/22                        $              .00
                                                      ---------------
Current Balance on    12/15/22                        $              .00
     Low Balance for Period was                  .00
```

```
GRANT SIDNEY INC                        45      Account Number:  *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:   9/15/22
600 N. MAIN ST. #2000                           Page Number:            1
SHELBYVILLE TN 37160                            Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************7512
Previous Balance on    6/30/22                          $              .00
                                                        ---------------
Current Balance on     9/15/22                          $              .00
    Low Balance for Period was                    .00

```
GRANT SIDNEY INC                        45      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:    6/30/22
600 N. MAIN ST. #2000                           Page Number:            1
SHELBYVILLE TN 37160                            Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************7512
Previous Balance on    5/31/22                          $            .00
                                                        ---------------
Current Balance on     6/30/22                          $            .00
     Low Balance for Period was                    .00

```
GRANT SIDNEY INC                         30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                      Statement Date:    5/31/22
600 N. MAIN ST. #2000                            Page Number:          1
SHELBYVILLE TN 37160                             Items:                0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************7512
Previous Balance on    4/30/22                        $            .00
                                                      ----------------
Current Balance on     5/31/22                        $            .00
     Low Balance for Period was                  .00

```
GRANT SIDNEY INC                        30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:    4/30/22
600 N. MAIN ST. #2000                           Page Number:           1
SHELBYVILLE TN 37160                            Items:                 0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************7512
Previous Balance on     3/31/22                        $              .00
                                                       ----------------
Current Balance on      4/30/22                        $              .00
    Low Balance for Period was                    .00

```
GRANT SIDNEY INC                        30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:    3/31/22
600 N. MAIN ST. #2000                           Page Number:           1
SHELBYVILLE TN 37160                            Items:                 0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                   Account #:************7512
Previous Balance on    2/28/22                          $            .00
                                                       ---------------
Current Balance on     3/31/22                          $            .00
      Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                        30      Account Number:  *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:   2/28/22
600 N. MAIN ST. #2000                           Page Number:           1
SHELBYVILLE TN 37160                            Items:                 0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING

```
                      Account #:************7512
Previous Balance on    1/31/22                      $           .00
                                                   ---------------
Current Balance on     2/28/22                      $           .00
    Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                            30        Account Number:    *****7512
DBA GRANT SIDNEY PUBLISHING                           Statement Date:     1/31/22
600 N. MAIN ST. #2000                                 Page Number:              1
SHELBYVILLE TN 37160                                  Items:                    0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                   Account #:************7512
Previous Balance on   12/31/21                              $              .00
                                                            ---------------
Current Balance on     1/31/22                              $              .00
        Low Balance for Period was                 .00
```

```
GRANT SIDNEY INC                        30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:   12/31/21
600 N. MAIN ST. #2000                           Page Number:            1
SHELBYVILLE TN 37160                            Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************7512
Previous Balance on   11/30/21                          $              .00
                                                         ---------------
Current Balance on    12/31/21                          $              .00
     Low Balance for Period was                  .00

```
GRANT SIDNEY INC                        30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:   11/30/21
600 N. MAIN ST. #2000                           Page Number:             1
SHELBYVILLE TN 37160                            Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                Account #:************7512
Previous Balance on    10/31/21                         $            .00
                                                        ---------------
Current Balance on     11/30/21                         $            .00
      Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                          30      Account Number:  *****7512
DBA GRANT SIDNEY PUBLISHING                       Statement Date:  10/31/21
600 N. MAIN ST. #2000                             Page Number:            1
SHELBYVILLE TN 37160                              Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************7512
Previous Balance on    9/30/21                        $            .00
                                                      ---------------
Current Balance on    10/31/21                        $            .00
      Low Balance for Period was                .00
```

```
GRANT SIDNEY INC                       30      Account Number:  *****7512
DBA GRANT SIDNEY PUBLISHING                    Statement Date:   9/30/21
600 N. MAIN ST. #2000                          Page Number:           1
SHELBYVILLE TN 37160                           Items:                 0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                Account #:************7512
Previous Balance on    8/31/21                        $          .00
                                                     ---------------
Current Balance on     9/30/21                        $          .00
     Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                      30      Account Number:  *****7512
DBA GRANT SIDNEY PUBLISHING                   Statement Date:   8/31/21
600 N. MAIN ST. #2000                         Page Number:            1
SHELBYVILLE TN 37160                          Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************7512
Previous Balance on    7/31/21                          $              .00
                                                        ---------------
Current Balance on     8/31/21                          $              .00
     Low Balance for Period was                 .00
```

```
GRANT SIDNEY INC                          30        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                         Statement Date:    7/31/21
600 N. MAIN ST. #2000                               Page Number:            1
SHELBYVILLE TN 37160                                Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************7512
Previous Balance on    6/30/21                          $            .00
                                                        ---------------
Current Balance on     7/31/21                          $            .00
    Low Balance for Period was                 .00
```

```
GRANT SIDNEY INC                        30        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                       Statement Date:    6/30/21
600 N. MAIN ST. #2000                             Page Number:            1
SHELBYVILLE TN 37160                              Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                     Account #:************7512
Previous Balance on    5/31/21                          $            .00
                                                       ---------------
Current Balance on     6/30/21                          $            .00
      Low Balance for Period was                .00
```

```
GRANT SIDNEY INC                          30        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                          Statement Date:    5/31/21
600 N. MAIN ST. #2000                                 Page Number:           1
SHELBYVILLE TN 37160                                        Items:            0
```

          Privacy Notice-Federal law requires us to tell you how we
          collect, share, and protect your personal information. Our
          privacy policy has not changed and you may review our policy
          and practices with respect to your personal information at
          https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
          disclosure/Privacy-Notice.pdf or we will mail you a free copy
          upon request if you call us at 931-473-4402.

          REGULAR CHECKING
                        Account #:************7512
Previous Balance on    4/30/21                            $            .00
                                                         ---------------
Current Balance on     5/31/21                            $            .00
      Low Balance for Period was                    .00

```
GRANT SIDNEY INC                          30        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                          Statement Date:   4/30/21
600 N. MAIN ST. #2000                                Page Number:         1
SHELBYVILLE TN 37160                                 Items:               0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************7512
Previous Balance on    3/31/21                              $            .00
                                                           ---------------
Current Balance on     4/30/21                             $            .00
        Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                      30        Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:    3/31/21
600 N. MAIN ST. #2000                           Page Number:            1
SHELBYVILLE TN 37160                            Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
            REGULAR CHECKING
                    Account #:***********7512
Previous Balance on    2/28/21                        $             .00
                                                      ---------------
Current Balance on     3/31/21                        $             .00
      Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                          30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                       Statement Date:    2/28/21
600 N. MAIN ST. #2000                             Page Number:             1
SHELBYVILLE TN 37160                              Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************7512
Previous Balance on    1/31/21                          $            .00
                                                        ---------------
Current Balance on     2/28/21                          $            .00
     Low Balance for Period was                .00
```

```
GRANT SIDNEY INC                              30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                           Statement Date:    1/31/21
600 N. MAIN ST. #2000                                 Page Number:             1
SHELBYVILLE TN 37160                                  Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/disclosure/Privacy-Notice.pdf or we will mail you a free copy upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                  Account #:************7512
Previous Balance on   12/31/20                               $              .00
                                                            ---------------
Current Balance on     1/31/21                               $              .00
     Low Balance for Period was                    .00
```

```
GRANT SIDNEY INC                        30      Account Number:   *****7512
DBA GRANT SIDNEY PUBLISHING                     Statement Date:   12/31/20
600 N. MAIN ST. #2000                           Page Number:             1
SHELBYVILLE TN 37160                            Items:                   0
```

        Privacy Notice-Federal law requires us to tell you how we
        collect, share, and protect your personal information. Our
        privacy policy has not changed and you may review our policy
        and practices with respect to your personal information at
        https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
        disclosure/Privacy-Notice.pdf or we will mail you a free copy
        upon request if you call us at 931-473-4402.

        REGULAR CHECKING
                    Account #:************7512
Previous Balance on   12/21/20                          $           .00
                                                       ---------------
Current Balance on    12/31/20                          $           .00
    Low Balance for Period was                    .00

# EXHIBIT K

```
GRANT SIDNEY INC                          30        Account Number:   *****6168
600 N. MAIN ST. #2000                               Statement Date:    6/30/20
SHELBYVILLE TN 37160                                Page Number:            1
                                                    Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
       REGULAR CHECKING
                  Account #:************6168
Previous Balance on    5/31/20                        $            .00
                                                      ---------------
Current Balance on     6/30/20                        $            .00
     Low Balance for Period was              .00
```

```
GRANT SIDNEY INC                          30      Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:    7/31/20
SHELBYVILLE TN 37160                               Page Number:           1
                                                  Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                 Account #:************6168
Previous Balance on    6/30/20                          $           .00
                                                       ---------------
Current Balance on     7/31/20                          $           .00
   Low Balance for Period was                 .00

```
GRANT SIDNEY INC                        30      Account Number:  *****6168
600 N. MAIN ST. #2000                           Statement Date:   8/31/20
SHELBYVILLE TN 37160                              Page Number:         1
                                                         Items:         0
```

        Privacy Notice-Federal law requires us to tell you how we
        collect, share, and protect your personal information. Our
        privacy policy has not changed and you may review our policy
        and practices with respect to your personal information at
        https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
        disclosure/Privacy-Notice.pdf or we will mail you a free copy
        upon request if you call us at 931-473-4402.

        REGULAR CHECKING
                    Account #:************6168
Previous Balance on    7/31/20                              $           .00
                                                          ---------------
Current Balance on     8/31/20                              $           .00
        Low Balance for Period was                  .00

```
GRANT SIDNEY INC                    30      Account Number:  *****6168
600 N. MAIN ST. #2000                       Statement Date:   9/30/20
SHELBYVILLE TN 37160                        Page Number:            1
                                            Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************6168
Previous Balance on    8/31/20                       $            .00
  1 Deposits and Other Additions (Credits)           +     10,000.00
                                                          ---------------
Current Balance on     9/30/20                        $     10,000.00
-----------------------------------------------------------------------

     Deposit and Other Addition Details

9/11/20 CREDIT MEMO    02656112430836                      10,000.00 +
                       Transfer from VALUE CHECKING

     Total of   1 Deposits/Other Additions           +     10,000.00
_____

     Low Balance for Period was                    .00
```

```
GRANT SIDNEY INC                          30        Account Number:   *****6168
600 N. MAIN ST. #2000                               Statement Date:   10/31/20
SHELBYVILLE TN 37160                                Page Number:             1
                                                    Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                      Account #:************6168
Previous Balance on    9/30/20                       $      10,000.00
                                                           ---------------
Current Balance on    10/31/20                        $      10,000.00
    Low Balance for Period was             10,000.00
```

```
GRANT SIDNEY INC                         30        Account Number:   *****6168
600 N. MAIN ST. #2000                              Statement Date:   11/30/20
SHELBYVILLE TN 37160                                Page Number:           1
                                                          Items:           0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
            Account #:************6168
Previous Balance on   10/31/20                    $      10,000.00
                                                  ----------------
Current Balance on    11/30/20                    $      10,000.00
     Low Balance for Period was          10,000.00

```
GRANT SIDNEY INC                           30        Account Number:   *****6168
600 N. MAIN ST. #2000                                Statement Date:   12/31/20
SHELBYVILLE TN 37160                                 Page Number:             1
                                                     Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                       Account #:************6168
Previous Balance on   11/30/20                          $       10,000.00
                                                             ---------------
Current Balance on    12/31/20                          $       10,000.00
     Low Balance for Period was                10,000.00

```
GRANT SIDNEY INC                          30      Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:    1/31/21
SHELBYVILLE TN 37160                              Page Number:             1
                                                  Items:                   1
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************6168
Previous Balance on   12/31/20                          $      10,000.00
  1 Deposits and Other Additions (Credits)             +     168,392.00
  2 Checks and Other Charges      (Debits)             -     150,020.00
                                                             ---------------
Current Balance on    1/31/21                          $      28,372.00
----------------------------------------------------------------------------

      Deposit and Other Addition Details

1/22/21 REGULAR DEPOSIT                                      168,392.00 +

     Total of   1 Deposits/Other Additions          +        168,392.00
_____

      Checks and Other Charge Details

1/22/21 OUTGOING WIRE DEBIT INTER                                 20.00 -
1/22/21 OUTGOING WIRE DEBIT INTER                           150,000.00 -
     Total of   2 Checks/Other Charges              -        150,020.00
     Low Balance for Period was             10,000.00
```



**FIRST NATIONAL BANK**



Amount $168,392.00 Date 1/22/2021

Check 0 Amount $20.00 Date 1/22/2021



Check 0 Amount $150,000.00 Date 1/22/2021

```
GRANT SIDNEY INC                    30      Account Number:  *****6168
600 N. MAIN ST. #2000                       Statement Date:   2/28/21
SHELBYVILLE TN 37160                         Page Number:         1
                                                   Items:            0
```

           Privacy Notice-Federal law requires us to tell you how we
           collect, share, and protect your personal information. Our
           privacy policy has not changed and you may review our policy
           and practices with respect to your personal information at
           https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
           disclosure/Privacy-Notice.pdf or we will mail you a free copy
           upon request if you call us at 931-473-4402.

           REGULAR CHECKING
                        Account #: ************6168
```
Previous Balance on   1/31/21                              $      28,372.00
  1 Checks and Other Charges       (Debits)               -      28,000.00
                                                                 ---------------
 Current Balance on    2/28/21                              $         372.00
```
-----------------------------------------------------------------------------

                    Checking Account Transactions

     Checks and Other Charge Details

```
2/22/21 AUTOMATIC DEBIT 04196152720771 Return of $10K + mistake        28,000.00 -
                    Transfer to WEAVER CHECKING
       Total of    1 Checks/Other Charges              -      28,000.00
       Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                    30      Account Number:   *****6168
600 N. MAIN ST. #2000                       Statement Date:   3/31/21
SHELBYVILLE TN 37160                        Page Number:           1
                                            Items:                 0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
              Account #:************6168
Previous Balance on    2/28/21                         $        372.00
                                                       ---------------
Current Balance on     3/31/21                         $        372.00
     Low Balance for Period was                372.00

```
GRANT SIDNEY INC                          30      Account Number:  *****6168
600 N. MAIN ST. #2000                             Statement Date:   4/30/21
SHELBYVILLE TN 37160                                Page Number:        1
                                                          Items:        0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
          REGULAR CHECKING
                    Account #:************6168
Previous Balance on     3/31/21                        $        372.00
                                                       ---------------
Current Balance on      4/30/21                        $        372.00
    Low Balance for Period was                 372.00
```

```
GRANT SIDNEY INC                          30      Account Number:    *****6168
600 N. MAIN ST. #2000                             Statement Date:    5/31/21
SHELBYVILLE TN 37160                              Page Number:             1
                                                  Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                          Account #:************6168
Previous Balance on       4/30/21                          $         372.00
                                                           ---------------
Current Balance on        5/31/21                          $         372.00
    Low Balance for Period was                    372.00

```
GRANT SIDNEY INC                          30      Account Number:  *****6168
600 N. MAIN ST. #2000                             Statement Date:   6/30/21
SHELBYVILLE TN 37160                               Page Number:        1
                                                         Items:         0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************6168
Previous Balance on    5/31/21                    $        372.00
                                                 ---------------
Current Balance on     6/30/21                    $        372.00
    Low Balance for Period was              372.00

```
GRANT SIDNEY INC                        30      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:    7/31/21
SHELBYVILLE TN 37160                             Page Number:            1
                                                Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
Account #:************6168

| | | |
|---|---|---|
| Previous Balance on | 6/30/21 | $ 372.00 |
| | | --------------- |
| Current Balance on | 7/31/21 | $ 372.00 |
| Low Balance for Period was | 372.00 | |

```
GRANT SIDNEY INC                        30      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:   8/31/21
SHELBYVILLE TN 37160                            Page Number:             1
                                                Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************6168
Previous Balance on    7/31/21                         $        372.00
                                                      ---------------
Current Balance on     8/31/21                         $        372.00
    Low Balance for Period was                372.00

```
GRANT SIDNEY INC                          30        Account Number:   *****6168
600 N. MAIN ST. #2000                               Statement Date:    9/30/21
SHELBYVILLE TN 37160                                Page Number:            1
                                                    Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/disclosure/Privacy-Notice.pdf or we will mail you a free copy upon request if you call us at 931-473-4402.

REGULAR CHECKING
```
                         Account #:************6168
Previous Balance on     8/31/21                          $         372.00
                                                          ---------------
Current Balance on      9/30/21                          $         372.00
    Low Balance for Period was                   372.00
```

```
GRANT SIDNEY INC                        30      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:   10/31/21
SHELBYVILLE TN 37160                            Page Number:             1
                                                Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/disclosure/Privacy-Notice.pdf or we will mail you a free copy upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************6168
Previous Balance on    9/30/21                           $         372.00
                                                         ---------------
Current Balance on    10/31/21                           $         372.00
    Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                              30        Account Number:   *****6168
600 N. MAIN ST. #2000                                  Statement Date:   11/30/21
SHELBYVILLE TN 37160                                   Page Number:             1
                                                       Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #:************6168
Previous Balance on   10/31/21                              $        372.00
                                                           ---------------
Current Balance on    11/30/21                              $        372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                      30      Account Number:   *****6168
600 N. MAIN ST. #2000                         Statement Date:   12/31/21
SHELBYVILLE TN 37160                          Page Number:             1
                                              Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/disclosure/Privacy-Notice.pdf or we will mail you a free copy upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #: ************6168
Previous Balance on    11/30/21                       $      372.00
                                                      ---------------
Current Balance on     12/31/21                       $      372.00
    Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                          45        Account Number:   *****6168
600 N. MAIN ST. #2000                               Statement Date:   12/31/25
SHELBYVILLE TN 37160                                Page Number:            1
                                                    Items:                  0


**** ELECTRONIC ****




        FIRST BUSINESS CHECKING
                Account #: ************6168
Previous Balance on      9/15/25                          $         372.00
                                                         ---------------
Current Balance on     12/31/25                          $         372.00
        Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                          45        Account Number:   *****6168
600 N. MAIN ST. #2000                              Statement Date:    9/15/25
SHELBYVILLE TN 37160                                 Page Number:         1
                                                          Items:           0


**** ELECTRONIC ****



            Important Notice: Effective July 1, 2025, Regulation CC funds
            availability thresholds have increased. The amount available for
            next-day availability on certain types of deposits has increased
            to $275, and the amount available on the second business day is
            now $6,725. These changes are part of the Federal Reserve's
            periodic adjustments to account for inflation. You will be given
            a notice with all details if a hold is placed.

            FIRST BUSINESS CHECKING
                     Account #:************6168
Previous Balance on    6/16/25                              $        372.00
                                                           ---------------
Current Balance on     9/15/25                              $        372.00
     Low Balance for Period was                   372.00
```

```
GRANT SIDNEY INC                          45      Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:    6/16/25
SHELBYVILLE TN 37160                              Page Number:            1
                                                  Items:                  0


**** ELECTRONIC ****
```

Important Notice: Effective July 1, 2025, Regulation CC funds
availability thresholds have increased. The amount available for
next-day availability on certain types of deposits has increased
to $275, and the amount available on the second business day is
now $6,725. These changes are part of the Federal Reserve's
periodic adjustments to account for inflation. You will be given
a notice with all details if a hold is placed.

```
        REGULAR CHECKING
                    Account #:************6168
Previous Balance on    3/17/25                         $        372.00
                                                       ---------------
Current Balance on     6/16/25                         $        372.00
        Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                        45      Account Number:  *****6168
600 N. MAIN ST. #2000                           Statement Date:   3/17/25
SHELBYVILLE TN 37160                              Page Number:        1
                                                         Items:        0




              First National Bank of Middle Tennessee will never text, email,
              or call you asking for personal or account information.
              Pressured to act immediately or click on a link from an alarming
              phone call, email, or text is a scam/fraud.  Please do not give
              any personal or account information or click a link via the above
              methods.  If you receive a suspicious call, email, or text,
              please contact us at 931-473-4402 or visit a local branch.

              REGULAR CHECKING
                        Account #:************6168
Previous Balance on   12/16/24                              $        372.00
                                                           ---------------
Current Balance on     3/17/25                              $        372.00
        Low Balance for Period was                372.00
```

```
GRANT SIDNEY INC                          45      Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:   12/16/24
SHELBYVILLE TN 37160                              Page Number:             1
                                                  Items:                   0



          Visit us at www.fnbmt.com to open an account online today.

          REGULAR CHECKING
                    Account #:************6168
Previous Balance on     9/16/24                   $          372.00
                                                  ----------------
Current Balance on     12/16/24                   $          372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                      45      Account Number:      66168
600 N. MAIN ST. #2000                        Statement Date:    9/16/24
SHELBYVILLE TN 37160                          Page Number:            1
                                                    Items:            0
```

Visit us at www.fnbmt.com to open an account online today.

REGULAR CHECKING
                         Account #:        66168
Previous Balance on     6/17/24                        $        372.00
                                                       ----------------
Current Balance on      9/16/24                        $        372.00
     Low Balance for Period was              372.00

```
GRANT SIDNEY INC                         45        Account Number:    *****6168
600 N. MAIN ST. #2000                              Statement Date:     6/17/24
SHELBYVILLE TN 37160                               Page Number:              1
                                                   Items:                    0



              Visit us at www.fnbmt.com to open an account online today.

              REGULAR CHECKING
                      Account #: ************6168
Previous Balance on      3/17/24                        $          372.00
                                                       ----------------
Current Balance on       6/17/24                        $          372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                    45      Account Number:   *****6168
600 N. MAIN ST. #2000                       Statement Date:    3/17/24
SHELBYVILLE TN 37160                        Page Number:            1
                                            Items:                  0



              Visit us at www.fnbmt.com to open an account online today.

              REGULAR CHECKING
                      Account #: ************6168
Previous Balance on    12/17/23                        $        372.00
                                                       ----------------
Current Balance on     3/17/24                         $        372.00
      Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                        45      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:   12/17/23
SHELBYVILLE TN 37160                            Page Number:             1
                                                Items:                   0



          Visit us at www.fnbmt.com to open an account online today.

          REGULAR CHECKING
                    Account #: ************6168
Previous Balance on    9/17/23                     $          372.00
                                                   ----------------
Current Balance on    12/17/23                      $          372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                        45        Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:    9/17/23
SHELBYVILLE TN 37160                               Page Number:          1
                                                          Items:          0



              Visit us at www.fnbmt.com to open an account online today.

            REGULAR CHECKING
                      Account #:************6168
Previous Balance on    6/15/23                            $       372.00
                                                         ----------------
Current Balance on     9/17/23                            $       372.00
       Low Balance for Period was               372.00
```

```
GRANT SIDNEY INC                        45      Account Number:    *****6168
600 N. MAIN ST. #2000                           Statement Date:     6/15/23
SHELBYVILLE TN 37160                            Page Number:              1
                                                Items:                    0



              Visit us at www.fnbmt.com to open an account online today.

              REGULAR CHECKING
                       Account #: ************6168
Previous Balance on    3/15/23                            $         372.00
                                                          ----------------
Current Balance on     6/15/23                            $         372.00
     Low Balance for Period was                  372.00
```

```
GRANT SIDNEY INC                        45      Account Number:   *****6168
600 N. MAIN ST. #2000                            Statement Date:    3/15/23
SHELBYVILLE TN 37160                                Page Number:          1
                                                          Items:          0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                Account #:************6168
Previous Balance on   12/15/22                        $        372.00
                                                      ----------------
Current Balance on     3/15/23                        $        372.00
    Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                           45      Account Number:   *****6168
600 N. MAIN ST. #2000                              Statement Date:   12/15/22
SHELBYVILLE TN 37160                               Page Number:            1
                                                   Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                  Account #:************6168
Previous Balance on    9/15/22                           $       372.00
                                                        ----------------
Current Balance on    12/15/22                           $       372.00
     Low Balance for Period was                  372.00
```

```
GRANT SIDNEY INC                          45        Account Number:   *****6168
600 N. MAIN ST. #2000                               Statement Date:    9/15/22
SHELBYVILLE TN 37160                                Page Number:          1
                                                    Items:                0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************6168
Previous Balance on     8/31/22                          $        372.00
                                                        ----------------
Current Balance on      9/15/22                          $        372.00
     Low Balance for Period was              372.00

```
GRANT SIDNEY INC                        45      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:   8/31/22
SHELBYVILLE TN 37160                             Page Number:             1
                                                 Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                    Account #: ************6168
Previous Balance on     7/31/22                        $         372.00
                                                      ----------------
Current Balance on      8/31/22                        $         372.00
   Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                        30      Account Number:    *****6168
600 N. MAIN ST. #2000                           Statement Date:    7/31/22
SHELBYVILLE TN 37160                            Page Number:             1
                                                Items:                   0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                Account #: ************6168
Previous Balance on    6/30/22                          $        372.00
                                                        ----------------
Current Balance on     7/31/22                          $        372.00
    Low Balance for Period was                  372.00
```

```
GRANT SIDNEY INC                        30      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:    6/30/22
SHELBYVILLE TN 37160                             Page Number:            1
                                                 Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                  Account #:************6168
Previous Balance on    5/31/22                          $         372.00
                                                        ---------------
Current Balance on     6/30/22                          $         372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                          30      Account Number:    *****6168
600 N. MAIN ST. #2000                             Statement Date:     5/31/22
SHELBYVILLE TN 37160                              Page Number:              1
                                                  Items:                    0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

REGULAR CHECKING
                    Account #:************6168
Previous Balance on    4/30/22                        $        372.00
                                                      ---------------
Current Balance on     5/31/22                        $        372.00
    Low Balance for Period was                372.00

```
GRANT SIDNEY INC                        30      Account Number:   *****6168
600 N. MAIN ST. #2000                           Statement Date:    4/30/22
SHELBYVILLE TN 37160                            Page Number:            1
                                                Items:                  0
```

Privacy Notice-Federal law requires us to tell you how we collect
share, and protect your personal information. You may review our
policy and practices with respect to your personal information at
https://www.fnbmt.com/assets/files/u8tqXw3I/r/Privacy+Policy.pdf
or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                Account #:************6168
Previous Balance on    3/31/22                       $        372.00
                                                     ----------------
Current Balance on     4/30/22                       $        372.00
    Low Balance for Period was                 372.00
```

```
GRANT SIDNEY INC                          30        Account Number:    *****6168
600 N. MAIN ST. #2000                              Statement Date:     3/31/22
SHELBYVILLE TN 37160                                 Page Number:          1
                                                          Items:          0
```

Privacy Notice-Federal law requires us to tell you how we
collect, share, and protect your personal information. Our
privacy policy has not changed and you may review our policy
and practices with respect to your personal information at
https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
disclosure/Privacy-Notice.pdf or we will mail you a free copy
upon request if you call us at 931-473-4402.

```
        REGULAR CHECKING
                      Account #:************6168
Previous Balance on    2/28/22                          $        372.00
                                                        ---------------
Current Balance on     3/31/22                          $        372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                          30      Account Number:   *****6168
600 N. MAIN ST. #2000                            Statement Date:    2/28/22
SHELBYVILLE TN 37160                              Page Number:          1
                                                  Items:                0
```

Privacy Notice-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/disclosure/Privacy-Notice.pdf or we will mail you a free copy upon request if you call us at 931-473-4402.

REGULAR CHECKING

```
                  Account #:************6168
Previous Balance on    1/31/22                         $        372.00
                                                       ---------------
Current Balance on     2/28/22                         $        372.00
     Low Balance for Period was              372.00
```

```
GRANT SIDNEY INC                          30      Account Number:   *****6168
600 N. MAIN ST. #2000                             Statement Date:    1/31/22
SHELBYVILLE TN 37160                               Page Number:          1
                                                         Items:           0
```

```
          Privacy Notice-Federal law requires us to tell you how we
          collect, share, and protect your personal information. Our
          privacy policy has not changed and you may review our policy
          and practices with respect to your personal information at
          https://www.fnbmt.com/custom/fi/firstnationalbankmcminnville/fb/
          disclosure/Privacy-Notice.pdf or we will mail you a free copy
          upon request if you call us at 931-473-4402.

          REGULAR CHECKING
                       Account #:************6168
Previous Balance on   12/31/21                          $          372.00
                                                        ---------------
Current Balance on     1/31/22                          $          372.00
     Low Balance for Period was              372.00
```

# EXHIBIT L


## Re: [External] Re: Wire from Grant Sidney to LS Cream (Canada)
1 message

**Fawn Weaver** <fawn.weaver@unclenearest.com>                    Fri, Jan 22, 2021 at 12:58 PM
To: Chris Pepper <cpepper@fnbmt.com>
Cc: Mike Senzaki <mike.senzaki@unclenearest.com>

Gotcha! That was correct. I needed to move the $150K to Grant Sidney from my personal for this transaction. Sorry about that, Chris.

I'm on the move while typing...please excuse any typos.

On Jan 22, 2021, at 12:44 PM, Chris Pepper <cpepper@fnbmt.com> wrote:

I see what it is.  The deposit went into your and Keith's personal account and we were looking for it in the Grant Sidney Account.  I'll get it transferred to Grant Sidney and wire sent.

**From:** Fawn Weaver <fawn.weaver@unclenearest.com>
**Sent:** Friday, January 22, 2021 11:28 AM
**To:** Chris Pepper <cpepper@fnbmt.com>
**Cc:** Mike Senzaki <mike.senzaki@unclenearest.com>
**Subject:** Re: [External] Re: Wire from Grant Sidney to LS Cream (Canada)

I transferred the funds from the Uncle Nearest before the request was sent and it was immediately available. Not sure what you're waiting for, Chris. Please advise.

I'm on the move while typing...please excuse any typos.

On Jan 22, 2021, at 12:18 PM, Chris Pepper <cpepper@fnbmt.com> wrote:

Thanks, once the deposit hits and funds are available we will work on this.

**From:** Fawn Weaver <fawn.weaver@unclenearest.com>
**Sent:** Friday, January 22, 2021 11:14 AM
**To:** Mike Senzaki <mike.senzaki@unclenearest.com>
**Cc:** Chris Pepper <cpepper@fnbmt.com>
**Subject:** [External] Re: Wire from Grant Sidney to LS Cream (Canada)

Chris-