UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

**RESPONSE IN OPPOSITION TO THE RECEIVER'S EXPEDITED MOTION TO SELL REAL AND PERSONAL PROPERTY IN MARTHA'S VINEYARD**

Grant Sidney, Inc. (*"Grant Sidney"*), Fawn Weaver, and Keith Weaver (collectively, the *"Respondents"*), by and through their undersigned counsel, file this response in opposition (the *"Response"*) to the *Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* [Doc. No. 147] (the *"Motion to Sell"*). In support of this Response, the Respondents respectfully state as follows:

**SUMMARY OF THE RESPONSE**

1. The Respondents object and request this Court deny the Motion to Sell for four main reasons. **First**, considering the pending Motion to Reconsider, granting the Motion to Sell prior to the disposition of the *Motion to Reconsider the Memorandum Opinion and Order and Order Appointing Receiver and to Stay Access to Proprietary Information* [Doc. No. 91] (the *"Motion to Reconsider"*) risks irreversible loss of assets that could not easily be recovered post-receivership. **Second**, the Receiver and the Motion to Sell ignore the enterprise value of the MV Property (the *"MV Property"*), and, while selling it may cut certain costs, selling it may also decrease going-concern value, brand value, goodwill, and, ultimately, revenue, such that the net

effect of the sale is a decrease in the Company's[1] bottom line rather than an increase.  **Third**, regardless of the disposition of the MV Property, the Receiver should not be authorized to distribute any proceeds to Farm Credit until this Court has determined the validity, priority, and extent of Farm Credit's purported lien with respect to the MV Property, especially where there does not appear to even be *prima facie* evidence establishing any liens held by Farm Credit on the MV Property or proceeds therefrom.  **Fourth**, the Respondents are in the process of securing a firm offer from an existing Uncle Nearest investor that will provide the Receivership Estate with the same economic benefit contemplated by the Receiver's proposed sale while preserving the property's established purpose and the goodwill associated with it.

## RESPONSE AND ARGUMENT

**I.     The Motion to Sell should be held in abeyance pending disposition of the Motion to Reconsider.**

2.     If this Court grants the Motion to Sell now and later terminates the Company's receivership by granting the Motion to Reconsider, the Company will irreversibly be deprived of a strategic asset.  That is, approving the sale now could be highly prejudicial.

3.     Moreover, while the Receiver has disclosed a contract closing date of March 19, 2026, the sale contract for the MV Property was not attached to the Motion to Sell, and it is not clear what contingencies (if any) would be triggered if closing has to occur at a later date due to delayed approval by this Court.  It is also important to note that the Receiver has also obtained two backup offers for the full asking price (i.e., of equal monetary value to the contract at hand).  Thus, the harm of holding the Motion to Sell in abeyance is greatly reduced, if not entirely eliminated, by (a) certain contingencies being baked into (or not) the sale contract and (b) the two backup offers.

---

[1] The ***"Company"*** shall refer herein to the corporate defendants Uncle Nearest, Inc., *et al.*

4. Accordingly, the prejudice of ruling on the Motion to Sell now outweighs the harm of holding it in abeyance pending the Motion to Reconsider, and the Motion to Sell should therefore be held in abeyance—or denied entirely if this Court is inclined to grant the Motion to Reconsider.

**II. The Motion to Sell ignores the value add of the MV Property to the Company, to the detriment of the Company's going-concern value, brand value, goodwill, and, ultimately, revenue.**

5. As has been articulated previously to the Court, the Respondents firmly believe and argue that steps should be taken to maximize the going-concern value of the Company, whereas the Receiver looks to be seeking only a quick disposition of all of the Company's assets. The Respondents caution that disposition of assets that are material to the value of the Uncle Nearest brand may cause a loss of enterprise value for the Company that greatly exceeds any value generated by a quick sale of assets.

6. While selling the MV Property may reduce certain costs, strictly looking at the MV Property from a cost-reduction standpoint fails to appreciate its value add for the Company as a going-concern. For instance, the MV Property serves as, among other things, (a) a strategic asset for marketing and sales; (b) a venue for brand, distributor, and investor engagement; and (c) a brand synergy point connecting the African American history embodied in the Company with the African American history embodied in Oak Bluffs (the community near where the MV Property is located), which is a historically important summer destination for African Americans throughout the country. During periods when access to coastal communities was restricted elsewhere, Oak Bluffs became a rare enclave of Black homeownership, entrepreneurship, and civic leadership. Each August, the island becomes a national gathering point for business leaders, alumni networks, entrepreneurs, academics, and public officials during what is widely recognized as "August on the Vineyard," including Black Excellence Week, HBCU Week, and Black Greek Week. For a brand

rooted in the documented history of Nearest Green and the legacy of African American contribution to American whiskey, engagement in this setting carries authentic historical alignment and meaningful commercial resonance. All of these things have a direct impact on the growth and revenue of the Company, whether through increasing sales, reducing friction through better relations with distributors and vendors, or building the Uncle Nearest brand and connecting to the stories and histories of its customers.

7. The MV Property has functioned as the anchor residence for annual private gatherings during August on the Vineyard. Among these is the Company's annual invitation-only Gospel Brunch, widely regarded as one of the most sought-after private invitations during August on the Vineyard. Attendance is curated and relationship-driven. It is not ticketed, not open to the public, and not operated as a commercial venue.

8. The Property has also hosted private, invitation-only charitable gatherings supporting various Historically Black Colleges and Universities (HBCUs). These events facilitate alumni engagement, institutional dialogue, and philanthropic support, strengthening relationships between the Company and influential alumni and leadership communities.

9. In an industry where distributor loyalty and on-premise advocacy materially influence market expansion, these engagements support long-term enterprise value. The Receiver's analysis does not evaluate the downstream commercial consequences of dismantling this established relationship platform.

10. The Receiver states in the Motion to Sell that:

> During his administration of this estate, the Receiver has learned that the Martha's Vineyard Property produces no income for MV or Uncle Nearest. Rather, it was purchased for marketing and advertising purposes only. Throughout the pendency

of this receivership, the Martha's Vineyard Property has created monthly expenses for the estate while generating no revenue.[2]

11. The Receiver is correct that the MV Property was purchased for marketing and advertising purposes, but to look at it strictly as a cost is reductionist at best and ignores the reality that marketing, advertising, and brand value are **THE** drivers of revenue and growth (i.e., going-concern value) in the spirits industry given the fungibility of spirits products.

12. So, selling the MV Property may reduce costs, but it will also have negative effects on other things—such as declining sales or worsening relations with distributors and vendors—that may decrease the Company's bottom line, with the knock-on effect potentially being a lower bottom line for the Company than had the costs of the MV Property never been eliminated. Where the Receiver is pursuing a sale of the Company, actions that may reduce the Company's revenue will have a dramatic impact on the value of the Company in the sale process.

13. Put simply, selling the MV Property will not maximize the going-concern value of the Company and has the potential to decrease sales and disrupt and sour relations with distributors, vendors, investors, and customers. For these reasons, the Respondents object and respectfully request the Court deny the Motion to Sell.

### III. Proceeds from a sale of the MV Property should be held for the benefit of the Receivership Estate until the validity, priority, and extent of Farm Credit's purported lien have been determined.

14. Whatever the ultimate outcome of the MV Property may be, this Court should not authorize any distribution of sale proceeds to Farm Credit. Instead, any proceeds in excess of closing costs, commissions, and payoff of the mortgagee (Planet Home Lending, LLC) should be held for the benefit of the Company's receivership estate until this Court has determined the validity, priority, and extent of liens with respect to the MV Property.

---

[2] Motion to Sell at 2-3, ¶6.

15. Most importantly, there does not appear to even be *prima facie* evidence establishing any liens held by Farm Credit on the MV Property or proceeds therefrom. The Respondents are not aware of any deed of trust or mortgage—whether recorded or not—in favor of Farm Credit with respect to the MV Property, and none have been filed to date. Farm Credit has no perfected lien on the MV Property. Therefore, Farm Credit's right to the proceeds of the sale of the MV Property is no greater than the rights of any general unsecured creditor of the Company and is subject to any recovery that Farm Credit obtains from its actual collateral.

16. Accordingly, Farm Credit is not entitled to the $900,000.00 distribution proposed by the Receiver in the Motion to Sell, and this Court should not allow the Receiver to arbitrarily elevate Farm Credit above similarly situated unsecured creditors, which would constitute a windfall of $900,000.00 to Farm Credit at the expense of the other unsecured creditors. Allowing that outcome would unfairly prejudice other unsecured creditors of the Receivership Estate.

### IV. An existing Uncle Nearest investor has made an offer to acquire the property and preserve its established purpose.

17. In light of the importance of the MV Property to the Company's brand and relationship-building efforts, Respondents are in the process of securing an alternative transaction that would provide the Receivership Estate with the same cash proceeds contemplated by the Receiver's proposed sale while allowing the MV Property to continue to be maintained consistent with its original purpose, as described above.

18. Mrs. Weaver previously informed both the Receiver and his spirits consultant of the cultural significance of the MV Property and advised that if, at any time, they believed the property should be sold to bring funds into the Receivership Estate, she would obtain offers from existing Uncle Nearest investors. She also connected the Receiver with an Uncle Nearest investor who owns interests in more than ten properties on Martha's Vineyard in order to share the

importance of the property remaining connected to the community and cultural traditions of the island. Nonetheless, the Receiver proceeded with a proposed sale to a third party who is not otherwise affiliated with the Uncle Nearest community, other than as a supporter and annual attendee of the private gatherings historically held at the property. Respondents have identified an Uncle Nearest investor that is willing to provide equivalent financial value to the Receivership Estate while ensuring that the MV Property can be used consistent with its historical use.

19. Nubian Sage Enterprises, LLC (***"Nubian Sage"***), founded by former NBA teammates Kevin Johnson and Mark West, is in the process of submitting a written offer to acquire 100% of the membership interest in UN House MV, LLC, which owns the MV Property, for $900,000 cash consideration to the Receivership Estate. Nubian Sage can provide proof of funds demonstrating its ability to consummate the transaction, and the offer contemplates closing promptly upon approval of this Court. The Respondents expect to have a letter of intent to present to the Receiver by March 9, 2026.

20. Although Farm Credit maintains no perfected lien on the MV Property and is therefore not entitled to the sale proceeds, Respondents nevertheless believe that allowing this transaction with Nubian Sage to proceed is in the best interests of the Receivership Estate. Approval of the sale to Nubian Sage will provide the Receivership Estate with the same $900,000 in proceeds identified by the Receiver while preserving the goodwill and longstanding community relationships associated with the MV Property.

21. Because the Receivership Estate will receive the same net proceeds through the proposed Nubian Sage transaction, approval of the Receiver's proposed sale is not necessary to achieve the financial objective cited in the Motion to Sell. The Court may therefore preserve the

established goodwill associated with the MV Property while ensuring the Receivership Estate receives the same economic benefit.

WHEREFORE, the Respondents respectfully request that this Court (a) hold the Motion to Sell in abeyance pending disposition of the Motion to Reconsider or (b) deny the Motion to Sell, and (c) in any event, deny authorization of any distribution of proceeds to Farm Credit until this Court has determined the validity, priority, and extent of any alleged liens with respect to the MV Property, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins (TN BPR No. 16036)
S. Marc Buchman (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (629) 500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

*/s/ Michael E. Collins*
Michael E. Collins