UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-38 |
| v. | ) ) | Judge Atchley |
| UNCLE NEAREST, INC., et al., | ) ) | Magistrate Judge Steger |
| Defendants. | ) ) ) | |

**RESPONSE OF SHELBYVILLE BARREL HOUSE BBQ, LLC RELATING TO MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND STATEMENT OF FARM CREDIT**

Shelbyville Barrel House BBQ, LLC ("SBH"), by and through its undersigned counsel, provides this response with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] responding to the Post-Hearing Briefs submitted by the Receiver and Farm Credit (collectively, the "Post-Hearing Briefs").

The burden of proof on the issue of whether the Non-Parties, including SBH, should be placed in receivership is clearly on the Receiver and Farm Credit and the burden is high.[3] The federal courts have recognized that placing a company in receivership is an extreme form of relief

---

[1] Dkt. 41.
[2] Dkt. 44.
[3] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005) (holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) ("The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.") (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

justified in very limited circumstances.[4] Those circumstances are clearly not present in this case, and the Motion to Clarify never should have been filed prior to any investigation by the Receiver.

The Receiver's request to extend the receivership to SBH rests on a fundamental misunderstanding of both the structure of SBH's business and the limited nature of the financial transactions cited in the Receiver's exhibits. As explained below, SBH is an independently licensed restaurant operating pursuant to a standard franchise relationship, and the transactions identified by the Receiver reflect nothing more than routine commercial dealings arising from that relationship and other ordinary business obligations. The sparse number of transactions identified over a five-year period falls far short of the type of financial entanglement necessary to support a finding of commingling or alter ego liability, much less the extraordinary remedy of expanding a federal receivership.

Since the Receiver bears the burden of proof with respect to his effort to place SBH in receivership or to with respect to any alter ego analysis, SBH should not be required to prove a negative with respect unidentified transactions or unspecified alter ego allegation. However, it is absolutely clear that there is no legitimate argument that SBH has commingled funds or is an alter ego of the Uncle Nearest Entities. SBH operates and does business as Chuck's Barrel House BBQ II, a franchise location of the original Chuck's Barrel House BBQ founded by Charles "Chuck" Baker, Jr. in Lynchburg, Tennessee. Mr. Baker is the founder and namesake of the Barrel House concept, and SBH represents the inaugural franchise location of that brand. While SBH operates as its own legal entity with its own licensure and operational structure, it does so pursuant to a standard franchise relationship with Mr. Baker as the franchisor. As part of that franchise relationship, SBH pays Mr. Baker a 6% royalty fee for the use of the Chuck's Barrel House BBQ

---

[4] *See, e.g., Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022) (*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

brand and operating system. Mr. Baker also provides the proprietary sauces and rubs used by the restaurant on a consignment basis, which are later paid for by SBH in the ordinary course of business. SBH also repays Mr. Baker for his investment of approximately $300,000 for the kitchen and related equipment, which SBH has been systematically repaying over time. None of these expenses have been paid by any of the Uncle Nearest Entities, and there is no assertion any the Receiver otherwise. These royalty payments, consignment purchases, and equipment repayment obligations reflect ordinary franchise and vendor relationships typical in the restaurant industry and demonstrate clearly defined commercial obligations of SBH rather than any commingling of funds between SBH and Uncle Nearest.

The Post-Hearing Briefs provide no facts sufficient to meet the high burden of proving that SBH should be subject to the extreme relief of receivership. As an initial matter, the Receiver and Farm Credit have thrown about the concept of commingling without providing any definition for the term. The term "commingle" means "to mix personal funds with those of a beneficiary or client, [usually] in an improper or illegal way."[5] Thus, in order to determine that commingling has occurred, at least two things need to be established – (1) personal funds owned by one entity were mixed with personal funds owned by another entity and (2) that the mixing of the funds was done in an improper or illegal way. The Receiver has not established that any commingling has occurred. Even if the Receiver could establish some amount of commingling, the extent of the commingling would have to be sufficient to warrant the extreme relief of receivership. That has simply not been proven.

Receiver bases his position that SBH should be placed in receivership on three allegations. First, the Receiver cites to the volume of documented transactions between SBH, the Uncle

---

[5] *Spring Valley Produce, Inc. v. Forrest*, 47 F.4th 1229, 1243 (11th Cir. 2022) (*quoting Commingle*, Black's Law Dictionary (11th ed. 2019)).

Nearest Entities, the Non-Parties, and "Unknown Entities," with no analysis of the specific transactions themselves. There is simply no basis from the number of transactions alone, most not even involving the Uncle Nearest Entities, to conclude that such transactions constitute commingling.

Second, the allegation that SBH "shares[s] employees, bank accounts, and operational resources with Uncle Nearest" is plainly false. There are absolutely no employees shared between Uncle Nearest and SBH – none. There is no evidence in the record of any sharing of employees. SBH and Uncle Nearest do not share the same bank accounts. There is no evidence of joint bank accounts between the entities – none. SBH does not share any "operational resources" with Uncle Nearest, other than those consistent with the existing Lease. The Receiver alleges that SBH gets the benefit of these "operational resources" without compensating Uncle Nearest. He apparently has not read the applicable Lease, which does not require SBH to pay for any of the common area maintenance charges, including utilities, trach collection, etc.[6] Further, SBH does not utilize any of the accounting systems used by the Uncle Nearest Entities.[7] The simple fact that SBH doesn't reimburse Uncle Nearest for these charges that are not its obligation under the Lease shows that there is no commingling between SBH and the Uncle Nearest Entities.

As to the payment of rent, SBH asserts that any rent due is offset by the unpaid obligations owed by Uncle Nearest to SBH. Regardless, if the Receiver believes it is in the best interests of the Receivership Estate to terminate the Lease based on alleged non-payment of rent, then he has an adequate legal remedy to accomplish that. If he believes that SBH owes money to Uncle Nearest, he has an adequate legal remedy for that. Receivership is not the answer where there are clearly other, less invasive avenues to address the issues alleged by the Receiver.

---

[6] Weaver Ex. 30.
[7] SBH Post-Hearing Brief, Ex. 1, ¶ 29.

The Receiver's exhibits do not support the assertion that the funds of the Non-Parties have been commingled with the funds of the Uncle Nearest Entities. As an initial matter, the Receiver provides none of the back-up documentation to support the raw numbers that he provides, so there is literally no way to assess whether the figures are accurate. Furthermore, it is unclear why the Receiver's exhibits don't tie to each other. The Receiver's Exhibit A-4 pp. 41-47 contains matrices that purport to be looking at the same data but have differing totals. For example, Receiver Exhibit A p. 41 purports to list all receipts and disbursements between the entities over the five-year period and totals the transactions at 498. Then Receiver Exhibit A p. 42 also purports to list all of the receipts and disbursements between the entities over the same five-year period but totals the transactions at 434. It is impossible for the total transactions for the same five-year period between the same entities to be both 498 and 434. Similarly, comparisons of Receiver Exhibit A p. 42 and p. 43, p. 44 and p. 45, and p. 46 and p. 47 have the same issues – none of them tie together even though they are purportedly looking at the same period of time for the same entities. Thus, the Receiver's Exhibit A p. 41-47 are clearly wrong and do not provide any meaningful evidence to support placing any of the Non-Parties into receivership.

Even assuming hypothetically that the figures in Receiver Exhibit A pp. 41-47 are accurate (they clearly aren't), those figures show only a minimal number of monthly transactions between the Non-Parties and the Uncle Nearest Entities over the five-year period. **Exhibit 1** to this Response provides an analysis of Receiver Exhibit A-4 pp. 44-47, and shows that, if the analysis is limited to the transactions occurring between the Non-Parties and the Receivership Entities, the total transactions are 84 (at most) and equate to an average total of less 1.4 transactions per month between the Non-Parties and the Receivership entities. That is 1.4 transactions per month between seven Non-Parties and five Receivership Entities. To break that down further, there are twelve

total entities being analyzed, **so the total average identified transactions per month for each of the twelve entities is .12 – or less than one transaction <u>per year</u> per entity.** Even if the Receiver had proof that the transactions constitute "commingling" (he doesn't), that volume of transactions doesn't even come close to the volume that would be necessary to support the imposition of the extreme relief of receivership.[8]

With respect to SBH specifically, **the Receiver has identified only a single[9] transaction between SBH and the Receivership Entities over five years**. Considering that SBH operates on the premises of the Nearest Green Distillery, the sparseness of the transactions clearly shows that there is no commingling. Furthermore, the Receiver's numeric narrative ignores the operating reality that SBH is required by law to be separate from Uncle Nearest. Such an infrequent level of interaction between independent businesses underscores that the entities were operating separately, not as a commingled enterprise.

The Receiver has further not demonstrated that putting SBH in Receivership is necessary for any investigation he intends to undertake at the expense of Uncle Nearest. It should be noted that the Receiver and his professionals have now charged the estate more than $2.3 million to investigate this case and have found literally no legitimate evidence that would support a commingling or alter ego determination. Rather, the Receiver and Farm Credit simply assert that the number of transactions between the entities, with no analysis of any specific transactions, to support their position.

While the Receiver argues on the one hand that the number of transactions evidences commingling, he then argues that the absence of transactions is also evidence of commingling. In

---

[8] Further, **Exhibit 1** shows that Uncle Nearest was a net beneficiary of the transactions in the amount of approximately $17 million.
[9] The Receiver's Ex. A-4 pp. 46-47 are inconsistent – one indicates zero total transactions and the other indicates one total transaction.

fact, neither of those sides of the same coin evidence commingling. They just evidence operating businesses that transact with each other. Just because the Uncle Nearest Entities may transact with Amazon or Sysco regularly, does not mean that Amazon and Sysco are alter egos of the Uncle Nearest Entities.

In sum, the Receiver and Farm Credit have failed to provide any legitimate evidence that SBH has commingled funds with those of the Uncle Nearest Entities or that SBH is an alter ego of the Uncle Nearest Entities. The pendency of this Motion to Clarify, where there is literally no evidence to support it, has caused and is continuing to cause serious and irreparable harm to SBH and the other Non-Parties.

WHEREFORE, SBH respectfully requests that the Court decline to expand the receivership to include SBH or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins     (TN Bar No. 16036)
S. Marc Buchman     (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for SBH*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins