UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) |
| Plaintiff, | ) Case No. 4:25-cv-38 |
| v. | ) Judge Atchley |
| UNCLE NEAREST, INC., et al., | ) Magistrate Judge Steger |
| Defendants. | ) |

**RESPONSE OF HUMBLE BARON, INC. RELATING TO
MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND
STATEMENT OF FARM CREDIT**

Humble Baron, Inc. ("Humble Baron"), by and through its undersigned counsel, provides this response with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] responding to the Post-Hearing Briefs submitted by the Receiver and Farm Credit (collectively, the "Post-Hearing Briefs").

The burden of proof on the issue of whether the Non-Parties, including Humble Baron, should be placed in receivership is clearly on the Receiver and Farm Credit and the burden is high.[3] The federal courts have recognized that placing a company in receivership is an extreme form of

---

[1] Dkt. 41.
[2] Dkt. 44.
[3] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005) (holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) ("The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.") (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

relief justified in very limited circumstances.[4] Those circumstances are clearly not present in this case, and the Motion to Clarify never should have been filed prior to any investigation by the Receiver.

The Post-Hearing Briefs provide no facts sufficient to meet the high burden of proving that Humble Baron should be subject to the extreme relief of receivership. As an initial matter, the Receiver and Farm Credit have thrown about the concept of commingling without providing any definition for the term or establishing it has occurred. The term "commingle" means "to mix personal funds with those of a beneficiary or client, [usually] in an improper or illegal way."[5] Thus, in order to determine that commingling has occurred, at least two things need to be established – (1) personal funds owned by one entity were mixed with personal funds owned by another entity and (2) that the mixing of the funds was done in an improper or illegal way. The Receiver has not established that any commingling has occurred. Even if the Receiver could establish some amount of commingling (he can't), the extent of the commingling would have to be sufficient to warrant the extreme relief of receivership. That has simply not been proven.

The Receiver bases his position that Humble Baron should be placed in receivership on three allegations. First, the Receiver cites to the volume of transactions between Humble Baron, the Uncle Nearest Entities, the Non-Parties, and "Unknown Entities," with no analysis of the specific transactions themselves. There is simply no basis from the number of transactions alone, most not even involving Uncle Nearest Entities, to conclude that such transactions constitute commingling.

---

[4] *See, e.g., Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022) (*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).
[5] *Spring Valley Produce, Inc. v. Forrest*, 47 F.4th 1229, 1243 (11th Cir. 2022) (*quoting Commingle*, Black's Law Dictionary (11th ed. 2019)).

Second, the Receiver cites to the payment made by Uncle Nearest to Levy Foodservice as evidence of commingling when, in fact, the funds paid by Uncle Nearest to Levy were never mixed with Humble Baron's funds. Consequently, that payment cannot be deemed commingling. Furthermore, the payment by Uncle Nearest to Levy has been shown to be in payment of Uncle Nearest's own obligations, so it is not evidence of commingling or any improper or illegal act.

Third, the Receiver's allegation that Humble Baron "shares[s] employees, bank accounts, and operational resources with Uncle Nearest" is not supported by any facts in the record. The Receiver has provided no evidence that Humble Baron and Uncle Nearest share the same bank accounts, even though the Receiver has access to all of the bank accounts. Furthermore, Humble Baron does not share any "operational resources" with Uncle Nearest, other than those consistent with the Lease that exists between Uncle Nearest Real Estate Holdings, LLC and Humble Baron. The Receiver alleges that Humble Baron gets the benefit of these "operational resources" without compensating Uncle Nearest. He apparently has not read the applicable Lease, which specifically provides that the landlord, i.e. Uncle Nearest Real Estate Holdings, LLC, is required to pay for all of the common area maintenance charges, including utilities, trash collection, etc.[6] Further, Humble Baron does not utilize any of the accounting systems used by the Uncle Nearest Entities.[7] The simple fact that Humble Baron doesn't reimburse Uncle Nearest for these charges that are not its obligation under the Lease shows that there is no commingling between Humble Baron and the Uncle Nearest Entities. The Receiver has the burden of proof and has not met that burden.

As to the payment of rent, Humble Baron asserts that any rent due is offset by the unpaid obligations owed by Uncle Nearest to Humble Baron. Regardless, if the Receiver believes it is in the best interests of the Receivership Estate to terminate the Lease based on alleged non-payment

---

[6] Weaver Exs. 26-27.
[7] Humble Baron Post-Hearing Brief, Ex. 1, ¶¶ 5-8.

of rent, then he has an adequate legal remedy to accomplish that. If he believes that Humble Baron owes money to Uncle Nearest, he has an adequate legal remedy for that. Receivership is not the answer where there are clearly other, less invasive avenues to address the issues alleged by the Receiver.

The Receiver's exhibits do not support the assertion that the funds of the Non-Parties have been commingled with the funds of the Uncle Nearest Entities. The mere counting of transactions does not prove (1) that funds owned by one entity were mixed with funds owned by another entity or (2) that any alleged mixing of funds was improper or illegal. Furthermore, the Receiver provides none of the back-up documentation to support the raw numbers that he provides, so there is literally no way to assess whether the figures are accurate.

It is also unclear why the Receiver's exhibits don't tie to each other. The Receiver's Exhibit A-4 p. 41-47 contains matrices that purport to be looking at the same data but have differing totals. For example, Receiver Exhibit A-4 p. 41 purports to list all receipts and disbursements between the entities over the five-year period and totals the transactions at 498. Then Receiver Exhibit A-4 p. 42 also purports to list all of the receipts and disbursements between the entities over the same five-year period but totals the transactions at 434. It is impossible for the total transactions for the same five-year period between the same entities to be both 498 and 434. Similarly, comparisons of Receiver Exhibit A-4 p. 42 and p. 43, p. 44 and p. 45, and p. 46 and p. 47 have the same issues – none of them tie together even though they are purportedly looking at the same period of time for the same entities. Thus, the Receiver's Exhibit A-4 p. 41-47 is clearly wrong and does not provide any meaningful evidence to support placing any of the Non-Parties into receivership.

Even assuming hypothetically that the figures in Receiver Exhibit A-4 pp. 41-47 are accurate (they clearly aren't), those figures show only a minimal number of monthly transactions

between the Non-Parties and the Uncle Nearest Entities over the five-year period. **Exhibit 1** to this Response provides an analysis of Receiver Exhibit A-4 pp. 44-47, and shows that, if the analysis is limited to the transactions occurring between the Non-Parties and the Receivership Entities, the total transactions are 84 (at most) and equate to an average total of less 1.4 transactions per month between the Non-Parties and the Receivership entities. That is 1.4 transactions per month between seven Non-Parties and five Receivership Entities. To break that down further, there are twelve total entities being analyzed, **so the total average identified transactions per month for each of the twelve entities is .12 – or less than one transaction <u>per year</u> per entity.** Even if the Receiver had proof that the transactions constitute "commingling" (he doesn't), that volume of transactions doesn't even come close to the volume that would be necessary to support the imposition of the extreme relief of receivership.[8]

With respect to Humble Baron specifically, the Receiver has identified, at most, 36[9] transactions between Humble Baron and the Receivership Entities over five years. That amounts to **less than one transaction between the entities per month**. Considering that Humble Baron operates on the premises of the Nearest Green Distillery, the sparseness of the transactions clearly shows that there is no possible level of commingling that would support imposition of receivership. Furthermore, the Receiver's numeric narrative ignores the operating reality that Humble Baron is required by law to be separate from Uncle Nearest.

The Receiver has further not demonstrated that putting Humble Baron in Receivership is necessary for any investigation he intends to undertake at the expense of Uncle Nearest. It should be noted that the Receiver and his professionals have now charged the estate more than $2.3

---

[8] Further, **Exhibit 1** shows that Uncle Nearest was a net beneficiary of the transactions in the amount of approximately $17 million, so it can't reasonably be argued that the Uncle Nearest Entities were harmed by the transactions.
[9] The Receiver's Ex. A-4 pp. 46-47 are inconsistent – one indicates 24 total transactions and the other indicates 36 total transactions.

million to administer this case and have found literally no legitimate evidence that would support a commingling or alter ego determination. Rather, the Receiver and Farm Credit simply assert that the number of transactions between the entities, with no analysis of any specific transactions, to support their position.

While the Receiver argues on the one hand that the number of transactions evidences commingling, he then argues that the absence of transactions is also evidence of commingling. In fact, neither of those sides of the same coin evidence commingling. They just evidence operating businesses that transact with each other. Just because the Uncle Nearest Entities may transact with Amazon or Sysco regularly, does not mean that Amazon and Sysco are alter egos of the Uncle Nearest Entities.

Both the Receiver and Farm Credit cite to correspondence from Humble Baron to Nearest Green Distillery indicating that the transactions should be treated as "intercompany" as evidence supporting a commingling or alter ego argument.[10] In fact, it supports the opposite conclusion that the entities are indeed separate companies. Both the Receiver and Farm Credit apparently don't understand the difference between "intercompany" and "intracompany." The definition of "intercompany" is "occurring or existing between two or more companies."[11] On the other hand, the definition of "intracompany" is "occurring within or taking place between branches or employees of a company."[12] Clearly, the reference to "intercompany" supports the conclusion that Humble Baron and Nearest Green Distillery were being treated as separate companies. The reference in the email to netting of the due to's and due from's between the two companies is a common practice where two separate companies both provide goods and services, and receive

---

[10] *See* Plaintiff's Supplemental Exhibit 11 at 1.
[11] Intercompany, https://www.merriam-webster.com/dictionary/intercompany.
[12] Intracompany, https://www.merriam-webster.com/dictionary/intracompany.

goods and services, from each other. The practice of netting accounts receivable and accounts payable between two companies is not evidence of commingling or an alter ego relationship.

In sum, the Receiver and Farm Credit have failed to provide any legitimate evidence that Humble Baron has commingled funds with those of the Uncle Nearest Entities or that Humble Baron is an alter ego of the Uncle Nearest Entities. The pendency of this Motion to Clarify, where there is literally no evidence to support it, has caused and is continuing to cause serious and irreparable harm to Humble Baron and the other Non-Parties.

WHEREFORE, Humble Baron respectfully requests that the Court decline to expand the receivership to include Humble Baron or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins     (TN Bar No. 16036)
S. Marc Buchman     (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Humble Baron, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins