UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

**RESPONSE OF SHELBYVILLE GRAND, LLC TO**
**MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER AND**
**STATEMENT OF FARM CREDIT**

Shelbyville Grand, LLC ("SGLLC"), by and through its undersigned counsel, provides this supplemental brief with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] responding to the Post-Hearing Briefs submitted by the Receiver and Farm Credit (collectively, the "Post-Hearing Briefs").

The burden of proof on the issue of whether the Non-Parties, including SGLLC, should be placed in receivership is clearly on the Receiver and Farm Credit and the burden is high.[3] The federal courts have recognized that placing a company in receivership is an extreme form of relief

---

[1] Dkt. 41.
[2] Dkt. 44.
[3] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005) (holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) ("The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.") (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

justified in very limited circumstances.[4] Those circumstances are clearly not present in this case, and the Motion to Clarify never should have been filed prior to any investigation by the Receiver.

The impact of the Motion to Clarify on SGLLC has been severe. The Receiver cites to a pending foreclosure action against one of SGLLC's properties as support for putting SGLLC in receivership – however, it is this very Receivership and the pending Motion to Clarify that has precipitated the foreclosure action by disrupting SGLLC's ability to collect amounts owed for the continued storage of Uncle Nearest inventory. First, the Receiver has not paid the storage fees that are due to SGLLC and accrue at the rate of $6,500 per month, while SGLLC has continued to pay the costs associated with storing the inventory of the Uncle Nearest Entities in an approximately 25,000-square-foot climate-controlled facility. SGLLC provides this storage in the same manner as any climate-controlled storage provider, storing the inventory of the Uncle Nearest entities for a fee. Those inventory items include pallets of Uncle Nearest glass bottles, which must be stored in climate-controlled space to prevent molding, as well as used barrels, bottle labels, bottle closures, shipping cases, and bottle corks. Additionally, delayed payments from the Receiver on unrelated obligations, with adverse credit implications, have made matters worse. This has caused a cash flow issue for SGLLC, resulting in the need to liquidate assets to satisfy its obligations.

The pending foreclosure relating to certain of the SGLLC properties does not create cause for placing SGLLC in this receivership, where the Receiver has asserted no legitimate basis for a finding of commingling or alter ego status. The pending foreclosure relates to a loan requiring refinancing due to a balloon payment. SGLLC would ordinarily refinance the loan or sell the property to satisfy that obligation. However, the uncertainty created by the Receivership and the allegations in the Motion to Clarify have made refinancing or sale impossible. Potential lenders

---

[4] *See, e.g., Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022) (*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

and purchasers have required assurances that the Receiver will not attempt to unwind transactions involving SGLLC assets while the Motion to Clarify remains pending – assurances that cannot presently be provided. This is something that would never have been contemplated but for the confusion created by the Motion to Clarify as to the Non-Parties, and especially SGLLC.

While SGLLC has a plan for resolving the foreclosure, the foreclosure possibility cannot and should not serve as a basis for expanding the Receivership when the circumstances giving rise to that risk were themselves caused by the Receivership and the Motion to Clarify. To the extent that the Receiver has conjectured (with absolutely no evidence) that the property was "likely" acquired or maintained with funds from Uncle Nearest, that is absolutely false. There is literally no evidence to support the Receiver's statement. SGLLC requests that the Court base any decision in this matter on facts, not the Receiver's conjecture unsupported by actual evidence.

Second, the pendency of the Motion to Clarify has caused SGLLC to be unable to sell its assets in order to alleviate the cash flow issue. Specifically, because the Receivership is a highly public proceeding and because the Motion to Clarify is pending, potential purchasers have required assurances that the Receiver will not seek to unravel any sale transaction relating to SGLLC assets. These two factors are the sole reason that SGLLC is dealing with a potential foreclosure. This unfounded Motion to Clarify has been and continues to cause extreme harm to SGLLC and needs to be resolved immediately.

The Post-Hearing Briefs provide no facts sufficient to meet the burden of proving that SGLLC should be subject to the extreme relief of receivership. The Receiver bases his position that SGLLC should be placed in receivership on three allegations. First, the Receiver cites to the volume of documented transactions between SGLLC, the Uncle Nearest Entities, the Non-Parties, and "Unknown Entities," with no analysis of the specific transactions themselves. The exhibits

include transactions not only between the Non-Parties and the Uncle Nearest Entities, but also transactions between the Non-Parties that do not involve the Uncle Nearest Entities and transactions between the Uncle Nearest Entities that do not involve the Non-Parties. The Receiver's apparent goal is to inflate the number to the greatest extent possible to create the false impression of commingling because he has no legitimate evidence of commingling. There is simply no basis from the number of transactions alone, most not even involving the Uncle Nearest Entities, to conclude that such transactions constitute commingling.

Second, the Receiver makes a vague statement, without any evidence in the record to support it, that the Non-Parties "share employees, bank accounts, and operational resources with Uncle Nearest." To be absolutely clear, there are absolutely no employees shared between Uncle Nearest and SGLLC – none. There is no evidence to support the Receiver's statement, and it is his burden to carry. Furthermore, SGLLC and Uncle Nearest do not share the same bank accounts. There is no evidence that SGLLC "shares" any operational resources with the Uncle Nearest Entities – rather, SGLLC provides storage at its warehouse for the Uncle Nearest Entities' raw materials at the fee rate of $6,500 per month. That is not sharing of operational resources. That is providing operational resources for a fee.

The Receiver's exhibits aggregating the number and amount of transactions, including transactions that don't even involve the Uncle Nearest Entities, do not support the assertion that the funds of the Non-Parties, or SGLLC specifically, have been commingled with the funds of the Uncle Nearest Entities. As an initial matter, as discussed in the SGLLC Brief, the Receiver has provided no analysis of the nature of the transactions between SGLLC and the Uncle Nearest Entities, and has not alleged that any of the transactions lacked a business purpose or were

unlawful. The fact that the Receiver can only support his commingling argument by aggregating the number of transactions underscores the lack of any legitimate evidence of commingling.

With respect to the specious aggregation exhibits, the Receiver provides none of the back-up documentation to support the raw numbers that he provides, so there is literally no way to assess whether the figures are accurate. Furthermore, it is unclear why the Receiver's exhibits don't tie to each other. The Receiver's Exhibit A-4 pp. 41-47 contains matrices that purport to be looking at the same data but have differing totals. For example, Receiver Exhibit A p. 41 purports to list all receipts and disbursements between the entities over the five-year period and totals the transactions at 498. Then Receiver Exhibit A-4 p. 42 also purports to list all of the receipts and disbursements between the entities over the same five-year period but totals the transactions at 434. It is impossible for the total transactions for the same five-year period between the same entities to be both 498 and 434. Similarly, comparisons of Receiver Exhibit A-4 p. 42 and p. 43, p. 44 and p. 45, and p. 46 and p. 47 have the same issues – none of them tie together even though they are purportedly looking at the same period of time for the same entities. Thus, the Receiver's Exhibit A-4 pp. 41-47 are clearly wrong and do not provide any meaningful evidence to support placing any of the Non-Parties into receivership.

Even assuming hypothetically that the figures in Receiver Exhibit A-4 pp. 41-47 are accurate (they clearly aren't), those figures show only a minimal number of monthly transactions between the Non-Parties and the Uncle Nearest Entities over the five-year period. **Exhibit 1** to this Response provides an analysis of Receiver Exhibit A-4 pp. 44-47, and shows that, if the analysis is limited to the transactions occurring between the Non-Parties and the Receivership Entities exclusively, the total transactions are 84 (at most) and equate to an average total of less

1.4 transactions per month between the Non-Parties and the Receivership entities.[5] That is 1.4 transactions per month between seven Non-Parties and five Receivership Entities. To break that down further, there are twelve total entities being analyzed (seven Non-Parties and five Receivership Entities), **so the total average identified transactions per month for each of the twelve entities is .12 – or less than one transaction <u>per year</u> per entity.** Even if the Receiver had proof that the transactions constitute "commingling" (he doesn't), that volume of transactions doesn't even come close to the volume that would be necessary to support the imposition of the extreme relief of receivership.[6]

**With respect to SGLLC specifically, the Receiver has identified only one transaction[7] between SGLLC and the Receivership Entities over five years.** Clearly, one transaction over five years is not sufficient to support a commingling or alter ego argument.

The Receiver has further not demonstrated that putting SGLLC in Receivership is necessary for any investigation he intends to undertake at the expense of Uncle Nearest. It should be noted that the Receiver and his professionals have now charged the estate more than $2.3 million to investigate this case and have found literally no legitimate evidence that would support a commingling or alter ego determination. Rather, the Receiver and Farm Credit simply assert that the number of transactions between the entities, with no analysis of any specific transactions, to support their position.

In sum, the Receiver and Farm Credit have failed to provide any legitimate evidence that SGLLC has commingled funds with those of the Uncle Nearest Entities or that SGLLC is an alter

---

[5] Again, the totals supplied by the Receiver are inconsistent.
[6] Further, **Exhibit 1** shows that Uncle Nearest was a net beneficiary of the transactions in the amount of approximately $17 million.
[7] The Receiver's Ex.A-4, p. 46-47 are inconsistent – one indicates zero total transactions and the other indicates one total transaction.

ego of the Uncle Nearest Entities. Clearly, the Receiver has not met his burden of proof. The pendency of this Motion to Clarify, where there is literally no evidence to support it, has caused and is continuing to cause serious and irreparable harm to SGLLC and the other Non-Parties.

WHEREFORE, SGLLC respectfully requests that the Court decline to expand the receivership to include SGLLC or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins (TN Bar No. 16036)
S. Marc Buchman (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for SGLLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Michael E. Collins*
Michael E. Collins