UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-38 |
| v. | ) ) | Judge Atchley |
| UNCLE NEAREST, INC., et al., | ) ) | Magistrate Judge Steger |
| Defendants. | ) ) ) | |

**RESPONSE OF GRANT SIDNEY, INC. RELATING TO
MOTION FOR CLARIFICATION OF RECEIVERSHIP ORDER
AND STATEMENT OF FARM CREDIT**

Grant Sidney, Inc. ("Grant Sidney"), by and through its undersigned counsel, provides this Response Brief with regard to the *Receiver's Motion for Clarification of Receivership Order* (the "Motion to Clarify")[1] and the *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "Farm Credit Statement"),[2] through which the Receiver and Farm Credit (collectively, the "Movants"), responding to the Post-Hearing Briefs submitted by the Receiver and Farm Credit (collectively, the "Post-Hearing Briefs").

The burden of proof on the issue of whether the Non-Parties, including Grant Sidney, should be placed in receivership is clearly on the Receiver and Farm Credit and the burden is high.[3] The federal courts have recognized that placing a company in receivership is an extreme form of

---

[1] Dkt. 41.
[2] Dkt. 44.
[3] *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005) (holding that party seeking to pierce corporate veil bears the burden of proof); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) ("The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief.") (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

1

relief justified in very limited circumstances.[4] Those circumstances are clearly not present in this case, and the Motion to Clarify never should have been filed prior to any investigation by the Receiver.

Neither the Receiver nor Farm Credit identifies any asset of the Receivership Estate held by Grant Sidney or any transfer that resulted in a benefit to Grant Sidney. The primary basis for the "commingling" argument made by the Receiver and Farm Credit are certain discrete transactions relating to financing during January to April 2025 all of which were fully known and countenanced by Farm Credit. At no time were any of the funds used to benefit Grant Sidney or any entity other than the Uncle Nearest Entities. The Schedule 1.1 of the Subordinated Credit Agreement, **which was created by Farm Credit**, identifies specifically the payments that were made by Grant Sidney on behalf of the Uncle Nearest Entities during the relevant period. The fact that the funds ultimately came from MP-Tenn, LLC ("MP-Tenn") is simply irrelevant to the question of whether there was commingling of the funds between Grant Sidney and the Uncle Nearest Entities.

"Commingling" requires that the funds of the companies be used interchangeably without adhering to corporate formalities. With respect to the funds at issue here, Grant Sidney never used the funds for its own benefit but merely held and disbursed the funds for the benefit of Uncle Nearest – this is absolutely undisputed. Grant Sidney thus functioned only as a *de facto* disbursing agent for payments to Uncle Nearest and its vendors. Since the funds were separately traceable and disbursed as intended for the benefit of Uncle Nearest, they were not mixed and do not constitute commingling or diversion of assets. It is also undisputed that Farm Credit was fully aware of the disbursement of the funds by Grant Sidney for Uncle Nearest's benefit because all of

---

[4] *See, e.g., Rochester MSA Bldg. Co. v. UMB Bank, N.A.*, 2022 U.S. Dist. LEXIS 6184, at *17 (D. Minn. 2022)(*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).

the disbursements were specifically identified in Schedule 1.1 of the Subordinated Credit Agreement – a document created by Farm Credit.

The undisputed facts show that all of the funds that were to be paid to or on behalf of the Uncle Nearest Entities by Grant Sidney as set forth in Schedule 1.1 were in fact paid exactly as directed. Indeed, Farm Credit's own filing accepts the indisputable premise that: "[t]he $20 million came in, and all of it went to Uncle Nearest or Uncle Nearest related entities or vendors."[5] The fact that the disbursements by Grant Sidney on behalf of Uncle Nearest were in accordance with Farm Credit's Schedule 1.1 is demonstrated also by **Exhibit 1**.

Farm Credit's own Schedule 1.1 reflects that the total amount disbursed exceeded the original loan proceeds. Schedule 1.1 to the Subordinated Credit Agreement — filed by Farm Credit with its original emergency request for appointment of a receiver — reflects total payments of $20,026,270 made on behalf of Uncle Nearest.[6] Thus, although $20 million was received from MP-Tenn, LLC, the documented payments to Uncle Nearest or its vendors during the relevant time period exceeded that amount.

The documented payments confirm that the funds were used solely for Uncle Nearest obligations and did not benefit Grant Sidney. There was no commingling because all of the funds received and disbursed by Grant Sidney as a *de facto* disbursing agent were used solely to fund Uncle Nearest, as reflected in Farm Credit's own Schedule 1.1 acknowledging that the funds went to Uncle Nearest or its vendors. In the absence of showing that the funds were used to benefit Grant Sidney or to the detriment of the Uncle Nearest entities, there is simply no basis to assert commingling.

---

[5] Farm Credit Post-Hearing Brief, p. 5.
[6] Dkt. 1, Ex. 9, p. 56.

The funds from this financing were never required to remain in any specific account, and the decision of Uncle Nearest to work with Grant Sidney as a *de facto* disbursing agent, to ensure the funds would be used for Uncle Nearest's intended purpose, did not violate any law and was not fraudulent. That Uncle Nearest was intending to use the funds for the payment of its legitimate operating liabilities is not a fraudulent intent – in fact it is exactly the opposite of that. Indeed, Uncle Nearest's management of the funds, with the assistance of Grant Sidney, which was expressly countenanced by Farm Credit in its Schedule 1.1 to the Subordinated Credit Agreement, resulted in the funds being used exactly as they were intended. **Exhibit 1** shows the precise correlation between the disbursements made by Grant Sidney on behalf of Uncle Nearest and the disbursements set forth in Schedule 1.1.

These transactions, that are fully consistent with the Subordinated Credit Agreement (Schedule 1.1), which Farm Credit required as part of the April 15, 2025 Forbearance Agreement, do not constitute commingling – the funds were never commingled with funds of Grant Sidney and were always separately accounted. Furthermore, neither the Receiver nor Farm Credit asserts any other basis for commingling or for Grant Sidney to be deemed an alter ego of any of the Uncle Nearest Entities.

The Receiver's assertion that Grant Sidney's overlooking of certain dormant bank accounts in responding to the bank records request creates a basis for putting Grant Sidney into receivership is ridiculous. The statements of the two accounts in question show that the two accounts were dormant since at least early 2021. The First National Bank of Middle Tennessee ("FNB") account, no. *7512, never had a deposit or a withdrawal and was closed on March 15, 2023. Literally, not a single transaction, period. That account was never used for any purpose. A copy of all bank statements relating to FNB Acct. *7512 is attached as **Exhibit 2**. Similarly, FNB account *6168

has not had any transaction since February 2021. Since February 2021, account *6168 has had an unchanged $372.00 balance. Fawn Weaver provided testimony that she had forgotten that these two accounts, which had not been used since early 2021, even existed.[7] A copy of all bank statements relating to FNB Acct. *6168 is attached as **Exhibit 3**. Thus, Grant Sidney's overlooking these dormant accounts is understandable and does not support the drastic relief of receivership.

Finally, the Receiver makes conclusory statements galore. The only true statement is that "all seven Related Entities are owned, managed, and controlled by Fawn and/or Keith Weaver." The rest is false. First, Grant Sidney does not share employees with the Uncle Nearest Entities, period. There is simply no evidence of sharing of employees because that has never happened. Grant Sidney is a holding company that has never had, or needed, employees.[8] Thus, the Receiver's assertion that the entities "share employees" clearly does not apply to Grant Sidney.

Second, Grant Sidney does not share bank accounts with Uncle Nearest, period. Each of the additional entities, including Grant Sidney, has separate bank accounts from the Uncle Nearest bank accounts. That is absolutely clear.

Third, Grant Sidney does not share operational resources of any kind with the Uncle Nearest Entities. There would be no need to share operational resources because Grant Sidney is a holding company, not an entity that conducts regular business operations.[9]

Accordingly, the factors identified by the Receiver for determining a "single enterprise" cannot apply to Grant Sidney.

In aggregating all of the Non-Parties and the Receivership entities, the Receiver notes nearly 500 "intercompany transfers," as if these were simply "transfers" for no business purpose

---

[7] Grant Sidney Post-Hearing Brief, Ex. 1, ¶¶ 34-35.
[8] Grant Sidney Post-Hearing Brief, Ex. 1, ¶ 40.
[9] Id.

other than to move funds between the companies. That characterization is absolutely false and misleading – these were transactions with legitimate business purposes, and fewer than twenty of the nearly 500 transactions identified by the Receiver involved Grant Sidney. Most were hospitality related at the Nearest Green Distillery. The Receiver does not identify any transfer involving Grant Sidney that resulted in funds being used for Grant Sidney's benefit or for the benefit of any of the Non-Parties. Each of the transfers, including those involving Grant Sidney, were supported by a legitimate purpose for the applicable transaction parties. Most of the identified transactions didn't even involve any of the Uncle Nearest Entities. Each of the additional entities has a business purpose separate and distinct from the operation of the Uncle Nearest Entities. So, boiled down, without the false assertions and mischaracterizations, the sole basis for seeking to put these additional entities into the Receivership is that they are owned or controlled by Fawn Weaver or Keith Weaver – which clearly is not a legitimate legal or factual basis to put any of these entities, including Grant Sidney, into receivership.

No fraud by Grant Sidney has been alleged with the particularity required for a federal pleading. The assertion that Uncle Nearest engaged in fraudulent conduct relating to the MP-Tenn transaction is not correct. Although the transactions relating to the MP-Tenn convertible notes were complicated, the end result is: (1) that MP-Tenn loaned $20 million dollars to Uncle Nearest and Uncle Nearest received the full benefit of the $20 million loan. The notes were structured as convertible instruments intended to convert to equity in 2030, at which time MP-Tenn would receive equity in Uncle Nearest with a corresponding surrender of shares by Grant Sidney; (2) the MP-Tenn loans did not impair in any way any of Farm Credit's collateral and did not prime any of Farm Credit's liens; and (3) the funds were used exactly as contemplated by Farm Credit as set forth in the Schedule 1.1 to the Subordinated Credit Agreement. Farm Credit has no standing to

6

4911-4925-... Case 4:25-cv-00038-CEA-CHS    Document 171    Filed 03/05/26    Page 6 of 11
PageID #: 7049

assert that Uncle Nearest acted fraudulently with respect to MP-Tenn and has no knowledge of the specific communications between Uncle Nearest and MP-Tenn relating to the transaction. MP-Tenn was fully aware of the circumstances underlying the convertible credit agreement and the intention was that the loan would be converted to equity and never have to be repaid. That would likely still be the case but for the Receivership.

The decision of Uncle Nearest to direct the funds received from MP-Tenn to Grant Sidney as disbursing agent was a proper exercise of business judgment made on the advice of legal and financial counsel.[10] Since the MP-Tenn funds were earmarked for certain expenditures, the use of a disbursing agent to ensure the funds were used for the required purpose was entirely appropriate, and the funds were disbursed exactly as required. Farm Credit's further insinuation that a Company managing for tax liability is improper is simply naïve. It is entirely appropriate for a Company to consider the tax implications of transactions in advance and to structure transactions to reduce tax liabilities where prudent. In this case, the structure of the transaction allowed Uncle Nearest to receive $20 million rather than the approximately $11 million it would have received had the transfer been structured as a direct sale of stock, so the transaction structure benefited both Uncle Nearest and Farm Credit.[11]

While the transactions at issue were complex, they were undertaken in consultation with legal and financial advisors and made solely for the benefit of Uncle Nearest and its creditors.[12] Farm Credit has produced no evidence of any fraudulent intent by Uncle Nearest, its management team, or Grant Sidney. In the absence of fraud pleaded with particularity, Farm Credit's allegations of fraudulent conduct should be ignored, struck, and dismissed.

---

[10] Tr. 251: 19-25.
[11] Tr. 250: 9-19.
[12] Tr. 251: 19-25.

7

4911-4925-... Case 4:25-cv-00038-CEA-CHS   Document 171   Filed 03/05/26   Page 7 of 11
PageID #: 7050

The Receiver's exhibits aggregating the number and amount of transactions, including transaction that don't even involve the Uncle Nearest Entities, do not support the assertion that the funds of the Non-Parties, or Grant Sidney specifically, have been commingled with the funds of the Uncle Nearest Entities. The fact that the Receiver can only support his commingling argument by aggregating the number of transactions underscores the lack of any legitimate evidence of commingling.

With respect to the specious aggregation exhibits, the Receiver provides none of the back-up documentation to support the raw numbers that he provides, so there is literally no way to assess whether the figures are accurate. Furthermore, it is unclear why the Receiver's exhibits don't tie to each other. The Receiver's Exhibit A-4 pp. 41-47 contains matrices that purport to be looking at the same data but have differing totals. For example, Receiver Exhibit A p. 41 purports to list all receipts and disbursements between the entities over the five-year period and totals the transactions at 498. Then Receiver Exhibit A-4 p. 42 also purports to list all of the receipts and disbursements between the entities over the same five-year period but totals the transactions at 434. It is impossible for the total transactions for the same five-year period between the same entities to be both 498 and 434. Similarly, comparisons of Receiver Exhibit A-4 p. 42 and p. 43, p. 44 and p. 45, and p. 46 and p. 47 have the same issues – none of them tie together even though they are purportedly looking at the same period of time for the same entities. Thus, the Receiver's Exhibit A-4 pp. 41-47 are clearly wrong and do not provide any meaningful evidence to support placing any of the Non-Parties into receivership.

Even assuming hypothetically that the figures in Receiver Exhibit A-4 pp. 41-47 are accurate (they clearly aren't), those figures show only a minimal number of monthly transactions between the Non-Parties and the Uncle Nearest Entities over the five-year period. **Exhibit 4** to

this Response provides an analysis of Receiver Exhibit A-4 pp. 44-47, and shows that, if the analysis is limited to the transactions occurring between the Non-Parties and the Receivership Entities exclusively, the total transactions are 84 (at most) and equate to an average total of less 1.4 transactions per month between the Non-Parties and the Receivership entities.[13] That is 1.4 transactions per month between seven Non-Parties and five Receivership Entities. To break that down further, there are twelve total entities being analyzed (seven Non-Parties and five Receivership Entities), **so the total average identified transactions per month for each of the twelve entities is .12 – or less than one transaction <u>per year</u> per entity. This doesn't even come close to commingling.**[14]

The Receiver has not shown that placing Grant Sidney in receivership is necessary to safeguard any assets of the Receivership Estate. Indeed, the Receiver has not identified a single asset of the Receivership Estate that is held by or traceable to Grant Sidney. The Receiver's speculation regarding unrelated entities or properties likewise does not identify any asset of the Receivership Estate held by Grant Sidney. The Receiver has also not provided any evidence that he is unable to investigate whatever he needs to investigate absent the extreme relief of receivership. The Receiver has not even attempted to obtain any needed documentation through normal discovery channels.

---

[13] Again, the totals supplied by the Receiver are inconsistent.
[14] Further, **Exhibit 4** shows that Uncle Nearest was a net beneficiary of the transactions in the amount of approximately $17 million.

WHEREFORE, Grant Sidney, Inc. respectfully requests that the Court decline to expand the receivership to include Grant Sidney or its assets and grant such other and further relief as is appropriate.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
Michael E. Collins (TN Bar No. 16036)
S. Marc Buchman (TN Bar No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: 615-244-0030
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Grant Sidney, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, the foregoing document was served on all parties registered to receive electronic notice via the Court's CM/ECF system.

> */s/ Michael E. Collins*
> Michael E. Collins