IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, FAWN WEAVER and KEITH WEAVER, | ) ) ) ) ) | Case No. 4:25-cv-38<br><br>Judge Atchley<br><br>Magistrate Judge Steger |
| Defendants. | ) ) | |

**RESPONSE OF FARM CREDIT MID-AMERICA, PCA
TO THE SUPPLEMENTAL BRIEFS OF THE ADDITIONAL ENTITIES AND IN
SUPPORT OF THE RECEIVER'S SUPPLEMENTAL BRIEF IN SUPPORT OF THE
MOTION FOR CLARIFICATION**
[Relates to Dkt. No. 41]

Farm Credit Mid-America, PCA ("FCMA" or the "Lender") submits this response (the "Response") to the supplemental briefs (collectively, the "Additional Entities' Supplemental Briefs")[1] to *Motion for Clarification of Receivership Order* (the "Entity Clarification Motion")[2] filed by Phillip G. Young, Jr. (the "Receiver") filed by the following (collectively, the "Additional Entities"): Grant Sidney, Inc. ("Grant Sidney"), Shelbyville Grand, LLC ("SGLLC") Shelbyville Barrel House BBQ, LLC, Quill & Cask Owner, LLC, 4 Front Street, LLC, Nashwood, Inc., and Humble Baron, Inc.

## INTRODUCTION

1. As an initial matter, while FCMA continues to support the Entity Clarification

---

[1] Dkt. Nos. 153-156, 159, 160.
[2] Dkt. No. 41.

1

Motion, FCMA is not the movant and bears no burden in connection with the Entity Clarification Motion. Any burden rests with the Receiver and arguments in the Additional Entities' Supplemental Briefs to the contrary are incorrect. Further, the Additional Entities continue to egregiously mischaracterize both the Grant Sidney transaction and FCMA's knowledge of the details. Lastly, putting an end to these unmeritorious filings is in the best interests of the receivership estate, Uncle Nearest, creditors, and other stakeholders. Without the constant flurry of filings necessitating responses and hearings, the Receiver can focus his full attention on managing the receivership estate, operating Uncle Nearest efficiently and preserving assets. Accordingly, FCMA maintains that the receivership should be expanded to include the Additional Entities as Receivership Assets[3] due to the extensive evidence of commingling both on the record and presented at the February 9, 2026, hearing (the "Combined Hearing").

## ARGUMENT

### A. FCMA bears no burden in connection with the Entity Clarification Motion.

2. The Additional Entities each argue that FCMA bears the burden of piercing the corporate veil to prove that the entities are alter egos of Uncle Nearest under Tennessee law.[4] This argument is incorrect. The party wishing to pierce the corporate veil bears the burden of proving facts sufficient to justify piercing the corporate veil.[5] The Receiver, not FCMA, filed the Entity Clarification Motion. As a result, while it does not bear the burden of proof, FCMA hopes that its pleadings lend further support to the Receiver in meeting his burden.

3. FCMA emphasizes the Receiver's representation that he "[has] concluded that the

---

[3] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion").

[4] Dkt. No.152 ¶ 25; Dkt. No. 153 ¶ 26; Dkt. No. 154 ¶ 34; Dkt. No. 155 ¶ 29; Dkt. No. 156 ¶ 28; Dkt. No. 159 ¶ 47; Dkt. No. 160 ¶ 58.

[5] *Oceanics Sch., Inc. v. Barbour,* 112 S.W.3d 135, 140 (Tenn. App. 2003) (citing *Schlater v. Haynie,* 833 S.W.2d 919 (Tenn. Ct. App. 1991), *abrogated on other grounds by*, *Youree v. Recovery House of E. Tennessee, LLC,* 705 S.W.3d 193 (Tenn. 2025)).

Company operated in practice as a single enterprise with [the Additional Entities]".[6] The Receiver's conclusion was formed after a review of records showing that "the [Additional Entities] have been substantially commingled with the Company, including through repeated intercompany transfers and the provision of non-cash benefits[.]"[7] The Receiver and his professional advisors have identified $21,560,562.00 in intercompany transfers and $22,263,267 in payments by the Additional Entities on behalf of receivership entities.[8] The Receiver characterizes the financial activity between and amongst the entities as lacking "customary separateness"[9] and states that they operated to "essentially pool their funds" and transfer money to one another as needed.[10]

## B. The mischaracterization of Grant Sidney capital infusions continues.

4. Grant Sidney and Fawn Weaver ("Ms. Weaver") continue to mischaracterize the "sale of approximately $20 million of Ms. Weaver's personal shares"[11] and now Ms. Weaver declares that FCMA knew of the source of the funds (which it did not) Grant Sidney infused into Uncle Nearest in early 2025. FCMA permitted what it believed to be a loan from Grant Sidney to Uncle Nearest to ensure continued operation and debt repayment. FCMA required and insisted upon a subordination agreement to confirm that any loan other than FCMA's debt would be subordinate to the FCMA debt. Though Grant Sidney argues the Subordinated Credit Agreement evidences separate legal existence between it and Uncle Nearest, before its execution, Grant Sidney loaned $12,526,270.00 to Uncle Nearest over the course of two months in 15 separate transactions *without any written agreement*.[12]

5. Despite fully admitting that Ms. Weaver moved funds from Uncle Nearest to Grant

---

[6] Receiver's Ex. A ¶ 7.
[7] *Id*. ¶ 10.
[8] *Id*. ¶ 13.
[9] *Id*. ¶ 19.
[10] Dkt No 124 at 4.
[11] Dkt. No. 160 ¶ 17; Dkt. No. 160-1 ¶¶ 14-19, 27-28.
[12] Subordinated Credit Agreement, Schedule 1.1, Receivership Hr'g Pl.'s Ex. 10.

Sidney to conceal assets from FCMA, the Weaver Parties now seek to recharacterize the transactions. In the *Declaration of Fawn Weaver Regarding Motion to Clarify Opposition of Grant Sidney, Inc.* (the "Fawn Weaver Declaration"),[13] Ms. Weaver misrepresents that "[t]he structure of the funding through the Grant Sidney account was known to and approved by Farm Credit."[14] Ms. Weaver further misrepresents that FCMA was "fully aware of and consented to the transaction being made through Grant Sidney."[15] Ms. Weaver states the account Uncle Nearest used to effectuate the transaction was "subject to Farm Credit's monitoring and full visibility."[16] The Weaver Parties attempt to imply (incorrectly) that FCMA was in no way misled at the time. FCMA was considerably misled.

6. These assertions ignore many omissions on the part of Ms. Weaver. Ms. Weaver and Grant Sidney omit that FCMA (a) was not made aware of the loan from MP-Tenn, LLC,[17] (b) was not made aware of the "new Uncle Nearest Business Money Market Account (Account No. ***873)[18] and (c) did not have access to or "full visibility"[19] into the Grant Sidney Account No. ***881 at the time of the Forbearance Agreement. The evidence shows that the visibility Ms.

---

[13] Dkt. No. 160-1.
[14] *Id.* ¶ 27.
[15] *Id*.
[16] *Id*. ¶ 28.
[17] Hr'g Tr. 250:5-25; 251:1-24 (testifying about the MarcyPen loan in general, and specifically in the context of concealing funds from FCMA).
[18] Dkt No 160-1 ¶ 22.
[19] *Id.* ¶ 27. A true and accurate copy of the email dated May 28, 2025, in which Ms. Weaver "reconfirm[s] that none of the accounts listed [including the CalPrivate account ending in ***881] fall under the Forbearance Agreement, nor are they connected to any businesses included in the forbearance terms" is attached hereto as **Plaintiff's Supplemental Response Exhibit 6**. A true and accurate copy of the email dated May 9, 2025, from Riveron requesting confirmation from Uncle Nearest of the full universe of accounts based on account information Uncle Nearest previously provided to Riveron is attached hereto as **Plaintiff's Supplemental Response Exhibit 7**. ("We have included all accounts we have previously identified.") It is clear Riveron had limited information regarding the CalPrivate account ending in ***881 and was not even certain as to the owner of the account. In Exhibit 7, there was no information as to any account ending in ***873. Moreover, true and accurate copies of emails requesting missing CalPrivate account information, including Account ending in ***873 are attached hereto as **Plaintiff's Supplemental Response Exhibits 9 and 10**. The April 15, 2025, Forbearance Agreement required the Loan Parties to deliver deposit account control agreements for all of their deposit accounts, which was never done. Receivership Hr'g. Pl's. Ex. 48, Notice of Default and Reservation of Rights, dated June 26, 2025, at Exhibit A.

Weaver now claims that FCMA possessed never existed.[20] Account No. ***873 and Account No. ***881 are precisely the two accounts Uncle Nearest used to hide its receipt of $20 million in third party loan proceeds and then used them to move those proceeds outside of Uncle Nearest to avoid FCMA's lien on the funds. FCMA was told that the money was coming to Uncle Nearest pursuant to an approved and contractually subordinated loan from Grant Sidney.

7. FCMA was not aware that the money was in fact proceeds from the MarcyPen (as such term is defined in the *Supplemental Brief of Farm Credit Mid-America, PCA in Support of Response of Farm Credit Mid-America, PCA to Motion to Reconsider*) convertible note to Uncle Nearest that Uncle Nearest moved to Grant Sidney to give the false appearance of a contractually approved *loan* Grant Sidney funded. Neither Ms. Weaver, Grant Sidney, nor Uncle Nearest ever disclosed to FCMA that Uncle Nearest, Inc. in fact incurred $20 million of *debt* owed to MarcyPen and transferred the money to Grant Sidney to pay it back to Uncle Nearest.

8. The nature of the MarcyPen transaction and the agreements documenting them are not changed by what happened to the proceeds of the MarcyPen Notes (as such term is defined in *Supplemental Brief of Farm Credit Mid-America, PCA in Support of Response of Farm Credit Mid-America, PCA to Motion to Reconsider*) after Uncle Nearest, Inc. received them. Whatever protestations Ms. Weaver makes now to the contrary, do not change the fact that MarcyPen loaned money to Uncle Nearest, Inc., not Grant Sidney. Ms. Weaver, who exercises complete control over Uncle Nearest and Grant Sidney, moved the proceeds from Uncle Nearest to Grant Sidney "to make sure that $20 million coming in could not be snatched by [FCMA]."[21]

9. Ms. Weaver's own testimony shows that Grant Sidney—the largest shareholder of

---

[20] A true and accurate copy of a series of email correspondence showing that Riveron did not have information about these accounts as late as May 31, 2025 (months after Ms. Weaver asserts that FCMA had "full visibility") is attached hereto as **Plaintiff's Supplemental Response Exhibit 10**.
[21] Hr'g Tr. 251:23-24.

Uncle Nearest—whose sole stockholder is also the CEO of Uncle Nearest (Ms. Weaver) and exercises complete control of both entities,[22] orchestrated and executed a scheme to perpetuate the violation of Uncle Nearest's legal duty, or to commit a dishonest and unjust act in contravention of FCMA's rights.[23] Through that scheme, Grant Sidney and Ms. Weaver surreptitiously executed an agreement that obfuscated the facts and intentionally placed the proceeds of the loan outside the scope of FCMA's first position security interests and liens, thereby injuring FCMA through conversion of its collateral.[24]

### C. There are questions regarding amounts transferred to Shelbyville Grand

10. The *Supplemental Brief of Shelbyville Grand, LLC to Motion for Clarification of Receivership Order and Statement of Farm Credit* (the "Shelbyville Grand Supplemental Brief")[25] states that SGLLC provides inventory storage services for Nearest Green Distillery.[26] FCMA does not dispute this, however additional facts alleged in the Shelbyville Grand Supplemental Brief raise questions as to whether FCMA was provided inaccurate information about the entity prior to the receivership.

11. Specifically, SGLLC alleges that Uncle Nearest paid SGLLC $130,000 on July 29, 2025 – one day after this proceeding was initiated – for "20 months of outstanding rental fees due and owing from Nearest Green Distillery."[27] According to the June 12, 2025, accounts payable aging report, only $13,000 was due.[28] This payment is inconsistent with the June 12, 2025,

---

[22] Under Tennessee law corporate veil piercing is allowed where control over a corporation has "been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights." *Kutty v. U.S. Dep't of Lab.*, 764 F.3d 540, 552–53 (6th Cir. 2014) (citing *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo,* 578 S.W.2d 625, 632 (Tenn.1979)).
[23] *Id.* at 211.
[24] *Id.* at 211.
[25] Dkt. No. 153.
[26] *Id.* ¶ 4.
[27] *Id.* ¶ 6.
[28] Dkt. No. 131-5 at 17.

accounts payable aging report submitted to FCMA that reflected only $13,000 owed at that time.[29] Shelbyville Grand did not submit any financial documentation evidencing the $130,000 payment. Rather, it relies on the *Declaration of Keith Weaver Regarding Motion for Clarification of Order Appointing Receiver* and simply restates the statement it relied upon.[30] The inferences drawn from this questionable observation lead to a few conclusions. First, the purported $130,000 was not a payment for storage at all and instead was a transfer of funds from Uncle Nearest to Shelbyville Grand disguised as a storage payment—commingling. Second, this is reflective of the lack of financial discipline maintained within Uncle Nearest pre-receivership showing that the records and books were in disarray.

### D. There are questions regarding Quill and Cask, LLC.

12. As FCMA explained in its *Statement of Farm Credit Mid-America, PCA in Support of Motion for Clarification of Receivership Order* (the "FCMA Supporting Statement"), it learned of Quill and Cask Owner, LLC ("Quill and Cask") through its own investigations after having been presented with a barrel Purchase and Sale Agreement ("PSA") in early 2025 that identified the buyer as "Q and Cask, Inc."[31] When FCMA discovered the existence of the similarly-named Quill and Cask, Uncle Nearest's financial advisor informed FCMA that the two entities were not the same.[32]

13. In response to the Entity Clarification Motion and the FCMA Supporting Statement, Quill and Cask stated at that time "it has no connection to Uncle Nearest other than having made

---

[29] *Id.*
[30] Dkt. No. 153-1 ¶ 6 (citing 153-1 ¶ 48); *Compare id.* ¶ 6 ("The transactions between the Uncle Nearest Entities and SGLLC all relate to the storage fees due and payable. The $130,000 payment from Uncle Nearest to SGLLC on July 29, 2025, was in payment of 20 months of outstanding rental fees due and owing from Nearest Green Distillery.") *with id.* ¶ 48 ("The transactions between the Uncle Nearest Entities and SGLLC all relate to the storage fees due and payable. The $130,000 payment from Uncle Nearest to SGLLC on July 29, 2025, was in payment of 20 months of outstanding rental fees due and owing from Nearest Green Distillery.").
[31] Dkt. No. 44 ¶¶ 10-12.
[32] *Id.*

barrel purchases from Uncle Nearest."[33] The entity further alleged that FCMA was attempting to mislead the Court by stating that FCMA was fully aware of Mr. Weaver's connection to Q and Cask, Inc.[34] To substantiate this allegation, Quill and Cask asserted that FCMA was provided with a copy of the PSA bearing a signature line for Mr. Weaver.[35] FCMA feels it necessary to respond to this allegation and submits the email from Uncle Nearest's financial advisor that transmitted the PSA to FCMA.[36] The PSA does not identify Mr. Weaver and, as noted, FCMA specifically inquired at the time as to whether there was any connection to the proactively discovered Quill & Cask and was advised there was none.

14. The examples highlighted above are illustrative of why the Court should include the Additional Entities within the receivership and are by no means exhaustive. FCMA's focus on these instances should not be construed as an indication that FCMA does not believe all Additional Entities should be included in the receivership. Indeed, FCMA maintains that these illustrations exhibit that all Additional Entities should be included in the receivership.

      E. **Continued litigation over the receivership's existence is unnecessarily draining the receivership estate and Uncle Nearest's assets.**

15. Pursuant to the *Order Appointing Receiver* (the "Receivership Order"),[37] the Receiver's task is to "preserve, . . . protect, and manage the Receivership Assets"[38]—an undertaking that requires the Receiver's full attention and resources. Thus far, the continuous filings and hearings initiated by Grant Sidney and Ms. Weaver required the Receiver to both

---

[33] Dkt. No. 57 ¶ 2. FCMA notes that now Quill and Cask's position is that "[i]t has no connection to Uncle Nearest other than having made an equity investment in Uncle Nearest[.]" Dkt. No. 155 ¶ 3.
[34] Dkt. No. 57 ¶ 7.
[35] *Id*. FCMA notes that Quill and Cask's most-recent pleading asserts that the PSA was provided to Farm Credit in April 2024. Dkt. No. 155 ¶ 6. This is not accurate, as FCMA was not informed of the potential barrel sale to Q and Cask until January 2025, and the PSA was not provided to FCMA until February 2025.
[36] A true and correct copy of the email from Uncle Nearest's financial advisor transmitting the PSA is attached hereto as **Plaintiff's Supplemental Response Exhibit 8**.
[37] Dkt. No. 39.
[38] *Id.* ¶10.

preserve the assets of the receivership estate and simultaneously defend the receivership estate resulting in a drain on assets and time spent that could otherwise be directed towards operating the receivership estate.

16. All of the time and expenses spent in connection with the Entity Clarification Motion and the *Motion to Reconsider the Memorandum Opinion and Order* [Dkt. 32] *and Order Appointing Receiver* [Dkt. 39][39] is cannibalizing the receivership assets. Every dollar spent responding to Grant Sidney's, Ms. Weaver's or the Additional Entities' motions and requests for hearing is a dollar that could otherwise be used toward operating expenses and/or directed toward recovery for creditors and equity holders.

## CONCLUSION

The Additional Entities should be brought within the scope of this receivership. Absent the inclusion of the Additional Entities, the Receiver cannot fully realize the receivership's purpose. Accordingly, the Court should grant the Entity Clarification Motion and include the Additional Entities within the receivership estate so that the Receiver can continue his role of managing all of the receivership assets.

## PRAYER

WHEREFORE, for the reasons set forth above, Plaintiff Farm Credit Mid-America, PCA respectfully requests that this Court (i) enter an Order granting the Entity Clarification Motion in regard to the Additional Entities, and (ii) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/Erika R. Barnes
Erika R. Barnes (TN Bar No. 028628)

---

[39] Dkt. No. 151.

9

218407351_9
Case 4:25-cv-00038-CEA-CHS    Document 174    Filed 03/05/26    Page 9 of 11
PageID #: 7197

STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

- and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
 dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

Dated: March 5, 2026

10

# CERTIFICATE OF SERVICE

I certify that on March 5, 2026, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's ECF/CMF system, via U.S. Mail and electronic mail upon the following:

Michael E. Collins
S. Marc Buchman
Manier & Herod, P.C.
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
mcollins@manierherod.com
mbuchman@manierherod.com

Uncle Nearest, Inc.
600 N. Main St.
Shelbyville, TN 38106

Uncle Nearest Real Estate Holdings, LLC
3125 Highway 231 N.
Shelbyville, TN 37160

Phillip G. Young, Jr.
Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
phillip@thompsonburton.com
justin@thompsonburton.com

Lucas A. Davidson, Esq
Oren Bitan
Tennessee Distilling Group, LLC
1 Music Circle South, Suite 300
Nashville, TN 37203
ldavidson@buchalter.com
obitan@buchalter.com

/s/Erika R. Barnes