FARM CREDIT MID-AMERICA, PCA,   )
       )
   **Plaintiff,**   )
       )
**v.**   )
       )
UNCLE NEAREST, INC., NEAREST )     **Case No. 4:25-cv-38**
GREEN DISTILLERY, INC., UNCLE )
NEAREST REAL ESTATE HOLDINGS, )     **Judge Atchley**
LLC, FAWN WEAVER and KEITH )
WEAVER,   )     **Magistrate Judge Steger**
       )
   **Defendants.**   )

## JOINDER OF FARM CREDIT MID-AMERICA, PCA TO THE RECEIVER'S REPLY TO RESPONSE IN OPPOSITION TO THE RECEIVER'S EXPEDITED MOTION TO SELL REAL AND PERSONAL PROPERTY IN MARTHA'S VINEYARD
[Relates to Dkt. No. 147]

Pursuant to the Court's Order[1] establishing the briefing schedule to the *Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* (the "MV House Sale Motion")[2] Farm Credit Mid-America, PCA ("FCMA" or the "Lender") submits this joinder (the "Joinder") to the *Receiver's Reply to Response in Opposition to the Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* (the "Reply")[3] with respect to the response (the "Response") of Grant Sidney, Inc. ("Grant Sidney"), Fawn Weaver ("Ms. Weaver"), and Keith Weaver ("Mr. Weaver" and together with Ms. Weaver, the "Weavers", and the Weavers collectively with Grant Sidney the "Weaver Parties").[4]

---

[1] Dkt. No. 150.
[2] Dkt. No. 147.
[3] Dkt. No. 175.
[4] Dkt. No. 163.

1

## INTRODUCTION

1.    FCMA has a lien on the net cash proceeds of the sale of the Martha's Vineyard property (the "MV Property")[5] because the MV Property was purchased from proceeds of the FCMA Loans.   The fact that FCMA loaned $2,300,000 to Uncle Nearest to purchase the MV Property is undisputed.  Accordingly, the net cash proceeds of the sale of the MV Property are subject to FCMA's liens.

## BACKGROUND

### *The Term Loan*

2.    As discussed in FCMA's Verified Complaint, in July of 2022, among other loans, FCMA provided a term loan in the original principal amount of $20,000,000 to Uncle Nearest (the "Initial Term Loan").

3.    On March 30, 2023, upon request by Uncle Nearest, FCMA entered into that certain Amendment No. 4, pursuant to which FCMA provided an additional term loan in the amount of $2,300,000 (the "MV Property Loan").

4.    Uncle Nearest requested the MV Property Loan to, among other things, purchase the MV Property.  FCMA does not dispute that Uncle Nearest presented the purchase of the MV Property to FCMA as a marketing opportunity, which would enable Uncle Nearest to host branding events and rent the property to other distributors for co-branding opportunities.  Uncle Nearest represented, and agreed in Amendment No. 4,[6] that the proceeds of the MV Property Loan made to *Uncle Nearest* would be used by *Uncle Nearest* to buy the MV Property.

5.    In late 2024, however, FCMA learned that an entity that is not (and never has been)

---

[5] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion").
[6] Dkt. No. 1-5.

a Borrower or other Loan Party, UN HOUSE MV LLC ("UN House MV"), was used to purchase the MV Property **using proceeds from the MV Property Loan**, which violates Section 6.11[7] of the Credit Agreement.[8]

**ARGUMENT**

**A.  The MV Property was transferred in violation of the Credit Agreement.**

6.      Although FCMA was aware that Uncle Nearest was acquiring the MV Property, it did not anticipate that Uncle Nearest would transfer the property in violation of the Credit Agreement.  In Amendment No. 4, FCMA loaned money to Uncle Nearest for the sole purpose of purchasing the MV Property.[9]  Additionally, as set forth in FCMA's Verified Complaint, Uncle Nearest did not purchase the property in its name.  Instead, it used an undisclosed new entity (UN House MV) to take title to it and then, Uncle Nearest subsequently mortgaged it to another lender.

7.      In further violation of Amendment No. 4 and the Credit Agreement, Uncle Nearest did not inform FCMA that Uncle Nearest had not designed the transaction to issue title of the MV Property to Uncle Nearest.  FCMA did not have any discussion of ordinances or regulations that required Uncle Nearest to do otherwise.  Moreover, Uncle Nearest did not disclose that it was mortgaging the MV Property, and Uncle Nearest's actions with respect to the MV Property breached the Credit Agreement.  Despite Ms. Weaver's statement that "[t]he transaction and all

---

[7] Section 6.11 of the Credit Agreement requires Uncle Nearest to:

> (i)      [u]se the proceeds of the Revolving Credit Facility and the Term Loan Facility for general corporate purposes, including working capital, capital purchases and refinancing of certain Indebtedness as contemplated by Section 4.1, not in contravention of any Law or of any Loan Document and (ii) *use the proceeds of the portion of the Term Loan Facility advanced on the Amendment No. 4 Effective Date to purchase the fee-owned real property interest as discussed with the Administrative Agent*. (emphasis added).

[8] As amended by that certain Amendment No. 9 to Credit Agreement dated September 10, 2025, and that certain Amendment No. 10 to Credit Agreement dated November 19, 2025.

[9] *See infra* n.6.

3

relevant details regarding the same were timely disclosed to Farm Credit,"[10] FCMA only learned what actually happened through its own investigation and through no disclosure from Uncle Nearest.[11]

8. The Credit Agreement required the purchase to be made by Uncle Nearest or a subsidiary. In order for the funds to be moved to a subsidiary, the subsidiary would have to be a Borrower or a Guarantor under the Credit Agreement, or the investment must fit within the basket in Section 7.3(h) of the Credit Agreement which allows up to $250,000 in investments. Of course, that basket could have had no capacity at the time if it had already been tapped for other purposes – but in any case, the basket wasn't large enough for the MV House purchase. Nevertheless, the funds were moved from Uncle Nearest to UN House MV in violation of the negative covenants in the Credit Agreement. Even if the funds were moved via a loan from Uncle Nearest to UN House MV in violation of the Credit Agreement, then such loan is nonetheless an asset of Uncle Nearest and is therefore FCMA's Collateral.

**B. FCMA has a lien on the net cash proceeds of the sale of the MV Property.**

9. As the Receiver correctly stated, FCMA has an interest in the proposed $900,000 in sale proceeds. The relationship between UN MV House and Uncle Nearest is unclear, but the fact that FCMA has a claim with respect to the proceeds of the sale of the MV Property is undisputed. FCMA has a lien on substantially all of Uncle Nearest's assets, including a lien on cash. Therefore, any amounts to which Uncle Nearest is entitled from the sale of the MV Property

---

[10] Dkt. No. 151-1 ¶ 25.

[11] The Weaver Parties make much of the fact that FCMA did not require a mortgage on the property. It is not uncommon for lenders to forego a contractual lien on a borrower's property when the lender has the benefit of a "negative pledge" covenant like the one found in Section 7.1 of the Credit Agreement. Such a covenant prohibits the granting of liens on borrower property unless expressly permitted by the Credit Agreement. Additionally, providing a freely assignable purchase contract in Mr. Weaver's name prior to Amendment No. 4 does not demonstrate that FCMA knew the property would be titled in the name of UN MV House. Indeed, an assignment of that contract was necessary for Uncle Nearest to comply with the terms of Amendment No. 4.

4

218877311_7

are proceeds of FCMA's Collateral.

## CONCLUSION

What is certain is that FCMA has a lien on the proceeds generated from the sale of the MV Property. As such, the Court should approve the distribution of the proposed $900,000 in sale proceeds from the MV Property to FCMA.

## PRAYER

**WHEREFORE**, for the reasons set forth above, Plaintiff Farm Credit Mid-America, PCA respectfully requests that this Court (i) enter an Order granting the MV House Sale Motion, and (ii) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

 /s/ Erika R. Barnes
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email: ebarnes@stites.com

- and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Telephone: (713) 353-6661
Email: dliggins@mcguirewoods.com
         dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email: ashipley@mcguirewoods.com

5

*Attorneys for Farm Credit Mid-America, PCA*

Dated: March 10, 2026

218877311_7

## CERTIFICATE OF SERVICE

I certify that on March 10, 2026, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's ECF/CMF system, via U.S. Mail and electronic mail upon the following:

Michael E. Collins
S. Marc Buchman
Manier & Herod, P.C.
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
mcollins@manierherod.com
mbuchman@manierherod.com

Phillip G. Young, Jr.
Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
phillip@thompsonburton.com
justin@thompsonburton.com

Uncle Nearest, Inc.
600 N. Main St.
Shelbyville, TN 38106

Lucas A. Davidson, Esq
Oren Bitan
Tennessee Distilling Group, LLC

Uncle Nearest Real Estate Holdings, LLC
3125 Highway 231 N.
Shelbyville, TN 37160

1 Music Circle South, Suite 300
Nashville, TN 37203
ldavidson@buchalter.com
obitan@buchalter.com

/s/ Erika R. Barnes