| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT FAWN WEAVER'S RESPONSE IN OPPOSITION TO THE
RECEIVER'S EXPEDITED MOTION FOR SANCTIONS**

Defendant Fawn Weaver ("Ms. Weaver"), through her undersigned counsel, submits this Opposition to the Receiver's Expedited Motion for Sanctions [DE 178] (the "Motion"), as follows:

**A.     Preliminary Statement**

1.     The Motion seeks punitive monetary sanctions based on a disputed legal premise—namely, that Ms. Weaver's Chapter 11 filings on behalf of the receiver-appointed entities were "unauthorized" and per se sanctionable—yet it does not meaningfully analyze the governing law, does not identify the sanctioning authority being invoked with precision, and does not supply the findings the Sixth Circuit requires before a court may exercise its inherent power to impose monetary sanctions.  Accordingly, the Motion should be denied.

**B.     Introduction**

2.     The Receiver asks this Court to impose immediate, severe monetary sanctions (proposed: $75,000) against Ms. Weaver and potentially her counsel based on (i) her execution and filing of Chapter 11 petitions for three entities, and (ii) related public statements. But the Motion does not cite any Sixth Circuit authority establishing that Ms. Weaver's conduct was

plainly unlawful, frivolous, undertaken in bad faith, or otherwise "beyond the pale" as required for inherent-power sanctions. Instead, it assumes its conclusion: that the Receivership Order categorically and exclusively precluded any filing of a bankruptcy petition by anyone other than the Receiver.

3.     That leap is fatal. In the Sixth Circuit, inherent-power sanctions demand restraint and require proof of bad faith or conduct tantamount to bad faith—not merely conduct the Receiver views as contrary to his preferred interpretation of the Receivership Order. Where the disputed conduct is at least colorable or plausibly lawful under existing legal authority, sanctions are improper. Accordingly, regardless of the outcome of the bankruptcy court's review of the bankruptcy petitions, Ms. Weaver's actions in signing the bankruptcy petitions was not unlawful or frivolous and was undertaken only after review of the status of the applicable law by several sets of experienced counsel.

4.     It should be noted that the conduct complained of by the Receiver is a court filing in the Eastern District of Tennessee bankruptcy court. This is not a situation where any action was taken directly against property of the Companies. Indeed, the filing of the bankruptcy petitions did not immediately cause any divesting of control over the assets by the Receiver. Further, this Court specifically suggested to the Parties that this case should be in bankruptcy court in conjunction with the hearing held on February 9, 2026. The signing and filing of the bankruptcy petitions, effectively in the same court, where  the case law on the subject provides a colorable basis for the conclusion that the Receivership Order does not preclude the filing by the Company's Directors, does not justify the imposition of sanctions under any applicable standard.

**C.** **Applicable Sixth Circuit Case Law Appears to Permit the Bankruptcy Filing Notwithstanding the Receivership Order**

5.     In the recent decision of *In re 530 Donelson, LLC*, 660 B.R. 887 (Bankr. M.D. Tenn. 2024), the United States Bankruptcy Cour for the Middle District of Tennessee held:

> This Court is bound by clear Sixth Circuit precedent determining the effect of receivership orders on a company's and its management's authority to file bankruptcy. ***The general rule in the Sixth Circuit is that the appointment of a receiver and issuance of the typical injunction against interference does not affect a company's, or by extension, its managers' authority to file bankruptcy***. *See Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929) ("[T]he pendency of a receivership does not ordinarily prevent the filing of a voluntary petition," nor does the usual injunction against interference.); *Muffler v. Petticrew Real Est. Co.*, 132 F.2d 479, 481 (6th Cir. 1942) (A company is "not deprived of the of the right to file its petition merely because its property [is] in the custody of [a] state court receiver.").

*Id*. at 891 (emphasis added).  A reasonable reading of this case creates a legitimate basis for the filing of the chapter 11 petitions and the signing of the petitions by Ms. Weaver.

5.     The second principle derived from the Sixth Circuit cases cited in *Donelson* is that it is questionable whether any provision expressly prohibiting bankruptcy would be enforceable and not preempted by the Bankruptcy Code. *Id.* at 892 *(citing In re Yaryan Naval Stores Co.*, 214 F. 563, 565-66 (6th Cir. 1914) ("To deny the right of the debtor . . . to take the benefit of the act and thereby secure a discharge from its debts, is to deny the ultimate paramountcy of the act[.]")); *see also Merritt v. Mt. Forest Fur Farms of Am., Inc. (In re Mt. Forest Fur Farms of Am., Inc.)*, 103 F.2d 69, 71 (6th Cir. 1938) (recognizing a constitutional right to seek relief under the Bankruptcy Act and Art. 1, Sec. 8, clause 4, Constitution of the United States, and holding a state court order restraining the debtor and its management from filing bankruptcy without the consent of the state court to be "erroneously entered" as it denied the company of its constitutional right), *cert. denied* 308 U.S. 583 (1939); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 431 (Bankr. N.D. Ohio

1982) (citing *Merritt*) (stating that any attempt to prohibit a voluntary Chapter 11 filing would be ineffective)).

6. Furthermore, "[i]t has generally been held in this circuit that the pendency of an equity receivership will not ordinarily prevent a corporation from filing a voluntary petition in bankruptcy." *Id.* at 428-29 *(citing In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914));* *Struthers Furnace Co. v. Grant*, 30 F.2d 576 (6th Cir. 1929); *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479 (6th Cir.), *cert. denied* 319 U.S. 766 (1943). *Accord, In re Prudence Co.*, 79 F.2d 77 (2d Cir.), *cert. denied* 296 U.S. 646 (1935); *Union National Bank v. Lehmann-Higginson Grocer Co.*, 82 F.2d 969 (10th Cir. 1936).

7. These cases provide colorable support for the signing of the petitions and the filing of the same by Ms. Weaver.

**D.    Inherent-Power Sanctions Require Bad Faith and Should Be Exercised with Restraint**

8. The Receiver invokes this Court's "inherent authority" to sanction (Motion ¶ 7). That is an extraordinary power and, under Sixth Circuit law, may be used to impose monetary sanctions only upon a strong showing.

*a.    Sixth Circuit requires a finding (or record evidence) of bad faith; "something more" is required*

9. The Sixth Circuit has made clear that inherent-power fee-shifting/sanctions require bad faith or improper purpose, and that losing, being wrong, or even pursuing a meritless position does not suffice.

10. In *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, the Sixth Circuit vacated inherent-power sanctions because the record did not support the necessary finding of bad faith or improper purpose and because the district court applied an incorrect view that knowingly pursuing a meritless

position automatically equals bad faith. *BDT Prods.*, 602 F.3d 742, 757 (6th Cir. 2010). The Sixth Circuit emphasized that sanctions require "something more" than meritlessness. *Id.* at 753-54.

11. Similarly, the case of *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.* holds that a fee award under the bad-faith exception requires specific findings that: (1) the claims/positions were meritless; (2) counsel knew or should have known they were meritless; and (3) they were pursued for an improper purpose (e.g., harassment). *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313-14 (6th Cir. 1997).

12. "The imposition of inherent-power sanctions requires a finding of bad faith or conduct tantamount to bad faith." *Jordan v. City of Detroit*, 595 Fed. Appx. 486, 488 (6th Cir. 2014) (citing *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)). To make a bad faith finding, "[a] district court must find '(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing the suit was for an improper purpose such as harassment.'" Id. (quoting *Metz*, 595 Fed. Appx. at 489). "The simple fact that an action is without merit is not tantamount to bad faith; rather, 'the court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings,' such as by filing the suit for purposes of harassment or delay, or for other improper reasons." Id. at 488-89 (quoting *Metz*, 595 Fed. Appx. at 489).

13. These cases reflect the same controlling principle: inherent-power sanctions are reserved for extreme misconduct involving bad faith and must not be used to punish debatable or colorable legal choices.

**b. *Sanctions are improper where conduct is plausibly lawful or grounded in a reasonable reading of legal authority***

14. In *United States v. Llanez-Garcia*, the Sixth Circuit reversed sanctions imposed under inherent authority where the attorney's conduct was supported by a **plausible** reading of the

rules and the record did not establish bad faith. The Sixth Circuit reiterated that inherent powers must be exercised with **restraint and discretion**, and that bad faith cannot be inferred merely from conduct that is reasonably debatable. *United States v. Llanez-Garcia*, 735 F.3d 483 (6th Cir. 2013) (emphasis added).

15.     That principle applies *a fortiori* here. The Motion does not grapple with the law governing who may file a bankruptcy petition for a corporation/LLC subject to a federal receivership order, nor does it cite any Sixth Circuit authority holding that such a filing under these circumstances is per se void or sanctionable. Instead, it simply asserts "unauthorized" as a label.

### c.     *The kind of egregious conduct that can justify inherent-power sanctions is not present here.*

16.     In *Metz v. Unizan Bank*, the Sixth Circuit affirmed inherent-power sanctions for plainly abusive litigation behavior, including reasserting claims previously dismissed with prejudice—i.e., conduct that evidences bad faith and disregard of clear judicial rulings. *Metz v. Unizan* Bank, 655 F.3d 485 (6th Cir. 2011).

17.     The Receiver's Motion tries to analogize Ms. Weaver's conduct to that level of bad faith, "beyond the pale" abuse. The filing of a Chapter 11 petition in the same district as the pending action through licensed counsel on a colorable legal theory is not analogous to re-litigating dismissed-with-prejudice claims or other objectively abusive tactics. Indeed, the simple fact that the Court suggested that the cases should be in bankruptcy court at the February 9, 2026 hearing is evidence that her efforts were not abusive or intended to be abusive. Attached as Exhibit A is the Declaration of Fawn Weaver addressing her good faith conduct in filing the Chapter 11 petitions.

### E. Argument

#### a. *The Motion fails at the threshold because it does not supply the required Sixth Circuit findings for inherent-power sanctions*

18. The Motion asks for severe monetary sanctions but never establishes—through required findings or evidence—that:

- Ms. Weaver's conduct was **meritless** in the relevant sense (i.e., lacking any plausible legal basis);

- Ms. Weaver (or her counsel) **knew or should have known** it was meritless; and

- The bankruptcy filings were pursued for an **improper purpose** (harassment, delay, disruption, etc.).

Those are not optional elements when the Court is asked to use its inherent power to impose monetary sanctions. *Big Yank* requires such findings, and *BDT Products* confirms that the Sixth Circuit will vacate sanctions where the record does not establish bad faith/improper purpose and where the movant's theory collapses into the argument that "you were wrong, therefore sanctioned." *Big Yank Corp.*, 125 F.3d at 313-14; *BDT Prods., Inc.*, 602 F.3d at 753-54, 757. The Motion's rhetoric ("wanton," "willful," "beyond the pale") is not a substitute for the Sixth Circuit's required analysis.

#### b. *Ms. Weaver acted through counsel; reliance on counsel and contemporaneous legal advice negates any inference of bad faith*

19. The Motion does not dispute that Ms. Weaver was represented by counsel when the petitions were prepared and filed. Pursuant to Ms. Weaver's Declaration attached as Exhibit A, Ms. Weaver assets that multiple lawyers (who have acted as or represented receivers) approved of her conduct after review of the Receivership Order and relevant case law. That is precisely the kind of evidentiary record that rebuts any claim that Ms. Weaver was acting **vexatiously, wantonly, oppressively, or in bad faith**.

7

20. Under *BDT Products*, the Court must focus on evidence of improper purpose and cannot collapse the sanction analysis into an outcome-based assessment (e.g., "Receiver says unauthorized, therefore bad faith"). *BDT Prods.*, 602 F.3d at 752-54.

21. Under *Llanez-Garcia*, a plausible legal interpretation—especially one made with counsel's involvement—does not establish bad faith. *See Llanez-Garcia*, 735 F.3d at 496 (6th Cir. 2013) ("Again, the point of exploring Migdal's understanding of what the rules allowed her to do is not to determine whether her interpretation was right or wrong, but to decide whether she issued two Rule 17(c) subpoenas in bad faith."). In order to find bad faith, the Court "must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* at 493 (quoting *Metz*, 655 F.3d at 490).

22. At minimum, the Receiver's request cannot be granted without an evidentiary record demonstrating the required subjective culpability.

### c. *The Receiver seeks punitive sanctions without tailoring or a causal showing, contrary to the Sixth Circuit's narrow conception of inherent-power sanctions*

23. The Receiver requests a flat $25,000-per-filing "penalty" payable to one entity, with the possibility of joint-and-several liability against counsel. That is punitive in character.

24. But inherent-power monetary sanctions must be **anchored to specific misconduct** and justified by findings that the sanctioned party acted with the requisite level of culpability. *Big Yank* and *BDT Products* impliedly, if not explicitly, require a tight causal and culpability connection: meritlessness + knowledge + improper purpose.

25. Here, the Receiver's Motion is missing the basic analytical predicates for a calculation of any sanctions:

- no evidence of improper purpose or bad faith beyond speculation; and

- no showing that a $75,000 penalty is compensatory, proportional, or necessary.

8

Without those predicates, the request is precisely the sort of overreach the Sixth Circuit polices by vacating inherent-power sanctions.

> ### d. To the extent the Receiver seeks sanctions against counsel, the Motion fails to identify a valid sanctioning basis and cannot proceed via inherent power absent bad-faith findings

26. The Motion suggests sanctions might be imposed "jointly and severally" against "counsel in this case and/or bankruptcy counsel." But it does not clearly specify whether it seeks sanctions under **inherent power**, **28 U.S.C. § 1927**, or otherwise.

27. If the Receiver intends to proceed under 28 U.S.C. § 1927, that statute has its own limitations and requires a showing of unreasonable and vexatious multiplication of proceedings. Moreover, the Sixth Circuit in *BDT Products* (as reflected in the provided authority) recognizes important constraints on the reach of § 1927. *See BDT Prods., Inc.*, 602 F.3d at 750-51; 28 U.S.C. § 1927.

28. But even if § 1927 were invoked, this Motion still does not engage the disputed legal question of filing authority or establish the requisite culpability. And under inherent power, the absence of findings and evidence of bad faith remains dispositive.

> ### e. The Receiver's "press/Instagram" allegations do not satisfy the Sixth Circuit's inherent-power standard on this record

29. The Motion also references alleged "media blitz" conduct and prior concerns about litigating in the media. But the Motion does not:

- identify the precise order allegedly violated by the press statements (beyond general citations to the Receivership Order's non-interference language);

- provide the actual video content to permit context-specific analysis;

- establish bad faith as opposed to public relations messaging;

- connect the requested monetary penalty to any quantifiable harm caused by those communications.

30.    In the Sixth Circuit, inherent-power sanctions are not imposed on a vague record or generalized displeasure. *Llanez-Garcia* underscores that restraint is mandatory and that bad faith requires actual evidentiary support. *See generally, Llanez-Garcia*, 735 F.3d 483.

31.    If the Receiver believes specific statements violate a specific injunction, the appropriate approach is a focused motion identifying the statement, the provision violated, and the evidentiary basis for willfulness, not an expedited request for punitive penalties premised primarily on the disputed legality of the filing of the bankruptcy petitions.

**F.    Procedural Fairness / Due Process Concerns: Expedited, Punitive Sanctions Require a Developed Record**

32.    The Receiver requests expedited sanctions on an underdeveloped record concerning:

- who had authority to file;
- what legal advice was sought and received;
- whether the relevant bankruptcy law and receivership law clearly foreclosed the filings;
- what intent, if any, motivated the filings.

33.    The Sixth Circuit's cases demanding specific findings—*Big Yank, BDT Products, and Llanez-Garcia*—implicitly require that sanctions be decided on a record adequate to support those findings.

34.    At minimum, the Court should deny the Motion without prejudice or set an evidentiary hearing limited to (i) the legal authority question and (ii) whether there is record evidence of bad faith.

**G.    Conclusion**

35.    Because the Receiver has not established that Ms. Weaver's conduct was plainly unlawful, meritless, or undertaken in bad faith; because the Motion does not even address the

controlling law on filing authority; and because Sixth Circuit precedent requires specific findings and restraint before imposing inherent-power sanctions, the Court should deny the Motion.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*

Michael E. Collins (TN BPR No. 16036)
S. Marc Buchman  (TN BPR No. 41598)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (629) 500-1137
mcollins@manierherod.com
mbuchman@manierherod.com

*Counsel for Fawn Weaver*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

*/s/ Michael E. Collins*

Michael E. Collins

# EXHIBIT A

Case 4:25-cv-00038-CEA-CHS    Document 180    Filed 03/19/26    Page 12 of 16
PageID #: 7372

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., et al., | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SWORN DECLARATION OF FAWN WEAVER IN OPPOSITION
## TO THE RECEIVER'S EXPEDITED MOTION FOR SANCTIONS

I, Fawn Weaver, declare under penalty of perjury as follows:

1.      I am the founder, Chief Executive Officer, and largest shareholder of Uncle Nearest, Inc. I submit this declaration in support of the Company's Chapter 11 filing and in opposition to the Receiver's motion.

2.      There are more than $13 million of unsecured creditors of Uncle Nearest, based on the accounts payable report the Receiver filed with this Court, after removing creditors who have already been paid or are not owed amounts. Those obligations, all of which are accurately reflected on the bankruptcy schedules that I reviewed and approved, remain outstanding. Despite the Receiver having been paid millions of dollars during the course of the Receivership, not a single dollar has been applied toward reducing these unsecured creditor obligations.

3.      At the same time, according to the Receiver's own reports, the Company's secured indebtedness to Farm Credit has not been reduced during the Receivership and has instead increased by at least $12 million, further compounding the financial position of the estate.

1

4.      Before making the decision to file for Chapter 11 protection, I undertook an extensive and deliberate process. I consulted with professional trustees, restructuring professionals, and attorneys from across the United States, each with decades of experience specializing in Chapter 11 matters, among other qualified advisors. While I invoke the attorney-client privilege and work product doctrine with respect to those communications, I disclose for the record that I was consistently advised that federal law binding on this Court does not prohibit Uncle Nearest or its affiliates from filing for bankruptcy without consultation with the Receiver, notwithstanding the Receivership Order.

5.      The legal pleadings filed by attorney Lynn Tarpy in the bankruptcy proceeding cite to *In re 530 Donelson, LLC*, 660 B.R. 887, 892 (Bankr. M.D. Tenn. 2024), which expressly holds that controlling Sixth Circuit precedent establishes that a receivership order generally does not affect a company's authority to file for bankruptcy. I relied on that precedent, as well as the consistent guidance of counsel nationwide, in making my decision.

6.      I also considered additional authority indicating that any attempt to restrict bankruptcy filings solely to a receiver may raise Constitutional concerns. As noted in *530 Donelson*, "it is questionable whether any provision expressly prohibiting bankruptcy would be enforceable and not preempted by the Bankruptcy Code." I took this guidance seriously in evaluating my responsibilities.

7.      Prior to consulting with outside professionals, I personally reviewed this Court's receivership order in detail. Following the Court's initial ruling, and recognizing the complexity of the legal issues involved as I worked to continue growing the Company and guide it through these proceedings, I enrolled in a Master of Laws program at Vanderbilt University, which has provided me with meaningful access to legal scholarship and experienced practitioners. Based on

2

my review, and that of numerous professionals with extensive experience in Chapter 11 matters, I understood, based on their guidance, that the Receivership Order does not contain any provision expressly prohibiting me, or other equity holders, from filing a bankruptcy petition on behalf of the Company, and I relied on that understanding in making the decision to file.

8.      It is disappointing that the Receiver has filed a motion for sanctions challenging the bankruptcy filing without addressing or citing the controlling authority referenced above, while simultaneously asserting reliance on "controlling" Sixth Circuit law.

9.      I state unequivocally that I did not act in bad faith. I am aware that the imposition of inherent-power sanctions requires a finding of bad faith or conduct tantamount to bad faith. *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). My actions do not meet that standard in any respect.

10.      To the contrary, my actions were taken in good faith and with the intent to protect the business, its creditors, its more than 200 shareholders, and its long-term viability. The decision to pursue Chapter 11 was made after significant diligence, including at least 250 hours of consultation with experienced professionals across the country.

11.      I made this decision because I believe it is the most responsible path to preserve the value of Uncle Nearest, protect its creditors and shareholders, and stabilize operations.

12.      I further believe, in good faith, that with the strength of the finance team we put in place in advance of the Chapter 11 filing—including Kenneth Welt, who was to serve as Chief Restructuring Officer, is a current Chapter 7 panel trustee in the United States Bankruptcy Court for the Southern District of Florida, and has administered more than 150,000 Chapter 7 and Chapter 11 cases, including matters involving the Securities and Exchange Commission and the Federal Trade Commission in courts across the United States, as well as complex engagements for

3

special asset departments of both large and small banking institutions—along with the team of forensic accountants and CPAs he has assembled—Uncle Nearest would be well-positioned to address and remediate issues arising from prior deficiencies within the Company's finance function and to repay its creditors in short order, while reorganizing its operations to address the challenges created by a single secured creditor that is actively pursuing actions adverse to the Company's long-term success, if the Companies were in bankruptcy.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of March, 2026.

**Fawn Weaver**

4