FARM CREDIT MID-AMERICA, PCA,     )
    )
    Plaintiff,     )     Case No. 4:25-cv-38
    )
v.     )     Judge Atchley
    )
UNCLE NEAREST, INC., *et al.,*     )     Magistrate Judge Steger
    )
    Defendants.     )

## RECEIVER'S NOTICE OF EXHIBITS TO THE RECEIVER'S EXPEDITED MOTION FOR SANCTIONS AND OTHER VIOLATIONS OF THE COURT'S ORDERS

**COMES NOW** the court-appointed receiver herein, Phillip G. Young, Jr. ("Receiver"), by and through undersigned counsel, and provides this Notice of Exhibits (the "Notice") pursuant to the Court's Order (Docket No. 186) on March 26, 2026. In compliance with the Court's Order, the Receiver provides all social media and other content on which he relies for his Expedited Motion for Sanctions (the "Sanctions Motion"). In support thereof, the Receiver states as follows.

The Court has explicitly forbidden public comment about these proceedings and interference with the receivership. In its Paragraph 11 of its Order Appointing Receiver (Docket No. 39), the Court enjoined: "Interfering with, obstructing, or preventing in any way, the Receiver's actions pursuant to this Order, including, but not limited to, any and all actions that may damage the brand and reputation of the Receivership Assets in any form, whether written, verbal, and disseminated through any medium" and "Interfering in any other way with the Receiver, directly or indirectly." Even more directly, in its January 23, 2026, Order, the Court provided:

> Finally, the Court will provide the parties with a word of warning. It has been repeatedly represented to the Court that this case has drawn significant media attention. The Court is not blind to the fact that when a case captures the

public's interest, the parties often end up litigating two cases, one in the court of law and the other in the court of public opinion. In such circumstances, a party's legal arguments are often informed by public relations concerns. This is both commonplace and understandable. However, there is a fine line between litigating a case while keeping public relations implications in mind and using the justice system as a vehicle to promote a specific narrative. And while the Court permits the former, it will not tolerate the latter. See *Trump v. N.Y. Times Co.*, 800 F. Supp. 3d 1297 (M.D. Fla. 2025) (striking a complaint as improper where it principally served not to place the defendant on notice of the claims against it, but rather to advance a specific and vituperative public narrative). The Court will not allow either the February 9th hearing or these proceedings more generally to be used as a public relations campaign. If the Court finds that any party is using these proceedings for an improper purpose rather than to resolve the underlying issues, then that party and/or their counsel may be sanctioned. See FED. R. CIV. P. 11; 28 U.S.C. § 1927.

Subsequent to these orders but prior to the Court's hearing on the Reconsideration Motion and the Related Entities Motion, on February 9, 2026, Ms. Weaver began commenting about this case and releasing videos about this case on Instagram, in contravention of this Court's orders. The videos continued after the February 9, 2026, hearing and throughout Ms. Weaver's attempts to file unauthorized bankruptcy cases for these receivership entities. As Ms. Weaver has previously stated to the Court, she fully understands and intends the impact of her postings and comments on Instagram.[1] The below is a list of those videos and press release which the Receiver believes violates this Court's orders, along with a brief description of each exhibit. Each exhibit contains a transcription of the video in question, as such, the Receiver will not belabor the Court with a

---

[1] "If it is terminated, if it is terminated today, say, for instance, if it is terminated today and I walk out onto the front of the courthouse steps and I simply put up a social media post – and the irony of this conversation about media is I haven't said a single thing in the media since this began because I never wanted to influence anything that was said in the media." Hearing Tr. 240:8-14 Feb. 9, 2026.

"No, that's not what I testified. But I appreciate your – what I said is that if I went to the courthouse steps and said Uncle Nearest is back in my hands, every store with Uncle Nearest across this country would sell out, the same thing that happened when you filed the lawsuit. The moment that happened, I went on social media and I said, I can't really tell you-all what's going on right now because I'm under a gag order." Hearing Tr. 253-254:24-7 Feb. 9, 2026.

multitude of quotes from each video. The Receiver will separately provide the video files to the Court through the Court Clerk.[2]

<u>Instagram Videos</u>

<u>Exhibit 1</u> – Instagram Video of Fawn Weaver (@fawn.weaver), video uploaded on February 5, 2026, description edited on February 11, 2026: This video was released prior to the February 9, 2026. This is the beginning of Ms. Weaver's latest attempts to try this matter in the public forum. In this video, Ms. Weaver encouraged or suggested her followers appear at the Courthouse on February 9, 2026, to watch the hearing. Additionally, Ms. Weaver stated that she had a target on her back, and that "What we're witnessing is literally an attempt to robbery in broad daylight."

<u>Exhibit 2</u> – Instagram Video of Fawn Weaver (@fawn.weaver), video uploaded on February 12, 2026: This video is part 1 of a three-part series that Ms. Weaver posted on the night of February 12 and early morning of February 13. Ms. Weaver entitled this series "the heist of Uncle Nearest." Ms. Weaver gives her in-depth analysis of the testimony from the February 9 hearing, including her analysis of the Receiver's testimony. These are simply additional attempts to try this matter in the media rather than the Courtroom.

<u>Exhibit 3</u> – Instagram Video of Fawn Weaver (@fawn.weaver), video uploaded on February 12, 2026: This video is part 2 of the three-part series that Ms. Weaver posted on the night of February 12 and early morning of February 13. The beginning of the video seems to insinuate that because Farm Credit Mid-America, PLC ("FCMA") is providing funding to the receivership, that the Receiver is somehow biased. Ms. Weaver repeated Mr. Anthony Severini's testimony in which he claims he was misled by the Receiver and that the Receiver committed fraud. Again, this is Ms.

---

[2] Concurrently with this Notice, the Receiver is filing a Notice of Manual Filing that will include the actual video files for the items identified herein.

Weaver's commentary on the testimony where she picks the single lines of testimony (which occurred over the course of a 7-hour hearing) that aids her narrative that a "heist" is occurring in this Court.

Exhibit 4 – Instagram Video of Fawn Weaver (@fawn.weaver), video uploaded on February 12, 2026: This video is part 3 of the three-part series that Ms. Weaver posted on the night of February 12 and early morning of February 13. This is the final video of the series and Ms. Weaver wraps up this series by highlighting certain portions of her own testimony, including accusations that her name has been slandered and smeared. Finally, Mr. Weaver highlights the Court's own comments at the hearing. Again, these are more attempts to use the judicial system as a vehicle to promote Ms. Weaver's narrative and turn this matter into a public relations campaign, contrary to the Court's clear instructions.

Exhibit 5 – Instagram Video of Fawn Weaver (@fawn.weaver), video uploaded on March 17, 2026: This video was released in conjunction with the filing of the unauthorized bankruptcy petitions. In it, Ms. Weaver claims that the receivership of Uncle Nearest has been concluded. Additionally, Ms. Weaver details the lawsuit that she, Mr. Weaver, and Grant Sidney filed against FCMA alleging that FCMA made false accusations against them. Finally, Ms. Weaver outlines why she filed the unauthorized bankruptcy petitions. This video, the press release outlined below, the lawsuit filed against FCMA, and the unauthorized bankruptcy petitions were all filed in coordination to attempt to control the public opinion through their court filings. All of those items were specifically coordinated and occurred within hours of each other.

TikTok Videos

Exhibit 6 - This is a series of two videos wherein Ms. Weaver is speaking at a CIAA conference in Baltimore, Maryland. The videos were uploaded by an audience member Sonjie D to the TikTok

platform. The videos show Ms. Weaver providing commentary about the testimony provided at the February 9 hearing. Ms. Weaver also tells her audience that the Receiver requested Ms. Weaver sign an NDA in order to review certain sales projections and financial information. Ms. Weaver then immediately states that she filed this information with the Court, in willful violation of the NDA.[3] Ms. Weaver, again, illustrates certain portions of the hearing testimony that she deems is most appropriate for the press coverage. These videos do not provide Ms. Weaver's entire session at CIAA, so the Receiver is unsure what other items Ms. Weaver may have discussed at that conference.

Press Release from Mr. and Ms. Weaver and Grant Sidney announcing the end of the Receivership

Exhibit 7 – Concurrently with the unauthorized bankruptcy filings, Ms. Weaver, Mr. Weaver, and Grant Sidney published a press release that announced and outlined the lawsuit filed by Ms. Weaver, Mr. Weaver and Grant Sidney against FCMA in New York state court. The press release alleges that FCMA committed an intentional smear campaign against the defendants to this action and includes direct quotes from Ms. Weaver. The press release also highlights the unauthorized bankruptcy filings, which they claimed were "bringing the court-appointed receivership to an end."

The result of these public communications has been widespread confusion and distraction to the work of the receivership and this litigation.

These exhibits outline a clear disregard for the Court's orders and a willful attempt to try this matter in the court of public opinion through social media and other avenues. The Receiver asserts that these exhibits provide sufficient evidence to grant the relief requested in the Expedited

---

[3] The Receiver has not independently ascertained what information was disclosed that potentially violates the NDA; however, the video illustrates Ms. Weaver's blatant disregard for the NDA and the rules of this Court.

Motion for Sanctions (Docket No. 178) and the Reply to the Expedited Motion for Sanctions (Docket No. 183) filed by the Receiver.

Dated this 9th day of April, 2026.

By:   /s/ Justin T. Campbell
Justin T. Campbell, Tn. Bar No. 31056
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
Voice: (615) 465-6015
Fax:   (615) 807-3048
Justin@thompsonburton.com

*Counsel for Receiver*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's ECF system and served via United States Mail and electronic mail on the following parties:

Michael E. Collins
Manier & Herod
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
mcollins@manierherod.com

Lynn Tarpy
Kelli D. Holmes
Tarpy, Cox, Fleishman & Leveille, PLLC
Landmark Center North Tower
1111 N. Northshore Drive, Suite N-290
Knoxville, TN 37919
ltarpy@tclfattorneys.com
kholmes@tcflattorneys.com

This 9th day of April 2026.

/s/ Justin T. Campbell
Justin T. Campbell