File No. **26-4506**

# APPRAISAL OF



Single-Family Residence

## LOCATED AT:

471 West Tisbury Road
Edgartown, MA 02539

## CLIENT:

Philip G. Young, Receiver
6100 Tower Circle, Suite 200
Franklin, TN, 37067

## AS OF:

April 21, 2026

## BY:

Yulia Kovaleva
76054-RA-CR, Expires 04/09/2028

PO Box 1025, Edgartown, MA 02539 * 508-338-2401

File No. 26-4506

April 24, 2026

Philip G. Young, Receiver
6100 Tower Circle, Suite 200
Franklin, TN, 37067

File Number:   26-4506

Dear Mr. Young:

In accordance with your request, I have appraised the real property at:

471 West Tisbury Road
Edgartown, MA  02539

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   April 21, 2026                          i s :

$2,600,000
Two Million Six Hundred Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

Respectfully submitted,

Yulia Kovaleva
76054-RA-CR, Expires 04/09/2028

William Cleary
MACR 75088, Expires 10/06/2027

## PURPOSE

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User **Philip G. Young, Receiver**  E-mail **phillip@thompsonburton.com**

Client Address **6100 Tower Circle, Suite 200**  City **Franklin**  State **TN**  Zip **37067**

Additional Intended User(s) **None known**

Intended Use **This appraisal is intended for the sole purpose of assisting the client in collateral analysis and/or portfolio management with the subject property as a real estate asset.**

## SUBJECT

Property Address **471 West Tisbury Road**  City **Edgartown**  State **MA**  Zip **02539**

Owner of Public Record **UN House MV, LLC**  County **Dukes**

Legal Description **Dukes County Registry of Deeds, Book 1652, Page 137**

Assessor's Parcel # **Map 22, Lot 1**  Tax Year **2026**  R.E. Taxes $ **5,725**

Neighborhood Name **West Tisbury Road**  Map Reference **Map 22, Lot 1**  Census Tract **2003**

Property Rights Appraised [X] Fee Simple  [ ] Leasehold  [ ] Other (describe)

## SALES HISTORY

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer:  Date **04/11/2023**  Price **2225000**  Source(s) **Assessor's Card/Registry**

Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable)  **The sales history is listed above. The current owner purchased the subject property in 2023 for $2,225,000 in an arm's-length transaction; the dwelling and the site were renovated/updated following the sale.**

Offerings, options and contracts as of the effective date of the appraisal  **See Attached Addendum**

## NEIGHBORHOOD

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban | [ ] Rural | Property Values | [ ] Increasing | [X] Stable | [ ] Declining | PRICE | AGE | One-Unit | 50 % |
| Built-Up | [ ] Over 75% [X] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | % |
| Growth | [ ] Rapid [X] Stable | [ ] Slow | Marketing Time | [ ] Under 3 mths | [X] 3-6 mths | [ ] Over 6 mths | 600 Low | 1 | Multi-Family | % |

Neighborhood Boundaries  **Edgartown is bordered by the Atlantic Ocean on the south and east, by the town of West Tisbury to the west, and by the town of Oak Bluffs to the north.**

| | | | |
|---|---|---|---|
| 37000 High | 200 | Commercial | % |
| 2080 Pred. | 40 | Other **Vacant** | 50 % |

Neighborhood Description  **See Attached Addendum**

Market Conditions (including support for the above conclusions)  **See Attached Addendum**

## SITE

Dimensions **326'x255'x347'x214'x105'x152'x12'**  Area **2.16 ac**  Shape **Irregular**  View **Woods**

Specific Zoning Classification **R60**  Zoning Description **Residential - 60,000 SF minimum lot size to build**

Zoning Compliance [X] Legal  [ ] Legal Nonconforming (Grandfathered Use)  [ ] No Zoning  [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe. **See Attached Addendum**

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | [ ] | Water | [X] | [ ] | Street **Asphalt** | [X] | [ ] |
| Gas | [ ] | [X] **Propane Tank** | Sanitary Sewer | [X] | [ ] | Alley **None** | [ ] | [ ] |

Site Comments  **See Attached Addendum**

## IMPROVEMENTS

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials | | INTERIOR materials | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit [ ] | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls | Concrete/Gd | Floors | Wood/Gd |
| # of Stories 1.25 | | [X] Full Basement [ ] Partial Basement | | Exterior Walls | Wood Shgle/Gd | Walls | Drywall/Wd/Gd |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 1695 sq. ft. | | Roof Surface | Asph Shgle/Gd | Trim/Finish | Wood/Gd |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 90 % | | Gutters & Downspouts | None Noted | Bath Floor | Tile/Gd |
| Design (Style) Contemp Cape | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type | Aluminum/Gd | Bath Wainscot | Tile/Gd |
| Year Built 1980 | | | | Storm Sash/Insulated | Thermo/Gd | Car Storage [ ] None | |
| Effective Age (Yrs) 16 | | | | Screens | Combination/Gd | [X] Driveway # of Cars 6 | |

| Attic | [ ] None | Heating [X] FWA [ ] HW [ ] Radiant | Amenities [ ] WoodStove(s) # 0 | Driveway Surface Gravel |
|---|---|---|---|---|
| [ ] Drop Stair | [ ] Stairs | [ ] Other  Fuel **Electric** | [X] Fireplace(s) # 1  [X] Fence **AZEK** | [X] Garage # of Cars 2 |
| [ ] Floor | [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck **Wd**  [X] Porch **Enclosed** | [ ] Carport # of Cars 0 |
| [ ] Finished | [ ] Heated | [ ] Individual [ ] Other | [ ] Pool **None**  [ ] Other **None** | [ ] Att. [X] Det. [ ] Built-in |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe)

Finished area **above** grade contains:  6 Rooms  4 Bedrooms  2.1 Bath(s)  1,983 Square Feet of Gross Living Area Above Grade

Additional Features  **The appraiser noted there is an underground irrigation system. The subject also has propane fired forced hot water heat in addition to its energy efficient electric heat pump HVAC system.**

Comments on the Improvements  **See Attached Addendum**


Case 4:25-cv-00038-CEA-CHS  Document 196-1  Filed 05/11/26  Page 3 of 131
PageID #: 7622

Martha's Vineyard Appraisal
# Residential Appraisal Report

File No. 26-4506

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | +(-) $ Adjustment | COMPARABLE SALE NO. 2 | +(-) $ Adjustment | COMPARABLE SALE NO. 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 471 West Tisbury Road Edgartown, MA | 46 Bold Meadow Road Edgartown, MA | | 27 Watcha Path Edgartown, MA | | 28 Marthas Road Edgartown, MA | |
| Proximity to Subject | | 0.97 miles NW | | 2.37 miles SW | | 0.83 miles SE | |
| Sale Price | $ | $ 2,401,000 | | $ 2,590,000 | | $ 2,475,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 1,012.23 sq. ft. | | $ 988.55 sq. ft. | | $ 964.54 sq. ft. | |
| Data Source(s) | | Inspection, broker | | Inspection, broker | | Inspection, broker | |
| Verification Source(s) | | Public record | | Public record | | Public record | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
| Sale or Financing Concessions | | Conventional None known | | Conventional None known | | Conventional None known | |
| Date of Sale/Time | | 01/06/2026 | | 08/29/2025 | | 02/20/2026 | |
| Location | Good | Superior | -200,000 | Inferior | +200,000 | Superior | -200,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.16 Acres | 0.82 Acre | +200,000 | 3.00 Acres | | 0.51 Acre | +200,000 |
| View | Woods | Neighborhood | | Woods | | Neighborhood | |
| Design (Style) | Contemp Cape | Cape Cod | | Colonial | | Cape Cod | |
| Quality of Construction | Good | Inferior | +100,000 | Good | | Good | |
| Actual Age | 46 Yrs/Renovat | 34 Years | | 12 Years | | 39 Yrs/Renovat | |
| Condition | Good | Inferior | +100,000 | Good | | Good | |
| Above Grade Room Count | Total 6 / Bdrms. 4 / Baths 2.1 | Total 7 / Bdrms. 4 / Baths 3.1 | -20,000 | Total 6 / Bdrms. 3 / Baths 3.1 | -20,000 | Total 7 / Bdrms. 4 / Baths 3.1 | -20,000 |
| Gross Living Area | 200   1,983 sq. ft. | 2,372 sq. ft. | -77,800 | 2,620 sq. ft. | -127,400 | 2,566 sq. ft. | -116,600 |
| Basement & Finished Rooms Below Grade | Full 1113 fin 1ba | Full Unfinished | +131,300 | Full Unfinished | +131,300 | Full 420 fin | +89,300 |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | Elec FHA/CAC | Prop FHW/CAC | | Prop FHA/CAC | | Elec FHA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2-Car Garage | 2-Car Garage | -25,000 | 2-Car Garage | -25,000 | 2-Car Garage | -25,000 |
| Porch/Patio/Deck | Deck, Encl Prch | Deck, Encl Prch | | Deck, Porch | +50,000 | Deck, Scr Prch | |
| Add'l Liv Space | None | None | | None | | None | |
| In Ground Pool | None | None | | In Ground Pool | -200,000 | None | |
| Add'l Features | Practice Green | Unfin Storage | | Unfin Storage | | None | +25,000 |
| Net Adjustment (Total) | | [X] + [ ] - $ | 208,500 | [X] + [ ] - $ | 8,900 | [ ] + [X] - $ | 47,300 |
| Adjusted Sale Price of Comparables | | Net Adj. 8.7% Gross Adj. 35.6% $ | 2,609,500 | Net Adj. 0.3% % Gross Adj. 29.1% $ | 2,598,900 | Net Adj. -1.9% Gross Adj. 27.3% $ | 2,427,700 |

Summary of Sales Comparison Approach    See Attached Addendum.

## COST APPROACH TO VALUE

Site Value Comments    See Attached Addendum

| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | |
|---|---|
| Source of cost data Local contractors | |
| Quality rating from cost service Good    Effective date of cost data 04/21/2026 | |

Comments on Cost Approach (gross living area calculations, depreciation, etc.)
Site value based on market data. Cost estimates are from local contractors and Marshall Valuation Service. Physical depreciation calculated by age/life method with effective age of 16 years and total economic life of 60 years. No functional or external depreciation found on inspection. Site value exceeds 40% of total value estimate, which is common for properties in this area and not adverse to marketability.

| OPINION OF SITE VALUE | = $ 1,050,000 |
|---|---|
| Dwelling 1,983 Sq. Ft. @ $ 600.00 | = $ 1,189,800 |
| Bsmt: 1,695 Sq. Ft. @ $ 100.00 | = $ 169,500 |
| Improvements | 300,000 |
| Garage/Carport 490 Sq. Ft. @ $ 75.00 | = $ 36,750 |
| Total Estimate of Cost-New | = $ 1,696,050 |
| Less 60 Physical / Functional / External | |
| Depreciation $452,280 / $0 / $0 | = $ ( 452,280) |
| Depreciated Cost of Improvements | = $ 1,243,770 |
| "As-is" Value of Site Improvements | = $ 350,000 |
| INDICATED VALUE BY COST APPROACH | = $ 2,643,800 |

## INCOME APPROACH TO VALUE

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ 0 Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) _____

Indicated Value by: Sales Comparison Approach $ 2,600,000    Cost Approach (if developed) $ 2,643,800    Income Approach (if developed) $ 0

See Attached Addendum

## RECONCILIATION

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed [ ] subject to the following:
No conditions other than those stated on the appraisal and the Limiting Conditions attached.

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report is $ 2,600,000 as of 04/21/2026 , which is the effective date of this appraisal.

Produced using ACI software, 800.234.8727 www.aciweb.com
Page 2 of 4
Martha's Vineyard Appraisals
This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc., All Rights Reserved.
(gPAR™) General Purpose Appraisal Report 05/2010
GPAR1004_10 05262010

Case 4:25-cv-00038-CEA-CHS    Document 129-1    Filed 05/11/26    Page 4 of 131
PageID #: 7623

# Residential Appraisal Report

File No. 26-4506

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 471 West Tisbury Road<br>Edgartown, MA | 357 West Tisbury Road<br>Edgartown, MA | | | | | |
| Proximity to Subject | | 0.26 miles SE | | | | | |
| Sale Price | $ | $ 2,580,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 805.24 sq. ft. | | $ 0.00 sq. ft. | | $ 0.00 sq. ft. | |
| Data Source(s) | | Inspection, broker | | | | | |
| Verification Source(s) | | Public record | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Conventional | | | | | |
| Concessions | | None known | | | | | |
| Date of Sale/Time | | U/A 04/11/2026 | | | | | |
| Location | Good | Good | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 2.16 Acres | 1.50 Acres | | | | | |
| View | Woods | Neighborhood | | | | | |
| Design (Style) | Contemp Cape | Colonial | | | | | |
| Quality of Construction | Good | Inferior | +100,000 | | | | |
| Actual Age | 46 Yrs/Renovat | 43 Years | | | | | |
| Condition | Good | Inferior | +100,000 | | | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 6 / 4 / 2.1 | 7 / 5 / 4.1 | -40,000 | | | | |
| Gross Living Area   200 | 1,983 sq. ft. | 3,204 sq. ft. | -244,200 | sq. ft. | | sq. ft. | |
| Basement & Finished | Full | Slab | +50,000 | | | | |
| Rooms Below Grade | 1113 fin 1ba | Unfinished | +131,300 | | | | |
| Functional Utility | Adequate | Adequate | | | | | |
| Heating/Cooling | Elec FHA/CAC | Elec FHA/CAC | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 2-Car Garage | None | +25,000 | | | | |
| Porch/Patio/Deck | Deck, Encl Prch | Deck, Porch | +50,000 | | | | |
| Add'l Liv Space | None | Guest Hse 911 | -182,200 | | | | |
| In Ground Pool | None | None | | | | | |
| Add'l Features | Practice Green | None | +25,000 | | | | |
| Net Adjustment (Total) | | [X] + [ ] -   $ | 14,900 | [X] + [ ] -   $ | 0 | [X] + [ ] -   $ | 0 |
| Adjusted Sale Price | | Net Adj. 0.6% | | Net Adj. 0.0% % | | Net Adj. 0.0% % | |
| of Comparables | | Gross Adj. 36.7% $ | 2,594,900 | Gross Adj. 0.0% % $ | 0 | Gross Adj. 0.0% % $ | 0 |

**SALES COMPARISON APPROACH**

Summary of Sales Comparison Approach

Produced using ACI software, 800.234.8727 www.aciweb.com
Additional Comparables

This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc., All Rights Reserved.
(gPAR™) General Purpose Appraisal Report 05/2010
GPAR1004_10 05262010



gpar™
general purpose appraisal

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

**Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.**

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions
Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal, a retrospective opinion based on an analysis of past events assuming a competitive and open market.

The appraiser has determined that the property would have to be exposed for 50 - 200 days on the open market in order to have a market value of $2,600,000 (TWO MILLION SIX HUNDRED THOUSAND DOLLARS) on the effective date of this appraisal.

Due to the nature of the assignment,

At inspection, the appraiser was informed that a small portion of the subject site may not have clear title. The appraiser is not a lawyer and strongly recommends that a professional be hired to resolve any potential title issues. Please refer to the Limiting Conditions statement # 1 above.

The appraiser is not a Home Inspector, General Contractor, nor an Engineer and strongly recommends that a licensed professional be contacted to inspect the subject properties structure and systems.

Any unknown conditions, defects or deficiencies may impact the final value estimate.



## Appraiser's Certification

The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

The appraiser's appraised the subject property in June 2024 for refinance purposes.

Additional Certifications:

Definition of Value: [X] Market Value   [ ] Other Value: _____

Source of Definition: The Uniform Standards of Professional Appraisal Practice

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

. Buyer and seller are typically motivated
. Both parties are well informed or well advised and are acting in what they consider their own best interests
. A reasonable time is allowed for exposure to the open market
. Payments are made in terms in U.S. dollars or in terms of financial arrangements comparable thereto
. The price represents the normal consideration for the property sold unaffected by special or creative financing or sale concessions granted by anyone associated with the sale.

ADDRESS OF THE PROPERTY APPRAISED:

471 West Tisbury Road

Edgartown, MA  02539

EFFECTIVE DATE OF THE APPRAISAL: 04/21/2026

APPRAISED VALUE OF THE SUBJECT PROPERTY $ 2,600,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: | Signature: |
| Name: Yulia Kovaleva | Name: William Cleary |
| State Certification # 76054-RA-CR | State Certification # MACR 75088 |
| or License # | or License # |
| or Other (describe): _____ State #: _____ | State: MA |
| State: MA | Expiration Date of Certification or License: 10/06/2027 |
| Expiration Date of Certification or License: 04/09/2028 | Date of Signature: 04/24/2026 |
| Date of Signature and Report: 04/24/2026 | Date of Property Viewing: 04/21/2026 |
| Date of Property Viewing: 04/21/2026 | Degree of property viewing: |
| Degree of property viewing: | [X] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view |
| [X] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view | |



Produced using ACI software, 800.234.8727 www.aciweb.com
Page 4 of 4
This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc., All Rights Reserved.
(gPAR™) General Purpose Appraisal Report  05/2010
GPAR1004_10 05262010
Case 4:25-cv-00038-CEA-CHS   Martha's Vineyard Appraisals   Filed 05/11/26   Page 7 of 131
PageID #: 7626

| | |
|---|---|
| Client: Philip G. Young, Receiver | File No.: 26-4506 |
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA     Zip: 02539 |

**APPRAISAL DEVELOPMENT AND REPORTING PROCESS**
This is Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2 (a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation that is not provided with the report concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of the discussion contained in this report is specific to the needs of the client and for the intended use stated in the report. The appraiser is not responsible for unauthorized use of this report.

To develop the opinion of value, the appraiser performed a complete appraisal process, as defined by the Uniform Standards of professional Appraisal Practice. In preparing this appraisal, the appraiser inspected the subject site, reviewed construction documents, gathered information on comparable land and improved sales, confirmed all comparable sales information with at least one of the parties to the transaction; analyzed the data and applied the sales comparison and cost approaches.

**PURPOSE OF THE APPRAISAL**
The purpose of the appraisal is to provide the appraiser's best estimate of market value of the subject real property as of the effective date.

**INTENDED USE OF THE REPORT**
This appraisal is intended for the sole purpose of assisting the client in collateral analysis and/or portfolio management with the subject property as a real estate asset.

**Offerings, Contracts and Options**
The subject is currently in court appointed receivership along with other assets of the owners. The court has ordered the sale of the subject, and it was listed by Point B Realty as a pocket listing in February of 2026. A full price offer was accepted on February 18, 2026 with several backup offers according to the listing agent, Ms. Jen DaSilva. The appraiser reviewed a fully executed purchase and sale agreement and found no items that would affect the final value estimate. The agreement is dated March 11, 2026; the sales price is $2,595,000. The furniture is included as part of the sale for $1, as stated in paragraph 18 of the addendum to the P&S. The appraiser is not qualified to appraise personal property, therefore, no additional value is provided within this report for the personal property included within this report.

**Neighborhood Description**
The subject property is located in a residential area off West Tisbury Road. The neighborhood consists of homes that are a variety of sizes, styles and ages and are comprised of year-round and seasonal residents. This neighborhood has average appeal to the marketplace, primarily due to its proximity to the ocean beaches. Village center, the elementary school and the harborfront are approximately two miles distant. Employment appears stable at the present time, based on the increase in sales activity and new construction and the active rental market as reported by the brokers; however, typically for resort communities, there is high unemployment in the winter months.

**Neighborhood Market Conditions**
The 2025 Vineyard real estate market has continued to show stable growth. Buyers and sellers appeared to work together to negotiate, creating a more balanced market for both parties. The Federal Reserve's stance and subsequent actions regarding the benchmark overnight lending rate continued to heavily influence mortgage rates throughout 2025. Although rates have receded after topping 8% in October 2023, affordability challenges persist, and experts do not expect them to fall sharply. The average 30-year mortgage rate in 2025 generally ranged from the mid-6% to low-7% range, starting above 7% early in the year, dipping below 6.5% in the fall, and ending the year near 6.1 - 6.2% by January 2026, with some sources citing a full-year average of around 6.73%. Rates fell significantly late in the year due to economic shifts, ending January 2026 at 6.06%. As of April 20, 2026, the average interest rate on a 30-year fixed mortgage nationwide holds at 6.29% to 6.33%, according to various sources (Mortgage News Daily, Bankrate, Fortune).

In 2025, the residential real estate market on the Vineyard has seen a slight increase in the number of yearly sales as compared to 2024; there were 297 sales of single-family and multi-family homes in 2025, compared to 276 sales in 2024. Sales decreased sharply from the pandemic highs of 545 sales in 2020 and 503 sales in 2021. With the decreases in the number of sales, the median sales price appears to hold steady with a slight increase year over year. The 2025 median sales price for all sales of single- and multi-family properties on the Vineyard was $1,695,000, while the 2024 median sales price is $1,612,500, a 5% increase, and with about a 7% increase in the number of sales from 2024 (276 sales) to 2025 (297 sales). The marketing time has also been trending downward from 190 days to sale in 2024 to 168 days in 2025. Sharp decreases in interest rates are unlikely in 2026, and we expect continued stabilization in the median sales price and the number of sales.

Changes in the national economic figures impact the Island economy directly as the Island economy is based on a seasonal tourist economy and is supported by their discretionary income. Economic conditions remain unstable and unpredictable with inflationary pressures. It appears that the Vineyard real estate market has so far been resilient in the face of higher interest rates. Due to the seasonal nature of the Vineyard marketplace, the marketing time typically exceeds six months, however, is currently 3 - 6 months in various market areas and price points.

**Highest and Best Use**
Highest and Best use is the reasonably probable use of property that results in the highest value. The four criteria that the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity.

**Highest and Best Use as Vacant**
The highest and best use of the subject site as vacant is for single-family use and development of the lot with a new residential improvement. The subject is a 2.16-acre legal lot located in the R60 zoning district of Edgartown, which requires a minimum lot size of 1.5-acres; minimum frontage of 50 feet; minimum front yard setback of 50 feet; side and rear setbacks of 25 feet. The lot must have a minimum of 15,000 sf in order to build a guest house or use the site for a two-family dwelling. In addition to single-family residential uses, the R60 residential zoning district allows for religious/educational non-profit and public park uses, however, there is no indication in the marketplace that a park, church or a school would produce a higher income. Single-family residential use is the most financially feasible and maximally productive use of the subject site.

# ADDENDUM

**Ideal Improvement**

A new single-family residential improvement would be constructed if the site was vacant. The building would be professionally designed and would use current technology.

**Highest and Best Use as Improved**

The highest and best use of the subject site as improved is for continued use as a single-family residence. The subject dwelling was built in 1980, but recently renovated/updated. The depreciation to the improvement is currently not great enough to justify tearing the structure down or renovating it. The design and utility of the structure conform to the current buyers' expectations; therefore, it is currently not necessary nor financially feasible to modify the structure or tear it down.

The subject site is improved to its highest and best use.

**Site Comments**

The subject is an oversized +/- 2.16-acre lot, known as assessor's parcel 1 on map 22, shown on a plan of land prepared by Schofield, Barbini & Hoehn on April 1, 2023 and recorded in Plan Book 19, Page 160 of the Dukes County Registry of Deeds. The site has a primarily level topography and is improved with a muti-car gravel driveway with cobblestone edging and a cobblestone apron in the front and rear of the improvement. The site is neatly landscaped with a lawn, plantings, a putting green and mature trees. A wood deck leads to the entrances. The site is fully fenced in with a white AZEK fence.

The address of the subject property was recently changed from10 Codman Spring Road to 471 West Tisbury Road.

**Condition of the Property**

The subject is a contemporary cape-style, four-bedroom, two-and-a-half-bath single-family residence, which was originally built in 1980 and most recently renovated in 2023. The structure has been well maintained and is in good condition with wood-shingle siding, asphalt roofing, casement windows and wood trim on the exterior of the dwelling.

There is hardwood flooring throughout the first floor with carpet flooring in the second-floor bedroom/office. The open kitchen/living/dining room features a vaulted ceiling with skylights and exposed beams. The kitchen, which was renovated last year, boasts custom wood cabinetry with stone counters, tiled backsplashes and top of the line stainless appliances. The master bedroom features a vaulted ceiling and a tiled master bath with a stone top vanity and a tiled shower/soaking tub. There is new hardwood flooring throughout the first floor. The living room has a gas fireplace with a marble facade. The second floor bedroom/office has an en' suite half bath. All baths have tile flooring, stone top vanities, modern fixtures and tiled showers. The +/- 1,113-sf area of the basement is finished, adding a large family/game room, two finished storage rooms and a full bath to the living areas. There is a +/- 528-sf semi-finished storage/laundry room and a +/- 54-sf unfinished mechanical closet in the remainder of the basement.

The outdoor living spaces include multiple expansive wood decks, an oversized stone patio and an enclosed porch, which features a painted wood ceiling. Overall, the dwelling is in good condition with renovations in 2023 (new hardwood flooring on the first floor, painted the entire interior, updated kitchen with new appliances and new window treatments throughout).

There is a detached +/- 483-sf, two-bay garage with a metal frame, which was built in 2022; the garage has concrete flooring and is in good overall condition.

**Comments on Sales Comparison**

The comparables selected represent the most similar sales available to the appraiser at the time of the appraisal. The Gross Living Area and additional living space differentials were adjusted $200/SF. Finished basement space was adjusted at $100/SF. Required adjustment for baths is $20,000 for a full and $10,000 for a half bath. No other adjustments were made for room counts. Garages were adjusted $25,000/bay, however, the subject's metal-frame garage has a lower $25,000 overall contributory value due to its overall inferior construction compared to the wood-framed garages.

The subject is a +/- 2.16-acre property improved with a recently updated +/- 1,983-sf, four-bedroom, two-and-a-half-bath single-family dwelling with a mostly finished basement located on West Tisbury Road. Due to the unique characteristics of the subject and the lack of recent competitive sales from Edgartown, the appraiser went outside the six-month sales parameter and beyond the one-mile parameter for C# 2.

C# 1 is a recent sale of a competitive single-family dwelling located in close proximity to the subject, similar in size, style, view and utility.

C# 2 is a recent sale of a competitive single-family dwelling from Edgartown, similar to the subject in size, style, condition, view, lot size and utility. C# 2 required an upward adjustment for its inferior location, further away from town and its amenities. Additionally, C# 2 required a downward adjustment for having an in ground pool, a beneficial feature in this marketplace.

C# 3 is a recent sale of a competitive single-family dwelling located in close proximity to the subject, similar in size, style, view, condition and utility.

C#'s 1 and 3 required downward adjustments for their superior locations: Bold Meadow Road and Martha's Road typically command higher prices than well travelled West Tisbury Road within this marketplace.

Additionally, C#'s 1 and 3 required upward adjustments for their smaller lot sizes, affording less privacy with inferior building envelopes.

The lot size and location adjustments were supported by paired sales analysis, vacant land sales and assessor's or historical data.

C# 4 is a single-family dwelling located on the subject's street, within the subject's immediate neighborhood, similar to the subject in style, location, view, lot size and utility. C# 4 required a downward adjustment for having a +/- 911-sf,

Case 4:25-cv-00038-CEA-CHS      Document 196-1      Filed 05/11/26      Page 9 of 131
PageID #: 7628

# ADDENDUM

two-bedroom, one-bath guest house, a highly marketable feature in this marketplace. C# 4 is currently under agreement to sell, scheduled to close in May 2026.

C#'s 1, 2 and 4 required upward adjustments for not having finished basement space, adding to their living areas.

C#'s 1 and 4 required upward adjustments for their inferior quality of construction and condition noted during exterior inspections and from realtor's comments.

The quality of construction and condition adjustments were supported by the appraiser's knowledge and review of recent construction and renovation contracts in the Vineyard marketplace.

No adjustments were made for age, properties within this marketplace are typically renovated every 10 - 15 years.  Any adjustments related to age were made under the Quality or Condition areas on the grid.

Other adjustments are market extracted adjustments based on this marketplace. These adjustments were derived by the appraiser's analysis of data determining the contributory value of these features and/or amenities.

These comparables are reliable and consistent with market data. The final value estimate falls within range of the adjusted value indicators. In the final analysis, C#  2, the most recent sale of a similar-sized lot with similar quality of construction and condition of the improvements, and C# 4, a dwelling on the subject's street within its immediate neighborhood, received the most weight in the sales comparison approach, supported by C#'s 1 and 3.

**Support for the Opinion of Site Value**
A 0.50-acre lot at 2 Southridge Ln sold for $750,000 on 11/01/21; this lot had frontage on West Tisbury Rd similar to the subject. A 0.58-acre lot at 4 Southridge Ln sold for $900,000 on 08/03/21. A 0.9-acre lot at 18 Bold Meadow Rd sold for $993,000 on 01/18/23. A 0.92-acre lot at 27 Bold Meadow Rd sold for $995,000 on 07/25/23. A 0.50-acre lot at 58 Marthas Rd sold for $1,200,000 on 01/22/26. A 1.76-acre lot sold for $1,550,000 on 04/20/2022 at 67 Division Rd. A 3.04-acre lot with pastoral views at 11 Brown Rd sold for $2,100,000 on 04/25/22. A 3.21-acre lot with pastoral views at 11 Old Farms Trail sold for $2,465,000 on 09/18/23. A 3.04-acre lot at 6 Browns Farm Ln sold for for $2,395,000 on 10/10/24.

**Final Reconciliation**
The income approach was not considered applicable due to insufficient data available in order to develop a reliable gross rent multiplier because of the seasonal and short term nature of the residential rental market (10-16 weeks). Short-term rentals (generally, in weekly increments) do not typically require a lease to be signed, which makes information gathering unreliable without means of verification. Therefore, income approach is not used in this appraisal.

The cost approach provides insight from the replacement cost perspective. Depreciation was derived from the marketplace, but was problematic to estimate for a 46-year-old structure, which was recently renovated. Review of recent construction budgets within Edgartown marketplace provided support for the construction cost figures. The site value estimate is challenging. With no recent sales of vacant sites within the subject's immediate neighborhood, the most weight was given to an older vacant lot sale with frontage on West Tisbury Road, after adjusting it for market conditions and lot size. The older the sales, typically, the less reliable they are. Due to the difficulties with the site value and depreciation estimation due to the scarcity of vacant land sales within the subject's immediate neighborhood, the cost approach is less reliable. Market participants in this marketplace do not typically rely on the cost approach, rather supporting their purchasing and selling decisions with comparable sales.

In resort areas, such as Martha's Vineyard, the sales comparison approach is the most reliable indicator of value since it is reflective of market demand, a principal factor in home valuation. This approach reflects the value of the property from the perspective of an informed buyer. The intended use of the appraisal is for collateral analysis and/or portfolio management. This approach offers an important insight into the market for similar homes as buyers and sellers in this marketplace typically rely on recent sales for real estate pricing. The comparable sales have been adjusted for the market based on elements of value. With four comparable sales from Edgartown, the comparable sales approach provided a consistent indication of value. The most recent sale of a property in similar quality/condition to the subject on a similar sized lot and the comparable on the subject's street received the most weight in the sales comparison approach reconciliation due to being most similar to the subject in lot size/quality/condition and location respectively. The sales approach is the best indication of value since it is based on buyer's perceptions of value for properties similar to the subject. Therefore, this approach was given the most weight in the final reconciliation.

Based on the results of the traditional approaches to value, it is my opinion that the market value of the subject property is $2,600,000 (TWO MILLION SIX HUNDRED THOUSAND DOLLARS). The exposure time is estimated to be 50 to 200 days. The effective date of this appraisal is April 21, 2026.

| Client: Philip G. Young, Receiver | File No.: 26-4506 |
|---|---|
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA    Zip: 02539 |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: April 21, 2026
Appraised Value: $ 2,600,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**



DETACHED METAL FRAME GARAGE



GRAVEL DRIVEWAY



WOOD DECK

Produced using ACI software, 800.234.8727 www.aciweb.com



STONE PATIO & WOOD DECK



WOOD DECK



GRAVEL PATIO



GRAVEL DRIVEWAY



STONE WALKWAY



STONE PATIO

Produced using ACI software, 800.234.8727 www.aciweb.com    PHT3 05212013



PUTTING GREEN



ENCLOSED PORCH



KITCHEN

Produced using ACI software, 800.234.8727 www.aciweb.com



LIVING ROOM



KITCHEN



MASTER BEDROOM



MASTER BATH



BEDROOM



BATH

Produced using ACI software, 800.234.8727 www.aciweb.com    PHT3 05212013



BEDROOM



OFFICE/BEDROOM



OFFICE/BEDROOM

Produced using ACI software, 800.234.8727 www.aciweb.com



1/2 BATH



FAMILY ROOM
FINISHED BASEMENT



BATH
FINISHED BASEMENT



SEMI-FINISHED LAUNDRY/STORAGE
ROOM IN BASEMENT



SEMI-FINISHED LAUNDRY/STORAGE
ROOM IN BASEMENT



STORAGE ROOM
FINISHED BASEMENT

Produced using ACI software, 800.234.8727 www.aciweb.com



STORAGE ROOM
FINISHED BASEMENT



UNFINISHED MECHANICAL CLOSET
BASEMENT

Produced using ACI software, 800.234.8727 www.aciweb.com          PHT3 05212013

# FLOORPLAN SKETCH

| Client: Philip G. Young, Receiver | File No.: 26-4506 |
|---|---|
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA   Zip: 02539 |



| AREA CALCULATIONS SUMMARY | | | | | | AREA CALCULATIONS BREAKDOWN | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Code | Description | Factor | Net Size | Perimeter | Net Totals | Name | Base x | Height x | Width = | Area |
| GLA1 | FIRST FLOOR | 1.0 | 1718.4 | 208.3 | 1718.4 | FIRST FLOOR | | 23.0 x | 18.2 = | 418.6 |
| GLA2 | SECOND FLOOR | 1.0 | 265.0 | 84.0 | 265.0 | | | 53.2 x | 24.0 = | 1275.8 |
| BSMT | UNFINISHED BS | 1.0 | 54.0 | 30.0 | | | | 6.0 x | 2.0 = | 12.0 |
| | FINISHED BSMT | 1.0 | 1641.4 | 200.4 | 1695.4 | | | 6.0 x | 2.0 = | 12.0 |
| GAR | GARAGE | 1.0 | 489.9 | 88.6 | 489.9 | SECOND FLOOR | | 13.0 x | 10.0 = | 130.0 |
| | | | | | | | | 9.0 x | 7.0 = | 63.0 |
| | | | | | | | | 8.0 x | 4.0 = | 32.0 |
| | | | | | | | | 10.0 x | 4.0 = | 40.0 |
| | Net LIVABLE | cnt | 2 | (rounded) | 1,983 | | | | | |
| | | | | | | 8 total items | | | (rounded) | 1,983 |

Sketch by ApexSketch

© iLOOKABOUT (US) Inc. dba Apex Software

# DIMENSION LIST ADDENDUM

| | | | |
|---|---|---|---|
| Client: Philip G. Young, Receiver | | File No.: 26-4506 | |
| Property Address: 471 West Tisbury Road | | Case No.: | |
| City: Edgartown | State: MA | | Zip: 02539 |

| GROSS BUILDING AREA (GBA) | | 1,983 | |
|---|---|---|---|
| GROSS LIVING AREA (GLA) | | 1,983 | |
| Area(s) | Area | % of GLA | % of GBA |
| Living | 1,983 | | 100.00 |
| Level 1 | 1,718 | 86.64 | 86.64 |
| Level 2 | 265 | 13.36 | 13.36 |
| Level 3 | | | |
| Other | | | |
| Basement [X] GBA | 1,695 | | 85.48 |
| Garage [X] | 490 | | 24.71 |

## Area Measurements / Area Type

| Measurements | Factor | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
|---|---|---|---|---|---|---|---|---|
| 23.00 x 18.20 | x 1.00 | = 418.60 | X | | | | | |
| 53.16 x 24.00 | x 1.00 | = 1,275.84 | X | | | | | |
| 6.00 x 2.00 | x 1.00 | = 12.00 | X | | | | | |
| 6.00 x 2.00 | x 1.00 | = 12.00 | X | | | | | |
| 13.00 x 10.00 | x 1.00 | = 130.00 | | X | | | | |
| 9.00 x 7.00 | x 1.00 | = 63.00 | | X | | | | |
| 8.00 x 4.00 | x 1.00 | = 32.00 | | X | | | | |
| 10.00 x 4.00 | x 1.00 | = 40.00 | | X | | | | |
| 9.00 x 6.00 | x 1.00 | = 54.00 | | | | | X | |
| 23.00 x 18.20 | x 1.00 | = 418.60 | | | | | X | |
| 47.20 x 24.00 | x 1.00 | = 1,132.80 | | | | | X | |
| 15.00 x 6.00 | x 1.00 | = 90.00 | | | | | X | |
| 23.00 x 21.30 | x 1.00 | = 489.90 | | | | | | X |

Produced using ACI software, 800.234.8727 www.aciweb.com

DIM 10072013

## PLAT MAP

| | |
|---|---|
| Client: Philip G. Young, Receiver | File No.: 26-4506 |
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA    Zip: 02539 |



| Client: Philip G. Young, Receiver | File No.: 26-4506 |
|---|---|
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA    Zip: 02539 |



Plan of Land in
Edgartown, MA
Prepared For
Keith Weaver
Schofield, Barbini & Hoehn Inc.
Land Surveying • Civil Engineering

# LOCATION MAP



| Client: Philip G. Young, Receiver | | File No.: 26-4506 | |
|---|---|---|---|
| Property Address: 471 West Tisbury Road | | Case No.: | |
| City: Edgartown | State: MA | | Zip: 02539 |



Subject
471 West Tisbury Road
Edgartown, MA 02530

| Client: Philip G. Young, Receiver | File No.: 26-4506 |
|---|---|
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA   Zip: 02539 |



| | |
|---|---|
| Client: Philip G. Young, Receiver | File No.: 26-4506 |
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA Zip: 02539 |



### COMPARABLE SALE #1

46 Bold Meadow Road
Edgartown, MA
Sale Date: 01/06/2026
Sale Price: $ 2,401,000



### COMPARABLE SALE #2

27 Watcha Path
Edgartown, MA
Sale Date: 08/29/2025
Sale Price: $ 2,590,000



### COMPARABLE SALE #3

28 Marthas Road
Edgartown, MA
Sale Date: 02/20/2026
Sale Price: $ 2,475,000

| | |
|---|---|
| Client: Philip G. Young, Receiver | File No.: 26-4506 |
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA    Zip: 02539 |



**COMPARABLE SALE #4**

357 West Tisbury Road
Edgartown, MA
Sale Date: U/A 04/11/2026
Sale Price: $ 2,580,000

**COMPARABLE SALE #5**

Sale Date:
Sale Price: $

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

| Client: Philip G. Young, Receiver | | File No.: 26-4506 | |
|---|---|---|---|
| Property Address: 471 West Tisbury Road | | Case No.: | |
| City: Edgartown | State: MA | | Zip: 02539 |





| Client: Philip G. Young, Receiver | File No.: 26-4506 |
|---|---|
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA | Zip: 02539 |



MARTHA'S VINEYARD LAND BANK FEE
PAID $ 44,500
EXEMPT$
NO.    DATE    CERTIFICATION



Bk: 1652 Pg: 137   Doc: DEED
Page: 1 of 2   04/11/2023 12:28 PM

MASSACHUSETTS EXCISE TAX
Dukes County ROD #8 001
Date: 04/11/2023 12:28 PM
Ctl# 046559 10537 Doc# 00001714
Fee: $10,146.00 Cons: $2,225,000.00

**Quitclaim Deed**

Roundabout Holdings LLC, a foreign limited liability company of 225 NE Mizner BLVD Suite

770, Boca Raton, FL 33432, in consideration of TWO MILLION TWO HUNDRED TWENTY

FIVE THOUSAND DOLLARS 00/100 ($2,225,000.00)

GRANT TO UN House MV, LLC, 600 North Main Street Suite 2000, Shelbyville, TN 37160, a

limited liability company organized under the laws of Delaware.

With *QUITCLAIM COVENANTS*

The land with the buildings thereon located in Edgartown, Dukes County, Massachusetts being
further described as follows:

Being shown on a plan entitled "Plan of Land in Edgartown, MA Prepared for Keith Weaver
Scale: 1"=40' April 1, 2023 Schofield, Barbini & Hoehn Inc. Land Surveying Civil Engineering
12 Surveyor's Lane, Box 339 Vineyard Haven, Mass.", recorded with the Dukes County
Registry of Deeds in Plan Book 19, Page 160, to which plan reference is hereby made for a more
particular description thereof.

Also being a portion of the lot shown as the "Heirs of Julia F. Vincent" on a Plan of Land
entitled "EDGARTOWN MEADOWS A SUBDIVISION OF LAND IN EDGARTOWN MASS
February 5, 1974 Scale 1"=100' Dean R. Swift Reg'd Land Surveyor Vineyard Haven, Mass."
recorded in the Dukes county Registry of Deeds as Edgartown Case File No. 99, to which plan
reference is hereby made for a more particular description and also shown on a plan entitled
"Plan of Land in EDGARTOWN, MASS as surveyed for Herman W. Vincent, Scale 1"- 200',
dated August 22, 1973 Schofield Brothers, Inc. Professional Engineers & Registered Land
Surveyors, Vineyard Haven, Mass." and filed as Edgartown Case File No. 91. and, further
known as Edgartown Assessor parcel, Map 22 Lot 1.

Together with and subject to any and all restrictions, covenants, appurtenances, easements and
rights of way of record, insofar as the same are in force and applicable.

Grantor hereby releases any and all homestead rights in the property and certifies under the
pains and penalties of perjury that there are no other persons who are entitled to homestead rights
in the subject premises.

Grantor is not classified for the current taxable year as a corporation for federal income tax
purposes.

For Grantor's Title, see deed filed in the Dukes County Registry of Deeds at Book 1367
Page 283.

Property Address: 10 Codman Spring Road, Edgartown, MA 02539

# APPRAISAL OF



Single Family Residence

## LOCATED AT:

471 West Tisbury Road
Edgartown, MA  02539

## FOR:

Phillip Young, Receiver
6100 Tower Circle, Suite 200
Franklin, TN, 37067

## AS OF:

April 24, 2026

## BY:

Thomas C. Garrahan
MA Certified General R.E. Appraiser #4535

Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 33 of 131
PageID #: 7652

# THOMAS C. GARRAHAN
## REAL ESTATE APPRAISER
Massachusetts Certified General Number  4535

15 Fox Run,  East Sandwich,  MA 02537                    (508) 888-8646

4/30/2026

Phillip Young, Receiver
6100 Tower Circle, Suite 200
Franklin, TN, 37067

File Number:   2026-015

Attorney Young,

In accordance with your request, I have appraised the real property at:

471 West Tisbury Road
Edgartown, MA  02539

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   April 24, 2026                        is:

$2,600,000
Two Million Six Hundred Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

Sincerely,

Thomas C. Garrahan
MA Certified General R.E. Appraiser #4535

# UNIFORM RESIDENTIAL APPRAISAL REPORT

**Property Description**     File No. 2026-015

## SUBJECT

| | |
|---|---|
| Property Address 471 West Tisbury Road | City Edgartown   State MA   Zip Code 02539 |
| Legal Description Book 1652, Page 137 | County Dukes |
| Assessor's Parcel No. 22/1 | Tax Year 2026   R.E. Taxes $ 2.48/Mill   Special Assessments $ NA |

Borrower UN House MV LLC    Current Owner UN House MV LLC    Occupant: [X] Owner [ ] Tenant [ ] Vacant

Property rights appraised [X] Fee Simple [ ] Leasehold   Project Type [ ] PUD [ ] Condominium (HUD/VA only)   HOA$ NA /Mo.

Neighborhood or Project Name NA    Map Reference See Assessor P.N.    Census Tract Not Applicable

Sale Price $ Market Value   Date of Sale Current   Description and $ amount of loan charges/concessions to be paid by seller NA

Lender/Client Phillip Young, Receiver    Address 6100 Tower Circle, Suite 200, Franklin, TN 37067

Appraiser Thomas C. Garrahan    Address 15 Fox Run, East Sandwich, MA 02537

## NEIGHBORHOOD

| Location | [ ] Urban | [X] Suburban | [ ] Rural | **Predominant occupancy** | **Single family housing** | | **Present land use %** | **Land use change** |
|---|---|---|---|---|---|---|---|---|
| Built up | [ ] Over 75% | [X] 25-75% | [ ] Under 25% | | PRICE $(000) | AGE (yrs) | One family 70% | [X] Not likely [ ] Likely |
| Growth rate | [ ] Rapid | [X] Stable | [X] Slow | [X] Owner | 850 Low | New | 2-4 family 0% | [ ] In process |
| Property values | [ ] Increasing | [X] Stable | [ ] Declining | [ ] Tenant | 15000 High | 200 | Multi-family | To: |
| Demand/supply | [ ] Shortage | [X] In balance | [ ] Over supply | [X] Vacant (0-5%) | Predominant | | Commercial 0% | |
| Marketing time | [X] Under 3 mos. | [ ] 3-6 mos. | [ ] Over 6 mos. | [ ] Vacant (over 5%) | 1900 | 45 | Vacant 30% | |

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

Neighborhood boundaries and characteristics: Northeast by Vineyard Haven Road; South by West Tisbury Road; West by Barnes Road. Primarily year round single family dwellings.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Martha's Vineyard is a premier island resort located off Cape Cod and popular with affluent out of state vacationers. The subject is centrally located in a neighborhood of single family dwellings similar in age, size, condition and style. Downtown Edgartown is 2 miles northeast. Oak Bluffs and Vineyard Haven are both approximately 8 miles driving distance northwest. The Martha's Vineyard Airport is 3.5 miles west. Proximity to Downtown Edgartown as well as to golf and saltwater beaches affect underlying site values.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Values were stable until market activity generally began to pick up during mid-Spring of 2020. The market showed appreciation since then, through approximately June 2023. Marketing times are estimated at three to six months. Properties have sold above and below their assessed values. The subject is assessed at $2,303,300 during Fiscal Year 2026.

## PUD

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? [ ] YES [ ] NO

Approximate total number of units in the subject project NA    Approximate total number of units for sale in the subject project NA

Describe common elements and recreational facilities: NA

## SITE

| | |
|---|---|
| Dimensions See attached Assessors Map | Topography Level |
| Site area 2.16 Acre   Corner Lot [X] Yes [ ] No | Size Above Average |
| Specific zoning classification and description R60 (minimum 60,000 SF) | Shape Irregular |
| Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning | Drainage Appears Adequate |
| Highest & best use as improved: [X] Present use [ ] Other use (explain) | View Nbhd/Average |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | |
|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Asphalt | [X] | | Landscaping Average |
| Gas | | Propane Tank | Curb/gutter | None | | | Driveway Surface Crushed Stone |
| Water | [X] | | Sidewalk | None | | | Apparent easements None Apparent |
| Sanitary sewer | | Private Septic | Street lights | None | | | FEMA Special Flood Hazard Area [ ] Yes [X] No |
| Storm sewer | | | Alley | None | | | FEMA Zone X   Map Date 7/20/16 |

FEMA Map No. 25007C0118J

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): The site's perimeter is completely fenced. Most of the site has been cleared of trees and features the dwelling site, lawn, driveway, putting green and deck and patio areas. See Attached Addendum.

## DESCRIPTION OF IMPROVEMENTS

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | Concrete | Slab | No | Area Sq.Ft. | 1945 | Roof | [ ] |
| No. of Stories | 2 | Exterior Walls | Wd.Shg. | Crawl Space | No | % Finished | 50% | Ceiling | [X] |
| Type (Det./Att.) | Detached | Roof Surface | Asph. Sh. | Basement | Full | Ceiling | Finished | Walls | [X] |
| Design (Style) | Contemp. | Gutters & Dwnspts. | Overhang | Sump Pump | No | Walls | Drywall | Floor | [ ] |
| Existing/Proposed | Existing | Window Type | Casement | Dampness | No Evidence | Floor | Carpet | None | [ ] |
| Age (Yrs.) | 46 | Storm/Screens | Therm/Yes | Settlement | No Evidence | Outside Entry | Bulkhead | Unknown | [ ] |
| Effective Age (Yrs.) | 10 | Manufactured House | No | Infestation | No Evidence | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | 1 | | | 1 | X | | 1,945 |
| Level 1 | | 1 | | 1 | | | | 3 | 2 | | | 1,969 |
| Level 2 | | | | | | | | 1 | .5 | | | 348 |

Finished area **above** grade contains: 6 Rooms; 4 Bedroom(s); 2.5 Bath(s); 2,317 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Carpet | Type | FHW | Refrigerator | [X] | None | [X] | Fireplace(s) #1 | [X] | None | [ ] |
| Walls | Drywall | Fuel | Gas | Range/Oven | [X] | Stairs | | Patio 600 SF | [X] | Garage # of cars | |
| Trim/Finish | Wood | Condition | Avg. | Disposal | [ ] | Drop Stair | | Deck 1494 SF | [X] | Attached | |
| Bath Floor | Tile | COOLING | | Dishwasher | [X] | Scuttle | | Porch 228 E.Porch | [X] | Detached 2 | |
| Bath Wainscot | Tile | Central | No | Fan/Hood | [X] | Floor | | Fence | [X] | Built-In | |
| Doors | 6 Panel Wood | Other | Minisplits | Microwave | [ ] | Heated | | Pool | | Carport | |
| Condition: Good | | Condition | Avg | Washer/Dryer | [X] | Finished | | | | Driveway 20 | |

Additional features (special energy efficient items, etc.): The dwelling is a 46 year-old Contemporary. The kitchen and bathrooms are modern. The general living area which includes the kitchen and livingroom are relatively small and lack a dedicated dining area.

## COMMENTS

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: The subject appeared in good condition for its age, having been well maintained and updated. 10% Physical Depreciation based on 1% per year of effective age of the improvements. The effective age reflects the current condition and renovations, thus the effective age is lower than its chronological age. No functional or external obsolescence was observed.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: There are no known or apparent environmental conditions that would affect the value. See Statement of Limiting Conditions.

Case 4:25-cv-00038-CEA-CHS   Document 196-1   Filed 05/11/26   Page 35 of 131   PageID #: 7654

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. 2026-015

**Valuation Section**

## COST APPROACH

| | |
|---|---|
| ESTIMATED SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . = $ | 500,000 |

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | | | | |
|---|---|---|---|---|
| Dwelling | 2,317 Sq. Ft. @ $ | 650.00 | = $ | 1,506,050 |
| Bsmt. 1945 | Sq. Ft. @ $ | 200.00 | = | 389,000 |
| 600Pat.@$50,1494Dk@50,228EP@$250 | | | = | 143,100 |
| Garage/Carport 528 | Sq. Ft. @ $ | 80.00 | = | 42,240 |
| Total Estimated Cost New | | | = $ | 2,080,390 |
| Less 100 Physical | Functional | External | | |
| Depreciation 10% | $0 | $0 | = $ | 208,039 |
| Depreciated Value of Improvements . . . . . . . . . . . . . . . . . . | | | = $ | 1,872,351 |
| "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . | | | = $ | 150,000 |
| **INDICATED VALUE BY COST APPROACH** . . . . . . . . . . . . . = $ | | | | 2,522,400 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):
The cost data is from local builders and the market. Depreciation is age/life method of 1% per year of effective age of improvements. The subject's site value was extracted from market data of improved sales. See building sketch for Gross Living Area, being approximate. The putting green, fencing, driveway and landscaping are included in the as-is value of site improvements. Septic system, appliance and fireplace costs included in building value. No functional or external obsolescence was observed.

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | + (-) $ Adjustment | COMPARABLE NO. 2 | + (-) $ Adjustment | COMPARABLE NO. 3 | + (-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 471 West Tisbury Road Edgartown | 46 Bold Meadow Road Edgartown | | 8 Old Dunhams Corner Way Edgartown | | 16 Mocking Bird Drive Edgartown | |
| Proximity to Subject | | 0.97 miles NW | | 1.94 miles SE | | 2.15 miles NW | |
| Sales Price | $ Market Value | $ 2,401,000 | | $ 2,340,000 | | $ 2,495,000 | |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 1,012.23 ☑ | | $ 803.57 ☑ | | $ 926.13 ☑ | |
| Data and/or Verification Sources | Insp./Owner Assessor | Ext. Insp./B&T/MLS Assessor | | Ext. Insp./B&T/MLS Assessor | | Ext. Insp./B&T/MLS Assessor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
| Sales or Financing Concessions | NA | None Known | | None Known | | None Known | |
| Date of Sale/Time | Current | 1/6/2026 | | 12/19/2025 | | 11/20/2025 | |
| Location | Average | Superior | -100,000 | Superior | -100,000 | Inferior | 100,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.16 Acre | .82 Acre | 62,000 | .89 Acre | 58,800 | .50 Acre | 76,900 |
| View | Nbhd/Average | Nbhd/Average | | Nbhd/Average | | Nbhd/Average | |
| Design and Appeal | Contemp./Avg. | Cape/Avg | | Colonial/Avg | | Colonial/Avg | |
| Quality of Construction | Good | Good | | Inferior | 145,600 | Good | |
| Age | 46A/10E | 34/Eff.10 | | 37/Eff.20 | | 9/Eff.5 | |
| Condition | Good | Good | | Inferior | 194,400 | Superior | -108,600 |
| Above Grade Room Count 450 | Total 6 Bdrms 4 Baths 2.50 | Total 6 Bdrms 4 Baths 3.50 | -20,000 | Total 8 Bdrms 4 Baths 4.5 | -40,000 | Total 10 Bdrms 4 Baths 3.5 | -20,000 |
| Gross Living Area | 2,317 Sq.Ft. | 2,372 Sq.Ft. | -24,750 | 2,912 Sq.Ft. | -267,750 | 2,694 Sq.Ft. | -169,650 |
| Basement & Finished | 1945 Sq.Ft. | 960 SF | 98,500 | 1196 SF | 74,900 | 1196 SF | 74,900 |
| Rooms Below Grade | 972 SF Fin. | None | 145,800 | None | 145,800 | 700 SF Finished | 40,800 |
| Functional Utility | Satisfactory | Satisfactory | | Satisfactory | | Satisfactory | |
| Heating/Cooling | FHW / AC | FHW / AC | | FHA/ C/Air | | FHA/ C/Air | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Det. Garage | 2 Att. Garage | | 2 Att. Garage | | 1 Att. Garage | 20,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | 228EP/600P/1494Dk 1 Fireplace | 232 OP/240EP/180P 1 Fireplace | 44,000 | 100OP/494Dk 1 Fireplace | 77,200 | 76OP/524 Dk 1 Fireplace | 78,400 |
| Fence, Pool, etc. | None | None | | None | | None | |
| Other | None | None | | None | | None | |
| Net Adj. (total) | | [X] + [ ] - $ | 205,550 | [X] + [ ] - $ | 288,950 | [X] + [ ] - $ | 92,750 |
| Adjusted Sales Price of Comparable | | Gross: 20.6% Net: 8.6% $ | 2,606,550 | Gross: 47.2 Net: 12.3 $ | 2,628,950 | Gross: 27.6 Net: 3.7 $ | 2,587,750 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): A diligent search was made for comparable recent sales of dwellings in the subject neighborhood. The search was expanded to include those of different styles and bedroom count, more than six months old and beyond one mile. The five most effective comparable sales were employed. The sales exceeded traditional adjustment guidelines but offered comparable functional and locational amenities. Given the market conditions at the time of valuation, a sales price of $2,600,000 appears most probable. See Attached Addendum.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | $2,235,000 4/11/2023 | No sale in prior year | No sale in prior year | No sale in prior year |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:
See Attached Addendum

| | |
|---|---|
| **INDICATED VALUE BY SALES COMPARISON APPROACH** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 2,600,000 |
| **INDICATED VALUE BY INCOME APPROACH** (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | N/A |

## RECONCILIATION

This appraisal is made [X] "as is" [ ] subject to the repairs, alterations, inspections or conditions listed below [ ] subject to completion per plans and specifications.

Conditions of Appraisal: I have performed no services with respect to the subject property in the past three years. It is believed and assumed that title insurance is available and that there is no measurable affect on market value of any title issues.

Final Reconciliation: Greatest weight was given to the Sales Comparison Analysis in estimating final market value. The Income Approach was not a meaningful method in the subject market. The final market value estimate supports the contracted sales price of $2,595,000.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 4/24/2026 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 2,600,000 .

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature *Thomas C. Garrahan* | Signature | [ ] Did [ ] Did Not Inspect Property |
| Name Thomas C. Garrahan | Name | |
| Date Report Signed 4/30/2026 | Date Report Signed | |
| State Certification # General 4535 State MA | State Certification # State | |
| Or State License # State | Or State License # State | |

Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 36 of 131 PageID #: 7655

# UNIFORM RESIDENTIAL APPRAISAL REPORT

**Supplemental Valuation Section**  **File No.** 2026-015

| ITEM | SUBJECT | COMPARABLE NO. 4 | + (-) $ Adjustment | COMPARABLE NO. 5 | + (-) $ Adjustment | COMPARABLE NO. 6 | + (-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 471 West Tisbury Road Edgartown | 24 Dark Woods Road Edgartown | | 55 Old Purchase Road Edgartown | | | |
| Proximity to Subject | | 1.22 miles NE | | 0.29 miles NE | | | |
| Sales Price | $ Market Value | $ 2,075,000 | | $ 2,175,000 | | $ | |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 786.58 ☑ | | $ 1,086.96 ☑ | | $ 0.00 ☑ | |
| Data and/or Verification Sources | Insp./Owner Assessor | Ext. Insp./B&T/MLS Assessor | | Ext. Insp./B&T/MLS Assessor | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing Concessions | NA | None Known | | None Known | | | |
| Date of Sale/Time | Current | 09/29/2025 | | 4/18/2025 | | | |
| Location | Average | Average | | Average | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 2.16 Acre | .53 Acre | 77,500 | .61 Acre | 71,800 | | |
| View | Nbhd/Average | Nbhd/Average | | Nbhd/Average | | | |
| Design and Appeal | Contemp./Avg. | Cape/Avg | | Conv./Avg. | | | |
| Quality of Construction | Good | Inferior | 263,800 | Good | | | |
| Age | 46A/10E | 28/Eff.10 | | 37/Eff.10 | | | |
| Condition | Good | Good | | Good | | | |
| Above Grade Room Count | Total 6 / Bdrms 4 / Baths 2.50 | Total 7 / Bdrms 3 / Baths 3.50 | -20,000 | Total 8 / Bdrms 5 / Baths 2.50 | | Total / Bdrms / Baths | |
| Gross Living Area | 2,317 Sq.Ft. | 2,638 Sq.Ft. | -144,450 | 2,001 Sq.Ft. | 142,200 | Sq.Ft. | |
| Basement & Finished | 1945 Sq.Ft. | 1866 SF | 7,900 | 1238 SF | 70,700 | | |
| Rooms Below Grade | 972 SF Fin. | None | 145,800 | 778 SF finished | 29,100 | | |
| Functional Utility | Satisfactory | Satisfactory | | Satisfactory | | | |
| Heating/Cooling | FHW / AC | FHA/ C/Air | | FHA/ C/Air | | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 2 Det. Garage | 1 Att. Garage | 20,000 | None | 40,000 | | |
| Porch, Patio, Deck, | 228EP/600P/1494Dk | 144OP/473 Deck | 75,600 | 168 OP/545 Deck | 72,300 | | |
| Fireplace(s), etc. | 1 Fireplace | No Fireplace | 20,000 | No Fireplace | 20,000 | | |
| Fence, Pool, etc. | None | None | | None | | | |
| Other | None | None | | None | | | |
| Net Adj. (total) | | ☒ + ☐ - $ | 446,150 | ☒ + ☐ - $ | 446,100 | ☒ + ☐ - $ | 0 |
| Adjusted Sales Price of Comparable | | Gross: 37.4% Net: 21.5% $ | 2,521,150 | Gross: 20.5% Net: 20.5% $ | 2,621,100 | Gross: 0% Net: 0% $ | 0 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc. ):

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | $2,235,000 4/11/2023 | No sale in prior year | No sale in prior year | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

*SALES COMPARISON ANALYSIS*

*ADDITIONAL COMMENTS*

Produced using ACI software, 800.234.8727 www.aciweb.com

**ADDENDUM**

**Purpose of the Appraisal and Intended Use/Users**

The purpose of this appraisal is to estimate market value as of the date of valuation. The intended use is for asset valuation purposes. The intended user is Phillip Young, Receiver of Uncle Nearest.

**Comments on Public Sewage, Private Sewage Systems and Title 5**

This appraisal assumes that any private sewage system which may be located at the subject dwelling, or at any of the comparable properties utilized in this report, completely complies with all state and local codes regarding private sewage systems, and would pass any "Title 5" inspection. This appraisal report does not consider any positive or negative impact Title 5 may have had to the indicated sales price of the chosen comparables, or any impact the enactment or enforcement of Title 5 may have to the estimated market value presented herein for the subject dwelling.

**Site Comments**

Title issues have been reported; their details have been retained in my office files. It is believed and assumed that title insurance is available and that there is no measurable affect on market value.

No other apparent adverse easements, encroachments, etc.

**Comments on Sales Comparison**

No time adjustments were made. The Sales were adjusted a percentage of subject site value (estimated at $500,000) for differences in location and/or lot size. The lot size adjustments were made based on an estimated site value of $500,000 for a base lot size of 2.16 acres and a differential at 20%. The bathroom adjustments were made based on $10,000 per half bath and $20,000 for full bath differences with the subject.

The effective age of the sales was based on information derived from MLS and assessors records and the observed condition of the improvements based on exterior inspections. The Age and Condition adjustments were made one time under Condition and adjusted to the effective age of the improvements. The estimated value of each sale's improvements was derived by subtracting from the sales price its estimated site value. The extracted value of the improvements was then multiplied by the difference in effective age of the sale compared with the subject based on 1% per year.

The Gross Living Area adjustment was made at $450/SF, rounded. Finished basement space differences were adjusted at $150/SF, rounded. Deck etc. adjustment at: Decks at $30/SF; Patios at $30/SF; Enclosed Porches at $150/SF; and Open Porches at $50/SF. All five sales were utilized in estimating market value.

**Analysis of Current Agreement**

The subject was purchased for $2,235,000 on April 11, 2023 in an arms-length transaction. After a short listing period, the subject is now under agreement for sale for $2,595,000. The broker reports that since the 2023 purchase, approximately $1,000,000 was spent on landscaping and minor interior work (kitchen backsplash).

Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 38 of 131
PageID #: 7657

| Borrower: UN House MV LLC | | File No.: 2026-015 | |
|---|---|---|---|
| Property Address: | 471 West Tisbury Road | Case No.: | |
| City: Edgartown | | State: MA | Zip: 02539 |
| Lender: Phillip Young, Receiver | | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: 04/24/26
Appraised Value: $ 2,600,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**



Dwelling Rear and East Side



Dwelling West Side



Putting Green



Detached Garage

Produced using ACI software, 800.234.8727 www.aciweb.com    PHT2L 05212013



Codman Spring Road
Subject Property at Photo Right



Portion of Subject Service Driveway

Produced using ACI software, 800.234.8727 www.aciweb.com    PHT2L 05212013

# PLAT MAP

Borrower: UN House MV LLC  File No.: 2026-015

Property Address: 471 West Tisbury Road  Case No.:

City: Edgartown  State: MA  Zip: 02539

Lender: Phillip Young, Receiver



| | | |
|---|---|---|
| Borrower: UN House MV LLC | | File No.: 2026-015 |
| Property Address: | 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA | Zip: 02539 |
| Lender: Phillip Young, Receiver | | |

Subject
471 West Tisbury Road
Edgartown, MA 02539

# FLOORPLAN SKETCH

**Sketch**

First Floor
[Area: 1969 ft²]

Bedroom
Bath
Bedroom
Bath
Kitchen
Living Room
6ft 12ft 6ft
23ft
23ft
23ft
42ft
30ft
Wood Deck
[Area: 894 ft²]
24ft
47ft

Enclosed Porch
[Area: 228 ft²]
12ft
16ft
12ft
12ft

Second Floor
[Area: 348 ft²]
Bedroom
Half Bath
11ft
4ft
3ft
4ft
6ft
20ft
14ft

16 ft

| Living Area | | Area Calculation | | | |
|---|---|---|---|---|---|
| First Floor | 1969 ft² | **First Floor** | | | x 1.00 = 1969 ft² |
| Second Floor | 348.00 ft² ☐ | 2ft x | 6ft x | 1.00 = | 12 ft² |
| **Nonliving Area** | ☐ | 23ft x | 23ft x | 1.00 = | 529 ft² |
| Enclosed Porch | 228 ft² ☐ | 61ft x | 6ft x | 1.00 = | 366 ft² |
| Wood Deck | 894 ft² ☐ | 59ft x | | 1.00 = | 1062 ft² |
| | | **Second Floor** | | | x 1.00 = 348.00 ft² |
| | ☐ | 4ft x | 11ft x | 1.00 = | 44.00 ft² |
| | ☐ | 4ft x | 6ft x | 1.00 = | 24 ft² |
| **Total Living Area (rounded):** | 2317 ft² ☐ | 20ft x | 14ft x | 1.00 = | 280.00 ft² |

# LOCATION MAP



| | |
|---|---|
| Borrower: UN House MV LLC | File No.: 2026-015 |
| Property Address: 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA          Zip: 02539 |
| Lender: Phillip Young, Receiver | |



**COMPARABLE SALE #1**

46 Bold Meadow Road
Edgartown
Sale Date: 1/6/2026
Sale Price: $ 2,401,000



**COMPARABLE SALE #2**

8 Old Dunhams Corner Way
Edgartown
Sale Date: 12/19/2025
Sale Price: $ 2,340,000



**COMPARABLE SALE #3**

16 Mocking Bird Drive
Edgartown
Sale Date: 11/20/2025
Sale Price: $ 2,495,000

| | | |
|---|---|---|
| Borrower: UN House MV LLC | | File No.: 2026-015 |
| Property Address: | 471 West Tisbury Road | Case No.: |
| City: Edgartown | State: MA | Zip: 02539 |
| Lender: Phillip Young, Receiver | | |



**COMPARABLE SALE #4**

24 Dark Woods Road
Edgartown
Sale Date: 09/29/2025
Sale Price: $ 2,075,000



**COMPARABLE SALE #5**

55 Old Purchase Road
Edgartown
Sale Date: 4/18/2025
Sale Price: $ 2,175,000

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Case 4:25-cv-00038-CEA-CHS Document 196-1 Filed 05/11/26 Page 49 of 131 PageID #: 7668

**APPRAISERS CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

10. Unless otherwise stated, I have not appraised or provided other appraisal services relating to this property in the past three years.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 471 West Tisbury Road, Edgartown, MA 02539

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: *Thomas C. Garrahan* | Signature: |
| Name: Thomas C. Garrahan | Name: |
| Date Signed: 4/30/2026 | Date Signed: |
| State Certification #: General 4535 | State Certification #: |
| or State License #: | or State License #: |
| State: MA | State: |
| Expiration Date of Certification or License: 8/29/2026 | Expiration Date of Certification or License: |

☐ Did ☐ Did Not Inspect Property

MA Certified General R.E. Appraiser #4535

Case 4:25-cv-00038-CEA-CHS Document 196-1 Filed 05/11/26 Page 50 of 131 PageID #: 7669

Case 1:25-cv-00230-CEA-CHS   Document 190-4   Filed 05/12/25   Page 51 of 131   PageID #: 7670

| Property Location | 471 WEST TISBURY RD | | Map ID | 22/ 1/ / / | | Bldg Name | | State Use 1010 | |
|---|---|---|---|---|---|---|---|---|---|
| Vision ID 3156 | Account # V6640 | | Bldg # 1 | | | Sec # 1 of 1 | Card # 1 of 1 | Print Date 12/29/2025 9:44:20 P | |

| CURRENT OWNER | | | | TOPO | | UTILITIES | STRT / ROAD | LOCATION | | CURRENT ASSESSMENT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UN HOUSE MV LLC | | | | | 2 | Public Water | | | | Description | Code | Appraised | Assessed |
| | | | | | 3 | Public Sewer | | | | RESIDENTL | 1010 | 1,978,400 | 1,978,400 |
| 60 NORTH MAIN ST STE 2000 | | | | **SUPPLEMENTAL DATA** | | | | | | RES LND | 1010 | 329,900 | 329,900 |
| | | | | Alt Prcl ID | | | Restriction | | | | | | |
| | | | | PLN#/Rec | BK19 PG 160 4/7/24 | | Hist Distrct | | | | | | |
| SHELBYVILLE | TN | 37160 | | Lot# | | | Other Note | | | | | | |
| | | | | Plan Notes | | | UC-Misc 1 | CK '24 BP | | | | | |
| | | | | Plan Notes | | | UC-Misc 2 | | | | | | |
| | | | | Plan Notes | | | | | | | | | |
| | | | | GIS ID | M_279167_793455 | | Assoc Pid# | | | Total | | 2,308,300 | 2,308,300 |

| RECORD OF OWNERSHIP | | BK-VOL/PAGE | | SALE DATE | Q/U | V/I | SALE PRICE | VC | PREVIOUS ASSESSMENTS (HISTORY) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UN HOUSE MV LLC | | 1652 | 0137 | 04-11-2023 | Q | I | 2,225,000 | 00 | Year | Code | Assessed | Year | Code | Assessed V | Year | Code | Assessed | |
| ROUNDABOUT HOLDINGS LLC & | | 1367 | 0283 | 01-30-2015 | Q | I | 840,000 | 00 | 2026 | 1010 | 1,978,400 | 2025 | 1010 | 2,118,200 | 2024 | 1010 | 1,328,100 | |
| VINCENT JULIA HEIRS OF & (CAPUANO) | | 1112 | 0673 | 03-01-2007 | U | I | 1 | 1A | | 1010 | 329,900 | | 1010 | 314,800 | | 1010 | 320,500 | |
| VINCENT JULIA HEIRS OF & (LETT-TR) | | 0959 | 0335 | 07-24-2003 | U | V | 1 | 1F | | | | | | | | | | |
| VINCENT JULIA HEIRS OF & (VIN AC II) | | 0948 | 0367 | 05-23-2003 | U | V | 1 | 1J | | | | | | | | | | |
| | | | | | | | | | | Total | 2,308,300 | | Total | 2,433,000 | | Total | 1,648,600 | |

| EXEMPTIONS | | | | | OTHER ASSESSMENTS | | | | | | This signature acknowledges a visit by a Data Collector or Assessor | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | Code | Description | Amount | | Code | Description | Number | Amount | Comm Int | | | |
| | | | | | | | | | | | | |
| | | Total | 0.00 | | | | | | | | | |

**APPRAISED VALUE SUMMARY**

| | |
|---|---|
| Appraised Bldg. Value (Card) | 1,955,000 |
| Appraised Xf (B) Value (Bldg) | 1,900 |
| Appraised Ob (B) Value (Bldg) | 21,500 |
| Appraised Land Value (Bldg) | 329,900 |
| Special Land Value | 0 |
| Total Appraised Parcel Value | 2,308,300 |
| Valuation Method | C |
| Total Appraised Parcel Value | 2,308,300 |

| ASSESSING NEIGHBORHOOD | | | | |
|---|---|---|---|---|
| Nbhd | Nbhd Name | B | Tracing | Batch |
| 0030 | | | | |

**NOTES**

ADDR CHG FROM 10 CODMAN SPRING RD TO
471 WEST TIS RD 7/14/23
OLDER HOUSE MOVED TO NEW FOUNDATION 1990
2026: SEE MINUTES OF 8/22/16 ASSRS MTG

RE: OWNERSHIP. BOARD VOTED TO SHOW
1/30/15 BUYER ON LINE 1.
RECORD CHANGED 1/20/17 (WAS TO HAVE BEEN
DONE PRIOR TO 1/1/17).
SEE ASSOC DOCS

| BUILDING PERMIT RECORD | | | | | | | | | | VISIT / CHANGE HISTORY | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Permit Id | Issue Date | Type | Description | Amount | Insp Date | % Comp | Date Comp | Comments | | Date | Id | Type | Is | Cd | Purpost/Result |
| 2023-326 | 12-22-2022 | RN | Res New Cons | | | 0 | | BUILD FGR | | 09-04-2024 | EH | | | 01 | Cyclical Reinspection |
| 2016-457 | 03-21-2016 | RA | Res Add/Alter | 46,000 | | 0 | | PORCH TO SUNRM & FIN BS | | 06-02-2022 | DM | | | 11 | Field Review |
| 2016-377 | 01-15-2016 | RA | Res Add/Alter | 50,000 | | 0 | | REMODEL KITCHEN/BATH | | 09-06-2018 | EP | | | 01 | Cyclical Reinspection |
| 2008-238 | 04-25-2008 | RN | Res New Cons | | | | | SHD/DCK/PRCH/FNCE | | 05-17-2017 | AU | | | 11 | Field Review |
| 285 | 01-01-2003 | NC | New Construct | | 01-02-2004 | 90 | 01-01-2004 | ?MV SFT HERE? | | 01-23-2017 | EP | | | 11 | Field Review |
| | | | | | | | | | | 11-16-2011 | RK | | | 11 | Field Review |
| | | | | | | | | | | 04-15-2009 | EP | | | 12 | Bldg Permit/Measur/New C |

| LAND LINE VALUATION SECTION | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B. | Use Code | Description | Zone | Land Type | Land Units | | Unit Price | Size Adj | Site Index | Cond. | Nbhd. | Nbhd. Adj | Notes | Location Adjustment | Adj Unit P | Land Value |
| 1 | 1010 | SINGL FAM M-0 | R60 | | 65,340 | SF | 6.87 | 1.00000 | 3 | 1.00 | 0030 | 0.700 | | | 4.81 | 314,200 |
| 1 | 1010 | SINGL FAM M-0 | R60 | | 0.660 | AC | 34,000.00 | 1.00000 | 0 | 1.00 | 0030 | 0.700 | | | 23,800 | 15,700 |
| | | | | Total Card Land Units | 2.16 | AC | Parcel Total Land Area | 2.16 | | | | | | | Total Land Value | 329,900 |

VISION
1302
EDGARTOWN, MA

Case 1:25-cr-10080-DJC   Document 196-1   Filed 06/11/26   Page 52 of 131   PageID #: 7671

## CONSTRUCTION DETAIL

| Element | Cd | Description |
|---|---|---|
| Style: | 07 | Standard Plus |
| Model | 01 | Residential |
| Grade: | 06 | Good |
| Stories: | 1 | |
| Occupancy | 1 | |
| Exterior Wall 1 | 14 | Wood Shingle |
| Exterior Wall 2 | | |
| Roof Structure: | 03 | Gable/Hip |
| Roof Cover | 03 | Asph/F Gls/Cmp |
| Interior Wall 1 | 05 | Drywall/Sheet |
| Interior Wall 2 | | |
| Interior Flr 1 | 12 | Hardwood |
| Interior Flr 2 | | |
| Heat Fuel | 03 | Gas |
| Heat Type: | 04 | Forced Air-Duc |
| AC Type: | 02 | Heat Pump |
| Total Bedrooms | 04 | 4 Bedrooms |
| Total Bthrms: | 3 | |
| Total Half Baths | 1 | |
| Total Xtra Fixtrs | | |
| Total Rooms: | 7 | |
| Bath Style: | 02 | Average |
| Kitchen Style: | 02 | Modern |

## CONSTRUCTION DETAIL (CONTINUED)

| Element | Cd | Description |
|---|---|---|
| | | |

## CONDO DATA

| Parcel Id | | C | | Owne | 0.0 |
|---|---|---|---|---|---|
| | | | B | S | |

| Adjust Type | Code | Description | Factor% |
|---|---|---|---|
| Condo Flr | | | |
| Condo Unit | | | |

## COST / MARKET VALUATION

| | |
|---|---|
| Building Value New | 2,057,942 |
| Year Built | 1980 |
| Effective Year Built | 2019 |
| Depreciation Code | VG |
| Remodel Rating | |
| Year Remodeled | 2016 |
| Depreciation % | 5 |
| Functional Obsol | 0 |
| External Obsol | 0 |
| Trend Factor | 1 |
| Condition | |
| Condition % | |
| Percent Good | 95 |
| Cns Sect Rcnld | 1,955,000 |
| Dep % Ovr | |
| Dep Ovr Comment | |
| Misc Imp Ovr | |
| Misc Imp Ovr Comment | |
| Cost to Cure Ovr | |
| Cost to Cure Ovr Comment | |



## OB - OUTBUILDING & YARD ITEMS(L) / XF - BUILDING EXTRA FEATURES(B)

| Code | Description | L/B | Units | Unit Price | Yr Blt | Cond. Cd | % Gd | Grade | Grade Adj. | Appr. Value |
|---|---|---|---|---|---|---|---|---|---|---|
| FPL1 | MTL-WD C/PI | B | 1 | 2000.00 | 2006 | | 95 | | 0.00 | 1,900 |
| ODP | OUTDOOR PL | L | 1 | 700.00 | 2008 | | 100 | | 0.00 | 700 |
| SHD1 | SHED FRAME | L | 144 | 16.00 | | | 100 | | 0.00 | 2,300 |
| FGR2 | GAR 1ST-GO | L | 528 | 35.00 | | | 100 | | 0.00 | 18,500 |

## BUILDING SUB-AREA SUMMARY SECTION

| Code | Description | Living Area | Floor Area | Eff Area | Unit Cost | Undeprec Value |
|---|---|---|---|---|---|---|
| BAS | First Floor | 1,969 | 1,969 | 1,969 | 586.33 | 1,154,492 |
| CTH | Cath Clng | 0 | 720 | 36 | 29.32 | 21,108 |
| FBM | Basement, Finished | 0 | 1,945 | 875 | 263.77 | 513,042 |
| FEP | Porch, Enclosed, Finished | 0 | 228 | 160 | 411.46 | 93,813 |
| FHS | Half Story, Finished | 348 | 696 | 348 | 293.17 | 204,044 |
| WDK | Deck, Wood | 0 | 918 | 92 | 58.76 | 53,943 |
| | Ttl Gross Liv / Lease Area | 2,317 | 6,476 | 3,480 | | 2,040,442 |



2023 00001714
Bk: 1652 Pg: 137   Doc: DEED
Page: 1 of 2   04/11/2023 12:28 PM



MARTHA'S VINEYARD LAND BANK FEE
☒ PAID $ 44,500
☐ EXEMPT$_____
66249   4-11-23   VMH
NO.     DATE    CERTIFICATION

## Quitclaim Deed

MASSACHUSETTS EXCISE TAX
Dukes County ROD #8 001
Date: 04/11/2023 12:28 PM
Ctrl# 046569 10537 Doc# 00001714
Fee: $10,146.00 Cons: $2,225,000.00

Roundabout Holdings LLC, a foreign limited liability company of 225 NE Mizner BLVD Suite

770, Boca Raton, FL 33432, in consideration of TWO MILLION TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS 00/100 ($2,225,000.00)

**GRANT TO** UN House MV, LLC, 600 North Main Street Suite 2000, Shelbyville, TN 37160, a limited liability company organized under the laws of Delaware.

With *QUITCLAIM COVENANTS*

The land with the buildings thereon located in Edgartown, Dukes County, Massachusetts being further described as follows:

Being shown on a plan entitled "Plan of Land in Edgartown, MA Prepared for Keith Weaver Scale: 1"=40' April 1, 2023 Schofield, Barbini & Hoehn Inc. Land Surveying Civil Engineering 12 Surveyor's Lane, Box 339 Vineyard Haven, Mass.", recorded with the Dukes County Registry of Deeds in Plan Book 19, Page 160, to which plan reference is hereby made for a more particular description thereof.

Also being a portion of the lot shown as the "Heirs of Julia F. Vincent" on a Plan of Land entitled "EDGARTOWN MEADOWS A SUBDIVISION OF LAND IN EDGARTOWN MASS February 5, 1974 Scale 1"=100' Dean R. Swift Reg'd Land Surveyor Vineyard Haven, Mass." recorded in the Dukes county Registry of Deeds as Edgartown Case File No. 99, to which plan reference is hereby made for a more particular description and also shown on a plan entitled "Plan of Land in EDGARTOWN, MASS as surveyed for Herman W. Vincent, Scale 1"- 200', dated August 22, 1973 Schofield Brothers, Inc. Professional Engineers & Registered Land Surveyors, Vineyard Haven, Mass." and filed as Edgartown Case File No. 91, and, further known as Edgartown Assessor parcel, Map 22 Lot 1.

Together with and subject to any and all restrictions, covenants, appurtenances, easements and rights of way of record, insofar as the same are in force and applicable.

Grantor hereby releases any and all homestead rights in the property and certifies under the pains and penalties of perjury that there are no other persons who are entitled to homestead rights in the subject premises.

Grantor is not classified for the current taxable year as a corporation for federal income tax purposes.
**For Grantor's Title, see deed filed in the Dukes County Registry of Deeds at Book 1367 Page 283.**

Property Address: 10 Codman Spring Road, Edgartown, MA 02539

Executed as a sealed instrument this **27th** day of March, 2023.

Roundabout Holdings LLC

By: Joseph T. Anzalone, Manager
aka Joseph Anzalone

STATE OF FLORIDA

County of: Palm Beach

On **27** day of March, 2023, before me, the undersigned notary public, personally appeared Joseph T. Anzalone, Manager Roundabout Holdings LLC, the above-named and proved to me through satisfactory evidence of identification being **Driver's License** , to be the person whose name is signed on this document, and acknowledged to me that he signed it voluntarily for its stated purpose, and swore or affirmed to me that the contents of the document with respect to the homestead rights are truthful and accurate, and that the foregoing instrument is his free act and deed and the free act and deed of Roundabout Holdings LLC.

Notary Public State of Florida
Aryela Fonseca
My Commission
HH 280864
Exp. 6/26/2026

Notary Public:

**6/26/26**
My Commission Expires:

ATTEST: Paulo C. DeOliveira, Register
Dukes County Registry of Deeds

# Dukes County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

### Recording Information

| | |
|---|---|
| Document Number | : 4773 |
| Document Type | : ORD |
| Recorded Date | : October 09, 2025 |
| Recorded Time | : 11:37:27 AM |
| | |
| Recorded Book and Page | : 01720 / 32 |
| Number of Pages(including cover sheet) | : 19 |
| Receipt Number | : 261956 |
| Recording Fee | : $105.00 |

**Dukes County Registry of Deeds**
**Paulo C. DeOliveira, Register**
**81 Main Street**
**PO Box 5231**
**Edgartown, MA 02539**
**508-627-4025**
**www.Masslandrecords.com**

I hereby certify that this is a true and correct copy of the electronically filed original document.
ATTEST: LeAnna R. Wilson, Clerk
By: _____
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., *et al.,* | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants.* | ) | |

## ORDER APPOINTING RECEIVER[1]

Having determined appointing a receiver is necessary in this case, as more fully described in the Court's August 14, 2025, Memorandum Opinion and Order [Doc. 32] which is incorporated by reference, and having evaluated the parties' proposed receiver candidates, [Docs. 36–37], the Court hereby **ORDERS**, **ADJUDGES**, and **DECREES** the following:

1. **Appointment of Receiver:** Phillip G. Young, Jr. of Thompson Burton, PLLC is hereby appointed as receiver (the "Receiver") of Uncle Nearest[2] (including the Subject Entities, as defined below) and the Receivership Assets (as defined below). The Receiver does not have any interest materially adverse to the receivership estate and the appointment of the Receiver is in the best interests of the receivership estate and its stakeholders.[3]

---

[1] All capitalized terms not defined in this Order have the meanings ascribed to them in Farm Credit's Emergency Motion for the Immediate Appointment of Receiver [Doc. 3].

[2] For purposes of this Order, the term "Uncle Nearest" refers collectively to Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC.

[3] Each of the parties' proposed candidates was well-qualified to serve as receiver in this case. The Court chose Mr. Young based on: (i) his extensive restructuring and bankruptcy experience, including regularly serving as a receiver and representing both debtors and creditors; (ii) his familiarity with relevant Tennessee and Sixth Circuit law as a practicing Tennessee attorney; (iii) his physical proximity to Uncle Nearest's operations which will enable greater oversight with minimal additional costs; and (iv) Defendants' representations as to Mr. Young's intent to collaborate with Fawn and Keith Weaver to preserve customer goodwill while fulfilling the receivership's objectives.

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 1 of 18    PageID #: 2496
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 56 of 131
PageID #: 7675

2. **The Receivership Assets**: The "Assets" include (i) all of Uncle Nearest's assets, including proceeds, wherever located, including but not limited to, all of Uncle Nearest's: (a) right, title and interest in any property, real and personal, tangible and intangible, of whatever kind and description, wherever situated, including, without limitation, the Nearest Green Distillery Real Property, property leased or occupied by Uncle Nearest, all rents, litigation claims, accounts receivable, computers, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses, permits, books, records, documents and intellectual property; (b) rights (including rights to payment and distributions), title, and interest, whether now owned or hereafter acquired in, under and to any entity (including, but not limited to, Domaine D'Anatole, Inc., Domaine D'Anatole, S.A.S, UNAH, Inc., S1 Organic Vodka, LLC, UN House MV, LLC, Uncle Nearest Ventures, LLC, and the Nearest Green Historical Preservation & Culture Fund, including any rights of control, ownership, distribution, and participation (collectively, the "Subject Entities")); (c) cash and any bank and brokerage accounts; (d) any other property in which the Lender is granted a security interest pursuant to the Security Agreement and/or UCC-1 financing statements recorded against Uncle Nearest in favor of the Lender; and (e) claims and causes of action of any type, whether in equity or in kind, in contract or pursuant to a promissory note or any other enforceable agreement, in litigation, via settlement, or pursuant to any form of insurance policy or coverage (collectively, "Causes of Action"); and (ii) the Eady Road Property, in each case, including proceeds therefrom.

3. All the Assets are hereby deemed assets of the receivership (collectively, the "Receivership Assets"). For the avoidance of doubt, the Receivership Assets include all Collateral as described in the Loan Documents.

2

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 2 of 18    PageID #: 2497
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 57 of 131
PageID #: 7676

4. **Order Governs the Receivership Assets**: It is the intent of the Court that this Order applies to all Receivership Assets and that this Order encompasses the receiver powers specified in Tenn. Code Ann. § 29-40-112(b), including but not limited to the power to sell receivership property.

5. Further, it is the intent of this Court, that the Receiver is vested with all powers and authority of a receiver at equity; all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692; and FED. R. CIV. P. 66, and all powers to sell the Receivership Assets pursuant to 28 U.S.C. §§ 2001, 2002, and 2004.

6. **Bond**: Receiver shall serve without bond and shall be entitled to rely in good faith on the protections afforded under this Order. The Receiver will perform the duties of his office in accordance with this Order and duly account for all monies and properties which may come into his hands in connection with the receivership. The Receiver shall take such other actions as the Receiver deems reasonable and appropriate to the exercise of his authority under this Order and that the Receiver reasonably determines Uncle Nearest is obligated to do with respect to the Receivership Assets within the purview of this Order, but the Receiver shall not be required to take any action beyond those expressly mandated or reasonably implied by the terms of this Order.

7. **Cooperation by Defendants**: Uncle Nearest, the Subject Entities, and each of their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive notice of this Order by personal service or otherwise, shall immediately deliver to the Receiver: (a) any and all Receivership Assets in the possession or under the control of any one or more of them; (b) all of Uncle Nearest's past records, including, without limitation,

3

Case 4:25-cv-00038-CEA-CHS   Document 39   Filed 08/22/25   Page 3 of 18   PageID #: 2498
Case 4:25-cv-00038-CEA-CHS   Document 196-1   Filed 05/11/26   Page 58 of 131
PageID #: 7677

accounting records, tax records, disbursements, banking records, and any other books and records for the period from July 22, 2022, through the date of this Order; (c) all of Uncle Nearest's past records, including, without limitation, accounting records, disbursements, banking records, and any other books and records requested by the Receiver for periods beyond the period prescribed in (b) above; (d) copies of all material contracts to which Uncle Nearest is a party and all operating agreements and/or organizational documents, including corporate bylaws or similar governing documents, for Uncle Nearest and any Subject Entity; and (e) copies of any complaint filed against, or written demand or claim issued to, Uncle Nearest or any Subject Entity.

8. **Receiver's Powers and Duties:** Subject to the limitations of Tenn. Code Ann. § 29-40-112(b) and 28 U.S.C. §§ 2001, 2002, and 2004, the Receiver may cause to be foreclosed by judicial or nonjudicial means any or all its interests in the Receivership Assets with such advance notice to Uncle Nearest or any other interested party as is required by applicable law without further order of this Court.

9. **Receiver's Vested Power of Subject Entities:** The Receiver shall be exclusively vested with: (a) all the powers of officers, directors, members, and/or managers (as applicable) of Uncle Nearest and the Subject Entities to take (or refrain from taking) any and all actions on behalf of Uncle Nearest and the Subject Entities and (b) each of Uncle Nearest's and the Subject Entities' rights and powers to act on behalf of any other entity (including as an officer, director, manager, or equity holder), including, without limitation, each Subject Entity, to direct such other entity to take (or refrain from taking) any action in furtherance of the terms under this Order, in each case, until further Order of the Court.

10. Until further order of this Court, the Receiver is hereby authorized forthwith to take any actions he deems reasonably necessary to the proper and lawful discharge of his responsibilities under this Order and the conduct of Uncle Nearest, including the following:

    a. **Authorization to take Exclusive Control:** Take any actions necessary to take complete and exclusive control, possession and/or custody, to the extent applicable or to the extent the Receiver deems necessary, of the Receivership Assets, and of any proceeds thereof, to the extent necessary, provided however, in doing so: (i) the Receiver shall not, by the exercise of his authority under this Order, be deemed to possess or control, nor hold title to, the subsurface of any Receivership Assets that are real property, nor any hazardous waste or hazardous substance located at or in the real property, as those terms are defined under any federal, state or local environmental laws; (ii) the Receiver constitutes a fiduciary of the Court for any exceptions to liability under applicable environmental laws; and (iii) the Receiver shall not be deemed to have taken legal or equitable title to the Receivership Assets;

    b. **Management of Uncle Nearest Operations:** The Receiver is authorized, empowered, and directed to direct and cause Uncle Nearest and the Subject Entities, and each of their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive notice of this Order by personal service or otherwise, to continue to manage all of the ordinary course operations of Uncle Nearest and the Subject Entities. For the avoidance of any doubt, this means Fawn and Keith Weaver may continue to market Uncle Nearest products and manage the Uncle Nearest brand, subject to the Receiver's supervision;

5

Case 4:25-cv-00038-CEA-CHS   Document 39   Filed 08/22/25   Page 5 of 18   PageID #: 2500
Case 4:25-cv-00038-CEA-CHS   Document 196-1   Filed 05/11/26   Page 60 of 131
PageID #: 7679

c. **Possession of the Receivership Assets:** The Receiver shall take possession of, preserve, insure, protect, and manage the Receivership Assets, in whole or in part, whether in the ordinary course or otherwise, in each case as determined by the Receiver, or otherwise by contract with respect to all or a portion thereof, including, but not limited to: (a) employing advisors, professionals, employees, brokers, auctioneers, appraisers, agents, clerks, outside accountants, attorneys, and other suppliers of goods and services, and anyone acting on behalf of any of them (together, the "Receiver Representatives"), on reasonable terms acceptable to the Receiver, and paying for them at the Receiver Representative's ordinary and usual rates from the Receivership Assets or, to the extent the Receivership Assets are insufficient to satisfy any such fees or expenses, as set forth in paragraph 21; and (b) maintaining, insuring, assembling, and protecting the Receivership Assets;

d. **Retention of Possession:** Subject to the limitations expressly provided in this Order, the Receiver shall retain sole and exclusive possession of each of the Receivership Assets, including the Nearest Green Distillery Property and the Eady Road Property, until the earlier of (i) further order of this Court, (ii) the disposition of the applicable Receivership Asset by the Receiver, or (iii) disposition of the applicable Receivership Asset by sale or by judicial or nonjudicial foreclosure by the Receiver, with the express understanding that any such judicial or nonjudicial foreclosure may proceed without further order of the Court;

e. **Keys:** The Receiver shall have exclusive (except as such access may be designated by the Receiver) access to all keys, lock combinations, passwords, access cards and other means to access locked areas or devices relating to the Receivership Assets,

6

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 6 of 18    PageID #: 2501
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 61 of 131
PageID #: 7680

including all lockboxes and locked drawers and cabinets. The Receiver is authorized to make copies of such keys, passwords, access cards, and other means to access locked areas or devices relating to the Receivership Assets for his use in the administration of the Receivership Assets and the receivership estate;

f.   **Bank Accounts:** The Receiver shall maintain access to and exclusive control of each of Uncle Nearest's and each Subject Entity's bank and brokerage accounts to: (i) take possession of and receive any money on deposit from any banks with which Uncle Nearest or any Subject Entity maintains accounts, and upon the receipt by the Receiver of said funds, to discharge any bank from further responsibility for accounting to Uncle Nearest or any Subject Entity for funds which the Receiver has taken; and (ii) issue demands for the freezing and turnover of funds to any financial institution or title company (or escrow agent), in each case, where determined by Receiver to be necessary or appropriate to comply with the terms of this Order;

g.   **Litigation:** The Receiver is authorized to prosecute, settle, compromise, collect, and otherwise enforce any claims or Causes of Action by Uncle Nearest or any Subject Entity against any other party without need for further approval or consent of any person; defend, compromise, settle or adjust or otherwise dispose of any actions or proceedings in state or federal courts or other tribunals, including agency or mediation proceedings, now pending or hereafter instituted that concerns Uncle Nearest, the Subject Entities or any other Receivership Asset, as the Receiver may in his sole discretion deem advisable or proper for the protection of the Receivership Assets and in furtherance of this Order; and to investigate, institute, prosecute, compromise and adjust actions in state or federal courts or other

tribunals, including agency or mediation proceedings, as the Receiver may in his sole discretion deem advisable or proper to recover Receivership Assets or proceeds thereof improperly or unlawfully held by any person, including but not limited to Uncle Nearest and/or the Subject Entities;

h. **Place of Payment and Method of Collection**: The Receiver may alter the place of payment and the method of collection of any receivables or other amounts due directly or indirectly to Uncle Nearest or any Subject Entity or, with respect to any amounts due in connection with the Eady Road Property, to Keith Weaver, where the Receiver deems such change is reasonably required to ensure proper application of such payments and collections;

i. **Communications**: The Receiver is authorized to communicate with any person or entity and obtain any information and documents the Receiver deems necessary or useful in furtherance of this Order;

j. **Documents**: The Receiver is authorized to exercise, subject to the limits of this Order, the full authority, with power of attorney on behalf of and in the name of Uncle Nearest (in each case, including with respect to the Subject Entities) and, with respect to the Eady Road Property, Mr. Weaver, to: (i) execute and deliver any and all of the documents, including, but not limited to, contracts, brokers' or advisors' retention agreements, purchase and sale agreements, deeds of conveyance, closing statements, settlement statements, affidavits requested by title companies, and any other documents necessary or helpful to the performance of the Receiver's duties as more fully set forth herein; (ii) sign on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any such documents; (iii)

8

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 8 of 18    PageID #: 2503
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 63 of 131
PageID #: 7682

sign on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any invoices, or notices to account debtors, or contracts necessary or helpful to the performance of his activities provided for herein; (iv) endorse on behalf of Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, any negotiable collateral that may come into the possession or control of the Receiver; (v) initiate, defend, make, settle, and/or adjust all claims under Uncle Nearest's or, with respect to the Eady Road Property, Mr. Weaver's, policies of property or other insurance and make all determinations and decisions with respect to such policies of property or other insurance, and notify any and all insurers under any such policies of property or other insurance that any proceeds paid thereunder shall be paid to the Receiver until such time as such insurance carriers are advised to the contrary by this Court or until such insurance carriers receive a certificate issued by the Clerk of this Court evidencing a final discharge of the Receiver; (vi) institute, defend, settle and/or adjust disputes and claims respecting the Receivership Assets, for amounts and upon terms that the Receiver determines to be reasonable; (vii) obtain, review and analyze any past records, including, without limitation, accounting records, disbursements, banking records, and any other books and documents in furtherance of the Receiver's duties hereunder; (viii) pay prior obligations incurred by Uncle Nearest or, with respect to the Eady Road Property, Mr. Weaver, by their agents, officers, directors, partners, managers, and servants, or any other person or entity charged with the responsibility of maintaining and operating the Receivership Assets, if such obligations are deemed by the Receiver to be reasonably necessary or advisable, subject in all respects to

this Order; and (ix) cause to be executed and delivered any documents and releases that Receiver determines to be reasonably necessary, and at all times consistent with the terms of this Order. The appointment of the Receiver as Uncle Nearest's, and, with respect to the Eady Road Property, Mr. Weaver's, attorney-in-fact with respect to the Receivership Assets, and each and every one of his rights and powers, being coupled with an interest, is irrevocable until the receivership is discharged by this Court or until the resignation of the Receiver;

k. **Attorney-in-Fact**: The Receiver is authorized to exercise his full authority, as attorney-in-fact, on behalf of and in the name of Uncle Nearest (in each case, including with respect to the Subject Entities), to: (i) take any and all actions that may be required or desirable to preserve, renew and maintain the legal existence and good standing of Uncle Nearest, as applicable, in such jurisdictions where they conduct business; (ii) take any and all actions that may be required or incidental to preserve, renew and maintain the qualification and authority (including any applicable licenses and regulatory authority) to do business and good standing in each other jurisdiction where it is necessary or desirable for Uncle Nearest to conduct business paying applicable franchise taxes; (iii) execute and deliver any and all documents, reports, or other forms in furtherance of the Receiver's responsibilities herein; and (iv) engage in all actions the Receiver deems reasonable or necessary to accomplish the foregoing;

l. **Risks and Obligations**: The Receiver may incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar businesses and enterprises, and no such risk or obligation so incurred shall be the personal risk or

10

Case 4:25-cv-00038-CEA-CHS     Document 39     Filed 08/22/25     Page 10 of 18
PageID #: 2505
Case 4:25-cv-00038-CEA-CHS     Document 196-1     Filed 05/11/26     Page 65 of 131
PageID #: 7684

obligation of the Receiver, but rather a risk or obligation to be paid solely from the Receivership Assets;

m. **Authority of Authorized Signatories**: The Receiver has the authority to delete the authorized signatories on any account of Uncle Nearest or any Subject Entity and replace the same with the name of the Receiver or his designee;

n. **Books and Records – Subject Entities**: The Receiver may take possession of, or obtain access to, the books, papers, records, invoices, and receipts of Uncle Nearest and the Subject Entities on a continuing basis, including without limitation to Uncle Nearest's and, if applicable, any Subject Entity's electronic mail and other electronic correspondence (including any servers containing the foregoing);

o. **Books and Records – Vendors:** The Receiver is authorized to take possession of, and obtain access to, all books, records, documentation of any kind or nature, financial documents, contracts, bills or invoices of vendors (or other documents that describe the work such vendors performed and the amounts due and owing to them), and other documents, including copies of all records or documents on electronic media or in computer memory, wherever located; provided, however, nothing contained in this Order shall result in a waiver of any attorney privilege held by Uncle Nearest;

p. **Mail:** The Receiver shall collect and process all inbound mail addressed to any Post Office Box owned or controlled by Uncle Nearest (or any officers, managers or registered or other agents acting on behalf of Uncle Nearest or any of the Receivership Assets) if the mail is addressed to Uncle Nearest, any Subject Entity, or any officer, manager, or registered or other agent of Uncle Nearest or any Subject

11

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 11 of 18
PageID #: 2506
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 66 of 131
PageID #: 7685

Entity;

q. **Bankruptcy**: The Receiver is authorized to commence a proceeding under title 11 of the United States Code on behalf of Uncle Nearest and the Subject Entities;

r. The Receiver may exercise such other powers and authority granted to a court-appointed receiver under applicable law consistent with this Court's jurisdiction and authority; and

s. The Receiver has such additional powers that the Court may from time to time direct or confer and to that end, the Receiver may apply to this Court for further instructions or direction, including, without limitation, interpretation of this Order.

11. **Enjoined Actions**: Until further Order of the Court, other than with respect to the Receiver or persons and entities operating on behalf of the Receiver, Uncle Nearest, the Subject Entities, and each of their officers, directors, employees, agents, assigns, or any other persons or entities acting on behalf of or in concert with Uncle Nearest or the Subject Entities are enjoined from taking any of the following actions:

a. **Sale of Receivership Assets**: Selling, transferring, assigning, encumbering, disposing of, or otherwise impairing any Receivership Asset without express written authorization from the Receiver, who, for the avoidance of doubt, shall authorize transactions that the Receiver deems consistent with the terms of this Order or are directed by the Court;

b. **Contract Modification**: Modifying, amending, transferring, selling, assigning, revoking, returning, terminating or canceling any contract or agreement related to the Receivership Assets without the express written consent of the Receiver;

12

Case 4:25-cv-00038-CEA-CHS   Document 39   Filed 08/22/25   Page 12 of 18
PageID #: 2507
Case 4:25-cv-00038-CEA-CHS   Document 196-1   Filed 05/11/26   Page 67 of 131
PageID #: 7686

c. **Obstruction**: Interfering with, obstructing, or preventing in any way, the Receiver's actions pursuant to this Order, including, but not limited to, any and all actions that may damage the brand and reputation of the Receivership Assets in any form, whether written, verbal, and disseminated through any medium; and

d. **Interference**: Interfering in any other way with the Receiver, directly or indirectly.

12. **Non-Disturbance of Receivership Assets and Estate**: All persons or entities, including employees, agents, creditors, banks, investors, shareholders, officers, directors, subsidiaries, affiliates, owners or others, with actual or constructive notice of this Order, are enjoined and restrained from in any way disturbing, interfering or affecting the Receivership Assets or the administration of the receivership estate. This includes, without limitation, prosecuting, initiating or continuing any actions or proceedings, enforcing judgments, perfecting liens; pursuing actions or proceedings against the Receiver and the Receiver Representatives, designed to collect their debts or which in any way involve the Receiver or the Receiver Representatives or which affect the Receivership Assets, to the extent that the same would interfere with or disturb these receivership proceedings, without the permission and approval of this Court; provided, however, that nothing herein shall preclude any party with standing from seeking relief from this Order on proper application and after notice and a hearing. Any actions in violation of this paragraph shall be null and void as acts in contravention of this Order. This injunction is intended to function in a manner consistent with the protections afforded by the automatic stay under 11 U.S.C. §362.

13. **Quarterly Reports**: The Receiver shall provide quarterly reports to Uncle Nearest, the Lender and the Court detailing the Receiver's disbursements for paying the costs incidental

13

Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 13 of 18
PageID #: 2508
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 68 of 131
PageID #: 7687

to the receivership activities encompassed by this Order, any payments to or for the expenses of Uncle Nearest, the Subject Entities and the Eady Road Property, and describing the Receiver's activities and the financial and operational status of Uncle Nearest. The first quarterly report **SHALL** be due on **October 1, 2025.**

14. **Inspection of Books and Records**: The Receiver shall make available to the Lender and Uncle Nearest, for inspection and copying, any and all books and records of Uncle Nearest, any Subject Entity, and, with respect to the Eady Road Property, Mr. Weaver, relating to the Receivership Assets, now or hereafter in existence.

15. **Debt**: Any money or other Receivership Assets coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be remitted, as necessary and appropriate, to satisfy Uncle Nearest's outstanding obligations under the Loan Documents.

16. **No Personal Liability**: The Receiver and the Receiver Representatives shall have no personal liability or otherwise in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of Uncle Nearest or the Subject Entities' creditors, taxing authorities, or other claimants because of the Receiver's duties as Receiver, whether arising before or after his appointment. The Receiver and the Receiver Representatives shall have no personal liability or otherwise with respect to any environmental liabilities arising out of or relating to the Receivership Assets.

17. The Receiver and the Receiver Representatives shall not be personally liable for the satisfaction of claims, and shall have no claims asserted against them in their personal capacities or otherwise outside of the Receivership Assets, in any way relating to the Receiver's duties under this Order, including, without limitation in connection with the

14
Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 14 of 18
PageID #: 2509
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 69 of 131
PageID #: 7688

Receiver's capacity as Receiver for the Receivership Assets and Uncle Nearest, including the Subject Entities, or as an agent, officer or director of Uncle Nearest or the Subject Entities, except for claims that are adjudicated by a court of competent jurisdiction for which no appeal or motion to reconsider or similar motion may be or has been brought (without giving effect to any statutory basis to seek relief from judgment other than by appeal) which adjudicates and concludes that the Receiver or any Receiver Representative(s), as applicable, committed an act or omission constituting (i) gross negligence, (ii) willful misconduct, or (iii) actual fraud. Any person or entity seeking to assert liability of any kind against the Receiver or any Receiver Representative, regardless of whether such person or entity has notice of this Order, must first obtain leave from this Court upon motion with due and proper notice to the Receiver and any applicable Receiver Representative(s).

18. Any debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Assets, whether in the name of the Receiver, Uncle Nearest, any Subject Entity, Mr. Weaver (with respect to the Eady Road Property), or any other Receivership Asset, shall be the debt, liability, and obligation of the receivership estate only and not of the Receiver personally or of any Receiver Representative. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver, are protected and privileged with the same protections of this Court as the Receiver enjoys.

19. **No Fiduciary Relationship**: Nothing in this Order shall be construed such that the Receiver is considered to be in a fiduciary relationship with the Plaintiff, any of the Defendants, the Subject Entities, or all of them collectively.

15
Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 15 of 18
PageID #: 2510
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 70 of 131
PageID #: 7689

20. **Indemnification**: The receivership estate shall indemnify and hold harmless the Receiver and the Receiver Representatives for any judgment, costs, or expenses suffered or incurred by him or any of the Receiver Representatives as a result of actions instituted against him or them in relation to the discharge of their duties aforesaid or in carrying out or furtherance of this Order; provided that nothing herein shall be construed to indemnify the Receiver or the Receiver Representatives to the extent that any judgment, costs, or expenses that has been found by this Court or another court of competent jurisdiction (after the conclusion of any appeals and further rights of appeal) to have arisen from the gross negligence, willful misconduct, or actual fraud of the Receiver or any of the Receiver Representatives. In the event a suit is filed or a claim is made against Receiver or any Receiver Representative, except as conditioned or limited above in this provision, the receivership estate shall reimburse Receiver or the Receiver Representative, as applicable, for the costs and fees of defending such action or claim, including, without limitation, any appeals thereof to final resolution and award of judgments. The indemnification obligations outlined in this Order shall survive the termination of the Receiver's appointment and the conclusion, dissolution, or discharge of the receivership estate.

21. **Compensation**: The Receiver and each of the Receiver Representatives shall be compensated, without further order of this Court, for services at their standard hourly rates, plus reimbursement of all out-of-pocket fees, costs, and expenses. All such fees and expenses shall be payable from the Receivership Assets, which as defined herein include insurance policies applicable to this and other litigation, or, if the Receivership Assets are insufficient, by the Lender. Payment of fees and expenses payable to the Receiver and the Receiver Representatives in accordance with this Order shall take priority over payment of

16

Case 4:25-cv-00038-CEA-CHS     Document 39     Filed 08/22/25     Page 16 of 18
PageID #: 2511
Case 4:25-cv-00038-CEA-CHS     Document 196-1     Filed 05/11/26     Page 71 of 131
PageID #: 7690

any claims arising prior to the date on which the Receiver is appointed, except for the Lender's claims. The Receiver shall be authorized to obtain insurance coverage, including, but not limited to, coverage with respect to the liabilities, duties and obligations of the Receiver hereunder (in the form of an errors and omissions policy, directors and officers policy, fiduciary policy, general liability, or otherwise), as the Receiver deems reasonably necessary or appropriate, the costs of which shall be payable from the Receivership Assets or, if the Receivership Assets are insufficient, by the Lender.

22. **Payment of Indebtedness:** Within ninety (90) days after the termination of the receivership, the Receiver shall pay to the Lender all receipts remaining, if any, after payment of the items set forth herein, to be applied to Uncle Nearest's obligations under the Loan Documents to the Lender.

23. **Resignation:** The Receiver shall be entitled to resign upon 30 days' advance written notice to the Lender, Uncle Nearest, and the Court, in which case a successor Receiver shall be promptly appointed by the Court. In the event any fees or expenses of the Receiver or the Receiver Representatives remain unpaid upon resignation, or if any indemnity obligation payable to the Receiver under this Order remains unsatisfied, and no immediately available funds from the Receivership Assets are available to pay such amounts, the outstanding fees or expenses of the Receiver and his professionals, and any applicable indemnity obligation owing hereunder, shall be payable promptly by the Lender upon written request.

24. **Filing of Copies:** Within ten (10) days after entry of this Order, the Receiver **SHALL**, pursuant to 28 U.S.C. § 754, cause copies of the Verified Complaint [Doc. 1] and a copy of this Order to be filed in the federal district court for each district in which any Receivership Asset is located.

17
Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 17 of 18
PageID #: 2512
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 72 of 131
PageID #: 7691

25. **Termination of Receivership:** The receivership authorized and created hereby may be terminated at any time by the Receiver by filing with the Court, with service upon the parties, a Motion to Terminate Appointment of Receiver. Additionally, Plaintiff and/or Defendants may file a Motion to Terminate Appointment of Receiver upon the occurrence of any material change in circumstances that eliminates the need for a receivership. Any such motion must be served upon both the opposing party and the Receiver. Upon proper notice thereof and upon hearing (if necessary) and determination of this Court that the purposes of this receivership have been served, this Court may terminate the receivership.

26. **Exclusive Jurisdiction:** This Court shall retain exclusive jurisdiction over all matters concerning the Receiver, the Receivership Assets, the receivership created hereby and any other matter or dispute arising from this Order or relating to the interpretation or implementation of this Order.

27. **Termination of Agreed Order:** For the avoidance of any doubt, the entry of this Order relieves the parties of their obligations under the previously entered Agreed Order. [Doc. 29].

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

18
Case 4:25-cv-00038-CEA-CHS    Document 39    Filed 08/22/25    Page 18 of 18
PageID #: 2513
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 73 of 131
PageID #: 7692
ATTEST: Paulo C. DeOliveira, Register

Plan References

1) MA State Highway Layout #2112, June 26, 1923
2) Land Court Plan 40692-B
3) Case File 91
4) Case File 99
5) Case File 103
6) Case File 143
7) Case File 181
8) Plan Book 16, Page 99

Case File 103

This plan is compiled from plans and deeds of record and is not the result of a on the ground survey.

I certify that the property lines shown on this plan are the lines dividing existing ownerships, and the lines of the streets and ways shown are those of public or private streets or ways already established, and that no new lines for division of existing ownership or for new ways are shown.

This survey and plan were prepared in accordance with the Procedural and Technical Standards for the Practice of Land Surveying in the Commonwealth of Massachusetts.

I certify that the preparation of this plan conforms with the rules and regulations of the Registers of Deeds effective January 1, 2008 and as amended.

Kenneth G. Abbott, Professional Land Surveyor

Date: APRIL 1, 2023

Plan of Land in
Edgartown, MA
Prepared For
Keith Weaver
Scale: 1" = 40'   April 1, 2023

Schofield, Barbini & Hoehn Inc.
Land Surveying ⊕ Civil Engineering
12 Surveyor's Lane, Box 339
Vineyard Haven, Mass.
508-693-2781
www.sbhinc.net
MV-12506

GRAPHIC SCALE — FEET
40   0   40   80   120

Edgartown
Assessor Parcel
22-1
10 Codman's Spring Road
Area=2.16± ac.

CODMAN'S SPRING ROAD

N/F Gregory P. Bettencourt
Assr. Pcl. 22-4

N/F Daniel E. Stern
Assr. Pcl. 22-2

MA STATE HIGHWAY
(a.k.a. Edgartown-West Tisbury Road)

66' wide layout

approximate dwelling
approximate garage
approximate driveway

record highway bound
record concrete bound

2023 00001878
Bk: 19 Pg: 160   Doc: PLAN
Page: 1 of 1   04/07/2023 02:12 PM

BC:19
PG:160

# THOMAS C. GARRAHAN
## REAL ESTATE APPRAISER
Massachusetts Certified General Number 4535

15 Fox Run, East Sandwich, MA 02537            (508) 888-8646

**1991 - PRESENT:**     **SELF-EMPLOYED INDEPENDENT FEE APPRAISER**
Appraisal of commercial and residential properties, primarily on Cape Cod and the Islands, for banks, attorneys and private parties. Appraisal Experience in Evaluating the following Types of Real Estate: Residential Properties - vacant land, homes, duplexes, condominiums, timeshare, waterfront properties; Subdivisions; Farmland/Agricultural Preservation Restrictions; Eminent Domain; Conservation Restrictions; Retail Stores; Office Buildings; Warehouse/Industrial; Shopping Centers; Motels, Inns; Restaurants. Also, appraisal assignments for assistance in real estate tax abatements.

**1991-2020:**     Appraisal collaboration with Paul V. O'Leary and Associates, Barnstable.

**1993 - 1996:**     **INVESTOR AND RENOVATOR,** Waterfront rental property in Hyannisport.
Served as Treasurer of Condominium Association for last two years as an owner.

**1986 - 1996:**     **REAL ESTATE DEVELOPMENT AND TITLE RESEARCH**
Title examiner for several bank attorneys along with own pursuit of title and genealogical research involving about 15 separate parcels. Cleared title problems through petitions for partition and other remedies. Subdivided land for market. Proponent of affordable housing development through State Local Initiative Program.

**1986**     **COMMERCIAL REAL ESTATE BROKER,** Business Locators of Cape Cod, Osterville, MA and Peters Hartel, Hyannis, MA

**1984-1985**     **SENIOR BUSINESS CONSULTANT** - Small Business Service Group. Deloitte Haskins & Sells, Chicago, IL

**1980-1984**     **METHODS ANALYST** (IBM Mainframe computer programmer) - Customer Information Services Department. Commonwealth Edison Company, Chicago, IL

**EDUCATION:**     **UNIVERSITY OF CHICAGO, GRADUATE SCHOOL OF BUSINESS**
MBA, Finance and Economics. Graduated June, 1984.

**UNIVERSITY OF CHICAGO, THE COLLEGE**
BA, Economics. Graduated June, 1980.

**MEMBER:**     Mass. Board of Real Estate Appraisers (MBREA), Cape Cod and Islands Board of Realtors, Affiliate Member; Former member of Sandwich Community School Executive Council and Sandwich Advocates for Innovative Learning.

## APPRAISAL COURSES AND CONTINUING EDUCATION - SINCE 2010

MBREA USPAP Update 2010-2011 - 2010
MBREA Uniform Appraisal Dataset - 2011
MBREA USPAP Update 2012-2013 - 2012
McKissock - Construction Details - 2012
McKissock - Environmental Issues - 2012, 2014
McKissock - More Oddball Appraisals - 2012, 2014
McKissock - Disclosures & Disclaimers - 2012
McKissock - Mold, Pollution & The Appraiser - 2012, 2014
McKissock - The Dirty Dozen - 2012
MBREA USPAP Update 2014-2015 - 2013
McKissock - Land and Site Valuation - 2014
McKissock - Expert Witness for Commercial Appraisers - 2016
McKissock - Essential Elements of Disclosures and Disclaimers - 2016
McKissock - Residential Appraisal Review and USPAP Compliance - 2016
McKissock - 2016-2017 National USPAP
MBREA USPAP Update 2016-2017  - 2015
MBREA USPAP Update 2018-2019  - 2017

McKissock - Owner Occupied Commercial Properties - 2018
MBREA - Waterfront Properties - 2018
McKissock - Complex Properties - 2018
MBREA USPAP Update 2020-2021  - 2019
Hondros - Basic Construction Review - 2020
Hondros - Income Approach Review - 2020
Hondros - Methodology and Application of Sales Comparison - 2020
MBREA Webinar - COVID-19: Guidance for Appraisers
MBREA USPAP Update 2022-2023  - 2021
McKissock - Expert Witness for Commercial Appraisers - 2022
McKissock - Complex Properties - 2022
McKissock - Income Approach Case Studies - 2022
McKissock - Commercial Land - 2022
MBREA USPAP Update 2024-2025  - 2024

## PUBLIC CLIENTS FOR APPRAISAL WORK PERFORMED:

Commonwealth of Massachusetts Dept. of Food and Ag. and Div. of Fisheries, Wildlife & Environmental Law Enforcement; Towns of Aquinnah, Barnstable, Bourne, Brewster, Chatham, Chilmark, Harwich, Mashpee, Sandwich, Wellfleet, Westport, West Tisbury, and Yarmouth; Cape Cod Commission; Barnstable County Commissioners; Mashpee Wampanoag Tribal Council; Diocese of Fall River, The Nature Conservancy; The 300 Committee; Trustees of the Reservation; Housing Assistance Corporation; The New York State Supreme Court, New York County; The Federal Deposit Insurance Corporation.

## QUALIFIED AS AN EXPERT WITNESS FOR TESTIMONY IN:

Appellate Tax Board of the Commonwealth of Massachusetts
Barnstable County Probate Court
Barnstable County Superior Court
Bristol County Probate Court, Fall River
Dukes County Probate Court
Essex County Probate Court
Massachusetts Land Court
Massachusetts Housing Appeals Committee
Palm Beach County Florida Probate Court
United States Bankruptcy Court, District of Massachusetts

THOMAS C. GARRAHAN

**PARTIAL LIST OF CLIENT LAW FIRMS**

Ament Klauer LLP

Ardito Law Group

Atwood & Cherny,PC

Ann Bathchelder, Esq.

Mark H. Boudreau, Esquire

Cynthia Bourget, Esq.

Bowditch & Dewey

Brown and Barbosa

Cadwalader, Wickersham & Taft

Mark Carchidi, Esq.

Carter & DeYoung

John C. Cartwright, Esq.

Casner & Edwards

Choate, Hall & Stewart

Clapp Family Law

Peter Conathan, Esq.

Cordell & Cordell

Catherine Cullen, Esq.

Day, Berry & Howard

Dunning & Kirrane

Edwards Wildman Palmer

Egloff and Wood

Paul G. Farrell, Esq.

Michael I. Flores, Esq.

Gilmore Rees & Carlson PC

Goodwin, Procter

Gordon Rees Scully Mansukhani

Goulston & Storrs

Holly A. Harney, Esq.

Chantal Hayes-Rice, Esq.

William C. Henchy, Esq.

Hemenway & Barnes, LLP

Marybeth Holland, Esq.

Susan Huettner, Esq.

Sean M. Igoe, Esq.

Ron Jansson, Esq.

John Kenney, Esq.

Kirkland and Ellis

Lander & Lander

LaTanzi,Spaulding & Landreth

Robert Lawless, Esq.

Lee & Rivers

Lynch & Owens

Paul Mayer, Esq.

McCormick & McCormick

Stephen M. McGonigle, Esq.

McGrath and Kane

Thomas McNulty, Esq.

Kristen Menard, Esq.

Patrick Morris, Esq.

Nigro, Pettepit & Lucas, LLP

Nutter, McClennen & Fish

Pasternak & Fidis, P.C.

Eric Peters, Esq.

Prince Lobel Tye LLP

Michael Princi, Esq.

Reynolds, Rappaport, Kaplan & Hackney

Rackemann, Sawyer & Brewster

Stuart Rapp, Esq.

Ropes & Gray, LLP

Rubin, Rudman, Chamberlain and Marsh

Thomas R. Rugo, Esq.

Tracy E. Shaughnessy, Esq.

Frank Shealey, Esq.

Simpson Thacher & Bartlett LLP

Skadden, Arps, Slate, Meagher & Flom

Holly Smith, Esq.

Michael Stone, Esq.

Michael F. Suarez, Esq.

Tracey Taylor, Esq.

Todd & Weld

Tufankjian, McDonald, Welch & Sacchitella

Jennifer Esmel Vecchi

Verrill Dana, LLP

Brian D. Widegren, Esq.

Wiggin and Dana LLP

# APPRAISAL OF REAL PROPERTY



## LOCATED AT
471 West Tisbury Road
Edgartown, MA 02539

## FOR
Thompson Burton PLLC
c/o Phillip Young, Esq.
One Franklin Park, 6100 Tower Circle, Suite 200
Franklin, TN 37067

## OPINION OF VALUE
$2,600,000

## AS OF
05/09/2026

## BY
Paul J. Hartel
Neil J. Maloney
Appraisal Company of New England
230 Jones Road, Suite 6
Falmouth, MA 02540
508-540-0448
linda@appraisalcompany.com

Form GA2V - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| | | | | |
|---|---|---|---|---|
| Client | Thompson Burton PLLC | | File No. | R2026-028 |
| Property Address | 471 West Tisbury Road | | | |
| City | Edgartown | County Dukes | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | |

## TABLE OF CONTENTS

Cover Page .................................................................................................................................... 1
Summary of Salient Features ......................................................................................................... 2
GP Residential ................................................................................................................................ 3
Additional Comparables 4-6 .......................................................................................................... 6
Additional Listings 1-3 ................................................................................................................... 7
Supplemental Addendum ............................................................................................................... 8
Supplemental Addendum ............................................................................................................... 9
Statement of Limiting Conditions .................................................................................................. 10
Building Sketch .............................................................................................................................. 12
Plat Map ........................................................................................................................................ 13
Tax Assessor's Map ....................................................................................................................... 14
Deed .............................................................................................................................................. 15
Deed .............................................................................................................................................. 16
Deeded Plot Plan ........................................................................................................................... 17
Subject Photos .............................................................................................................................. 18
Subject Photos .............................................................................................................................. 19
Interior Photos ............................................................................................................................... 20
Interior Photos ............................................................................................................................... 21
Interior Photos ............................................................................................................................... 22
Interior Photos ............................................................................................................................... 23
Interior Photos ............................................................................................................................... 24
Interior Photos ............................................................................................................................... 25
Exterior Photos .............................................................................................................................. 26
Exterior Photos .............................................................................................................................. 27
Exterior Photos .............................................................................................................................. 28
Exterior Photos .............................................................................................................................. 29
Exterior Photos .............................................................................................................................. 30
Interior Photos (MLS) ..................................................................................................................... 31
Comparable Photos 1-3 ................................................................................................................. 32
Comparable Photos 4-6 ................................................................................................................. 33
Listings Photos 1-3 ........................................................................................................................ 34
Location Map ................................................................................................................................. 35
Aerial Map ..................................................................................................................................... 36
Comparable Sales Map .................................................................................................................. 37
Listings Map .................................................................................................................................. 38
Zoning Map .................................................................................................................................... 39
Zoning Map .................................................................................................................................... 40
Zoning Overly Map ........................................................................................................................ 41
Flood Map ...................................................................................................................................... 42
Purchase and Sale Agreement - Page 1 ......................................................................................... 43
Purchase and Sale Agreement - Page 2 ......................................................................................... 44
Purchase and Sale Agreement - Page 3 ......................................................................................... 45
Purchase and Sale Agreement - Page 4 ......................................................................................... 46
Purchase and Sale Agreement - Page 5 ......................................................................................... 47
Purchase and Sale Agreement - Page 6 ......................................................................................... 48
Purchase and Sale Agreement - Page 7 ......................................................................................... 49
Purchase and Sale Agreement - Page 8 ......................................................................................... 50
Purchase and Sale Agreement - Page 9 ......................................................................................... 51
Purchase and Sale Agreement - Page 10 ....................................................................................... 52
License .......................................................................................................................................... 53

# SUMMARY OF SALIENT FEATURES

**SUBJECT INFORMATION**

| | |
|---|---|
| Subject Address | 471 West Tisbury Road |
| Legal Description | Dukes County Registry of Deed Book 1652, Page 137, dated 04/11/2023 |
| City | Edgartown |
| County | Dukes |
| State | MA |
| Zip Code | 02539 |
| Census Tract | 2003.00 |
| Map Reference | Map 22 |

**SALES PRICE**

| | |
|---|---|
| Sale Price | $ |
| Date of Sale | |

**CLIENT**

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Owner | UN House MV Llc |

**DESCRIPTION OF IMPROVEMENTS**

| | |
|---|---|
| Size (Square Feet) | 2,058 |
| Price per Square Foot | $ 1,263.36 |
| Location | Average/Good |
| Age | 46 Years |
| Condition | Good |
| Total Rooms | 7 |
| Bedrooms | 4 |
| Baths | 2.1 |

**APPRAISER**

| | |
|---|---|
| Appraiser | Paul J. Hartel/Neil Maloney |
| Date of Appraised Value | 05/09/2026 |

**VALUE**

| | |
|---|---|
| Final Estimate of Value | $ 2,600,000 |

# RESIDENTIAL APPRAISAL REPORT

R2026-028
File No.: R2026-028

## SUBJECT

Property Address: 471 West Tisbury Road   City: Edgartown   State: MA   Zip Code: 02539

County: Dukes   Legal Description: Dukes County Registry of Deed Book 1652, Page 137, dated 04/11/2023

Assessor's Parcel #: M:0022, B:0001, L:0

Tax Year: 2026   R.E. Taxes: $ 5,724   Special Assessments: $ 0   Borrower (if applicable): N/A

Current Owner of Record: UN House MV Llc   Occupant: ☒ Owner ☐ Tenant ☐ Vacant   ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe)   HOA: $ ☐ per year ☐ per month

Market Area Name: Edgartown   Map Reference: Map 22   Census Tract: 2003.00

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☒ Cost Approach ☐ Income Approach   (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: The intended use is to evaluate the property that is the subject of this appraisal for fair market value as of May 9, 2026 which is the date of inspection.

Intended User(s) (by name or type): The intended user of this report is the Estate of Thompson Burton PLLC and their designees.

Client: Thompson Burton PLLC   Address: One Franklin Park, 6100 Tower Cir., Suite 200, Franklin TN 37067

Appraiser: Paul J. Hartel/Neil Maloney   Address: 230 Jones Road, Suite 6, Falmouth, MA 02540

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One–Unit Housing | | Present Land Use | | Change in Land Use | |
|---|---|---|---|---|---|---|---|---|
| Built up: | ☐ Over 75% ☒ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit | 75 % | ☒ Not Likely | |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 85 | 950 Low | 2 | 2-4 Unit | 0 % | ☐ Likely * ☐ In Process * | |
| Property values: | ☒ Increasing ☐ Stable ☐ Declining | ☒ Tenant 10 | 5,375 High | 100 | Multi-Unit | 0 % | * To: | |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☐ Vacant (0-5%) | 2,252 Pred | 40 | Comm'l | 0 % | | |
| Marketing time: | ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. | ☒ Vacant (>5%) | | | Vacant | 25 % | | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): The subject is located in what is considered the Central area of the Town of Edgartown on Martha's Vineyard Island. To the north is Edgartown-Vineyard Haven Road, to the east is Pease Point Way, South, to the south is Meetinghouse Way and to the west is Barnes Road. According to MVLinks multiple listing service, the average sale price of homes in Edgartown in the last 6 months with no water influence was $3,637,604 with an average of 115 days on the market. Using the same criteria, in the prior 6 months the average sales price was $3,008,600 with an average of 135 days on the market. In a one year analysis, using the same criteria, the average sales price between May 2024 to May 2025 was $2,871,022 with an average of 163 days on the market. In the last 12 months there were 60 sales with an average sale price of $3,375,519 with and average of 124 days on the market. The neighborhood consists of single family homes which appear to be in average to good condition. There is some privately owned vacant, recreational vacant land and land owed by the town in the area.

## SITE DESCRIPTION

Dimensions: See Plot Plan   Site Area: 2.16 ac

Zoning Classification: Residential 60/Island Road District Overly/See addendum.   Description: Minimum site 60,000 sf with 150 ft frontage

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☐ Unknown   Have the documents been reviewed? ☐ Yes ☐ No   Ground Rent (if applicable) $ /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain) The Highest & Best Use would be to continue as a single family residence.

Actual Use as of Effective Date: Single family residence   Use as appraised in this report: Single family residence

Summary of Highest & Best Use: The Highest and Best Use as improved refers to evaluating a property's optimal use after enhancements, improvements, or developments have been made. This assessment considers the land, buildings, or infrastructure improvements to determine the most profitable and efficient utilization, influencing the property's overall value.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | Asphalt | ☒ | ☐ | Level at dwllg/sloping up to rear | |
| Gas | ☐ | ☒ | Propane | Curb/Gutter | None noted | ☐ | ☐ | Size | Above Average for area |
| Water | ☒ | ☐ | | Sidewalk | None noted | ☐ | ☐ | Shape | Irregular |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | None noted | ☐ | ☐ | Drainage | Appears adequate |
| Storm Sewer | ☐ | ☐ | | Alley | None | | | View | Woods |

Other site elements: ☐ Inside Lot ☒ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 25007C0118J   FEMA Map Date 07/20/2016

Site Comments: None noted. The subject site is considered a legal conforming use for single family residence. If the subject is destroyed by fire or another disaster it would be able to be rebuilt.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | Exterior Description | Foundation | Basement ☐ None | Heating |
|---|---|---|---|---|
| # of Units 1 ☐ Acc.Unit | Foundation Concrete | Slab None | Area Sq. Ft. 1,710 | Type FWA |
| # of Stories 1.25 | Exterior Walls Wd Shingle | Crawl Space None | % Finished 50 | Fuel Gas |
| Type ☒ Det. ☐ Att. ☐ | Roof Surface Asphalt Shgle | Basement Full | Ceiling Drywall/Con | |
| Design (Style) Cape | Gutters & Dwnspts. Aluminum | Sump Pump ☐ None | Walls Drywall/Con | Cooling |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | Window Type Casement | Dampness ☐ None | Floor Carpet/Con | Central Mini Splits |
| Actual Age (Yrs.) 46 | Storm/Screens | Settlement None noted | Outside Entry Bulkhead | Other Mini Splits |
| Effective Age (Yrs.) 5 | | Infestation None noted | | |

| Interior Description | | Appliances | | Attic ☒ None | Amenities | | Car Storage ☐ None | |
|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood | Refrigerator ☒ | Stairs ☐ | Fireplace(s) # 1 | Woodstove(s) # 0 | Garage # of cars ( 12 Tot.) | |
| Walls | Drywall | Range/Oven ☒ | Drop Stair ☒ | Patio Stone Pavers | | Attach. | |
| Trim/Finish | Wood | Disposal ☐ | Scuttle ☐ | Deck Wood Decks | | Detach. 2 | |
| Bath Floor | Tile | Dishwasher ☒ | Doorway ☒ | Porch Enclosed | | Blt.-In | |
| Bath Wainscot | Tile | Fan/Hood ☒ | Floor ☒ | Fence Vinyl | | Carport | |
| Doors | Wood | Microwave ☒ | Heated ☒ | Pool None | | Driveway 10+ | |
| | | Washer/Dryer ☒ | Finished ☒ | | | Surface Gravel | |

Finished area **above** grade contains: 7 Rooms   4 Bedrooms   2.1 Bath(s)   2,058 Square Feet of Gross Living Area Above Grade

Additional features: Features for the subject include vaulted ceilings, hardwood floors, updated kitchen and bathrooms, partially finished basement with a full bathroom and an extensive exterior living/entertainment area. See addendum for additional details.

Describe the condition of the property (including physical, functional and external obsolescence): Overall the subject property was considered in good condition for its age. There appeared to be no physical, functional and/or external obsolescence at the time of our inspection. See addendum for additional details.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL   Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   3/2007

# RESIDENTIAL APPRAISAL REPORT

R2026-028

File No.: R2026-028

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Public Records/MV Links multiple listing services.

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: |
|---|---|
| Date: 04/11/2023 | To the best of our knowledge the subject property has not sold within the last three years. According to the Duke County Registry of Deed the subject was purchased on April 11, 2023 by UN House, Llc from Roundabout Holdings, Llc in consideration of $2,225,000. Roundabout Holdings Llc purchased the property on January 30, 2015 for $840,000. There is a current listing and Purchased and Sale Agreement for the subject property as of the effective date of valuation. The property was placed on the market on April 19, 2026 for $2,595,000. The Realtor reported that an agreement was made for the full price after one day on the market. This was listed with MVLinks Listing Service #44149. |
| Price: $2,225,000 | |
| Source(s): Deed | |
| 2nd Prior Subject Sale/Transfer | |
| Date: 01/30/2015 | |
| Price: $840,000 | |
| Source(s): Deed | |

## SALES COMPARISON APPROACH TO VALUE (if developed)

☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjust. | COMPARABLE SALE # 2 | +(-) $ Adjust. | COMPARABLE SALE # 3 | +(-) $ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 471 W Tisbury Rd Edgartown, MA 02539 | 27 Watcha Path Edgartown, MA 02539 | | 28 Marthas Rd Edgartown, MA 02539 | | 41 Bold Meadow Rd Edgartown, MA 02539 | |
| Proximity to Subject | | 2.37 miles W | | 0.83 miles SE | | 0.88 miles NW | |
| Sale Price | $ | $ 2,590,000 | | $ 2,475,000 | | $ 2,380,000 | |
| Sale Price/GLA | $ /sq.ft. | $ 1,016.48 /sq.ft. | | $ 964.54 /sq.ft. | | $ 948.96 /sq.ft. | |
| Data Source(s) | Public Record | MVLinks #43455;DOM 42 | | MVLinks #43407;DOM 241 | | MVLinks #42541;DOM 92 | |
| Verification Source(s) | Inspection | Public Record/Ext. Inspection | | Public Record/Ext. Inspection | | Public Record/Ext. Inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | | ArmLth Conv;0 | | ArmLth Conv;0 | | ArmLth Conv;0 | |
| Date of Sale/Time | | 08/29/2025 | +64,750 | 02/20/2026 | | 01/21/2025 | +59,500 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Average/Good | Average/Good | | Average/Good | | Average/Good | |
| Site | 2.16 ac | 3.00 ac | | 22,215 sf | +123,750 | 36,154 sf | +119,000 |
| View | Woods | Woods/Pasture | | Nbhd/Woods | | Woods | |
| Design (Style) | Cape | Cape | | Cape | | Colonial | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 46 Years | 12 Years | | 39 Years | | 15 Years | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade Room Count | Total 7 / Bdrms 4 / Baths 2.1 | Total 9 / Bdrms 4 / Baths 3.1 | -20,000 | Total 7 / Bdrms 4 / Baths 3.1 | -20,000 | Total 8 / Bdrms 4 / Baths 3.0 | -10,000 |
| Gross Living Area | 2,058 sq.ft. | 2,548 sq.ft. | -73,500 | 2,566 sq.ft. | -76,200 | 2,508 sq.ft. | -67,500 |
| Basement & Finished Rooms Below Grade | Full Finished Media Rm/Bath | Full Unfinished None | +30,000 | None/Slab None | +50,000 | Full Prtly Finished Exercise Rm | +20,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | HWBB/Mini Splits | FWA/CAIR | | FWA/CAIR | | FWA/CAIR | |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Garage/Carport | 2-Detached | 2-Attached | | 2-Built-In | | None | +20,000 |
| Porch/Patio/Deck | Dk/Pt/Encld Porch | Dk/Ptio/I-G Pool | -30,000 | Screened Porch | | Patio | +20,000 |
| Bedroom Count | 4-Bedrooms | 4-Bedrooms | | 4-Bedrooms | | 4-Bedrooms | |
| Amenities (Hardscape) | Exterior Living Area | None noted | +50,000 | None noted | +50,000 | None noted | +50,000 |
| 2026 Assessment | $2,308,300 | $2,336,600 | | $2,036,600 | | $2,353,000 | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 21,250 | | ☒ + ☐ - $ 127,550 | | ☒ + ☐ - $ 211,000 | |
| Adjusted Sale Price of Comparables | | $ 2,611,250 | | $ 2,602,550 | | $ 2,591,000 | |

Summary of Sales Comparison Approach    An adjustment of $150 per square foot was made for difference in gross living area. The price per square foot for the comparable sales ranged from $948 to $1,393. With our market value opinion of $2,600,000 the subject would be at $1,263 per square foot, which would fall at the upper end range, but within the range of $948 to $1,393/SF. The below grade level finished living area was not included within the square footage.

In valuing the subject property we considered the Sales Comparison Approach, supported by the Cost Approach. The Sales Comparison Approach compares the subject home to recently sold similar homes in the area and adjusts these homes for differences. This is the primary and most reliable method for single-family homes because it reflects what buyers are actually paying in the current market.
The Cost Approach would determine the land value and the cost to rebuild new minus depreciation. This approach is used most for newer homes, unique properties, or when there are few comparable sales. However, it does support the Sales Comparison Approach in some markets. The Income Approach value is based on the income the property can generate. This approach is rare for owner-occupied single-family homes, but applicable when the home is rented or investment-oriented. Due to the lack of year round rental properties in the area, the Income Approach was not utilized.

We have researched sales in the area which took place prior to the effective date of valuation. These sales would have similar characteristics to that of the subject. These characteristics would include a range of amenities which would location, lot size, condition, age, bedroom count, bathroom count and living area to name a few. Taking the features and amenities of the sales in the area into consideration and applying adjustments based on the market (what an individual may pay for that amenity) we have presented the client with five comparable sales and one comparable listing to support our opinion of value.

Description of subject property:
The subject property consists of seven total rooms, two full bathrooms and one half bathroom, four bedrooms and full basement. The basement is partially finished with a family media room and full bathroom. This area is not considered in the gross living area of the home for it is below grade. A history of the property reveals the home sold in April of 2023 for $2,225,000. Since the time of sale the subject has reportedly been updated and renovated, which included hardwood floors, tile back splash, granite countertops and work/dining island, mini split dual air conditioning and heat units. Based on the previous listing photographs, improvements to the exterior living area since the time of purchase include oversize stone patio, putting green and firepot, as well as, the addition of a two car detached garage and additional parking area with gravel driveway to the rear with cobblestone edging and installation of a 6' vinyl fence around the entire 2+ acre lot. See addendum for additional details.

Indicated Value by Sales Comparison Approach $    2,600,000

GP RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

# RESIDENTIAL APPRAISAL REPORT

## COST APPROACH

**COST APPROACH TO VALUE (if developed)** ☐ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): Lot value was determined by sales of vacant lots that sold within the last 24 months in the Town of Edgartown. 9 Martha's Way, 21,780 sf parcel sold on March 26, 2025 for $1,300,000. 8 Baylies Way, a 1.03 acre parcel sold for $700,000 on June 30, 2025. 107 West Tisbury Road, a .52 acre parcel sold on October 25, 2024 in consideration of $1,700,000. 5 Louis Field Road, a 1.28 acre parcel sold on March 31, 2026 for $1,715,000.

ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW

Source of cost data: Local builders/Building Cost Estimates

Quality rating from cost service: Gd    Effective date of cost data: 2026

Comments on Cost Approach (gross living area calculations, depreciation, etc.): Site value was determined by land sales.

Effective age is 5 years. 5/60 is 8.33%. The estimated remaining economic life is 55 years from the effective date of valuation.

"As-Is" Value of Site Improvement is for the driveways, landscaping and hardscape.

| | | | |
|---|---|---|---|
| OPINION OF SITE VALUE | | =$ | 1,500,000 |
| DWELLING | 2,058 Sq.Ft. @ $ 500.00 | =$ | 1,029,000 |
| Basement | 1,710 Sq.Ft. @ $ 50.00 | =$ | 85,500 |
| | Sq.Ft. @ $ | =$ | |
| | Sq.Ft. @ $ | =$ | |
| | Sq.Ft. @ $ | =$ | |
| | | =$ | |
| Garage/Carport | 483 Sq.Ft. @ $ 50.00 | =$ | 24,150 |
| Total Estimate of Cost-New | | =$ | 1,138,650 |
| Less  Physical  Functional  External | | | |
| Depreciation  94,850 | | =$( | 94,850) |
| Depreciated Cost of Improvements | | =$ | 1,043,800 |
| "As-is" Value of Site Improvements | | =$ | 50,000 |
| | | =$ | |
| | | =$ | |

Estimated Remaining Economic Life (if required): 55 Years    **INDICATED VALUE BY COST APPROACH** =$ 2,593,800

## INCOME APPROACH

**INCOME APPROACH TO VALUE (if developed)** ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____    **Indicated Value by Income Approach** _____

Summary of Income Approach (including support for market rent and GRM): Due to then lack of single family year long rentals in the area the Income Approach was not considered for this assignment.

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)** ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities:

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 2,600,000    Cost Approach (if developed) $ 2,593,800    Income Approach (if developed) $ _____

Final Reconciliation    The Sales Comparison Approach is the best indicator to value for single family properties. The Cost Approach supports the Sales Comparison Approach. Due to then lack of single family year long rentals in the area the Income Approach was not considered for this assignment.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: This appraisal is made "as is".

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

**Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $ 2,600,000 , as of: 05/09/2026 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.**

## ATTACHMENTS

A true and complete copy of this report contains 53 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work    ☒ Limiting Cond./Certifications    ☒ Narrative Addendum    ☒ Photograph Addenda    ☒ Sketch Addendum

☒ Map Addenda    ☒ Additional Sales    ☒ Cost Addendum    ☒ Flood Addendum    ☐ Manuf. House Addendum

☐ Hypothetical Conditions    ☐ Extraordinary Assumptions    ☐    ☐    ☐

Client Contact: Attorney Phillip Young    Client Name: Thompson Burton PLLC

E-Mail: _____    Address: One Franklin Park, 6100 Tower Cir., Suite 200, Franklin TN 37067

## SIGNATURES

**APPRAISER**

Appraiser Name: Neil J. Maloney

Company: Neil J. Maloney

Phone: Falmouth, MA 02540    Fax: _____

E-Mail: 508-540-0448

Date of Report (Signature): 05/11/2026

License or Certification #: 76001    State: MA

Designation: Appraiser

Expiration Date of License or Certification: 05/27/2026

Inspection of Subject: ☒ Interior & Exterior    ☐ Exterior Only    ☐ None

Date of Inspection: 05/09/2026

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**

Supervisory or Co-Appraiser Name: Paul J. Hartel

Company: Appraisal Company of New England

Phone: 508-540-0448    Fax: _____

E-Mail: linda@appraisalcompany.com

Date of Report (Signature): 05/11/2026

License or Certification #: MA Gen. Cert. #531    State: MA

Designation: Supervisory

Expiration Date of License or Certification: 04/23/2028

Inspection of Subject: ☐ Interior & Exterior    ☒ Exterior Only    ☒ None

Date of Inspection: _____

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    3/2007

# ADDITIONAL COMPARABLE SALES

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 471 W Tisbury Rd Edgartown, MA 02539 | 46 Bold Meadow Rd Edgartown, MA 02539 | | 25 Bold Meadow Rd Edgartown, MA 02539 | | | |
| Proximity to Subject | | 0.97 miles NW | | 0.73 miles W | | | |
| Sale Price | $ | | $ 2,401,000 | | $ 3,381,000 | | $ |
| Sale Price/GLA | $ /sq.ft. | $ 1,012.23 /sq.ft. | | $ 1,393.08 /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | Public Record | MVLinks #43855;DOM 14 | | MVLinks #44319;DOM 17 | | | |
| Verification Source(s) | Inspection | Public Record/Ext. Inspection | | Public Record/Ext. Inspection | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | ArmLth | | ArmLth | | | |
| Concessions | | Conv;0 | | Conv;0 | | | |
| Date of Sale/Time | | 01/06/2026 | | 05/08/2026 | | | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | | |
| Location | Average/Good | Average/Good | | Average/Good | | | |
| Site | 2.16 ac | 35,715 sf | +120,050 | 1.50 ac | | | |
| View | Woods | Woods | | Woods | | | |
| Design (Style) | Cape | Cape | | Colonial | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Age | 46 Years | 34 Years | | 29 Years | | | |
| Condition | Good | Good | | Good | | | |
| Above Grade Room Count | Total 7 / Bdrms 4 / Baths 2.1 | Total 7 / Bdrms 4 / Baths 3.1 | -20,000 | Total 8 / Bdrms 3 / Baths 2.1 | | Total / Bdrms / Baths | |
| Gross Living Area | 2,058 sq.ft. | 2,372 sq.ft. | -47,100 | 2,427 sq.ft. | -55,400 | sq.ft. | |
| Basement & Finished Rooms Below Grade | Full Finished Media Rm/Bath | Full Unfinished None | +30,000 | Full Unfinished None | +30,000 | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | HWBB/Mini Splits | FWA/Mini Splits | | HWBB/Mini Splt | | | |
| Energy Efficient Items | None noted | None noted | | None noted | | | |
| Garage/Carport | 2-Detached | 2-Attached | | 2-Detached | | | |
| Porch/Patio/Deck | Dk/Pt/Encld Porch | Encld Porch/Patio | | Porch/Deck | | | |
| Bedroom Count | 4-Bedrooms | 4-Bedrooms | | 3-Bedrooms | +20,000 | | |
| Amenities (Hardscape) | Exterior Living Area | None noted | +50,000 | 900 sf Acc Unit | -400,000 | | |
| 2026 Assessment | $2,308,300 | $2,228,600 | | $3,042,300 | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 132,950 | ☐ + ☒ - | $ -405,400 | ☐ + ☐ - | $ |
| Adjusted Sale Price of Comparables | | | $ 2,533,950 | | $ 2,975,600 | | $ |

Summary of Sales Comparison Approach      See addendum page.

SALES COMPARISON APPROACH

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2 (AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
3/2007

# COMPARABLE LISTINGS

R2026-028

**File No.:** R2026-028

| FEATURE | SUBJECT | COMPARABLE LISTING # 1 | | COMPARABLE LISTING # 2 | | COMPARABLE LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 471 W Tisbury Rd Edgartown, MA 02539 | 2 Bold Meadow Rd Edgartown, MA 02539 | | | | | |
| Proximity to Subject | | 0.69 miles W | | | | | |
| List Price | $ | $ 2,950,000 | | $ | | $ | |
| List Price/GLA | $ /sq.ft. | $ 1,007.86 /sq.ft. | | $ /sq.ft. | | $ /sq.ft. | |
| Last Price Revision Date | | 04/01/2026 | | | | | |
| Data Source(s) | | MVLinks # 44240 | | | | | |
| Verification Source(s) | | Public Rec/Ext. Inspect/MLS | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | | | | | | | |
| Days on Market | | 37 Days | | | | | |
| Rights Appraised | Fee Simple | Fee Simple | | | | | |
| Location | Average/Good | Average/Good | | | | | |
| Site | 2.16 ac | 1.70 ac | | | | | |
| View | Woods | Nbhd/Woods | | | | | |
| Design (Style) | Cape | Cape | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Age | 46 Years | 32 Years | | | | | |
| Condition | Good | Good | | | | | |
| Above Grade Room Count | Total 7 / Bdrms 4 / Baths 2.1 | Total 10 / Bdrms 4 / Baths 3.0 | -10,000 | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Gross Living Area | 2,058 sq.ft. | 2,927 sq.ft. | -156,400 | sq.ft. | | sq.ft. | |
| Basement & Finished Rooms Below Grade | Full Finished Media Rm/Bath | Full Finished Media Rm/Rec Rm | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | HWBB/Mini Splits | FWA/Mini Splts | | | | | |
| Energy Efficient Items | None noted | None noted | | | | | |
| Garage/Carport | 2-Detached | 2-Attached | | | | | |
| Porch/Patio/Deck | Dk/Pt/Encld Porch | Deck/Patio | | | | | |
| Bedroom Count | 4-Bedrooms | 4-Bedrooms | | | | | |
| Amenities | Exterior Living Area | None noted | +50,000 | | | | |
| 2026 Assessment | $2,308,300 | $2,520,900 | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -116,400 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted List Price of Comparables | | Net 3.9 % Gross 7.3 % $ 2,833,600 | | Net % Gross % $ | | Net % Gross % $ | |

Comments    The above is a current listing of a home which is located within one mile of the subject. It is located on a corner lot on Bold Meadow Road and West Tisbury Road. Due to its lot size, the dwelling is set back on the site similar to that of the subject and would not be affected by the traffic flow along West Tisbury Road.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 (AL) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

# Supplement Addendum

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |

Continued from page 2.

The first floor is comprised of an open designed living room with living/dining areas and an open kitchen with center work island and counter seating. This area has a vaulted ceiling with hardwood floors, painted drywall walls and ceiling with casement windows and a gas fireplace.The kitchen is fully equipped and has granite countertops and tile back splash and island dining area. Off the kitchen area is a hallway leading to three bedrooms and two bathrooms. The main bedroom has hardwood floors, a vaulted ceiling, double closets and a private bathroom. To the rear of the home are two bedrooms with a shared bathroom. The fourth bedroom is accessed from a staircase off the kitchen and has a half bathroom. The basement is partially finished with a media/family room and full bathroom. The unfinished area includes a laundry room with two washers and two dryers, sink, media control center for an exterior sound system and bulkhead to access the exterior. There are two other unfinished storage rooms in the basement. The home has circuit breaker electrical service, a gas fired boiler and hot water heater. In addition to the hot water baseboard heating system the home has individual mini splits in each room providing heat and air conditioning. The exterior of the home has cedar shingle siding, an asphalt covered shingle room and casement windows. There is a three season porch with hardwood floors and casement windows, which leads to a mahogany deck. The deck wraps around to home from the rear/side enclosed porch and to the front entrance. In addition to this exterior living space there is a large patio and deck to the rear, a firepit, a basketball court, a side patio and putting green with a sand trap. There is an exterior sound system in the decorative rocks along the patio area. The entire 2+ acres is enclosed by a 6' vinyl fence and it has an electrical gate to access the property from a curb cut along West Tisbury Road. The driveway leads to a large gravel parking area on the right with cobblestone edging. To the left is a second gravel driveway leading to the rear of the property for additional parking. The home is well landscaped with shrubs, flowering bushes and yew trees for additional privacy. The home is equipped with public water and sewer.

We have presented the client with five comparable sales, of which four are located within one mile of the subject. The comparable listing is located within one mile of the  subject. The subject is located on West Tisbury Road, which at times could be a well traveled street in comparison to the comparable sales used in our analysis. However, the home is situated on the site away from the street and is buffered by the landscape and vinyl fence. Comparable listing #1 is located on a corner lot with West Tisbury Road and Bold Meadow Road and situated on a 1.70 acre parcel away from the street which does not appear to be an adverse affect on its marketability.

A search of similar sales of home located on large parcels were limited. Comparable sale #1 is located on a 3 acre parcel and sold within one year of the effective date of valuation. Watcha Path is located off of West Tisbury Road over 2 miles form the subject. Comparable listing is located on a larger parcel, a 1.70 acre site located within one mile of the subject. The four other comparable sales are located on smaller parcels of land and would be limited to future development. We have research sales of homes with between 1,800 sf to 3,200 sf of living space on a 10,000 sf parcel  to 40,000 sf parcel in comparison to home with the same square footage located on a 1 acre parcel to 6 acre parcel and found there was a slight increase in sales price. Therefore, an adjustment was applied to all the comparable sales located on inferior lots.

The Realtors associated with all the sales reported the overall conditions of these sales to have been updated or renovated since the time of their original date of construction. This information was provided by the listing and photographs of these sales. Therefore, no adjustments were applied to any of the comparable sales in the Condition Section of the grid.

Other adjustments were applied where necessary to the comparable sales for time of sale, bathroom count, bedroom count, basement space, finished lower level living area, garage space, in-ground pool, exterior living area and accessory structures. A negative $20,000 per full bathroom and $10,000 per half bathroom adjustment was applied to the comparable sales #1, #2, #3 and #4 to reflect their superior above grade level bathroom counts. A positive $20,000 per bedroom adjustment was applied to the comparable sale #5 for its inferior bedroom count. Fannie Mae considers a level to be below-grade if any portion of it is below-grade, regardless of the quality of its finish or the window area of any room. Therefore, a basement with finished rooms would not be included in the above-grade room count. Rooms that are not included in the above-grade room count may add substantially to the value of a property. The subject has partially finished basement which is has a mini split system for heat and air conditioning as well as a full bathroom. An adjustment was applied to the comparable sales which have unfinished basements. In addition, a larger adjustment was applied to comparable sale #2 which is constructed on a slab. Comparable sale #3 has a finished room with no bathroom which required an adjustment. A negative adjustment was applied to comparable sale #1 for its in-ground pool area. A $10,000 per garage bay adjustment was applied where necessary. Comparable sale #5 has a 900 sf finished accessory unit located over the detached garage. These units add considerable value to these properties. Based on a $500 per square foot adjustment for the accessory unit times 900 sf would equate to $450,000. We have taken out the $50,000 adjustment for the superior exterior living area of which was applied to the other comparable sales which leave a negative $400,000 adjustment.

As noted, the subject property has an extensive exterior living/entertainment area. This as well as the additional landscaping and enclosing the parcel with 6 feet vinyl fence would require an adjustment to the comparable sales, which are not afforded these added amenities. Therefore, a $50,000 positive adjustment was applied to all the comparable sales. This extensive exterior living area is not atypical for the area, however typical exterior living area would add to a home's market value. An adjustment was applied for the subjects superior exterior living area in comparison to that of all the comparable sales. This area is functional, private, and low-maintenance.

Continued on next page.

# Supplemental Addendum

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc |

The subject property is located within 20 +/- miles of the appraisers office. The assignment requires geographic market competency as part of the Scope of Work. I am confirming that I have spent sufficient time to gain adequate knowledge, experience and resources to communicate a creditable opinion of value for the subject property.

**The criteria used to produced the date reported in the Market Area Description on page one under the One Unit Housing was of sales of single family homes with between 1,600 sf to 3,200 sf of living space with no water influence in the last 12 months in Edgartown. There were 30 sales in this time period with an average sales price of $2,252,072 with an average of 138 days on the market.**

FNMA requires the following use for the Square Footage-Method for calculating: ANSI Z765-2021 (American National Standards Institute) Measuring standard for measuring, calculating, and reporting gross living area (GLA) and non-GLA areas of subject properties for appraisal requiring interior and exterior inspections for loans sold to Fannie Mae. The subject improvement and any additional structures (attached or non-attached to the subject improvement) were measured utilizing the above standard.

The intended user of this appraisal report is the client and/or their designees. The intended use is to evaluate the property that is the subject of this appraisal for internal business purposes. No additional intended users are identified by the appraisers.

USPAP Definition of exposure time: Estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. The exposure time is a retrospective opinion based on analysis of past events assuming a competitive and open market. Estimated exposure time for the subject: 3-6 months for this type of property.

Our inspection of the subject property is done only as a part of the appraisal assignment's scope of work, which is one of the recognized and required steps in the appraisal process, as required by the lender/client. We are not qualified home inspectors and make no representation or warranty about the current or future condition, quality or adequacy of the structure and/or mechanical components of the subject property.

The subject is located in a Residential 60 zoning district which requires 60,000 sf of land and 150 feet of frontage. The front section of the parcel is located in the MVC Island Road Overly District. Some of the requirements of homes located in this area include but not limited to: Buildings must be designed to minimize visibility from West Tisbury Road. Clearing within the roadside corridor is limited, natural vegetation must be maintained to screen structures from the road with any major clearing often requires Planning Board review. Structures typically must be set farther back from the road than base zoning requires. Accessory structures (sheds, garages) may face additional restrictions. It appears that the current dwelling is in compliance within the current overly district.

The current assessors valuation of the subject is $2,308,300. The FY2026 tax rate is $2.48 per thousand.
$2,308,300/1000 = 2,308.30 x 2.48 = $5,724.58.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, 2010.)

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

CONTINGENT AND LIMITING CONDITIONS: The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

CERTIFICATION:  The appraiser certifies and agrees that:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.

4.  Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6.  My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9.  Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10.  Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:**    471 West Tisbury Road, Edgartown, MA 02539

**APPRAISER:**

Signature: _____

Name:    Paul J. Hartel/Neil Maloney

Title:    Appraiser

State Certification #:  76001

or State License #: _____

State:  MA    Expiration Date of Certification or License:    05/27/2026

Date Signed:  05/11/2026

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature: _____

Name:    Paul J. Hartel

Title:    Supervisory

State Certification #:   MA Gen. Cert. #531

or State License #: _____

State:  MA    Expiration Date of Certification or License:    04/23/2028

Date Signed:  05/11/2026

☐ Did  ☒ Did Not   Inspect Property

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Building Sketch

| | | | | | | |
|---|---|---|---|---|---|---|
| Client | Thompson Burton PLLC | | | | | |
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | |



TOTAL Sketch by a la mode

## Area Calculations Summary

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 1710 Sq ft | 18 × 23 = 414 | |
| | | 24 × 53 = 1272 | |
| | | 2 × 6 = 12 | |
| | | 2 × 6 = 12 | |
| Second Floor | 348 Sq ft | 6 × 7 = 42 | |
| | | 17 × 18 = 306 | |
| **Total Living Area (Rounded):** | **2058 Sq ft** | | |
| **Non-living Area** | | | |
| Undefined Area | 228 Sq ft | 19 × 12 = 228 | |
| Deck | 894 Sq ft | 11 × 30 = 330 | |
| | | 12 × 47 = 564 | |
| Basement | 1710 Sq ft | 18 × 23 = 414 | |
| | | 24 × 53 = 1272 | |
| | | 2 × 6 = 12 | |
| | | 2 × 6 = 12 | |

# Plat Map

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



# Tax Assessor's Map

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County Dukes | | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



# Deed

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |

Bk: 01662 Pg: 137





Bk: 1662 Pg: 137    Doc: DEED
Page: 1 of 2    04/11/2023 12:29 PM

MASSACHUSETTS EXCISE TAX
Dukes County ROD #6 001
Date: 04/11/2023 12:29 PM
Ctrl# 040369 10331  DocA: 000017-1-1
Fee: $10,146.00  Cons: $2,225,000.00

## Quitclaim Deed

Roundabout Holdings LLC, a foreign limited liability company of 225 NE Mizner BLVD Suite

770, Boca Raton, FL. 33432, in consideration of TWO MILLION TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS 00/100 ($2,225,000.00)

GRANT TO  UN House MV, LLC, 600 North Main Street Suite 2000, Shelbyville, TN 37160, a limited liability company organized under the laws of Delaware.

### With *QUITCLAIM COVENANTS*

The land with the buildings thereon located in Edgartown, Dukes County, Massachusetts being further described as follows:

Being shown on a plan entitled "Plan of Land in Edgartown, MA Prepared for Keith Weaver Scale: 1"=40' April 1, 2023 Schofield, Barbini & Hoehn Inc. Land Surveying Civil Engineering 12 Surveyor's Lane, Box 339 Vineyard Haven, Mass.", recorded with the Dukes County Registry of Deeds in Plan Book 19, Page 160, to which plan reference is hereby made for a more particular description thereof.

Also being a portion of the lot shown as the "Heirs of Julia F. Vincent" on a Plan of Land entitled "EDGARTOWN MEADOWS A SUBDIVISION OF LAND IN EDGARTOWN MASS February 5, 1974 Scale 1"=100' Dean R. Swift Reg'd Land Surveyor Vineyard Haven, Mass." recorded in the Dukes county Registry of Deeds as Edgartown Case File No. 99, to which plan reference is hereby made for a more particular description and also shown on a plan entitled "Plan of Land in EDGARTOWN, MASS as surveyed for Herman W. Vincent, Scale 1"= 200', dated August 22, 1973  Schofield Brothers, Inc. Professional Engineers & Registered Land Surveyors, Vineyard Haven, Mass." and filed as  Edgartown Case File No. 91, and, further known as Edgartown Assessor parcel, Map 22 Lot 1.

Together with and subject to any and all restrictions, covenants, appurtenances, easements and rights of way of record, insofar as the same are in force and applicable.

Grantor hereby releases any and all homestead rights in the property and certifies under the pains and penalties of perjury that there are no other persons who are entitled to homestead rights in the subject premises.

Grantor is not classified for the current taxable year as a corporation for federal income tax purposes.
**For Grantor's Title, see deed filed in the Dukes County Registry of Deeds at Book 1367 Page 281.**

Form MAP.DEED - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Deed

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |

Bk: 01652 Pg: 138

Executed as a sealed instrument this 27th day of March, 2023.

Roundabout Holdings LLC

By: Joseph T. Anzalone, Manager
aka Joseph Ansalone

STATE OF FLORIDA

County of: Palm Beach

On 27 day of March, 2023, before me, the undersigned notary public, personally appeared Jose T. Anzalone, Manager Roundabout Holdings LLC, the above-named and proved to me through satisfactory evidence of identification being Driver's License , to be the person whose name is signed on this document, and acknowledged to me that he signed it voluntarily for its stated purpose, and swore or affirmed to me that the contents of the docume with respect to the homestead rights are truthful and accurate, and that the foregoing instrume is his free act and deed and the free act and deed of Roundabout Holdings LLC.

Notary Public State of Florida
Aryela Fonseca
My Commission
HH 280864
Exp. 8/26/2026

Notary Public:

6/26/26

My Commission Expires:

# Deeded Plot Plan

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | |



# Subject Photo Page

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



**Subject Front**

471 W Tisbury Rd
Sales Price
Gross Living Area    2,058
Total Rooms    7
Total Bedrooms    4
Total Bathrooms    2.1
Location    Average/Good
View    Woods
Site    2.16 ac
Quality    Average
Age    46 Years



**Subject Rear**



**Subject Street**

# Subject Photo Page

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | |



**Subject Side**

471 W Tisbury Rd
Sales Price
Gross Living Area    2,058
Total Rooms          7
Total Bedrooms       4
Total Bathrooms      2.1
Location             Average/Good
View                 Woods
Site                 2.16 ac
Quality              Average
Age                  46 Years



**Subject Side**



**Subject Street**

# Interior Photos

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |



**Living room**



**Living room**



**Fireplace**



**Kitchen**



**Kitchen**



**Island work/dining area**

Form PICINT6 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Interior Photos

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |



**Entrance to left/hallway to bedrooms**

**Hallway to main bedroom**



**Bedroom**



**Double closets**



**Private Bathroom**



**Mini split system**

# Interior Photos

| | | | | | |
|---|---|---|---|---|---|
| Client | Thompson Burton PLLC | | | | |
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County Dukes | | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



**Hallway to bedrooms/bath/access to basement**



**Bedroom**



**Shared bathroom**



**Bedroom**



**Stairs to fourth bedroom**



**Bedroom**

# Interior Photos

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown    County Dukes    State MA    Zip Code 02539 |
| Owner | UN House MV Llc |



**Bedroom**


**Basement stairs**



**Mini split in basement**

**Half bathroom/second floor bedroom**

**Finished room basement**



**Full bathroom/basement**

# Photos

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown    County  Dukes    State  MA    Zip Code  02539 |
| Owner | UN House MV Llc |



**Boiler**



**Water meter**



**Hot water heater**



**Storage**



**Electrical system**



**Electrical system**

# Interior Photos

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown |
| Owner | UN House MV Llc |

County Dukes State MA Zip Code 02539



**House entertainment system**



**Laundry**



**Basement prep room**



**Storage**



**Storage**



**Hot water baseboard heat system**

# Exterior Photos

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | | |



**Front entrance/gate**



**Parking area to right side**



**Exterior entertainment area**



**Walkway/sitting area off parking lot**



**Detached garage**



**Putting green**

# Exterior Photos

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown |
| County | Dukes |
| State | MA |
| Zip Code | 02539 |
| Owner | UN House MV Llc |



**Exterior entertainment area**



**Fire Pit/sitting area**



**Rear of lot**



**Mini split exterior air handlers**



**Rear parking area**



**Bulkhead**

# Exterior Photos

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County Dukes | | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



**Enclosed three season porch**



**Side deck**



**Front deck**



**Irrigation system**



**Electric gate opener**



**Underground propane gas**

# Exterior Photos

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | |



**Electric meter**



**Wooded rear lot**



**Exterior fence along Codman Spring Road**



**Exterior fence along Codman Spring Road**



**Sitting area**



**Exterior lighting timer system**

# Exterior Photos

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | |



**Yard/putting green**



**Yard**



**Front parking/garage**

# MLS Enhanced Photos

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |










# Comparable Photo Page

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown |
| Owner | UN House MV Llc |

County: Dukes  State: MA  Zip Code: 02539



## Comparable 1
27 Watcha Path

| | |
|---|---|
| Prox. to Subject | 2.37 miles W |
| Sale Price | 2,590,000 |
| Gross Living Area | 2,548 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | Average/Good |
| View | Woods/Pasture |
| Site | 3.00 ac |
| Quality | Average |
| Age | 12 Years |



## Comparable 2
28 Marthas Rd

| | |
|---|---|
| Prox. to Subject | 0.83 miles SE |
| Sale Price | 2,475,000 |
| Gross Living Area | 2,566 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | Average/Good |
| View | Nbhd/Woods |
| Site | 22,215 sf |
| Quality | Average |
| Age | 39 Years |
| | MLS Photo |



## Comparable 3
41 Bold Meadow Rd

| | |
|---|---|
| Prox. to Subject | 0.88 miles NW |
| Sale Price | 2,380,000 |
| Gross Living Area | 2,508 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Average/Good |
| View | Woods |
| Site | 36,154 sf |
| Quality | Average |
| Age | 15 Years |
| | MLS Photo |

# Comparable Photo Page

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County Dukes | | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



## Comparable 4

46 Bold Meadow Rd

| | |
|---|---|
| Prox. to Subject | 0.97 miles NW |
| Sale Price | 2,401,000 |
| Gross Living Area | 2,372 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | Average/Good |
| View | Woods |
| Site | 35,715 sf |
| Quality | Average |
| Age | 34 Years |



## Comparable 5

25 Bold Meadow Rd

| | |
|---|---|
| Prox. to Subject | 0.73 miles W |
| Sale Price | 3,381,000 |
| Gross Living Area | 2,427 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Average/Good |
| View | Woods |
| Site | 1.50 ac |
| Quality | Average |
| Age | 29 Years |

# Listing Photo Page

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County | Dukes | State  MA | Zip Code  02539 |
| Owner | UN House MV Llc | | | | |



## Listing 1

2 Bold Meadow Rd
Proximity to Subject  0.69 miles W
List Price  2,950,000
Days on Market  37 Days
Gross Living Area  2,927
Total Rooms  10
Total Bedrooms  4
Total Bathrooms  3.0
Age/Year Built  32 Years

## Listing 2

Proximity to Subject
List Price
Days on Market
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Age/Year Built

## Listing 3

Proximity to Subject
List Price
Days on Market
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Age/Year Built

# Location Map

| Client | Thompson Burton PLLC | | | | |
|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | |



# Aerial Map

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | |



# Comparable Sales Map

| Client | Thompson Burton PLLC | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | |



# Listings Map

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |



# Zoning Map

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Client | Thompson Burton PLLC | | | | | | |
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |



Form MAP.ZONING — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Zoning Map

| Client | Thompson Burton PLLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 471 West Tisbury Road | | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code | 02539 |
| Owner | UN House MV Llc | | | | | | |



# Zoning Overly Map

| | |
|---|---|
| Client | Thompson Burton PLLC |
| Property Address | 471 West Tisbury Road |
| City | Edgartown |
| County | Dukes |
| State | MA |
| Zip Code | 02539 |
| Owner | UN House MV Llc |



Form MAP.ZONING - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Flood Map

| | | | | | | |
|---|---|---|---|---|---|---|
| Client | Thompson Burton PLLC | | | | | |
| Property Address | 471 West Tisbury Road | | | | | |
| City | Edgartown | County | Dukes | State | MA | Zip Code 02539 |
| Owner | UN House MV Llc | | | | | |



<div align="center">

**STANDARD FORM**
**PURCHASE AND SALE AGREEMENT**

</div>

**From the Office of:**
Dubin & Reardon
107 Beach Road
Vineyard Haven, MA 02568
Tel: (508) 771-0330

Mar 11, 2026

This _____ day of March, 2026.

| | | |
|---|---|---|
| 1. | PARTIES AND MAILING ADDRESSES<br><br>*(fill in)* | **Phillip Young, Receiver on behalf of UN House MV LLC, appointed in U.S., District Court for the Eastern District of Tennessee at Winchester, Case No. 4:25-cv-38 (the "U.S. District Court Matter")** having a mailing address of c/o Thompson Burton PLLC, 1801 West End Avenue, Suite 1550, Nashville TN 32703, hereinafter called the SELLER, agrees to SELL and<br><br>**CMH Legacy Holdings, LLC** of 471 West Tisbury Rd., Edgartown, MA 02539 , hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: |
| 2. | DESCRIPTION ·<br>*(fill in and include title reference)* | THE LAND AND IMPROVEMENTS THEREON LOCATED AT **471 West Tisbury Road, (f/k/a 10 Codman Springs Road), Edgartown MA 02539,** as shown on the Edgartown Assessor's Map 22, Parcel 1, and as further described in the deed to the SELLER recorded with the Dukes County Registry of Deeds, in Book 1652, Page 137, together with all appurtenant rights and easements (the "Premises" or "said premises"). |
| 3. | BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES<br><br>*(fill in or delete)* | Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures used in connection therewith including, if any, all wall-to-wall carpeting, window treatments, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, dehumidifiers, air conditioning equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and any internet, ethernet and/or DSL cables or wires that provide internet and cable access for the Premises; and all appliances and fixtures at the Premises, but excluding: None. |
| 4. | TITLE DEED<br>*(fill in)*<br>*\*Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER'S breach of SELLER'S covenants in leases, where necessary.* | Said premises are to be conveyed by a good and sufficient quitclaim deed personally and not electronically executed by SELLER and not under power of attorney, running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except<br><br>(a)  Provisions of existing building and zoning laws;<br><br>(b)  Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;<br><br>(c)  Any liens for municipal betterments assessed after the date of delivery of the deed;<br><br>(d)  Easements, restrictions and reservations of record, if any, so long as the same do not interfere with the current use of said premises for a single-family residence. |
| 5. | PLANS | If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration. |
| 6. | REGISTERED TITLE | In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title. |
| 7. | PURCHASE PRICE<br>*(fill in); space is allowed to write out the amounts if desired* | The agreed purchase price for said premises is TWO MILLION FIVE HUNDRED NINETY-FIVE THOUSAND DOLLARS and 00/100 ($2,595,000.00) DOLLARS, of which |

|  |  |
|---|---|
| $       5,000.00 | has been paid to bind the Offer |
| $    254,000.00 | to be paid as additional deposit upon execution of Purchase & Sale Agreement |
| $ 2,335,500.00 | are to be paid at the time of delivery of the deed or by MA attorney's IOLTA check or wire. |
| $ 2,595,000.00 | TOTAL |

I

8. **TIME FOR PERFORMANCE, DELIVERY OF DEED** *(fill in)*

Such deed is to be delivered at **12:00 o'clock P.M.** on the **19th day of March, 2026,** at the office of the Buyer's attorney, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. However, for good cause, such as without limitation lender delays, untimeliness of delivery of funds or documents, the parties shall cooperate to adjust the time for performance and delivery of the deed set forth in this paragraph for up to five (5) business days to accommodate any lender delays or other good faith delay so as not to cause either party to default hereunder. All documents and funds shall be delivered in escrow subject to a prompt rundown of title and recording. Neither Seller nor Seller's counsel shall be required to attend the closing in person, and instead, original Seller documents may be delivered by Seller to Buyer in advance of closing, to be held in escrow by counsel until all terms of performance have been met hereunder, and consideration paid.

9. **POSSESSION and CONDITION of PREMISE.** *(attach a list of exceptions, if any)*

Possession of said premises is to be delivered free and clear of all tenants and occupants and in broom-clean condition, at the time of the delivery of the deed, said premises to be then (a) in the same condition as they were at the time of BUYER's inspection, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, or any applicable land use, environmental, wetlands, health or other deferral, state or local laws, bylaws, rules or regulations and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER, their designee, agent, or representative, shall be entitled to personally enter and inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. **EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM** *(Change period of time if desired).*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the Premises, all as herein stipulated, or if at the time of delivery of the deed the Premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the time for performance hereof shall be extended as reasonably necessary to remove defects or otherwise make the Premises conform to this Agreement for a period of up to thirty days or at the expiration of the BUYER's rate lock whichever is sooner. The Seller shall only be obligated to spend $15,000.00 to comply with this provision exclusive of monetary liens. The provisions of this paragraph shall be construed to apply to all matters affecting title, the physical condition of the Premises and compliance with municipal, county, state or federal codes, ordinances, statutes or regulations concerning the Premises.

11. **FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the Premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then at BUYER'S option, any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto., unless the BUYER elects to accept title pursuant to Paragraph 12 below.

12. **BUYER'S ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, but not the obligation, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, or at such price as the parties may agree considering the nonconformity or defect in which case the SELLER shall convey such title. except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the BUYER shall have the option, unless the SELLER has previously restored the Premises to their former condition, either to

   (a) have SELLER pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, including any deductible, less any amounts reasonably expended by the SELLER for any partial restoration, or
   (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.
   (c) terminate this contract and receive the return of his deposit in full.

13. **ACCEPTANCE OF DEED**

The acceptance and recording of a deed by the BUYER or their nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed or to survive closing.

2

**14. USE OF MONEY TO CLEAR TITLE**

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed or as soon thereafter, as is practical in accordance with local conveyancing practice, however, only for current mortgage to financial institutions.

**15. INSURANCE**
*Insert amount (list additional types of insurance and amounts as agreed)*

Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a)  Fire and Extended coverage | *$  As presently insured |

(b)  Risk of loss shall remain with Seller until the delivery and recording of the deed.

**16. ADJUSTMENTS**
*(list operating expenses, if any, or attach schedule)*

Real estate taxes for the then current fiscal year shall be apportioned, water and sewer use charges, homeowner's association and/or road association dues and fuel value shall be adjusted as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. There shall be deducted from the balance due Seller at the Time of Closing customary SELLER costs including, but not limited to, the following:

    (a)    Massachusetts deed excise taxes;

    (b)    Balance of brokerage fees and commissions due from Seller;

    (c)    Cost of recording certificates of good standing, orders of the Court or discharges and releases of monetary encumbrances;

    (d)    Amounts required to discharge outstanding mortgages, liens  or other monetary encumbrances on the Premises including overnight mailings and mortgage discharge fees.;

**17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES**

If the amount of said real estate taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the real estate taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

**18. BROKER'S FEE**
*(fill in fee with dollar amount or percentage; also name Brokerage Firm(s))*

A broker's fee for professional services in the total amount of One Hundred Twenty-Nine Thousand Seven Hundred Fifty Dollars and 00/100 ($129,750.00) is due from the SELLER to the Compass of MA LLC, but only if and when papers pass, the full purchase price is paid, the deed is recorded, and not otherwise.
In addition, a broker's fee for professional services in the total amount of Nineteen Thousand Four Hundred Sixty-Two Dollars and 550/100 ($19,462.50) is due from the BUYER to Compass of MA LLC, but only if and when papers pass, the full purchase price is paid, the deed is recorded, and not otherwise.

**19. BROKER(S) WARRANTY**
*(fill in name)*

The Broker(s) named herein warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts.

**20. DEPOSIT**
*(fill in name)*

All deposits made hereunder shall be held in escrow by Compass Massachusetts LLC , in a non-interest bearing account, subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement.  In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER or by a court of competent jurisdiction.

3

Form SCNL GL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 123 of 131
PageID #: 7742

| | |
|---|---|
| 21. BUYER'S/ SELLERS DEFAULT: DAMAGES | If the BUYER shall fail to fulfill the BUYER's agreements herein, and SELLER is ready and able to fully perform, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall be the SELLER's sole remedy at either law or in equity. If the SELLER shall fail to fulfill the SELLER's agreements herein, BUYER may pursue all available remedies, both at law and in equity (including specific performance). The parties acknowledge and agree the Seller has no other adequate remedy in the event of Buyer's default. The Sellers and Buyers agree that the deposit made under the Purchase and Sale Agreement is a reasonable estimate of the loss Seller would incur if Buyer were to breach this Purchase and Sale Agreement, including, without limitation, any losses which could result from Seller's inability to resell the Premises for the same or different agreed price due to any number of any presently indeterminable factors, whether or not any such losses are actually incurred by the Sellers. The parties agree said deposit represents damages and not a penalty against Buyer. |
| 22. RELEASE BY HUSBAND OR WIFE | The SELLER's deed shall release and convey all homestead, statutory and other rights and interests in said premises. |
| 23. BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications or such provisions to which the Broker(s) agree(s) in writing. |
| 24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the trust, limited liability company, corporation  or other entity shall be bound, and neither the person so executing, nor the beneficiary of any trust, the member of any limited liability company, the director or shareholder of any corporation, nor the principal of any other entity, shall be personally liable for any obligation, express or implied hereunder. |
| 25. WARRANTIES AND REPRESENTA-TIONS *(fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made* | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s).<br><br>None. |
| 26. MORTGAGE CONTINGENCY CLAUSE *(omit if Not provided for in Offer to Purchase)* | In order to help finance the acquisition of said premises, the BUYER shall apply for a residential mortgage loan in the amount up to **$1,946,250.00** at prevailing rates, terms and conditions.  If despite the BUYER's diligent efforts an unconditional commitment for such loan cannot be obtained on or before 5:00 p.m. on **March 12, 2026**, the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parities hereto shall cease, and this agreement shall be void without recourse to the parties hereto.  In the event that the BUYER timely requests an extension of this contingency date, and the SELLER does not respond to such request by the then applicable contingency deadline, then the contingency deadline shall automatically extend to 5:00pm on the next business date after SELLER responds to BUYER's extension request.  Buyer shall only be obligated to apply to one mortgage lender in order to comply with this Paragraph |
| 27. CONSTRUCTION OF AGREEMENT | This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors, and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER.  If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several.  The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it. |
| 28. LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. SMOKE & CARBON MONOXIDE DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the Town of Edgartown stating that said premises have been equipped with approved smoke and carbon monoxide detectors in conformity with Massachusetts General Laws Chapter 148, Section 26F and 26F½, and applicable law. |

4

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

30. ADDITIONAL
      PROVISIONS         The Riders A, attached hereto, is incorporated herein by reference.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY
TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

CMH LEGACY HOLDINGS, LLC

Phillip Young (Mar 11, 2026 09:54:16 CDT)
Phillip G. Young, Receiver  (SELLER)

By:
Name: Marilyn H. Vukota (BUYER)
Title: Authorized Signatory

5

## RIDER "A"

### SELLER: Phillip G. Young, Receiver

### BUYER: Jennifer Kaalund and Sekou Kaalund

### PROPERTY ADDRESS: 471 West Tisbury Road, Edgartown, MA 02539, f/k/a 10 Codman Spring Road, Edgartown, MA 02539

1. **NOTICE**: All notices required or permitted to be given hereunder shall be in writing and delivered by hand or mailed postage prepaid, by registered or certified mail, by facsimile with proof of transmission addressed to the stated respective representative, or by electronic mail

   In the case of SELLER to:    Richard S. Dubin, Esq.
   Dubin & Reardon
   P.O. Box 1104
   107 Beach Road
   Vineyard Haven, MA 02568
   Tel: (508) 693-5757
   Fax: (508) 693-2778
   Email: rdubin@dubinreardon.com

   In case of BUYER to:    Marilyn H. Vukota, Esq.
   McCarron, Murphy & Vukota, LLP
   282 Upper Main St.
   PO Box 1270
   Edgartown, MA 02539
   (508) 627-3322
   MHV@Edgartownlaw.com

   the case of either party to such other addresses as shall be designated by written notice given in such manner to the other party. Mailed notice shall be deemed given upon deposit in the United States Postal Service so long as notice is faxed to the representative stated above, or sent by electronic email, or if given by hand, at the time of delivery or receipt. E-mailed notice shall be deemed delivered upon transmission to the appropriate e-mail address above, provided the sender does not receive an error message indicating that the e-mail was not properly delivered. Each party hereby appoints their respective representative as stated above to be their lawful attorney-in-fact for the purposes of the execution of extensions to time limitations set forth in this Agreement.

2. **TAXPAYER CERTIFICATION NUMBER**: At the time of the delivery of the Seller's deed, the Seller shall execute and deliver to the Buyer and any title insurance company insuring title to the Premises (for the Buyer or for any lender granting mortgage financing to the Buyer with respect to the Premises) either (i) affidavits setting forth that the Seller is not a foreign person or foreign corporation and providing the Seller's United States Taxpayer Identification Number, or (ii) such other documentation as is required by Section 1445 of the Internal Revenue Code and any regulations promulgated thereunder that would exempt the Seller and/or exempt the sale of the Premises from the provisions of said Section 1445. The Seller agrees to execute and deliver to the Buyer's attorney a certification, signed under the penalties of perjury, of the Seller's taxpayer identification number and of the Seller's present and/or future mailing address.

6

3.    **REBA STANDARDS**:  Any matter which is the subject of a title or practice standard of the Real Estate Bar Association of Massachusetts at the time of closing shall be governed by such standard to the extent applicable.

4.    **TITLE REQUIREMENTS**:  Notwithstanding anything herein contained, the Premises shall not be considered to be in compliance with the provisions of this Agreement with respect to the title unless:

a.   no building, structure, improvement, property, way, or prescriptive rights or easements, belonging to any other person or entity, encroaches upon or under the Premises from other premises;

b.   all structures and improvements on the Premises and all means of access to said premises shall be wholly within the lot lines of said premises and shall not encroach upon or under any property not within said lot lines;

c.   title to the Premises is insurable for the benefit of the Buyer, by a title insurance company of BUYER's choice, in a fee owner's policy of title insurance at normal premium rates, using the American Land Title Association form currently in use, subject only to the printed exceptions to title normally included on the "jacket" to such form or policy and such other exceptions permitted under Paragraph 4 hereof;

d.   the Premises shall abut and have legal access to a public way or way or ways over which the Seller shall have an expressly granted right of way to a public way, which right shall be transferable to the Buyer and included in the deed to be delivered hereunder;

e.   There are complete certificates of compliance for any conservation commission order of conditions burdening the Premises;

f.   The buildings and structures on the Premises do not violate any restriction or covenant applicable to the Premises and still in effect and enforceable.

5.    **TITLE INSURANCE**:  At the time of the delivery of the Seller's deed, the Seller shall execute and deliver affidavits and indemnification forms regarding the following: mechanic's liens, materialman's liens, and parties in possession sufficient to eliminate any title insurance exceptions for these matters. The Seller will execute any affidavits and certificates as are customarily required by a lender granting mortgage financing to the Buyer with respect to mortgage loans on Martha's Vineyard for transactions of this type.  The Buyer or the Buyer's lender will provide said affidavits, indemnifications and certificates.

6.    **LAND BANK FEE**:  The parties agree and acknowledge that the transaction contemplated herein may be subject to a transfer fee due to the Martha's Vineyard Land Bank Commission at the time of closing, equal to two percent (2%) of the purchase price.  Buyer agrees to execute any and all documents, including affidavit(s), required by the Martha's Vineyard Land Bank Commission, and in the event that it is subject to the said transfer fee to pay it  at the time of closing.

7.    **ACCESS TO PREMISES**:   Upon reasonable notice, which shall be deemed to be at least 48 hours, to SELLER or the broker (which need not be in writing), the BUYER or the BUYER'S designees, agents and representatives, shall have the right to enter upon the Premises from time to time and make such investigations, surveys, tests, examinations and the like as the BUYER deems necessary or appropriate in connection with the performance of this Agreement.  BUYER shall indemnify and hold SELLER harmless for all liability arising out of such entry upon the Premises.  The provisions of this clause shall survive the delivery of the deed or other termination of this Agreement.

7

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

8. **REPRESENTATIONS OF SELLER**: SELLER represents and warrants to BUYER that, to the best of SELLER's knowledge, information and belief: (a) there are no underground oil storage tanks on the Premises and there have never been any hazardous substances generated, stored, or disposed of on the Premises, except for routine household supplies in quantities typically used by an average homeowner; and that there is no asbestos present on the Premises (b) there is no claim, litigation or proceedings, pending or threatened, against or relating to the Premises; (c) there are not now, and will not be, any outstanding agreements with any party pursuant to which any parties have or could acquire an interest in the Premises (other than outstanding mortgages), including any tenancy and occupancy agreements which affect the Premises and which will survive the closing; (d) the Premises and the present uses on the Premises are not in violation of applicable zoning, health, environmental, building and subdivision laws and regulations, or any other federal, state, or local environmental, sanitary, health or safety statute, ordinance, code, law, rule, regulation or the like; and (e) SELLER has not received any notice of any taking, condemnation, betterment or assessment, actual or proposed, concerning the Premises.

9. **FACSIMILE AND ELECTRONIC SIGNATURES:** The parties hereto agree that for purposes of execution of this Agreement or any extension or modification hereof, a party's personal or electronic signature delivered by facsimile or by email shall be accepted as the original thereof and shall be binding.

10. **POST-CLOSING ADJUSTMENTS**: If any errors or omissions are found to have occurred in any calculations or figures used in the settlement statement signed by the parties (or would have been included if not for any error or omission) and notice of such error or omission is given within two (2) months of the Time of Closing to the party to be charged, then such party agrees to make a payment to correct the error or omission.

11. **BUYER'S RIGHT TO ASSIGN:** BUYER shall have the right to assign this contract to BUYER's issue, a partnership, limited partnership, corporation, limited liability partnership or limited liability company in which BUYER or BUYER's issue have an interest, or to any trust for the benefit of one or more of the BUYER, or any of BUYER's issue, provided that in the event of such assignment, BUYER shall remain personally obligated and liable for all obligations of BUYER in this Agreement.

12. **APPROVAL OF U.S. DISTRICT COURT**: The BUYER agrees and acknowledges that there is an action pending before the U.S. District Court for the Eastern District of Tennessee, in the matter of *Farm Credit Mid-America, PCA, v. Uncle Nearest, Inc.*, Docket No. 4:25-cv-38, and, further, that SELLER is required to obtain permission from the Court for this sale. Buyer's obligations hereunder are conditioned upon Seller delivering complete copies of an order, satisfactory to Buyer's counsel, authorizing the Receiver to convey good, clear, record and marketable title free of any liens, existing or future claims, interests and rights of UN House MV LLC, Uncle Nearest Inc., and any debtor/owner and anyone claiming by and through or under them. If this condition is not satisfied, BUYER may terminate this transaction in which event the BUYER's deposits shall be returned to BUYER forthwith.

13. **MA Withholding Requirement: Sale of Real Estate by Non-Residents:**

   a. SELLER agrees to execute and deliver in such form as may be required by the MA Department of Revenue ("MA DOR") for the purposes of complying with the withholding requirements of said MA DOR **regulation, 830 CMR 62B.2.4;**

8

Case 4:25-cv-00038-CEA-CHS    Document 196-1    Filed 05/11/26    Page 128 of 131 PageID #: 7747

b. Each SELLER shall also, no later than 10-days prior to closing, provide an executed Massachusetts Department of Revenue (the "DOR") Transfer's Certification (the "DOR Certification") required pursuant to CMR 62B.2.4 (the "Regulation");

c. SELLER hereby acknowledges that the Regulation requires the attorney closing the transaction to file the following with the DOR within 10-days following the Closing;

d. the Certification for each seller, together with a copy of the Closing Disclosure or Settlement Statement, shall be filed with the DOR if the transaction has a gross sales price over the threshold amount defined in said Regulation;

e. a DOR Nonresident Real Estate Withholding Form (NRW) must be filed with the DOR and the withholding amount shown on the DOR Certification must be remitted to the DOR in the event the transaction is not exempt pursuant to the Regulation;

f. SELLER acknowledges that such withholding amounts, if any, shall be SELLER's responsibility to pay at closing. The closing attorney shall be entitled to charge SELLER a reasonable fee for the filings mandated by the Regulation. SELLER's failure to provide a completed Transferor's Certification for each SELLER to the closing attorney within 3 business days prior to the closing shall be considered a material breach of SELLER's obligations under this Agreement.

14. **REPRESENTATIONS OF SELLER.** SELLER represents and warrants to BUYER that, to SELLER's actual knowledge, without any duty of investigation or inquiry: (a) there are no underground fuel oil storage tanks on the Premises; (b) there is no asbestos present on the Premises; (c) there is no claim, litigation or proceedings, pending or threatened, against or relating to the Premises other than the U.S. District Court Matter; (d) there are not now, and will not be, any outstanding agreements with any party pursuant to which any parties have or could acquire an interest in the Premises (other than outstanding mortgages), including any tenancy and occupancy agreements which affect the Premises and which will survive the closing; (e) SELLER has not received any written notice that the Premises and the present uses on the Premises are in violation of applicable zoning, health, environmental, building and subdivision laws and regulations, or any other federal, state, or local environmental, sanitary, health or safety statute, ordinance, code, law, rule, regulation or the like; (f) SELLER has not received any written notice of any taking, condemnation, betterment or assessment, actual or proposed, concerning the Premises; (g) the proceeds of sale are sufficient to satisfy and obtain releases of any liens of record affecting the Premises; and (h) no SELLER is a foreign person, or foreign entity as defined under I.R.C. Section 1245. The provisions of this paragraph shall survive delivery of the deed. SELLER shall notify BUYER of any changes relative to the foregoing, of which SELLER becomes aware, that arise prior to the Time of Closing.

15. **FURNISHINGS.** SELLER shall leave the home turnkey with all furniture, furnishings, accessories and household supplies being included in the sale for consideration of One and 00/100 ($1.00) Dollar.

CMH LEGACY HOLDINGS, LLC

Phillip Young (Mar 11, 2026 09:54:16 CDT)

By: 

Phillip G. Young, Receiver (SELLER)

Name: Marilyn H. Vukota, (BUYER)
Title: Authorized Signatory

9

# PS-Buyer signed

Final Audit Report                                        2026-03-11

| | |
|---|---|
| Created: | 2026-03-11 |
| By: | Julie Molloy (Julie@dubinreardon.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAoXlhCn2eu8wy_JVf_4xNg1b6f8J1BrKn |

## "PS-Buyer signed" History

📄 Document created by Julie Molloy (Julie@dubinreardon.com)
2026-03-11 - 2:52:30 PM GMT

📧 Document emailed to Phillip Young (phillip@thompsonburton.com) for signature
2026-03-11 - 2:53:23 PM GMT

📄 Email viewed by Phillip Young (phillip@thompsonburton.com)
2026-03-11 - 2:53:59 PM GMT

🖋 Document e-signed by Phillip Young (phillip@thompsonburton.com)
Signature Date: 2026-03-11 - 2:54:16 PM GMT - Time Source: server

✅ Agreement completed.
2026-03-11 - 2:54:16 PM GMT

 **Adobe Acrobat Sign**

# License



