FARM CREDIT MID-AMERICA, PCA,     )
    )
    *Plaintiff*,     )      Case No. 4:25-cv-38
    )
v.     )      Judge Atchley
    )
UNCLE NEAREST, INC., *et al.*,     )      Magistrate Judge Steger
    )
    *Defendants*.     )

## ORDER

Before the Court is Phillip G. Young, Jr.'s (the "Receiver") Expedited Motion to Sell Real

and Personal Property in Martha's Vineyard [Doc. 147], which seeks approval of a proposed sale

of real property located at 471 West Tisbury Road (f/k/a 10 Codman Spring Road), Edgartown,

Massachusetts and all personal property located therein (collectively the "Martha's Vineyard

Property").[1] For the following reasons, the Motion [Doc. 147] is **GRANTED**.

### I. BACKGROUND

On August 22, 2025, the Court appointed the Receiver to oversee, manage, and safeguard

Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate

Holdings, LLC (collectively "Uncle Nearest"), and other associated entities and property during

the course of these proceedings. [Doc. 39]. The Martha's Vineyard Property is part of the

receivership estate. [*See* Doc. 39 at ¶¶ 1, 2; Doc. 196-1 at 53–54].

On February 25, 2026, the Receiver filed the Motion currently before the Court, seeking

permission to sell the Martha's Vineyard Property and asserting that doing so is in the best interest

of the receivership estate. [Doc. 147]. After the Motion was fully briefed, the Court reviewed the

---

[1] The personal property consists of the "furniture, furnishings, accessories, and household
supplies" located on the real property. [Doc. 196-1 at 129].

proposed sale and determined that certain statutory prerequisites for the court-ordered sale of property had not been satisfied. [Doc. 177]. Accordingly, the Court held the Motion in abeyance pending completion of these pre-sale requirements. [*Id.*].

Thereafter, the Court appointed three disinterested persons to appraise the Martha's Vineyard Property. [Doc. 193]. After the Court received these appraisals, [*see* Docs. 196, 196-1], it: (1) directed the Receiver to publish notice of the proposed sale and instructions for submitting overbids in the Vineyard Gazette, a Martha's Vineyard newspaper; (2) ordered the Receiver to report his compliance with the foregoing notice requirements and any timely overbids to the Court; (3) set the Motion for hearing on June 11, 2026, and (4) directed the Receiver to provide notice of the hearing to every individual and entity who had made an offer to purchase the Martha's Vineyard Property and/or submitted a timely overbid. [Doc. 197].

On June 7, 2026, the Receiver filed a report as ordered, confirming he published notice of the proposed sale in the Vineyard Gazette as directed and stating he did not receive any timely overbids for the Martha's Vineyard Property. [Doc. 203; *see also* Doc. 203-1]. Four days later, the Court heard the parties' positions on the Motion at the June 11, 2026, hearing. [*See* Doc. 211]. No non-party claiming an interest in the Martha's Vineyard Property or the proposed sale thereof appeared at or otherwise sought to participate in the hearing. Now, the Court is prepared to rule on the Motion.

## II.     LAW AND ANALYSIS

The Receiver seeks to sell permission to sell the Martha's Vineyard Property through a private sale. Accordingly, the Court can only approve the sale if it complies with 28 U.S.C. §§ 2001(b) and 2004. Section 2001(b), which governs the private sale of real property, provides:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration

and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(b). As for Section 2004, it provides, in relevant part, that "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with [28 U.S.C. § 2001], unless the court orders otherwise." 28 U.S.C. § 2004. Thus, Section 2001(b) sets the base requirements for all private sales, but the Court retains discretion to modify those requirements when it comes to the private sale of personal property. *See id.*

In this case, the Court finds the proposed sale of the Martha's Vineyard Property satisfies Sections 2001(b) and 2004's requirement, as further explained below.

### A. Three disinterested persons have appraised the real property component of the Martha's Vineyard Property.

On April 14, 2026, the Court appointed three disinterested and unobjected-to individuals to appraise the Martha's Vineyard Property. [Doc. 193]. The three resulting appraisals each value the real property component of the Martha's Vineyard Property at $2,600,000. [*See generally* Doc. 196-1]. The appraisals did not value the personal property component of the Martha's Vineyard Property. But having reviewed the Purchase and Sale Agreement, [Doc. 196-1 at 121–30], considered the Receiver's uncontested assertion that it is customary on Martha's Vineyard to include furnishings in the sale of real property, [*see* Doc. 147 at ¶ 7], and taken into account that none of the "furniture, furnishings, accessories, and household supplies" that constitute the personal property component have been shown or alleged to be exceptionally valuable, the Court

3

finds it appropriate at this time to waive the appraisal requirements for the personal property component of the Martha's Vineyard Property.[2] *See* 28 U.S.C. § 2004. Therefore, all the property that must be appraised under 28 U.S.C. § 2001(b) has been appraised.

### B. The proposed sale price exceeds two-thirds of the appraised value of the real property.

As noted above, the appraised value of the real property component of the Martha's Vineyard Property is $2,600,000. [*See generally* Doc. 196-1]. The Receiver's proposed sale price is $2,595,000, or roughly 99.8% of the appraised value. [Doc. 147 at ¶ 13; *see also* Doc. 196-1 at 121]. Thus, the proposed sale price satisfies Section 2001(b)'s requirement that any private sale of real property be for no less than two-thirds of the property's appraised value. *See* 28 U.S.C. § 2001(b).

### C. The terms of the sale were published in a newspaper of general circulation at least ten days before approval of the sale.

The Receiver—in compliance with a prior Order of the Court, [*see* Doc. 197]—published notice of the proposed sale in the Vineyard Gazette, a newspaper of general circulation on Martha's Vineyard. [*See* Docs. 203, 203-1]. Specifically, the Receiver published notice of the proposed sale in the Vineyard Gazette's May 22, 2026, and May 29, 2026, print editions, as well on the Gazette's website from May 22, 2026, through June 5, 2026. [*See* Docs. 203, 203-1]. As the Receiver's notice was first published more than ten days ago (and indeed more than ten days before the June 11, 2026, hearing), it satisfies Section 2001(b)'s requirements. *See* 28 U.S.C. § 2001(b).

---

[2] For the avoidance of any doubt, when the Court refers to the "appraisal requirements" in the sentence above, it refers both to the requirement that three disinterested persons appraise the property to be sold and the attendant requirement that any proposed sale be for no less than two-thirds of the appraised value.

4

**D. No bona fide offers were made, under conditions prescribed by the Court, that guaranteed a 10 per centum increase over the proposed sale price.**

The notice published in the Vineyard Gazette directed any party interested in purchasing the Martha's Vineyard Property to submit an overbid, accompanied by proof of ability to purchase, to the Receiver on or before June 5, 2026. [Doc. 203-1; *see also* Doc. 197 at 2 (stating what language the Receiver was required to include in the Vineyard Gazette notice)]. Following this deadline, the Receiver informed the Court that he did not receive any timely overbids. [Doc. 203 at 2]. Thus, the Court need only address the pre-overbid offers.

When the Receiver initially filed the Motion, he informed the Court that he had two "backup" offers for the purchase of the Martha's Vineyard Property, each for $2,595,000. [Doc. 147 at ¶ 1 n.1]. As neither of these offers would guarantee a "10 per centum increase" over the proposed sale price, they do not prevent the Court from approving the proposed sale. *See* 28 U.S.C. § 2001(b).

Additionally, Nubian Sage Enterprises, LLC has offered to purchase 100% of the membership interests in UN House MV, LLC (the receivership entity that owns the Martha's Vineyard Property) for $900,000. [*See* Doc. 175-1]. Because this offer is structured in a fundamentally different way than an offer to purchase the Martha's Vineyard Property, the Court finds that it need not consider the Nubian Sage offer when evaluating whether a "bona fide offer [has been] made…which guarantees at least a 10 per centum increase" over the proposed sale price. *See* 28 U.S.C. § 2001(b). The Court further finds that even if it was to consider the Nubian Sage offer, it would only "provide the Receivership Estate with the same economic benefit contemplated by the Receiver's proposed sale[.]" [*See* Doc. 163 at ¶ 1]. And "the same economic benefit" is a far cry from the 10% premium required to stop a sale under Section 2001(b).

Accordingly, the Court finds there have not been any bona fide offers guaranteeing a "10

per centum increase" over the proposed sale price.

**E. Adequate notice of the June 10, 2026, hearing was given to all interested parties.**

The Court directed the Receiver to provide notice of the June 11, 2026, hearing "to every individual and entity who ha[d] made an offer to purchase the Martha's Vineyard Property and to every individual and entity that submit[ted] a timely overbid." [Doc. 197 at 3]. Defendants Fawn and Keith Weaver assert the Receiver failed to follow this directive because he allegedly failed to provide notice of the hearing to Nubian Sage. The Court disagrees.

As noted above, Nubian Sage did not offer to purchase the Martha's Vineyard Property. Instead, it offered to purchase 100% of the membership interests in UN House MV, LLC. [Doc. 175-1]. This difference in the structure of Nubian Sage's offer means the Receiver was not required to notify Nubian Sage of the June 11, 2026, hearing. Furthermore, if Nubian Sage had an interest in purchasing the Martha's Vineyard Property outright, then it could have submitted an overbid in accordance with the procedure prescribed by the Court and published in the Vineyard Gazette, at which point it would have been notified of the hearing.

Considering the foregoing and that there are no other allegations the Receiver failed to provide adequate notice of the hearing as directed, the Court finds the June 11, 2026, hearing was properly noticed.

**F. Selling the Martha's Vineyard Property is in the best interests of the receivership estate.**

The Receiver and the Weavers sharply disagree on whether selling the Martha's Vineyard Property is in the best interests of the receivership estate.

The Receiver takes the position that it is in the best interests of the receivership estate to liquidate all non-income producing property, including the Martha's Vineyard Property. [Doc. 147

6

at ¶ 7]. He states that "[t]hroughout the pendency of this receivership, the Martha's Vineyard Property has created monthly expenses for the estate while generating no revenue." [*Id.* at ¶ 6]. And while he recognizes the Weavers' position (discussed in detail below) that the Martha's Vineyard Property has some value as a marketing and brand-building tool, he disagrees with their assessment of the Property's importance. [*See* Doc. 175 at 2–3]. He notes the Martha's Vineyard Property is "not income producing, not geographically related to Uncle Nearest's operations, and not historically tied to Uncle Nearest's origins[.]" [*Id.* at 3]. Considering this, his position that "the only path forward for [Uncle Nearest] is the sale of its assets to a third party[,]" and the fact that none of Uncle Nearest's potential purchasers have inquired about purchasing the Martha's Vineyard Property, the Receiver maintains that the Martha's Vineyard Property is not critical to Uncle Nearest's enterprise value and should be sold separately to maximize its benefit to the receivership estate. [*See id.* at 2–3].

The Weavers, on the other hand, assert the Martha's Vineyard Property is a key asset for Uncle Nearest, allowing the company to market its products, build its brand, and improve its relations with key partners near the historically important community of Oak Bluffs. [*See* Doc. 163 at ¶¶ 5–13]. They argue that "selling the [Martha's Vineyard] Property may reduce costs, but it will also have negative effects on other things…that may decrease the Company's bottom line, with the knock-on effect potentially being a lower bottom line for the Company than had the costs of the [Martha's Vineyard] Property never been eliminated." [*Id.* at ¶ 12]. Said differently, the Weavers acknowledge the Martha's Vineyard Property does not directly produce income, but they believe it still provides a net financial benefit to Uncle Nearest. The Weavers maintained this position at the June 11, 2026, hearing and further questioned whether it was in the best interests of the receivership estate to sell the Martha's Vineyard Property now before the underlying claims

7

have been fully adjudicated.

The Court understands the Weavers' position, and there is no doubt in its mind that the Martha's Vineyard Property provides *some* benefits to Uncle Nearest. But the Court is not convinced these benefits outweigh the costs the Martha's Vineyard Property is continually imposing on the receivership estate. And when considering the Martha's Vineyard Property's geographic separateness from Uncle Nearest's other operations, its lack of ties to Uncle Nearest's origins, and the fact that potential purchasers of Uncle Nearest have not expressed any interest in acquiring the Martha's Vineyard Property, the Court is left with the firm conviction that it is in the best interests of the receivership estate to sell the Martha's Vineyard Property. The Court is further convinced that it is in the best interests of the receivership estate to sell the Property now as opposed to later to prevent the estate from incurring additional expenses related to it.

That said, the Weavers are correct that the underlying claims in this case have yet to be fully adjudicated. Consequently, the Court will not permit the Receiver to disburse any proceeds from the sale of the Martha's Vineyard Property to Plaintiff Farm Credit Mid-America, PCA.

### III.    CONCLUSION

For the foregoing reasons, the Court finds the Receiver's proposed sale of the Martha's Vineyard Property satisfies the requirements of 28 U.S.C. § 2001(b) and 2004. Accordingly, the Court hereby **ORDERS** the following:

1. The Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard [Doc. 147] is **GRANTED**.

2. The Receiver's proposed sale of the Martha's Vineyard Property is **APPROVED**.

3. The Receiver is **AUTHORIZED** to sell the Martha's Vineyard Property under the terms and conditions described in the Motion [Doc. 147], provided, however, that no proceeds of the sale may be released to Plaintiff Farm Credit Mid-America, PCA while the underlying

8

claims in this action remain pending. Any proceeds not used to satisfy the first lien on the Martha's Vineyard Property held by Planet Home Lending, LLC **SHALL** be held and used for the benefit of the receivership estate.

4. The Receiver is further **AUTHORIZED** to sign any deeds, titles, and/or bills of sale necessary to effectuate the sale of the Martha's Vineyard Property.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

9