| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 4:25-cv-38** |
| | ) | |
| **v.** | ) | **Judge Atchley** |
| | ) | |
| **UNCLE NEAREST, INC., *et al.,*** | ) | **Magistrate Judge Steger** |
| | ) | |
| **Defendants.** | ) | |

### RECEIVER PHILLIP G. YOUNG, JR.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDER GRANTING RECEIVER'S EXPEDITED MOTION TO SELL REAL AND PERSONAL PROPERTY IN MARTHA'S VINEYARD PENDING RECONSIDERATION AND/OR APPEAL

Phillip G. Young, Jr., the Receiver for Uncle Nearest, Inc. and related entities (the "Receiver"), submits this *Response in Opposition to Defendants' Motion to Stay Order Granting Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard Pending Reconsideration and/or Appeal* filed solely by Defendants Fawn Weaver and Keith Weaver (Doc. 215) (the "Motion"). Fawn Weaver and Keith Weaver are referred to as "the Weavers."

The Court should deny the Weavers' Motion because it simply repackages many of the same arguments this Court has repeatedly rejected after giving the Weavers adequate notice and an opportunity to be heard. The Motion fails to satisfy the demanding four-factor standard governing stays, especially when the Weavers have not even appealed the Court's June 15, 2026 Order (Doc. 212) or filed a motion to reconsider the June 15, 2026 Order pursuant to Fed. R. Civ. P. 54(b). Further, the Weavers' requested stay would substantially injure the receivership estate for the reasons set out in the Receiver's prior briefing, for the reasons discussed in detail in the Court's 62-page Order entered on May 26, 2026, (Doc. 198), and for the reasons set out in the Court's June 15, 2026 Order which granted the Receivers Motion to sell Martha's Vineyard

Property.[1]

In support of this Response, the Receiver states as follows.

## I. BACKGROUND

On August 22, 2025, this Court appointed the Receiver over Uncle Nearest, Inc. and related entities. (Doc. 39.) On May 26, 2026, the Court added Grant Sidney, Inc. to the related entities subject to the Receiver's authority. (Doc. 198.) The Court declined to terminate the receivership for the numerous reasons set out in the Court's May 26, 2026 Order, (Doc. 198), including the receivership estate's insolvency under a clash flow and balance sheet analyses, the Weavers' fraudulent conduct related to the receivership estate, and Fawn Weaver's significant lack of credibility.

On February 25, 2026, the Receiver filed his *Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* (Doc. 147), seeking to sell the Martha's Vineyard Property (the "MVP") to a non-insider third party for $2,595,000. As a prerequisite to granting the Receiver's Motion, the Court ordered the Receiver to comply with the requirements set out in 28 U.S.C. §§ 2001(b) and 2004, including obtaining three independent appraisals of the MVP and publishing notice of the proposed sale in the Vineyard Gazette with a procedure for overbids. (*See* Doc. Nos. 177, 188, 193, and 197.) The Court also set the Receiver's Motion to Sell for hearing on June 11, 2026.

The Weavers actively opposed and litigated the sale of the MVP for months by seeking to

---

[1] The Weavers have previously sought stays or similar relief in connection with this receivership and the sale of the Martha's Vineyard Property, and such requests have been denied on each occasion. On May 26, 2026, this Court denied the Weavers' Motion to Reconsider, which sought to terminate the receivership. (Doc. 198.) On June 10, 2026, this Court denied the Weavers' Emergency Motion to Preserve the Status Quo in *Uncle Nearest, Inc. v. Young, et al.*, No. 3:26-cv-00135 (E.D. Tenn., Order, June 10, 2026, Doc. 36). Most recently, on July 2, 2026, the Sixth Circuit Court of Appeals denied the Weavers' Motion to Stay pending appeal, holding that the Weavers failed to demonstrate a likelihood of success on the merits and that they had not carried their burden to obtain a stay. *See Farm Credit Mid-America, PCA v. Uncle Nearest, Inc.*, No. 26-5492 (6th Cir., Order, July 2, 2026, Doc. 22-2) (Order denying motion for stay pending appeal).

terminate the Receivership, which was denied on May 26, 2026 (Doc. 198), and by filing numerous objections to both the sale and the Receiver's proposed appraisers. The hearing on June 11, 2026 was the forum the Court set for the Weavers' objections to be heard, and the Weavers fully participated in that hearing with new counsel who filed their Notices of Appearance only several hours before the hearing.

On June 15, 2026, the Court entered its *Order Granting Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* (Doc. 212), finding that the sale satisfied all requirements of 28 U.S.C. §§ 2001(b) and 2004 and that the Receiver had complied with the Court's Orders (Doc. Nos. 177, 188, 193, and 197) related to the sale. The Court further found that selling the MVP is in the best interests of the receivership estate. Prior to entering its Order, the Court gave the Weavers ample opportunity to brief their objections and to be heard. In its Order granting the Receiver's Motion to sell the MVP, the Court specifically addressed and rejected all of the Weavers' objections and arguments.

The Weavers' present Motion is the latest in a series of emergency motions seeking to halt the sale of the MVP. The Receiver has already successfully opposed similar motions, including the Weavers' *Emergency Motion to Preserve the Status Quo* in *Uncle Nearest, Inc. v. Young, et al.*, No. 3:26-cv-00135 (E.D. Tenn., Doc. 28), which the Court denied on June 10, 2026. Moreover, the Sixth Circuit Court of Appeals recently denied the Weavers' Motion to Stay pending appeal, holding that the Weavers failed to demonstrate a likelihood of success on the merits and that they had not carried their burden to obtain stay relief. *See Farm Credit Mid-America, PCA v. Uncle Nearest, Inc.*, No. 26-5492 (6th Cir., July 2, 2026, Order, Doc. 22-2) (Order denying motion for stay pending appeal). The Weavers' Motion before this Court presents the same recycled arguments that have been repeatedly rejected.

## II. **LEGAL STANDARD**

The stay requested by the Weavers is an extraordinary remedy, and the burden of justifying it rests entirely on the Weavers. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (stating that a preliminary injunction "is an extraordinary remedy which should be granted only if the movant carries [the] burden of proving that the circumstances clearly demand it."). The Weavers do not carry and cannot carry that burden here.

The Weavers' request for a stay of the sale of the MVP turns on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26, 434 (2009). *See also Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) ("We ask four questions in evaluating whether to grant a stay pending appeal: Is the applicant likely to succeed on the merits? Will the applicant be irreparably injured absent a stay? Will a stay injure the other parties? Does the public interest favor a stay?"). The Sixth Circuit applies a stricter standard to the likelihood-of-success factor, requiring "a strong or substantial likelihood or probability of success on the merits." *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

The movant "must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991). The Weavers fall short on each and every factor. The Weavers suggest that even if they cannot show a high probability of success, they should prevail because "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay."

(Motion at 5-6.) But even under this sliding scale, the Weavers must show, at a minimum, "'serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued.'" *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). For the reasons set forth below, the Weavers cannot satisfy even this minimum threshold, and they have failed to demonstrate any irreparable harm, let alone harm that "decidedly outweighs" harm to the estate from a stay.

### III.  ARGUMENT

### A.  THE WEAVERS HAVE NOT MADE A STRONG SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS.

The Weavers' merits arguments consist of two claims: (1) that their due process rights are being violated because the Receiver has exceeded his authority and is dissipating assets before trial; and (2) that shareholders and unsecured creditors are entitled to notice and an opportunity to be heard before any sale. (Motion at 4-7.) Both arguments fail as a matter of law and fact.

#### 1.  The Weavers' Due Process Rights Have Not Been Violated.

The Weavers first argue that their due process rights are being violated because: (a) the Receiver is pursuing remedies which exceed the original scope of the receivership order; (b) the sale order authorizes sale of personal property without an inventory and without any disclosure of the value; (c) the Receiver has terminated the Weavers from Uncle Nearest, Inc.; and (d) the Receiver has signed a Letter of Intent to sell all of the assets of the company. (Motion at 4-5.) They characterize these actions as evidence that the receiver intends to dissipate each and every asset of the estate before trial. (Id. at 5-6.) This argument fails for multiple reasons.

First, the Weavers have received full due process. The Weavers have had extensive notice and opportunity to be heard throughout this proceeding. They filed a motion to terminate the receivership on December 23, 2025 (Doc. 91), which this Court denied on May 26, 2026 after a

seven-hour evidentiary hearing (Doc. 198.) They filed their Response in Opposition to the Motion to Sell on March 5, 2026 (Doc. 163.) They filed a Limited Objection to the Receiver's Notice of Appraisers on March 28, 2026 (Doc. 187.) They appeared at the June 11, 2026 hearing with counsel and argued against the sale on the merits. This Court considered and rejected all of the Weavers' objections before entering the June 15, 2026 Order. The Weavers received exactly what due process requires: notice and an opportunity to be heard. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) ("[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest.").

Second, the Receiver has not exceeded his authority. This Court has broad equitable powers to appoint a receiver over assets disputed in litigation, and the receiver's role is "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). The sale of a non-income-producing asset that has created monthly expenses for the estate while generating no revenue (*see* Doc. 212 at 7) falls squarely within this mandate. This Court found in its May 26, 2026 Order that "[t]he combination of Uncle Nearest's precarious financial situation, its pre-receivership fraudulent conduct, and the risks to Farm Credit's collateral absent a receiver render a receivership the least drastic remedy at the Court's disposal." (Doc. 198 at 32.)

Third, the Weavers' personal property argument is meritless. As this Court found, "it is customary on Martha's Vineyard to include furnishings in the sale of real property." (Doc. 212 at 3.) The listing price was set on that basis, and the three court-appointed appraisers valued the property consistently with this practice. This Court found "it appropriate at this time to waive the

appraisal requirements for the personal property component of the Martha's Vineyard Property." (Id. at 4.) Moreover, the Receiver has taken steps to return personal items belonging to the Weavers, such as clothing, photographs, and personal memorabilia, that are not part of the real estate sale. The Receiver requested a list of such items from the Weavers, but they did not respond.

Notably, the Weavers never raised any objection to the sale of the personal property in their March 5, 2026 Response in Opposition to the Motion to Sell (Doc. 163), in their March 28, 2026 Limited Objection to the Receiver's Notice of Appraisers (Doc. 187), or at the June 11, 2026 hearing. Instead, the Weavers' prior objections focused exclusively on: (1) the prematurity of the sale pending their Motion to Reconsider; (2) the alleged impact on Uncle Nearest's "enterprise value"; (3) whether Farm Credit's lien should be validated before any distribution; and (4) an alternative offer from Nubian Sage. The Weavers raise the personal property argument for the first time in their present Motion, only after the Court ruled against them. This is yet another example of the Weavers' pattern of raising new arguments after the fact. The Weavers new argument is, consequently, waived.

Fourth, the dissipation characterization is false. As this Court has found, the Receiver "has improved Uncle Nearest's operations, increased its profitability...corrected its records, and generally set the company on a better path." (Doc. 198 at 36.) Selling a non-income-producing asset to reduce carrying costs is prudent estate administration, not dissipation. This Court was "left with the firm conviction that it is in the best interests of the receivership estate to sell the Martha's Vineyard Property" and "further convinced that it is in the best interests of the receivership estate to sell the Property now as opposed to later to prevent the estate from incurring additional expenses related to it." (Doc. 212 at 8.)

Fifth, the Weavers' request is procedurally premature. The June 15, 2026 Order is

interlocutory, and the Weavers concede it "is not ordinarily appealable." (Motion at 4.) The Weavers have not filed a notice of appeal from the June 15, 2026 Order, have not sought certification under 28 U.S.C. § 1292(b), and have not filed a motion to reconsider under Federal Rule of Civil Procedure 54(b). A stay pending appeal or reconsideration presupposes that a notice of appeal or motion for reconsideration has been filed. The Weavers state they "intend to appeal," but intention is not a filed notice of appeal.

### 2.   <u>Shareholders and Unsecured Creditors Are Not Entitled to Additional Notice.</u>

The Weavers' second argument is that shareholders and unsecured creditors are entitled to notice and an opportunity to be heard before any sale. (Motion at 6.) They contend that unsecured creditors are owed over $13 million dollars and that equity security holders are being impacted because investors in the company are losing a proportionate share of their equity by the sale of the MVP. (Id. at 6.) They assert that the sale order provides no such notice to shareholders or unsecured creditors and therefore fails at a minimum at the notice level." (Id. at 7.) This argument fails for three independent reasons: (a) the pending sale fully complies with 28 U.S.C. § 2001(b); (b) the Weavers lack standing to assert the rights of non-parties; and (c) the Weavers waived this argument by failing to raise it until after the Court ruled against them.

### a.   <u>The Pending Sale Fully Complies with 28 U.S.C. § 2001(b).</u>

The pending sale satisfies every requirement of 28 U.S.C. § 2001(b). In its June 15, 2026 Order, this Court explicitly found that "the proposed sale of the Martha's Vineyard Property satisfies Sections 2001(b) and 2004's requirement." (Doc. 212 at 3.) Specifically, the Court found: (1) three disinterested appraisers were appointed and each valued the property at $2,600,000; (2) the proposed sale price of $2,595,000 exceeded two-thirds of the appraised value; (3) notice was published in the Vineyard Gazette more than ten days before the hearing; (4) no bona fide overbid

was received; and (5) the sale was in the best interests of the receivership estate. (Id. at 3-8.)

The statute requires "notice to all interested parties...by publication or otherwise as the court directs." 28 U.S.C. § 2001(b). This Court directed publication in the Vineyard Gazette, and the Receiver complied. The statute does not require individual notice to every shareholder or creditor. Rather, the statute it requires notice "as the court directs." This Court's notice procedures were fully adequate and consistent with due process requirements. Critically, "[n]o non-party claiming an interest in the Martha's Vineyard Property or the proposed sale thereof appeared at or otherwise sought to participate in the hearing." (Doc. 212 at 2.)

**b.** **The Weavers Lack Standing to Assert the Rights of Non-Parties.**

Moreover, the Weavers lack standing to assert the due process rights of shareholders and unsecured creditors. A party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The Supreme Court reaffirmed this principle in *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004), explaining that the rule "assumes that the party with the right has the appropriate incentive to challenge...governmental action and to do so with the necessary zeal and appropriate presentation." The Sixth Circuit has expressly adopted the *Warth* rule in *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Warth*, 422 U.S. at 499).

The narrow exception for third-party standing requires three elements: "first, injury in fact; second, a close relationship with the third party whose rights he asserts; and third, that the third party has no forum to protect its own interests." *Fieger*, 471 F.3d at 648 (citing *Kowalski*, 543 U.S. at 130). The Weavers cannot satisfy this test, particularly the "hindrance" element. In *Kowalski*, the Supreme Court denied third-party standing to attorneys attempting to assert the rights of hypothetical future clients, requiring the party to show both a "close" relationship and a

"hindrance" to the third party's ability to protect his own interests. *Kowalski*, 543 U.S. at 130-31.

The Weavers have not shown, and on these facts cannot show, that the shareholders and creditors they invoke face any obstacle to appearing and asserting their own due process claims. The Court directed publication of notice, established overbid procedures, and conducted a hearing. Yet, "[n]o non-party claiming an interest in the Martha's Vineyard Property or the proposed sale thereof appeared at or otherwise sought to participate in the hearing." (Doc. 212 at 2.) If shareholders and unsecured creditors wished to object, they had ample opportunity to do so. Their absence from the proceedings is not a "hindrance" justifying third-party standing; it is a choice. Under *Kowalski*, the Weavers do not have standing to assert due process claims on behalf of alleged third parties.

Moreover, the only parties with a cognizable interest in the Martha's Vineyard Property are (1) UN House MV, LLC, the receivership entity that holds title to the property; (2) Farm Credit Mid-America, PCA, the secured creditor; and (3) Uncle Nearest, Inc., the defendant. (See Doc. 147 at ¶ 5; Doc. 212 at 1.) Each of these parties has received notice and an opportunity to be heard throughout this proceeding. UN House MV, LLC is part of the receivership estate and is represented by the Receiver. (Doc. 147 at ¶ 5.) Farm Credit is the plaintiff in this action, has actively participated throughout, and consented to the sale. (Doc. 147 at ¶ 9.) The Defendants, including the Weavers, have had full opportunity to participate, filed objections to the sale, and appeared at the June 11, 2026 hearing. Beyond these parties, no shareholder, unsecured creditor, or other non-party allegedly claiming an interest in the property appeared or sought to participate. (Doc. 212 at 2.) The Weavers cannot bootstrap third-party standing by invoking the interests of parties who had every opportunity to appear and chose not to do so.

c. <u>**The Weavers Waived their Due Process Argument.**</u>

Case 4:25-cv-00038-CEA-CHS   Document 216   Filed 07/06/26   Page 10 of 16
PageID #: 8022

Tellingly, the Weavers never raised their due process arguments on behalf of themselves or shareholders and unsecured creditors until after the Court ruled against them. The Weavers filed their Response in Opposition to the Motion to Sell on March 5, 2026 (Doc. 163), objecting on four grounds: (1) the sale should be held in abeyance pending the Motion to Reconsider; (2) the sale ignores the property's enterprise value; (3) Farm Credit's lien should be validated before any distribution; and (4) an alternative offer from Nubian Sage would preserve the property's purpose. (Doc. 163 at 1-2.) Nowhere in that filing, or in any subsequent filing before their present Motion, did the Weavers raise due process concerns on behalf of themselves or shareholders or unsecured creditors. They filed a Limited Objection to the Receiver's Notice of Appraisers (Doc. 187), challenging one appraiser's qualifications, but raised no due process argument. They appeared at the June 11, 2026 hearing and argued on the merits, but raised no due process argument. Only now, after an unfavorable ruling, do the Weavers invoke due process concerns on behalf of themselves and the rights of non-parties who had every opportunity to participate and chose not to do so. This is textbook waiver. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("While we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

**B.      DEFENDANTS FACE NO CERTAIN OR IMMEDIATE IRREPARABLE HARM.**

Any alleged harm must be "both certain and immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154. An asserted legal or procedural error, standing alone, does not establish immediate, irreparable injury. The movant must tie the claimed error to a concrete, imminent harm that cannot be remedied.

The Weavers also fail *Griepentrog*'s threshold requirement. A stay movant must "address

each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Griepentrog*, 945 F.2d at 154; *accord SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (movant bears "the burden of showing it is entitled to a stay"). The Weavers offer no affidavit or evidence establishing certain and immediate harm or their inability to be made whole from the preserved sale proceeds. Conclusory assertions do not satisfy this burden and warrant denial.

This Court has already found that "the receivership is not causing irreparable harm to Uncle Nearest." *Uncle Nearest, Inc. v. Young, et al.*, No. 3:26-cv-00135 (E.D. Tenn., Order, June 2, 2026, Doc. 32, at 5). Nothing in the Weavers' Motion alters that conclusion.

The Weavers claim that the sale will cause irreparable harm is speculative. The Weavers argue that "the sale will be difficult or impossible to unwind" and cite cases finding irreparable harm where litigants "would lose control over the property even before consummation of any foreclosure proceeding." But this case involves a court-supervised receivership sale, not a foreclosure. The Court's June 15, 2026 Order specifically provides that "no proceeds of the sale may be released to Plaintiff Farm Credit Mid-America, PCA while the underlying claims in this action remain pending" and that "[a]ny proceeds not used to satisfy the [$1.5 million] first lien on the Martha's Vineyard Property held by Planet Home Lending, LLC SHALL be held and used for the benefit of the receivership estate." (Doc. 212 at 9.) This preservation of proceeds ensures that the Weavers' economic interests, if any, can be fully compensated if they ultimately prevail on the merits. The sale converts an illiquid, expense-generating asset into liquid proceeds that remain under the Court's supervision.

**C.**      <u>**A STAY WOULD SUBSTANTIALLY INJURE THE RECIVERSHIP ESTATE AND OTHER PARTIES.**</u>

The third factor requires the Weavers to establish that "issuance of the stay will [not]

substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434.

The Receiver's role is to "safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets." *Liberte Cap. Grp.*, 462 F.3d at 551. The Weavers' asks this Court to freeze that administration at a critical juncture.

The Weavers' requested stay would harm the receivership estate by continuing to impose monthly expenses for a non-income-producing asset. As this Court found, the Martha's Vineyard Property has created monthly expenses for the estate while generating no revenue, is "not geographically related to Uncle Nearest's operations, is not historically tied to Uncle Nearest's origins, and potential purchasers of Uncle Nearest have not expressed any interest in acquiring it." (Doc. 212 at 7-8.) Accordingly, the Court concluded that, "it is in the best interests of the receivership estate to sell the Property now as opposed to later to prevent the estate from incurring additional expenses related to it." (Id. at 8.) Delaying the sale only prolongs those carrying costs to the prejudice of creditors which weighs in favor of selling the MVP. *See, e.g.*, *Huntington Nat'l Bank v. Sheridan Propco LLC*, 2026 U.S. Dist. LEXIS 33426, at *36 (E.D. Mich. Feb. 18, 2026) (continued carrying costs weigh in favor of approving a receivership sale to conserve the estate).

The Weavers' requested stay would further impair Farm Credit's collateral. As this Court found in its May 26, 2026 Order, "[w]ithout the receivership, Farm Credit's collateral would be in imminent danger of being lost, concealed, injured, diminished in value, or squandered." (Doc. 198 at 31.)

**D.     THE     PUBLIC     INTEREST     FAVORS     ORDERLY     RECEIVERSHIP ADMINISTRATION.**

The public interest lies in respect for this Court's orders and in the orderly, efficient, court-

supervised administration of the receivership estate. The Weavers argue that the public interest favors preserving the MVP until the Court and, if necessary, the Court of Appeals can review the disputed issues in this case meaningfully. They further argue that the public interest is also served by ensuring that a receivership does not result in premature liquidation before liability is determined. But the public interest does not favor indefinite preservation of a non-income-producing asset that continues to drain the receivership estate. As the Weavers themselves concede, the proceeds will be held pending resolution of the underlying claims. The public interest is served by the orderly, court-supervised process this Court has already set in motion pursuant to 28 U.S.C. §§ 2001(b) and 2004, a process that protects all parties' interests while conserving estate assets, not by the Weavers' repeated emergency motions seeking to halt that process.

**E.      AT A MINIMUM, ANY STAY SHOULD BE CONDITIONED ON A BOND.**

The Weavers argue that no bond should be required because their "ability to pay is clear." (Motion at 4.) This assertion is unsupported. The Weavers provide no evidence—no affidavit, no financial statements, no documentation of any kind—to establish their financial ability to pay, and this Court should not waive the bond requirement based on bare assertions. While the Weavers cite *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003) for the proposition that a bond is not required in every case, the *Arban* Court required that, "'the defendant's ability to pay the judgment [must be] so plain that the cost of the bond would be a waste of money.'" *Id.* at 409 (quoting *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986)).  As demonstrated by the Court's finding that Uncle Nearest is insolvent under the clash flow and balance sheet analyses,  the Weavers' ability to pay is far from clear.

Should the Court be inclined to grant any stay, the Weavers should be required to post a bond sufficient to secure the estate against the carrying costs, lost-sale risk, and administrative

harm a stay would cause. In this case, the bond should be set at a minimum of $2,595,000, the current sale price, in addition to the monthly carrying costs and maintenance costs associated with the MVP.

## IV. **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that this Court deny the Weaver's Motion in its entirety and permit the sale of the Martha's Vineyard sale to proceed pursuant to the Court's Order of June 12, 2026. In the alternative, if the Court is inclined to grant the Weavers a stay, the Court should require the Weavers to post a bond for at least $2,595,000, the current sale price, in addition to the monthly carrying costs and maintenance costs associated with the MVP. The Receiver further requests such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s Justin T. Campbell
Justin T. Campbell, Tn Bar No. 031056
John P. Nefflen, Tn Bar No. 020226
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
Voice: (615) 465-6015
Fax:    (615) 807-3048
Email: justin@thompsonburton.com
Email: john.nefflen@thompsonburton.com

*Counsel for Receiver*

# CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, a true and correct copy of the foregoing listed below was filed and served via the Court's CM/ECF system upon all parties requesting service in the above-listed case.

Dated: June 6, 2026.

/s/ Justin T. Campbell
Justin T. Campbell