| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., *et al.,* | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |

**RECEIVER PHILLIP G. YOUNG JR.'S
ANSWER TO COMPLAINT AND COUNTERCLAIM ON BEHALF OF DEFENDANTS
UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., AND UNCLE
NEAREST REAL ESTATE HOLDINGS, LLC**

For his Answer to Plaintiff Farm Credit Mid-America, PCA's ("Lender" or "Farm Credit")

Complaint and Request for Appointment of Receiver (the "Complaint")[1], Receiver Phillip G.

Young, Jr. (the "Receiver"), on behalf of Defendants Uncle Nearest, Inc., Nearest Green Distillery,

Inc., and Uncle Nearest Real Estate Holdings, LLC (collectively, "Uncle Nearest" or

"Defendants"), but not on behalf of Defendants Fawn Weaver or Keith Weaver in their individual

capacities, answers as follows:

**PRELIMINARY STATEMENT**

1.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the first sentence of Paragraph 1 of the Complaint.

Defendants admit the remaining allegations contained in Paragraph 1 upon information and belief.

2.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 2 of the Complaint.

---

[1] Plaintiff's Complaint states that it is verified, but not verification was included. Consequently, the Defendants' Answer is not verified.

3. Admitted.

4. Paragraph 4 of the Complaint does not contain factual allegations requiring a response.

## THE PARTIES

5. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6. Admitted.

7. Admitted.

8. Admitted.

9. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Weaver's residency as alleged in Paragraph 9 of the Complaint. Defendants admit all other allegations contained in Paragraph 9.

10. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Weaver's residency as alleged in Paragraph 10 of the Complaint. Defendants admit all other allegations contained in Paragraph 10.

## JURISDICTION AND VENUE

11. Paragraph 11 of the Complaint alleges legal conclusions to which no response is required.

12. Paragraph 12 of the Complaint alleges legal conclusions to which no response is required.

## FACTS AND DOCUMENTS COMMON TO ALL CLAIMS FOR RELIEF

A. **Uncle Nearest**

13. Admitted.

14.    Admitted.

**B.    The Loan Documents**

15.    The documents alleged in Paragraph 15 speak for themselves and are the best evidence of their content.

16.    The documents alleged in Paragraph 16 speak for themselves and are the best evidence of their content.

17.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint.

*The Revolving Loan*

18.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint.

19.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.

20.    The documents alleged in Paragraph 20 speak for themselves and are the best evidence of their content.

21.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint.

22.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

*The Term Loan*

23.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 24 of the Complaint.

25. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

26. Section 6.11 of the Credit Agreement alleged in alleged in Paragraph 26 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 of the Complaint.

27. Defendants admit the details concerning the mortgage to Oaktree Funding Corp. as alleged in Paragraph 27 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 27.

28. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint.

***The RELOC Loan***

29. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint.

30. The documents alleged in Paragraph 30 speak for themselves and are the best evidence of their content.

31. The documents alleged in Paragraph 31 speak for themselves and are the best evidence of their content.

32. The documents alleged in Paragraph 32 speak for themselves and are the best evidence of their content.

33. The documents alleged in Paragraph 33 speak for themselves and are the best evidence of their content.

34. Admitted.

35. The documents alleged in Paragraph 35 speak for themselves and are the best evidence of their content.

### C. The Loan Document Defaults

36. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint.

38. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint.

39. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint.

40. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint.

41. The document alleged in Paragraph 41 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41.

42. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint.

43. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint.

44. The document alleged in Paragraph 44 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in Paragraph 44.

45. The document alleged in Paragraph 45 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 45.

46. The document alleged in Paragraph 46 speaks for itself and is the best evidence of its content.

47. The document alleged in Paragraph 47 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 47.

48. The document alleged in Paragraph 48 speaks for itself and is the best evidence of its content.

49. The documents alleged in Paragraph 49 speak for themselves and are the best evidence of their content.

50. The document alleged in Paragraph 50 speaks for itself and is the best evidence of its content.

51. Defendants admit that Keystone was engaged. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 51 of the Complaint.

52. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint.

53. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint.

54. Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 54 of the Complaint.

55. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint.

56. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.

57. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the Complaint.

58. The document alleged in Paragraph 58 speaks for itself and is the best evidence of its content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58.

59. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the Complaint.

60. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the Complaint.

61. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 of the Complaint.

62. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

63. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint.

64. The document alleged in Paragraph 64 speaks for itself and is the best evidence of its content. Defendants admit that a receiver is necessary based on upon the Court's *Order Appointing Receiver* entered on August 22, 2025 (Doc. 39).

65. The documents alleged in Paragraph 65 speak for themselves and are the best evidence of their content. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 65 of the Complaint.

**D. Remedies and Default**

66. The documents alleged in Paragraph 66 speak for themselves and are the best evidence of their content.

67. The documents alleged in Paragraph 67 speak for themselves and are the best evidence of their content.

68. The documents alleged in Paragraph 68 speak for themselves and are the best evidence of their content.

69. The documents alleged in Paragraph 69 speak for themselves and are the best evidence of their content.

70. Paragraph 70 of the Complaint does not contain factual allegations requiring a response. In the alternative, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 of the Complaint.

**FIRST CLAIM FOR RELIEF**

71. Defendants incorporate the previous answers by reference as if fully set forth herein.

72. Admitted.

73. Admitted.

74. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint.

75. Admitted.

76.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint.

## SECOND CLAIM FOR RELIEF

Paragraphs 77 through 87 of the Complaint relate to the appointment of a receiver, which is now moot as the Court has already granted the receivership. *See Order Appointing Receiver* entered on August 22, 2025 (Doc. 39).  In the alternative, Defendants admit the allegations contained in Paragraphs 77 through 87 of the Complaint.

88.     Defendants deny all allegations of the Complaint not specifically admitted or otherwise addressed.

## AFFIRMATIVE DEFENSES

1.     The Second Claim for Relief in Plaintiff's Complaint (Appointment of Receiver) is now moot, as this Court has already granted the requested receivership relief by its Order Appointing Receiver entered on August 22, 2025 (Doc. 39).

2.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to mitigate its damages.

3.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

4.     Plaintiff's recovery, if any, should be reduced by the amount of any setoffs or recoupments to which Defendants may be entitled.

5.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff's own acts, omissions, or conduct contributed to the damages alleged.

6.     Plaintiff's damages, if any, were not proximately caused by any act or omission of Defendants.

7.      Defendants rely on all defenses afforded by the Loan Documents and other agreements relied upon by Plaintiff in the Complaint.

8.      Defendants assert as an affirmative defenses all allegations, claims, and theories set forth in the Counterclaim below, including but not limited to: (a) Farm Credit's negligence in administering the credit facility, including its failure to verify the accuracy of financial reports and borrowing base certificates, its failure to confirm material transactions with the company's authorized officers, its failure to conduct meaningful collateral inspections and act on discrepancies discovered, and its failure to implement internal controls designed to detect and prevent fraud; (b) Farm Credit's willful blindness to red flags that should have prompted investigation, including the sole-signatory status of all twenty-eight drawdown requests, the rate of drawdowns at nearly $5,000,000 per month, and the lack of any direct communication with the CEO or majority shareholder; and (c) Farm Credit's contributory and comparative fault in enabling Mr. Senzaki's fraud to continue undetected for years, which bars or reduces any recovery by Farm Credit against Defendants.

9.      Defendants reserve the right to assert additional affirmative defenses as discovery may reveal.

Having fully answered the Plaintiff's Complaint, Defendants Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC request that the Court dismiss Plaintiff's Complaint, award Plaintiff their reasonable attorney fees and costs, and grant Defendants all other relief to which they are entitled.

# COUNTERCLAIM

Receiver Phillip G. Young, Jr., on behalf of Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC (collectively, "Counter-Plaintiffs"), asserts the following counterclaim against Farm Credit Mid-America, PCA ("Farm Credit" or "Counter-Defendant"):

## PARTIES

1. Counter-Plaintiff Uncle Nearest, Inc. is a Delaware corporation with its principal place of business located at 600 N. Main Street, Shelbyville, Tennessee 38106.

2. Counter-Plaintiff Nearest Green Distillery, Inc. (the "Distillery") is a Delaware corporation with its principal place of business located at 600 N. Main Street, Shelbyville, Tennessee 38106.

3. Counter-Plaintiff Uncle Nearest Real Estate Holdings, LLC ("RE Holdings") is a Tennessee limited liability company with its principal place of business located at 3125 Highway 231 N, Shelbyville, Tennessee 37160, and its sole member, Uncle Nearest, Inc., is a citizen of Delaware.

4. Counter-Defendant Farm Credit Mid-America, PCA ("Farm Credit" or "Lender") is an agricultural lending cooperative formed under the laws of the United States of America with its principal office located at 12501 Lakefront Place, Louisville, Kentucky 40299.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 as a compulsory counterclaim arising out of the same transaction or occurrence that forms the basis of Farm Credit's Complaint.

6. Venue is proper in this Court as the Complaint was filed in this district.

## FACTUAL ALLEGATIONS

7. On July 22, 2022, Uncle Nearest entered into a Credit Agreement with Farm Credit that established three facilities: a Revolving Loan, a Term Loan, and a Real Estate Line of Credit ("RELOC") (collectively, the "Loans"). The Revolving Loan was originally issued in the amount of thirty-five million dollars ($35,000,000).

8. Michael Senzaki ("Mr. Senzaki") served as Chief Financial Officer of Uncle Nearest from the company's earliest stages until his departure in approximately October 2024.

9. As CFO, Mr. Senzaki exercised nearly exclusive control over Uncle Nearest's financial reporting systems, loan compliance, and credit facility interactions with Farm Credit. He was responsible for preparing and transmitting all recurring reports of Uncle Nearest's inventory—including barreled whiskey, bottled whiskey, and grain—collateral, and financial condition to Farm Credit. He also routinely acted as the sole point of contact on lender matters.

10. Mr. Senzaki presented key financial submissions to Farm Credit in a form that concealed the Counter-Plaintiffs' true expense burden and outstanding obligations. Mr. Senzaki, acting alone or in concert with others, inflated inventory numbers on these documents for the purpose of inducing Farm Credit to approve multiple increases to the Counter-Plaintiffs' revolving line of credit.

11. Mr. Senzaki has admitted, during interviews with third-party investigators retained by Uncle Nearest, to falsifying monthly financial reports submitted to Farm Credit beginning in 2022.

12. Based on reports available to Counter-Plaintiffs, Mr. Senzaki further admitted to third-party investigators that he: (a) affixed Fawn Weaver's signature on multiple corporate documents without her knowledge or consent; (b) diverted equity interests belonging to Fawn

Weaver for his personal benefit, and admitted that he had concealed this for years; (c) fabricated board minutes purporting to show Fawn and Keith Weavers' approval in order to deceive lenders into approving unauthorized loans; and (d) used misappropriated funds to purchase his Las Vegas home, acquire vehicles, and gamble.

13. By August 2023, as a result of Mr. Senzaki's actions, the Revolving Loan had increased from thirty-five million dollars ($35,000,000) to sixty-six million nine hundred eighty thousand dollars ($66,980,000).

14. Between July 22, 2022, and August 2, 2023, Mr. Senzaki submitted twenty-eight (28) distribution requests on the credit facility, at a pace equivalent to nearly one every two weeks, totaling nearly $67,000,000. Each request was approved, even though Mr. Senzaki was the sole signee on all of them. Documentary evidence confirms that Farm Credit routinely approved loan requests without requiring the knowledge, consent, or confirmation of Mrs. Weaver, the company's principal decision-maker. Farm Credit's conduct allowed Mr. Senzaki to exercise economic control over Counter-Plaintiffs while excluding the actual owner from notice, approval, or oversight.

15. Upon information and belief, as part of a vendor diversion scheme, Mr. Senzaki rerouted funds approved by the Weavers to be paid to Uncle Nearest vendors to companies he controlled. Mr. Senzaki, acting alone or in concert with others, exploited a loophole in the Bill.com system to change payees and amounts after they had been approved in the ordinary course of Uncle Nearest's accounting procedures. At the time, financial reporting prepared by Mr. Senzaki reflected that Uncle Nearest's accounts payable stood at approximately three hundred forty-five thousand dollars ($345,000). After his departure in October 2024, and the appointment of the Receiver in August 2025, Counter-Plaintiffs discovered that the true outstanding accounts payable

was well in excess of ten million dollars.

16. Farm Credit failed to implement verification procedures that any competent lender would employ. Instead of verifying the accuracy of Mr. Senzaki's reports, conducting independent collateral inspections, or confirming amendments with other corporate officers, Farm Credit deferred entirely to Mr. Senzaki's requests and processed loan transactions without question. Farm Credit's willingness to overlook obvious irregularities, including the sole-signatory status of all twenty-eight drawdown requests, allowed Mr. Senzaki to expand the credit facility by more than $30,000,000 and to conceal the true state of the Counter-Plaintiffs' obligations until the fraud became impossible to hide.

17. Farm Credit failed to confirm the Counter-Plaintiffs' financial condition by requesting filed tax returns, audited financial statements, and other documents that would customarily be requested by any reasonable commercial lender to support a loan of this magnitude. A credit facility exceeding $100,000,000 demands heightened diligence, yet Farm Credit extended tens of millions of dollars without obtaining basic financial verification that is standard practice in commercial lending.

18. Under Farm Credit's written policy procedures, drawdowns could be requested and funded within twenty-four (24) hours, without independent confirmation from any other company officer and without notice to Mrs. Weaver, even though she was the company's principal decision-maker and sole authorized signatory for material facility changes.

19. Upon information and belief, Farm Credit did not contact Mrs. Weaver, the company's CEO, majority shareholder, and the only executive signatory on facility amendments, to confirm that she was aware of or had authorized these repeated drawdowns. A single telephone call or email to Mrs. Weaver at any point during the thirteen months of drawdowns might have

exposed Mr. Senzaki's fraud. Farm Credit's failure to make even this minimal inquiry constituted gross negligence and willful blindness.

20. Farm Credit effectively permitted nearly $67,000,000 to be drawn from the facility without performing the most basic oversight, confirming with the company's principal owner that she knew funds were being disbursed at this frequency and scale.

21. Each time an amendment was executed, Farm Credit collected additional fees, totaling nearly $400,000 in less than one year. These amendment and origination fees created a direct financial incentive for Farm Credit to continue processing increases and drawdowns without scrutiny. The more Mr. Senzaki borrowed, the more Farm Credit earned in fees. This misalignment of incentives helps explain why Farm Credit was willing to abandon standard verification procedures.

22. Further, instead of increasing the real estate loan secured by the distillery property, which had clear and growing value, Farm Credit repeatedly increased the revolving credit facility tied to aged whiskey barrels, bottled goods, and grain. The cost of the distillery build-out was approximately fifty million dollars ($50,000,000). Had the loan been structured against the property's value, the loan-to-value ratio would not have gone into technical default.

23. Farm Credit's failure to align the financing structure with the reality of the distillery project amplified the harm to Uncle Nearest.

24. An onsite inspection of the Collateral ordered by Farm Credit and conducted October 22–24, 2024, revealed that material unreconciled discrepancies existed between the amount of Collateral identified in Uncle Nearest's Borrowing Base and compliance certificate delivered for August 2024 and what the inspector was able to verify. Despite these discrepancies, Farm Credit continued to process drawdown requests without verifying the accuracy of reports

with Uncle Nearest's leadership.

## FIRST COUNTERCLAIM
### (Negligence and Gross Negligence)

25.     Counter-Plaintiffs reallege and incorporate by reference all of the allegations contained in the foregoing paragraphs.

26.     Farm Credit, through its bankers and agents administering the credit facility, owed a duty of care to Uncle Nearest to exercise reasonable diligence as a commercial lender in administering a credit facility that ultimately exceeded $100,000,000. Farm Credit's duty included, at minimum: (a) verifying the accuracy of financial reports and borrowing base certificates against independent sources; (b) confirming material transactions, particularly drawdowns totaling tens of millions of dollars, with the company's authorized officers and not merely the CFO who prepared the reports; (c) conducting meaningful collateral inspections and acting on discrepancies discovered; and (d) implementing internal controls designed to detect and prevent the very type of fraud that occurred here.

27.     The following red flags, any one of which should have prompted a reasonably diligent lender to investigate further, were visible to Farm Credit throughout the relevant period: (a) a single individual, Mr. Senzaki, as the sole signatory on all twenty-eight drawdown requests; (b) the same individual was the sole preparer and transmitter of all financial reports and borrowing base certificates; (c) drawdowns were occurring at a rate of nearly $5,000,000 per month; (d) the CFO was the only point of contact between the company and the lender, with no direct communication with the CEO or majority shareholder; and (e) the inventory-based collateral values reported by Mr. Senzaki were never independently verified against physical counts.

28.     Prudent lending practices and industry standards require lenders administering asset-based credit facilities to: (i) conduct periodic independent collateral audits; (ii) verify

borrowing base certificates against source documents; (iii) require dual signatories or independent confirmation for material drawdowns; and (iv) maintain direct communication with multiple company officers, not just the individual preparing financial reports. Farm Credit failed to implement any of these basic safeguards.

29.     Farm Credit breached its duty of care in the following ways, among others: (a) failing to verify the accuracy of inventory reports submitted by Mr. Senzaki, even when its own October 2024 collateral inspection revealed material discrepancies of approximately $21,000,000; (b) failing to confirm any of twenty-eight drawdowns with Mrs. Weaver, the company's CEO, despite her role as the sole executive signatory on facility amendments and the obvious red flag that a single individual was signing every distribution request; (c) maintaining policies that permitted drawdowns to be funded within twenty-four hours without independent verification from any company officer other than the CFO who prepared the underlying reports; and (d) continuing to process Mr. Senzaki's requests even after its own inspection revealed the Borrowing Base had been overstated by approximately $21,000,000.

30.     Farm Credit's negligence and gross negligence enabled Mr. Senzaki's fraud to continue undetected for years. A reasonably diligent lender administering a credit facility exceeding $100,000,000 would have implemented basic safeguards that would have exposed Mr. Senzaki's misconduct at its inception. Instead, Farm Credit did the opposite.

31.     As a direct and proximate result of Farm Credit's negligence and gross negligence, Uncle Nearest suffered damages including, but not limited to: (a) the improper expansion of the revolving credit facility from $35,000,000 to approximately $67,000,000 based on falsified reports; (b) fees and costs associated with multiple unnecessary amendments totaling nearly $400,000, fees that Farm Credit collected while ignoring the red flags that should have prompted

investigation rather than expansion; and (c) the harm caused by Mr. Senzaki's concealed misconduct, which Farm Credit's negligent oversight enabled to continue undetected for years.

## PRAYER FOR RELIEF ON COUNTERCLAIM

**WHEREFORE**, Counter-Plaintiffs respectfully pray that this Court:

1. Enter judgment in favor of Counter-Plaintiffs and against Counter-Defendant Farm Credit Mid-America, PCA for its negligence and gross negligence;

2. Award Counter-Plaintiffs compensatory damages in an amount to be proven at trial;

3. Award Counter-Plaintiffs pre-judgment and post-judgment interest as allowed by law;

4. Award Counter-Plaintiffs their costs incurred in this action, including reasonable attorneys' fees to the extent permitted by law or contract;

5. Offset any judgment entered in favor of Farm Credit against Counter-Plaintiffs by any amounts awarded to Counter-Plaintiffs on these counterclaims; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s Justin T. Campbell
Justin T. Campbell, Tn Bar No. 031056
John P. Nefflen, Tn Bar No. 020226
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
Voice: (615) 465-6015
Fax:    (615) 807-3048
Email: justin@thompsonburton.com
Email: john.nefflen@thompsonburton.com

*Counsel for Receiver*

# CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, a true and correct copy of the foregoing listed below was filed and served via the Court's CM/ECF system upon all parties requesting service in the above-listed case.

Dated: June 7, 2026.

/s/ Justin T. Campbell
Justin T. Campbell