# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., *et al.,* | ) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |

## RECEIVER'S FOURTH QUARTERLY REPORT

Comes now Phillip G. Young, Jr. (the "Receiver"), the court-appointed receiver in this matter, by and through counsel, and offers this fourth quarterly report pursuant to the Court's Order Appointing Receiver (the "Receivership Order") entered on August 22, 2025.

### *INTRODUCTION*

1.      This quarter has been exceedingly challenging for both the Receiver and his team, as well as the business as a whole. Excessive litigation and, to a lesser extent, recent government investigations have consumed time and resources of the receivership team this quarter. Moreover, the Receiver has had to navigate a significant shift in the Company's distributor network amidst a contentious receivership action and against the backdrop of a plummeting worldwide spirits market. Despite these challenges, the Receiver has pressed forward with the sale of property on Martha's Vineyard in Massachusetts, identified a buyer for vineyards in Cognac, France, and is negotiating an asset purchase agreement for the sale of the core business assets of the Company. While challenges undoubtedly lie ahead, the Receiver feels that a successful brand succession is very close.

1

<u>*TASKS ACCOMPLISHED BY THE RECEIVER*</u>

2.     The Receiver continues working to bring the Company into full tax compliance, and continues working to update and verify the Company's capitalization table.  These issues have existed for many years and the solution to them is complex, time-consuming, and expensive. While considerable progress has been made on remedying these issues, more work remains.

3.     The Receiver has continued making strides in his efforts to liquidate assets for the benefit of the creditors.  During this quarter, the Court approved the sale of the property on Martha's Vineyard.  The original buyers canceled their contract on July 2, 2026, as a result of the delay in the process and the continued litigation by Keith and Fawn Weaver concerning a sale of the property, including after approval of the sale.  However, the Receiver executed a contract with a new, arm's length, third party buyer on July 6, 2026.  The new contract is a cash sale for the same amount as approved by the Court, $2.595 million.  The Receiver hopes to close this sale quickly.

4.     In addition to the pending sale of the Martha's Vineyard property, the Receiver has received a reasonable cash offer for the vineyards owned by the receivership estate in Cognac, France.  The Receiver has yet to receive an offer for the chateau.  According to the Receiver's experts, the price offered for the vineyards is at least fair market value and they believe that, given the economic dynamics of real estate in Cognac and the cost of tending to the vineyards, the offer should be accepted.  The Receiver is in the process of getting third party appraisals of the vineyards and publishing notice in a newspaper of general circulation in Cognac, consistent with the Court's prior orders in this case.  Once those tasks have been accomplished, he anticipates filing a motion with the Court to approve the sale of the vineyards.

5.     As the Court has been previously notified, the Receiver has entered into a letter of intent to sell substantially all assets associated with the Uncle Nearest operations to a third party.

2

The parties are negotiating an asset purchase agreement consistent with the terms of the LOI. The Receiver is currently evaluating whether to seek approval of that asset purchase agreement in this Court, or whether to file a pre-packaged Chapter 11 bankruptcy on behalf of the Company in order to consummate this sale pursuant to the terms of 11 U.S.C. § 363. The Receiver hopes to file a notice of sale, in this Court or in the Bankruptcy Court, within thirty to sixty days.

6. The Receiver has guided the Company through a major change in distributors during this quarter. RNDC, the Company's largest distributor (and one of the nation's largest distributors), has undergone a massive downsizing since the beginning of 2026. It sold a number of markets in which it was the exclusive distributor of Uncle Nearest to Reyes Beverage Group. This transition has been a challenge to the Company and has come at a time when the Company most needed stability with its distributors. Nevertheless, due to the efforts of the Company's sales team and the Receiver's outside consultants, the Company has navigated this transition well during this quarter.

7. With the assistance of his team of consultants, the Receiver has continued making all operational and financial decisions for the Company.

8. As with the last quarter, the Receiver, his consultants, and his attorneys have devoted a significant amount of time this quarter to litigation initiated by Fawn Weaver and Keith Weaver. This litigation has caused significant confusion among employees, vendors and distributors, created distraction for the Receiver and his consultants, and threatened ongoing operations and the Receiver's efforts to maximize value of estate assets. This litigation includes the following:

- An appeal of the United States Bankruptcy Court for the Eastern District of Tennessee's dismissal of Fawn Weaver's bankruptcy filing on behalf of the

3

Company.  In addition to the appeal of the Bankruptcy Court's order, the Weavers have attempted to stay related and unrelated orders as part of this litigation.  The efforts to stay have been rejected and the briefing on this appeal is complete.

- An appeal of this Court's order denying attempts to terminate this receivership and expanding this receivership to include Grant Sidney, Inc.  The Weavers appealed this Court's order to the Sixth Circuit Court of Appeals and also sought a stay of the order, along with other orders.  The Sixth Circuit has denied the Weavers' stay requests and set a briefing schedule.  The Receiver anticipates briefing of these issues to begin in August.

- The Weavers and Grant Sidney filed a defamation suit against Farm Credit Mid-America, PCA ("Farm Credit" or "FCMA") in New York in December 2025.  The suit was ultimately removed to the United States District Court for the Southern District of New York.  Due to Grant Sidney's involvement as a plaintiff, and the expansion of this receivership, the Receiver recently became involved in this litigation.  The lawsuit was nonsuited in the last two weeks so there is nothing more for the Receiver to do with respect to this litigation.

- In December 2025, the Weavers and Grant Sidney filed suit against former Chief Financial Officer Michael Senzaki in the Chancery Court for Bedford County, Tennessee.  Due to the expansion of this receivership to Grant Sidney, the Receiver has intervened in the Bedford County litigation.  No answer has been filed but no party has moved for default judgment.  The Receiver continues to evaluate his role in this litigation.

- In this matter, the Weavers have continued seeking to stay various orders including

4

the order granting the Receiver's request to sell property in Martha's Vineyard, Massachusetts. The Court has previously rejected all requested stays, though one such motion remains pending as of the date of this Report.

9. During this quarter, the Receiver also received subpoenas for documents from the United State Attorney for the Southern District of New York and from the Securities and Exchange Commission. The Receiver and his team of professionals have been working to comply fully with the subpoenas in a timely manner. The Receiver, with the assistance of counsel, will continue complying with all subpoenas from governmental entities.

10. The Receiver has also had to address litigation in France during this quarter. Legal action has been threatened by several vendors regarding unpaid pre-receivership invoices, and has been initiated by governmental entities regarding unperformed administrative tasks. With the assistance of French legal counsel, the Receiver has resolved all threats of civil litigation and has timely responded to all administrative actions.

11. Due to a variety of factors, many of which have been covered in this report, the Receiver made the decision to terminate Fawn Weaver's and Keith Weaver's employment and involvement with the Company effective as of June 1, 2026. The Receiver has worked to restrict the Weavers' access to facilities and systems since that date, and has returned any personal property to them or their agents. While this decision was not made lightly, it has resulted in significantly less confusion among employees and vendors, and has made business operations significantly smoother.

### *TASKS IN PROCESS*

12. As mentioned previously, the capitalization table continues to be a work in progress. The Receiver and his counsel continue the process of reconciling the capitalization table.

13.     The Receiver continues to cooperate with government investigations, and has continued his own forensic investigation into the finances and transactions of the Company.  Based upon the results of the Receiver's investigation to date, the receivership estate likely has viable causes of action against a number of parties, including Mike Senzaki, Fawn Weaver, Keith Weaver, and/or entities controlled by these former officers and directors. The Receiver's investigation remains ongoing, and he does not anticipate filing any actions against these parties until his investigation is complete.

14.     The Receiver is continuing to work on the drafting and execution of an asset purchase agreement which would sell the bulk of the receivership estate's assets to a third party. This is a large and complex transaction; it has taken considerable time, and the Receiver anticipates that the time investment will continue for several weeks to come.

15.     In conjunction with the negotiation of the asset purchase agreement, the Receiver is evaluating the possibility of filing a pre-packaged Chapter 11 bankruptcy for the Company for the purpose of consummating a sale of substantially all assets.  If the Receiver and his legal counsel deem this advisable, the Receiver anticipates that such a bankruptcy filing is likely to occur within the next quarter.

16.     In addition to the execution of an agreement to sell the primary assets of the Company, the Receiver continues moving forward on a sale of the Martha's Vineyard property and on a potential sale of assets in Cognac.  The Receiver is also evaluating options to liquidate the assets associated with Square One Vodka.

17.     As detailed above, the Receiver is continuing to address all litigation demands in this case, in appellate matters, in other districts, in state court, and in French courts.  The Receiver is working diligently to represent and protect the interests of the receivership estate in all litigation

6

matters.

18.     The Receiver is working on the eviction of two tenants of the Nearest Green Distillery, Shelbyville Barrel House and Humble Baron.  Both of these tenants are restaurant concepts owned, directly or indirectly and in whole or in part, by Keith Weaver.  They both have rental arrears that span over a year.  On June 1, 2026, the Receiver formally declared the leases in default and demanded that they immediately bring all rent current or vacate the premises.  They neither brought the rent current nor vacated.  However, before the Receiver could begin eviction proceedings, Humble Baron filed for Chapter 11 bankruptcy protection in this district on June 5, 2026.  The Receiver and his counsel are working to gain relief from the automatic stay to evict Humble Baron, along with Shelbyville Barrel House.

19.     The Receiver is working to diligently but completely investigate the financial dealings of Grant Sidney, Inc., per this Court's instructions.  In that regard, the Receiver has requested financial records from a number of banking institutions and other companies.  While the Receiver has received some of the requested records, to date he has not received all records that are necessary for a complete evaluation.  The Receiver is working to complete this analysis and make a report to the Court by the July 25, 2026 deadline; however, unless certain third parties produce missing records expeditiously, it is possible that the Receiver may request an extension of this deadline from the Court.

20.     The Receiver and his consultants continue monitoring the finances of the Company, creating a rolling 13-week budget, and working with Farm Credit to fund any operational shortfalls.  The financial details of the last quarter are included below.

*FINANCIAL REPORT*

7

21.  **Key Financial Metrics**.  In accordance with the Receivership Order filed August 22, 2025, the following financial information is provided for the current reporting period (March 30, 2026 – June 28, 2026) and the receivership period to date (August 23, 2025 – June 28, 2026). Actual results are presented against the original operating budget to provide transparency into performance.

| Category | Q4 (Mar 30, 2026 – Jun 28, 2026) | | | Period-to-Date (Aug 23, 2025 – Jun 28, 2026) | | |
|---|---|---|---|---|---|---|
| | Actual $'s | Budgeted $'s | Variance $'s | Actual $'s | Budgeted $'s | Variance $'s |
| Operating Collections | 3,493,478 | 3,790,951 | (297,473) | 14,178,356 | 16,058,149 | (1,879,793) |
| Farm Credit Mid-America, PCA | 700,000 | 0 | 700,000 | 4,500,000 | 3,800,000 | 700,000 |
| **Total Collections** | **4,193,478** | **3,790,951** | **402,527** | **18,678,356** | **19,858,149** | **(1,179,793)** |
| Operating Disbursements | 3,228,540 | 4,242,988 | (1,014,448) | 13,855,860 | 18,682,738 | (4,826,878) |
| Receivership Professional Fees | 1,289,379 | 1,346,107 | (56,728) | 4,313,201 | 5,492,107 | (1,178,906) |
| **Total Disbursements** | **4,517,919** | **5,589,095** | **(1,071,176)** | **18,169,061** | **24,174,845** | **(6,005,784)** |
| **Net Cash Flow** | **(324,441)** | **(1,798,144)** | **1,473,703** | **509,295** | **(4,316,696)** | **4,825,991** |
| **Net Operating Cash Flow (Operating Collections – Operating Disbursements)** | **264,938** | **(452,037)** | **716,975** | **322,496** | **(2,624,589)** | **2,947,085** |

22.  **Professional Fees Paid**

**March 30, 2026 – June 28, 2026**

| Firm Name | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|

| | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Thompson Burton PLLC | 620,786 | 663,708 | (42,922) |
| Newpoint Advisors Corporation | 407,573 | 449,450 | (41,877) |
| Thoroughbred Spirits Group, LLC | 128,242 | 151,350 | (23,108) |
| Other | 132,778 | 81,599 | 51,179 |
| TOTAL | 1,289,379 | 1,346,107 | (56,728) |

Most professional fees for the quarter were below the budget as the Receiver and his professionals focus on cash conservation. The "Other" professional fees category primarily relates to expenses incurred for the ongoing investigation which is addressed in other sections of this report and were not originally budgeted.

**August 23, 2025 – June 28, 2026**

| Firm Name | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Thompson Burton PLLC | 2,056,922 | 2,323,708 | (266,786) |
| Newpoint Advisors Corporation | 1,484,718 | 1,809,450 | (324,732) |
| Thoroughbred Spirits Group, LLC | 489,282 | 1,219,350 | (730,068) |
| Other | 282,279 | 139,599 | 142,680 |
| TOTAL | 4,313,201 | 5,492,107 | (1,178,906) |

23. **Collections Received**

**March 30, 2026 – June 28, 2026**

| Category | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Operating Collections | 3,493,478 | 3,790,951 | (297,473) |
| Farm Credit Mid-America, PCA | 700,000 | 0 | 700,000 |
| TOTAL | 4,193,478 | 3,790,951 | 402,527 |

The Receivership Estate collected $700,000 from Farm Credit Mid-America, PCA (FCMA) during the period March 30, 2026 – June 28, 2026. While this collection was not

originally projected in the approved budget(s) at the beginning of the period, it was approved by

FCMA and documented as part of the Amended Receivership Line of Credit Loan Agreement.

**August 23, 2025 – June 28, 2026**

| Category | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Operating Collections | 14,178,356 | 16,058,149 | (1,879,793) |
| Farm Credit Mid-America, PCA | 4,500,000 | 3,800,000 | 700,000 |
| TOTAL | 18,678,356 | 19,858,149 | (1,179,793) |

24. **Expenditures**

**March 30, 2026 – June 28, 2026**

| Category | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Operating Disbursements | 3,228,540 | 4,242,988 | (1,014,448) |
| Professional Service Expenses | 1,289,379 | 1,346,107 | (56,728) |
| TOTAL | 4,517,919 | 5,589,095 | (1,071,176) |

**August 23, 2025 – June 28, 2026**

| Category | Actual $'s | Budgeted $'s | Variance $'s |
|---|---|---|---|
| Operating Disbursements | 13,855,860 | 18,682,738 | (4,826,878) |
| Professional Service Expenses | 4,313,201 | 5,492,107 | (1,178,906) |
| TOTAL | 18,169,061 | 24,174,845 | (6,005,784) |

25. **Banking & Disbursement Controls**. Immediately following his appointment, the

Receiver took steps to secure all existing bank accounts associated with the Company. This

included freezing accounts where appropriate and establishing new Receiver-controlled accounts

to ensure that all future transactions are properly monitored and documented. By shifting all

financial activity into Receiver-controlled accounts, the risk of unauthorized transfers or

10

unapproved expenditures has been significantly reduced. These activities and policies have continued to be in place and enforced throughout the entire receivership period.

Bank accounts with immaterial (less than 5,000 Euro) cash balances remain in a French bank, over which the Receiver will not have exclusive control until the French courts formally recognize this Court's Receivership Order. Likewise, the Receiver does not have control over bank accounts in the names of certain entities that are detailed in the Receiver's Motion for Clarification filed with this Court on September 12, 2025, including the accounts of Grant Sidney, Inc. While the Court ruled on May 26, 2026, that Grant Sidney, Inc., shall now be included in the Receivership Estate, the Receiver is still working on gaining full control of these bank accounts.

The Receiver has instituted a policy that all significant disbursements must receive explicit approval from the Receiver before release. This control mechanism ensures that cash outflows align with the cash flow budget and that only necessary and authorized expenses are incurred. To reinforce this control, weekly reconciliations are performed for all bank accounts. These reconciliations serve to verify accuracy, detect any discrepancies, and confirm that no unauthorized transactions have taken place.

26. **Cash Flow Budgeting & Variance Review.** A rolling 13-week cash flow budget has been developed and is updated weekly to reflect the Company's most current operating realities. This budget is reconciled against actual collections and disbursements every week. Any variances greater than 10% between budgeted and actual results are promptly identified, documented, and explained.

As part of the secured lender forbearance agreement, the Receiver is required to submit comprehensive bi-weekly reporting packages to Farm Credit, the Company's secured lender. These packages contain detailed variance analyses, operational expense tracking, and updated

11

sales forecasts. By providing this level of detail, the secured lender can closely monitor performance against established targets and evaluate ongoing compliance with the terms of the forbearance agreement.

This enhanced reporting process strengthens transparency and accountability, ensuring that stakeholders have timely and accurate insight into the Company's financial position, operational performance, and near-term prospects.

27. **Payroll & Taxes.** The payroll process remains under the administration of the Company's professional employer organization, Genesis Global, with weekly supervision and review of payroll data by the receivership team. At the time of the appointment, the Receiver identified that the PEO account was underfunded, jeopardizing employee pay continuity. This issue has since been corrected, ensuring that payroll obligations are consistently met.

The Receiver has completed a review of payroll taxes, excise taxes, business taxes, and property taxes. Several potential liabilities have been identified, and these obligations have been incorporated into the cash flow budget for planning purposes. Of particular concern is the discovery that the Company has not filed federal income tax returns since 2018. The Receiver is currently working with appropriate tax authorities and external advisors to address this issue.

In addition, the Receiver conducted a review of state-level business, excise, and sales tax compliance. Findings indicated that Tennessee and Delaware have material exposure due to incomplete reporting and unpaid obligations. These issues were corrected for both the states of Delaware and Tennessee during the most recent quarterly period with the Company now in good standing. Business, excise, and sales taxes are now current for all receivership entities with the note that the tax position for Grant Sidney, Inc. is still being reviewed following its inclusion in the Receivership Estate on May 26, 2026.

28.     **Vendor & Operational Continuity.**  The Receiver has established direct lines of communication with key vendors, logistics providers, and employees to maintain uninterrupted operations. This outreach has helped secure the cooperation of critical partners and mitigate risks to the supply chain.

All vendor notices are now being directed to the Receiver. This process has revealed several previously unidentified liabilities that were not fully disclosed in the Company's records. The Receiver has also secured and reviewed critical business documents, including supply chain agreements, bottling contracts, and marketing obligations. These reviews aim to identify operational risks and financial commitments that could have a material impact on cash flow.

An initial review of inventory storage agreements and bailment warehouse contracts was completed with follow-up currently underway. This is necessary to confirm lien positions, assess obligations, and evaluate any potential risks associated with warehouse-held inventory. All critical materials have been moved into a warehouse where the Receiver has a third-party contract with appropriate access rights. Concerns over the Receiver's ability to access these materials have been eliminated.

29.     **Financial and Accounting Observations.**  At the beginning of the Receivership, the Company's accounting records were materially unreliable and could not be relied upon for accurate financial reporting. Key deficiencies identified include:

- Non-reconciled balances create uncertainty about the accuracy of financial statements.

- Unusual accounting entries lack proper documentation.

- Improper revenue recognition practices that distort the Company's financial performance.

The absence of solid financial controls and the unreliability of certain financial records have been a challenge in determining historical sales and expenses that would aid with forecasting future sales and expenses. That challenge has been compounded by the fact that a substantial number of financial records before 2024 were erased from the Company's computer system. According to multiple employees at the Company, those records were erased by a former employee immediately after termination. The Receiver is working to recover some or all of those financial records.

The Receiver has also identified related-party transactions involving entities owned by the Weavers. These transactions were reviewed via the use of external records and supporting documentation to determine their accuracy, legitimacy, and whether they represent potential improper transfers. Irregularities were found and continued review and investigation are in process. Many of the companies that are subject to this receivership action have commingled assets and liabilities with other non-Receiver entities. This commingling has made determination of lien priority, and separation of liabilities among corporations, very difficult.

The Receiver has engaged a third-party CPA bookkeeping firm to assist in the ongoing completion of accounting records and preparation of financial statements for the Receivership period. This activity has resulted in the reconciliation of all cash activity to the completed financial statements for the full year 2025 and April 2026 period. Monthly financial statements for the consolidated Receivership entities have been completed and distributed to key stakeholders for the full year 2025 period and through April 2026. The Receivership team is currently working on completing the May 2026 financial statements.

In addition, the receivership team is working on gathering source data to recreate certain prior period financial reports. The Receiver believes it is critical for the Company to have financial

statements that have been created under the Receiver's independent direction, for which he can verify the accuracy.

Overall, cash resources remain limited, necessitating tight cash management and prioritization of critical expenses.

30. **Next Steps – Stakeholder Communications.** The Receiver will continue to provide bi-weekly reporting to Farm Credit, including detailed variance reports, expense reviews, and sales forecasts. Regular updates will also be provided to the Court and other key stakeholders. Direct engagement with vendors, customers, and employees will continue to maintain operational stability and foster transparency.

31. **Asset Recovery & Preservation of Value.** The Receiver will continue to secure and monitor the Company's cash, accounts receivable, inventory, leased equipment, and other assets. To ensure accurate reporting and valuation, updated inventory counts and appraisals will be commissioned, as necessary. Bailment warehouse records have been reviewed to confirm lien positions and ensure obligations are properly disclosed and managed.

32. **Cash Management.** The Receiver will continue to have rigorous oversight of all disbursements, requiring prior approval for significant expenses. Bank accounts will be reconciled on a daily and weekly basis to ensure the integrity of records and detect irregularities promptly. Forward-looking projections will continue to be refined and stress-tested to account for potential sales fluctuations, ensuring that the Company remains prepared for varying operational outcomes.

The receivership team spent considerable time assessing the current operations of the Company. As a result of those assessments, the Receiver made significant cuts to the operational expenditure of the Company, including reducing its workforce by forty employees, or 44%. Some of the more recent headcount reductions include reductions in sales staff and management

personnel.

The Receiver continues to evaluate the workforce and expenditures of the Company, in an effort to increase its operational efficiencies and become more profitable. This has led the Receiver to make additional spending cuts to both administrative and sales budgets to improve overall business efficiency and maintain cash liquidity. These activities include an increased focus on working capital management in the areas of accounts receivable and inventory. The receivership team has focused recent efforts on improved collections which has reduced gross AR from $3,680,121 at year end 2025 to $2,615,169 at the end of June 2026. This represents an improved collection of $1,064,952 (29%).

33. **Investigation & Forensic Review.** The Receiver will continue his review of historical financial records and intercompany transfers to uncover any irregularities or potential recovery opportunities. Special focus will be placed on officer and insider compensation, travel and marketing expenditures, and the identification of potential preferential or fraudulent transfers.

As necessary, tax advisors will be engaged to quantify exposures associated with the unfiled federal and state income tax returns dating back to 2018. The Receiver will also evaluate potential claims or causes of action that could be pursued for the benefit of creditors, with a focus on maximizing recovery and ensuring equitable treatment of all stakeholders.

34. **Conclusion.** The Receiver has implemented robust controls to stabilize operations, enhance transparency, and identify key risks. Substantial challenges remain, particularly in areas such as tax compliance, accounts payable, and related-party transactions. The Receiver will continue to prioritize transparency, creditor protection, and preservation of value while working closely with all stakeholders to achieve the best possible outcome for the estate.

*CHALLENGES TO RECEIVERSHIP*

35. Cash flow continues to be a major challenge to this receivership. As demonstrated by the data included in the Financial Report above, the Company continues operating at a loss. At this juncture, the Company is only able to maintain operations due to (a) cash infusions by Farm Credit, (b) significant reductions to operational expenses, and (c) professional fees coming in substantially below budget.

36. Due to a variety of factors (for example, credit holds on product shipment, legal fees incurred by the Company, and the impact of this litigation on sales), revenue collections were down significantly when the Receiver assumed control of the Company. The distress of the spirits market as a whole, the reduction of worldwide demand for alcohol, the changing distributor network, and the impact of tariffs on international sales continue to depress sales. Moreover, litigation such as this always has a negative impact on sales, as a company's employees, vendors, and business partners grow concerned about the long-term viability of a company in receivership. The litigation efforts of Fawn and Keith Weaver have further damaged the value of the brand. The Receiver bases this conclusion upon his conversations with creditors, vendors, employees, shareholders, Receivership consultants, and potential investors.

37. Another challenge to this receivership is the ongoing threat of significant litigation. As mentioned in prior pleadings, the Receiver has fielded dozens of calls and emails from creditors and shareholders threatening the Company and/or its officers and directors with litigation. The continued stay of litigation, as provided for in the Receivership Order, is critical to maintaining normal operations of the Company. Even with the imposition of the stay, the Receiver believes that litigation initiated by (or potentially against) Fawn Weaver and Keith Weaver poses a threat to the Company, both in terms of value of the brand and in terms of focus of employees.

38. The ongoing investigations by the United States Attorney for the Southern District

17

of New York and the Securities and Exchange Commission also pose a potential threat to the Company. In addition to the immediate distraction to the receivership team caused by these investigations, the outcomes of these investigations could cause some brand damage in the future (depending upon the nature of the results of the investigations).

<em>CONCLUSIONS, RECOMMENDATIONS AND REQUESTS</em>

39. The Company remains insolvent.

40. The Receiver continues to believe that the Company's business and brand have a future. In order to maximize that value, the Receiver believes that all non-essential, non-income producing assets must be liquidated as soon as possible, and a sale of the Company as a going concern must be completed as soon as possible. A buyer of these assets can rehabilitate this brand with an infusion of new capital and more disciplined financial and operational leadership. The Receiver remains focused on executing a sale of substantially all assets to a buyer who is capable of effectuating this turnaround.

Dated this 10th day of July, 2026.

Respectfully submitted,

/s/ Justin T. Campbell
Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
(615) 465-6015 (phone)
justin@thompsonburton.com

Counsel for the Receiver

18

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's ECF system.

This 10th day of July, 2026.

/s/ Justin T. Campbell
Justin T. Campbell