# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEEE

| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNCLE NEAREST, INC., NEAREST** | ) | **Case No. 4:25-cv-38** |
| **GREEN DISTILLERY, INC., UNCLE** | ) | |
| **NEAREST REAL ESTATE HOLDINGS,** | ) | **Judge Atchley** |
| **LLC, FAWN WEAVER and KEITH** | ) | |
| **WEAVER,** | ) | **Magistrate Judge Steger** |
| | ) | |
| **Defendants.** | ) | |

---

### RESPONSE OF FARM CREDIT MID-AMERICA, PCA TO THE DEFENDANTS' MOTION TO STAY ORDER GRANTING RECEIVER'S EXPEDITED MOTION TO SELL REAL AND PERSONAL PROPERTY IN MARTHA'S VINEYARD PENDING RECONSIDERATION AND/OR APPEAL
[Relates to Dkt. No. 215]

---

Farm Credit Mid-America, PCA ("FCMA" or the "Lender") files this response in opposition to the *Defendants' Motion to Stay Order Granting Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard Pending Reconsideration and/or Appeal* filed on July 1, 2026 (the "Stay Motion")[1] by Fawn Weaver ("Ms. Weaver") and Keith Weaver (collectively with Ms. Weaver, the "Weavers").[2]

## INTRODUCTION

This Stay Motion is the Weavers' latest attempt to halt the Order Granting Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard (the "Martha's

---

[1] Dkt. No. 215.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion").

224431227.5

Vineyard Property Sale Order")[3] on the grounds that the sale of real and personal property located at 10 Codman Spring Road, Edgartown, Massachusetts (the "Martha's Vineyard Property") violates the Weavers' due process rights and rights of third parties. However, the Stay Motion does not satisfy the governing stay standard. Rather, the Stay Motion largely repackages objections to the sale that this Court has already overruled through a careful, months-long statutory sale process. In fact, the Weavers' Stay Motion is the *third* emergency motion seeking to stay the sale process. On May 26, 2026, the Weavers filed the *Emergency Motion to Preserve the Status Quo Pending Appeal*.[4] On June 2, 2026, the Weavers filed the *Emergency Motion to Stay Portions of the District Court's May 12, 2026 Order (Dkt. Ent. 197) and May 26, 2026 Order (Dkt. 198) Pending Appeal*.[5] Notably, each of the Weavers' other emergency motions to stay have been denied.[6] For the reasons below, this Court should deny the Stay Motion as well.

## ARGUMENT

### A. The Weavers Fail to Satisfy the Sixth Circuit Standard for a Stay.

1.      Under Federal Rule of Civil Procedure 62(c), an interlocutory order or final judgment in an action for a receivership is not stayed, even if an appeal is filed. The Weavers have filed no such appeal of the Martha's Vineyard Property Sale Order and merely state that they "intend to appeal."[7] Federal Rule of Civil Procedure 62(d) gives a court the discretion to suspend, modify, restore, or grant an injunction pending an appeal from an interlocutory order or a final judgment relating to an injunction.

---

[3] Dkt. No. 212.
[4] *Uncle Nearest, Inc v. Young, et al.*, Case No. 3:26-cv-00135 (E.D. Tenn. 2026), Dkt. No. 28.
[5] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 5.
[6] *Uncle Nearest, Inc v. Young, et al.*, Case No. 3:26-cv-00135 (E.D. Tenn. 2026), Dkt. No. 36; *Farm Credit Mid-America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 22-2. Despite these denials, the motions have negatively impacted the receivership estate. Dkt. No. 223 at 2 ("The original buyers [of the Martha's Vinyard Property] canceled their contract on July 2, 2026, as a result of the delay in the process and the continued litigation by Keith and Fawn Weaver concerning a sale of the property, including after approval of the sale.").
[7] Dkt. No. 215 at 2.

224431227.5

2. The traditional factors for a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[8] The Supreme Court has recognized the first two factors as "the most critical."[9] These factors are not strict requirements to be satisfied individually, but interrelated considerations to be balanced as a whole.[10] For a court to adequately consider the factors, "the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist."[11] Here, the Weavers have failed to meet their burden in requesting a stay of the Martha's Vineyard Property Sale Order.

a. <u>The Weavers Have Not Made a Strong Showing that They Are Likely to Succeed on the Merits.</u>

3. The Weavers have failed to make a strong showing that they are likely to succeed on the merits. The Sixth Circuit Court of Appeals uses a "stricter standard" in analyzing this factor.[12] Specifically, "a strong or substantial likelihood or probability of success on the merits" must exist.[13] The Weavers rely on three propositions to assert they are likely to succeed on the merits: (i) that the Receiver is exceeding the scope of the receivership by selling assets before final adjudication and therefore violating the Weavers' due process rights, (ii) that the sale further violates due process because shareholders and unsecured creditors did not receive adequate notice, and (iii) that Phillip G. Young, Jr. (the "<u>Receiver</u>") cannot sell the personal property in the

---

[8] *Nken v. Holder*, 556 U.S. 418, 425-36 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).
[9] *Nken*, 556 U.S. at 434.
[10] *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).
[11] *Id*. at 154.
[12] *In re Thomas*, 565 B.R. 856, 865 (Bankr. W.D. Tenn. 2017).
[13] *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 264 (6th Cir. 1977).

residence because the personal property has not been separately inventoried.[14]  Each of these

propositions fails to establish any likelihood, much less a *strong* likelihood, of success.

4.　　　First, the sale is well within the Receiver's authority and consistent with the purpose

of a receivership.  As the Sixth Circuit has noted, a receiver's role is to "safeguard the disputed

assets, administer the property as suitable, and to assist the district court in achieving a final,

equitable distribution of the assets."[15]  This Court has already recognized that the Receiver

possesses broad power to sell receivership property, subject to compliance with statutory

procedures.[16]  The Receiver's request fits comfortably within that authority: the Martha's Vineyard

Property produces no income, it was purchased for marketing and advertising purposes only, and

it has generated monthly expenses for the receivership estate while producing no revenue.[17]

Selling a non-income producing, expense-generating asset with Court approval is an estate-

administration function, not an unauthorized liquidation.

5.　　　Second, this Court has already meticulously ensured compliance with the

procedures prescribed for private sales of receivership property.  This Court held the Receiver's

*Expedited Motion to Sell Real and Personal Property in Martha's Vineyard* (the "MV House Sale

Motion")[18] in abeyance for nearly four months until it was satisfied that the requirements of 28

U.S.C. § 2001(b) were met.  Those requirements include (a) appointing three disinterested

appraisers, (b) conducting a properly noticed hearing, (c) ensuring the price is not less than two-

thirds of the appraised value, and (d) allowing for a qualifying overbid.[19]  After considering the

Receiver's proposed list of appraisers, this Court ordered the Receiver to provide more information

---

[14] Dkt. No. 215 at 4-7.
[15] *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).
[16] *See, e.g.*, Dkt. No. 177 at 1 (describing Receiver's "broad power" to sell receivership property and describing procedures a federal court must follow when authorizing sale of receivership property).
[17] Dkt. No. 147 ¶ 6.
[18] *Id.*
[19] Dkt. No. 177 at 1-5.

224431227.5

as to three of the Receiver's proposed appraisers to make an informed decision.[20]  Each appraiser

valued the Martha's Vineyard Property at $2,600,000, and the proposed $2,595,000 sale price is

99.8% of that appraised value.[21]  This Court further required publication of the sale notice in the

*Vineyard Gazette*, online publication for at least ten consecutive days, a June 5, 2026, overbid

deadline, a Receiver report regarding publication and overbids, and a June 11, 2026, sale hearing.[22]

These procedures collectively defeat the Weavers' assertion that the sale fails "at a minimum at the

notice level."[23]

6. Third, nothing in 28 U.S.C. § 2001(b) requires the individualized notice regime the

Weavers now demand for shareholders and unsecured creditors.  The statute requires "notice to all

interested parties . . . by publication or otherwise as the court directs," and the Court directed

precisely how notice would be provided.[24]  The Weavers cite no authority holding that shareholders

or unsecured creditors of Uncle Nearest, Inc. ("Uncle Nearest, Inc."), Nearest Green Distillery,

Inc. ("Nearest Green"), and Uncle Nearest Real Estate Holdings, LLC ("RE Holdings" and,

collectively with Uncle Nearest, Inc. and Nearest Green, "Uncle Nearest") are "interested parties"

entitled to separate, individualized notice before the Court could authorize a sale of property owned

by the receivership estate.  The Weavers erroneously cite *SEC v. Wencke*[25] for the purportedly

quoted proposition that "[f]or the claims of nonparties to property claimed by receivers, summary

proceedings satisfy due process so long as there is adequate notice and opportunity to be heard."

This quote does not exist in the caselaw cited.[26]  Even treating it as a paraphrase, the Weavers'

---

[20] Dkt. No. 188.
[21] Dkt. No. 197 at 2.
[22] *Id.* at 2-3.
[23] Dkt. No. 215 at 7.
[24] 28 U.S.C. § 2001(b); Dkt. No. 197 at 1-3.
[25] 783 F.2d 829, 836-38 (9th Cir. 1986), *cert denied*, 479 U.S. 818 (1986).
[26] The Weavers may be citing *S.E.C. v. Am. Cap. Invs., Inc.*, 98 F.3d 1133 (9th Cir. 1996), *abrogated by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), which cites *Wencke* for the proposition that "[f]or the claims of

reliance on *Wencke* is misplaced. *Wencke* did not hold that shareholders and unsecured creditors must receive separate, individualized notice before a receivership court may approve a sale of estate property. Rather, *Wencke* addressed whether a receivership court could use summary proceedings to resolve third-party claims to property claimed by the receiver.[27] The Ninth Circuit approved that procedure because the claimants received adequate notice, in having been served with the receiver's application well over two years before the hearing on the matter, and an opportunity to be heard through the opportunity to introduce evidence and call witnesses at the hearing.[28] However, no summary proceeding is at issue here. The unsecured creditors and shareholders in this matter received adequate notice due to the Receiver's publication through multiple mediums of notice of the sale. Even assuming *in arguendo* the unsecured creditors and shareholders were entitled to separate, individualized notice and an opportunity to be heard, the Weavers lack standing to assert those claims on behalf of unsecured creditors and shareholders.[29] Finally, the Weavers are not third-party claimants asking the Court to adjudicate ownership of specific property in a summary proceeding. The Weavers are parties to this action. They received notice of the MV House Sale Motion, participated in the sale process, had an opportunity to object to the Receiver's proposed appraisers, and received the benefit of the Court-directed publication, overbid, and hearing procedures required by 28 U.S.C. § 2001(b). Lastly, the Weavers never raised any due process arguments on behalf of unsecured creditors and shareholders or themselves previously, and have waived the right to do so at this juncture.[30]

---

nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard." *Am. Cap. Invs., Inc.*, 98 F.3d at 1146-47.

[27] *Wencke*, 783 F.2d at 836-38.

[28] *Id.* at 837-38.

[29] *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (A party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

[30] *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (finding "issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

224431227.5

7.     Fourth, the Weavers' personal property objection does not establish likely success. The MV House Sale Motion explained that the Martha's Vineyard Property was being sold as real estate and related furnishings, as is customary on Martha's Vineyard, and that the Receiver would sell the property "as is and where is" while conveying only the right, title, and interest the Receiver had the right to convey.[31]  The Court expressly considered the personal property component and declined to modify 28 U.S.C. § 2001(b)'s requirements because the proposed sale bundled the real property with related home furnishings.[32]  Additionally, the Court noted the Receiver's uncontested assertion that "it is customary on Martha's Vineyard to include furnishings in the sale of real property" and further took into account that none of the personal property was shown or alleged to be "exceptionally valuable."[33]  Therefore, this Court waived the appraisal requirements for the personal property.[34]  Furthermore, the Weavers never raised the argument regarding personal property in their *Response in Opposition to the Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard*,[35] and cannot raise it now.

b.  <u>The Weavers Will Not Be Irreparably Injured Absent a Stay.</u>

8.     In evaluating the irreparable harm factor, courts consider the following factors:

(1) the substantiality of the injury alleged;

(2) the likelihood of its occurrence; and

(3) the adequacy of the proof provided.[36]

9.     Moreover, "the harm alleged must be both certain and immediate, rather than

---

[31] Dkt. No. 147 at ¶¶ 7, 17-18.  The Receiver notes that he took steps to return personal items belonging to the Weavers not part of the real estate sale, including "clothing, photographs, and personal memorabilia," but the Weavers did not respond.  Dkt. No. 216 at 7.
[32] Dkt. No. 177 at 4 n.2.
[33] Dkt. No. 212 at 3.
[34] *Id.*
[35] Dkt. No. 163.
[36] *Michigan Coal.*, 945 F.2d at 154.

7

speculative or theoretical."[37]  A movant seeking to establish the likelihood of irreparable injury must offer evidence that the harm has already occurred or is likely to occur again.[38]

10.    The Weavers' claimed harm is speculative.  They argue that the sale will be "difficult or impossible to unwind" and will alter "ownership rights" before adjudication of the underlying claims.[39]  However, the Weavers have no control or interest in the Martha's Vineyard Property because it is part of the receivership estate.  Furthermore, the Court is not authorizing a distribution of sale proceeds to FCMA while the underlying claims remain pending; the Weavers acknowledge that the sale order provides that proceeds may not be released to FCMA during that period.[40]  That is not irreparable harm.

11.    Nor does the sale order "trigger[] a transfer of the property to a receiver."[41]  The Receiver was appointed almost a year ago, and the Martha's Vineyard Property has been part of the receivership estate from the very beginning of this appointment.[42]  The Martha's Vineyard Property Sale Order authorizes a court-supervised sale after statutory procedures were followed. The Weavers' disagreement with that authorized sale does not rise to the level of immediate and irreparable injury sufficient to justify a stay.

c.    <u>Issuance of a Stay Would Substantially Injure Other Parties Interested in the Proceeding.</u>

12.    A stay would substantially injure the receivership estate and other parties in interest. The Martha's Vineyard Property Sale affects Planet Home Lending, LLC, as it will receive proceeds from the sale and will therefore release its lien of receivership property.  Furthermore, delaying the sale of the Martha's Vineyard Property would prolong the receivership estate's

---

[37] *Id*.
[38] *Id*.
[39] Dkt. No. 215 at 1-2, 7-8.
[40] *Id.* at 2-3.
[41] *Id.* at 8.
[42] Dkt. No. 39 at ¶ 2 (defining "Assets" of receivership to include "rights, title, and interest" to UN House MV, LLC).

224431227.5

carrying costs for the maintenance of the property. Specifically, the Receiver has stated that "[t]hroughout the pendency of this receivership, the Martha's Vineyard Property has created monthly expenses for the estate while generating no revenue."[43] He has further stated that the Martha's Vineyard Property is "not income producing, not geographically related to Uncle Nearest's operations, and not historically tied to Uncle Nearest's origins[.]"[44] This Court agreed with the Receiver's outlook. When considering the Martha's Vineyard Property's "geographic separateness from Uncle Nearest's other operations, its lack of ties to Uncle Nearest's origins, and the fact that potential purchasers of Uncle Nearest have not expressed any interest in acquiring the Martha's Vineyard Property," this Court had a "firm conviction that it is in the best interests of the receivership estate to sell the Martha's Vineyard Property."[45]

13. The practical effect of a stay would be to freeze the Receiver's ability to consummate an arm's-length, court-authorized sale. Moreover, this Court has already found the sale appropriate on multiple occasions after adhering to an extensive statutory process. The proposed sale price is nearly identical to the appraised value, and the Receiver received not only the proposed full-price offer but also two backup full-price offers from arm's-length third parties.[46] A stay risks jeopardizing the value to the receivership estate while forcing it to continue carrying a non-income-producing property. Therefore, this factor weighs strongly against a stay.

   d.  <u>The Public Interest Weighs Against a Stay.</u>

14. The Weavers identify no valid public interest served by staying the Martha's Vineyard Property Sale Order and requiring the receivership estate to continue carrying a non-income producing property after this Court has contemplated the process required by 11 U.S.C.

---

[43] Dkt. No. 147 ¶ 7.
[44] Dkt. No. 175 at 3.
[45] Dkt. No. 212 at 8.
[46] Dkt. No. 147 ¶¶ 1, 13, 21.

§ 2001(b). As discussed above, and contrary to the Weavers' assertion that the receivership may "become an instrument for premature liquidation before liability is determined," the sale of the Martha's Vineyard Property will not cause irreversible consequences where the sale proceeds will not be released to FCMA while the underlying claims remain pending.[47] The public interest weighs against a stay because the Court has already required, and confirmed, compliance with the statutory framework governing private sales of receivership property.[48]

**B. <u>In the Event a Stay is Granted, this Court Should Require a Bond.</u>**

15.     If this Court grants any stay, FCMA requests that this Court require the Weavers to post a bond in an amount sufficient to protect the receivership estate and interested parties from the costs and risks created by any additional delay, pursuant to Federal Rule of Civil Procedure 62(d).[49] Specifically, Federal Rule of Civil Procedure 62(d) provides in relevant part that "[w]hile an appeal is pending from an interlocutory order . . . that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

16.     A stay without bond would shift the economic burden of the Weavers' requested relief to the receivership estate, FCMA, and other parties in interest. The Weavers cite *Arban v. W. Publ'g Corp.*[50] for the proposition that a bond is not required in every case and district courts may grant stays without a bond "where the movant's ability to pay is clear and the bond would be a waste of money."[51] However, the facts of *Arban* are readily distinguishable from the present case. In *Arban*, at a hearing for a motion for stay without bond, the movant made a showing that

---

[47] Dkt. No. 215 at 9.
[48] Dkt. No. 212 at 8 (stating that "the Court finds the Receiver's proposed sale of the Martha's Vineyard Property satisfies the requirements of 28 U.S.C. § 2001(b) and 2004").
[49] *See also Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 177 (S.D. Ohio 2015) (holding that requiring posting of bond upon the imposition of a stay pending appeal was appropriate).
[50] 345 F.3d 390 (6th Cir. 2003).
[51] Dkt. No. 215 at 4.

10

it had adequate resources to satisfy the bond.[52]  The Weavers have made no such showing here. Therefore, as no showing has been made by the Weavers that they have adequate resources to satisfy a bond, in the event a stay is granted, this Court should require a bond.  The bond should be set at a minimum of $2,595,000, in addition to the ongoing monthly carrying costs and maintenance costs associated with the Martha's Vineyard Property.

## CONCLUSION

For the foregoing reasons, FCMA requests that the Stay Motion be denied and, given that two attempts to stay the sale have already been denied, that this Court enter judgment against the Weavers awarding FCMA all reasonable costs, expenses, and attorneys' fees that FCMA has incurred in preparation of this response, and for such other and further relief that this Court may deem proper.

---

[52] *Arban*, 345 F.3d at 409.

224431227.5

Respectfully submitted,

*/s/ Erika R. Barnes*
Erika R. Barnes (TN Bar No. 028628)
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2252
Email:  ebarnes@stites.com

- and-

Demetra Liggins (admitted *pro hac vice*)
Dairanetta S. Spain (TN Bar No. 039981)
McGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX  77002
Telephone: (713) 353-6661
Email:  dliggins@mcguirewoods.com
         dspain@mcguirewoods.com

M. Alexandra Shipley (admitted *pro hac vice*)
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8253
Email:  ashipley@mcguirewoods.com

*Attorneys for Farm Credit Mid-America, PCA*

Dated: July 15, 2026

12

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 15, 2026, a true and correct copy of the foregoing was served

on all parties entitled to service via this Court's ECF/CMF system, including upon the following:

| | |
|---|---|
| Curtis D. Johnson, Jr.<br>Florence M. Johnson<br>Johnson and Johnson PC<br>1407 Union Ave., Suite 1002<br>Memphis, TN 38104<br>901-725-7520<br>Fax: 901-725-7570<br>cjohnson@johnsonandjohnsonattys.com<br>fjohnson@johnsonandjohnsonattys.com | Phillip G. Young, Jr.<br>Justin T. Campbell<br>Thompson Burton PLLC<br>1801 West End Avenue, Suite 1550<br>Nashville, TN 37203<br>phillip@thompsonburton.com<br>justin@thompsonburton.com |
| Michael E. Collins<br>S. Marc Buchman<br>Manier & Herod, P.C.<br>1201 Demonbreun Street, Suite 900<br>Nashville, TN 37203<br>mcollins@manierherod.com<br>mbuchman@manierherod.com | Lucas A. Davidson, Esq<br>Oren Bitan<br>Tennessee Distilling Group, LLC<br>1 Music Circle South, Suite 300<br>Nashville, TN 37203<br>ldavidson@buchalter.com<br>obitan@buchalter.com |
| Uncle Nearest, Inc.<br>600 N. Main St.<br>Shelbyville, TN 38106 | Uncle Nearest Real Estate Holdings,<br>LLC<br>3125 Highway 231 N.<br>Shelbyville, TN 37160 |

*/s/ Erika R. Barnes*
Erika R. Barnes