UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA,<br><br>Plaintiff,<br><br>v.<br><br>UNCLE NEAREST, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:25-cv-38<br>**Judge Atchley**<br>**Magistrate Judge Steger** |

# FAWN WEAVER'S RESPONSE IN OPPOSITION TO RECEIVER'S REQUEST FOR FURTHER EXTENSION REGARDING GRANT SIDNEY, INC. AND REQUEST TO TERMINATE THE RECEIVERSHIP AS TO GRANT SIDNEY, INC.

Defendant, Fawn Weaver, the Chief Executive Officer and sole shareholder of Grant Sidney, Inc. ("Grant Sidney" or "GSI"), the largest shareholder and a substantial creditor of Uncle Nearest, Inc., by and through her counsel of record respectfully submits this Response in Opposition to the Receiver's Status Report and surreptitious request for an additional time to complete its Court ordered duties. The request for extension contained in the Receiver's Second Report Regarding Grant Sidney, Inc., argues in part, "While at this time, the Receiver does not believe that a permanent receivership for Grant Sidney is necessary, the Receiver does respectfully request that this Court grant the Receiver an additional extension to obtain and review the relevant QuickBooks accounts." (Dkt. Ent. 248, PG ID 8417). Defendant, Fawn Weaver files her Response in Opposition to this request.

## INTRODUCTION

1. The question the Court directed the Receiver to answer has now been answered in typical fashion with a nonanswer and request for more time to continue the fishing expedition the Receiver has been engaged in since his appointment.

2. When the Court expanded the receivership to Grant Sidney on May 26, 2026, it *did not i*dentify a specific asset then held by Grant Sidney that belonged to a Receivership Entity. Rather, based upon the record then before it, the Court identified concerns that warranted investigation and directed the Receiver to promptly investigate whether Grant Sidney held assets properly belonging to the Receivership Entities. The Court further directed the Receiver to report within sixty (60) days whether Grant Sidney should remain in receivership or whether "other less drastic measures" could accomplish the necessary purpose. (See, Dkt. Ent. 198, PG. ID. 7814-7815).

3. After receiving the additional sixty (60) days he requested, the Receiver reports that he has obtained "the majority of the records sought," that "it is unlikely that significant or substantial assets exist that could provide a recovery or benefit to the Uncle Nearest Receivership estate," and that he "does not believe that a permanent receivership for Grant Sidney is necessary." (See, Dkt. Ent. 248, PG. ID. 8416-17 ).

4. The Receiver identifies only one remaining matter: a subpoena issued to Intuit for historical QuickBooks information that, "[u]pon information and belief," may be associated with an account bearing Grant Sidney's name. (*Id*. at PG. ID. 8417).

5. There is nothing in the law that would prevent the subpoena from being served and complied with, without continued receivership control of GSI. Defendant, Fawn Weaver does not oppose the Receiver obtaining the Intuit records. If this Court determines that control

of GSI is restored, neither Defendant, Fawn Weaver nor GSI will seek to defeat a reasonable third-party subpoena merely because GSI has been released from the receivership. If the resulting records reveal evidence that the Receiver believes warrants renewed relief, he may present that evidence to the Court.

6. Defendant argues that what this Court can no longer justify is the continued displacement of GSI's sole shareholder, independent counsel, creditor rights, litigation authority, and corporate governance while the Receiver waits to see what a third party may produce - particularly where the Receiver's own investigation has now led him to conclude both that significant or substantial assets in GSI capable of providing a recovery or benefit to the Receivership estate are unlikely to exist and that a permanent GSI receivership is unnecessary. The Court has already articulated the governing standard: expansion of an equity receivership is justified only where there is a clear necessity, less drastic legal or equitable remedies are inadequate, and the benefits of receivership outweigh the burdens imposed upon the affected party. (See, Dkt. 198 at PG. ID. 7813).

7. Based on the Receiver's lackluster Status Report, the standard as articulated is no longer satisfied.

**I. THE MAY 26 ORDER CONTEMPLATED A LIMITED INVESTIGATION AND PROMPT REEVALUATION OF GSI.**

8. The May 26, 2026 Order that expanded the receivership to GSI based upon concerns arising from the approximately $20 million MP-Tenn transaction, the 2021 LS Cream transaction, previously unidentified dormant bank accounts, and the possibility that assets belonging to Uncle Nearest might have been transferred to or remained with GSI. (See, Dkt. 198 at pgs. 52-54, PG ID 7805-7807).

9. The Court nevertheless recognized that a receivership is a "drastic remedy" and specifically required an individualized assessment of GSI. *Id*. at ¶51. It directed the Receiver to "promptly investigate whether and to what extent Grant Sidney, Inc. holds any assets that rightly belong to" the Receivership Entities. (*Id*. at PG. ID. 7814-7815).

10. The Court required a report within sixty days that would also state whether GSI should remain in receivership or whether "other less drastic measures" could be used to recover any improperly diverted assets. ( *Id*. at PG. ID. 7814).

11. The Court further reasoned that the burden of temporary receivership control would be "relatively light" because Grant Sidney was a passive holding and investment entity without ordinary operating activities, and because the Receiver would promptly evaluate whether continued control remained necessary. (*Id*. at ¶54, PG. ID. 7807).

12. The contemplated process was therefore not indefinite. The extraordinary remedy was imposed while the Receiver investigated whether the concerns identified by the Court translated into presently recoverable assets or some continuing need for receivership protection.

**II. THE RECEIVER'S INVESTIGATION DID NOT IDENTIFY SIGNIFICANT OR SUBSTANTIAL ASSETS IN GSI THAT COULD BENEFIT THE RECEIVERSHIP ESTATE.**

13. On July 20, 2026, in requesting an additional sixty (60) days to investigate, the Receiver reported that he had served record demands on eight parties, that four had not yet produced records or confirmed that responsive records did not exist, and that he therefore could not yet state whether Grant Sidney possessed assets belonging to the Receivership Entities. (Dkt. Ent. 231, PG ID 8359).

14. The Court granted that request and extended the Receiver's deadline through September 23, 2026. (See, Dkt. 232,PG ID 8361).

15. The September 23, 2026 Status Report of the Receiver, on review, is materially different. After the additional investigation, the Receiver states that he has obtained "the majority of the records sought" and concludes that "it is unlikely that significant or substantial assets exist that could provide a recovery or benefit to the Uncle Nearest Receivership estate." ( See Dkt. Ent. 248, PG ID 8416).

16. The Receiver further states that he "does not believe that a permanent receivership for Grant Sidney is necessary." *Id*. at 2.

17. The Receiver identifies no newly discovered Uncle Nearest asset presently held by GSI, no transfer presently requiring preservation, and no GSI asset he contends is presently at risk of dissipation. His only identified remaining matter is a subpoena to Intuit for historical QuickBooks records. *Id*. That is a reason to complete the subpoena, not a reason to continue corporate control over GSI.

**III. THE INTUIT SUBPOENA IS THE "LESS DRASTIC MEASURE" THE COURT CONTEMPLATED.**

18. The Receiver states that, "[u]pon information and belief," QuickBooks accounts for several Receivership Entities may reside in an account associated with Grant Sidney and that he has therefore subpoenaed Intuit. Dkt. 248 at 2. Nothing about obtaining records from a third-party custodian requires continued receivership control over GSI.

19. The existing record establishes that GSI is a passive holding and investment entity with no employees, payroll, recurring vendor accounts, or ordinary operating expenses. Dkt. 160 at 8–10. GSI previously explained that it did not maintain an operational QuickBooks system for payroll, accounts payable, or accounts receivable. *Id*. at 9–10.

20. The underlying problem of missing historical accounting records also is not new. Within the first few days after his appointment, the Receiver had been told that some of the Company's financial records had been erased by a former employee. His February 3, 2026 Second Quarterly Report confirms that he was already working to recover the missing data. (See, Dkt. Ent.132, PG ID at 3878).

21. Later in the same report, the Receiver stated that multiple Company employees reported that a former employee had erased a substantial number of historical financial records immediately following termination, and he again stated that he was working to recover some or all of those records. (See, Dkt. Ent. 132, PG ID 3888).

22. The record therefore establishes that the Receiver knew from the opening days of his appointment that some financial records had been erased by a former employee and that recovery of those records remained an outstanding investigative task. That issue existed approximately nine months before GSI was placed into receivership and more than a year before the present request for another extension.

23. The Receiver does not need ownership or governance control over GSI to obtain records from Intuit. Defendant, Fawn Weaver does not oppose completion of the Intuit subpoena. If Intuit later produces evidence that the Receiver believes establishes a factual basis for renewed receivership relief, he may present that evidence to the Court. Continued receivership control should follow demonstrated necessity; it should not remain in place while a third-party records request remains outstanding.

24. The Receiver has also not identified any deficiency in Defendant, Fawn Weaver's cooperation. All GSI bank statements from inception were produced to the Receiver by November 5, 2025, and the additional documents he requested were produced by December 1,

2025. Dkt. 102 at 2, 7. The Court-ordered clarification process expressly contemplated that, after reviewing those materials, the Receiver would provide any additional questions, evidence, or argument so that GSI and Defendant, Fawn Weaver could respond or clarify. *Id*. at 1–2. He did not do so. *Id*. at 2, 7. The Receiver's current report identifies no additional GSI documents to be obtained from Defendant, Fawn Weaver and no outstanding request for clarification or explanation of any GSI transaction. The only remaining records he identifies are records he is seeking directly from Intuit. (See, Dkt. 248 at PG ID 8417).

## IV. THE REMAINING ACCOUNTING INQUIRY CONCERNS UNCLE NEAREST'S HISTORICAL FINANCE SYSTEMS, NOT GSI'S OPERATIONS.

25. The record reflects that, after financial irregularities were identified, the Uncle Nearest Board retained Duane Morris LLP to supervise an independent investigation, and Duane Morris engaged Kroll to conduct a forensic review.(See,  Dkt. 151-1, PG ID 6089). On information and belief, contemporaneous Kroll materials from that investigation reflect that Uncle Nearest, not GSI, used QuickBooks as its accounting software. Former Chief Financial Officer Michael Senzaki had login credentials, and former Comptroller Nancy Gregory maintained and entered the QuickBooks data. Uncle Nearest subsequently transitioned to Oracle NetSuite.

26. The same Kroll interview memorandum records Senzaki's admission that, beginning in approximately 2022, he began "fudging" inventory and receivables information contained in monthly reports sent to Farm Credit and that he was the only person aware of that activity.

27. The same memorandum records additional admissions concerning the former CFO's control of corporate records and transactions. Senzaki admitted using Defendant, Fawn Weaver's signature on stock-transfer agreements without her knowledge; acknowledged

transactions involving equity that were not properly reflected on the Company's capitalization table; admitted that two Strand loans totaling approximately $8.3 million were unknown to the Weavers when executed; admitted fabricating board minutes purporting to reflect the Weavers' approval of those loans even though the meetings never occurred and the loans had not been approved; and admitted fraudulently creating and transmitting stock certificates to investors. These facts further identify the relevant historical recordkeeping problems arising within Uncle Nearest's former finance and corporate-recordkeeping function, not from any operating accounting function of GSI.

28. Materially similar core facts now appear in the Receiver's own public pleading. The Receiver alleges that Senzaki exercised "nearly exclusive control" over Uncle Nearest's financial reporting systems, loan compliance, and credit-facility interactions with Farm Credit; prepared and transmitted recurring inventory, collateral, and financial-condition reports; and falsified monthly reports submitted to Farm Credit beginning in 2022. ( See, Dkt. 217, PG ID ¶¶ 9–11). The Receiver further alleges that Senzaki submitted twenty-eight distribution requests totaling nearly $67 million as sole signee and that those requests were processed without requiring Defendant, Fawn Weaver's knowledge, consent, or confirmation. *Id.* ¶¶ 14, 19–20.

29. These facts are relevant here for a narrow reason. They identify the historical QuickBooks and lender-reporting issues as matters arising within Uncle Nearest's former finance function. They support targeted recovery of Uncle Nearest's historical accounting data from Intuit; they do not establish that GSI operated the accounting system or that continued control of GSI is necessary to obtain those records.

30. The Receiver's investigation to date reinforces that conclusion. After obtaining the majority of the records sought, he reports that it is unlikely that significant or substantial

assets exist that could provide a recovery or benefit to the Receivership estate and that he does not believe a permanent GSI receivership is necessary. (Dkt. 248, PG 8416-8417).

**V. THE PRIOR MP-TENN CONCERNS DO NOT ESTABLISH A PRESENT NEED FOR CONTINUED CONTROL OF GSI.**

31. Defendant, Fawn Weaver does not ask the Court in this Response to reconsider its May 26 findings concerning the approximately $20 million MP-Tenn transaction. The present issue is prospective: whether, after the investigation the Court specifically ordered, there remains a present need to continue receivership control over GSI.

32. The Court's May 26 2026 analysis placed weight on the April 15, 2025 Subordinated Credit Agreement and its identification of GSI as "Lender." (See, Dkt. 198, PG ID 7782-7784). The filed record also establishes, however, that Farm Credit required the Subordinated Credit Agreement; that its Schedule 1.1 specifically listed the GSI disbursements; and that the reconciliation between the actual GSI account activity and Schedule 1.1 showed an exact correlation. ( See, Dkt. 160, PG ID 6813). The same filing states that Farm Credit drafted the agreement, that Schedule 1.1 reflected $20,026,270 in funding, and that the underlying bank statements, wire confirmations, and transaction records had been provided to Farm Credit in April 2025. (*Id*. at PG ID 6814).

33. The filed record further shows that the GSI disbursements went to Uncle Nearest operating accounts, payroll vendors, packaging vendors, and other Uncle Nearest obligations. Dkt. 160 at 7. Defendant, Fawn Weaver's filed declaration states that no principal or accrued interest from that transaction was retained by GSI or by her personally. (See, Dkt. 160-1, PG ID 6858). The Court itself recognized that the approximately $20 million plus accumulated interest appeared to have been disbursed from GSI to Uncle Nearest and Uncle Nearest vendor accounts. (See, Dkt. 198, PG ID 7773).

34. Whatever inference the Court drew from that record in May, the Court then ordered an investigation to determine whether GSI actually held assets belonging to the Receivership Entities and whether continued receivership control was necessary. The Receiver has now conducted that investigation and reports that it is unlikely that significant or substantial assets exist that could provide a recovery or benefit to the Uncle Nearest Receivership estate and that he does not believe a permanent GSI receivership is necessary. ( See, Dkt. Ent. PG ID 8416-8417).

**VI. THE 2021 LS CREAM TRANSACTIONS DO NOT ESTABLISH A PRESENT NEED FOR CONTINUED CONTROL OF GSI.**

35. The May 26, 2026, Order also identified a 2021 LS Cream transaction as a basis for investigation, noting that funds moved from Uncle Nearest to Defendant, Fawn Weaver and then through GSI in connection with a $150,000 investment. (See, Dkt. 198, PG ID 7805-7806).

36. The Receiver's own earlier affidavit recognized that the record involved two distinct transactions: a loan made by Uncle Nearest to LS Cream and, separately, an equity investment by GSI. Dkt. 126 ¶ 11 & n.1. On information and belief, Uncle Nearest's accounting records reflect that the loan was in an amount different from GSI's $150,000 investment, occurred on different transaction dates, and was subsequently repaid to Uncle Nearest with interest. Separately, GSI made a $150,000 equity investment in LS Cream. The existing GSI filing reflects that the relevant GSI account was opened solely for that discrete equity investment, received funds owed personally to Defendant, Fawn Weaver, and transmitted the $150,000 investment.( See, Dkt. Ent. 160, PG ID 6815).

37. The significance of that transaction for present purposes is now limited. The Court ordered the Receiver to investigate whether GSI actually possessed assets properly belonging to Uncle Nearest or the other Receivership Entities. After the additional investigative

period and after obtaining the majority of the records sought, the Receiver reports that it is unlikely that significant or substantial assets exist that could provide a recovery or benefit to the Receivership estate and that he does not believe a permanent GSI receivership is necessary. (See, Dkt. Ent. PG ID 8416-8417).

## VII. CONTINUED CONTROL OF GSI NOW IMPOSES BURDENS NOT PRESENT IN THE COURT'S ORIGINAL "RELATIVELY LIGHT" ANALYSIS.

38. In May, the Court anticipated that the burden of the GSI receivership would be "relatively light" because GSI was a passive holding and investment entity without operating activities and because the Receiver would promptly evaluate whether continued control was necessary. (See, Dkt. Ent. 198 , PG ID 7807). Defendant argues that the practical burden is now different.

39. GSI is Uncle Nearest's largest shareholder. Dkt. 198 at 52. It is also a substantial creditor of Uncle Nearest in its own right. In his sworn February 2, 2026 affidavit, the Receiver identified, separate from the disputed 2025 MP-Tenn accounting, an approximately $3.7 million loan obligation to Grant Sidney carried on the books since 2023. (See, Dkt. Ent. 126, PG ID 3232). The Receiver's accompanying unsecured-debt schedule identifies the obligation as "3011, Grant Sidney Inc (GSI) 2023 Loan Payable" in the amount of $3,689,313.74. *Id*. at 65 (Ex. 5).

40. GSI therefore holds an independent creditor interest against Uncle Nearest that is separate from the disputed approximately $20 million transaction. Yet the same Receiver presently controls both Uncle Nearest and the separate corporation holding that multimillion-dollar creditor claim.

41. That circumstance matters particularly in any bankruptcy, restructuring, or insolvency proceeding, where GSI may possess independent rights as both creditor and equity holder. The issue is not hypothetical. Uncle Nearest previously commenced a Chapter 11

proceedings, and the Receiver moved to dismiss based upon his authority under the Receivership Order. See *In re Uncle Nearest, Inc.*, Case No. 3:26-bk-30470-SHB, Doc. 48 at 1–2.

42. GSI also possesses affirmative litigation rights. GSI is a plaintiff in the Bedford County action against former CFO Michael Senzaki and ZMS Strategies, Inc., an action the Receiver himself acknowledged in his Second Quarterly Report. (Dkt. 132, PG 3891). Should this Court allow the continued Receiver control this would prevent Defendant, Fawn Weaver, as GSI's sole shareholder, from independently selecting and directing counsel concerning GSI's own claims.

43. The burden is therefore no longer limited to whether a passive holding company's daily operations are disrupted. Continued receivership control affects GSI's ability to select independent counsel, prosecute its own causes of action, protect a substantial creditor claim, exercise its rights as Uncle Nearest's largest shareholder, and participate independently in any bankruptcy or insolvency proceeding affecting those interests. Those consequences materially alter the burden side of the analysis the Court conducted in May.

**VIII. TERMINATING THE GSI RECEIVERSHIP WILL NOT INTERFERE WITH THE RECEIVER'S REMAINING INVESTIGATION.**

44. There is no need to choose between restoring GSI to its sole shareholder and permitting the Receiver to finish the Intuit inquiry as the Defendant argues that both can occur.

45. Defendant, Fawn Weaver does not oppose the Receiver completing the presently outstanding Intuit subpoena. If the GSI receivership is terminated, neither Defendant, Fawn Weaver nor GSI will seek to quash or otherwise oppose a reasonable third-party subpoena merely on the ground that GSI is no longer in receivership. That representation does not waive attorney-client privilege, work-product protection, or any right to object to discovery exceeding lawful scope.

46. If Intuit produces information that the Receiver believes demonstrates that GSI possesses assets properly belonging to a Receivership Entity, he may present that evidence to the Court. The Court can then determine whether the new evidence establishes the "clear necessity" required for renewed receivership relief.

47. That sequence follows the standard the Court articulated in May. Receivership expansion is justified only where there is "a clear necessity," less drastic remedies are inadequate, and the benefits outweigh the burdens imposed on the affected party. ( See, Dkt. Ent. 198, PG ID 7803). A third-party subpoena capable of obtaining the only remaining records identified by the Receiver is precisely the type of less drastic remedy the Court contemplated.

## IX. TERMINATION OF THE GSI RECEIVERSHIP IS NECESSARY TO RESTORE GSI'S INDEPENDENT LEGAL, CREDITOR, SHAREHOLDER, AND GOVERNANCE RIGHTS.

48. Continued receivership control presently prevents Defendant, Fawn Weaver, as GSI's Chief Executive Officer and sole shareholder, from independently selecting and directing counsel for GSI; prosecuting, defending, settling, or otherwise managing GSI's litigation; asserting and protecting GSI's approximately $3.69 million creditor claim and other creditor rights; exercising GSI's shareholder rights; participating independently in any bankruptcy, restructuring, insolvency, or creditor proceeding involving Uncle Nearest; and managing GSI's corporate governance.

49. There is no demonstrated connection between the Receiver's outstanding Intuit subpoena and his continued control over any of those independent legal and corporate rights. The Court expressly instructed the Receiver to evaluate whether "other less drastic measures" could accomplish the necessary purpose. ( See, Dkt. 198, PG ID 7815). The Receiver's third-party

subpoena to Intuit provides precisely such a measure and can proceed without continued receivership control over GSI.

50. Accordingly, the continued displacement of GSI's independent governance and legal rights is no longer justified by the limited investigative purpose identified in the May 26, 2026 Order. Defendant argues that those rights should be restored through termination of the receivership as to GSI.

## CONCLUSION

51. The Court ordered a prompt investigation to determine whether GSI held assets belonging to the Receivership Entities and whether GSI should remain in receivership. The Receiver received the additional sixty (60) days he requested, obtained the majority of the records sought, and now reports that significant or substantial assets capable of benefiting the Receivership estate are unlikely to exist. He further states that he does not believe a permanent Grant Sidney receivership is necessary. (See, Dkt. 248 at PG.ID . 8416-8417).

52. The only remaining matter identified by the Receiver is a subpoena to Intuit for historical accounting records. That subpoena can proceed without continued displacement of GSI's sole shareholder, counsel, creditor rights, shareholder rights, litigation authority, or corporate governance.

53. Accordingly, Defendant, Fawn Weaver respectfully requests that the Court: (a) deny the Receiver's request for a further extension of the Grant Sidney receivership; (b) terminate the receivership as to Grant Sidney, Inc.; (c) restore to Defendant, Fawn Weaver, as GSI's sole shareholder, authority over Grant Sidney's corporate governance, independent legal representation, litigation, creditor rights, shareholder rights, and participation in bankruptcy or insolvency proceedings; (d) permit the Receiver to complete the presently outstanding Intuit

subpoena and other reasonable third-party discovery directed to the limited asset inquiry authorized by the May 26 Order; (e) permit the Receiver to seek renewed relief if subsequently obtained evidence establishes a factual basis for doing so; and (f) grant such other and further relief as the Court deems just and appropriate.

**RESPECTFULLY SUBMITTED,**

**JOHNSON & JOHNSON, P.C.**
*/s/ Florence M. Johnson*
Florence Johnson (TN BPR No. 015499)
Curtis Johnson (TN BPR No. 015518)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
Telephone: (901) 725-7520
fjohnson@johnsonandjohnsonattys.com
cjohnson@johnsonandjohnsonattys.com
*Counsel for Defendant Fawn Weaver*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and served upon all counsel of record.

/s/ Florence M. Johnson
Florence M. Johnson