**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA,<br><br>Plaintiff,<br><br>**v.**<br><br>UNCLE NEAREST, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-38<br>**Judge Atchley**<br>**Magistrate Judge Steger** |

## DEFENDANT FAWN WEAVER'S MOTION TO TERMINATE THE RECEIVERSHIP AS TO GRANT SIDNEY, INC. AND, IN THE ALTERNATIVE, FOR STAY PENDING APPEAL

1. Defendant, Fawn Weaver, Chief Executive Officer and sole shareholder of Grant Sidney, Inc. ("GSI"), respectfully seeks expedited termination of the receivership as to GSI, renews the relief requested in her September 24, 2026 filing [Dkt. 250], and incorporates that filing by reference.

2. If the Court is not prepared to terminate the GSI receivership at this time, Defendant alternatively moves pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), Federal Rule of Civil Procedure 62(c), and the Court's authority over its receivership for a stay of the May 26, 2026 Order [Dkt. 198] as to GSI pending disposition of *Farm Credit Mid-America, PCA v. Uncle Nearest, Inc.*, No. 26-5492 (6th Cir.).

3. As relevant here, Defendant Fawn Weaver and Respondent Grant Sidney, Inc. are appellants in Appeal No. 26-5492 before the United States Court of Appeals for the Sixth

Circuit, arising from this Court's May 26, 2026 Order refusing to wind up the receivership and placing GSI under receivership control.

4. Expedited relief is warranted because the Receiver has substantially completed the investigation for which GSI was placed into receivership, reports that significant or substantial GSI assets benefiting the receivership estate are unlikely to exist, and states that he "does not believe that a permanent receivership for Grant Sidney is necessary." Dkt. 248, PageID 8416-17. The Receiver's October 9, 2026 Fifth Quarterly Report now makes the timing concrete: three potential purchasers remain in ongoing discussions, he believes he is close to executing an asset purchase agreement, and once an agreement is signed he intends to file a Chapter 11 case for most of the Receivership Entities to consummate a sale under 11 U.S.C. § 363. He further reports that bankruptcy counsel is already preparing the pleadings needed to initiate that process. Dkt. 253 ¶¶ 1-2, 10.

5. The question is therefore immediate and straightforward: whether continued displacement of GSI's independent governance remains necessary today. If the answer is no, this Court should terminate the GSI receivership. If the Court is not prepared to reach that conclusion now, GSI should not remain under the challenged control while the Sixth Circuit decides whether that control should continue.

## I. THE SIXTH CIRCUIT HAS CONFIRMED THAT THE RELEVANT INQUIRY IS WHETHER THE RECEIVERSHIP REMAINS NECESSARY NOW.

6. On October 2, 2026, the Sixth Circuit denied the Receiver's motion to dismiss Appeal No. 26-5492.

7. In doing so, the Court of Appeals distinguished a backward-looking effort to invalidate the original appointment of a receiver from a forward-looking request to wind up an existing receivership because changed circumstances no longer justify its continuation.

8. Quoting *Grand Beach Co. v. Gardner*, 34 F.2d 836, 838 (6th Cir. 1929), the Sixth Circuit explained that winding up "presupposes a receivership in course of administration, which because of changed circumstances ought not to be continued," and that the inquiry "turns on the present need for a receiver, not the legitimacy of the initial appointment." Sixth Cir. Dkt. 37-1 at 3.

9. Applying that rule here, the Sixth Circuit rejected the Receiver's characterization of Appellants' request as an attack on his original appointment. It held instead that the arguments below "focused on the ongoing need for a receiver based on post-appointment facts" and that Appellants sought winding up, not vacatur. *Id.* at 3-4.

10. That ruling sharpens the question now before this Court. Defendant does not ask the Court to reconsider whether the May 26 Order was justified on the record that existed in May. She asks whether the circumstances that exist now continue to establish the necessity for extraordinary receivership control over GSI.

## II. THE INVESTIGATION HAS SUBSTANTIALLY ACCOMPLISHED ITS PURPOSE, AND DKT. 253 DOES NOT ESTABLISH A PRESENT NEED FOR CONTINUED GSI CONTROL.

11. The May 26 Order directed the Receiver to "promptly investigate whether and to what extent Grant Sidney, Inc. holds any assets that rightly belong to" a Receivership Entity and to report whether GSI should remain in receivership or whether "other less drastic measures" could accomplish the necessary purpose. Dkt. 198, PageID 7814-15.

12. The Court initially authorized an investigative period of sixty (60) days. When the Receiver requested an additional sixty (60) days, the Court granted that request and extended the investigation through September 23, 2026. Dkts. 231, 232.

13. At the conclusion of that additional period, the Receiver reported that he had obtained "the majority of the records sought" and that "it is unlikely that significant or

substantial assets exist that could provide a recovery or benefit to the Uncle Nearest Receivership estate." Dkt. 248, PageID 8416.

14. The Receiver further stated that he "does not believe that a permanent receivership for Grant Sidney is necessary." *Id.*, PageID 8417.

15. In that September 23 report, he identified only one (1) unfinished matter: a subpoena to Intuit for historical QuickBooks information that, "[u]pon information and belief," may be associated with an account bearing GSI's name. *Id.*

16. The Receiver's October 9 Fifth Quarterly Report does not retract either his conclusion that significant or substantial GSI assets benefiting the estate are unlikely to exist or his statement that permanent GSI receivership is unnecessary. Instead, it states that "[o]ther employees have alleged" that certain historical Company financial records exist on "a platform owned and controlled by Grant Sidney." Dkt. 253 ¶ 21. The Report does not identify the platform, the employees making the allegation, the basis of their knowledge, the records allegedly maintained there, or any verification of the assertion. Nor does it identify a GSI asset belonging to a Receivership Entity, a transfer requiring preservation, or GSI property at risk of dissipation. Although the Report makes generalized statements about related-party transactions and non-Receiver entities, it does not identify a particular irregularity, commingled asset, or Receivership Asset held by GSI. *Id.*

## III. THE LESS DRASTIC MEASURE CONTEMPLATED BY THE MAY 26 ORDER IS ALREADY AVAILABLE.

17. Defendant does not oppose the Receiver completing the presently outstanding Intuit subpoena or pursuing reasonable third-party discovery directed to recovery of historical Receivership Entity records if the receivership as to GSI is terminated.

18. The Fifth Quarterly Report also states that the Receiver continues to review business, excise, and sales tax compliance for GSI. Dkt. 253 ¶ 19. Neither that compliance review nor the newly reported records allegation requires displacement of GSI's corporate governance. Both are investigative tasks that may be pursued through records requests, subpoenas, and other lawful discovery without continued receivership control.

19. If Intuit or other lawful discovery produces evidence establishing that GSI presently possesses property belonging to a Receivership Entity or otherwise providing a factual basis for renewed equitable relief, the Receiver may present that evidence to the Court.

20. The Court can therefore accomplish the two (2) objectives identified in May: permit completion of reasonable records and asset investigation while ending the extraordinary displacement of GSI's governance unless and until evidence establishes that renewed relief is actually necessary.

21. Third-party discovery is precisely the type of "less drastic measure" contemplated by the May 26 Order. Continued control of an entire corporation is not necessary merely to investigate historical records or tax compliance. Dkt. 250 explained that receivership expansion requires a "clear necessity," inadequacy of less drastic legal or equitable remedies, and benefits sufficient to outweigh the burdens imposed. See Dkt. 198, PageID 7813.

## IV. CONTINUED RECEIVERSHIP CONTROL HAS ALREADY CAUSED CONCRETE PREJUDICE TO GSI'S INDEPENDENT LITIGATION RIGHTS.

22. The consequences of GSI's loss of independent corporate authority are no longer prospective.

23. On March 13, 2026, before the receivership was expanded to GSI, GSI was a named plaintiff in an action against Farm Credit in the Supreme Court of the State of New York,

County of New York, Index No. 153219/2026. GSI asserted its own claims against Farm Credit under independent corporate governance.

24. That action was subsequently removed to the United States District Court for the Southern District of New York, where it proceeded as Case No. 26-2600.

25. After this Court expanded the receivership to GSI on May 26, 2026, Defendant Fawn Weaver no longer possessed corporate authority to direct GSI's litigation position independently. Because GSI remained a plaintiff while simultaneously becoming subject to the Receiver's control, the Receiver became involved in the litigation concerning GSI's position. Weaver Decl. ¶¶ 18-19.

26. GSI could therefore no longer continue prosecuting its claims under the independent governance that existed when the action was filed. The action was ultimately voluntarily dismissed without prejudice. Weaver Decl. ¶¶ 18-19.

27. That history demonstrates actual, not hypothetical, prejudice from continued receivership control. GSI has already lost the ability to maintain litigation against Farm Credit under its independently selected corporate direction because receivership control displaced the authority through which GSI had been prosecuting those claims.

28. The significance is not whether the dismissed claims ultimately would have succeeded. The point is that receivership control changed who possessed authority to determine whether and how GSI could prosecute its own claims against Farm Credit and resulted in the termination of litigation GSI had commenced before it entered the receivership.

29. That concrete history makes the threatened prejudice from an imminent bankruptcy, restructuring, or sale process particularly significant. The Court need not speculate

about whether continued receivership control can impair GSI's independent exercise of legal rights. It already has.

## V. THE BURDEN OF CONTINUED CONTROL HAS BECOME SUBSTANTIALLY GREATER THAN THE COURT CONTEMPLATED IN MAY.

30. When the Court placed GSI into receivership, it reasoned in part that the burden would be "relatively light" because GSI was a passive holding and investment entity. Dkt. 198, PageID 7807.

31. Subsequent developments have materially changed that calculation. GSI is Uncle Nearest's largest shareholder. Dkt. 198, PageID 7805.

32. According to the Receiver's own sworn filings, GSI is also an approximately $3.69 million creditor of Uncle Nearest. Dkt. 126, PageID 3232, 3282.

33. The Receiver's October 9 Fifth Quarterly Report materially sharpens the timing. He reports that three potential purchasers remain in ongoing discussions, that he believes he is close to executing an asset purchase agreement, and that once the agreement is signed he intends to file a Chapter 11 case for most of the Receivership Entities to consummate a sale under 11 U.S.C. § 363. Bankruptcy counsel is already preparing the pleadings needed to initiate that process. Dkt. 253 ¶¶ 1-2, 10.

34. Thus, continued receivership control no longer merely affects the affairs of a passive holding company in anticipation of a hypothetical proceeding. The Receiver now intends to place most of the Receivership Entities into Chapter 11 once the contemplated asset purchase agreement is signed. He also states that any causes of action he elects to pursue are expected to be brought as adversary proceedings after Chapter 11 begins. Dkt. 253 ¶ 9.

35. That creates a structural problem regardless of anyone's intentions. GSI may need to select independent counsel, assert a creditor position, exercise shareholder rights, take a

position concerning valuation, cash collateral, debtor-in-possession financing, or sale procedures, preserve litigation claims, vote where voting rights exist, object to relief sought by the debtor, or advocate for an outcome different from the position selected for Uncle Nearest. The Fifth Quarterly Report further states that the Farm Credit funding budget included approximately $2 million of debtor-in-possession financing tied to the contemplated bankruptcy. Dkt. 253 ¶ 15.

36. Continued receivership control therefore deprives GSI of an independent corporate decision-maker at precisely the point when those rights may become consequential. The New York litigation already demonstrates that returning authority after consequential litigation decisions have occurred does not necessarily restore the opportunity that was lost.

## VI. THE LONGSTANDING GREEN FAMILY STEWARDSHIP STRUCTURE FURTHER DEMONSTRATES WHY TIMING MATTERS.

37. As set forth in the accompanying Declaration of Fawn Weaver, the plan to designate Defendant's Uncle Nearest ownership for the long-term benefit of the descendants of Nathan "Nearest" Green predates this litigation by years. Weaver Decl. ¶¶ 2-6, 14.

38. The approximately forty percent (40%) ownership block designated for that stewardship consists of Defendant's personally held Uncle Nearest interests and the Uncle Nearest shares held through GSI. Weaver Decl. ¶ 7.

39. The present Green Family Irrevocable Stewardship Trust is intended to preserve that longstanding structure while the ultimate Green Family Purpose Trust is completed. Weaver Decl. ¶ 6.

40. The governing structure provides for substantive Green Family participation and independent representation in extraordinary matters affecting that ownership, including bankruptcy, restructuring, change of control, sale, or liquidation. Weaver Decl. ¶¶ 9-13.

41. Defendant does not ask this Court to approve the Trust, determine its final terms, authorize any transfer of GSI property, or adjudicate beneficiary rights. These facts are relevant for the limited purpose of demonstrating why restoration of GSI's independent governance after an extraordinary proceeding has begun may not restore the opportunity for independent stewardship participation at the point when consequential decisions are actually made. Weaver Decl. ¶¶ 20-21.

## VII. TERMINATION, RATHER THAN CONTINUED RECEIVERSHIP, IS THE APPROPRIATE RELIEF.

42. Dkt. 250 addressed at length the standard articulated by this Court when it expanded the receivership to GSI: receivership expansion requires "a clear necessity," inadequacy of less drastic legal or equitable remedies, and benefits sufficient to outweigh the burdens imposed on the affected party. Dkt. 198, PageID 7813.

43. The present record no longer satisfies that standard. The Receiver has not identified a significant or substantial GSI asset capable of benefiting the estate; he reports that such assets are unlikely to exist; he states that permanent GSI receivership is unnecessary; and Dkt. 253 does not retract either conclusion. As to GSI, the new Report identifies additional records and compliance work that can proceed through less drastic measures, and it still identifies no specific GSI asset belonging to a Receivership Entity, transfer requiring preservation, or GSI property at risk of dissipation. Dkt. 253 ¶¶ 19, 21.

44. Conversely, continued receivership control has already impaired GSI's independent exercise of its litigation rights and now threatens similarly time-sensitive creditor, shareholder, governance, and bankruptcy rights.

45. The receivership as to GSI has therefore accomplished the investigative purpose for which this Court imposed it. The appropriate first-instance relief is for this Court to terminate it.

46. To the extent the Court concludes that the pendency of Appeal No. 26-5492 limits its authority to grant termination outright, Federal Rule of Civil Procedure 62.1 provides a procedural path without requiring the Court to leave the present circumstances unresolved. Defendant respectfully requests, in that event, an indicative ruling stating that the Court would grant the termination relief upon remand, or that the request raises a substantial issue, so that Defendant may promptly notify the Sixth Circuit under Federal Rule of Appellate Procedure 12.1 and seek a limited remand.

**VIII. IF THE COURT DECLINES TO TERMINATE THE GSI RECEIVERSHIP, THE MAY 26 ORDER SHOULD BE STAYED AS TO GSI PENDING APPEAL.**

47. If the Court is not prepared to terminate the GSI receivership, Defendant alternatively requests a stay of the May 26, 2026 Order [Dkt. 198] as to GSI pending disposition of Appeal No. 26-5492.

48. Federal Rule of Appellate Procedure 8(a)(1)(A) provides for a stay pending appeal to be sought in the district court in the first instance. Defendant therefore presents the alternative stay request to this Court before seeking that relief from the Sixth Circuit.

49. Federal Rule of Civil Procedure 62(c) confirms that a receivership order is not automatically stayed merely because an appeal has been taken. If this Court declines to terminate the receivership now, a stay is therefore necessary to restore GSI's independent authority while the Sixth Circuit determines whether continued receivership control remains warranted.

50. The four (4) traditional stay considerations support that relief. See *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991).

a) **Likelihood of success.** The Sixth Circuit has held that the appeal properly presents a forward-looking challenge based upon the present necessity of the receivership. The factual record has also materially developed: the Receiver's investigation has substantially occurred, significant or substantial beneficial GSI assets are reported unlikely to exist, the Receiver states that permanent GSI receivership is unnecessary, and his October 9 Report does not retract those conclusions while confirming that the contemplated Chapter 11 sale process is advancing. Dkt. 248, PageID 8416-17; Dkt. 253 ¶¶ 1-2, 10, 21.

b) **Irreparable harm.** The harm is no longer merely predicted. GSI's loss of independent litigation authority has already resulted in the dismissal without prejudice of litigation in which it was asserting claims against Farm Credit. The Receiver now states that he is close to executing an asset purchase agreement and intends to commence Chapter 11 once it is signed, with any causes of action he elects to pursue expected to proceed as adversary proceedings there. Dkt. 253 ¶¶ 1-2, 9-10. If that process begins while GSI remains controlled by the Receiver, GSI may lose the independent opportunity to exercise creditor, shareholder, governance, litigation, and stewardship rights when those rights matter. Returning authority later cannot necessarily recreate decisions, objections, negotiations, votes, valuation positions, or litigation opportunities that have already passed.

c) **Harm to others.** A stay would not prevent completion of the Intuit subpoena, reasonable third-party records discovery, or lawful compliance review, and would not alter receivership control over Uncle Nearest. If new evidence emerges establishing a genuine present need for renewed relief against GSI, the Receiver may seek such relief from this Court.

d) **Public interest.** The public interest favors meaningful appellate review and the use of no greater equitable restraint than present circumstances require, particularly where a separate corporation's independent legal rights remain displaced after the temporary investigative purpose for that displacement has substantially run its course.

**IX. EXPEDITED DISPOSITION IS WARRANTED.**

51. On October 9, 2026, the Receiver reported that three potential purchasers remain in ongoing discussions, that he believes he is close to executing an asset purchase agreement, and that once the agreement is signed he intends to file a Chapter 11 case for most of the Receivership Entities to consummate a sale under 11 U.S.C. § 363. He further reported that bankruptcy counsel is already preparing the pleadings needed to initiate that process. Dkt. 253 ¶¶ 1-2, 10.

52. The Sixth Circuit has now established a briefing schedule under which Appellants' principal brief is due November 12, 2026 and Appellees' principal brief is due December 11, 2026. Sixth Cir. Dkt. 38.

53. The question therefore cannot practically await resolution of the merits appeal. The contemplated bankruptcy filing is expressly tied to execution of an asset purchase agreement that the Receiver says is close. If that process begins while GSI remains controlled by the

Receiver, GSI may immediately confront financing, cash collateral, valuation, claims, settlement, sale, voting, and restructuring issues without independent corporate authority.

54. E.D. Tenn. L.R. 7.2 authorizes disposition before expiration of the ordinary response period where exceptional circumstances warrant it. Defendant respectfully requests expedited consideration because the prejudice identified above may arise before ordinary briefing can conclude and may not be fully remediable afterward.

55. Federal Rule of Appellate Procedure 8(a)(2)(A)(ii) permits a party to seek relief from the Court of Appeals after the district court has denied the requested relief or "failed to afford the relief requested." In *Tennessee Conference of the NAACP v. Lee*, 105 F.4th 888, 907 (6th Cir. 2024) (per curiam), the Sixth Circuit treated the absence of a timely ruling under genuinely time-sensitive circumstances as a failure to afford the requested relief.

56. Defendant therefore respectfully requests a ruling on this Motion on an expedited basis before any Chapter 11 matter is filed. That request is made because the relief sought concerns preservation of rights before a contemplated bankruptcy or sale process begins, not to limit the Court's substantive consideration.

57. If the Court requires additional time to decide whether to terminate the GSI receivership, Defendant alternatively requests that the Court temporarily stay Dkt. 198 as to GSI until it resolves this Motion.

**CONCLUSION**

For the foregoing reasons, Defendant Fawn Weaver respectfully requests that the Court:

**First,** grant the termination relief requested in Dkt. 250 and renewed herein, terminate the receivership as to Grant Sidney, Inc., and restore GSI's ordinary corporate governance, including

its authority to retain and direct independent counsel and independently exercise its creditor, shareholder, litigation, bankruptcy, and governance rights;

**Second,** permit the Receiver to complete the presently outstanding Intuit subpoena and other reasonable third-party discovery directed to the limited records-and-asset inquiry authorized by the May 26 Order notwithstanding termination of the GSI receivership, without prejudice to his ability to seek renewed relief if material evidence produced through that discovery establishes a present basis for such relief;

**Third, if necessary,** to the extent the Court concludes that the pending appeal limits its authority to terminate the GSI receivership outright, issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating that the Court would grant the termination relief upon remand, or that the request raises a substantial issue, so that Defendant may promptly seek a limited remand under Federal Rule of Appellate Procedure 12.1;

**Alternatively,** if the Court declines to terminate the GSI receivership, stay the May 26, 2026 Order [Dkt. 198] as to GSI pending disposition of Appeal No. 26-5492 and restore GSI's independent corporate governance, counsel, creditor, shareholder, litigation, and bankruptcy rights for the duration of that stay;

**Further,** rule on this Motion on an expedited basis, or temporarily stay Dkt. 198 as to GSI until the Court rules;

**Further,** waive any bond or security requirement related to a stay of the matter on appeal, because the requested relief requires no payment, transfer, or dissipation of receivership property; and

**Finally,** grant such other and further relief as the Court deems just and appropriate.

**RESPECTFULLY SUBMITTED,**

**JOHNSON & JOHNSON, P.C.**

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr. (TN BPR No. 015518)
Florence M. Johnson (TN BPR No. 015499)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
Telephone: (901) 725-7520
cjohnson@johnsonandjohnsonattys.com
fjohnson@johnsonandjohnsonattys.com

*Counsel for Defendant Fawn Weaver*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and served upon all counsel of record.

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr.