**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA,<br><br>Plaintiff,<br><br>**v.**<br><br>UNCLE NEAREST, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-38<br>**Judge Atchley**<br>**Magistrate Judge Steger** |

# DECLARATION OF FAWN WEAVER IN SUPPORT OF DEFENDANT FAWN WEAVER'S MOTION FOR EXPEDITED RULING ON HER PENDING REQUEST TO TERMINATE THE RECEIVERSHIP AS TO GRANT SIDNEY, INC. AND, IN THE ALTERNATIVE, FOR STAY PENDING APPEAL

I, Fawn Weaver, declare as follows:

1. I am a Defendant in this action pending before the United States District Court for the Eastern District of Tennessee, an Appellant in Appeal No. 26-5492 pending before the United States Court of Appeals for the Sixth Circuit, and the sole shareholder of Grant Sidney, Inc. ("GSI"). I submit this Declaration in support of Defendant Fawn Weaver's Motion for Expedited Ruling on Her Pending Request to Terminate the Receivership as to Grant Sidney, Inc. and, in the Alternative, for Stay Pending Appeal. I have personal knowledge of the matters stated herein and, if called as a witness, could and would testify competently to them.

2. Approximately two (2) years before Farm Credit Mid-America, PCA filed the underlying action, I began working with nationally and internationally recognized

trust and estate professionals to develop a long-term stewardship structure through which substantial ownership interests in Uncle Nearest would be held for the benefit of the descendants of Nathan "Nearest" Green.

3. That work predated this litigation by more than a year and the appointment of the Receiver. It was not created in response to the receivership, this appeal, or the prospect of bankruptcy.

4. As that work progressed, an attorney at Cravath, Swaine & Moore LLP worked diligently with me and my advisors to further develop the structure and the process for completing it. At that stage, I had not yet entered into a formal paid engagement with Cravath. Counsel nevertheless devoted substantial time to the project and prepared a PowerPoint presentation for my review setting out the proposed structure and the steps the firm would take to complete the work. The contemplated next step was to pay the requested retainer and move into the formal paid engagement.

5. Farm Credit's lawsuit and the financial restrictions and consequences that followed prevented me from paying that retainer and moving into the formal paid engagement. The absence of a completed formal engagement did not reflect tentativeness or abandonment of the stewardship plan. The work was active and ongoing, and I continued developing the structure.

6. The beneficiary class, designated Uncle Nearest ownership block, stewardship purpose, and core governance objectives were established through work that began approximately two (2) years before Farm Credit filed this action. That work developed into the Green Family Irrevocable Stewardship Trust, an interim

irrevocable structure intended to hold, protect, govern, and administer assets designated for the long-term benefit of the descendants of Nathan "Nearest" Green until those assets may be transferred into or incorporated into the final Green Family Purpose Trust structure.

7. The combined Uncle Nearest ownership block designated for the Green Family Irrevocable Stewardship Trust, and ultimately for the Green Family Purpose Trust structure, is approximately forty percent (40%) of the Company, comprising the entirety of the Uncle Nearest shares that I own personally and the entirety of the Uncle Nearest shares held through my holding company, Grant Sidney, Inc. ("GSI").

8. I am not intended to receive a beneficial economic interest in assets placed into the Green Family Irrevocable Stewardship Trust merely because I created, funded, advised, or helped steward it. The intended beneficiaries are the descendants of Nearest Green.

9. A central purpose established for the Green Family Irrevocable Stewardship Trust is to provide Nearest Green's descendants with a substantive institutional voice in the stewardship of the Uncle Nearest ownership held for their benefit, without requiring individual descendants to own shares personally or participate independently as litigants.

10. The governing structure developed for the Trust includes a Green Family Council composed of descendants of Nearest Green. The Council is to participate substantively in extraordinary matters affecting the ownership, control, value,

preservation, or disposition of the Uncle Nearest ownership held for Green Family stewardship.

11. Those extraordinary matters include a sale of substantially all assets, merger, change of control, recapitalization, restructuring, receivership, bankruptcy, liquidation, and similar proceedings.

12. The governing terms developed for the Trust provide that, in a bankruptcy, restructuring, receivership, insolvency, or liquidation involving Uncle Nearest, the Green Family Council may designate a Green Family representative to participate with the independent trustee and trust counsel in matters including strategy, negotiations, hearings, proposed settlements, asset-sale proceedings, bidding and sale procedures, plan negotiations, valuation, treatment of equity, preservation of claims, and restructuring alternatives.

13. The governing terms developed for the Trust also provide for independent legal representation where reasonably necessary to protect the interests associated with the Uncle Nearest ownership held for Green Family stewardship during bankruptcy, insolvency, restructuring, receivership, or liquidation.

14. The Green Family stewardship plan and the structure for implementing it were established well before this litigation. Farm Credit's lawsuit and the financial restrictions and consequences that followed prevented me from funding the next formal phase of the work with Cravath, but they did not alter or create the stewardship plan. I continued working toward completion and implementation of the Green Family Irrevocable Stewardship Trust.

15. When the District Court expanded the receivership to GSI on May 26, 2026, I lost the corporate authority necessary to implement the portion of the Green Family Irrevocable Stewardship Trust involving the Uncle Nearest shares held through GSI.

16. As a result, although the Uncle Nearest shares that I personally own remain capable of being independently represented by me, I cannot presently cause the Uncle Nearest shares held through GSI to be placed into or represented through the contemplated independent Green Family stewardship structure.

17. That distinction is particularly important if Uncle Nearest enters Chapter 11, restructuring, a sale process, or liquidation. The GSI-held portion of the ownership designated for the Green Family Irrevocable Stewardship Trust would remain under the control of the same Receiver controlling Uncle Nearest unless GSI's independent governance is restored.

18. The loss of GSI's independent litigation authority has already had practical consequences. On March 13, 2026, before the receivership was expanded to GSI, GSI joined me as a plaintiff in litigation against Farm Credit filed in the Supreme Court of the State of New York, County of New York, Index No. 153219/2026. That action was subsequently removed to the United States District Court for the Southern District of New York, where it proceeded as Case No. 26-2600.

19. After the receivership was expanded to GSI, I no longer possessed authority to direct GSI's litigation position independently. The Receiver became involved in that litigation because GSI was a plaintiff and was then under his control. Because

GSI could no longer continue in that litigation under its previously independent governance, the action was voluntarily dismissed without prejudice.

20. I do not ask this Court through the present Motion to approve the Green Family Irrevocable Stewardship Trust, determine its final terms, authorize a transfer of GSI assets, or adjudicate the rights of any prospective beneficiary.

21. I provide these facts only to explain why continued receivership control over GSI has consequences extending beyond the ordinary operations of a passive holding company and why restoration of GSI's independent corporate voice after a bankruptcy or sale process has begun may not restore opportunities lost while GSI lacked that independent voice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 9, 2026.

______________________________

Fawn Weaver