IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| **FARM CREDIT MID-AMERICA, PCA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNCLE NEAREST, INC., NEAREST GREEN DISTILLERY, INC., UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, FAWN WEAVER and KEITH WEAVER,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 4:25-cv-38**<br><br>**Judge Atchley**<br><br>**Magistrate Judge Steger** |

---

**FARM CREDIT MID-AMERICA, PCA'S RESPONSE TO DEFENDANT FAWN WEAVER'S MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL**

---

Farm Credit Mid-America, PCA ("FCMA" or the "Lender") files this response[1] (the "Response") in opposition to the *Defendant Fawn Weaver's Motion for Preliminary Injunction Pending Appeal* filed on October 15, 2026 (the "Preliminary Injunction Motion")[2] filed by Defendant Fawn Weaver ("Ms. Weaver").

**OPPOSITION SUMMARY**

1. The Preliminary Injunction Motion is Ms. Weaver's latest attempt to halt Phillip G. Young, Jr.'s (the "Receiver") court-authorized efforts to sell receivership assets to pay down some of the more than $120 million that her company owes FCMA. She asks the Court to rule by noon *the day after she filed it* and treats as an emergency the Receiver's statement in his Fifth Quarterly Report that he is "close" to executing an asset purchase agreement and intends to file cases under

[1] Each capitalized term used but not defined herein shall have the meaning ascribed in the *Emergency Motion for the Immediate Appointment of Receiver* [Dkt. No. 3] (the "Receivership Motion").
[2] Dkt. No. 255.

title 11 of the United States Code (the "Bankruptcy Code").[3] Neither the Receiver's authority to sell property nor his plan to do so is new. In every quarterly report he has filed, the Receiver has told the Court and the parties that he intended to sell substantially all of the Receivership Assets, and for months he has disclosed that he might do so through chapter 11 of the Bankruptcy Code. In October 2025, he anticipated potentially "accepting offers for . . . purchasing substantially all assets of the Company."[4] In February 2026, the Receiver reported that his investment banker had contacted 106 potential purchasers and that "a sale of the Company as a going concern must be completed by no later than the second quarter of 2026."[5] In April 2026, he reported that he was nearing the end of "an extensive marketing process for the sale of substantially all of the Company's assets" and would "determine whether to pursue a sale in this or another venue."[6] And in July 2026, he disclosed that he was evaluating "a pre-packaged Chapter 11 bankruptcy on behalf of the Company in order to consummate this sale pursuant to the terms of 11 U.S.C. § 363," which he expected was "likely to occur within the next quarter."[7] Because the Receiver's restatement of that plan in his Fifth Quarterly Report is not new information, no emergency exists.

2. Ms. Weaver bears the burden of showing that she is entitled to the extraordinary remedy of an injunction pending appeal, and she fails on every factor. On the likelihood of success on the merits, she points solely to (1) the fact that she has filed an appeal regarding denial of her motion for reconsideration seeking a wind-up of the receivership and its extension to Grant Sidney, Inc. (a side issue at best), and (2) the fact that the Sixth Circuit declined to dismiss that appeal outright as a procedurally improper interlocutory appeal. She fails to offer a single argument as to

[3] Dkt. No. 253 ¶¶ 3, 8.
[4] Dkt. No. 46 ¶ 38.
[5] Dkt. No. 132 ¶¶ 14, 52.
[6] Dkt. No. 192 ¶ 5.
[7] Dkt. No. 223 ¶¶ 5, 15.

why she will succeed on the merits of that Appeal. Indeed, the Sixth Circuit has already determined that appellate success is unlikely.[8] Nor will she be harmed by allowing any future bankruptcy and sale to proceed for now because, as a party-in-interest, she will have notice and an opportunity to voice any objections to any bankruptcy proceeding, plan, or pending sale. On the contrary, FCMA will be harmed by an injunction as it will likely force FCMA to continue to fund a money-losing business and frustrate any sale efforts if the buyer needs to wait until her meritless appeal of the extent of the Order Appointing Receiver (the "Receivership Order")[9] is resolved. Further, she cannot show that freezing indefinitely the sale of an insolvent, value-losing business serves the public interest. Therefore, the Preliminary Injunction Motion should be denied. If the Court is inclined to grant any relief, Ms. Weaver should be required to post a bond in the amount of $60 million to cover the costs of delay.

## FACTUAL AND PROCEDURAL BACKGROUND

3. These proceedings arise out of a breach of that certain Credit Agreement dated July 22, 2022, (the "Credit Agreement") between FCMA and Uncle Nearest, Inc., Nearest Green Distillery, Inc. (the "Distillery"), and Uncle Nearest Real Estate Holdings, LLC ("RE Holdings" and together with Uncle Nearest, Inc. and the Distillery, "Uncle Nearest"), which established a series of credit facilities through which FCMA extended over $100 million in loans to Uncle Nearest.[10] After Uncle Nearest's numerous defaults under the loans, FCMA filed a breach of

[8] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 22-2 at 9 ("Appellants have not shown that they are likely to succeed in proving that the district court abused its discretion.").
[9] Dkt. No. 39.
[10] Dkt. No. 1 ¶¶ 18-35.

contract action and sought a receivership over the Uncle Nearest assets. On August 22, 2025, the Court entered the Receivership Order, appointing the Receiver to oversee Uncle Nearest.

4. On December 23, 2025, Ms. Weaver, Keith Weaver ("Mr. Weaver"), and Grant Sidney, Inc. ("Grant Sidney", and together with Ms. Weaver and Mr. Weaver, the "Weaver Parties") challenged the receivership via the *Motion to Reconsider the Memorandum Opinion and Order [Dkt. 32] and Order Appointing Receiver [Dkt. 39] and to Stay Access to Proprietary Information* (the "Reconsideration Motion").[11] On May 26, 2026, after a hearing and a full briefing on the issue, the Court denied the Reconsideration Motion in a 62-page order.[12] On May 27, 2026, the Weaver Parties appealed the Court's denial of the Reconsideration Motion and expansion to Grant Sidney.[13]

5. On June 2, 2026, the Weaver Parties sought an *Emergency Motion to Stay Portions of the District Court's May 12, 2026 Order [R. 197] and May 26, 2026 Order [R. 198] Pending Appeal* (the "Stay Motion") in the Sixth Circuit.[14] The Stay Motion was denied.[15]

6. On August 5, 2026, the Receiver filed a motion to dismiss (the "Receiver's Dismissal Motion"), arguing that the Sixth Circuit did not have jurisdiction to hear the Weaver Parties' appeal.[16] Notably, the Receiver's Dismissal Motion dealt only with whether the appeal was procedurally improper. The Sixth Circuit declined to dismiss the appeal as a procedurally improper interlocutory appeal.[17]

## OPPOSITION

---

[11] Dkt. No. 91.
[12] Dkt. No. 198.
[13] Dkt. No. 200.
[14] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 14.
[15] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 22.
[16] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 28-1.
[17] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 37.

**A. Ms. Weaver Fails to Satisfy the Sixth Circuit Standard for a Preliminary Injunction.**

7. "A preliminary injunction is an extraordinary remedy never awarded as of right."[18] As the moving party, Ms. Weaver bears the burden of showing that she is entitled to a stay pending appeal.[19] For the Court to grant a preliminary injunction, the plaintiff must make "a clear showing that [it] is entitled to such relief."[20] Ms. Weaver requests a preliminary injunction, which is in essence a stay pending appeal. The traditional factors for a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[21] The Supreme Court has recognized the first two factors as "the most critical."[22] These factors are not strict requirements to be satisfied individually, but interrelated considerations to be balanced as a whole.[23] Even so, "the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist."[24] Ms. Weaver offers no evidence beyond the Receiver's Fifth Quarterly Report.[25] As such, she falls well short of her burden, and each factor weighs against relief.

i. Ms. Weaver Has Not Made any Showing That She Is Likely to Succeed on the Merits.

8. Ms. Weaver has not shown that she is likely to succeed on the merits. The Sixth Circuit applies a "stricter standard" to this factor.[26] Specifically, "a strong or substantial likelihood

---

[18] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (stating that a preliminary injunction is an "extraordinary and drastic remedy.") (citing *Munaf v. Geren*, 553 U.S. 674, 689 (2008)).
[19] *See Serv. Emps. Int'l Union Loc. 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012).
[20] *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026) (internal citations omitted).
[21] *Nken v. Holder*, 556 U.S. 418, 425-36 (2009) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).
[22] *Nken*, 556 U.S. at 434.
[23] *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).
[24] *Id*. at 154.
[25] Dkt. No. 256 ¶ 20.
[26] *In re Thomas*, 565 B.R. 856, 865 (Bankr. W.D. Tenn. 2017).

or probability of success on the merits" must exist.[27] Ms. Weaver relies entirely on the Sixth Circuit's October 2, 2026, order denying the Receiver's Dismissal Motion, which addressed only whether the Sixth Circuit has jurisdiction over the Appeal (i.e., whether it is a final order or a permissible interlocutory appeal).[28] Ms. Weaver acknowledges that the "ruling does not decide the merits" and argues only that it "removes the jurisdictional uncertainty" that affected the earlier stay analysis.[29] She offers no argument that this Court abused its discretion in finding that the receivership remains necessary. In fact, in denying her request for a stay of the Court's Reconsideration Motion, the Sixth Circuit considered voluminous evidence and drafted a 10-page opinion for why it could not be granted.[30] Even under the sliding scale she invokes, she must show at least "serious questions going to the merits."[31] But Ms. Weaver never identifies what those serious questions are. She does not even try. The Sixth Circuit's ruling simply said that her appeal was not procedurally improper. It cannot, and does not, indicate she has any chance of success and cannot support a claim of success on the merits.

9. Indeed, the Sixth Circuit has already determined that Ms. Weaver is not likely to succeed on the merits. She asked for a stay of the district court case pending appeal (which is similar to the relief she seeks here via a preliminary injunction) and the Sixth Circuit denied that relief. In doing so, the Court of Appeals assessed the likelihood of success on the merits and determined that the Weaver Parties had not "made a convincing merits case at this juncture" and had "not carried their burden to show that it was likely an abuse of discretion" for this Court to expand the receivership.[32] Ms. Weaver presents no new evidence on this factor and gives the Court

---

[27] *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 264 (6th Cir. 1977).
[28] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 37-1 at 3-4.
[29] Dkt. No. 256 ¶ 20(a).
[30] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 22-2. A copy of the order is attached hereto as **Exhibit A**.
[31] *Mich. Coal.*, 945 F.2d at 154.
[32] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 22-2 at 7, 9.

no reason to reach a different conclusion now. Where a movant has "'no likelihood of success on the merits,' there is nothing left to balance and the plaintiff's request for a preliminary injunction must fail regardless of its showing on the other factors."[33] As such, Ms. Weaver's Preliminary Injunction Motion fails on this ground alone.

ii. Ms. Weaver Will Not Be Irreparably Harmed Absent an Injunction.

10. A preliminary injunction may only be issued if a threat of irreparable harm exists.[34] In evaluating the irreparable harm factor, courts consider the following factors:

(1) the substantiality of the injury alleged;

(2) the likelihood of its occurrence; and

(3) the adequacy of the proof provided.[35]

Moreover, "the harm alleged must be both certain and immediate, rather than speculative or theoretical."[36]

11. A movant seeking to establish the likelihood of irreparable injury must offer evidence that the harm has already occurred or is likely to occur again.[37] Ms. Weaver has not made and cannot make this showing. Ms. Weaver's argument rests entirely on the Receiver's report that he "feels" he is "close to" executing an asset purchase agreement, and "intends to" file chapter 11 cases once an agreement is signed.[38] Not only are these statements not concrete, they are also not new. As discussed at length above, the Receiver's intent to sell substantially all assets has been

---

[33] *PCC Airfoils*, 176 F.4th at 513 (citing *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 409 (6th Cir. 2024)).
[34] *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019) ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'") (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).
[35] *Mich.Coal.*, 945 F.2d at 154.
[36] *Sumner Cnty. Schools*, 942 F.3d at 326-27.
[37] *Mich.Coal.*, 945 F.2d at 154.
[38] Dkt. No. 256 ¶ 20(b); Dkt. No. 253 ¶¶ 1-2, 10.

known since his First Quarterly Report in October 2025,[39] and his intent to consider a chapter 11 and section 363 sale since at least July 2026.[40]

12. The Preliminary Injunction Motion is also premature. No asset purchase agreement has been signed, and no bankruptcy petition (by the Receiver) has been filed. Ms. Weaver asks the Court to enjoin a transaction whose buyer, price, and terms do not yet exist. Nevertheless, she suspects and anticipates that she has issue with this yet to be identified transaction and undetermined sale process.

13. Further, Ms. Weaver's contention of irreparable harm is meritless because she will have sufficient notice and an opportunity to be heard in connection with the bankruptcy proceeding and asset sale. If the Receiver signs an agreement and commences chapter 11 cases, he cannot consummate a sale without notice, a hearing, and the approval of the bankruptcy court.[41] Ms. Weaver will be a party in interest in any bankruptcy case, will receive notice of any proposed sale, and will have the opportunity to object.[42] Ms. Weaver therefore faces no irreparable harm.

iii. <u>An Injunction Would Substantially Harm FCMA, the Receivership Estate, and Its Creditors.</u>

14. An injunction would have severe consequences for other parties interested in these proceedings. Ms. Weaver describes her requested relief as "narrowly tailored" and "not an operating mandate."[43] Her description is incorrect. The injunction would bar the Receiver from consummating any sale of substantially all of Uncle Nearest's assets, or any other material disposition, in any forum, for as long as the Appeal remains pending.[44] Under the Sixth Circuit's

---

[39] Dkt. No. 46 ¶ 38.
[40] Dkt. No. 223 ¶¶ 5, 15.
[41] 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]").
[42] *See id.*
[43] Dkt. No. 255 ¶ 1; Dkt. No. 256 ¶ 20(c).
[44] Dkt. No. 256 ¶ 20(c).

briefing schedule, the appellees' briefs are not due until December 11, 2026.[45] The injunction would therefore freeze the sale process for months at a minimum, and prevent the Receiver from performing one of his core duties under the Receivership Order.[46] Ms. Weaver's answer is that FCMA would continue to fund operational shortfalls and could continue to negotiate the sale but not consummate it.[47] But that is not an absence of harm; it is a further shift of the cost of delay onto FCMA, which would be forced to keep funding an insolvent company's losses while its collateral continues to lose value. Further, the delay will likely chill the sale process and cause panic to any buyers regarding these unique assets because they know that they must wait a substantial amount of time before they can begin to try to obtain value from the assets. And the delay would serve no lasting purpose. As the Receiver has explained, "[t]he Company cannot operate in this Receivership in perpetuity."[48] A sale is the path the Receiver has identified to bring this receivership to a close.

15. Most importantly, the receivership estate cannot afford to wait. Uncle Nearest "remains insolvent" and "continues operating at a loss."[49] It "is only able to maintain operations due to (a) cash infusions by Farm Credit, (b) significant reductions to operational expenses, and (c) professional fees coming in substantially below budget."[50] The Receiver believes that "sales will continue decreasing while this remains in a receivership," and he is "concerned about the continued deterioration of the brand's value" if a sale is not consummated soon.[51] These assets have been on the market for more than a year, and the record shows that delay and litigation drive

---

[45] *Farm Credit Mid- America, PCA v. Uncle Nearest, Inc.*, Case No. 26-5492 (6th Cir. 2026), Dkt. No. 38.
[46] *See* Dkt. No. 39 ¶ 5 (stating that the Receiver is vested with "all powers to sell the Receivership Assets pursuant to 28 U.S.C. §§ 2001, 2002, and 2004.").
[47] Dkt. No. 255 ¶ 6.
[48] Dkt. No. 132 ¶ 51.
[49] Dkt. No. 253 ¶¶ 27, 31.
[50] *Id.* ¶ 27.
[51] *Id.* ¶¶ 28, 32.

buyers away. The original buyers of the Martha's Vineyard Property canceled their contract because of "the delay in the process and the continued litigation by Keith and Fawn Weaver concerning a sale of the property, including after approval of the sale."[52] The Receiver is now close to a transaction with one of three interested buyers. An injunction barring any closing for months would discourage those buyers from signing, depress the price of any eventual sale, and further erode the value available to Uncle Nearest's creditors.

iv. The Public Interest Weighs Against an Injunction.

16. The public interest also weighs against an injunction. Ms. Weaver's only public-interest argument is that an injunction would favor "orderly appellate review" and avoid "a result in which the subject of an appeal is materially and irreversibly altered" before the Sixth Circuit can rule.[53] The public interest instead favors the efficient administration of the receivership estate. Every month of delay adds operating losses, and continued deterioration of the brand will lower the eventual sale price, all at the expense of creditors.

17. Ultimately, Ms. Weaver has failed to show that she is likely to succeed on the merits, failed to show irreparable harm that is certain and immediate rather than speculative, and failed to show an injunction would not harm the receivership estate and its creditors. The public interest favors allowing the Receiver to carry out his court-ordered duties. On balance, the factors weigh decisively against an injunction pending appeal.

**B. In the Event the Preliminary Injunction is Granted, Ms. Weaver Should be Required to Post a Bond.**

18. If the Court grants an injunction pending appeal, Ms. Weaver should be required to

[52] Dkt. No. 223 ¶ 3.
[53] Dkt. No. 256 ¶ 20(d).

post a bond in the amount of $60 million to compensate FCMA for any delays in the sale process.[54] Federal Rule of Civil Procedure 65(c) permits a court to issue a preliminary injunction "*only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[55] Ms. Weaver asks the Court to set security at zero because the injunction would "preserve[] assets already under Court control."[56] That ignores the very real cost of delay, the fact that delay will chase away buyers, and may frustrate the sale process entirely. During the most recent quarter alone, the receivership estate incurred $1,832,736 in professional fees and required $450,000 in funding from FCMA, and the Receiver had budgeted roughly $2,000,000 in debtor-in-possession financing from FCMA in connection with the anticipated bankruptcy filing.[57] An injunction would also expose the estate to the risk of losing a buyer and to the continued erosion of the brand's value.[58] Any bond should therefore be sized to cover these losses for the full expected duration of the Appeal.

**<u>RESERVATION OF RIGHTS</u>**

19. FCMA reserves the right to amend or supplement this response before or at any hearing on the Preliminary Injunction Motion. FCMA further reserves its rights to seek an award from Ms. Weaver of all reasonable costs, expenses and attorneys' fees that FCMA has incurred, including fees and costs associated with the preparation of this response to the Preliminary Injunction Motion, as new information develops. FCMA further reserves all of its rights and remedies against Ms. Weaver under applicable law.

---

[54] *Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 174, 177 (S.D. Ohio 2015) (holding that requiring posting of bond upon the imposition of a stay pending appeal was appropriate).
[55] Fed. R. Civ. P. 65(c) (emphasis added).
[56] Dkt. No. 255 at 4.
[57] Dkt. No. 253 ¶¶ 14-15.
[58] *Id.* at ¶¶ 2, 32.

## CONCLUSION

For the foregoing reasons, FCMA requests that the Preliminary Injunction Motion be denied and for such other and further relief that this Court may deem proper.

Respectfully submitted,

*/s/ Erika R. Barnes*

Erika R. Barnes
Stites & Harbison, PLLC (Nashville)
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2449
Phone: 615-782-2252
Fax: 615-742-0734
Email: ebarnes@stites.com

-and-

Jeffrey J. Chapman, *admitted pro hac vice*
Douglas J. Horn, *admitted pro hac vice*
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Phone: (212) 548-2100
Fax: (212) 715-6284
jchapman@mcguirewoods.com
dhorn@mcguirewoods.com

Demetra Liggins, *admitted pro hac vice*
MCGUIREWOODS LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, Texas 77002
Phone: 713-353-6661
Email: dliggins@mcguirewoods.com

*Counsel for Farm Credit Mid-America, PCA*

## CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, a true and correct copy of the foregoing was filed and served via the Court's CM/ECF system upon all parties requesting service in the above listed case.

Date: October 19, 2026

*/s/ Erika R. Barnes*

Erika R. Barnes