UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA,<br><br>Plaintiff,<br><br>**v.**<br><br>UNCLE NEAREST, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-38<br>**Judge Atchley**<br>**Magistrate Judge Steger** |

# DEFENDANT FAWN WEAVER'S REPLY TO RECEIVER'S RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL

Defendant Fawn Weaver ("Defendant"), through counsel, respectfully submits this Reply to the Receiver's Response [Doc. 259] opposing Defendant's Motion for Injunction Pending Appeal [Doc. 255].

## INTRODUCTION

1. The Receiver's opposition treats Defendant's request as an effort to terminate his appointment, halt administration, and prevent a sale. It then demands a bond of at least $60 million for prospective carrying costs and lost sales. Neither characterization accurately describes the narrowly tailored relief requested or supplies evidence that the injunction would cause the asserted damages.

2. Defendant does not request dissolution of the receivership through this Motion, restoration of management to herself, prohibition of a Chapter 11 filing, or restraint of ordinary

operations, marketing, negotiations, financing, diligence, or requests for sale approval. She requests only that the Receiver and other persons properly bound refrain from consummating or implementing an irreversible disposition that would materially impair effective relief in Appeal No. 26-5492. Doc. 255 ¶¶ 4–5.

3. The Sixth Circuit's October 2, 2026 Order rejected the Receiver's jurisdictional challenge and recognized that the pending appeal presents a forward-looking question concerning the present need for a receivership, rather than an untimely challenge to its initial appointment. Sixth Cir. Dkt. 37-1 at 3–4. That ruling did not determine the merits. It confirms, however, that the winding-up question is properly before the appellate court and that preserving the possibility of meaningful review is a legitimate consideration.

## I. THE PRESENT MOTION IS NARROWER THAN THE PRIOR REQUESTS AND RESTS ON A DIFFERENT PROCEDURAL POSTURE.

4. The Receiver calls this Defendant's "third bite at the apple." Doc. 259 at 1–2. The prior motions did not seek identical relief. The December 2025 motion requested a broader temporary restraint on sale-related activities. The June 2026 Sixth Circuit application sought restrictions reaching marketing, overbid solicitation, and preparatory activity. The present request expressly permits the pursuit and proposed approval of a transaction, while seeking to prevent the materially irreversible act of consummation pending appeal. Doc. 255 ¶¶ 4–5.

5. The Sixth Circuit's July 2 denial must also be read in context. As to the Martha's Vineyard sale-preparation order, it identified the failure to appeal that separate order. As to the expansion of control over Grant Sidney, Inc., it identified the failure to request relief first in this Court, raised jurisdictional concerns, and found the prior showing insufficient on the merits of the expansion issue. Sixth Cir. Dkt. 22-2 at 4–9. Defendant acknowledges those adverse determinations. But the same order observed that Appellants' earlier stay request specifically

disclaimed relief from the portion of the order refusing to wind up the operating-company receivership. *Id*. at 7.

6. The present Motion addresses that winding-up appeal, follows Federal Rule of Appellate Procedure 8(a)(1)(C) by applying first to this Court, and does not seek to halt preparatory sale activities. The October 2 order subsequently confirmed the appellate court's jurisdiction over the winding-up issue. Sixth Cir. Dkt. 37-1 at 3–4.

7. Nor is the Receiver correct that "nothing has changed since June 2." Doc. 259 at 2 n.1. His general intention to sell substantially all assets—and even his consideration of Chapter 11—was disclosed before October. Defendant does not suggest otherwise. Since June, however, the Receiver has asserted affirmative counterclaims against Farm Credit [Doc. 217], reported the results of his Grant Sidney investigation [Doc. 248], and described the current status of the substantially-all-assets negotiations and intended § 363 process [Doc. 253]. Those intervening developments, together with the October 2 appellate ruling, are pertinent to the present request for narrowly confined preservation.

**II. THE RECEIVER HAS NOT ELIMINATED SERIOUS QUESTIONS CONCERNING THE CONTINUED NECESSITY OF THE RECEIVERSHIP.**

8. The Receiver contends that Defendant has made no likelihood-of-success showing. Doc. 259 at 3–4. Defendant recognizes that likelihood of success is critical and that a showing of irreparable injury cannot cure a complete failure on the merits. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991); *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026). Under *Griepentrog*, however, the interrelated factors may support relief upon a showing of at least

serious questions going to the merits when the other equities are sufficiently compelling. 945 F.2d at 153–54.[1]

9. The appellate merits issue is whether the May 26 Order properly concluded, on the record then before the Court, that the extraordinary receivership remedy remained necessary under the governing equitable considerations. This Court originally stated that it would tolerate the receiver "only so long as it is necessary" and that a material change eliminating that necessity could support winding up the receivership. Doc. 32 at 10; see also Doc. 39 ¶ 25. The May 26 Order weighed considerations including insolvency, collateral risk, disputed transactions, the benefits and burdens of continued control, and the availability of less drastic remedies. Doc. 198 at 6–36; *Pension Benefit Guaranty Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015).

10. Defendant acknowledges that the May 26 Order expressly considered and rejected less drastic alternatives based on the record then presented, and that appellate review of receivership administration is for abuse of discretion. Doc. 198 at 32–36; *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009). The question on appeal is not whether the Court considered those factors, but whether the continuation determination correctly applied the forward-looking equitable standard to circumstances materially different from those supporting the original appointment. See *Grand Beach Co. v. Gardner*, 34 F.2d 836, 838 (6th Cir. 1929); Sixth Cir. Dkt. 37-1 at 3–4.

[1] In *Griepentrog* the Court noted that "…To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits. Ohio ex rel. Celebrezze, 812 F.2d at 290 (citing Cuomo v. United States Nuclear Regul. Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Id. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 n. 4. (6th Cir. 1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." DeLorean, 755 F.2d at 1229 (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982)). *Griepentrog,* 945 F.2d at 154–55.

11. The present record illustrates why the Receiver's suggestion that all relevant factual questions are settled is incomplete. His July 7 counterclaim alleges that former CFO Michael Senzaki exercised nearly exclusive control over company reporting, loan compliance, and communications with Farm Credit. Doc. 217 ¶ 9. The Receiver specifically alleges:

> Between July 22, 2022, and August 2, 2023, Mr. Senzaki submitted twenty-eight (28) distribution requests on the credit facility, at a pace equivalent to nearly one every two weeks, totaling nearly $67,000,000. Each request was approved, even though Mr. Senzaki was the sole signee on all of them. Documentary evidence confirms that Farm Credit routinely approved loan requests without requiring the knowledge, consent, or confirmation of Mrs. Weaver, the company's principal decision-maker.
>
> Doc. 217 ¶ 14, PageID 8041.

12. The Court considered Senzaki's conduct in its May 26 Order; Defendant does not portray it as newly discovered. Doc. 198 at 26–27. The subsequent development is the Receiver's own assertion, on behalf of the corporate borrowers, of affirmative allegations that Farm Credit's negligence and gross negligence enabled that conduct. Doc. 217 ¶ 30. Those allegations remain unadjudicated; they nevertheless show that the lender's conduct and the underlying liabilities are contested by the estate's court-appointed fiduciary, not solely by Defendant.

13. The Receiver further reported that his investigation made it unlikely that significant or substantial assets existed within Grant Sidney capable of benefiting the estate, and that permanent receivership control over Grant Sidney was unnecessary. Doc. 248 at 1–2. That report does not establish that the operating companies are solvent or that the May 26 Order was erroneous. It does illustrate a narrowing of concerns underlying the scope of continued control.

14. Defendant does not ask this Court to substitute later developments for evidence available on appeal when reviewing the May 26 Order. They bear on this Court's present equitable task: deciding whether the subject of a properly pending winding-up appeal should remain capable

of meaningful relief while the Sixth Circuit considers the merits. That limited request does not require this Court to prejudge the appeal.

**III. THE RECEIVER'S CURRENT SALE STRATEGY THREATENS EFFECTIVE APPELLATE RELIEF; A FUTURE OPPORTUNITY TO OBJECT IS NOT A SUBSTITUTE FOR PRESERVATION.**

15. The Receiver claims the request is premature because no executed asset purchase agreement exists and any sale would require judicial approval. Doc. 259 at 4–5 & n.3. Yet the Receiver himself reports three interested prospective purchasers, continuing negotiations, an expectation that an agreement is near, and an intention to initiate Chapter 11 proceedings to consummate the substantially-all-assets transaction under 11 U.S.C. § 363. Doc. 253 ¶¶ 1–2, 10. The concern is grounded in the Receiver's announced strategy, not an imagined transaction.

16. The absence of a signed agreement bears upon the Receiver's claimed bond damages; it does not establish that a sale could not advance and close before this appeal is resolved. Defendant seeks no prohibition on execution of a conditional agreement, marketing, diligence, financing, or motions for approval. Doc. 255 ¶ 5. The request concerns consummation or implementation that would materially impair effective relief.

17. The Receiver notes that Defendant could object to a later sale. Doc. 259 at 4–5. Such an objection would present questions concerning the propriety of a particular transaction, whereas Appeal No. 26-5492 concerns the continued necessity of receivership control. Judicial approval of a sale does not itself guarantee preservation of the separate winding-up appeal's practical remedy. Once transferred to a third party, core operating assets may be difficult or impossible to restore to the enterprise even if the appeal succeeds.

18. This Court previously denied a requested stay concerning Martha's Vineyard as moot after that property had been sold. Doc. 235, PageID 8366. A substantially-all-operating-

assets transaction raises a more extensive problem. Where a Chapter 11 sale is proposed, 11 U.S.C. § 363(m) may further limit the effective unwinding of an authorized sale to a good-faith purchaser absent appropriate protective relief, subject to its statutory scope. See *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288 (2023).[2] The separate nonmonetary stewardship interests at stake have a history predating this litigation: Defendant publicly described her plan to devote her Uncle Nearest ownership to the benefit of Nearest Green's descendants in the published afterword to *Love & Whiskey*, "The Lost Chapter" (Ex. A at 4–10). The published afterword is not offered to establish that title has already transferred or that any intended beneficiary presently holds vested ownership rights in the receivership assets.

19. The requested injunction is party-directed, not forum-directed, and does not purport to bind a future bankruptcy court. It asks this Court to supervise its own Receiver consistently with the Court's equitable authority, Federal Rule of Civil Procedure 66, and the process contemplated by Federal Rule of Appellate Procedure 8(a)(1)(C). See *Williamson v. Recovery Ltd. Partnership*, 731 F.3d 608, 626–27 (6th Cir. 2013).

---

[2] In MOAC the court noted as follows in regard to the protections afforded a good faith purchaser: "…(2) The Court identifies nothing in § 363(m)'s limits that purports to "gover[n] a court's adjudicatory capacity." Henderson, 562 U.S. at 435, 131 S.Ct. 1197. The text does not address a court's authority or refer to the jurisdiction of district courts. Instead, the provision takes as a given the exercise of judicial power over any "authorization under subsection (b)" and explicitly contemplates that appellate courts might "revers[e] or modif[y]" any covered authorization, even though a reversal or modification of a covered authorization may not "affect the validity of a sale or lease under such authorization" to a good-faith purchaser or lessee under certain prescribed circumstances. This is not the stuff of which clear statements are made. Rather, this Court has treated similar statutory caveats as "significan[t] evidence of nonjurisdictional status." Reed Elsevier, 559 U.S. at 165, 130 S.Ct. 1237. Given § 363(m)'s clear expectation that courts will exercise jurisdiction over any covered authorization, **its text can be read as merely cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction.** See Scarborough v. Principi, 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed.2d 674. Section 363(m) reads like a "statutory limitation," Arbaugh v. Y & H Corp., 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097, that is tied in some instances to the need for a party to take "certain procedural steps at certain specified times," Henderson, 562 U.S. at 435, 131 S.Ct. 1197. See *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S.Ct. 927, 215 L.Ed.2d 262 (2023), 267


Case 4:25-cv-00038-CEA-CHS Document 261 Filed 10/19/26 Page 7 of 17
PageID #: 8555

## IV. THE RECEIVER'S OWN FIGURES SHOW POSITIVE OPERATING CASH FLOW BEFORE RECEIVERSHIP PROFESSIONAL FEES; THOSE EXISTING COSTS ARE NOT DAMAGES CAUSED BY THIS INJUNCTION.

20. The Receiver asserts that continuing operations required $450,000 in Farm Credit funding during the most recent quarter, and that a further period might cost more. Doc. 259 at 5. His own Fifth Quarterly Report, however, separates operating collections and operating disbursements from the costs of receivership professionals. Its reported net operating cash flow was positive before professional fees. Doc. 253 ¶¶ 13–16.

21. For June 29 through September 27, 2026, the Receiver reports $4,323,685 in operating collections and $3,159,040 in operating disbursements—a positive $1,164,645 in the category he expressly labels "Net Operating Cash Flow." Doc. 253 ¶ 13. His report explains that approximately $818,000 in those collections came from the nonrecurring Martha's Vineyard property sale. Excluding that receipt, operating collections still exceeded ordinary operating disbursements by approximately $346,645 during the quarter. *Id*. ¶¶ 13, 15.

22. The contrast is receivership professional fees: $1,832,736 during the same quarter, against $450,000 provided by Farm Credit. *Id*. ¶¶ 13–16. Over the entire reported receivership period, August 23, 2025 through September 27, 2026, the Receiver identifies $18,502,041 in operating collections against $17,014,900 in operating disbursements, or $1,487,141 of positive net operating cash flow before professional fees. After excluding the approximately $818,000 nonrecurring property-sale collection, that total remains approximately $669,141 positive. The Receiver separately reports $6,145,938 in professional fees and $4,950,000 in Farm Credit funding over that period. *Id*.

23. This cash-flow calculation is not a claim of balance-sheet solvency, accrual-basis profitability, or ability to meet all debt-service obligations; indeed, the Receiver states that the enterprise remains insolvent and continues to experience financial stress. Doc. 253 ¶¶ 27, 31. It

establishes the narrower proposition that the reported ordinary operating cash receipts covered reported ordinary operating cash disbursements, while substantial cash requirements arose from receivership professional services. The $450,000 advance is not, without further analysis, proof that the business required a comparable subsidy merely to meet ordinary operating disbursements.

24. Farm Credit sought and obtained the receivership as an extraordinary equitable remedy to protect its asserted collateral interests. Docs. 3, 32, 39. The original Receivership Order expressly provides that the Receiver and his representatives shall be compensated from Receivership Assets and, if those assets are insufficient, by Farm Credit. Dkt. 39 ¶ 21, PageID 2511. The Receiver's own Fifth Quarterly Report establishes that professional fees totaled $1,832,736 during the most recent quarter and $6,145,938 cumulatively, exceeding Farm Credit's $4,950,000 in total advances during the receivership period. Dkt. 253 ¶¶ 14–16. These substantial professional expenses are costs of administering the receivership Farm Credit requested, not expenses occasioned by Defendant's proposed injunction.

25. Defendant seeks no alteration of the Court's established funding arrangement, no expansion of the Receiver's duties, and no requirement that operations continue at existing spending levels. The requested injunction leaves the Receiver in place and permits continued operations, reductions in expenditures, marketing, negotiations, diligence, and pursuit of judicial approval for a proposed transaction. It restricts only consummation or implementation of an irreversible disposition that would materially impair effective appellate relief. The Receiver has identified no additional professional expense or other financial loss specifically attributable to that limited restriction. The existing costs of administering the receivership cannot, without evidence of such causation, be recast as damages resulting from the injunction.

26. The Receiver cites *Huntington National Bank v. Sheridan Propco LLC*, No. 2:23-cv-11458, 2026 WL 458605, at *13 (E.D. Mich. Feb. 18, 2026). There, the court approved an identified receivership sale supported by a signed purchase agreement, substantial earnest money, due diligence, appraisals, and established carrying expenses. Here, the Receiver has not identified a signed asset purchase agreement for the contemplated core-assets sale. More importantly, Defendant does not ask the Court to refuse sale approval or halt transaction preparation; she requests limited protection against irreversible consummation while an independent appeal remains pending. *Huntington* did not decide that issue. In that case, the court was called upon to decide whether the sale complied with the provisions of public sale contained in § 2001(b) and conducted a best interests analysis. We are far from that process. Unlike the *Huntington* case, there has been no public disclosure, no bidding process that this court has supervised and no opportunity to evaluate any such offer. This case cannot support the Receiver's opposition to the request for injunction.

27. The injunction expressly preserves ordinary administration, preservation of collateral, collection of receivables, appropriate reductions or cessation of operations, marketing, negotiation, diligence, financing, bankruptcy filings, and requests for judicial approval. Doc. 255 ¶ 5. It neither appoints additional professionals nor mandates continued staffing or operating expenses. The Receiver's assertion that the request would stop him from fulfilling his fiduciary duties disregards these express exceptions.

28. Nor does requesting judicial relief from the appointing court violate the Receivership Order's non-disturbance provision. Doc. 39 ¶ 12. Defendant has not undertaken unilateral interference with receivership property; she is invoking the judicial process expressly contemplated for an injunction pending appeal. Fed. R. App. P. 8(a)(1)(C).

## V. THE PUBLIC INTEREST SUPPORTS EFFECTIVE APPELLATE REVIEW AND CONTINUED ORDERLY ADMINISTRATION.

29. The Receiver's public-interest argument treats preservation as a suspension of the receivership. Doc. 259 at 6. Defendant agrees that compliance with judicial orders, estate administration, and creditor protection are legitimate interests. Those considerations coexist with the public interest in the effectiveness of appellate review expressly authorized by 28 U.S.C. § 1292(a)(2). The Receiver's responsibilities can continue while the Court preserves the enterprise against a materially irreversible disposition that would defeat relief on the winding-up appeal.

30. The Receiver himself has recognized that the company and its brand carry social and cultural value beyond the immediate creditor dispute. Doc. 132 ¶ 51. That interest is not newly asserted for litigation: in an afterword published before the receivership, Defendant described a succession and stewardship plan through which the descendants of Nathan "Nearest" Green would benefit from her ownership for generations. Ex. A, Love & Whiskey, "The Lost Chapter," at 4–7, 9–10. The published account demonstrates a longstanding intention, not a legally completed transfer of shares or a judicially established right of the Green family. Defendant does not contend these interests displace creditors' rights. They reinforce why an irreversible enterprise disposition should not render appellate review ineffectual when the Receiver can continue administering the estate and pursuing a transaction during preservation.

## VI. THE COURT MAY GRANT THE LIMITED INJUNCTION WITHOUT ANY MONETARY BOND OR SECURITY.

31. The Receiver requests a minimum $60 million bond for carrying costs, administrative harm, and "potential lost sales." Doc. 259 at 6. He identifies no executed purchase agreement for the contemplated substantially-all-assets sale, enforceable closing deadline, contractual termination consequence, purchaser of that transaction who has withdrawn because of

the injunction requested here, or computation explaining how temporarily restricting consummation would cause $60 million in damages.

32. The Receiver previously reported a signed nonbinding letter of intent dated May 29, 2026, with a definitive asset purchase agreement anticipated within approximately forty-five days. Doc. 201, PageID 7882. In his October 9 report, he acknowledged:

> The party with whom the Receiver signed a non-binding Letter of Intent on May 29, 2026, failed to consummate a transaction prior to the expiration of the exclusivity period. Following the expiration of exclusivity, the Receiver opened discussions with three other parties, all of whom expressed serious interest in purchasing substantially all assets related to the Uncle Nearest whiskey operations. The Receiver and his consultants have spent a substantial amount of time on these potential transactions. Three potential purchasers remain in ongoing discussions with the Receiver. While no asset purchase agreement has been executed, the Receiver feels that he is close to executing an asset purchase agreement.
>
> Doc. 253 ¶ 2.

33. That earlier prospective transaction did not mature into a sale even without the injunction now sought. The October report acknowledges actual buyer interest, which Defendant does not dispute, but identifies no executed replacement agreement. The opposition provides no transaction-specific grounds for attributing a lost sale, much less $60 million, to the limited relief requested.

**A. Sixth Circuit law authorizes complete waiver of monetary security.**

34. The Sixth Circuit has long held that Federal Rule of Civil Procedure 65(c) gives district courts discretion to waive security. Federal Rule of Civil Procedure 62(d), where applicable to an injunction pending appeal, likewise contemplates a bond or other terms securing opposing parties' rights. Defendant principally seeks relief under Federal Rule of Appellate Procedure

8(a)(1)(C), Rule 65, and the Court's continuing equitable authority over its Receiver, as set forth in Doc. 255.

35. In *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995), the Sixth Circuit held:

> While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.
> *Moltan*, 55 F.3d at 1176.

36. The court affirmed an injunction without monetary security. *Id.* This Court has itself exercised that same discretion on multiple occasions. See *Covenant Life International, Inc. v. City of Norris*, No. 3:23-cv-334, Doc. 46 at 35–36 (E.D. Tenn. May 1, 2024); *Tennessee v. U.S. Department of Education*, No. 3:21-cv-308, Doc. 86 at 46–47 (E.D. Tenn. July 15, 2022).

**B. The Receiver has supplied no particularized evidence of injunction-caused damages.**

37. The Sixth Circuit requires meaningful scrutiny of financial exposure asserted in support of substantial security. In *Division No. 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.*, 844 F.2d 1218, 1226 (6th Cir. 1988), the court instructed:

> In such cases, the district court must carefully scrutinize the record to assure itself that the enjoined party's alleged financial peril is grounded in fact, not mere speculation, and that the resulting bond will not defeat the plaintiff's right to injunctive relief.
> *Division No. 1*, 844 F.2d at 1226.

38. The court vacated a substantial bond after finding the asserted financial exposure insufficiently supported, including by available records that had not been produced. *Id.* at 1228–29. Although that decision arose under the Railway Labor Act, its scrutiny of speculative damages and the evidentiary basis for security is consistent with the circuit's general injunction jurisprudence. See also *Static Control Components, Inc. v. Lexmark International, Inc.*, 697 F.3d

387, 400–01 (6th Cir. 2012) (recognizing discretion to evaluate and discount inadequately supported damage projections).

39. Most directly, the Sixth Circuit affirmed a ruling requiring no bond in *Appalachian Regional Healthcare, Inc. v. Coventry Health & Life Insurance Co.*, 714 F.3d 424, 432 (6th Cir. 2013):

> Presented with no estimate of Coventry's potential damages to rebut Appalachian's argument that it was entitled to more money during this period, the court concluded that "little, if any" harm was shown, and denied the bond motion. Given these circumstances, the district court did not abuse its discretion.

*Appalachian*, 714 F.3d at 432.

40. The court recognized that a party seeking security need not invariably furnish a damages estimate, but the absence of meaningful evidence of potential injury supported waiver. *Id*. at 431–32. The Receiver here has stated a figure, but has not demonstrated how the narrowly tailored injunction would cause losses approaching that amount. The Supreme Court has long recognized, in the exercise of traditional equitable authority, that courts possess discretion to mitigate or dispense with injunction security conditions when their imposition would be inequitable or oppressive, absent contrary controlling law. *Russell v. Farley*, 105 U.S. 433, 441–42 (1881). Although Russell predates Rule 65(c), its equitable reasoning reinforces the discretion expressly recognized by the Sixth Circuit in *Moltan*. A $60 million security requirement unsupported by demonstrated injunction-caused damages would impose precisely the kind of oppressive condition that equitable discretion is intended to prevent. Defendant's accompanying Declaration further establishes that this is not an abstract concern. Having already liquidated substantial personal assets to fund this litigation, Defendant lacks the readily available liquidity

and unencumbered assets necessary to provide monetary security without effectively foreclosing the requested relief. Weaver Decl. ¶¶ 25–31, 43–44 (Ex. B).

41. The Receiver's reliance on *Tri-County Wholesale Distributors, Inc. v. Labatt USA Operating Co.*, 311 F.R.D. 166, 174–77 (S.D. Ohio 2015), is misplaced as support for mandatory security. That court granted a stay pending appeal despite an earlier adverse assessment of the movants' likelihood of success, and calculated a bond using identified historical profits, a projected percentage impact, and the anticipated appellate duration. Here, the Receiver's own Fifth Quarterly Report reports depressed sales and predicts further sales declines while the company remains in receivership. Doc. 253 ¶ 28. Yet he identifies no executed core-assets sale agreement, enforceable closing deadline, or calculation attributing any particular lost proceeds or incremental costs to temporary restraint on consummation. Unlike the record in *Tri-County*, there is no particularized basis for calculating the demanded $60 million security.

**C. Neither the underlying debt nor existing receivership fees automatically measure injury from this restraint.**

42. In *Roth*, the Sixth Circuit rejected the proposition that an injunction bond must equal the full value of promissory notes, because an eventual loss on the merits would not prove that delay caused by the injunction prevented collection. 583 F.2d at 539. The Supreme Court likewise distinguished the underlying debt from losses caused by an injunction in *Bein v. Heath*, 53 U.S. 168, 179 (1852). Although *Bein* predates the Federal Rules, its causation distinction is instructive.

43. The Receiver's cash report reinforces the distinction. Positive net operating cash flow before receivership professional fees, including positive adjusted operating cash flow after removing the nonrecurring Martha's Vineyard sale receipts, is reflected in the Receiver's own figures. Doc. 253 ¶¶ 13–16. Farm Credit requested the receivership whose professional

administration generated the substantial fees separately reported. Those preexisting expenses are not, without evidence tying them to the requested restraint, damages caused by allowing the appeal to proceed without an irreversible closing.

44. The Receiver identifies no executed core-assets agreement, no contractual closing obligation, no withdrawal from that transaction attributable to this injunction, and no calculation of demonstrable incremental injury. Accordingly, the requested minimum $60 million security is unsupported. Defendant requests that the Court exercise its discretion to issue the narrow preservation injunction without requiring any monetary bond or other monetary security.

## CONCLUSION

For the foregoing reasons, Defendant Fawn Weaver respectfully requests that the Court grant her Motion for Injunction Pending Appeal [Doc. 255] and, pending disposition of Appeal No. 26-5492 or further order, prohibit the Receiver, Farm Credit, and persons properly bound under Federal Rule of Civil Procedure 65(d)(2) from consummating or implementing a sale of substantially all core operating assets or another materially irreversible nonordinary-course disposition that would impair effective appellate relief.

Defendant requests that the Court expressly preserve the Receiver's ability to continue ordinary administration, preservation and maintenance of estate assets, reasonable reductions or cessation of operations, ordinary-course transactions, marketing, negotiations, diligence, financing efforts, bankruptcy filings, and applications for judicial approval, consistently with the exceptions already specified in Doc. 255. Defendant further requests that the injunction issue without any monetary bond or other monetary security and that the Court grant such other and further relief as it deems just and appropriate.

RESPECTFULLY SUBMITTED,

**JOHNSON & JOHNSON, P.C.**

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr. (TN BPR No. 015518)
Florence M. Johnson (TN BPR No. 015499)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
Telephone: (901) 725-7520
cjohnson@johnsonandjohnsonattys.com
fjohnson@johnsonandjohnsonattys.com

*Counsel for Defendant Fawn Weaver*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and served upon all counsel of record.

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr.