**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA,<br><br>Plaintiff,<br><br>**v.**<br><br>UNCLE NEAREST, INC., et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-38<br>**Judge Atchley**<br>**Magistrate Judge Steger** |

# DEFENDANT FAWN WEAVER'S REPLY TO FARM CREDIT MID-AMERICA, PCA'S RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL

Defendant Fawn Weaver ("Defendant"), through counsel, respectfully submits this Reply to Farm Credit Mid-America, PCA's ("Farm Credit") Response [Doc. 260] opposing Defendant's Motion for Preliminary Injunction Pending Appeal [Doc. 255].

## INTRODUCTION

1. Farm Credit's opposition rests on three propositions the record does not establish: that the Sixth Circuit has already rejected the merits of Defendant's pending winding-up appeal; that litigation has demonstrably impaired the receivership estate's ability to sell assets; and that temporarily restricting an irreversible disposition would impose $60 million in compensable losses upon Farm Credit. None provides a sufficient basis to deny the limited preservation relief requested.

2. Farm Credit also characterizes the requested injunction as a prohibition on the Receiver's efforts to sell substantially all of Uncle Nearest's operating assets. That characterization

disregards the Motion's express limitations. Defendant seeks no interruption of marketing, negotiations, diligence, financing, bankruptcy filings, or applications for judicial approval. She requests only that consummation or implementation of a materially irreversible disposition be restrained while the Sixth Circuit considers whether the receivership should continue. Doc. 255 ¶¶ 4–5.

3. Farm Credit additionally emphasizes Defendant's request for a ruling by noon on October 16, 2026, one day after the Motion was filed. Doc. 260 ¶ 1. That date was inadvertently retained from an earlier draft prepared under a different filing schedule, which contemplated allowing the Court approximately seven days to consider the Motion. Defendant regrets the oversight and does not press that expired deadline. Defendant acknowledges the expedited briefing schedule established by this Court in Doc. 258 and respectfully requests a ruling following completion of that briefing or as the Court otherwise deems appropriate. The underlying request for prompt consideration remains grounded in the Receiver's reported progress toward a substantially-all-assets transaction and the risk that consummation could materially impair effective appellate relief. Doc. 253 ¶¶ 1–2, 10.

## I. FARM CREDIT'S OWN CITED AUTHORITIES REQUIRE AN INDIVIDUALIZED ASSESSMENT OF THE ACTUAL WINDING-UP APPEAL, NOT RELIANCE ON AN EARLIER DENIAL OF DIFFERENT RELIEF.

4. Farm Credit asserts that the Sixth Circuit has already determined Defendant is unlikely to succeed on appeal. Doc. 260 ¶¶ 2, 8–9. **The July 2, 2026 Order it cites addressed an entirely different request for relief.** The earlier application sought restrictions involving the Martha's Vineyard sale-preparation order and the expansion of receivership control to Grant Sidney, Inc. The Sixth Circuit identified procedural and jurisdictional obstacles and found the showing insufficient to stay the challenged expansion. Sixth Cir. Dkt. 22-2 at 4–9.

5. Significantly, the same order expressly recognized that the earlier stay application disclaimed relief from the portion of the May 26 Order refusing to wind up the operating-company receivership. *Id.* at 7. **Farm Credit therefore cannot transform that earlier determination concerning different requested relief into a decision rejecting the merits of the winding-up appeal.**

6. The Sixth Circuit's subsequent October 2 Order confirmed the distinction. It rejected the Receiver's jurisdictional challenge and explained that the appeal concerns the present necessity of continuing receivership administration, rather than the propriety of the original appointment. Sixth Cir. Dkt. 37-1 at 3–4. Defendant does not suggest that this jurisdictional ruling establishes likely success. It establishes that the properly pending winding-up appeal presents a distinct question that the earlier stay denial did not even attempt to resolve.

7. Farm Credit's characterization of the governing injunction standard overlooks the full reasoning of the authorities it selected. Farm Credit cites *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026), both for the requirement of a clear showing of entitlement and for the proposition that a complete absence of likelihood of success is fatal. Doc. 260 ¶¶ 7, 9 nn. 20, 33. But **the same published Sixth Circuit opinion expressly reaffirms that the injunction factors are ordinarily assessed through a sliding-scale inquiry, not as four independently demanding prerequisites.** Chief Judge Sutton explained:

> The necessary showing for any one factor turns on the strength of the plaintiff's showings for the other factors.
>
> *PCC Airfoils*, 176 F.4th at 513.

The court reversed a denial of preliminary relief because the district court had imposed a clear-and-convincing-evidence requirement on each factor instead of evaluating the factors together. *Id.* at 512–14. The court also identified important limits to that flexibility: an applicant

with no likelihood of success or no demonstrated risk of irreparable injury cannot obtain relief through favorable showings on other factors. *Id.* at 513. Defendant accepts those limits. But Farm Credit cannot establish that the winding-up appeal has no likelihood of success by relying on a prior ruling that did not address the relief now sought.

8. Another decision Farm Credit invokes repeatedly supplies an even more directly applicable explanation. Farm Credit cites *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991), for the balancing framework, the movant's evidentiary burden, and the minimum requirement of serious questions going to the merits. Doc. 260 ¶¶ 7–8, 10–11 nn. 23–24, 31, 35, 37. Yet *Griepentrog* expressly states:

> To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits.
> *Id.* at 153.

A sufficiently substantial showing of irreparable harm may affect the required strength of the merits showing, provided the applicant demonstrates, at minimum, serious questions going to the merits. *Id.* at 153–54. The Sixth Circuit applied that framework and granted a stay pending appeal. *Id.* at 155–56. Farm Credit's reliance on the decision's limitations does not erase the equitable framework the decision establishes.

9. The same principle appears in *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982), an authority incorporated through *D.T. v. Sumner County Schools*, which Farm Credit also cites at Doc. 260 ¶ 10 n. 34. *Friendship Materials* recognizes that serious questions going to the merits, accompanied by irreparable harm that decidedly outweighs the opposing party's potential harm, may support preliminary equitable relief even without a strong probability of ultimate success. *Id.* at 105. The opinion simultaneously makes clear that irreparable injury cannot be dispensed with; indeed, it vacated the injunction before it because the district

court failed to make the necessary findings. *Id.* Defendant does not suggest that balancing replaces either a genuine merits showing or proof of irreparable harm. Rather, Farm Credit's cited authorities require consideration of both instead of treating the July 2 denial as conclusive.

10. The Supreme Court authority Farm Credit invokes similarly supports individualized consideration of the actual request and circumstances. In identifying the traditional stay factors, Farm Credit cites *Nken v. Holder*, 556 U.S. 418 (2009), which in turn relies on *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Doc. 260 ¶ 7 n. 21. Although *Hilton* arose in the habeas context, its general articulation of the traditional stay factors informs the analysis here. Farm Credit asks this Court to rely instead on an earlier assessment of a materially different application without confronting the present winding-up question or the current consequences of an irreversible disposition.

11. The substantive merits question is not whether the Sixth Circuit has jurisdiction; it is whether the May 26 Order permissibly concluded, on the record then before the Court, that continued receivership control remained necessary under the applicable forward-looking equitable standard. This Court expressly recognized that the Weavers sought termination based on changed circumstances and evaluated that request under Paragraph 25 of the Receivership Order. Doc. 198 at 5–7; Doc. 39 ¶ 25. The May 26 Order considered insolvency, collateral risk, disputed transactions, less drastic remedies, and the benefits and burdens of continued control. Doc. 198 at 6–36. Defendant acknowledges those findings, including those unfavorable to her position. The appeal presents serious questions concerning the application of those considerations to continued receivership administration: whether the identified risk to collateral justified maintaining the full scope of receivership control notwithstanding the Court's acknowledgment that the identified $20 million had flowed back to Uncle Nearest; whether less drastic safeguards could adequately protect

the disputed collateral; and whether the benefits attributed to continued control outweighed the documented contraction in sales and other burdens under the forward-looking standard. Doc. 198 at 31–35. The question is whether the Court's resolution of those issues was within its equitable discretion, not whether this Court failed to discuss them.

12. Subsequent developments are relevant to the present preservation request but should not be confused with evidence available when the May 26 Order was entered. The Receiver's later counterclaim against Farm Credit alleges that former CFO Michael Senzaki exercised nearly exclusive control over financial reporting, loan compliance, and lender communications, and that Farm Credit negligently enabled aspects of his conduct. Doc. 217 ¶¶ 9, 14, 30. Those allegations remain unadjudicated and do not retroactively establish error in the May 26 Order. They do, however, demonstrate that the estate's fiduciary now affirmatively contests aspects of the lender's conduct and underlying financial relationship. Defendant's separate reply to the Receiver addresses those developments in further detail. The immediate issue here remains whether effective relief on the properly pending winding-up appeal should be preserved while the Sixth Circuit evaluates the May 26 determination.

## II. THE PROCEDURAL HISTORY AND RECEIVER'S OWN REPRESENTATIONS EXPLAIN WHY DEFENDANT SOUGHT PRESERVATION RELIEF IN OCTOBER.

13. Farm Credit emphasizes the Receiver's earlier quarterly reports to establish that a sale has long been contemplated. Doc. 260 ¶ 1. Defendant does not dispute that history. The Receiver's own representations to this Court, however, establish that he originally pursued two alternatives—refinancing the company's debt or selling its assets. His Second Quarterly Report expressly identified both approaches, and he subsequently confirmed under oath that the refinancing and sale efforts proceeded simultaneously. Doc. 132 ¶¶ 14, 52; Doc. 144, Tr. 90:1–12. Although the Receiver later reported that his refinancing efforts had not produced an interested

lender, his contemporaneous representations establish that an outright sale was not the only resolution he initially pursued. The relevant question is not whether a sale was previously contemplated, but whether its impending consummation would materially impair effective relief in the pending winding-up appeal.

14. The timing of Defendant's Motion reflects significant intervening procedural developments and a more concrete threat to effective appellate relief, not a belated objection to the Receiver's longstanding marketing efforts. Following the May 26 Order, Appellants filed their notice of appeal the very next day, May 27, and sought emergency interim relief before the Sixth Circuit on June 2. Doc. 200; Sixth Cir. Dkt. 5. On July 2, the Sixth Circuit identified procedural and jurisdictional obstacles concerning the particular relief then requested. Sixth Cir. Dkt. 22-2 at 4–9. The Sixth Circuit subsequently ordered mediation, and that process—between the court-appointed mediator, counsel for Farm Credit, and counsel for the Weavers—had already begun when, on August 5, the Receiver moved to dismiss the appeal altogether, placing mediation on pause while the threshold jurisdictional challenge was addressed. Sixth Cir. Dkt. 28-1. That challenge remained unresolved until October 2, when the Sixth Circuit denied dismissal and confirmed that the pending appeal presents a distinct, forward-looking question concerning the continued necessity of the receivership. Sixth Cir. Dkt. 37-1 at 3–4. **This chronology demonstrates that Appellants actively pursued appellate relief throughout the intervening period, rather than waiting until October to raise concerns about an irreversible disposition.**

15. Just seven days later, the Receiver reported that he was close to executing an asset purchase agreement with one of three interested purchasers and intended to initiate Chapter 11 proceedings to consummate a substantially-all-assets sale. Doc. 253 ¶¶ 1–2, 10. Defendant filed the present Motion in this Court six days later, seeking relief under Federal Rule of Appellate

Procedure 8(a)(1)(C). This sequence explains why Defendant sought the present, narrowly tailored preservation relief in October. Defendant does not contend that the October 2 jurisdictional ruling legally prohibited an earlier application; rather, it resolved a substantial procedural uncertainty before the Receiver's October 9 report made the threatened irreversible disposition more concrete.

16. Farm Credit's own opposition also relies on the Receiver's reported progress toward a transaction. Although it characterizes his statements concerning an approaching agreement as "not concrete" and the present Motion as "premature," it later affirmatively states that "[t]he Receiver is now close to a transaction with one of three interested buyers" to support its argument that postponing consummation would harm the estate. Doc. 260 ¶¶ 11–12, 15. That statement does not establish a closing date, but the reported proximity of a transaction is relevant to Defendant's request to preserve effective appellate relief, not solely to Farm Credit's opposition to that request. The longstanding existence of a sale plan does not, by itself, answer whether the present circumstances warrant preservation relief.

## III. THE AUTHORITIES FARM CREDIT INVOKES RECOGNIZE THE IMPORTANCE OF PRESERVING EFFECTIVE APPELLATE RELIEF BEFORE IRREVERSIBLE ACTION OCCURS.

17. Farm Credit cites *Nken v. Holder*, 556 U.S. 418, 434 (2009), for the importance of likelihood of success and irreparable injury. Doc. 260 ¶ 7 nn. 21–22. Defendant agrees those factors are critical. But the same opinion explains why interim appellate relief exists. Addressing the time required for meaningful judicial review, the Supreme Court observed:

> The choice for a reviewing court should not be between justice on the fly or participation in what may be an "idle ceremony."
>
> *Id.* at 427 (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942)).

Although *Nken* concerned a stay rather than the particular injunction requested here, its explanation of the need to preserve effective appellate review is instructive. *Nken* also

distinguished circumstances in which effective relief remains available after the challenged action takes place. 556 U.S. at 435. Here, the contemplated transfer of substantially all core operating assets may leave no practicable means to restore the enterprise if the winding-up appeal succeeds, even though the appeal itself could continue.

18. The risk is not merely theoretical. This Court previously denied Defendant's request to stay the Martha's Vineyard sale as moot because the property had already been sold. Doc. 235, PageID 8366. Defendant does not contend that this determination renders every post-sale appeal moot. It establishes that consummation can eliminate the practical availability of transaction-specific preservation relief. The proposed disposition of substantially all operating assets raises a materially broader risk, including potential limitations on unwinding a bankruptcy sale to a good-faith purchaser under 11 U.S.C. § 363(m), depending on the circumstances of any future order and transaction.

19. Farm Credit argues that Defendant may later object to a sale in bankruptcy court. Doc. 260 ¶ 13. But notice and an opportunity to object to a particular transaction do not necessarily preserve the distinct relief sought in an appeal concerning the continued necessity of receivership control. The present Motion does not seek to enjoin, direct, or review any future bankruptcy court. It asks this Court to restrain specified conduct by parties presently before it while permitting bankruptcy filings, negotiations, diligence, and applications for approval to proceed. Doc. 255 ¶¶ 4–5. Whether a future sale is authorized is a separate question from whether consummation before disposition of the winding-up appeal would materially impair effective appellate relief.

## IV. FARM CREDIT'S MARTHA'S VINEYARD EXAMPLE DOES NOT ESTABLISH THE ECONOMIC HARM IT ASKS THE COURT TO INFER.

20. Farm Credit invokes the Martha's Vineyard transaction as evidence that litigation and delay drive purchasers away. Doc. 260 ¶ 15. It quotes the Receiver's explanation for the

original purchasers' withdrawal but omits the remainder of the same paragraph. The Receiver reported that the original purchasers canceled their contract on July 2, 2026. Four days later, on July 6, he executed a replacement contract with an arm's-length third-party purchaser for the identical court-approved price of $2,595,000, structured as a cash sale. Doc. 223 ¶ 3. The property was subsequently sold. Doc. 235, PageID 8366.

21. The Court's June 15 sale-approval order adds another important fact: before the original contract was canceled, the Receiver had disclosed two backup purchase offers, each for $2,595,000. Doc. 212, PageID 7908. Defendant does not suggest that the replacement purchaser necessarily was one of those backup offerors. Nor does she dispute that the Receiver attributed the original withdrawal to delay and litigation. The complete record nevertheless shows that an alternative buyer entered into a contract four days later at the same gross price. Notably, the Receiver has similarly reported multiple interested purchasers for the proposed sale of Uncle Nearest's operating enterprise, identifying three prospective buyers with whom discussions remain ongoing. Doc. 253 ¶¶ 1–2. Although expressions of interest are not equivalent to the backup offers documented in the Martha's Vineyard transaction, the presence of multiple prospective purchasers is relevant to Farm Credit's prediction that a narrowly tailored injunction would necessarily discourage buyers, frustrate the sale process, or depress the ultimate price. The Martha's Vineyard experience demonstrates that withdrawal of one purchaser does not necessarily eliminate alternative purchasers or reduce the agreed sale price. Farm Credit identifies no decrease in the Martha's Vineyard purchase price attributable to the change in purchasers and no transaction-specific evidence that temporary preservation of Uncle Nearest's operating assets would cause the three prospective purchasers to withdraw or seek materially lower purchase prices.

22. Defendant does not seek to revisit this Court's decision approving the Martha's Vineyard sale. That property served a marketing and brand-building function, but it did not itself constitute Uncle Nearest's operating enterprise. This Court considered the property's geographic separation from the company's principal operations, the absence of direct operating revenue, ongoing property expenses, and the proposed transaction before determining that sale served the estate's interests. Doc. 212, PageID 7910–11. Defendant respects that ruling. **The proposed transaction now at issue is fundamentally different: it concerns substantially all of the core operating assets of Uncle Nearest itself.** The relevant inquiry concerns the consequences of disposing of the enterprise before the winding-up appeal can be resolved, rather than the propriety of selling an ancillary property.

23. The complete Martha's Vineyard record does not establish that temporary preservation of the operating enterprise would prevent an eventual sale, cause a measurable reduction in its price, or produce damages approaching Farm Credit's proposed $60 million security. A purchaser withdrew; another contracted four days later for the same amount; and the sale ultimately proceeded. That record supports examining actual transaction-specific consequences rather than presuming that every asserted cost of litigation or delay results from the particular injunction now sought.

## V. FARM CREDIT'S OWN BOND AUTHORITY REQUIRES A DEMONSTRABLE RELATIONSHIP BETWEEN SECURITY AND LOSSES CAUSED BY THE RESTRAINT.

24. Farm Credit demands a $60 million bond while identifying existing receivership expenses, previously advanced funding, contemplated debtor-in-possession financing, and potential transaction losses. Doc. 260 ¶ 18. Those categories do not, without more, establish damages caused by the proposed injunction. The Receiver's administration and its associated costs

predate the requested restraint. The original Receivership Order already addresses compensation of the Receiver and his representatives, including Farm Credit's responsibility where estate assets are insufficient. Doc. 39 ¶ 21, PageID 2511. Defendant does not seek to prohibit a bankruptcy filing or require the Receiver to operate at current expense levels. The relevant bond inquiry must distinguish existing obligations from financial injury attributable to temporarily preventing consummation of a materially irreversible sale.

25. The security inquiry requires an assessment of the financial consequences attributable to the requested restraint. Fed. R. Civ. P. 65(c). In *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), the Sixth Circuit questioned whether delay occasioned by an injunction would impair the bank's ability to collect, even assuming the plaintiffs ultimately failed on the merits, and left the assessment of resulting inconvenience and monetary loss to the district court. The court required an express exercise of Rule 65(c) discretion, not security in any prescribed amount. *Id*. Here, the relevant question is whether, and to what extent, the requested restraint would cause additional expenses, diminish recoveries, or produce other compensable losses beyond those that would arise without it. Identifying existing financial exposure does not, without that causal assessment, establish the need for $60 million in security. Defendant requests an express, reasoned exercise of the Court's discretion and, for the reasons below, complete waiver of monetary security, including any nominal bond.

26. **Farm Credit's own cited authority illustrates the deficiency in its $60 million demand.** Farm Credit relies on *Tri-County Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 174, 177 (S.D. Ohio 2015), to support requiring a bond. Doc. 260 ¶ 18 n. 54. But the court in *Tri-County* did not select an amount by reference to the overall value of the

disputed distribution rights or the underlying business controversy. Instead, it expressly identified the appropriate measure:

> The appropriate measure of the bond, therefore, is any projected damages brought about by the delay of the transfer of the brands, including interest on those damages.
> *Tri-County*, 311 F.R.D. at 175–76.

The court then applied a specified percentage to historical annual profits, used an estimated appellate duration, and included interest. *Id.* at 176. The decision therefore supports evaluating a bond through evidence of anticipated delay-related losses, not substituting a large, unexplained amount for that analysis.

27. *Tri-County*, the authority Farm Credit cites at Doc. 260 ¶ 18 n. 54, also involved a materially different procedural and financial posture. The court was addressing a stay of a judgment it considered monetary in substance, with an identified business-rights valuation and evidence from which to estimate the financial consequences of delay. *Id.* at 174–76. Here, no executed core-assets purchase agreement, enforceable closing deadline, contractual termination consequence, or quantified reduction in expected proceeds has been identified as resulting from the requested injunction. Farm Credit offers no methodology connecting $60 million to incremental losses caused by postponing consummation while permitting the Receiver's other transaction-related activities to continue. Nor does *Tri-County*'s decision to require a bond under its circumstances establish that waiver is unavailable under Rule 65(c) here.

28. **Binding Sixth Circuit precedent recognizes that the Court may waive monetary security entirely.** *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (affirming complete waiver under Rule 65(c)). This Court has itself exercised that discretion in injunction proceedings. See *Covenant Life International, Inc. v. City of Norris*, No. 3:23-cv-334, Doc. 46 at 35–36 (E.D. Tenn. May 1, 2024); *Tennessee v. U.S. Department of*

*Education*, No. 3:21-cv-308, Doc. 86 at 46–47 (E.D. Tenn. July 15, 2022). Although those cases arose in different factual settings, they confirm the availability of an express waiver. The Sixth Circuit has affirmed waiver where prospective damages were insufficiently substantiated. *Appalachian Regional Healthcare, Inc. v. Coventry Health & Life Insurance Co.*, 714 F.3d 424, 431–32 (6th Cir. 2013). It has cautioned that claims of substantial financial peril require careful evidentiary scrutiny and that a bond should not effectively defeat warranted relief on speculative grounds. *Division No. 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.*, 844 F.2d 1218, 1226–29 (6th Cir. 1988) (Railway Labor Act context). Defendant does not contend that all operating or professional expenses are categorically unrecoverable as injunction-related losses; rather, the proposed $60 million demand lacks a demonstrated causal basis. Defendant's accompanying Supplemental Declaration, made under penalty of perjury, establishes that she cannot post monetary security, even in a nominal amount, without impairing essential obligations and continued legal representation. Weaver Decl. ¶¶ 25–31, 39–40. Her separate reply to the Receiver's opposition [Doc. 259] addresses these bond authorities in greater detail. Defendant accordingly requests an express waiver of all monetary security.

## VI. THE PUBLIC INTEREST AND EQUITIES EXTEND BEYOND ONE PARTY'S FINANCIAL OBJECTIVE.

29. Farm Credit argues that the public interest favors efficient administration and prompt realization of receivership assets. Doc. 260 ¶¶ 16–17. Defendant agrees that lawful creditor recovery, collateral preservation, and responsible administration are important interests. But Farm Credit's argument centers on recovery of its own asserted debt, which has not been finally adjudicated in this action. **Defendant's concern is broader: preserving a lawful and equitable process that accounts for all affected stakeholders, including secured and unsecured creditors, employees, vendors, shareholders, and the wider community connected to Uncle**

**Nearest.** Those interests are not identical and remain subject to applicable legal priorities. Nevertheless, the preference of one secured creditor cannot, by itself, define the entire public-interest inquiry.

30. The Receiver himself recognized that Uncle Nearest's value is not limited to immediate collateral recovery. His Second Quarterly Report acknowledged the brand's significant social and cultural value and warned of the potential loss of nearly seventy jobs if operations ceased. Doc. 132 ¶ 51. These interests do not supersede secured creditors' lawful priorities. They are nevertheless relevant to the consequences of permitting a potentially irreversible disposition of a functioning business before appellate review of the continued necessity of the receivership is complete.

31. Farm Credit's own cited authority provides a useful illustration of the broader consequences of transferring operating business rights while appellate review remains pending. In *Tri-County*, cited by Farm Credit at Doc. 260 ¶ 18 n. 54, the court granted a stay after considering the potential disruption to smaller businesses, including workforce reductions and the difficulty of recovering operational continuity even if the businesses ultimately succeeded on appeal. 311 F.R.D. at 177. The court weighed those consequences against the asserted financial burdens of delay. *Id.* The court recognized that returning the distribution rights after a successful appeal might not undo the intervening disruption to the distributors' businesses. *Id.* at 177. That practical concern is directly relevant here, where the contemplated disposition involves substantially all of Uncle Nearest's core operating assets.

32. The public interest also encompasses effective judicial review. Congress authorized appellate review of qualifying orders refusing to wind up receiverships under 28 U.S.C. § 1292(a)(2), and the Sixth Circuit has confirmed that the pending appeal presents that distinct

question. Sixth Cir. Dkt. 37-1 at 3–4. As explained above, Farm Credit cites *Nken v. Holder*, 556 U.S. 418 (2009), which relies on *Hilton v. Braunskill*, 481 U.S. 770 (1987), for the traditional stay factors. Doc. 260 ¶ 7 n. 21. In *Hilton*, the Supreme Court explained:

> Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules.
>
> *Hilton*, 481 U.S. at 777.

That instruction is particularly relevant where a proposed disposition implicates the asserted rights of a secured lender, the interests of other creditors and stakeholders, and the practical effectiveness of a pending appeal. The Court may preserve the possibility of meaningful appellate relief while permitting ordinary administration, expense reductions, marketing, negotiations, financing, bankruptcy filings, and applications for judicial approval to continue. Doc. 255 ¶ 5.

33. Ultimately, the competing consequences are not equivalent. Temporary preservation may impose economic costs, which should be evaluated on evidence and remain subject to appropriate judicial reconsideration. By contrast, consummating a substantially-all-assets sale before the Sixth Circuit resolves the winding-up appeal may eliminate the practical ability to restore the operating enterprise or implement a different receivership disposition if appellate relief is granted. Defendant does not seek a guaranteed business outcome, preferential treatment of equity over creditors, or an indefinite prohibition on a sale. She seeks to preserve the possibility of effective appellate relief while allowing the Court to continue supervising lawful administration and protecting all legally cognizable interests. **The public interest favors protecting creditor rights without allowing a materially irreversible disposition to defeat the practical value of appellate review before that review can occur.**

## CONCLUSION

For the foregoing reasons, Defendant Fawn Weaver respectfully requests that the Court grant her Motion for Preliminary Injunction Pending Appeal [Doc. 255] and, pending disposition of Appeal No. 26-5492 or further order, prohibit Receiver Phillip Gary Young, Jr., Farm Credit, and persons properly bound under Federal Rule of Civil Procedure 65(d)(2) from causing, consenting to, consummating, or implementing a sale, transfer, or other disposition of substantially all assets of Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC, or another materially irreversible nonordinary-course disposition that would materially impair effective appellate relief.

Defendant requests that the injunction remain party-directed rather than forum-directed and preserve the activities expressly excluded from the requested restraint in Doc. 255 ¶ 5, including ordinary administration, preservation and maintenance of estate assets, appropriate reductions or cessation of operations, marketing, negotiations, diligence, financing, bankruptcy filings, and applications for judicial approval. Defendant further requests complete waiver of any monetary bond or monetary security, based on the evidence and the Court's express exercise of discretion under Rule 65(c).

RESPECTFULLY SUBMITTED,

**JOHNSON & JOHNSON, P.C.**

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr. (TN BPR No. 015518)
Florence M. Johnson (TN BPR No. 015499)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
Telephone: (901) 725-7520
cjohnson@johnsonandjohnsonattys.com
fjohnson@johnsonandjohnsonattys.com

*Counsel for Defendant Fawn Weaver*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and served upon all counsel of record.

/s/ Curtis D. Johnson, Jr.
Curtis D. Johnson, Jr.