# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 4:25-cv-38 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| UNCLE NEAREST, INC., *et al.*, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM & ORDER

Before the Court is Fawn Weaver's Motion For a Preliminary Injunction Pending Appeal [Doc. 255]. In her motion, Fawn Weaver ("Defendant") asks the Court to enjoin Philip G. Young, Jr., Farm Credit Mid-America, PCA, and any other people or entities from selling, transferring, or otherwise disposing of substantially all the assets of Uncle Nearest, Inc., Nearest Green Distillery, Inc., or Uncle Nearest Real Estate Holdings, LLC (collectively, "Uncle Nearest"). As the Court explains below, Defendant is unable to prevail on any of the factors relevant to issuing a preliminary injunction. Therefore, Defendant's motion [Doc. 255] is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this breach of contract action, Farm Credit Mid-America, PCA ("Plaintiff") alleges that Uncle Nearest, Defendant, and Keith Weaver breached a July 22, 2022, Credit Agreement and associated loan documents. [*See generally* Doc. 1]. Plaintiff moved for the appointment of a receiver to oversee the business activities of Uncle Nearest during the pendency of these proceedings. [Doc. 3]. After a hearing, the Court determined that Uncle Nearest was in default under the July 22, 2022, Credit Agreement and found it necessary to appoint a receiver to protect Plaintiff's interest in Uncle Nearest. [Doc. 32]. After soliciting input from the parties, the Court

appointed Philip G. Young, Jr., of Thompson Burton, PLLC ("Receiver") to oversee the receivership in August 2025. [Doc. 39, at 1].

In September 2025, Receiver filed a motion to expand the receivership to encompass other entities associated with Uncle Nearest, Keith Weaver, and/or Defendant. [Doc. 41]. While the Court considered Receiver's motion, Defendant moved the Court to reconsider its appointment of Receiver. [Doc. 91]. On May 26, 2026, the Court issued a 62-page order (the "May 26 Order") denying Defendant's motion and granting in part Receiver's motion. [Doc. 198]. The May 26 Order discussed whether circumstances had changed since Receiver's appointment such that his services were no longer justified. [*Id.* at 5–47]. In that discussion, the Court found that: (1) Uncle Nearest was insolvent, (2) it was unclear whether there was adequate security for Plaintiff's loans; (3) it was unclear whether there was an adequate legal remedy to vindicate Plaintiff's interest in those loans; (4) Uncle Nearest previously engaged in fraudulent conduct, (5) without the receivership, Plaintiff's collateral was at risk of injury or concealment; (6) less drastic equitable remedies would be insufficient to protect Plaintiff's interests; (7) the Receiver had to date done more good than harm; and (8) Receiver and Plaintiff had not come before the Court with unclean hands. [*Id.*]. Consequently, the Court denied Defendant's motion and kept Receiver's appointment intact. [*Id.*]. The Court also expanded the scope of the receivership to include one more entity, Grant Sidney, Inc., because it was completely controlled by Defendant and served as Uncle Nearest's largest shareholder. [*Id.* at 51–54].

Defendant appealed the May 26 Order to the U.S. Court of Appeals for the Sixth Circuit. [Doc. 200]. The Sixth Circuit refused to grant Defendant's motion to stay the May 26 order, mainly for procedural reasons. No. 26-5492 (6th Cir. 2026), Dkt. No. 22-2. Receiver asked the Sixth Circuit to dismiss Defendant's appeal for lack of jurisdiction, but the Sixth Circuit denied

Receiver's motion on October 2, 2026. No. 26-5492 (6th Cir. 2026), Dkt. No. 37-1. Therefore, the appeal is still pending, and parties' briefing schedule regarding the merits of that appeal concludes on December 11, 2026. No. 26-5492 (6th Cir. 2026), Dkt. No. 38.

As required by the Order appointing him, [Doc. 39, at 13–14], Receiver has filed several quarterly reports throughout this litigation. [Doc. 46, Doc. 132, Doc. 192, Doc. 223]. A week after the Sixth Circuit denied Receiver's motion, Receiver filed his Fifth Quarterly Report. [Doc. 253]. Receiver stated that his main goals in the past quarter have been to negotiate a sale for substantially all of Uncle Nearest's assets and initiate Chapter 11 bankruptcy for Uncle Nearest. [*Id.* at 1]. Receiver deems these two goals essential, as he expects the circumstances faced by the company to worsen over time because the threat of litigation, "the reduction of worldwide demand for alcohol, the changing distributor network, and the impact of tariffs on international sales continue to depress sales." [Doc. 253, at 16].

After Receiver filed his Fifth Quarterly Report, Defendant filed the motion now before the Court. [Doc. 255]. It seeks a preliminary injunction preventing Receiver, Plaintiff, or other persons or entities from causing "a sale, transfer, or other disposition of substantially all assets of" Uncle Nearest. [*Id.* at 3–4]. The main purpose of such an injunction, Defendant notes, is to preserve the practical effect of the Sixth Circuit's review over Defendant's appeal. [*Id.* at 1–2]. Both Receiver and Plaintiff have responded, [Doc. 259; Doc. 260], and Defendant has replied to both responses. [Doc. 261; Doc. 263]. Defendant's motion [Doc. 255] is therefore ripe for decision.

## II. STANDARD OF REVIEW

Generally, a preliminary injunction is issued to "preserve the relative position of the parties until a trial on the merits can be held." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The burden is on the moving party to show it is

entitled to an injunction, not on the party or parties defending against it. *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 442–43 (1974). Preliminary injunctions are "extraordinary and drastic remed[ies]" and are "never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 690–91 (2008). When determining whether to issue a preliminary injunction, courts look to a four-factor standard: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

These four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. For Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Thus, "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Griepentrog*, 945 F.2d at 153. Still, there are limits to this inverse proportionality, as the movant still must show that there are, "at a minimum, 'serious questions going to the merits.'" *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

## III. ANALYSIS

As explained below, the Court has balanced these four factors and concludes that Defendant is not entitled to a preliminary injunction at this time. Specifically, Defendant has not demonstrated that she is likely to succeed on the merits or sustain irreparable harm in the future.

Moreover, while the Court finds the public interest in the issuance of the requested injunction to be neutral, it is certain that creditors and Receiver would be harmed by the requested injunction. Thus, three of the four factors weigh against issuing the injunction. Therefore, Defendant's motion [Doc. 255] is **DENIED.**

**a. Likelihood of Success on the Merits**

First, Defendant has not demonstrated that she is likely to succeed on the merits. In her memorandum in support of her motion, Defendant argues that she is likely to win on the merits because the Sixth Circuit's October 2, 2026 decision, "removes the jurisdictional uncertainty that materially affected the earlier stay analysis and confirms serious questions whose practical resolution should not be defeated by an irreversible disposition." [Doc. 256, at 7]. However, this is a specious reading of the Sixth Circuit's decision. In that decision, the court denied Receiver's motion to dismiss Defendant's appeal of this Court's May 26 Order. *See* No. 26-5492 (6th Cir. 2026), Dkt. No. 37-1. The Sixth Circuit only explained that 28 U.S.C. § 1292(a)(2) permits Courts of Appeals to review "orders refusing to wind up a pending receivership" but not to appeal an interlocutory order refusing to vacate an original appointment of a receiver. *See id.* at 3. Because Defendant's motion to reconsider "focused on the ongoing need for a receiver based on post-appointment facts, not the propriety of the appointment based on the circumstances at the time of appointment," the Sixth Circuit determined it had jurisdiction to hear Defendant's appeal. *Id.* But the Sixth Circuit's answer to a threshold jurisdictional question says nothing about whether the substance of the appeal—and, in a similar vein, the request now before this Court—is merited.

Nonetheless, in reply to Plaintiff's arguments, Defendant asserts that the Sixth Circuit's decision "presents serious questions" about the merits, such as "whether the identified risk to collateral justified maintaining the full scope of receivership control," "whether less drastic

safeguards" than a receiver "could adequately protect the disputed collateral," and whether the benefits of the receivership "outweighed the documented contraction in sales and other burdens under the forward-looking standard." [Doc. 263, at 4–5]. Because these questions are essentially the same ones considered by this Court in its May 26 Order, Defendant concedes that the "substantive merits question" boils down to whether the Court "permissibly concluded" in its May 26 Order that "continued receivership control remained necessary under the applicable forward-looking equitable standard." [*Id.* at 5].

But Defendant has offered no meaningful answers to those questions: Defendant's motion's does not identify what specific circumstances have emerged since the May 26 Order that justify the relief Defendant seeks. [*See generally* Doc. 255; Doc. 256; Doc. 261; Doc. 263]. In her reply to Receiver, Defendant points to the fact that Receiver has since made "affirmative allegations that Farm Credit's negligence and gross negligence enabled" former Uncle Nearest CFO Michael Senzaki's fraudulent conduct during his tenure at the company. [Doc. 261, at 5]. Defendant claims this is relevant because they show "show that the lender's conduct and the underlying liabilities are contested by the estate's court-appointed fiduciary." [*Id.*]. However, Defendant does not explain how Receiver's objections to Plaintiff's *past* enablement of Senzaki have raised serious questions about the *present* conditions justifying Receiver's appointment. [*See id.*]. Indeed, Defendant makes no arguments relevant to the factors the Court considered in its May 26 order, such as "whether the property at issue is in imminent danger of being lost," "whether less drastic equitable remedies are available," or "whether the debtor is insolvent." *Pension Benefit Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir.); [*see also* Doc. 198, at 6 (considering the above-listed factors)].

The fact that Defendant only attempts to identify these "serious issues" in reply to other parties' arguments rather than in her initial filing is revealing. It shows that Defendant's original reason for seeking an injunction was to preserve the practical relief available to her should the Sixth Circuit decide her appeal in her favor. [*See* Doc. 256, at 7 (claiming that the Sixth Circuit's consideration of Defendant's appeal raises serious questions on the merits "whose practical resolution should not be defeated by an irreversible disposition")]. But Defendant cites no authority showing that the preservation of practical relief pending appellate review is itself a factor to be considered on the merits. If the preservation of relief pending appellate review automatically raised "serious questions going to the merits," *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985), then every irreparably harmed movant seeking the stay of some activity pending appeal would automatically be entitled to an injunction. This outcome is inconsistent with the notion that preliminary injunctions are "extraordinary and drastic remed[ies]" "never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 690–91 (2008). Perhaps, this is because Defendant's arguments about preserving appellate review are not relevant to the merits, but instead speak more to whether she would be irreparably harmed by the Court's failure to issue an injunction.

**b. Irreparable Harm to Movant**

But Defendant's arguments about preserving appellate review also do not establish that she will suffer irreparable harm if the Court refuses to issue an injunction. In determining whether harm will occur, courts must consider: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v.*

*Murray*, 415 U.S. 61, 90 (1974) (citation omitted). Again, Plaintiff is worried that Receiver's continued efforts to negotiate a purchase of "substantially all assets related to the Uncle Nearest whiskey operations" and "file a Chapter 11 bankruptcy for most of the Receivership Entities to consummate a sale under 11 U.S.C. § 363," [Doc. 256, at 2 (citing Doc. 253)], will make it impossible "to restore the enterprise or the practical position that existed before the transaction." [*Id.* at 7]. But there are two issues with this claim.

First, it is difficult to conclude that there is a high likelihood that Receiver will imminently cause any harm by signing a purchase agreement for substantially all assets. Receiver's stated intent to sell substantially all assets and reports of his efforts to negotiate an agreement intended to achieve that goal are nothing new. Receiver first expressed an interest in selling substantially all assets over a year ago in his First Quarterly Status Report. [Doc. 46, at 6]. In his Fourth Quarterly Status Report, Receiver described how he "had entered into a letter of intent to sell substantially all assets . . . to a third party." [Doc. 223, at 2]. Yet, in Receiver's most recent status report, he admitted that, "Despite his and his consultants' best efforts, no buyer has yet signed an asset purchase agreement" for substantially all assets. [Doc. 253, at 1]. Indeed, the Receiver has even acknowledged that an asset purchase agreement still has not yet been negotiated. [*Id.*]. Therefore, the Court cannot conclude that Receiver will soon sign an asset purchase agreement of the kind Defendant believes will harm her. Defendant is thus not "facing imminent and irreparable injury," meaning that there is "no need to grant relief now." *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019).

Second, there is a safeguard built into the Chapter 11 sale process that will ensure that any harm will not be irreparable. If Receiver initiates Chapter 11 bankruptcy, the trustee selected by the bankruptcy court in those proceedings cannot sell any "property of the estate" until "after notice

and a hearing." 11 U.S.C. § 363(b)(1). Defendant would certainly qualify as "a party of interest" who could object to such a sale at the hearing. *Id.* § 1109(b). And even if Receiver reneged on his stated intent to seek a Chapter 11 bankruptcy, Receiver could still only sell the property if he obtained the approval of the undersigned "[a]fter a hearing" at which Defendant could object. 28 U.S.C. § 2001(b). The guaranteed availability of hearings under §§ 363 and 2001 ensures that there is "adequate compensatory or other corrective relief" for a sale of substantially all the assets "in the ordinary course of litigation." *Sampson*, 415 U.S. at 90. This weighs strongly against finding irreparable harm. *Id.* Thus, the Court determines that Defendant will not face irreparable harm in the absence of an injunction.

**c. Harm to Others**

On the other hand, the Court *does* find that issuing the requested injunction would cause harm to others. The fact still remains that Uncle Nearest is "operating at a loss" and "is only able to maintain operations" thanks to "cash infusions from" Plaintiff, "significant reductions in operational expenses," and Receiver's "professional fees coming in substantially below budget." [Doc. 253, at 15]. Receiver's job "is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).

Pursuant to this directive, the Court gave Receiver "the power to sell receivership property." [Doc. 39, at 3]. Multiple times, Receiver has explained that "a sale of the assets of the receivership estate is in the best interest of creditors due to the ongoing cost of maintaining the business versus the profitability of continued operations." [Doc. 259, at 5]. And Receiver does not expect the business to become more profitable any time soon. As he explains, "[T]he reduction of worldwide demand for alcohol, the changing distributor network, and the impact of tariffs on

international sales continue to depress sales." [Doc. 253, at 16]. Moreover, Receiver believes that this litigation has had a "negative impact on sales, as a company's employees, vendors, and business partners grow concerned about the long-term viability of a company in receivership." [*Id.*]. Consequently, Receiver concludes that the value of the Uncle Nearest brand will continue to deteriorate until Uncle Nearest's assets are sold. [*Id.* at 17].

If the Court were to grant the requested injunctive relief, the injunction would be in force until at least mid-December—which is when the appellee's briefs are due at the Sixth Circuit. *See* No. 26-5492 (6th Cir.), Dkt. No. 38. During that time, Receivership Estate and/or Plaintiff would be forced to burn through assets to compensate Receiver and his representatives. [Doc. 39, at 16; Doc. 255, at 3]. Additionally, preventing Receiver from selling substantially all assets for several months runs the risk of making Uncle Nearest's assets less valuable, less attractive to prospective buyers, and more of a risk to Uncle Nearest's creditors. [*See* Doc. 253, at 15–16]. Consequently, the Court finds that Receiver, Plaintiff, and other Uncle Nearest creditors would be harmed if the Court granted the requested injunction. *See Commodity Futures Trading Comm'n v. Hudgins*, 2009 WL 3645053, at *4 (E.D. Tex. Nov. 2, 2009) (denying a motion for a stay of a receiver's sale of assets partly because granting the stay would impose costs on the receiver and creditors); *Secs. & Exch. Comm'n v. Schooler*, 2016 WL 6962745, at *2–3 (S.D. Cal. Nov. 29, 2016) (refusing to stay a receiver's sale of assets partly because granting the stay would jeopardize the "monetary rights of the thousands of other investors who stand to gain" from the sale).

**d. Public Interest**

Lastly, the Court considers whether granting the requested injunction would be in the public interest. Throughout her briefing, Defendant offers two reasons as to why an injunction would be in the public interest. First, she claims granting an injunction would promote "orderly

appellate review" and avoid "a result in which the subject of an appeal is materially and irreversibly altered" before the Sixth Circuit decides Defendant's appeal. [Doc. 256, at 8]. Second, Defendant claims the descendants of Nathan "Nearest" Green cannot benefit from Defendant's "succession and stewardship plan" if Receiver substantially sells all assets. [Doc. 261, at 11]. Receiver and Plaintiff, on the other hand, assert that the public has an interest in Receiver's tidy and efficient administration of Uncle Nearest. [Doc. 260, at 10; Doc. 259, at 6].

Each of these interests is one in which the public might very well be invested. *See* [Doc. 264-1 (describing Defendant's plans to enable Nathan Green's descendants to benefit from a brand built on the name, image, and likeness of their ancestor)]; *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26–27 (1994) (describing how the public interest requires respect for the "orderly procedure" of appellate review"); *McIntyre v. KDI Corp.*, 406 F. Supp. 592, 600 (S.D. Ohio 1975) (noting the public's interest in a receivership's ability to maintain a company "as a going entity capable of paying its debts and providing services to its customers and subsidiaries, as well as employment to its present and future employees"). Based on this fact, the public interest of an injunction here "arguably cuts both ways," so "the Court finds this factor to be neutral." *Golf Village North LLC v. City of Powell, Ohio*, 333 F. Supp. 3d 769, 782 (S.D. Ohio 2018). Still, as mentioned above, the other three factors weigh in favor of denying Defendant's request for a preliminary injunction. *See supra* Sections III.a, III.b, and III.c.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has not shown she is likely to succeed on the merits or suffer irreparable harm. The Court also determines that, while the public interest in the issuance of the requested injunction cuts both ways, Uncle Nearest's creditors and Receiver would be harmed by the requested injunction. Therefore, Defendant has not prevailed

on any of the factors relevant to issuing a preliminary injunction, and her motion seeking that relief [Doc. 255] is **DENIED.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**